IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, and<br><br>STATE OF LOUISIANA ex rel. JEFFREY M. LANDRY, Attorney General,<br><br>       *Plaintiffs*,<br><br>   v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*;<br><br>       *Defendants*. | Case No. 3:22-cv-01213 |

## DECLARATION OF PATRICK FLESCH

I, Patrick Flesch, declare as follows:

   1.   I am over 18 years of age and make this declaration based on my personal knowledge and experience.

   2.   I am the Director of Constituent Services for the Missouri Attorney General's Office. I have served in that role since July 1, 2021.

   3.   In my position as Director of Constituent Services, I lead our Constituent Services team whose main responsibility is to communicate with the citizens of Missouri on behalf of the Office. This includes corresponding via telephone, email, and physical mail. The subject matter of these messages ranges considerably from more mundane day-to-day individual issues to larger policy related correspondence. I oversee, and am personally involved in, receiving, reviewing, and responding to thousands of communications from Missouri constituents per year. For example, in the month of May 2022 alone, we received approximately 1,500 contacts from constituents (phone,

1

email, letters, etc.) and responded to at least 1,000. For me to communicate effectively with Missourians, it is very important for me to understand their actual concerns.

4. Part of my job as Director of Constituent Services is to gather and synthesize topical subject matters that are important to Missouri citizens, on behalf of the Office. Understanding what subject matters and issues are important to Missourians is critical for the Office to formulate policies and messaging for Missourians that will address the actual concerns expressed by Missouri constituents. Not only is this information gathered from traditional forms of communication, such as mail, email, and phone calls to the Office, but this also includes monitoring activity and mentions on multiple social media platforms, including Facebook, Twitter, and YouTube. I monitor these sorts of trends on a daily or even hourly basis when needed on behalf of the Office. Often social media is used in conjunction with data from traditional forms of communication to identify the most pressing matters and to formulate policy responses and messages to address those concerns.

5. Issues regarding COVID-19 responses (such as mask mandates imposed by municipalities and school districts on schoolchildren) and election security and integrity have been of critical importance to Missourians in recent months and years. For example, mask mandates for schoolchildren have been a critical topic of concern and public discussion for Missourians over the last year. It is very important for me to have access to free public discourse on social media on these issues so I can understand what Missourians are actually thinking, feeling, and expressing about such issues, and so I can communicate effectively with them.

6. Unfortunately, online censorship of free public discourse on social-media companies has hampered my ability to follow Missourians' speech on these issues. It is widely known, for example, that public comments questioning the efficacy of mask mandates has been censored on

social media. This directly interferes with my ability to follow, measure, and understand the nature and degree of Missourians' concerns about mask mandates, and forces me to rely on other, less reliable proxies for Missourians' thoughts and opinions about these issues.

7. Such social-media censorship has directly affected Missourians. For example, in one well-publicized example, YouTube censored the videos of four public meetings between the St. Louis County Council and the constituents of St. Louis County, Missouri, when the County Council was debating whether to approve or disapprove County-wide mask mandates imposed by the St. Louis County Department of Public Health.[1] During the public-comment periods at these meetings, a large number of St. Louis County residents made passionate public comments criticizing and opposing the mask mandates, leading to YouTube censoring the videos of the public meetings. *Id.* This video is just the sort of information that is important for me to review, and yet it was unavailable for a critical period of time due to online censorship of speech questioning the efficacy of mask mandates.

8. Similarly, a conservative talk radio station in Missouri, NewsTalk STL, had its entire YouTube channel suspended because it aired an interview discussing election integrity.[2] The station reported that it had received "two strikes against our channel due to 'medical misinformation' according to YouTube's protocol." *Id.* Then, the station was "sent an email informing us that we have been removed from the platform and can no longer post, upload, or create content on our [YouTube] channel." *Id.* The permanent suspension from YouTube was

---

[1] *See* Nassim Benchaabane, *Censored over COVID-19 misinformation, St. Louis County to stop using YouTube by Oct. 19*, ST. LOUIS POST-DISPATCH (Oct. 7, 2021), *at* https://www.stltoday.com/news/local/govt-and-politics/censored-over-covid-19-misinformation-st-louis-county-to-stop-using-youtube-by-oct-19/article_f0e4e112-40c3-59b3-a70a-aa2a0608c439.html.

[2] Kate Fitzpatrick, *NewsTalk STL is removed from YouTube permanently* (March 21, 2022), *at* https://newstalkstl.com/newstalk-stl-is-removed-from-youtube-permanently/.

caused by posting an interview "discussing the 2020 election and the need for election integrity legislation on the channel."[3]  The interviewee "focused on the perception many American voters have of election fraud, and how legislation aimed at making it easier to vote but harder to cheat would be essential in renewing trust in our elections." *Id.*  "A week later on March 21, the station reported that it had received an email from YouTube informing it that it had received a third and final strike for that [interview], resulting in a permanent ban from the site. All its content was deleted, and it could no longer post or share videos." *Id.*

9. Another example of direct censorship of Missouri citizens involves concerned parents who objected to mandatory masking of their children in schools and wanted their schools to remain mask-optional.[4]  For example, one parent who posted on nextdoor.com (a neighborhood-networking site operated by Facebook) an online petition to encourage his school to remain mask-optional found that his posts were quietly removed without notifying him, and his online friends never saw them. *Id.*  Another parent in the same school district who objected to mask mandates for schoolchildren responded to Dr. Fauci on Twitter, and promptly received a warning from Twitter that his account would be banned if he did not delete the tweets criticizing Dr. Fauci's approach to mask mandates. *Id.*  These examples are just the sort of online speech by Missourians that it is important for me and the Missouri Attorney General's Office to be aware of.

10. The kinds of speech discussed above and in the Complaint in this case—such as speech about the efficacy of COVID-19 restrictions, and speech about issues of election security and

---

[3] Douglas Blair, *YouTube Bans St. Louis Talk Radio Station's Channel for Discussing Election Integrity*, THE DAILY SIGNAL (March 31, 2022), *at* https://www.dailysignal.com/2022/03/31/youtube-bans-st-louis-talk-radio-stations-channel-for-discussing-election-integrity/.

[4] Jessica Marie Baumgartner, *Missouri Parents Censored Online for Opposing Mask Mandates in School*, THE EPOCH TIMES (Aug. 4, 2021), *at* https://www.theepochtimes.com/missouri-parents-censored-online-for-opposing-mask-mandates-in-school_3933012.html?welcomeuser=1.

election integrity—are matters of core interest and high importance to me in my work on behalf of the AGO. When such speech is censored on social media, it makes it much harder for me to do my job and to understand what Missourians really are concerned about.

11. Because online censorship acts as a prior restraint on speech, I will never know exactly how much speech by Missourians on social media never reaches my eyes because it is censored in advance, or as soon as it is posted. But based on these publicly available examples, it is clear that online censorship has blocked me from receiving and reviewing many important expressions of Missourians' concerns about issues of public importance. This censorship directly interferes with the ability of the Attorney General's Office to achieve its mission of acting as the chief legal officer on behalf of Missouri's six million citizens. If we do not know what Missourians' true concerns are, how can we craft messages and policies that are responsive to our citizens?

I swear or affirm under penalty of perjury that the foregoing is true and correct.

Dated: June 8, 2022                               Signed: */s/ Patrick Flesch*