IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, and<br><br>STATE OF LOUISIANA ex rel. JEFFREY M. LANDRY, Attorney General,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Case No. 3:22-cv-01213 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR EXPEDITED PRELIMINARY INJUNCTION-RELATED DISCOVERY**

i

**TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 1

ARGUMENT ................................................................................................................................. 4

A.  Expedited Discovery Is Appropriate Under the "Good Cause" Standard. .................................. 5

   1.  Expedited discovery is "particularly appropriate" for preliminary-injunction proceedings challenging the constitutionality of government action. ...................................................... 5

   2.  Expedited discovery is appropriate to avoid irreparable harm. ........................................... 7

   3.  Discovery is appropriate to identify critical participants in unlawful conduct. ................... 8

   4. The proposed discovery seeks information in Defendants' exclusive control. .................... 9

   5.  The States' proposed discovery is reasonably tailored. ..................................................... 10

   6.  Plaintiffs' need for discovery outweighs any potential prejudice to Defendants. ............. 12

B.  Expedited Discovery Is Also Appropriate Under the *Notaro* Standard. ................................... 12

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*,
  No. CV 12-446 (RHK/LIB), 2012 WL 13029504 (D. Minn. May 30, 2012) ............................ 7

*Amos v. Taylor*,
  No. 4:20-CV-7-DMB-JMV, 2020 WL 5809972 (N.D. Miss. Aug. 26, 2020) ........... 6, 9, 10, 11

*Ayyash v. Bank Al-Madina*,
  233 F.R.D. 325 (S.D.N.Y. 2005) ............................................................................................ 7

*Benavides v. Gartland*,
  No. 5:20-CV-46, 2020 WL 2561777 (S.D. Ga. May 20, 2020) ............................................ 6, 9

*BKGTH Prods., LLC v. Does 1–20*,
  2013 WL 5507297 (E.D. La. Sept. 30, 2013) ................................................................ passim

*CGB Diversified Servs., Inc. v. Morrison*,
  No. 20-cv-3043, 2020 WL 4547885 (C.D. Ill. Apr. 2, 2020) .................................................. 11

*Combat Zone Corp. v. John/Jane Does 1-2*,
  No. 2:12-CV-00509, 2012 WL 6684711 (E.D. Tex. Dec. 21, 2012) ................................... 9, 10

*Edudata Corp. v. Sci. Computers, Inc.*,
  599 F. Supp. 1084 (D. Minn.) ................................................................................................ 7

*ELargo Holdings, LLC v. Doe-68.105.146.38*,
  318 F.R.D. 58 (M.D. La. 2016) ................................................................................ 4, 5, 8, 12

*Ellsworth Assocs., Inc. v. United States*,
  917 F. Supp. 841 (D.D.C. 1996) ...................................................................................... 4, 6, 7

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................................................... 8

*First Option Mortg., LLC v. Tabbert*,
  No. 2:12-cv-600, 2012 WL 1669430 (D. Nev. May 11, 2012) .............................................. 12

*Irish Lesbian & Gay Org. v. Giuliani*,
  918 F. Supp. 728 (S.D.N.Y. 1996) ........................................................................................ 10

*Imani v. City of Baton Rouge*, No. CV 17-439-JWD-EWD, 2017 WL 3142473,
  at *3 (M.D. La. July 25, 2017) ............................................................................................. 10

*JP Morgan Chase Bank, N.A. v. Reijtenbagh*,
   615 F.Supp.2d 278 (S.D.N.Y. 2009) .................................................................................. 7

*McMann v. Doe*,
   460 F. Supp. 2d 259 (D. Mass. 2006) ............................................................................ 8, 9

*Miner, LTD. v. Anguiano*,
   No. 19-cv-00082, 2019 WL 9633302 (W.D. Tex. Mar. 20, 2019) ......................................... 11

*Notaro v. Koch*,
   95 F.R.D. 403 (S.D.N.Y. 1982) ......................................................................... 4, 5, 12, 13

*Oglala Sioux Tribe v. Van Hunnik*,
   298 F.R.D. 453 (D.S.D. 2014) ........................................................................................ 6

*Onan Corp. v. United States*,
   476 F. Supp. 428 (D. Minn. 1979) ................................................................................... 6

*Optic–Electronic Corp. v. United States*,
   683 F. Supp. 269 (D.D.C. 1987) ..................................................................................... 6

*Pod–Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*,
   204 F.R.D. 675 (D. Colo. 2002) ..................................................................................... 7

*Soileau v. GPS Marine, LLC*,
   No. CV 20-484, 2020 WL 9078308 (E.D. La. May 19, 2020) ............................................. 12

*St. Louis Group, Inc. v. Metals and Additives Corp., Inc.,
   et al.*, 275 F.R.D. 236 (S.D. Tex. 2011) ........................................................................ 4, 5

**Rules**

Rule 26(a)(1)(B) ................................................................................................................ 4

Rule 26(d)(1) of the Federal Rules of Civil Procedure .................................................... 4

Rule 26(f) .......................................................................................................................... 4

Rule 30(a)(2) of the Federal Rules of Civil Procedure .................................................. 15

Plaintiffs, the States of Missouri and Louisiana, by and through their Attorneys General, Eric S. Schmitt and Jeffrey M. Landry (collectively, "Plaintiffs" or "the States"), respectfully request that the Court authorize expedited preliminary-injunction-related discovery on a limited basis, to allow Plaintiffs to ascertain the identities and nature of communications of federal officials who are coordinating with social-media platforms on the suppression and censorship of online speech. In support, the States state as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

The case challenges the conduct of federal officials who are procuring the censorship and suppression of disfavored speakers, content, and viewpoints on social-media platforms. ECF No. 1. The States seek a preliminary injunction against federal officials to prevent them from colluding and coordinating with social-media platforms to censor disfavored speech and speakers, under repeated threats against the companies of grave legal consequences for not complying. ECF No. 10, at 1-2. Facts surrounding this campaign of social-media censorship, based on publicly available information, are set forth in the Complaint and the Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, ECF No. 1, ¶¶ 102-240; ECF No. 15, at 8-41, which are incorporated by reference herein.

Defendants' *de facto* censorship program has both public and non-public components. The public components include such conduct as public demands by senior federal officials for the censorship of disfavored speakers, content, and viewpoints by social-media platforms; and vociferous public threats of adverse legal consequences—such as repealing or amending § 230 of the Communications Decency Act, imposing antitrust scrutiny and enforcement, and imposing additional regulations—for social-media platforms if they do not comply with those demands. Information about these aspects of Defendants' conduct is largely in the public domain. But

Defendants' censorship activities include *non-public* aspects as well. These include direct coordination and collusion between federal officials and social-media platforms to target speakers, content, and viewpoints for suppression on social media. Defendants have openly admitted that such direct coordination and collusion is occurring, but because such coordination occurs in secret, out of the public eye, many specific details are not publicly available.

For example, Jen Psaki publicly stated that "members of our senior staff" are "flagging problematic posts for Facebook that spread disinformation," ECF No. 10-1, at 377 (Glenn Decl. Ex. 30, at 10)—but she did not state which "members of our senior staff" are "flagging problematic posts," or how they are communicating with Facebook (and other platforms) to do so. CISA's "Mis, Dis, and Malinformation" bulletin states that "[t]he MDM team serves as a switchboard for routing disinformation concerns to appropriate social-media platforms," ECF No. 10-1, at 649 (Glenn Decl. Ex. 51, at 3), but it does not identify which "MDM team" members are flagging content for censorship, nor how they are doing so. *Id.* Secretary Mayorkas has stated that DHS is "working with tech companies that are the platform for much of the disinformation that reaches the American public" to "better use their terms of use to … prevent harm from occurring," ECF No. 10-1, at 592 (Glenn Decl. Ex. 46, at 2), but he has not stated which DHS officials are doing so, or how. Facebook has admitted that it has "partnered with government experts … to take 'aggressive action against misinformation about COVID-19,'" ECF No. 10-1, at 421 (Glenn Decl. Ex. 32, at 4), but it has not stated what "government experts" have "partnered" with it to take "aggressive action against misinformation." *Id.* Likewise, for other federal officials, such as Dr. Fauci, Dr. Murthy, and Jen Easterly, there is powerful evidence that they are involved in such direct collusion, but the details of their collusion are not in the public view.

2

The current lack of specific details about which federal officials are directly coordinating with social-media companies to censor Americans' speech, and about the content and nature of communications between such federal officials (both known and unknown) and social-media platforms, threatens to frustrate the Court's ability to grant effective preliminary injunctive relief, at least in part. A fully effective preliminary injunction will not only enjoin Defendants in general terms from trampling on free-speech rights on social media, but it will enjoin the specific actors most directly engaged in such unlawful activity, and their specific unlawful conduct. Some of these actors' identities are known, but many are not, and few of their secret, direct communications with social-media platforms have been revealed.

The States, therefore, seek leave to conduct specific, targeted, narrow discovery in support of their Motion for Preliminary Injunction. The requested discovery will consist of targeted interrogatories and document requests to Defendants requesting (1) the identities of federal officials who have or are communicating with social-media platforms about disinformation, misinformation, malinformation, or any form of censorship or suppression of online speech, and (2) the nature and content of such federal officials' communications with such social-media platforms (including both currently known and unknown federal officials). Relatedly, the States also request leave to serve third-party subpoenas on a small number of social-media platforms seeking similar information—*i.e.*, the identities of federal officials they have communicated and are communicating with, and the nature and content of such communications.[1]

---

[1] These issues are particularly time-sensitive and urgent, because federal officials are expanding their unconstitutional demands for social-media censorship on a near-daily basis. For example, on June 14, 2022—just hours after the States filed their Motion for Preliminary Injunction in this case—the White House's National Climate Advisor Gina McCarthy publicly demanded that social-media companies increase censorship of "disinformation" and "misinformation" regarding climate change. *See, e.g.,* Alexander Hall, *Biden climate advisor demands tech companies censor 'disinformation' to promote 'benefits of clean energy'*, FOX NEWS (June 14, 2022), *at*

3

# ARGUMENT

"Courts have wide discretion with respect to discovery," including motions to expedite discovery. *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996). Rule 26(d)(1) of the Federal Rules of Civil Procedure "provides that, '[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when authorized by these rules, by stipulation, or by court order.'" *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 61 (M.D. La. 2016) (quoting Fed. R. Civ. P. 26(d)(1)). "Courts generally use one of the following two standards to determine whether a party is entitled to conduct expedited discovery: (1) the preliminary-injunction-style analysis set out in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982); or (2) the 'good cause' standard, which has been used interchangeably with the 'reasonableness' standard." *Id.* (citing *BKGTH Prods., LLC v. Does 1–20*, 2013 WL 5507297, at *4 (E.D. La. Sept. 30, 2013), and *St. Louis Group, Inc. v. Metals and Additives Corp., Inc., et al.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011)). "Although the Fifth Circuit has not explicitly adopted a standard to

---

https://www.foxnews.com/media/biden-climate-advisor-tech-companies-censor-disinformation-promote-benefits-clean-energy. Speaking at an event called "A conversation on battling misinformation," McCarthy—a senior federal official—was asked how "rampant mis-and-disinformation around climate change online and in other platforms" has "made your job harder?" *Id.* She responded: "We have to get tighter, we have to get better at communicating, and frankly, *the tech companies have to stop allowing specific individuals over and over again to spread disinformation*. That's what the fossil fuel companies pay for." *Id.* (emphasis added). She added that "we need the tech companies to really jump in." *Id.* She asserted that so-called "disinformation" and "misinformation" regarding climate change are "a threat to public health itself." *Id.* Two days later, the White House announced a new task force to address, among other things, "gendered disinformation" and "disinformation campaigns targeting women and LGBTQI+ individuals who are public and political figures, government and civic leaders, activists, and journalists." White House, *Memorandum on the Establishment of the White House Task Force to Address Online Harassment and Abuse* (June 16, 2022), at https://www.whitehouse.gov/briefing-room/presidential-actions/2022/06/16/memorandum-on-the-establishment-of-the-white-house-task-force-to-address-online-harassment-and-abuse/. The frontiers of government-induced censorship are thus expanding rapidly.

determine whether a party is entitled to expedited discovery, several district courts within the Fifth Circuit … have expressly utilized the 'good cause' standard when addressing the issue." *Id.* (citing many cases). Here, expedited discovery is appropriate under either standard: (1) the "good cause" standard that is dominant among district courts in this circuit, and (2) the "preliminary-injunction-style analysis" used by *Notaro*. *Id.*

A.  **Expedited Discovery Is Appropriate Under the "Good Cause" Standard.**

"The good cause analysis takes into consideration such factors as the breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request was made." *ELargo Holdings*, 318 F.R.D. at 61 (citing *BKGTH Prods., LLC*, 2013 WL 5507297 at *4, and *St. Louis Group*, 275 F.R.D. at 239 n.4). "In a 'good cause' analysis, a court must examine the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Id.* (citing *BKGTH Prods., LLC*, 2013 WL 5507297 at *5, and *St. Louis Group*, 275 F.R.D. at 239). "[G]ood cause typically exists where 'the need for expedited discovery outweighs the prejudice to the responding party.'" *Id.* (quoting *BKGTH Prods., LLC*, 2013 WL 5507297 at *5, and *St. Louis Group*, 275 F.R.D. at 239–40). "The party seeking expedited discovery has the burden of establishing good cause and the scope of the requests must be narrowly tailored to the necessary information they seek." *Id.* (quoting *BKGTH Prods., LLC*, 2013 WL 5507297 at *5). Here, several factors strongly support expedited discovery under the "good cause" standard.

   1. **Expedited discovery is "particularly appropriate" for preliminary-injunction proceedings challenging the lawfulness of government action.**

First, the States seek expedited discovery in relation to their already-filed motion for preliminary injunction, ECF Nos. 10, 15, and expedited discovery is particularly appropriate in

5

connection with time-sensitive injunctive proceedings. "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Ellsworth Assocs.*, 917 F. Supp. at 844 (citing *Optic–Electronic Corp. v. United States*, 683 F. Supp. 269, 271 (D.D.C. 1987), and *Onan Corp. v. United States*, 476 F. Supp. 428, 434 (D. Minn. 1979)). Likewise, "courts have routinely granted expedited discovery in cases involving challenges to constitutionality of government action." *Id.*

This doctrine makes sense in a case involving a preliminary injunction where factual development will assist the Court in fashioning appropriate relief. Preliminary-injunction motions are often filed and adjudicated before the defendants file a responsive pleading and merits discovery commences. "The purpose of expedited discovery in the context of a temporary restraining order or preliminary injunction is for further development of the record before the preliminary injunction hearing, which better enables the court to judge the parties' interests and respective chances for success on the merits." *Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV, 2020 WL 5809972, at *4 (N.D. Miss. Aug. 26, 2020). Where, as here, "a preliminary injunction [motion] is pending," that fact provides strong justification for ordering expedited discovery. *Id.* (quoting *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 455–56 (D.S.D. 2014)); *see also, e.g., Benavides v. Gartland*, No. 5:20-CV-46, 2020 WL 2561777, at *3 (S.D. Ga. May 20, 2020) ("Petitioners' request for a preliminary injunction is pending, which ordinarily cuts in favor of granting Petitioners' request for expedited discovery.").

Accordingly, where factual development would assist in the adjudication of a motion for preliminary injunction, courts frequently grant expedited discovery. *See, e.g., Amos*, 2020 WL 5809972, at *10 (holding that "expedited discovery is warranted on the plaintiffs' anticipated motion for preliminary injunction"); *Onan Corp.*, 476 F. Supp. at 434 ("[T]he court grants

plaintiff's motion for limited discovery to prepare for a possible preliminary injunction motion."); *Edudata Corp. v. Sci. Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn.), *aff'd in part, appeal dismissed in part*, 746 F.2d 429 (8th Cir. 1984) ("Further development of the record before the preliminary injunction hearing will better enable the court to judge the parties' interests and respective chances for success on the merits."); *Ellsworth*, 917 F. Supp. at 844; *see also ALARIS Grp., Inc. v. Disability Mgmt. Network, Ltd.*, No. CV 12-446 (RHK/LIB), 2012 WL 13029504, at *2 (D. Minn. May 30, 2012) ("[E]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings") (quoting *Ellwsworth Assocs.*, 917 F. Supp. at 844). The Court should do the same here.

**2. Expedited discovery is appropriate to avoid irreparable harm.**

Second, expedited discovery is appropriate here to prevent irreparable harm. Though expedited discovery is not the norm, "district courts have allowed expedited discovery when there is some showing of irreparable harm that can be addressed by limited, expedited discovery." *BKGTH Prods.*, 2013 WL 5507297, at *5 (quotation omitted). *See also, e.g., JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 615 F.Supp.2d 278, 282–83 (S.D.N.Y. 2009) (granting expedited discovery to plaintiffs to determine the location of missing art pledged as collateral for $50 million promissory note); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2005) (allowing expedited discovery on third parties to locate assets in the United States relating to foreign defendants who had the incentive to hide those assets); *Pod–Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing limited discovery in infringement action where the object might not be available for inspection at a later date).

Here, as detailed in Plaintiffs' motion in support of preliminary injunction, Missouri, Louisiana, and millions of their citizens are experiencing ongoing irreparable injuries to their right

to speak and listen freely on social media. ECF No. 15, at 33-41, 55-56. This is irreparable harm of the highest magnitude. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Targeted discovery to prevent such irreparable injury provides a quintessential justification to grant expedited discovery. *BKGTH Prods.*, 2013 WL 5507297, at *5.

### 3. Discovery is appropriate to identify critical participants in unlawful conduct.

Here, the discovery proposed by the States is intended, in large part, to identify which federal officials are the key participants in the ongoing collusion between the federal government and social-media platforms to censor disfavored speakers, content, and viewpoints on social media, and what is the nature of their communications with such social-media platforms. Federal officials such as Jen Psaki and Secretary Mayorkas have admitted such collusion is occurring, but many specific details of the collusion have been obscured from public view. Discovery is particularly appropriate to identify which federal officials, in addition to the named Defendants, are directly involved in Defendants' collusive censorship program.

Courts routinely hold that expedited discovery is appropriate to identify the participants in an unlawful scheme. "The plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *ELargo Holdings*, 318 F.R.D. at 62. For example, a district court ordered expedited discovery in a case alleging defamation and invasion of privacy against the operator of an anonymously maintained website. *McMann v. Doe*, 460 F. Supp. 2d 259, 261–62 (D. Mass. 2006). Given the unknown identity of the perpetrator of the allegedly unlawful conduct, the court held that: "In this case, the discovery is essential. Without the ability to issue a subpoena, John Doe's true name would remain unknown, this suit could not

proceed, and Plaintiff McMann could receive no remedy…. By allowing this case to proceed, discovery could reveal John Doe, allow justice to be done, and end this alleged harm." *Id.* at 265–66; *see also, e.g., Combat Zone Corp. v. John/Jane Does 1-2*, No. 2:12-CV-00509, 2012 WL 6684711, at *2 (E.D. Tex. Dec. 21, 2012) (granting expedited discovery where "Combat Zone has no alternative way of determining … Defendants' identities").

The same logic applies here. Defendants have largely concealed from the States and the public which "members of our senior staff" are "flagging problematic posts for Facebook," ECF No. 10-1, at 377 (Glenn Decl. Ex. 30, at 10), and engaging in similar coordination and collusion with social-media firms to censor free speech. *See supra*, Factual Background. Identifying the specific participants in the unlawful scheme is highly appropriate to provide Plaintiffs with an effective remedy and "end this alleged harm." *McMann*, 460 F. Supp. 2d at 266.

### 4. The proposed discovery seeks information in Defendants' exclusive control.

In considering motions for expedited discovery, courts also consider whether the request seeks information in the opposing parties' exclusive control. For example, *Amos* held that the fact that "plaintiffs' motion for expedited discovery … relates to information exclusively within the defendants' possession and control" weighed in favor of finding "good cause." *Amos*, 2020 WL 5809972, at *9; *see also Benavides*, 2020 WL 2561777, at *3 (granting motion for expedited discovery in part because "much information related to Petitioners' claims is exclusively within Respondents' possession and control"). Where "there are no other practical measures [plaintiff] could take to identify" the party inflicting harm, and the plaintiff "has no alternative way of determining the … Defendants' identities except through" early discovery, this situation "favors expedited discovery." *Combat Zone Corp. v. John/Jane Does 1-2*, No. 2:12-CV-00509, 2012 WL 6684711, at *2 (E.D. Tex. Dec. 21, 2012). By contrast, expedited discovery is not favored when

the "additional information may be obtained without the requested subpoenas." *Imani v. City of Baton Rouge*, No. CV 17-439-JWD-EWD, 2017 WL 3142473, at *3 (M.D. La. July 25, 2017).

Here, the States have diligently canvassed publicly available materials to seek the identities of the federal officials involved in the large-scale censorship program. The detailed factual statements in the Complaint and the Memorandum in Support of Motion for Preliminary Injunction reflect the results of the States' diligent efforts to identify publicly available information about the objectionable conduct of federal officials. But, as noted above, publicly available information about which federal officials are communicating with social-media platforms about online-censorship activities is limited to Defendants' own public admissions, which provide only a glimpse into the problem. The information is available only from two sources—the federal government itself, and the social-media platforms. Plaintiffs seek leave to serve targeted interrogatories and document requests on both Defendants and the principal social-media platforms to ascertain this information in their exclusive purview.

**5. The States' proposed discovery is reasonably tailored.**

"When expedited discovery is sought for the purpose of pursuing a motion for preliminary injunction, the requested discovery must be 'reasonably tailored to the time constraints under which both parties must proceed or to the specific issues that will have to be determined at the preliminary injunction hearing.'" *Amos*, 2020 WL 5809972, at *6 (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996)). A discovery request that is "a broadside" will not satisfy this standard, *Giuliani*, 918 F. Supp. 731, but a request that is "reasonably tailored" to the time constraints and disputed issues will do so, *id*. And where "the discovery request is specific" as opposed to general, that also supports a finding of good cause. *Combat Zone*, 2012 WL 6684711, at *2.

Here, Plaintiffs' proposed discovery is reasonably tailored, based both on the time-sensitivity and urgency of the issues at stake in the preliminary-injunction motion. It seeks the identities of the federal officials who are engaged in the unlawful conduct, and the nature and content of their communications with the social-media platforms that they have unlawfully induced to censor speech. These are items of core relevance to the Plaintiffs' Motion for Preliminary Injunction, and the information is critical for the Court to be able to grant Plaintiffs fully effective injunctive relief.

Further, to the extent that Defendants claim that any particular request may be overbroad, Plaintiffs propose an expedited schedule (below) that provides Defendants a full and fair opportunity to object on that ground, meet and confer, and present any dispute about overbreadth to the Court. Even in cases where "some of the plaintiffs' proposed discovery is reasonable in scope while some is not," the Court "may weigh the … factor in favor of good cause and resolve the breadth concerns by allowing the opposing party 'to raise objections and requiring an expedited process for resolution of [those] objections.'" *Amos*, 2020 WL 5809972, at *9 (quoting *CGB Diversified Servs., Inc. v. Morrison*, No. 20-cv-3043, 2020 WL 4547885, at *4 (C.D. Ill. Apr. 2, 2020)); *see also, e.g., Miner, LTD. v. Anguiano*, No. 19-cv-00082, 2019 WL 9633302, at *2 (W.D. Tex. Mar. 20, 2019) ("To protect the parties from potentially unreasonable requests, the court will permit the parties to narrowly and specifically object to the scope and relevance of the information requested by the opposing party."). Any concerns about potential overbreadth of the States' requests—if any—will be fully allayed by providing Defendants an opportunity to object on that ground, meet and confer, and present any such objections to the Court in an "expedited process for resolution for resolution of those objections." *Amos*, 2020 WL 5809972, at *9 (square brackets

11

omitted) (citing *First Option Mortg., LLC v. Tabbert*, No. 2:12-cv-600, 2012 WL 1669430, at *4 (D. Nev. May 11, 2012)).

### 6. Plaintiffs' need for discovery outweighs any potential prejudice to Defendants.

Finally, Plaintiffs' need for expedited discovery decisively outweighs any potential prejudice—if there is any—to Defendants. Good cause for expedited discovery exists where the need for discovery outweighs the potential prejudice to the opposing party. "Although the factors used by Courts may vary, good cause typically exists where 'the need for expedited discovery outweighs the prejudice to the responding party.'" *BKGTH Prods*., 2013 WL 5507297, at *5 (citing cases). "[G]ood cause typically exists where the need for expedited discovery outweighs the prejudice to the responding party." *Soileau v. GPS Marine, LLC*, No. CV 20-484, 2020 WL 9078308, at *2 (E.D. La. May 19, 2020). Here, for the reasons discussed above, the Plaintiffs' need is great. The case addresses issues of enormous public importance, and Plaintiffs allege egregious interference by Defendants in fundamental free-speech rights. On the other side of the scale, the burdens to Defendants of participating in narrow, carefully targeted discovery—such as responding to targeted interrogatories and document requests—are minimal. Defendants will suffer no cognizable prejudice from participating in expedited discovery.

### B. Expedited Discovery Is Also Appropriate Under the *Notaro* Standard.

As noted above, district courts in this circuit typically use the "good cause" standard, not the "preliminary-injunction style analysis" of *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), in assessing motions for expedited discovery. *ELargo Holdings*, 318 F.R.D. at 61 & n.21 (citing many cases using the "good cause" analysis). But if the Court were to apply the *Notaro* standard, the expedited discovery sought by Plaintiffs satisfies the *Notaro* factors as well.

At the time *Notaro* was decided in 1982, the Southern District of New York noted that "[f]ew opinions discuss motions for expedited discovery," and that "[t]here is a dearth of law on the availability of expedited discovery to speed relief where compelling need is shown." 95 F.R.D. at 405. (Now, of course, there is a substantial body of case law applying the "good cause" standard.) *Notaro*, therefore, adapted the traditional four-factor test for preliminary injunctions to apply to the motion for expedited discovery. *Id.* at 405 n.4. *Notaro* "require[d] the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Id.* at 405.

Like the good-cause factors, these factors also support granting expedited discovery here. The first *Notaro* factor, irreparable injury to Plaintiffs, is satisfied for the reasons discussed above. *Supra* Part A.2. The second *Notaro* factor, which requires only "*some* probability of success on the merits," 95 F.R.D. at 405 (emphasis added), is amply satisfied for the reasons stated at length in Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction. ECF No. 15, at 41- 55. The third *Notaro* factor, "some connection between the expedited discovery and the avoidance of irreparable injury," 95 F.R.D. at 405, is satisfied because the requests seek information of central relevance to Plaintiffs' claims for injunctive relief to prevent irreparable harm, and they are carefully tailored to prevent irreparable harm. *Supra*, Part A.1-5. The fourth *Notaro* factor, "some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted," 95 F.R.D. at 405, replicates the harm-balancing analysis of the good-cause standard, which is satisfied for the reasons discussed

above.  *Supra* Part A.6.  Thus, if the Court considers this Motion under the *Notaro* factors, it should grant expedited discovery for largely the same reasons discussed in the good-cause analysis.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that this Court grant their Motion for Expedited Preliminary-Injunction-Related Discovery.  Further, Plaintiffs respectfully request that this Court adopt the following schedule for such expedited discovery:

(1) Within three business days of the date of the Court's ruling on this Motion, if not before, Plaintiffs shall serve interrogatories and document requests on Defendants to discover the identities of federal officials who have been and are communicating with social-media platforms about so-called disinformation, misinformation, malinformation, and any censorship or suppression of speech on social media, and to discover the nature and content of those communications.  In the same time, Plaintiffs may serve third-party subpoenas on a limited number of major social-media platforms seeking similar information about the identity of federal officials who communicate with them, and the nature and content of those communications.

(2) Within fourteen days of service of Plaintiffs' discovery requests, those receiving them shall provide objections and responses, if any, as well as responsive documents to Plaintiffs. Among other grounds, Defendants will have the opportunity to object on the ground that they believe any discovery requests are overbroad or beyond the scope of the expedited discovery sought in Plaintiffs' Motion.

(3) Within ten days following receipt of the objections and responses and responsive documents, the parties shall meet and confer in good faith about any discovery disputes.  At the conclusion of those ten days, the parties shall submit a joint statement to the Court in writing detailing the nature of all remaining disputes, if any.

(4) Also within ten days of receiving objections, responses, and documents, Plaintiffs shall notify Defendants whether, based on the discovery responses received, they seek any depositions relating to this discovery under Rule 30(a)(2) of the Federal Rules of Civil Procedure. The parties shall meet and confer regarding any such deposition requests within the same ten-day period. If the parties do not agree on depositions, at the conclusion of those ten days, the parties shall submit separate statements to the Court stating their positions on whether and why they believe any such deposition(s) should occur.

(5) After receiving those written submissions, the Court shall determine whether and to what extent additional document(s) should be produced, and whether and to what extent Rule 30(a)(2) deposition(s) will be allowed.

Dated: June 17, 2022                                                                 Respectfully submitted,

| | |
|---|---|
| **ERIC S. SCHMITT**<br>**Attorney General of Missouri** | **JEFFREY M. LANDRY**<br>**Attorney General of Louisiana** |
| */s/ D. John Sauer*<br>D. John Sauer, Mo. Bar No. 58721*<br>  *Solicitor General*<br>Justin D. Smith, Mo. Bar No. 63253<br>  *First Assistant Attorney General*<br>Todd Scott, Mo. Bar No. 56614<br>  *Senior Counsel*<br>Michael E. Talent, Mo. Bar No. 73339*<br>  *Deputy Solicitor General*<br>Missouri Attorney General's Office<br>Post Office Box 899<br>Jefferson City, MO 65102<br>Tel: (573) 751-8870<br>John.Sauer@ago.mo.gov<br>*Counsel for State of Missouri* | */s/ Elizabeth B. Murrill*<br>Elizabeth B. Murrill (La #20685)<br>  *Solicitor General*<br>Louisiana Department of Justice<br>1885 N. Third Street<br>Baton Rouge, Louisiana 70804<br>Tel: (225) 326-6766<br>murrille@ag.louisiana.gov<br>*Counsel for State of Louisiana* |

* admitted *pro hac vice*

15

## CERTIFICATE OF SERVICE

I hereby certify that, on June 17, 2022, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

<em>/s/ D. John Sauer</em>