**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

| | |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, and<br><br>STATE OF LOUISIANA ex rel. JEFFREY M. LANDRY, Attorney General,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>     *Defendants*. | Case No. 3:22-cv-01213 |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
EXPEDITED PRELIMINARY INJUNCTION-RELATED DISCOVERY**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.   The Government's Challenges to the States' Standing Are Meritless. ..................................... 2

    A.  The States allege imminent and ongoing injuries. ..................................................... 2

    B.  Plaintiffs' injuries are traceable to Defendants and redressable. ............................. 4

    C.  The Government's *parens patriae* objection is meritless. ....................................... 6

    D.  The Government's reliance on *Schiff*, *Hart*, and *Changizi* is misplaced. .............. 7

    E.  The Government's meritless arguments do not warrant a stay of discovery. .................... 10

II.  The Government's Reliance on the Record Rule Is Meritless. ............................................... 10

III. The States Face Irreparable Harm, and They Have Not Unduly Delayed. ............................. 12

IV.  The Government's Other Arguments Are Meritless. ............................................................ 14

CONCLUSION ....................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) ......................................................................................... 6

*Am. Wildlands v. Kempthorne,*
    530 F.3d 991 (D.C. Cir. 2008) ......................................................................... 12

*Arc of California v. Douglas,* 757 F.3d 975 (9th Cir. 2014) ...................................... 13

*Ass'n of Am. Physicians & Surgeons v. Schiff,*
    518 F. Supp. 3d 505 (D.D.C. 2021) .................................................................. 8

*Backpage.com, LLC v. Dart,*
    807 F.3d 229 (7th Cir. 2015) ........................................................................... 1

*Badon v. U.S. Dep't of Agric.,*
    No. CV 20-460-BAJ-RLB, 2021 WL 3201367 (M.D. La. July 28, 2021) .............. 10

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) ........................................................................................... 2

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
    457 U.S. 853 (1982) ........................................................................................ 2

*Carlin Communications, Inc. v. Moutain States Tel. and Tel. Co.,*
    827 F.3d 1291 (9th Cir. 1987) ........................................................................... 5

*Changizi v. Dep't of Health & Hum. Servs.,*
    No. 2:22-CV-1776, 2022 WL 1423176 (S.D. Ohio May 5, 2022) ......................... 9

*Cuviello v. City of Vallejo,*
    944 F.3d 816 (9th Cir. 2019) ........................................................................... 14

*Davis Mountains Trans-Pecos Heritage Ass'n v. United States Air Force,*
    249 F. Supp. 2d 763 (N.D. Tex. 2003) .............................................................. 11

*Department of Commerce v. New York,*
    139 S. Ct. 2551 (2019) ..................................................................................... 4

*Ellsworth Assocs., Inc. v. United States,*
    917 F. Supp. 841 (D.D.C. 1996) ....................................................................... 1

*Elrod v. Burns,*
    427 U.S. 347 (1976) ........................................................................................ 4

*Friends of the Earth v. Laidlaw,*
    528 U.S. 167 (2000) ................................................................................................ 6

*Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Engineers,*
    No. 3:13-CV-126, 2015 WL 1883522 (S.D. Tex. Apr. 20, 2015) ........................... 10

*Hart v. Facebook Inc.,*
    No. 22-CV-00737-CRB, 2022 WL 1427507 (N.D. Cal. May 5, 2022) ................... 8, 9

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004) ................................................................................................ 2

*Laufer v. Patel,*
    No. 1:20-CV-631-RP, 2021 WL 327704 (W.D. Tex. Feb. 1, 2021) ....................... 10

*Lydo Enters., Inc. v. City of Las Vegas,*
    745 F.2d 1211 (9th Cir. 1984) ............................................................................... 13

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ............................................................................................ 6, 7

*Matal v. Tam,*
    137 S. Ct. 1744 (2017) ........................................................................................... 1

*Medina Co. Envt'l Action Ass'n v. Surface Transp. Bd.,*
    602 F.3d 687 (5th Cir. 2010) ................................................................................. 12

*Opulent Life Church v. City of Holly Springs, Miss.,*
    697 F.3d 279 (5th Cir. 2012) ................................................................................. 13

*Parsons v. U.S. Dep't of Justice,*
    801 F.3d 701 (6th Cir. 2015) .......................................................................... 5, 6, 9

*Pegasus Equine Guardian Assoc. v. United States Army,*
    No. 17-CV-980, 2018 WL 2760339 (W.D. La. Mar. 9, 2018) ............................... 11

*Nat'l Fed. of Indep. Bus. v. Perez,*
    No. 5:16-CV-00066-C, 2016 WL 3766121 (N.D. Tex. June 27, 2016) ................... 11

*Peterson v. City of Greenville,*
    373 U.S. 244 (1963) ................................................................................................ 5

*Secretary of State of Md. v. Joseph H. Munson Co.,*
    467 U.S. 947 (1984) ................................................................................................ 2

*Smith v. Potter,*
    400 F. App'x 806 (5th Cir. 2010) .......................................................................... 10

*South Carolina v. Katzenbach*,
   383 U.S. 301 (1966) ................................................................................................ 6

*Texas v. Biden*,
   20 F.4th 928 (5th Cir. 2021) ............................................................................ 10, 12

*Texas v. Biden*,
   No. 2:21-CV-067-Z, 2021 WL 4552547 (N.D. Tex. July 19, 2021) ....................... 11

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) ................................................................................. 7

**Statutes**

LA. CONST. art. I, § 7 ................................................................................................. 7

MO. CONST. art. I, § 8 ............................................................................................... 7

Mo. Rev. Stat. § 27.060 ............................................................................................ 2

# INTRODUCTION

The Government argues that a "preliminary injunction … would have the perverse effect of suppressing public officials' speech on matters of public concern."  ECF 1, at 1.  Thus, the Government contends that it is the *Government's* freedom of speech that matters, not the free speech of ordinary Americans.  The U.S. Supreme Court has rejected this argument:

> [W]hile the government-speech doctrine is important—indeed, essential—it is a doctrine that is susceptible to dangerous misuse.  If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints.  For this reason, we must exercise great caution before extending our government-speech precedents.

*Matal v. Tam*, 137 S. Ct. 1744, 1758 (2017).  This case exemplifies the Government's "dangerous misuse" of the "government-speech doctrine" to "silence or muffle the expression of disfavored viewpoints."  *Id.*  The Government here seeks "a huge and dangerous extension of the government-speech doctrine."  *Id.* at 1760.  "A government entity … is entitled to say what it wants to say—but only within limits.  It is not permitted to employ threats to squelch the free speech of private citizens."  *Backpage.com, LLC v. Dart*, 807 F.3d 229, 235 (7th Cir. 2015).

The Government also contends that expedited discovery would be "extraordinary" and would "stray from the ordinary course of civil litigation."  *Id.* at 1.  Not so.  The Federal Rules of Civil Procedure "expressly provide[] that courts may expedite discovery."  *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996).  "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings," and "courts have routinely granted expedited discovery in cases involving challenges to constitutionality of government action."  *Id.*; *see also* ECF 18, at 6-7 (citing cases).  The Government cites no authority to the contrary.

1

**ARGUMENT**

**I.     The Government's Challenges to the States' Standing Are Meritless.**

The Government raises three objections to the States' standing: (1) that the States have not alleged any imminent injury; (2) that the States' injuries are not traceable to Defendants' actions, and not redressable for similar reasons; and (3) that the States cannot file a *parens patriae* suit against the federal government.  All these objections lack merit.

**A.     The States allege imminent and ongoing injuries.**

First, the Government contends that the States do not allege any "imminent injury" from social-media censorship, either to the States themselves or their citizens.[1]  ECF 26, at 9; *see also id.* at 17-18.  This is plainly incorrect.  The States allege injuries that are not just imminent, but *already occurring*, and increasing on a daily basis.  *See, e.g.,* ECF 1, ¶¶ 6, 231-240, 253-256.  The States have submitted extensive evidence of such already-occurring injuries—including ongoing permanent suspensions of social-media accounts that are depriving hundreds of thousands of people of access to disfavored viewpoints, permanent removals of First Amendment-protected

---

[1] The Government does not contend that the States lack third-party standing to assert the free-speech rights of their own citizens.  *See* ECF 26.  Nor could it.  Courts routinely allow parties with Article III standing to assert the First Amendment rights of others.  *See, e.g., Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956-57 (1984).  Even if third-party standing doctrine applied, the States would easily satisfy its "close relationship" and "hindrance" test.  *Kowalski*, 543 U.S. at 130.  The States have the requisite "close relationship" because they are authorized by state law to sue to protect their citizens' fundamental rights.  ECF 1, ¶¶ 9-10; *see also, e.g.,* Mo. Rev. Stat. § 27.060.  The "hindrance" is present because the States seek to vindicate the rights of millions of *listeners* on social-media, such as the many people who lose access to speech when speakers are deplatformed or shadow-banned.  *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982).  From such censorship, the States' many citizens, as readers and followers of social-media speech, suffer an injury that is individually too diffuse to warrant filing their own lawsuits, yet the injury is all the greater because it is spread among millions.  *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (holding that, where one plaintiff "is not likely to sustain sufficient … injury to induce him to seek judicial vindication of his [First Amendment] rights," a plaintiff with a greater stake may assert them, lest "infringements of freedom of the press may too often go unremedied").

content from social-media platforms, ongoing de-boosting and shadow-banning, ongoing interference with state agencies' ability to conduct business and provide fair processes for the citizens to petition government, and many others.[2]  Further, the States have submitted extensive evidence of ongoing *self-censorship* on social media, which continues to deprive the States and their citizens of access to disfavored voices and viewpoints in the modern public square.  *See, e.g.,* ECF 10-4, Hoft Decl. ¶ 16; ECF 10-3, Bhattacharya Decl. ¶ 31; ECF 10-9, Changizi Decl. ¶¶ 39, 40-42; ECF 10-10, Kotzin Decl. ¶ 29-31; ECF 10-11, Kitchen Decl. ¶ 35; ECF 10-7, Kheriaty Decl. ¶ 16; ECF 10-4, Kulldorff Decl. ¶ 28.  These injuries are not just "imminent," but they are

---

[2] *See, e.g.,* ECF 10-2, Senger Decl. ¶¶ 4, 7 (permanent Twitter suspension since March 2021); ECF 10-3, Bhattacharya Decl. ¶ 18 (permanent removal of YouTube content), ¶ 31 (ongoing permanent suspensions of many scientists on multiple social-media platforms); ECF 10-4, Kulldorff Decl. ¶¶ 17-19 (permanent removal of Twitter content), ¶ 21 (permanent removal of YouTube content), ¶¶ 22-26 (permanent removal of LinkedIn content), ¶ 28 (ongoing censorship of other scientists and self-censorship by entire scientific groups); ECF 10-5, Hoft Decl. ¶¶ 3, 6-8 (permanent Twitter suspension of account with 400,000 followers), ¶¶ 11-13 (ongoing Facebook censorship), ¶ 14 (permanent removal of YouTube content), ¶ 15 (ongoing censorship of Hoft's social-media *followers*, such as seven-day Facebook suspensions for liking or reposting his content); ECF 10-6, Flesch Decl. ¶¶ 4-6, 11 (ongoing, direct interference with Missouri Attorney General's Office's ability to monitor the concerns of Missouri citizens); ECF 10-7, Kheriaty Decl. ¶ 12 (ongoing artificial suppression of the number of Twitter followers), ¶ 14 (ongoing practice of shadow-banning by Twitter), ¶ 16 (permanent Twitter ban); ECF 10-8, Allen Decl. ¶ 15 (permanent suspension of a talk-radio station's YouTube channel), ¶ 18 (ongoing censorship by Facebook); ECF 10-9, Changizi Decl. ¶¶ 27-35 (ongoing shadow-banning, follower-limitation, and de-boosting by Twitter), ¶ 36 (permanent removal of YouTube content), ¶ 37 (permanent removal of Instagram content); ECF 10-11, Kay Decl. ¶¶ 26-27 (Twitter suspension requiring permanent removal of content for reinstatement), ¶¶ 33-34 (ongoing debooting and shadow-banning on Twitter); ECF 10-12, Hines Decl. ¶ 9 (ongoing censorship by Facebook), ¶ 10 (ongoing limitation in social-media followers), ¶ 12 (Facebook accounts currently "under constant threat of being deplatformed"), ¶ 13 (two Facebook groups, organized for public advocacy, permanently deplatformed and prevented from action to this day); ECF 10-13, Bosch Decl. ¶¶ 6, 10-11 (current interference in Louisiana Department of Justice's ability to follow actual concerns of Louisianans expressed online), ¶ 7 (permanent removal of Louisiana Department of Justice's YouTube content), ¶ 9 (ongoing censorship of Louisiana state legislator's Facebook postings); ECF 10-14, McCollum Decl. ¶ 11-15 (ongoing shadow-banning and blocking of Nextdoor account, a Facebook platform); ECF 10-15, Gulmire Decl. ¶¶ 18-19 (ongoing suppression of Facebook content), ¶ 20 (ongoing suppression of Twitter content).

already being felt, and they increase every day.  A preliminary injunction is warranted when "First Amendment interests were … *in fact being impaired* at the time relief was sought," and "such injury was both threatened and *occurring* at the time of respondents' motion."  *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (emphases added).  So also here.

> **B.** **Plaintiffs' injuries are traceable to Defendants and redressable.**

Next, the Government contends that Plaintiffs' injuries are not traceable to Defendants' actions and thus not redressable, because they supposedly depend upon the intervening decisions of third parties, *i.e.*, the social-media platforms.  ECF 26, at 11.  This argument is meritless.  The Complaint alleges a long series of threats of adverse legal consequences against social-media firms, linked to demands for greater censorship, leading to explicit collaboration between Defendants and social-media firms on censorship policies and practices.  ECF 1, ¶¶ 102-240.  Causation or traceability requires a "showing that third parties will likely react in predictable ways" to government action, *i.e.*, showing "the predictable effect of Government action on the decisions of third parties."  *Department of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019).  It is eminently "predictable" that social-media platforms will "react" to threats of catastrophic legal consequences from those who control all political branches of the federal Government and may retaliate against them with legislation, regulation, and enforcement.

And, even without the requested discovery—which will directly support their allegations—the States have pointed to compelling evidence of direct causation between Defendants' conduct and their injuries.  *See* ECF 15, at 36-37, Part H.5.  Such evidence includes (1) acts of censorship taken in response to direct, public demands by federal officials, *id.* at 36; (2) acts of censorship that occurred immediately after federal officials' calls for censorship, *id.*; (3) acts of censorship that focused on the *topics* for which federal officials have demanded censorship, *id.*; (4) a "pattern

of content censored on social media" that "mirrors closely" Defendants' preferences for censorship, *id.*; (5) patterns of censorship that "ramped up" immediately after Defendants' threats and demands for censorship, *id.* at 37; and (6) the "one-sided" nature of censorship decisions, which target speech critical of the government's preferred polices while leaving even wild falsehoods supporting government narratives untouched, *id.*  The States have ample basis to allege that Defendants' actions have the clear, direct, and immediate effect of inducing social-media platforms to increase censorship—just as one would expect.

When assessing whether government action exists under the First Amendment, courts have repeatedly rejected the argument the Government makes here—*i.e.*, that the plaintiffs supposedly cannot prove that third party would not have violated their rights anyway.  The Sixth Circuit rejected this very argument in the "Juggalos" case, holding that "it is still possible to motivate harmful conduct without giving a direct order to engage in said conduct."  *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015).  Under the "fairly traceable" standard, "the allegation that a defendant's conduct was a motivating factor in the third party's injurious actions satisfies the requisite standard."  *Id.*  "[T]he fact that a defendant was one of multiple contributors to a plaintiff's injuries does not defeat causation."  *Id.*  Likewise, the Ninth Circuit held that the question whether the government official's threat "was the real motivating factor behind" a private company's censorship was "immaterial," because the government coercion remained an "unlawful prior restraint" even if the third-party might have censored on its own.  *Carlin Communications, Inc. v. Moutain States Tel. and Tel. Co.*, 827 F.3d 1291, 1295 (9th Cir. 1987).  *Carlin Communications* relied on *Peterson v. City of Greenville*, 373 U.S. 244, 248 (1963), where the Supreme Court invalidated an ordinance mandating segregation "even assuming … that the manager would have acted as he did independently of the existence of the ordinance."  *Id.*

5

For similar reasons, Plaintiffs' injuries are redressable.  Even if some censorship might continue absent federal threats and collusion, "it need not be likely that the harm will be entirely redressed, as partial redress can also satisfy the standing requirement."  *Parsons*, 801 F.3d at 716. "It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of a suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress."  *Id.* (quoting *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 185–86 (2000)).

## C.     The Government's *parens patriae* objection is meritless.

Citing cases from 1966 and 1982, the Government argues that the States cannot "bring a *parens patriae* suit against the Federal Government."  ECF 26, at 10 (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966), and *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982)).  The Government overlooks more recent precedent that contradicts its argument.  In *Massachusetts v. EPA*, 549 U.S. 497, 520 & n.17 (2007), the Supreme Court upheld the Massachusetts' ability to bring a *parens patriae* suit against the federal government.  *Id.*  Distinguishing *Alfred L. Snapp*'s dicta, the Court reasoned that "there is a critical difference between allowing a State to protect her citizens from the operation of federal statutes … and allowing a State to assert its rights under federal law (which it has standing to do)."  *Id.* Because "Massachusetts does not here dispute that the Clean Air Act *applies* to its citizens; it rather seeks to assert its rights under the Act," *id.*, it was entitled to bring a *parens patriae* suit against the federal government.  So also here, Missouri and Louisiana do not seek to "protect [their] citizens from the operation of federal statutes" or the federal Constitution; rather, they seek to "assert [their] rights under federal law," including the APA and the First Amendment.  *Id.*  The

States "do[] not here dispute that [the First Amendment and the APA] *applies* to [their] citizens;" they "rather[] seek to assert [their] rights under" federal law.  *Id.*

In any event, the States assert at least seven discrete injuries, only two of which constitute quasi-sovereign interests asserted in the States' *parens patriae* capacity.  ECF 15, at 38-41.  For example, the States assert that the federal Defendants' unconstitutional censorship program effectively preempts their own fundamental policies favoring freedom of speech.  ECF 15, at 38; Mo. Const. art. I, § 8; La. Const. art. I, § 7.  This is a direct sovereign injury.  *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015).  Also, the States have suffered direct acts of government-induced censorship in their capacity as speakers.  ECF 15, at 38 (citing Bosch Decl. ¶¶ 7, 9; Flesch Decl. ¶ 7).  State agencies rely on free and open discourse on social media to be able to understand their citizens' concerns.  ECF 15, at 39 (citing Bosch Decl. ¶ 4-6; Flesch Decl. ¶¶ 4-6, 11).  And government-induced censorship of Missouri's and Louisiana's citizens thwarts the States' sovereign interests in having free, fair, and open political processes to allow citizens to organize and petition their state and local governments.  ECF 15, at 39 (citing Hines Decl. ¶¶ 13-14; McCollum Decl. ¶¶ 9-17).  These are all *sovereign* interests that the States assert in their own right, not quasi-sovereign interests asserted as *parens patriae*, yet the Government ignores them.

### D.    The Government's reliance on *Schiff*, *Hart*, and *Changizi* is misplaced.

The Government relies heavily on three out-of-circuit decisions that dismissed supposedly similar claims for lack of standing.  ECF 26, at 4-7, 9.  This reliance is misplaced.  These cases were filed long before most of the States' evidence of a massive federal censorship program became publicly available, and thus they were based on much less extensive allegations of federal censorship activity and joint action, collusion, and coercion.  *See* ECF 1, ¶¶ 172-177, 225-230; *id.* ¶¶ 178-224 (allegations of censorship activity and collusion by DHS officials, none of which were

included in *Schiff*, *Hart*, or *Changizi*).  None of the cases had anything like the States' detailed allegations of censorship, causation, and injury.  ECF 1, ¶¶ 102-240.

Even if they were persuasive, each case is readily distinguishable.  In *Schiff*, the plaintiffs relied on public statements of a single Congressman from 2019—Adam Schiff—and they made no allegations of coordination between Schiff and Twitter.  *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 516 (D.D.C. 2021), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022).  As to causation, the district court held that the plaintiff's theory "depends on an analytic leap based on bald speculation," 518 F. Supp. 3d at 515, and its theory of redressability was based on "pure speculation," *id.* at 516.  The "nebulous" allegations in that case, *id.* at 513, bear no resemblance to the much more extensive, comprehensive, and detailed allegations here.  *See* ECF 1, ¶¶ 102-240.  Even the threats attributed to Congressman Schiff were inchoate at best.  *Schiff*, 23 F.4th at 1034.  The D.C. Circuit concluded that "Appellants offer no causal link that suggests it was an isolated inquiry by a single Member of Congress that prompted policy changes across multiple unrelated social media platforms."  *Id.*  The opposite is true here, where the Complaint alleges a massive, coordinated campaign by senior federal officials to procure censorship of disfavored viewpoints.  *Schiff* also held that "[t]he timeline of events in the amended complaint also undermines any possibility that the companies acted at Representative Schiff's behest."  *Id.* at 1034.  Here, by contrast, the "timeline of events" strongly supports an inference of causation.

*Hart*, likewise, included much narrower factual allegations than the States present here. *Hart* focused on a handful of statements by federal officials that largely *post-dated* the acts of censorship of which Hart complained.  *See Hart v. Facebook Inc.*, No. 22-CV-00737-CRB, 2022 WL 1427507, at *3 (N.D. Cal. May 5, 2022).  *Hart* emphasized that the chronology of events alleged in the Complaint undermined the theory of causation.  *Id.* at *6.  Here, by contrast, the

8

States identify threats going back to 2019, and collusion by Defendants such as Dr. Fauci and NIH beginning early in 2020.  ECF 1, ¶¶ 118, 137-147.  *Hart* also reasoned that the plaintiff had failed to allege that federal officials were directly involved in the specific decision to censor *his* online speech.  *Id.* at *7.  To the extent that *Hart* suggests that a government official must specifically direct a social-media platform to suppress a specific statement to violate the First Amendment, it is wholly unpersuasive.  As the Sixth Circuit held, "it is still possible to motivate harmful conduct without giving a direct order to engage in said conduct."  *Parsons*, 801 F.3d at 714.  Threatening and demanding the censorship of *entire classes* of disfavored viewpoints and speakers is, if anything, more offensive to First Amendment values.

Similarly, *Changizi* is both unpersuasive and distinguishable.  In *Changizi*, the district court placed primary emphasis on the fact that Twitter began censoring COVID-19 "misinformation" in March 2020, while the plaintiffs challenged public statements by Biden Administration officials starting in 2021.  *Changizi v. Dep't of Health & Hum. Servs.*, No. 2:22-CV-1776, 2022 WL 1423176, at *9 (S.D. Ohio May 5, 2022).  Here, the States specifically allege that federal officials—including named Defendants such as Dr. Fauci and NIH—were directly involved in colluding with social-media companies to procure censorship by early 2020.  ECF 1, ¶¶ 137-147.  The district court in *Changizi* also faulted the plaintiffs for not suing more federal defendants, such as Jen Psaki.  *See Changizi*, 2022 WL 1423176, at *9 n.1.  Even if that were relevant, Plaintiffs' Complaint here suffers from no such deficiency.  ECF 1, ¶¶ 15-27 (suing Jen Psaki and fourteen other federal officials and agencies).  Finally, the *Changizi* court complained that, "even assuming that members of the Biden Administration did have 'discussions' with 'technology companies,' it is entirely unclear who participated in these talks, when they occurred, or what they supposedly entailed."  *Id.*  But that is exactly what Plaintiffs' requested discovery will reveal here.

### E.      The Government's meritless arguments do not warrant a stay of discovery.

The Government contends that "[c]ourts … routinely stay discovery when there is a pending motion to dismiss on jurisdictional grounds." ECF 26, at 8. But the cases it cites did not involve a pending preliminary-injunction motion for which discovery was urgently sought to address ongoing irreparable injury. On the contrary, *Smith* held that the district court did not abuse its discretion in staying discovery because "the issues to be examined in the motion to dismiss … were largely legal rather than factual in nature." *Smith v. Potter*, 400 F. App'x 806, 813 (5th Cir. 2010). *Badon* granted an *unopposed* motion to stay discovery pending resolution of a motion to dismiss, where no discovery was sought, and no preliminary-injunction motion was pending. *Badon v. U.S. Dep't of Agric.*, No. CV 20-460-BAJ-RLB, 2021 WL 3201367, at *2 (M.D. La. July 28, 2021). And *Laufer* involved no pending preliminary-injunction motion or threat of irreparable harm; rather, it stayed discovery disputes pending resolution of a challenge to plaintiffs' standing. *Laufer v. Patel*, No. 1:20-CV-631-RP, 2021 WL 327704, at *2 (W.D. Tex. Feb. 1, 2021). The Government cites no case staying discovery while a preliminary-injunction motion was pending.

## II.    The Government's Reliance on the Record Rule Is Meritless.

The Government contends that any discovery should be limited to the administrative record before each agency. ECF 26, at 12. But Government also contends that there is no final agency action and thus no administrative record to produce. *Id.* at 13. This is "a game of heads I win, tails I win, *and* I win without even bothering to flip the coin." *Texas v. Biden*, 20 F.4th 928, 999 (5th Cir. 2021), *rev'd on other grounds*, No. 21-954 (U.S. June 30, 2022).

In any event, "the recognized exceptions to the record rule that permit consideration of evidence not included in the administrative record the agency submits to the court" include "cases where relief is at issue, *especially at the preliminary injunction stage*." *Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Engineers*, No. 3:13-CV-126, 2015 WL 1883522, at *2 (S.D.

10

Tex. Apr. 20, 2015) (emphasis added).  "District courts within this circuit [*i.e.*, the Fifth] routinely allow extrarecord evidence to be introduced under the … '*Davis Mountain*' circumstances," including "[i]n cases where relief is at issue, especially at the preliminary injunction stage." *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *2 (N.D. Tex. July 19, 2021); *see also Davis Mountains Trans-Pecos Heritage Ass'n v. United States Air Force*, 249 F. Supp. 2d 763, 776 (N.D. Tex. 2003); *Pegasus Equine Guardian Assoc. v. United States Army*, No. 17-CV-980, 2018 WL 2760339, at *2 (W.D. La. Mar. 9, 2018) (considering extra-record evidence where "the court [wa]s asked to grant a preliminary injunction in favor of plaintiff").

Therefore, the "Court may receive and consider evidence outside of the administrative record relating to Plaintiffs' … application[] for a preliminary injunction." *Nat'l Fed'n of Indep. Bus. v. Perez*, No. 5:16-CV-00066-C, 2016 WL 3766121, at *23 (N.D. Tex. June 27, 2016). "Indeed, at the preliminary injunction stage, it is necessary to consider evidence concerning, for example, the substantial threat of irreparable harm, the balance of hardships, and the impact on the public interest at stake.  [The Government] has not shown that its administrative record could possibly contain evidence on these issues, which the Court must consider in determining whether to grant preliminary injunctive relief." *Id.* at *24.  This exception for "cases where relief is at issue, especially at the preliminary injunction stage" is doubly applicable here.  Not only is the discovery sought in aid of a preliminary injunction, but the motion seeks discovery for the purpose of allowing the Court to fashion appropriate and effective relief.  ECF 18, at 3.

Likewise, the Government's case holds that "[s]upplementation of the administrative record" is permitted if "the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina Co. Envt'l Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir.

2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). Such "unusual circumstances" include, *inter alia*, situations when "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision," "(2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors," or "(3) the agency failed to explain administrative action so as to frustrate judicial review." *Id.* All three factors apply here. Federal officials have conducted an unlawful censorship program, largely in secret and out of the public eye. They have thus "deliberately [and] negligently" concealed the scope of their activities, they have "failed to explain administrative action so as to frustrate judicial review," and the scope of their censorship activities provides critical "background information" needed to craft effective relief. *Id.*

## III.    The States Face Irreparable Harm, and They Have Not Unduly Delayed.

The Government argues that the States' undue delay before filing suit undercuts their claim of irreparable harm. ECF 26, at 15-17. This is another "heads I win, tails I win" argument. *Texas*, 20 F.4th at 999. The Government contends that the States should have sued soon after July 15, 2021, when Jen Psaki made her notorious "we're flagging problematic posts for Facebook" comments. ECF 26, at 16-17. But the Government *also* relies heavily on *Changizi* and *Hart* – lawsuits that were filed after Jen Psaki's comments, that cited and relied on those comments, and that were dismissed for lack of standing. In other words, the Government argues that the States should have filed their lawsuit a year earlier, when (the Government also contends) there was not enough evidence in the public record for a complaint to survive a motion to dismiss. On the contrary, the States acted reasonably in filing suit after carefully amassing publicly available evidence of federal censorship activities that became available *after* Jen Psaki's notorious comments. *See, e.g.,* ECF 1, ¶¶ 102-240; ECF 15, at 8-41. The States filed their lawsuit on May 5, 2022—within one week of Secretary Mayorkas's announcement of the "Disinformation

12

Governance Board" within DHS, which provided an extremely powerful confirmation that federal officials are conducting a massive social-media censorship program, largely hidden from public view. *See* ECF 1, ¶ 222.

The States have acted expeditiously by any standard, including the Fifth Circuit's. *See, e.g., Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that a "four-month delay" was not excessive). Likewise, any "delay" by the States is principally attributable to the fact that *Defendants* have concealed the vast majority of their censorship activities from the public eye, requiring the States to reconstruct the evidence laboriously from public comments and media reports. ECF 1, ¶¶ 102-240. The fact that Defendants have concealed their unlawful activity undercuts their claim of supposed "undue delay." *See Opulent Life Church*, 697 F.3d at 297 (no undue delay where "the majority of Opulent Life's four-month delay was caused by Holly Springs's refusal to produce a copy of its zoning ordinance").

Even if there had been no concealment, the argument would be meritless. "Usually, delay is but a single factor to consider in evaluating irreparable injury; courts are 'loath to withhold relief solely on that ground.'" *Arc of California v. Douglas*, 757 F.3d 975, 990–91 (9th Cir. 2014) (quoting *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984)). "Although a plaintiff's failure to seek judicial protection can imply the lack of need for speedy action, such tardiness is not particularly probative in the context of ongoing, worsening injuries." *Id.* Where "the alleged injuries" were inflicted "over a period of time and having a cumulative impact," "the magnitude of the potential harm becomes apparent gradually, undermining any inference that the plaintiff was 'sleeping on its rights'." *Id.* at 990-91 (quotation marks omitted). This is particularly true with respect to ongoing injuries to the freedom of expression, including self-censorship injuries. "[S]uch tardiness is not particularly probative in the context of ongoing, worsening

13

injuries," such as where the plaintiff "restrained his own speech" in a way that "contributed to the constitutional injury he suffered." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).

Indeed, the fact that the States allege First Amendment injuries is decisive here. Courts "do not require a strong showing of irreparable harm for constitutional injuries." *Cuviello*, 944 F.3d at 833. "In situations where the plaintiff's First Amendment rights are being chilled daily, the need for immediate injunctive relief without further delay is, in fact, a direct corollary of the matter's great importance." *Id.* (cleaned up). Allegations of undue delay are given little weight in such cases: "That [the States] will suffer irreparable harm absent relief is demonstrated by a long line of precedent establishing that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.*

## IV. The Government's Other Arguments Are Meritless.

Finally, the Government argues that discovery will be unduly burdensome for its agencies, and that some documents sought may be subject to a claim of executive privilege. ECF 26, at 19-20. The Court should view with great skepticism the argument that the Government, which has committed tremendous resources to trampling the free-speech rights of millions of Americans, lacks the resources to respond to document requests and interrogatories. In any event, the States' proposed schedule allows the Government the opportunity to raise both unduly-burdensome and privilege objections to specific discovery requests once they are served, and the Government is free to raise such objections then. ECF 18, at 15.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that this Court grant their Motion for Expedited Preliminary-Injunction-Related Discovery, ECF 17.

Dated: July 6, 2022

ERIC S. SCHMITT
**Attorney General of Missouri**

*/s/ D. John Sauer*
D. John Sauer, Mo. Bar No. 58721*
  *Solicitor General*
Justin D. Smith, Mo. Bar No. 63253
  *First Assistant Attorney General*
Todd Scott, Mo. Bar No. 56614
  *Senior Counsel*
Michael E. Talent, Mo. Bar No. 73339*
  *Deputy Solicitor General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
John.Sauer@ago.mo.gov
*Counsel for State of Missouri*


* admitted *pro hac vice*

Respectfully submitted,

JEFFREY M. LANDRY
**Attorney General of Louisiana**

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill (La #20685)
  *Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
*Counsel for State of Louisiana*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 6, 2022, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ D. John Sauer*