## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**STATE OF MISSOURI ET AL**         **CASE NO.  3:22-CV-01213**

**VERSUS**         **JUDGE TERRY A. DOUGHTY**

**JOSEPH R BIDEN JR ET AL**         **MAG. JUDGE KAYLA D. MCCLUSKY**

### MEMORANDUM RULING AND ORDER

Before this Court is a Motion for Expedited Preliminary Injunction-Related Discovery [Doc. No. 17] filed by the States of Missouri and Louisiana ("Plaintiff States").  An Opposition [Doc. No. 26] was filed by Government Defendants[1] on July 1, 2022.  A Reply [Doc. No. 30] was filed by Plaintiff States on July 7, 2022.

For the reasons set forth herein, Plaintiff States' Motion for Expedited Preliminary Injunction-Related Discovery is GRANTED in accordance with the schedule set out herein.

## I.     BACKGROUND

On May 5, 2022, Plaintiff States filed a Complaint [Doc. No. 1] against Government Defendants.  In the Complaint, Plaintiff States allege that Government Defendants have colluded with and/or coerced social media companies to suppress disfavored speakers, viewpoints, and content on social media platforms by labeling the content "disinformation," "misinformation," and "malinformation."  Plaintiff States allege the suppression of disfavored speakers, viewpoints, and contents constitutes government action and therefore violates Plaintiff States' freedom of speech in violation of the First Amendment to the United States Constitution.

---

[1] Government Defendants consist of Joseph R. Biden, Jr., Jennifer Rene Psaki, Vivek H. Murthy, Xavier Becerra, Department of Health and Human Services, Anthony Fauci, National Institute of Allergy and Infectious Diseases, Centers for Disease Control and Prevention, Alejandro Mayorkas, Department of Homeland Security, Jen Easterly, Cybersecurity and Infrastructure Security Agency, and Nina Jankowicz.

The Complaint further alleged Plaintiff States have created a "Disinformation Governance Board" ("DGB") within the Department of Homeland Security, which is intended to be used and will be used to induce, label, and pressure the censorship of disfavored content, viewpoints, and speakers on social-media platforms.

In the Complaint, Plaintiff States set forth examples of suppression of free speech, which include:

1.    The Hunter Biden laptop story prior to the 2020 Presidential election;

2.    Speech about the lab-leak theory of COVID-19's origin;

3.    Speech about the efficiency of masks and COVID-19 lockdowns; and

4.    Speech about election integrity and the security of voting by mail.

Additionally, the Complaint sets forth actions by specific Government Defendants that have been taken to suppress free speech.  Plaintiff States allege that free speech is the bedrock of American liberty, and Government Defendants are in violation of the First Amendment to the U.S. Constitution in attempting to suppress free speech by labeling the speech as "misinformation."

Plaintiff States bring this action to enforce Plaintiff States' own laws and constitutions on behalf of themselves and on behalf of their citizens ("*parens patriae*").

The Complaint alleges:

Count One – Violation of the First Amendment against all Government Defendants;

Count Two – Action in Excess of Statutory Authority against all Government Defendants;

Count Three – Violation of the Administrative Procedures Act against the  HHS Defendants; and

Count Four -   Violation of the Administrative Procedures Act against the  DHS Defendants.

On June 14, 2022, Plaintiff States filed a Motion for Preliminary Injunction [Doc. No. 10] asking to prohibit Government Defendants from taking steps to demand, urge, encourage, pressure, or otherwise induce any social-media company or platform to censor, suppress, remove, de-platform, suspend, shadow-ban, de-boost, restrict access to content, or take any other adverse action against any speaker, content, or viewpoint expressed on social media.  On June 17, 2022, Plaintiff States filed the Motion for Expedited Preliminary Injunction-Related Discovery [Doc. No. 17].  Any response to the Motion for Preliminary Injunction has been stayed pending disposition of the request for discovery.[2]

## II.    LAW AND ANALYSIS

### A.    Standing

The first issue that must be addressed is standing.  Government Defendants argue this Court does not have jurisdiction because Plaintiff States have no standing.  Courts are instructed to examine their jurisdiction at every stage of the litigation.[3]  At the pleading stage, the plaintiff's burden is to allege a plausible set of facts establishing jurisdiction.[4]  Government Defendants additionally maintain discovery should be stayed pending the filing and ruling of the Government Defendants' expected motion to dismiss.

Government Defendants argue Plaintiff States do not have the authority to bring a *parens patriae* suit against the Federal Government.  Government Defendants also argue that Plaintiff States do not meet the standing requirements of injury in fact, traceability, and redressability.  Plaintiff States maintain in addition to a *parens patriae* suit on behalf of its citizens, it is also bringing a suit to enforce its own laws and constitution.

---

[2] [Doc. No. 19].
[3] *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011).
[4] *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021).

This Court must determine whether it has judicial power to hear this case.  The United States Constitution limits exercise of judicial power to certain "cases" and "controversies."[5]

Under the doctrine of "standing," a federal court can exercise judicial power only where a plaintiff has demonstrated that it (1) suffered an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable decision. *Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  The party invoking federal jurisdiction bears the burden of establishing these elements. *Id*. at 561.

The Plaintiffs in this case are two states.  States are not normal litigants for purposes of invoking federal jurisdiction.  *Massachusetts v. E.P.A.,* 549 U.S. 497, 518, 127 S. Ct. 1438, 167 L. Ed. 2d 248 (2007).  Rather, a state is afforded "special solicitude" in satisfying its burden to demonstrate the traceability and redressability elements of the traditional standing inquiry whenever its claims and injury meet certain criteria. *Id*. at 520; *Texas v. United States*, 809 F.3d 134, 151–55 (5th Cir. 2015), *as revised* (Nov. 25, 2015).  Specifically, a state seeking special solicitude standing must allege that a defendant violated a congressionally accorded procedural right that affected the state's "*quasi-sovereign*" interests in, for instance, its physical territory or lawmaking function.  *Massachusetts*, 549 U.S. at 520–21; *Texas*, 809 F.3d at 151–55.

### 1. Injury in Fact

A plaintiff seeking to establish injury in fact must show that it suffered "an invasion of a legally protected interest" that is "concrete," "particularized," and "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635

---

[5] U.S. Constitution Art. III Section 2.

4

(2016), *as revised* (May 24, 2016).  For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."  *Id*. at 1548.  A "concrete" injury must be "de facto," that is, it must "actually exist."  "Concrete" is not however, necessarily synonymous with "tangible."  Intangible injuries can nevertheless be "concrete."  *Id.,* at 1548-49.

Plaintiff States have alleged both individual and *quasi-sovereign parens patriae* interests.

This Court finds the Plaintiff States' alleged injuries are both particularized and concrete.  Plaintiff States have a "*parens patriae*" standing and/or a *quasi-sovereign* interest in protecting their citizens from having rights of free speech suppressed.

Additionally, the Plaintiff States have standing to regulate enforcement of their laws and constitution, which guarantees residents of Missouri and Louisiana free speech.  The alleged injuries are "imminent" and allegedly "on-going," due to allegations of social media suspensions, removals of disfavored viewpoints, and censorship.

### 2.      Traceability

Plaintiff States must show a "fairly traceable" link between their alleged injuries and Government Defendants alleged actions.  As a general matter, the causation required for standing purposes can be established with "no more than de facto causality."  *Dep't of Com. v. New York,* 139 S. Ct. 2551, 2556, 204 L. Ed. 2d 978 (2019).  The plaintiff need not demonstrate that the defendant's actions are "the very last step in the chain of causation."  *Bennett v. Spear*, 520 U.S. 154, 169–70, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997).

Plaintiff States easily meet this requirement based on allegations of suppression of disfavored speakers, viewpoints, and content of its citizens, and based upon alleged violations of Plaintiffs States' laws and constitutions.

### 3. Redressability

The redressability element of standing to sue requires a plaintiff to demonstrate "a substantial likelihood that the requested relief will remedy the alleged injury in fact." *El Paso Cty., Texas v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020), *cert. denied sub nom. El Paso Cty., Texas v. Biden,* 141 S. Ct. 2885, 210 L. Ed. 2d 991 (2021), *reh'g denied,* 142 S. Ct. 51, 210 L. Ed. 2d 1019 (2021).

Plaintiff States meet this requirement.  Stopping of the alleged suppression of supposed disfavored speakers, viewpoints, and content would address Plaintiff States' alleged injuries.

### 4. Special Solicitude

Although this Court has found that Plaintiff States have proven standing through the normal inquiry, they also can establish standing as a result of special solicitude.  Plaintiff States assert a constitutionally bestowed right (free speech), and the government action at issue affects the Plaintiff States' *quasi-sovereign* interests (of protecting its citizens from suppression of free speech).

Additionally addressed herein is Government Defendants' contention that the Plaintiff States do not have the authority to bring a *parens patriae* suit against the Federal Government,[6] arguing the Federal Government is the ultimate *parens patriae* of every citizen.  The States of Missouri and Louisiana have the authority to bring suits on behalf of their citizens.  In *Massachusetts v. EPA*, 549 U.S. 497, 520 and n.17 (2007), the U.S. Supreme Court upheld the State of Massachusetts' ability to bring a *parens patriae* suit against the federal government where the states seek to assert its rights under federal law.  In footnote 17, in addressing Chief Justice Roberts' argument that there was significant doubt on a States standing to assert a *quasi-*

---

[6] [Doc. No. 26, pp 15-16]

*sovereign* interest against the Federal Government, a majority of the Court specifically held that a State has standing to assert their rights under federal law, even if it applies to its citizens. The First Amendment obviously applies to the citizens of Missouri and Louisiana, so Missouri and Louisiana have the authority to assert those rights.

This Court further discusses the cases cited by Government Defendants that dismissed similar suits for lack of standing.[7]  The Plaintiff in *Hart* was a suit by an individual against Facebook, Twitter, President Joe Biden, Surgeon General Vivek Murthy, the Department of Health and Human Services, and the Office of Management and Budget. *Hart* alleged Facebook and Twitter flagged his posts as misinformation about COVID-19 and suspended and locked his accounts in violation of the First Amendment under the U.S. Constitution and the Free Speech Clause of the California Constitution.

In addition to the claim against Facebook and Twitter, *Hart* alleged the Government Defendants directed social media platforms to make changes resulting in his posts being flagged as "misinformation" and ultimate suspension.  The Motion to Dismiss filed by the government defendants was granted because *Hart* was unable to set forth facts plausibly alleging the government was a joint participant in the activity and that the government coerced Facebook and Twitter to take these actions.  Therefore, the Court lacked standing because *Hart's* claims were neither "fairly traceable" nor "redressable" by *Hart's* suit.

In *Association of American Physicians and Surgeons, the Association of American Physicians and Surgeons* ("AAPS") an individual, Katrina Verreli ("Verreli") alleged Congressman Adam Schiff ("Schiff") violated her First Amendment rights by coercing

---

[7] *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 510 (D.D.C. 2021), aff'd 23 F.4th 1028 (D.C. Cir. 2022); *Hart v. Facebook, Inc.*  2022 WL 1427507 (N.D. Cal. May 5, 2022); and *Changizi v. Dept. of Health & Hum. Servs.* 2022 WL 1423176 (S.D. Ohio, May 5, 2022).

technology companies to discriminate against AAPS.  Verreli alleged Schiff's actions limited her First Amendment right to access information about vaccines.

The Court dismissed the plaintiff's claims against Schiff based upon standing.[8]  In finding lack of standing, the Court found the plaintiff had not alleged an injury in fact which was sensually related to defendant's conduct.

The court also noted that standing was "ordinarily substantially more difficult to establish" when an individual plaintiff asserts injuries arising from the regulation of someone else.[9]

In *Changizi,* three individual Twitter users were suspended by Twitter for false or misleading COVID-19 information.  The plaintiffs sued the United States Department of Health and Human Services ("DHHS") and the Surgeon General and Secretary of DHH, alleging defendants "instrumentalized" or "commandeered" Twitter to censor and chill online criticism of the government's response to COVID-19.

Like *Hart* and *Association of American Physicians and Surgeons*, the plaintiffs were unable to plausibly allege they sustained an injury-in-fact which was causably related to defendants' conduct.

Each of the above cases were factually intensive.  Based upon the specific facts of each case, the court found the plaintiffs had not plausibly alleged injury-in-fact and causation.  In the present case, this Court finds Missouri and Louisiana have plausibly alleged injury-in-fact, causation, and redressability.  The Plaintiff States' eighty-four-page Complaint sets forth much more detailed allegations and evidence against federal agencies and officials than the cases cited by Government Defendants.

---

[8] Suit was also dismissed on the basis of the Speech and Debts clause of the U.S. Constitution.
[9] 518 F. Supp. 3d at 513

If Missouri and Louisiana do not have standing under the facts alleged, when would anyone ever have standing to address these claims?  In conclusion, the Court finds that the Plaintiff States have standing and that this Court has the judicial power to hear this case**.**

### B.  Expedited Discovery

Federal Rule of Civil Procedure 26 Article(d) states:

Duty to Disclose, General Provisions Governing Discovery

(d) Timing and Sequence of Discovery.

1) Timing.  A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by Court order.

Plaintiff States seek a court order allowing expedited discovery.  Although the Fifth Circuit has not explicitly adopted a standard to determine whether a party is entitled to expedited discovery, several districts within the Fifth Circuit have expressly utilized the "good cause" standard when addressing this issue.  The "good cause" analysis takes into consideration such factors as the breadth of discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request was made.[10]  Courts utilizing the "good cause" standard examine the discovery request on the entirety of the record to date, and the reasonableness of the request in light of all the surrounding circumstances.[11]

Expedited discovery is not the norm.  Courts only allow it in limited circumstances. Courts have allowed expedited discovery when there is some showing of irreparable harm, or

---

[10] *GHX Industrial, LLC v. Servco Hose and Supply, LLC*, 2020 WL 1492920; *Elargo Holdings, LLC v. Doe*, 318 F.R.D. 58, 61 (M.D. La. 2016); *Wilson v. Samson Contour Energy E&P, LLC*, 2014 WL 2949457, at 2 (W.D. Louisiana 2014).
[11] *Wilson*, 2014 WL 2949457 at 2.

when there is a risk that evidence would be lost or destroyed.[12]  The factors used by good cause typically exists where the need for expedited discovery outweighs the prejudice to the responding party.[13]

When a party seeks expedited discovery for the purpose of an injunction hearing, factors commonly considered in determining the reasonableness of expedited discovery request include: (1) whether the preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose of requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.[14]

In the Motion for Expedited Preliminary Injunction-Related Discovery, Plaintiff States ask for the following expedited discovery:

(1)     Targeted interrogatories and document requests to Government Defendants requesting the identities of federal officials who have or are communicating with social-media platforms about disinformation, misinformation, malinformation, or any form of censorship or suppression of online speech;

(2)     Targeted interrogatories and document requests to Government Defendants requesting the nature and content of such federal officials' communications with such social-media platforms, including both currently known and unknown federal officials;

(3)     Serve third-party subpoenas on a limited number of major social-media platforms seeking similar information about the identity of federal officials who communicate with them, and the nature and content of those communications;

---

[12] *Id at 3.*
[13] *Soileau v. GPS Maine, LLC*, 2020 WL 9078308 at 2 (E.D. Louisiana 2020).
[14] *Amos v. Taylor*, 2020 WL 5809972 at 5 (N.D. Miss. 2020); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015).

(4)     Allowing objections and responses to the discovery requests, conferring in good faith about discovery disputes and submit a joint statement to the Court detailing the nature of any remaining disputes;

(5)     The Court rule on all objections;

(6)     After any objections are resolved by the Court, Plaintiff States are to notify Government Defendants, based upon discovery responses received, whether Plaintiff States seeks to take any depositions;

(7)     The parties will again confer in good faith and submit a joint statement to the Court of any remaining disputes;

(8)     The Court will rule on all objections.

### 1.     Good Cause

This Court will address whether Plaintiff States have shown "good cause" for expedited discovery.  First, the Court will address Government Defendants' contention that no discovery should be permitted except as to the administrative record before each federal agency.  Although generally discovery is not allowed beyond the Administrative Record ("AR"), a Court may receive and consider evidence outside the AR relating to a request for a preliminary injunction, and in circumstances where the moving party demonstrates unusual circumstances.[15]

Currently, there is no AR in this case, and the Court is not sure there will ever be one for this claim.  In any event, the need for a Preliminary Injunction would likely be thwarted if the Court were to wait for all of the Government Defendants to provide an AR before determining whether discovery is necessary.  This Court believes that determination needs to be made now, not after waiting for an AR to be produced.

---

[15] *Pegasus Equine Guardian Assoc. v. United States Army*, 2018 WL 2760339 (W.D. La. March 9, 2018); *Medina Co. Envt'l Action Ass'n. v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010).

**(i)      Whether a preliminary injunction is pending**

The first factor for "good cause" is satisfied as Plaintiff States filed a Motion for

Preliminary Injunction [Doc. No. 10] on June 14, 2022.

**(ii)      Breadth of Discovery Requests**

At this point, Plaintiff States seek to issue interrogatories and document requests to

Government Defendants; and to serve third party subpoenas on a limited number of social media

platforms.  Whether depositions will be taken will be addressed later.  Plaintiff States seek

identity of federal officials communicating with these social media platforms including the

nature and content of those communications.  Plaintiff States seek similar information from the

social media platforms.

This is a complicated case.  The proposed discovery requests are targeted to the specific

allegations of Plaintiff States' Complaint.  The requests are reasonable.

**(iii)      Purpose of Requesting the Expedited Discovery**

The purpose of the proposed expedited discovery is to gain additional evidence to prove

the allegations of Missouri and Louisiana for purposes of the pending Motion for Preliminary

Injunction.  The proposed discovery is tailored to the allegations Plaintiff States seek to prove

and is not a "fishing expedition."

**(iv)      Burden on Government Defendants**

Certainly, it would be time-consuming to produce the information requested.  However,

this issue involves the alleged violation of a constitutional right – the right of free speech.

Therefore, this Court feels the need for this information outweighs the burden to Government

Defendants.

(v)      **Discovery Process**

The last factor involves the question of how far in advance of the typical discovery process the request was made.  The Complaint was filed on May 5, 2022.  The Motion for Preliminary Injunction was filed on June 14, 2022.  The Motion for Expedited Preliminary Injunction-Related Discovery was filed on June 17, 2022.

The request was made far in advance of the typical discovery process and is important to the resolution of the Motion for Preliminary Injunction.

Therefore, this Court believes that Missouri and Louisiana have shown good cause for expedited preliminary injunction discovery.

**C.      Scope of Expedited Discovery**

Although there is certainly a "need for speed" for discovery related to a preliminary injunction, the Plaintiff States' proposed schedule is too fast.  Therefore, this Court adopts the following schedule for expedited preliminary injunction–related discovery and/or motion for preliminary injunction.

(1)      Within five business days after this ruling, Plaintiff States may serve interrogatories and document requests upon Government Defendants and third party-subpoenas on up to five major social-media platforms seeking the identity of federal officials who have been and are communicating with social-media platforms about disinformation, misinformation, malinformation, and/or any censorship or suppression of speech on social media, including the nature and content of those communications.

(2)      Within thirty days of Plaintiff States' discovery requests, responses and/or objections shall be provided by Government Defendants and/or the major social-media platforms.

13

(3)      Within ten days following receipt of the objections and/or responses, the parties shall meet and confer in good faith about discovery disputes.  A joint statement to the Court shall be submitted detailing the nature of the remaining disputes.

(4)      Within seven days from the filing of said joint statement, the Court shall rule on any remaining objections.

(5)      Withing ten days after the production of any objected-to responses, Plaintiff States shall notify Government Defendants of any depositions the Plaintiff States wish to take.

(6)      Within seven days thereafter, the parties shall meet and confer regarding any deposition requests.  If the parties do not agree on the deposition(s), the parties shall file a joint statement as to their positions as to the depositions.

(7)      Within seven days from date of filing of said joint statement, the Court shall rule on the deposition requests.

(8)      Plaintiff States will have thirty days after the Court's ruling to take any authorized depositions.

(9)      Within twenty days after all authorized depositions are taken, Plaintiff States will be allowed to supplement their previous memorandum regarding the need for a preliminary injunction.

(10)     Within twenty days after Plaintiff States files their supplemental memorandum, Government Defendants may file a supplemental memorandum addressing the requests for preliminary injunction.

(11)     Within ten days after Government Defendants' supplemental memorandum, the Plaintiff States may file a reply.

(12)     In due course, this Court will rule on Plaintiff States' Motion for Preliminary

Injunction.

## III.     CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that in accordance with the terms and conditions set forth herein,

Plaintiff States' Motion for Expedited Preliminary Injunction-Related Discovery [Doc. No. 17] is

**GRANTED.**

**MONROE, LOUISIANA,** this 12th day of July 2022.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

15