NON-CONFIDENTIAL // REDACTED

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| **The State of Missouri and the State of Louisiana,** | |
| *Plaintiffs*, | |
| v. | Civil Action No. 22-cv-1213 |
| **President Joseph R. Biden, Jr., in his official capacity as President of the United States of America,** *et. al.,* | |
| *Defendants*. | |

### DEFENDANTS' COMBINED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF EXPEDITED PRELIMINARY-INJUNCTION RELATED INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the U.S. District Court for the Western District of Louisiana, Defendants, by and through counsel, provide the following combined objections and responses to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories ("Plaintiffs' First PI Interrogatories" or "Interrogatories") served on July 18, 2022 on the following Defendants:  Dr. Anthony Fauci; Centers for Disease Control and Prevention ("CDC"); Surgeon General Vivek H. Murthy; U.S. Department of Health and Human Services ("HHS"); National Institute of Allergy and Infectious Diseases ("NIAID"); U.S. Department of Homeland Security ("DHS"); Cybersecurity and Infrastructure Security Agency ("CISA"); Jen Easterly, Director of CISA; Nina Jankowicz (former Executive Director of the DHS Disinformation Governance Board); and White House Press Secretary Karine Jean-Pierre (collectively, "Defendants").  Consistent with the agreement of the parties, Defendants have combined the objections and responses to address duplication of certain interrogatories among

NON-CONFIDENTIAL // REDACTED

Defendants but have addressed each interrogatory for each Defendant to which each interrogatory is directed.

Defendants' combined objections and responses are based on information known to Defendants at this time and are made without prejudice to additional objections should Defendants subsequently identify additional grounds for objection. The objections have been formulated in contemplation of Federal Rule of Civil Procedure 26(b)(1), which generally permits discovery of matters not privileged that may be relevant to the claims or defenses in a civil action. In presenting their objections, Defendants do not waive any further objection in pretrial motions practice or at trial to the admissibility of evidence on the grounds of relevance, materiality, privilege, competency, or any other appropriate ground.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Defendants object to the definitions of "Content Modulation," and the related term "Misinformation," including to the extent that Plaintiffs' definition of "Content Modulation" covers actions by Social Media Companies *beyond* those taken against content containing Misinformation and against users posting content containing Misinformation (such as actions taken as to any post on "efficacy of COVID-19 restrictions" or on "security of voting by mail"). For purposes of these Responses and Objections, Defendants generally define "Misinformation" in a manner consistent with Plaintiffs' definition of that term:  "any form of speech . . . considered to be potentially or actually incorrect, mistaken, false, misleading, lacking proper context, disfavored, having the tendency to deceive or mislead . . . including but not limited to any content or speech considered by any federal official or employee or Social-Media Platform to be 'misinformation,' 'disinformation,' 'malinformation,' 'MDM,' 'misinfo,' 'disinfo,' or 'malinfo.'" *See* Interrogatories, Definition O.

2

NON-CONFIDENTIAL // REDACTED

2.      Defendants object to the definitions of CDC, CISA, DHS, HHS, NIAID, and White House Communications Team to the extent those definitions include "any . . . agent," "contractors" and "any subordinate agency or entity" of those agencies on the ground that those definitions are overbroad and may include persons and entities that are not under the supervision or control of any Defendant.  In particular, HHS and DHS also object to the extent any Interrogatory seeks a Department-wide response as unduly burdensome and disproportionate to the needs of the case.  As the least burdensome sources of information consistent with Rules 26 and 33 that is potentially responsive to the Interrogatories, HHS has identified the Office of the Surgeon General (OSG), NIAID, and CDC, and DHS has identified its Headquarters (HQ).

3.      The individual Defendants Dr. Fauci, Dr. Murthy, Ms. Easterly, and Ms. Jean-Pierre, construe the Complaint and Amended Complaint as seeking relief against them each in their official capacity as head of agencies of various components of agencies or other offices of the Federal Government, including NIAID, HHS, CISA, and the Office of the White House Press Secretary, and, accordingly, each individual Defendant objects or responds to each Interrogatory exclusively through his or her corresponding agency Defendant.  Individual Defendant Jankowicz has no successor in office, and the Disinformation Governance Board is paused.  Moreover, DHS interprets any relief sought as against Ms. Jankowicz in her official capacity within DHS HQ, and, accordingly, she objects or responds to each Interrogatory exclusively through DHS. Defendants object to any Interrogatory seeking from an individual Defendant a response that can be provided by that individual Defendant's corresponding agency in a manner that is less burdensome to Defendants and proportional to the needs of the case.

4.      Defendants object to the definition of "communication" to the extent it is meant to cover anything beyond e-mail exchanges, as overbroad and disproportional to the needs of the

NON-CONFIDENTIAL // REDACTED

case, particularly in light of the expedited nature of the discovery now ongoing

5.      Defendants object to the definition of "document" to the extent it includes "documents retained on personal devices and/or in personal e-mail accounts or other personal accounts." Documents found on personal devices or within electronic personal accounts would not be in the custody or control of any Defendant.  Defendants further object on the grounds that this definition is an unwarranted invasion of the privacy of non-parties and seeks information protected by the Privacy Act, 5 U.S.C. § 552a, et seq.

6.      Defendants object to the definition of "identify" to the extent it calls for disclosure of information covered by any applicable privilege or protection over, among other elements, a person's "email address, and present or last known address and telephone number"

7.      Defendants object to the use of the undefined term "Meeting" in a manner incompatible with, and calculating to expand the obligations imposed by, the Government in the Sunshine Act, 5 U.S.C. 552b.

8.      Defendants object to the definition of "Social-Media Platform" as overbroad, because it includes "*any* organization that provides a service for public users to disseminate . . . content . . . to other users or the public," along with any "contractors, or any other person . . . acting on behalf of the Social-Media Platform . . . as well [as] subcontractors or entities used to conduct fact-checking or any other activities relating to Content Modulation." Such a definition is overbroad because the Complaint (and the Amended Complaint) contains no nonconclusory allegation that Defendants communicated with each and every organization that allows users to "disseminate . . . content" to other users, along with any persons or entities affiliated with those organizations. Defendants will construe "Social-Media Platform" to encompass Facebook, Instagram, Twitter, LinkedIn, and YouTube.

NON-CONFIDENTIAL // REDACTED

9.      Defendants object to the definition of "You" an "Your" in each Interrogatory as overbroad, as it includes "any officers, officials, employees, agents, staff members, contractors, and other(s)" acting at the direction, or on behalf, of any Defendant served with any Interrogatory. Such a definition also is not proportional to the needs of the case, especially given the expedited, abbreviated discovery process in which Defendants have only a limited amount of time to respond to Plaintiffs' Interrogatories. Defendants interpret any Interrogatory relying on this definition as applying solely to the named Defendants upon whom the Interrogatory was served insofar as a response to such Interrogatory by such Defendant is consistent with Rules 26 and 33.   In particular, Plaintiffs' allegations against each individual Defendant concerns actions taken in that individual's official capacity, and, accordingly, the agency Defendant corresponding to and that employed each individual Defendant is the proper party for objecting and responding to Plaintiffs' Interrogatories, as explained in Paragraphs 2 and 3 above.

10.      Defendant Jean-Pierre objects to the definition of "You" and "Your" as overbroad as it includes "any officers, officials, employees, agents, staff members, contractors, or other(s) acting at the direction of Jennifer Rene Psaki, in her official capacity as Press Secretary, or at the direction of her successor." Such a definition is not proportional to the needs of the case to the extent it is interpreted to extend beyond the Office of the White House Press Secretary, especially given the expedited, abbreviated discovery process where Defendant has only a limited amount of time to conduct a document search and produce responsive documents. Defendant has interpreted this request as applying solely to the Office of the White House Press Secretary.

11.      Defendants object to Instruction 1. Plaintiffs cite to no authority requiring a Defendant to "describe the efforts [it has] made to locate . . . document[s]" that are not in its custody and control "and identify who has control of the document and its location."

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

12.     Defendants object to Instruction 2 to the extent it exceeds the requirements of Fed. R. Civ. P. 26(b)(6).   Defendants specifically decline to produce privileged information. Defendants further object to any requirement that they produce a privilege log for privileged material not otherwise properly within the scope of discovery or as to which no privilege log would be required under Federal Rule of Civil Procedure 26(b)(5).

13.     Defendants object to Instruction 3. Plaintiffs cite to no authority indicating that, if Defendants object to an Interrogatory on burden grounds, Defendants must "stat[e] the approximate number of documents to be produced, the approximate number of person-hours to be incurred in the identification, and the estimated cost of responding to the request." Further, it is unclear how Defendants could provide that type of information without conducting certain burdensome searches and reviews that Defendants sought to avoid through their objections.

14.     Defendants object to Instruction 5 to the extent it requires Defendants to respond based on production of electronic documents "with all metadata and delivered in their original format." Plaintiffs may identify the precise categories of metadata they want Defendants' productions to contain, and Defendants can determine whether they can provide those categories of metadata without an undue burden.

15.     Defendants object to Instruction 6 to the extent that it requires Defendants to respond based on production of documents in a format other than the format in which they are "kept in the usual course of business." Fed R. Civ. P. 34(b)(2)(E). Defendants object to Instruction 6 to the extent that it requests the production of all e-mail "forwards" for e-mails produced to Plaintiffs. That Instruction may call for the production of documents that are not found in the e-mail files of the relevant custodians used by Defendants.

16.     Defendants object to Instruction 8 as unduly broad. Ms. Psaki served as White

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

House Press Secretary from January 20, 2021, until May 13, 2022, when Ms. Jean-Pierre became White House Press Secretary. Defendants interpret the Interrogatories directed at the White House Press Secretary as applying to Ms. Psaki from January 20, 2021, through May 13, 2022, and Ms. Jean-Pierre from May 13, 2022, to July 18, 2022. Anything else would be disproportional to the needs of the case. Such disproportionality is further aggravated by the discovery burden being sought on White House officials. *See Cheney v. U.S. District Court*, 542 U.S. 367, 385 (2004).

### GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORIES

1.      The general objections set forth below apply to each and every Interrogatory discussed below. In asserting Defendants' objections to any particular Interrogatory, Defendants may assert an objection that is the same as, or substantially similar to, one or more of these objections. That Defendants may refer, with particularity, to some, but not all, of the general objections described immediately below in their objections to Plaintiffs' individual Interrogatories, does not indicate that Defendants have waived any of these general objections as to any of Plaintiffs' Interrogatories.

2.      Defendants object to any discovery taking place in this case to the extent Plaintiffs assert cognizable claims seeking review of governmental agency action, including claims under Administrative Procedure Act, because resolution of any such claims should be based upon the "administrative record" in this case.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  That said, Defendants understand that the Court has allowed preliminary-injunction-related expedited discovery to proceed. Thus, while preserving their broad objection to any and all discovery, Defendants make objections stated below in light of the current procedural posture of the case.

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

3.      Defendants object to each Interrogatory insofar as it is directed to any Defendant that is head of a Defendant agency as overly broad, unduly burdensome, and disproportional in light of the extraordinarily expedited discovery schedule in this case, given that Plaintiffs have not first sought the information from the agency itself, or through alternative, less burdensome means. *See* Fed. R. Civ. P. 26(b)(2)(C).

4.      Defendants object to each Interrogatory as overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.  Defendant agencies include numerous components and employ thousands of individuals.   Any construction of an Interrogatory that would require a Defendant agency to furnish information held by all such individuals, or require a Defendant agency to furnish information held by non-party agencies of the Federal Government, would be massively burdensome and disproportional to the needs of this case. Each Defendant agency will identify appropriate individuals within the agency who will review and respond to each Interrogatory. *See, e.g.*, *In re Epipen*, MDL No. 2785, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) ("[T]he party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case.").

5.      Defendants object to the Interrogatories to the extent that they seek (a) attorney work product; (b) communications protected by the attorney-client privilege; (c) information protected by the deliberative process privilege or law enforcement privilege or other similar

8

NON-CONFIDENTIAL // REDACTED

privilege; (d) material the disclosure of which would violate legitimate privacy interests and expectations of persons not party to this litigation; (e) information protected by any form of executive privilege; or (f) information covered by any other applicable privilege or protection.

6.  Defendants object to any Interrogatory seeking discovery from the White House as unduly burdensome, and disproportional to the needs of the case. *See generally Cheney*, 542 U.S. at 367. Plaintiffs' Interrogatories directed to White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See id.* at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Further, the Interrogatories seeking response from the White House are unduly burdensome and disproportional to the needs of the case when Plaintiffs have not first exhausted all available opportunities to seek related information from other sources. *See* Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019) (requiring plaintiff to exhaust all discovery on other defendants before considering whether there was "continuing need for discovery sought on the White House"); *cf. Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019) (vacating "district court's discovery orders because the district court did not fulfill its obligation 'to explore other avenues, short of forcing the Executive to invoke privilege'" (quoting *Cheney*, 542 U.S. at 390)).

7.  Moreover, to the extent any Interrogatory a response requires review of information involving White House personnel, it is inappropriate because it may have the effect of seeking information protected by the presidential communications privilege, a "presumptive privilege" "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution" that attaches to presidential communications. *United States v.*

NON-CONFIDENTIAL // REDACTED

*Nixon*, 418 U.S. 683, 708 (1974); *see In re Sealed Case*, 121 F.3d 729, 743-44 (D.C. Cir. 1997). Although the presidential communications privilege can be overcome by showing a "specific need" in a criminal case, *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1112 (D.C. Cir. 2004), the presumption against disclosure is even higher in a civil case like this one, *Am Historical Ass'n v. Nat'l Archives & Records Admin.*, 402 F. Supp. 2d 171, 181 (D.D.C. 2005). Such discovery violates the separation of powers and creates an undue burden and distraction from those individuals' critical executive responsibilities. *See Cheney*, 542 U.S. at 389.

8.      Defendants object to each Interrogatory to the extent it seeks information or documents that are not in the custody or control of any Defendant.

9.      Defendants object to each Interrogatory to the extent it seeks responses based on all communications and documents from each Defendant relating to the substantive topic identified in the Interrogatory. The parties are currently involved in an expedited, abbreviated discovery process in which Defendants have only a limited amount of time to respond.

10.     Defendants specifically reserve the right to make further objections as necessary to the extent additional issues arise regarding the meaning of and/or information sought by Plaintiffs' Interrogatories.

## PRELIMINARY STATEMENT REGARDING
## EXCESSIVELY NUMEROUS INTERROGATORIES

1.      Contrary to Fed. R. Civ. P. 33(a) and to LR33.1 of the Local Civil Rules, Plaintiffs erroneously and improperly served on July 18, 2022 First PI Interrogatories totaling 110 enumerated interrogatories as to 10 recipient Defendants.   Even excluding duplicative interrogatories served on separate Defendants (at least in substance, if not form), there would still have been 34 distinct interrogatories.

2.      Either number exceeds the 25 interrogatories permitted by the Federal Rules of

NON-CONFIDENTIAL // REDACTED

Civil Procedure.  *Global Tubing, LLC v. Tenaris Coiled Tubes, LLC*, No. 17-cv-3299, 2020 WL 12443175 at *2 (S.D. Tex. Nov. 25, 2020) (quoting 8B Charles Alan Wright et al., *Federal Practice & Procedure* § 2168.1 (3d ed. 2020)); *accord Kleiman v. Wright*, No. 18-cv-80176, 2020 WL 1666787 at *1 (S.D. Fla. Apr. 3, 2020); *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 664 (D. Colo. 2005); *see also Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006); *see, e.g.*, *Am. Council of Blind of Metro. Chi. v. Chi.*, No. 19-cv-6322, 2021 WL 5140475 at *1-2 (N.D. Ill. Nov. 4, 2021); *Fair Housing Ctr. of Centr. Ind. v. Welton*, No. 18-cv-01098, 2019 WL 2422594 at *5 (S.D. Ind. June 10, 2019).  In a similar vein, LR33.1 of the Local Civil Rules, concerning "Number of Interrogatories," provides as follows (emphasis added): "No party shall serve on any other party *more than 25 interrogatories in the aggregate* without leave of court."  Adherence to the 25-interrogatory limitation is especially appropriate at this stage of the instant action, where Defendants are already addressing extensive requests for production of documents ahead of the Rule 26 conference for the limited purpose of providing Plaintiffs with additional information concerning the already-filed application for a preliminary injunction.  *Cf. Gray v. Price*, No. 19-cv-10383, 2020 WL 12721645 at *5 (E.D. Mich. Feb. 12, 2020).

3.      After alerting Plaintiffs to this issue in an August 1, 2022, letter, and following additional e-mail correspondence with Plaintiffs, the parties agreed on August 11, 2022 to resolve the excessive numerosity problem as follows:  Plaintiffs requested that (*a*) each Defendant recipient is to answer Interrogatories 1 through 5 of the First PI Interrogatories directed to CDC, with the reference to the CDC (in Interrogatory 1) to "be adjusted to refer to the recipient of the interrogatory," and (*b*) certain Defendants are to answer additional interrogatories, totaling 20, specified by Plaintiffs, and Plaintiffs did not object to Defendants' proposal that all remaining interrogatories be deemed withdrawn.

NON-CONFIDENTIAL // REDACTED

4.      Defendants have set forth more fully below their objections and responses to the 5 "Common" and 20 "additional" Interrogatories specified by Plaintiff on August 11, 2022, and preserve all other objections with respect to all other Interrogatories served on July 18, 2022 (the "Withdrawn Interrogatories"), to the extent they are not deemed withdrawn.  In particular, Defendants object to those Interrogatories as exceeding the numerical limit in FRCP 33(a) and LR33.1 of the Local Civil Rules.

### SIGNATURES FOR RESPONSES

1.      Insofar as an Interrogatory is not objected to through the undersigned counsel, the agency Defendants respond to them below, with the signatures of the following (attached):

    a.   For OSG:   **OSG 2** , Chief of Staff, OSG

    b.   For NIAID:   **NIAID 5** , Ph.D., Deputy Director for Science Management and Executive Officer, NIAID

    c.   For CDC:   **CDC 1** , Health Communications Specialist and Director, Division of Digital Media, CDC

    d.   For DHS:   **DHS 3** , Acting Assistant Secretary of Homeland Security for Counterterrorism, Threat Prevention, and Law Enforcement Policy

    e.   For CISA:   **CISA 4** , Lead of Election Security & Resilience, CISA

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

**Common Interrogatory No. 1:**

"**Identify every officer, official, employee, staff member, personnel, contractor, or agent of**" recipient Defendant "**or any other federal official or agency who has communicated or is communicating with any Social-Media Platform regarding Content Modulation and/or Misinformation**"

**OBJECTIONS:**  Defendants incorporate by reference the above objections.  Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for identifying "personnel" or "contractor[s]" of any Defendant or any employee or subordinate of any Defendant who have communicated with any and all "Social-Media Platform[s]," even if those platforms are not at issue in the Complaint (or in the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform."  Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule.  Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications.  Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44.  Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to

13

the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385.  That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Additionally, Defendants object to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative

of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the "Social-Media Platforms" concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges. Defendants also object to the Interrogatory as overbroad and disproportional to the needs of the case to the extent it requests that responding agencies identify every individual who may have been included on any e-mail exchange, whether as sender or recipient or simply copied on the e-mail, between any Defendant and a social media company.

**RESPONSE:**  Subject to and without waiving the above objections, Defendants provide the following responses by the agency Defendants, HHS, NIAID, CDC, DHS, and CISA.

**HHS:**

**OSG**: Subject to and without waiving the above objections, OSG refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former OSG personnel:

NON-CONFIDENTIAL // REDACTED

- ▪ OSG 1 , U.S. Surgeon General
- ▪ OSG 2 , Chief of Staff
- ▪ OSG 3 , Chief Engagement Officer for the U.S. Surgeon General
- ▪ OSG 4 , Associate Director of Science and Policy
- ▪ OSG 5 , Senior Advisor
- ▪ OSG 6 , Chief Innovation and Design Officer
- ▪ OSG 7 , Senior Advisor

**NIAID**: Subject to and without waiving the above objections, NIAID refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current NIAID personnel:

- ▪ NIAID 1 , M.D., Director, NIAID
- ▪ NIAID 2 , Director, Office of Communications and Government Relations, NIAID
- ▪ NIAID 3 , Scientific Communications Editor, News and Science Writing Branch, Office of Communications and Government Relations, NIAID
- ▪ NIAID 4 , Chief, News and Science Writing Branch, Office of Communications and Government Relations, NIAID

**CDC**: Subject to and without waiving the above objections, CDC refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former CDC personnel:

- ▪ CDC 1 , Health Communications Specialist/Chief, Digital Media Branch
- ▪ CDC 2 , Health Communications Specialist
- ▪ CDC 3 , Associate Deputy Director
- ▪ CDC 4 , Public Health Analyst

16

- ▪ **CDC 5**, Associate Director for Health Communications Science
- ▪ **CDC 6**, Health Communications Specialist
- ▪ **CDC 7**, Health Communications Specialist
- ▪ **CDC 8**, Health Communications Specialist
- ▪ **CDC 9**, Public Affairs Specialist
- ▪ **CDC 10**, Supervisory Health Communications Specialist
- ▪ **CDC 11**, Health Communications Specialist
- ▪ **CDC 12**, Health Communications Specialist
- ▪ **CDC 13**, Health Communications Specialist
- ▪ **CDC 14**, Deputy Chief Operating Officer
- ▪ **CDC 15**, Behavioral Scientist
- ▪ **CDC 16**, Health Communications Specialist

**DHS**: Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, DHS refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former DHS personnel:

- ▪ **DHS 1**, former Executive Director of the DHS Disinformation Governance Board
- ▪ **DHS 2**, Under Secretary of Homeland Security for Strategy, Policy, and Plans
- ▪ **DHS 3**, Acting Assistant Secretary of Homeland Security for Counterterrorism and Threat Prevention
- ▪ **DHS 4**, former Assistant Secretary of Homeland Security for Counterterrorism

17

and Threat Prevention

- ▪ **[DHS 5]**, Director, Private Sector Engagement, Office of Intelligence and Analysis

- ▪ **[DHS 6]**, Associate Director for Strategic Engagement, DHS Center for Prevention Programs and Partnerships

- ▪ **[DHS 7]**, Acting Assistant Secretary of Homeland Security for Cyber, Infrastructure, Risk and Resilience

- ▪ **[DHS 8]**, former Acting Assistant Secretary of Homeland Security for Counterterrorism and Threat Prevention

**CISA**:  CISA has identified the following custodians as having relevant communications, as produced in response to Requests For Production 2 and 3:

- ▪ **[CISA 1]**, Director, CISA
- ▪ **[CISA 2]**, former Director, CISA
- ▪ **[CISA 3]**, former Senior Election Lead, CISA
- ▪ **[CISA 4]**, Lead, Election Security and Resilience (ESR), National Risk Management Center (NRMC), CISA
- ▪ **[CISA 5]**, Chief, Mis-, Dis-, and Malinformation (MDM) Team, NRMC, CISA
- ▪ **[CISA 6]**, Engagements Lead, MDM Team, NRMC, CISA

In addition to the custodians identified above, CISA has identified the following current and former agency personnel as appearing in the communications produced in response to Plaintiffs' Requests For Production:

- ▪ **[CISA 7]**, Resilience Lead, MDM Team, NRMC, CISA
- ▪ **[CISA 8]**, Analysis and Response Lead, MDM Team, NRMC, CISA
- ▪ **[CISA 9]**, Analyst, MDM Team, NRMC, CISA
- ▪ **[CISA 10]**, former Analyst, Countering Foreign Influence Task Force (CFITF) (which was the predecessor to the MDM team), NRMC, CISA

18

**Common Interrogatory No. 2:**

**Identify all Communications with any Social-Media Platform relating to Content Modulation and/or Misinformation.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for information from any Defendant or any employee or subordinate of any Defendant, to any and all "Social-Media Platform[s]," even if those platforms are not at issue in the Complaint (or in the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also understand this Interrogatory to seek only a response based on communications between Defendants and third parties outside the government. To the extent that this Interrogatory seeks internal information referring to such communications, Defendants object to the Interrogatory as not proportional to the needs of the case, as it would require an extensive search of internal records that would not be possible to complete in the expedited period provided for current discovery and would be unnecessary in light of Defendants' agreement to produce the external communications themselves. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory

19

national security privilege, presidential communications privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44.  Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385.  That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-

NON-CONFIDENTIAL // REDACTED

privileged information. *See Cheney*, 542 U.S. at 389.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the Social-Media Platforms concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

**RESPONSE:**   Subject to and without waiving the above objections, the agency Defendants, HHS, NIAID, CDC, DHS, and CIS, respond and refer Plaintiffs to the documents being produced in response to Plaintiffs' First Requests For Production to Defendants.

**Common Interrogatory No. 3:**

Identify all Social-Media Platforms, including their officers, agents, or employees, with which You have communicated or are communicating with relating to Content Modulation and/or Misinformation.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for a response based on communications from any Defendant or any employee or subordinate of any Defendant, to any and all Social-Media Platforms, even if those platforms are not at issue in the Complaint (or in the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385.  That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the "Social-Media Platforms" concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants'

internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

**RESPONSE:** Subject to and without waiving the above objections, the agency Defendants, HHS, NIAID, CDC, DHS, and CISA, respond and refer Plaintiffs to the documents being produced in response to Plaintiffs' First Requests For Production to Defendants.

**Common Interrogatory No. 4:**

**Identify all meetings with any Social-Media Platform relating to Content Modulation and/or Misinformation.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object that the Interrogatory is vague and ambiguous, including through the term "relating to . . . Misinformation." Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for a response based on "meetings" by any Defendant or any employee or subordinate of any Defendant, with any and all Social-Media Platforms, even if those platforms are not at issue in the Complaint (or in the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack

of subject-matter jurisdiction and other deficiencies is forthcoming.  Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject outside the administrative record. *Lorion*, 470 U.S. at 743-44.  Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385.  That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not

entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2, 3, and 4, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the Social-Media Platforms concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

**RESPONSE:**  Subject to and without waiving the above objections, Defendants provide the following responses by the agency Defendants, HHS, NIAID, CDC, DHS, and CISA:

**HHS**. Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, HHS has identified OSG, NIAID, and CDC as available sources of information that is potentially responsive to Plaintiffs' discovery requests. HHS directs Plaintiffs to those agencies' responses.

**OSG**. Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, OSG responds that the following meetings took place with the Social-Media Platforms relating to

Misinformation:

- On July 12, 2021, from 3:00 pm to 3:30 pm ET, ▮OSG 3▮ from OSG met remotely with ▮Twitter 1▮ and ▮Twitter 2▮ from Twitter. ▮OSG 7▮ from U.S. Digital Response was invited and may have also attended. The meeting provided notice of the upcoming OSG Advisory and a high-level view of what issues OSG would be prioritizing in the Advisory.

- On July 14, 2021, from 3:00 pm to 3:30 pm ET, ▮OSG 3▮ from OSG met remotely with ▮YouTube 1▮ from YouTube, ▮Google 1▮ from Google, and ▮YouTube 2▮ from YouTube. The meeting provided notice of the upcoming OSG Advisory and a high-level view of what issues OSG would be prioritizing in the Advisory.

- On July 16, 2021, from 3:00 pm to 3:30 pm ET, ▮OSG 3▮ from OSG and ▮▮ ▮OSG 7▮ from U.S. Digital Response met remotely with ▮Facebook 1▮ and ▮Facebook 2▮ ▮▮ from Facebook. ▮Facebook 3▮ and ▮Facebook 4▮ from Facebook were invited and may have also attended. The meeting discussed the newly issued OSG Advisory.

- On July 23, 2021, from 1:30 pm to 2:00 pm ET, ▮OSG 1▮ and ▮OSG 3▮ from OSG, and ▮OSG 8▮ (who OSG understands to be a then part-time consultant supporting the Office of Science Technology and Policy) met remotely with ▮▮ ▮Facebook 5▮ and (very likely) ▮Facebook 4▮ from Facebook. The meeting discussed a recent e-mail from ▮Facebook 5▮ to ▮OSG 1▮ concerning recent public comments by the Administration about Facebook.

- On July 30, 2021, from 2:00 pm to 2:30 pm ET, ▮OSG 3▮ from OSG met with ▮YouTube 1▮ ▮▮ from YouTube, ▮Google 2▮ from Google, and ▮Google 1▮ from Google. The topics discussed included YouTube/Google following up on the announcement of the

27

NON-CONFIDENTIAL // REDACTED

OSG Advisory to share more of the work it was doing around health mis- and disinformation.

**NIAID.** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID responds that no meetings took place with the Social-Media Platforms relating to Misinformation. NIAID has identified two possible meetings to discuss the potential participation by the NIAID director in U.S. Government efforts to publicize health information and provide COVID-19 and vaccine education via social media, which are not responsive to the Interrogatory, but are identified in the documents being produced in response to Plaintiffs' First Requests For Production to Defendants:

- Facebook approached NIAID in March 2020 to discuss public service announcements and ads, Facebook's CV19 hub, and an interview between NIAID 1 and ██████ Facebook 6; NIAID scheduled the interview between NIAID 1 and Facebook 6 (which aired on Facebook Live)

- NIAID was invited to, but did not attend, a meeting scheduled for March 4, 2021, to discuss possible Facebook Live interviews with celebrities/influencers related to COVID-19 vaccines

**CDC.** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CDC responds that the following meetings took place with the Social-Media Platforms relating to Misinformation:

- On May 14, 2021, and May 28, 2021, there were virtual "Be on the Lookout" meetings concerning certain items of developing and prevalent COVID-19 misinformation on

NON-CONFIDENTIAL // REDACTED

social media. The invitees included: <span style="color:red">Twitter 2</span> from Twitter; <span style="color:red">Google 3</span>, <span style="color:red">Google 1</span>, and <span style="color:red">YouTube 1</span> from Google; <span style="color:red">Facebook 1</span>, <span style="color:red">Facebook 7</span>, <span style="color:red">Facebook 8</span>, and <span style="color:red">Facebook 9</span> from Facebook; <span style="color:red">Reingold 1</span> from Reingold; <span style="color:red">Census 1</span>, <span style="color:red">Census 2</span>, and <span style="color:red">Census 3</span> from the United States Census Bureau ("Census"); and <span style="color:red">CDC 13</span>, <span style="color:red">CDC 1</span>, and <span style="color:red">CDC 3</span> from CDC.

- On February 4, 2021 and February 25, 2021 there were virtual or telephonic meetings during which it is likely that misinformation was discussed among other topics. The invitees included: <span style="color:red">Facebook 1</span>, <span style="color:red">Facebook 10</span>, <span style="color:red">Facebook 11</span>, <span style="color:red">Facebook 12</span>, <span style="color:red">Facebook 13</span>, <span style="color:red">Facebook 7</span>, <span style="color:red">Facebook 3</span>, and <span style="color:red">Facebook 9</span> from Facebook; and <span style="color:red">CDC 8</span>, <span style="color:red">CDC 2</span>, and <span style="color:red">CDC 1</span> from CDC.

- On March 18, 2021, there was a virtual or telephonic meeting during which it is likely that misinformation was discussed among other topics. The invitees included: <span style="color:red">Facebook 1</span>, <span style="color:red">Facebook 10</span>, <span style="color:red">Facebook 11</span>, <span style="color:red">Facebook 12</span>, <span style="color:red">Facebook 13</span>, <span style="color:red">Facebook 7</span>, <span style="color:red">Facebook 3</span>, and <span style="color:red">Facebook 9</span> from Facebook; <span style="color:red">HHS 1</span> and <span style="color:red">HHS 2</span> from the Office of the Assistant Secretary of Public Affairs within HHS; and <span style="color:red">CDC 8</span>, <span style="color:red">CDC 2</span>, and <span style="color:red">CDC 1</span> from CDC.

- On March 25, 2021, there was a virtual or telephonic meeting to discuss misinformation. The invitees included <span style="color:red">Facebook 1</span>, <span style="color:red">Facebook 14</span>, <span style="color:red">Facebook 10</span>, <span style="color:red">Facebook 11</span>, <span style="color:red">Facebook 2</span>, <span style="color:red">Facebook 15</span>, <span style="color:red">Facebook 16</span>, <span style="color:red">Facebook 12</span>, <span style="color:red">Facebook 17</span>, <span style="color:red">Facebook 13</span>, <span style="color:red">Facebook 18</span>, <span style="color:red">Facebook 7</span>, <span style="color:red">Facebook 19</span>, <span style="color:red">Facebook 3</span>, and <span style="color:red">Facebook 9</span> from Facebook; and <span style="color:red">CDC 8</span>, <span style="color:red">CDC 2</span>, and <span style="color:red">CDC 1</span> from CDC.

- On May 13, 2021, there was a virtual or telephonic meeting during which it is likely





that misinformation was discussed among other topics. The invitees included: ▮Facebook 1▮, ▮▮, ▮Facebook 10▮, ▮Facebook 11▮, ▮Facebook 20▮, ▮Facebook 12▮, ▮▮ ▮Facebook 13▮, ▮Facebook 7▮, ▮Facebook 3▮, and ▮Facebook 9▮ from Facebook; and ▮CDC 8▮ ▮▮, ▮CDC 2▮, and ▮CDC 1▮ from CDC.

- On May 19, 2021, there was a virtual meeting to provided training on Facebook's channel for reporting misinformation. The invitees included: ▮CDC 8▮, ▮▮ ▮CDC 1▮, ▮CDC 13▮, ▮CDC 3▮, ▮CDC 17▮, and ▮CDC 2▮ from CDC; ▮Census 1▮, ▮Reingold 1▮, and ▮Reingold 2▮ from Reingold; ▮▮ ▮Facebook 9▮ from Facebook; and ▮Census 3▮, ▮Census 4▮, and ▮Census 2▮ from Census.

- On May 20, 2021, there was a virtual or telephonic meeting during which it is likely that misinformation was discussed among other topics. The invitees included: ▮Facebook 1▮, ▮▮, ▮Facebook 10▮, ▮Facebook 11▮, ▮Facebook 21▮, ▮Facebook 12▮, ▮Facebook 13▮, ▮Facebook 7▮, ▮Facebook 3▮, and ▮Facebook 9▮ from Facebook; ▮CDC 8▮ ▮▮, ▮CDC 2▮, ▮CDC 5▮, and ▮CDC 1▮ from CDC; and ▮Reingold 1▮ from Reingold.

- On August 31, 2021, there was a virtual meeting to discuss misinformation, including misinformation related to the Vaccine Adverse Event Reporting System (VAERS). The invitees included: ▮CDC 18▮, ▮CDC 19▮, ▮CDC 9▮, ▮CDC 12▮, ▮CDC 20▮, ▮▮, ▮CDC 21▮, ▮CDC 22▮, ▮CDC 11▮, ▮CDC 13▮, ▮CDC 23▮, ▮CDC 6▮, and ▮CDC 1▮ from CDC; and ▮Facebook 9▮ from Facebook.

- On March 24, 2021, there was a virtual meeting to discuss misinformation with Google/YouTube. The invitees included: ▮Google 3▮, ▮Google 1▮, ▮▮

30



and [Census 3] from Census; [Census 1] and [Reingold 1] from Reingold; and [CDC 1], [CDC 13], [CDC 3], [CDC 7], and [CDC 24] ▮ from CDC.

- On March 29, 2022, there was a virtual meeting with Google during which it is likely that misinformation was discussed among other topics. The invitees included: ▮ [Google 3] and [Google 1] from Google; and [CDC 25] and [CDC 1] from CDC.

- On March 31, 2021, there was a virtual meeting with Twitter to discuss COVID-19 misinformation. The invitees included: [Census 5] and [Census 3], from Census; [Census 1] and [Reingold 1] from Reingold; [CDC 13], [CDC 3], [CDC 26], [CDC 7], [CDC 24], and ▮ [CDC 1] from CDC; and [Twitter 2] and [Twitter 3] from Twitter.

- On November 18, 2021, there was a meeting with Twitter to discuss VAERS as it related to misinformation. The invitees included: [Twitter 2], [Twitter 4], ▮ [Twitter 5], and [Twitter 6] from Twitter; and ▮ [CDC 1], [CDC 20], [CDC 23] ▮, [CDC 27], [CDC 28], [CDC 12], [CDC 11], and ▮ [CDC 29] from CDC.


**DHS** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, DHS responds that meetings taking place with the Social-Media Platforms relating to Misinformation include, but are not limited to:

31

- A recurring meeting usually entitled USG – Industry meeting, which has generally had a monthly cadence, and is between government agencies and private industry. Government participants have included CISA's Election Security and Resilience team, DHS's Office of Intelligence and Analysis, the FBI's foreign influence task force, the Justice Department's national security division, and the Office of the Director of National Intelligence.  Industry participants have included Google, Facebook, Twitter, Reddit, Microsoft, Verizon Media, Pinterest, LinkedIn and the Wikimedia Foundation. The topics discussed include, but are not limited to:  information sharing around elections risk, briefs from industry, threat updates, and highlights and upcoming watch outs.

- CISA Cybersecurity Advisory Committee (CSAC) Meetings on December 10, 2021; March 31, 2022; and June 22, 2022.  The meeting agendas and summaries, including participants, are available on CISA's website, https://www.cisa.gov/cisa-cybersecurity-advisory-committee-meeting-resources.

- Additional meetings identified in documents, include, but are not limited to:

| Date | Title |
|---|---|
| 7/20/20 | ASD-HKS Tech Policy Paper Series: Levers in the Online Ad Ecosystem |
| 1/18/22 | Google + Digital Forum |
| 3/16/22 | DHS/Microsoft Disinformation Follow Up |
| 2/1/22 | Meta/DHS/DOJ Engagement re: Human Trafficking |

**CISA**:  Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CISA responds that meetings taking place with the Social-Media Platforms relating to Misinformation include, but are not limited to:

- A recurring meeting usually entitled USG – Industry meeting, which has generally had a

32

monthly cadence, and is between government agencies and private industry.  Government participants have included CISA's Election Security and Resilience subdivision, DHS's Office of Intelligence and Analysis, the FBI's foreign influence task force, the Justice Department's national security division, and the Office of the Director of National Intelligence.  Industry participants generally include Google, Facebook, Twitter, Reddit, Microsoft but, have also included Verizon Media, Pinterest, LinkedIn, and the Wikimedia Foundation as well.  The topics discussed include, but are not limited to:  information sharing around elections risk, briefs from industry, threat updates, and highlights and upcoming watch outs.

- A recurring meeting to prepare for and set the agenda for the USG – Industry meeting, and participants have generally included CISA and Facebook.

- CISA Cybersecurity Advisory Committee (CSAC) Meetings on December 10, 2021; March 31, 2022; and June 22, 2022.  The meeting agendas and summaries, including participants, are available on CISA's website, https://www.cisa.gov/cisa-cybersecurity-advisory-committee-meeting-resources.

- CISA CSAC, Protecting Critical Infrastructure from Misinformation and Disinformation Subcommittee meetings.  The Subcommittee was established for the purpose of evaluating and providing recommendations on potentially effective critical infrastructure related counter-MDM efforts that fit within CISA's unique capabilities and mission.  Details about the Subcommittee, including membership, are available on CISA's website, https://www.cisa.gov/sites/default/files/publications/CSAC_Subcommittee_Fact_Sheet_05192022_508c.pdf.

- Meetings convened by the Election Infrastructure Subsector Government Coordinating

Council (EIS-GCC) and Election Infrastructure Subsector Coordinating Council (EI-SCC)

Joint MDM Working Group.  The Joint MDM Working Group was launched after the 2020

election by the EIS-GCC and EI-SCC and provides a forum through which the subsector

can identify challenges in countering MDM and produce resources for addressing such

challenges.  The Joint MDM Working Group has convened meetings on, or about May 5,

2021; June 7, 2021; September 14, 2021; November 19, 2021, June 30, 2022, and August

4, 2022.

**Common Interrogatory No. 5:**

**Identify all Communications with any Social-Media Platform that contain any of the
Search Term(s).**

**OBJECTIONS:**  Defendants incorporate by reference the above objections.  Defendants

further object to this Interrogatory as unduly burdensome, overbroad, and not proportional to the

needs of this case. This Interrogatory calls for a response based on any and all specified documents

from any Defendant or any employee or subordinate of any Defendant. Defendants cannot conduct

an exhaustive search to uncover all possible responsive information under the current, abbreviated

expedited discovery schedule.  Such expedited discovery is especially burdensome given that

Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and

other deficiencies is forthcoming.  Furthermore, this Interrogatory covers documents that are not

relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court.

The Court authorized the service of discovery requests concerning "the identity of federal officials

who have been and are communicating with social-media platforms about [misinformation and]

any censorship or suppression of speech on social media, including the nature and content of those

communications." ECF No. 34 at 13. This Interrogatory, however, seeks information that contains

34

any of Plaintiffs' Search Terms, regardless of whether that document pertains to Misinformation. Plaintiffs' Search Terms include many broad terms that could be found in e-mails that have nothing to do with misinformation—such as "mask," "election," "antitrust," "globalization," and "Federalist." Defendants also understand this Interrogatory to seeks a response based on only communications between Defendants and third parties outside the government. To the extent that this Interrogatory seeks internal information referring to such communications, Defendants object to the Interrogatory as not proportional to the needs of the case, as it would require an extensive search of internal records that would not be possible to complete in the expedited period provided for current discovery and would be unnecessary in light of Defendants' agreement to produce the external communications themselves.  Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44.  Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385.  That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the "Social-Media Platforms" concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants'

internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

**RESPONSE:**   Subject to and without waiving the above objections, the agency Defendants, HHS, NIAID, CDC, DHS, and CIS, respond and refer Plaintiffs to the documents being produced in response to Plaintiffs' First Requests For Production to Defendants.

## Additional Interrogatory No. 1 (HHS No. 6):

**Identify all "members of our senior staff" and/or "members of our COVID-19 team" who are "in regular touch with … social media platforms," as Jennifer Psaki stated at a White House press briefing on or around July 15, 2021, including all Communications relating to such coordination.**

**OBJECTIONS:**   Defendants incorporate by reference the above objections.  Defendants further object to this Interrogatory as vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referred to.  Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning

governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving the above objections, Defendants provide the following responses for Defendant HHS, responding through OSG, NIAID, and CDC, each of which refers to its response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 2 (HHS No. 7):**

**Identify all Communications with any Social-Media Platform relating to the "12 people who are producing 65 percent of anti-vaccine misinformation on social media platform," as stated by Jennifer Psaki at the July 15, 2021 press briefing.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referred to. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject

outside the administrative record.  *Lorion*, 470 U.S. at 743-44.  Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.  Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:**  Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of the abbreviated, expedited discovery, HHS has identified OSG and CDC as available sources of information that is potentially responsive to this Interrogatory.

**OSG**.  Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, OSG refers to its response to Common Interrogatories 1 through 5 and the accompanying documents.  *See generally* Fed. R. Civ. P. 33(d).

**CDC**.  Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CDC refers to its response to Common Interrogatories 1 through 5 and the accompanying documents.  *See generally* Fed. R.

Civ. P. 33(d).

**Additional Interrogatory No. 3 (HHS No. 8):**

Identify all "government experts" who are federal officers, officials, agents, employees, or contractors, who have "partnered with" Facebook or any other Social-Media Platform to address Misinformation and/or Content Modulation, including all Communications between such "government expert(s)" and any Social-Media Platform.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it relies on a characterization of a statement attributed to a third-party Facebook, as reported in a July 15, 2021 *Reuters.com* article quoted at Compl. ¶ 163, and the statement does not sufficiently specify the individuals at issue or the specific communications referred to. Defendants lack information sufficient to establish the meaning of that third party's statement, including terms such as "partnered with." Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is

overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports

to require a response concerning components of the agency or concerning governmental entities

outside the agency whose actions are not challenged in the Complaint or Amended Complaint and

whose information is not reasonably available to the agency or agency component whose alleged

conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to

the needs of the case, particularly in light of the expedited nature of the discovery, to the extent

"communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and

duplicative of Common Interrogatories 1 through 5.  Defendants otherwise refer Plaintiffs to the

documents being produced with these responses for any additional information.

**RESPONSE:**  Subject to and without waiving the above objections, HHS has identified

OSG, NIAID, and CDC as available sources of information that is potentially responsive to this

Interrogatory.

**OSG**. Subject to and without waiving the above objections, and based on a reasonable

inquiry under the circumstances of abbreviated, expedited discovery, OSG refers to its response to

Common Interrogatories 1 through 5 and the accompanying documents.  *See generally* Fed. R.

Civ. P. 33(d).

**NIAID**.  Subject to and without waiving the above objections, and based on a reasonable

inquiry under the circumstances of abbreviated, expedited discovery, NIAID refers to its response

to Common Interrogatories 1 through 5 and the accompanying documents.  *See generally* Fed. R.

Civ. P. 33(d).

NON-CONFIDENTIAL // REDACTED

**CDC**.  Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CDC refers to its response to Common Interrogatories 1 through 5 and the accompanying documents.  *See generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 4 (CDC No. 7):**

**Identify all "government experts" who are federal officers, officials, agents, employees, or contractors, who have "partnered with" Facebook or any other Social-Media Platform to address Misinformation and/or Content Modulation, including all Communications relating to such partnerships.**

**OBJECTIONS:**  Defendants incorporate by reference the above objections.  Defendants further object to this Interrogatory as vague because it relies on a characterization of a statement attributed to a third-party, Facebook, as reported in a July 15, 2021 *Reuters.com* article quoted at Compl. ¶ 163, and the statement does not sufficiently specify the individuals at issue or the specific communications referred to. Additionally, Defendants lack information sufficient to establish the meaning of that third party's statement. Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule.  Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Defendant also objects to this Interrogatory as overbroad because it seeks information that is not relevant to Plaintiffs' claims and that does not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social

NON-CONFIDENTIAL // REDACTED

media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to seek information concerning communications with Social-Media Platforms regardless whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CDC refers to its

response to Common Interrogatories 1 through 5 and the accompanying documents.  *See generally*

Fed. R. Civ. P. 33(d).

## Additional Interrogatory No. 5 (Dr. Fauci No. 8):

**Identify all Communications with Mark Zuckerberg from January 1, 2020 to the present, including but not limited to those referenced in Paragraphs 142-145 of the Complaint.**

**OBJECTIONS:** Defendants incorporate by reference the above objections.  Defendants

further object to this Interrogatory as overbroad because it seeks information that is not relevant to

Plaintiffs' claims and that does not fall within scope of discovery authorized by the Court. The

Court authorized the service of discovery requests concerning "the identity of federal officials who

have been and are communicating with social-media platforms about [misinformation and] any

censorship or suppression of speech on social media, including the nature and content of those

communications." ECF No. 34 at 13. This Interrogatory calls for a response based on all

Communications with Mark Zuckerberg, regardless of whether they concern Misinformation.

Defendants also understand this Interrogatory to seek only communications between Defendants

and third parties outside the government.  To the extent that this Interrogatory seeks a response

based on internal information referring to such communications, the Interrogatory would be even

more disproportional to the needs of the case, as it would require an extensive search of internal

records that would not be possible to complete in the expedited period provided for current

discovery and would be unnecessary in light of Defendants' agreement to produce the external

communications themselves. Defendants also object to the Interrogatory to the extent a response

requires review of internal, deliberative documents discussing such communications, attorney

client documents, or other privileged materials relating to agency communications.  Defendants

also object to this Interrogatory to the extent it seeks information protected by the deliberative

process privilege, attorney-client privilege, law enforcement privilege, a statutory national security

NON-CONFIDENTIAL // REDACTED

privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendants objects to this Interrogatory to the extent it seeks information from Dr. Fauci based on his role as Chief Medical Advisor to the President, on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent it a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such documents, the Interrogatory imposes a burden on Defendants to locate documents and review them that is disproportional to the minimal benefit (if any) that Plaintiffs might derive from the possibility of an Interrogatory response based on responsive non-privileged documents. *See Cheney*, 542 U.S. at 389. Defendants, however, aver that Dr. Fauci does not have a White House e-mail address and have provided responses, subject to any other objections, in his capacity as Director of NIAID.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to

NON-CONFIDENTIAL // REDACTED

the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:**  Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID responds on behalf of NIAID 1, and refers to NIAID's responses to Common Interrogatories 1 through 5 and the accompanying documents.  *See generally* Fed. R. Civ. P. 33(d).


**Additional Interrogatory No. 6 (Dr. Fauci No. 9):**

**Identify all Communications with any Social-Media Platform that relate to the Great Barrington Declaration, the authors of the Great Barrington Declaration, the original signers of the Great Barrington Declaration, Dr. Jay Bhattacharya, Dr. Martin Kulldorff, Dr. Aaron Kheriaty, Dr. Sunetra Gupta, Dr. Scott Atlas, Alex Berenson, Dr. Peter Daszak, Dr. Shi Zhengli, the Wuhan Institute of Virology, EcoHealth Alliance, and/or any member of the so-called "Disinformation Dozen."**

**OBJECTIONS:**  Defendants incorporate by reference the above objections.  Defendants further object to this Interrogatory as vague because it does not define what the "Great Barrington Declaration" is or who the "Disinformation Dozen" are. Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule.  Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Defendants also object to this Interrogatory as overbroad because it requests information that does not fall within the scope of discovery authorized by the Court. The Court authorized the service of discovery requests

46

concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory seeks information concerning, *inter alia*, the Great Barrington Declaration, its authors, its original signers, and any member of the "Disinformation Dozen," regardless whether the Communications sought concern Misinformation. Defendants also understand this Interrogatory to seek only a response based on communications between Defendants and third parties outside the Government. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendants object to this Interrogatory to the extent it seeks information from Dr. Fauci based on his role as Chief Medical Advisor to the President, on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers.

NON-CONFIDENTIAL // REDACTED

*See Cheney*, 542 U.S. at 385.  That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendants object to this Interrogatory to the extent it a response requires review of information protected by the presidential communications privilege or other executive privileges.  *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such documents, the Interrogatory imposes a burden on Defendants to locate documents and review them that is disproportional to the minimal benefit (if any) that Plaintiffs might derive from the possibility of an Interrogatory response based on responsive non-privileged documents. *See Cheney*, 542 U.S. at 389.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:**  Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID responds on behalf of NIAID 1, and refers to NIAID's responses to Common Interrogatories 1 through 5 and the accompanying documents.  *See generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 7 (Dr. Fauci No. 10):**

**Identify all Communications between any member of the White House Communications Team and any Social-Media Platform that refer or relate to Misinformation and/or Content Modulation.**

**OBJECTIONS:**  Defendants incorporate by reference the above objections.  Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative

48

process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege.  Defendants further object to this Interrogatory to the extent it seeks information from Dr. Fauci based on his role as Chief Medical Advisor to the President, on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case.  Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. See, e.g., Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendants object to this Interrogatory to the extent it is seeks information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Defendants, however, aver that Dr. Fauci does not have a White House e-mail address and have provided responses, subject to any other objections, in his capacity as Director of NIAID.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:**  Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID responds on behalf of NIAID 1, and refers to NIAID's responses to Common Interrogatories 1 through 5 and the accompanying documents.  *See generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 8 (DHS No. 6):**

Define what is an "Analytic Exchange" with Twitter or any other Social-Media Platform, and identify any existing "Analytic Exchanges," including all participant(s) in such Analytic Exchange(s).

**OBJECTIONS:**  Defendants incorporate by reference the above objections.  Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case because it calls for information that is not relevant to Plaintiffs' claims and that do not fall within the scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory asks Defendants to define "Analytic Exchange(s)," and identify any such "Analytic Exchange(s)," regardless whether those communications pertain to Misinformation.  Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications.  Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

NON-CONFIDENTIAL // REDACTED

**RESPONSE:**  Subject to and without waiving the above objections, Defendant DHS responds as follows:  DHS has not defined the term 'Analytic Exchange' as a matter of departmental policy.  For purposes of this response, DHS defines the term as an arrangement between DHS and external entities under which the participants exchange information and analysis regarding threats or vulnerabilities relating to homeland security on a periodic basis.

The DHS Office of Intelligence and Analysis participates in a number of Analytic Exchanges, including one where Misinformation is a topic of interest.  Specifically, the Office of Intelligence and Analysis, on behalf of the Office of the Director of National Intelligence, sponsors the Public-Private Analytic Exchange Program ("AEP").  The AEP facilitates collaborative partnerships between members of the private sector and teams of experienced U.S. government analysts to form a number of subcommittees.  This annual program provides U.S. government analysts and private sector partners with a better understanding of select national security and homeland security issues.

There are approximately 100 participants in the AEP.  Each year, teams of analysts drawn from the AEP participants work virtually over six months to develop unclassified intelligence products made available to the public.  Among the topics to be addressed by the AEP this year are "Countering Foreign Malign Social Network Manipulation in the Homeland," "Addressing Risks From Non-State Actors' Use of Commercially Available Technologies," and "Phase II:  Increasing Threats of Deepfake Identities."  All three of these topics are expected to address Misinformation in some form.  Finished products for all of the AEP 2022 topics will be presented at the AEP Concluding Summit scheduled for August 30–31 and will be made available on the DHS website: https://www.dhs.gov/aep-deliverables.

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

**Additional Interrogatory No. 9 (DHS No. 7):**

Identify all participants and topics of discussion in the "series of monthly meetings between the government and tech companies" prior to the 2020 election, as discussed in Paragraphs 182-184 of the Complaint.

**OBJECTIONS:** Defendants incorporate by reference the above objections.  Defendants further object to this Interrogatory as vague because it relies on a characterization of statements made by third-party companies, rather than any Defendant, as reported in an August 12, 2020 *NBC News.com* article cited at Compl. ¶ 180, and the statements do not provide sufficient details of the meetings to which the Interrogatory refers. Defendants also object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for information about meetings that occurred before the current President took office. Defendants also object to this Interrogatory as overbroad and disproportional to the needs of the case because it calls for information that is not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. Defendants also object because the undefined term "tech companies" as used in this Interrogatory is vague and ambiguous. This Interrogatory appears to call for information relating to certain meetings with technology companies that occurred prior to the 2020 election, regardless whether those meetings were with Social-Media Platforms and pertained to Misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications.  Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law

52

enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

**RESPONSE:**  Subject to and without waiving the above objections, Defendant DHS responds as follows: The "series of monthly meetings between the government and tech companies" relates to a recurring meeting with federal government officials and the private industry, and the participants and topics of discussion have evolved over time. Government participants have included various representatives from CISA, DHS's Office of Intelligence and Analysis, the FBI's Foreign Influence Task Force, the Justice Department's National Security Division, and the Office of the Director of National Intelligence. Industry participants have included representatives from Google, Facebook, Twitter, Reddit, Microsoft, Verizon Media, Pinterest, LinkedIn and the Wikimedia Foundation. The topics discussed include, but are not limited to: information sharing around elections risk, briefs from industry, threat updates, and highlights and upcoming watch outs. DHS refers to its responses to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d), for information about individual meeting invitations and agendas.

**Additional Interrogatory No. 10 (DHS No. 8):**

Identify all "private firms" that DHS has "partnered" with, or planned, intended, or discussed "partnering" with, to "monitor" online content, as discussed in Paragraph 202 of the Complaint, including the nature of the "partnership" and the nature of any "outsourcing [of] information gathering to outside firms."

**OBJECTIONS:**  Defendants incorporate by reference the above objections.  Defendants further object to this Interrogatory because it seeks information that is not relevant to Plaintiffs' claims and does not fall within the scope of discovery authorized by the Court. The Court

authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory would require identification of outside "private firms" rather than identification of federal officials; and it would require describing the nature of any "planned, intended, or discussed 'partnerships'" rather than the nature and content of communications with social-media platforms.  Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44.

Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications.  Defendants also object to this Interrogatory as "vague" because it does not define what constitutes a "private firm," or what is meant by "partner," "monitor," or "outsourcing" information gathering. Defendants also object to this Interrogatory as overbroad because it calls for identification of every "private firm" that DHS may have "planned, intended, or discussed" partnering with.

**RESPONSE:**  Subject to and without waiving the above objections, Defendant DHS responds as follows: As DHS responded in the news article Plaintiffs cited to in support of the allegations in the Complaint to which this Interrogatory refers, DHS "'is not partnering with private firms to surveil suspected domestic terrorists online.'" https://www.cnn.com/2021/05/03/politics/dhs-partner-private-firms-surveil-suspected-domestic-

terrorists/index.html.  DHS does not partner with "private firms" to "to evade legal, constitutional,

and ethical problems with DHS's direct surveillance of online speech.".

**Additional Interrogatory No. 11 (DHS No. 9):**

      **Identify all "the tech companies" with which DHS is "working together" to "prevent harm from occurring," as Secretary Mayorkas stated on August 2, 2021, as discussed in Paragraph 207-208 of the Complaint, including the nature of the work and all Communication(s) relating to such work.**

      **OBJECTIONS:** Defendants incorporate by reference the above objections.  Defendants

also object because the undefined term "tech companies" as used in this Interrogatory is vague and

ambiguous.  Even assuming that the term "tech companies" is the same as the term "Social-Media

Platform[s]" as defined by Plaintiffs, Defendants further object to this Interrogatory as unduly

burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive

search to uncover all possible responsive information under the current, abbreviated expedited

discovery schedule.  Such expedited discovery is especially burdensome given that Defendants'

motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other

deficiencies is forthcoming.  Defendants also object to this Interrogatory as overbroad because it seeks

information that is not relevant to Plaintiffs' claims and that do not fall within scope of discovery

authorized by the Court. The Court authorized the service of discovery requests concerning "the

identity of federal officials who have been and are communicating with social-media platforms about

[misinformation and] any censorship or suppression of speech on social media, including the nature

and content of those communications." ECF No. 34 at 13. This Interrogatory appears to seek

information relating to efforts to work with private "tech" companies to "prevent harm from

occurring," regardless of whether those efforts pertained to Misinformation. Defendants also object

to the Interrogatory to the extent a response requires review of internal, deliberative documents

discussing such communications, attorney client documents, or other privileged materials relating to

agency communications.   Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege.   Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.  Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE**:  Subject to and without waiving the above objections, DHS refers to its response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d), and further responds as follows: Consistent with the Department's mission to protect the homeland, DHS responds to Misinformation that poses a threat to the homeland.  It identifies Misinformation that poses a threat to the homeland through publicly available sources, research conducted by academic and other institutions, and information shared by other federal agencies and partners.  DHS then shares factual information related to its mission and about which it has expertise to potentially impacted people and organizations.

**Additional Interrogatory No. 12 (DHS No. 13):**

Identify every federal agency, group, sub-group, department, component, division, sub-division, officer, official, employee, agent, or other person or entity within the federal government, both within and without DHS, that communicates or has communicated with any Social-Media Platform regarding Misinformation and/or Content Modulation, including but not limited to any person or entity whose activity is or was to be subject to oversight by the Disinformation Governance Board, including the nature of their coordination with the Social-Media Platform(s).

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad and unduly burdensome to the extent it seeks identification of every "person or entity within the federal government," including those "without DHS," that "communicates or has communicated with any Social-Media Platform." This Interrogatory appears to call on Defendants to exceed the information reasonably available to them and thus goes beyond the scope of Rules 26 and 33. Even if such an Interrogatory were proper as to the conduct of the named Defendants, it would still be overbroad and disproportional to the needs of the case to the extent it seeks information about any agency that is not a Defendant in this action. Defendants further object to this Interrogatory as overbroad and cumulative to the extent it seeks information requested in earlier interrogatories, in particular Interrogatory 1, that also seek identification of individuals who have communicated with or are communicating with a social-media platform regarding Misinformation. Defendants additionally object to this Interrogatory as vague because it does not define what constitutes "coordination." Defendants also object to this Interrogatory as overbroad and unduly burdensome to the extent it seeks a description of "the nature of . . . coordination" between any and all "person[s] or entit[ies] within the federal government" and a "Social-Media Platform." Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to

discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, DHS responds as follows: DHS components lead on operational efforts to counter Misinformation in their relevant mission spaces. Within DHS HQ, personnel from within DHS's Office of Intelligence & Analysis, Office of Strategy, Policy, and Plans, Office of Public Affairs, and Disinformation Governance Board have communicated with Social-Media Platforms regarding Misinformation.

**Additional Interrogatory No. 13 (DHS No. 14):**

Identify every federal agency, group, sub-group, department, component, division, sub-division, officer, official, employee, agent, or other person or entity within DHS that is involved in "counter-disinformation efforts" and, as part of those efforts, communicates or has communicated with any Social-Media Platform, including the nature of such "counter-disinformation efforts."

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants

58

also object because the undefined term "counter-disinformation efforts" is vague, and ambiguous. Defendants further object to this Interrogatory because it seeks information that is not relevant to Plaintiffs' claims and does not fall within the scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory, however, also asks Defendants to describe "the nature of . . . 'counter-disinformation efforts,'" independent of any communications with social media platforms and thus goes beyond the scope of discovery authorized by the Court. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44.  Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" ("communicates or has communicated") is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.  Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:**  Subject to and without waiving the above objections, DHS responds as follows: DHS components lead on operational efforts to counter Misinformation in their relevant mission spaces.  Within DHS HQ, personnel from within DHS's Office of Intelligence & Analysis, Office of Strategy, Policy, and Plans, and Disinformation Governance Board have communicated with Social-Media Platforms regarding Misinformation. The nature of DHS's work is that it identifies Misinformation that threatens the homeland through publicly available sources, research conducted by academic and other institutions, and information shared by other federal agencies and partners. DHS then shares factual information related to its mission to potentially impacted people and organizations.

**Additional Interrogatory No. 14 (Jankowicz No. 9):**

Identify the nature, purpose, participants, topics to be discussed, and topics actually discussed at the meeting between DHS personnel and Twitter executives Nick Pickles and Yoel Roth scheduled on or around April 28, 2022.

**OBJECTIONS:** Defendants incorporate by reference the above objections.  Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case.  Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule.  Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Defendants also objects to this Interrogatory as overbroad because it information that is not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests

60

concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for information relating to a specific meeting with two identified employees of Social-Media Platforms, or "any similar meeting with [any other] personnel associated with any Social-Media Platform," regardless whether those communications pertain to Misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

**RESPONSE:**  Subject to and without waiving the above objections, Defendant DHS responds on behalf of ▮ DHS 1 ▮, and responds as follows:  The April 28, 2022 meeting between DHS personnel and Twitter executives ▮ Twitter 7 ▮ and ▮ Twitter 8 ▮ did not occur.

**Additional Interrogatory No. 15 (Ms. Easterly No. 8):**

Identify every working group, "analytic exchange," task force, joint government-private enterprise, or similar formal or informal arrangement that involves federal official(s) communicating with any Social-Media Platform(s) about Content Modulation and/or Misinformation, including all participants in such groups.

**OBJECTIONS:**  Defendants incorporate by reference the above objections.  Defendants further object to this Interrogatory as vague because it does not define key terms, including "working group" and "arrangement."  Defendants further object to this Interrogatory as unduly

burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified communications ("arrangement . . . communicating") from any Defendant or any employee or subordinate of any Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule.  Location of information about every "federal official" communicating with "any Social-Media Platform[]" would require a search that is not feasible under the current, abbreviated expedited discovery schedule. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege.   Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44.   Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency ("federal official(s)") whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communicating" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative

NON-CONFIDENTIAL // REDACTED

of Common Interrogatories 1 through 5.  Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:**  Subject to and without waiving the above objections, Defendant CISA responds on behalf of [CISA 1], and refers to the response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d), and further responds as follows:

Working groups, "analytic exchanges," task forces, joint government-private enterprises, or similar formal or informal arrangements that involve CISA officials communicating with Social-Media Platforms about Misinformation, include, but are not limited to:

- CISA's Mis-, Dis-, and Malinformation (MDM) team, formerly known as the CFITF.  The CFITF was established in May 2018 in CISA's predecessor agency. The CFITF was charged with helping the American people understand the risks from MDM and how citizens can play a role in reducing the impact of MDM on their organizations and communities. In 2021, the CFITF officially transitioned to CISA's MDM team, and the mission evolved to reflect the changing information environment. The MDM team continues to work in close coordination with interagency and private sector partners, social media companies, academia, and international partners on a variety of projects to build resilience against malicious information activities.

- A recurring engagement between USG – Industry, as described in response to Common Interrogatory No. 4.

- CISA CSAC, including the Protecting Critical Infrastructure from Misinformation and Disinformation Subcommittee, as described in response to [Interrogatory No. 4]. Additional information about the CSAC is available on CISA's website,

NON-CONFIDENTIAL // REDACTED

https://www.cisa.gov/cisa-cybersecurity-advisory-committee.

- The EIS-GCC and EI-SCC Joint MDM Working Group, as described in response to Common Interrogatory No. 4.

**Additional Interrogatory No. 16 (Ms. Easterly No. 10):**

Identify every instance in which CISA's "MDM team" has "serve[d] as a switchboard for routing disinformation concerns to appropriate social media platforms," as stated in Your April 12, 2022 bulletin, including all Communication(s) related to such instance.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls Defendant to identify "every instance" in which CISA's "MDM team" "rout[ed] disinformation concerns." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

64

NON-CONFIDENTIAL // REDACTED

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:**  Subject to and without waiving the above objections, Defendant CISA responds on behalf of **CISA 1**, and refers to the response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 17 (Ms. Jean-Pierre No. 6):**

Identify all "members of our senior staff" and/or "members of our COVID-19 team" who are "in regular touch with … social media platforms," as [Jennifer Psaki] stated at a White House press briefing on or around July 15, 2021, including the nature of the communication and/or coordination.

**OBJECTIONS:**  Defendant incorporates by reference the above objections.  Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Request calls for a response based on *any and all* specified "communications" from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Defendant also objects to this Interrogatory as overbroad because it calls for a response based on documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendant also objects to this Interrogatory to the extent it seeks internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to such communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney,* 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this request to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

NON-CONFIDENTIAL // REDACTED

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**Additional Interrogatory No. 18 (Ms. Jean-Pierre No. 7):**

**Identify all Communications with any Social-Media Platform relating to "12 people who are producing 65 percent of the anti-vaccine misinformation on social-media platforms," as [Jennifer Psaki] stated at a White House press briefing on or around July 15, 2021.**

**OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a response based on communications with Social-Media Platforms

regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications.   Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit

NON-CONFIDENTIAL // REDACTED

(if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**Additional Interrogatory No. 19 (Ms. Jean-Pierre No. 8):**

**On or around July 15, 2021, You stated that "we engage with them [i.e., Social-Media Platforms] regularly and they certainly understand what our asks are." Identify what Social-Media Platform(s) are included in any such engagement(s), and identify "what our asks are," including Communication(s) relating to such engagement(s) and ask(s).**

**OBJECTIONS:**  Defendant incorporates by reference the above objections.  Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule.  Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social

69

media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such

NON-CONFIDENTIAL // REDACTED

information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**Additional Interrogatory No. 20 (Ms. Jean-Pierre No. 10):**

**Identify all person(s) who "engage[s] regularly with all social media platforms about steps that can be taken" to address Misinformation on social media, which engagement "has continued, and … will continue," as You stated at the April 25, 2022 White House press briefing, including all Communications with any Social-Media Platform involved in such engagement.**

**OBJECTIONS:**  Defendant incorporates by reference the above objections.  Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule.  Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests

NON-CONFIDENTIAL // REDACTED

NON-CONFIDENTIAL // REDACTED

concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications.  Defendant also objects to this Request to the extent it seeks internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to such communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record.  *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given

72

that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming.  Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

NON-CONFIDENTIAL // REDACTED

Dated:  August 17, 2022              Respectfully submitted,

                                    BRIAN M. BOYNTON
                                    Principal Deputy Assistant Attorney General

                                    ERIC WOMACK
                                    Assistant Director, Federal Programs Branch

                                    ADAM D. KIRSCHNER
                                    Senior Trial Counsel

                                    */s/ Indraneel Sur*
                                    KYLA SNOW (Ohio Bar No. 96662)
                                    INDRANEEL SUR (D.C. Bar No. 978017)
                                    KUNTAL CHOLERA
                                    Trial Attorneys
                                    U.S. Department of Justice
                                    Civil Division, Federal Programs Branch
                                    1100 L. Street, NW
                                    Washington D.C. 20005
                                    Tel: (202) 616-8488
                                    Indraneel.Sur@usdoj.gov

                                    *Attorneys for Defendants*

NON-CONFIDENTIAL // REDACTED

## VERIFICATION

I, ⬛ OSG 2 ⬛, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the interrogatory response of the Office of the Surgeon General to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 1-3, contained in the Responses of the Office of the Surgeon General, is true and correct, to the best of my knowledge.

Dated: August __16__, 2022

⬛ OSG 2 ⬛

⬛ OSG 2 ⬛
Chief of Staff
Office of the Surgeon General

## VERIFICATION

I, <span style="background:black; color:red;">NIAID 5</span>, Ph.D., pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the interrogatory response of the National Institute of Allergy and Infectious Diseases to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 1, 3, and 5-7, contained in the Responses of the National Institute of Allergy and Infectious Diseases, is true and correct, to the best of my knowledge.

Dated: August 17, 2022



NIAID 5 , Ph.D.

Deputy Director for Science Management, and Executive Officer

NIAID/NIH/DHHS

NON-CONFIDENTIAL // REDACTED

## <u>VERIFICATION</u>

I, ███ CDC 1 ███, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the interrogatory response of the Centers for Disease Control and Prevention to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 1-4 contained in the Responses of the Centers for Disease Control and Prevention, is true and correct, to the best of my knowledge.

Dated: August 17, 2022



CDC 1

Health Communications Specialist

Director, Division of Digital Media, OADC

Centers for Disease Control and Prevention

NON-CONFIDENTIAL // REDACTED

**Verification**

I, ██████DHS 3██████, hereby declare that I am the Acting Assistant Secretary of Homeland Security for Counterterrorism, Threat Prevention, and Law Enforcement Policy at the Department of Homeland Security. Based on reasonable inquiry and information provided to me in my official capacity, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the information regarding the Department of Homeland Security contained in the Defendants' responses to Plaintiff's Common Interrogatories 1–5 and Additional Interrogatories 8–14 is true and correct to the best of my knowledge.



Acting Assistant Secretary of Homeland Security for Counterterrorism, Threat Prevention, and Law Enforcement Policy

Department of Homeland Security

## VERIFICATION

I, ████CISA 4████ pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that

the interrogatory response of the Cybersecurity and Infrastructure Security Agency to

Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July

18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 15

and 16, contained in the Responses of the Cybersecurity and Infrastructure Security Agency,

is true and correct, to the best of my knowledge.

Dated: August __, 2022



Lead of Election Security & Resilience

Cybersecurity and Infrastructure Security Agency