**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 3:22-cv-01213-TAD-KDM |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, | |
| *Defendants*. | |

**FEDERAL DEFENDANTS' MOTION FOR PARTIAL STAY OF OCTOBER 21, 2022**
**ORDER PENDING PETITION FOR WRIT OF MANDAMUS**
**AND MEMORANDUM IN SUPPORT**

**INTRODUCTION**

The United States plans to file tomorrow a petition for a writ of mandamus in the United

States Court of Appeals for the Fifth Circuit requesting that the Court of Appeals direct this Court

to vacate, in part, its order issued on October 21, 2022 ("Depositions Order"), ECF 90, insofar as

it granted Plaintiffs leave to take depositions of the following three officials as part of preliminary-

injunction-focused expedited discovery: (1) the Surgeon General, Vivek Murthy; (2) the Director

of the Cybersecurity and Infrastructure Security Agency ("CISA"), Jen Easterly; and (3) Deputy

Assistant to the President and Director of White House Digital Strategy, Rob Flaherty.[1]

The Court's Depositions Order would require the relevant high-ranking government

officials to divert time from their professional duties to prepare for, and participate in, time-

---

[1] Plaintiffs elected to seek the deposition of Director Flaherty instead of the authorized alternative, the former White House Senior COVID-19 Advisor, Andrew Slavitt; and they elected to seek the deposition of Director Easterly instead of the authorized alternative, CISA official Lauren Protentis.

consuming depositions. To prevent imposing the burdens associated with these depositions on the Federal Defendants while the Fifth Circuit resolves the mandamus petition, the Federal Defendants hereby move this Court to stay the Depositions Order as to Surgeon General Murthy, Director Easterly, and Director Flaherty pending the Fifth Circuit's disposition of the mandamus petition the Federal Defendants expect to file tomorrow.[2] Plaintiffs oppose this requested relief.[3] Should the Court have not granted a stay of the three depositions by 2:00 PM CST on Wednesday, November 2, 2022, Defendants intend to seek relief in the Fifth Circuit to protect against the irreparable harm discussed in this motion.

## ARGUMENT

This Court has "broad discretion to stay proceedings," *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997), including under a four-factor test for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest

---

[2] The mandamus petition does not seek relief as to the Depositions Order's authorization for several other witnesses: White House Chief Medical Advisor Dr. Anthony Fauci; former White House Press Secretary Jennifer Psaki; FBI Supervisory Special Agent Elvis Chan; Center for Disease Control and Prevention ("CDC") Chief of the Digital Media Branch Carol Crawford; and Principal Deputy Coordinator the State Department's Global Engagement Center Daniel Kimmage. Ms. Psaki, however, is the subject of a subpoena in the Eastern District of Virginia and Defendants expect to move in that court to quash her subpoena. Further, Defendants expect to move this Court to reconsider the authorization of the deposition of another defendant, Mr. Chan, based on new information from non-party Meta that has come to light since the Court authorized the deposition. That motion is distinct from this motion for a stay.

[3] Absent court-ordered relief, the parties have reached an agreement on the following modified discovery schedule for the individuals subject to the mandamus petition: Director Flaherty's deposition scheduled for December 1, 2022; Dr. Murthy for December 6, 2022; and Director Easterly for December 9, 2022. The deposition period set by the Court will have to be extended from November 21, 2022, to December 9, 2022, to account for this agreed-upon schedule but the parties will address an extension in a separate filing.

lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see, e.g.*, *Chafin v. Chafin*, 133 S. Ct. 1017, 1027 (2013); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Under this "traditional standard," the first two factors "are the most critical." *Nken*, 556 U.S. at 434; *see United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013). Here, each of the factors warrants the requested stay pending Fifth Circuit disposition of the forthcoming mandamus petition.

## 1.   Federal Defendants Will be Irreparably Harmed Absent A Stay

*First*, absent a stay, high-ranking governmental officials would be diverted from their significant duties and burdened in both preparing and sitting for a deposition, all of which may ultimately prove to be unnecessary if the Court of Appeals grants the mandamus petition. Absent a stay, Defendants would be irreparably harmed should their mandamus petition, which raises weighty issues for the Fifth Circuit to consider, not ultimately be resolved before the required preparation and attendance of these high-ranking government officials. "It would be difficult—if not impossible—to reverse the harm" at a later stage of the case. *See Hollingsworth v. Perry*, 558 U.S. 183, 195 (2010) ("irreparable harm will likely result from the denial of the stay" absent which trial would be broadcast, and "[i]t would be difficult—if not impossible—to reverse the harm from those broadcasts," including as to witnesses anticipating harassment from their testimony based on "incidents of past harassment"); *John Doe Agency, et al. v. John Doe Corp.*, 488 U.S. 1306, 1308-09 (1989) (Marshall, J., in chambers) (staying FOIA disclosure order of lower court pending disposition of cert petition where, *inter alia*, "fact that disclosure would moot that part of the [challenged] decision requiring disclosure of the *Vaughn* index would also create an irreparable injury").

Expedited discovery itself is an exception to the ordinary rules of civil litigation, and the depositions of high-ranking government officials are an exception even beyond that: Such officials are not subject to deposition absent extraordinary circumstances, which exist only when the

proponent establishes that such officials can exclusively provide essential information that cannot be obtained through other means. A showing of such stringency is necessary to avoid encroachment on constitutional separation of powers and to prevent the disruption of governmental affairs. *In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018) (per curiam), *as revised* (Nov. 30, 2018) (unpublished) (quoting *In re Fed. Deposit Ins. Corp. ("F.D.I.C.")*, 58 F.3d 1055, 1060 (5th Cir. 1995)); *In re Stone*, 986 F.2d 898, 905 (5th Cir. 1993) (per curiam). So a "district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding[.]" *In re USA*, 624 F.3d 1368, 1376 (11th Cir. 2010).

Indeed, the very purposes of the "exceptional circumstances" test for depositions of high-ranking government officials would be thwarted if the challenged depositions were to proceed during the pendency of a mandamus petition that seeks to limit those depositions in line with precedent: "High ranking government officials have greater duties and time constraints than other witnesses." *See F.D.I.C.*, 58 F.3d at 1060 (quoting *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993)). As a result, "[i]f courts did not limit the[] depositions [of high-ranking officials], such officials would spend 'an inordinate amount of time tending to pending litigation.'" *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (quoting *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)). And "high level executives and government officials need some measure of protection from the courts because they are vulnerable to numerous, repetitive, harassing, and abusive depositions." *Asberry v. Sch. Bd. of Pasco Cnty., Fla.*, No. 18-cv-02222, 2019 WL 12383128, at *1 (M.D. Fla. Aug. 20, 2019) (citation omitted).

The Federal Defendants do not seek extraordinary mandamus relief simply because they disagree with the Court's case-management decisions. Rather, they do so because proceeding with the challenged depositions would unavoidably distract these high-level officials "from the

energetic performance" of their important and time-sensitive duties—including, for example, overseeing the U.S. Government's efforts to promote the security and resilience of the Nation's election infrastructure from cyber, physical, and other threats—and thus would cause irreparable harm. *See Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 369 (2004).

## 2. Federal Defendants Have A Strong Likelihood Of Success On The Merits

*Second*, Federal Defendants are likely to succeed on the merits of their mandamus petition. Plaintiffs have not met their burden of demonstrating extraordinary circumstances sufficient to justify the exceptional depositions of senior government officials sought here, and the Government respectfully submits that the contrary rationale in the Depositions Order failed to hold Plaintiffs to the proper legal standard governing that burden.

In *Bryant*, the Fifth Circuit noted that a lower court had "recognized," as a preliminary requirement for an "exceptional circumstances" analysis, that the proponent of the deposition must show "that the official has first-hand knowledge related to the claims being litigated that is unobtainable from other sources." 745 F. App'x at 218 n.2; *see also Freedom From Religion Found., Inc. v. Abbott*, No. 16-cv-233, 2017 WL 4582804 at *11 (W.D. Tex. Oct. 13, 2017) (citing *Bogan*, 489 F.3d at 423, which observed that "[d]epositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated"). Only *after* the "first-hand knowledge" threshold is crossed does a court properly turn to deciding "whether exceptional circumstances exist" to warrant such an extraordinary deposition, and in that assessment, the court "must consider (1) 'the high-ranking status of the deponents,' (2) 'the potential burden that the depositions would impose upon them,' and (3) 'the substantive reasons for taking the depositions.'" *Bryant*, 745 F. App'x at 218 (quoting *F.D.I.C.*, 58 F.3d at 1060). "As an overarching consideration, the court must also consider that 'it will be the rarest of cases . . . in

which exceptional circumstances can be shown where the testimony is available from an alternate witness.'" *Id.* (quoting *F.D.I.C.*, 58 F.3d at 1062). Under this standard, the fact that "[a]gency leaders . . . send and receive correspondence relative to their actions" cannot alone suffice to warrant their depositions. *F.D.I.C.*, 58 F.3d at 1061.

Applying this standard, the *Bryant* court concluded that a magistrate judge's order requiring a deposition of the chief of staff of a state governor did not "adequately address" "several important aspects" of the *F.D.I.C.* analysis,[4] including, as relevant here: (a) "whether the information desired can be sought from alternative witnesses or must exclusively come from the" proposed deponent; (b) "whether the information desired can be obtained in another form," *Bryant*, 745 F. App'x at 220, where it was "likely that written answers to questions, given under oath, would be sufficient," *id.*; and (c) "if it cannot be obtained in another form, whether the scope of the inquiry can be more closely tailored to target only the specific questions raised" at a Rule 30(b)(6) deposition previously taken, *id.* at 220.

Here, this Court's Depositions Order cited *Bryant* but did not adhere to its governing legal standards. It did not perform the requisite analysis to support a finding of "exceptional circumstances" warranting the depositions of each official. In particular:

**Surgeon General Murthy:** Plaintiffs made no showing, and the Court made no finding, that Dr. Murthy has any unique personal knowledge concerning their allegations to warrant a deposition. And Defendants have proposed adequate alternative witnesses in lieu of Dr. Murthy— alternatives the Court did not consider. Although Dr. Murthy was a custodian whose emails were searched, those searches turned up very little responsive material. Defendants produced what little

---

[4] In so concluding, the Fifth Circuit denied, without prejudice, the petition for mandamus as premature in order to allow the magistrate judge an opportunity to fully consider the appropriate factors in the analysis before the parties sought appellate review. *Bryant*, 745 F. App'x at 220.

responsive material they found for Dr. Murthy in response to Plaintiffs' written discovery requests. That included one isolated text message involving Dr. Murthy, which was produced in a single screenshot. This Court extrapolated from this singular text message a potential phone call, and then assumed that Dr. Murthy had direct and routine contact with a senior Meta executive. But an isolated exchange does not support such a finding or warrant the deposition of Dr. Murthy: "Agency leaders often send and receive correspondence relative to their actions," including actions potentially affecting private parties, but that "does not of itself subject them to the burdens of litigation discovery." *See F.D.I.C.*, 58 F.3d at 1061. In contrast, Dr. Murthy's chief of staff, Max Lesko, or, instead, a Senior Advisor and former Chief Engagement Officer at the Office of the Surgeon General, Eric Waldo, are each sufficient alternative witnesses. Defendants identified and produced responsive material from each of those individuals concerning their participation in communications with social media platforms, including on communications on which Dr. Murthy was copied, to which either individual could testify in lieu of Dr. Murthy.

*CISA Director Easterly:* Plaintiffs did not establish, and the Court did not find, unique "first-hand knowledge" on behalf of Director Easterly to meet the "exceptional circumstances" test. Director Easterly—who oversees the U.S. Government's efforts to promote the security and resilience of the Nation's election infrastructure from cyber, physical, and other threats—did not even assume her position at CISA until July 2021, many months after the 2020 election, and thus does not have personal knowledge regarding the full range of Plaintiffs' inquiries relating to CISA. *See Bryant*, 745 F. App'x at 218 n.2. Thus, as an alternative to Director Easterly, Defendants have offered Geoffrey Hale as a deponent. As the Associate Director of Election Security and Resilience at CISA, Hale often reports to Director Easterly. And unlike Director Easterly, he was employed by the agency during the 2020 election. Plaintiffs are required at least to attempt to obtain the

information they seek from this highly knowledgeable witness before seeking to depose Director Easterly, *id*. at 222, but the Depositions Order did not take his availability into account. As with Surgeon General Murthy, the Court failed to consider any alternatives to Director Easterly at all. And yet, when the Court authorized the deposition of Director Easterly, it allowed Plaintiffs to select either Director Easterly *or* CISA official Lauren Protentis[5] as a deponent, *see* Depositions Order 20-21, thereby indicating that there are in fact adequate alternative sources of information available to Plaintiffs and no exceptional circumstances warrant the Director's deposition here. Moreover, as with Dr. Murthy, Defendants located and produced very little relevant documents from Director Easterly in response to written discovery requests. While the limited number of relevant documents included isolated electronic messages, totaling three screen shots, the bare existence of isolated mobile messages exchanged between Director Easterly and employees of technology companies cannot suffice to warrant a deposition of Director Easterly. *See F.D.I.C.*, 58 F.3d at 1061. The Depositions Order also failed to address less burdensome alternatives to a deposition of Director Easterly, such as potentially additional interrogatories. *See also In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) (describing precedent allowing SBA Administrator to answer written "interrogations" as less burdensome alternative to deposition).

***Deputy Assistant to the President Flaherty:*** In accepting the Plaintiffs' contention that Director Flaherty met the "exceptional circumstances" doctrine, the Depositions Order inferred his personal knowledge of relevant matters from his mere inclusion on electronic correspondence that

---

[5] Authorizing Lauren Protentis as an alternative raises its own problems because, as explained in Defendants' portion of the Joint Statement on Depositions, Ms. Protentis is on maternity leave. Joint Statement 45, ECF No. 86. The Court ignored the unique burdens associated with compelling Ms. Protentis to sit for a deposition while on leave. Defendants offered Geoffrey Hale—Ms. Protentis's second-line supervisor and a custodian in the case—as an adequate alternative deponent for both Director Easterly and Ms. Protentis. *Id.* at 63 n.4.

other government officials had with social media platforms. But Director Flaherty was not even named in the original Complaint that formed the basis of the preliminary-injunction motion that discovery was meant to inform. *See* Discovery Order 12, ECF No. 34 ("The proposed discovery requests are targeted to the specific allegations of Plaintiff States' Complaint."); Order on Joint Statement 4, ECF No. 72 (denying "Plaintiffs' request for additional expedited preliminary-injunction discovery as to the newly added defendants" in the forthcoming Second Amended Complaint, in which Director Flaherty was added as a defendant). The Depositions Order compounded that error by failing to consider less burdensome means for obtaining the purportedly necessary information from Director Flaherty. Likewise, it failed to consider alternative sources of information: Indeed, to the extent Plaintiffs seek to learn about communications between Director Flaherty and private companies, they have an avenue for seeking that information—the companies themselves—rather than burdening a current Director of a White House office and a Deputy Assistant to the President. *United States v. Newman*, 531 F. Supp. 3d 181, 190 (D.D.C. 2021) (finding absence of exceptional circumstances to depose a former Deputy Assistant to the President, a high-ranking official). The only reason to depose Director Flaherty would be to discover internal government deliberations, which are highly likely to be privileged and thus shielded from discovery. Having such a senior White House official subject to deposition, and the burden associated with it, raises separation of power concerns. *See, e.g.*, *Cheney*, { TA \l "*Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004)" \s "dabmci_173dfc4e890b4721a2de965286393fcf_29" \c 3 }*542 U.S. at 390*. There is no basis to conclude that the exceptional circumstances standard has been met.

Taken together, those flaws in the Depositions Order make it highly likely that the Federal Defendants will prevail in their forthcoming mandamus petition as to all three witnesses. After all,

"mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." *See Cheney*, 542 U.S. at 382. Here, high-ranking officials in multiple agencies and the White House will be forced to prepare for and attend depositions, which will indisputably "interfer[e] with" their "ability to discharge [their] constitutional responsibilities." *Id.* This is not one of the "rarest of cases" in which no alternative witness could provide the information Plaintiffs seek from Dr. Murthy, Director Easterly, or Director Flaherty. *See Bryant*, 745 F. App'x at 220 (citation omitted).

### 3.  Plaintiffs Will Not Be Prejudiced By A Stay

*Third*, in contrast to the harms to the Federal Defendants described above, which are plainly irreparable, Plaintiffs will suffer relatively little harm, if any, from an immediate stay of the depositions of these three high-ranking officials.

Again, as just discussed, Defendants are prepared to make alternative witnesses available for deposition. Further, Defendants are not objecting to several of the other depositions Plaintiffs seek, including that of Dr. Fauci. Likewise, Plaintiffs already have more than 15,000 pages of documents from Federal Defendants, multiple interrogatory responses, and information produced by third-party social media companies—all of which Plaintiffs can use to supplement their preliminary-injunction motion. There is no indication that the disputed depositions will necessarily result in any new or unique evidence, much less evidence that would be indispensable to the pending preliminary injunction motion. Instead, the depositions would potentially subject the witnesses to examination regarding their internal thought processes concerning decisions for which they were responsible as government officials—material which is at least in part protected by governmental privileges, *see* Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) (discussing the presidential communications and deliberative process privileges), and is in any event irrelevant to this Court's disposition of the preliminary-injunction

motion. Plaintiffs' case seeks information related to external communications between the Government and social-media companies. *See* Discovery Order 13, ECF No. 34 (describing the targeted discovery authorized as "seeking the identify of federal officials who have been and are communicating with social-media platforms about disinformation . . . including the nature and content of those communications"). Again, Defendants have already provided this information through document productions and interrogatory responses, and the possibility that the depositions will veer into privileged matters for little to no gain to Plaintiffs further shows that Plaintiffs will not be prejudiced by a stay.

Moreover, even if those depositions were to turn up some new, material facts, Plaintiffs would not suffer any irreparable harm from the minor delay of a stay pending mandamus review of the Depositions Order. Plaintiffs delayed filing this lawsuit and seeking expedited discovery. As the Federal Defendants have previously explained, multiple other parties had already brought similar suits alleging violation of First Amendment rights based on underlying episodes of social media platform content moderation—since as early as August 2021—and yet Plaintiffs did not file suit until roughly nine months later, in May 2022. *See* Defs.' Resp. to the States' Mot. for Expedited Disc., ECF No. 26. Plaintiffs then waited roughly one month before moving for a preliminary injunction and expedited discovery. *See* Pls.' Mot. for Expedited Prelim. Inj. Related Disc., ECF No. 17. Plaintiffs cannot delay seeking relief by several months, and then contend that they will suffer a material harm from the time-limited delay that would result from the stay sought to allow for orderly appellate resolution of an important legal question. *Cf. H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*, No. 3:09-cv-00390, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) (quoting *Wireless Agents, L.L.C. v. T–Mobile USA, Inc.*, 2006 WL 1540587, at *3 (N.D.

Tex. June 6, 2006), and citing *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975)).

Additionally, Defendants expect to move in the Eastern District of Virginia to quash the deposition of Jennifer Psaki. As this Court already indicated, that process may require the deposition period to be extended. *See* Depositions Order at 5. Thus, a stay for the three depositions at issue, for purposes of giving the Fifth Circuit sufficient time to consider the issue, would not unduly delay resolving any preliminary injunction motion.

### 4.  The Public Interest Favors A Stay

*Fourth*, and in addition to preventing the irreparable harm to the Government already described above, the requested stay would also promote judicial economy. If the Federal Defendants' mandamus petition is successful, or if any appellate proceedings result in relief concerning the deposition of Ms. Psaki, the costs and scope of this preliminary-injunction discovery phase will be significantly limited. "[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012). There is no need to further tax the resources of the Court and the parties by proceeding with depositions that the Fifth Circuit may ultimately deem improper.

### CONCLUSION

The Court's October 21, 2022 Order presents a substantial legal issue that significantly affects the scope of preliminary-injunction expedited discovery in this action. The Federal Defendants respectfully request that this Court stay the depositions of Surgeon General Murthy, Director Easterly, and Director Flaherty until resolution of the mandamus petition.

13

Dated: October 27, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel, Federal Programs
Branch

*/s/ Kyla Snow*
ADAM D. KIRSCHNER (IL Bar No. 6286601)
Senior Trial Counsel
KYLA SNOW (OH Bar No. 96662)
INDRANEEL SUR (D.C. Bar No. 978017)
KUNTAL CHOLERA (D.C. Bar No. 1031523)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Tel: (202) 514-3259
kyla.snow@usdoj.gov

*Attorneys for Defendants*