IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br> *Defendants*. | No. 3:22-cv-01213-TAD-KDM |

**DEFENDANTS' MOTION FOR RECONSIDERATION
REGARDING DEPOSITION OF FBI ASSISTANT
SPECIAL AGENT IN CHARGE ELVIS CHAN**

In its October 21, 2022, Memorandum Order Regarding Witness Depositions, the Court authorized an expedited deposition of Elvis Chan, Assistant Special Agent in Charge ("ASAC") of the San Francisco Division of the Federal Bureau of Investigation ("FBI"),[1] based almost exclusively on Plaintiffs' representation that, in response to their "third-party subpoena, Meta's counsel identified Chan as the FBI agent who communicated with Facebook" about stories "of the Hunter Biden Laptop." ECF No. 80 ("Depo. Order") at 18. Meta, however, recently sent Plaintiffs' counsel a letter—attached as Exhibit A—explaining that Plaintiffs' understanding of Meta's statement concerning ASAC Chan is "incorrect." Meta further stated that that "Mr. Chan at no point in time advised Meta 'to suppress the Hunter Biden laptop story' . . . [n]or did any of his colleagues." Based on this newly received evidence, the Court should amend the Deposition Order, and withdraw its authorization of a deposition of ASAC Chan. ASAC Chan, a management-level

---

[1] Plaintiffs have identified ASAC Chan by his former position (Supervisory Special Agent).

1

FBI official, should not have to divert time away from his official duties to participate in an expedited deposition when the record contains no evidence suggesting that he has engaged in the communications that led the Court to authorize his deposition in the first place.

## BACKGROUND

In the parties' October 14, 2022, joint statement concerning expedited depositions, Plaintiffs asked the Court to "order the deposition of FBI Supervisory Special Agent Elvis Chan," principally arguing that "in response to Plaintiffs' third-party subpoena, Meta's counsel identified [Chan] as the one who conveyed 'the communications between the FBI and Meta that led to Facebook's suppression of the Hunter Biden laptop story.'" ECF No. 86 at 19.

Plaintiffs also relied on several of their own self-serving allegations concerning ASAC Chan—rather than actual evidence—to justify his deposition. *See* ECF No. 86 at 19-21 (referring to various allegations in Plaintiffs' Second Amended Complaint). Those allegations generally embellished certain innocuous, public statements ASAC Chan made concerning routine cyber threat discussions he had with various companies, including social media companies. For example, Plaintiffs rely on their allegation that ASAC Chan "admits to regular, routine coordination about censorship with social-media platforms," *see id.* at 19 (quoting 2d Am. Compl. ¶ 389), but that allegation relies on an interview in which ASAC Chan simply stated: the FBI regularly "shar[ed] intelligence with technology companies, with social media companies, so that they could protect their own platforms . . . we have all of these methods for collecting intelligence . . . [w]e share them with you and then *you do what you want with them to protect your networks*," https://www.banyansecurity.io/resource/get-it-started-get-it-done/ (cited in 2d Am. Compl. ¶¶ 387-89) (emphasis added). Plaintiffs could not identify a single quotation in that interview where ASAC Chan ever stated that the FBI asked or pressured any social media company to remove any

content from its platform. Plaintiffs also relied on an allegation that ASAC Chan had stated that social media platforms have been "trying to take down any misinformation or disinformation" and that they have "portals where [users] can report" election-related misinformation." ECF No. 86 at 20. Again, Plaintiffs could not quote any portion of ASAC Chan's statement where he stated that he, or anyone else at the FBI, asked or pressured any social media company to remove any content from its platform.

The Court nevertheless authorized an expedited deposition of ASAC Chan. *See* Depo. Order at 18. Although the Court found that ASAC Chan is "a high-ranking official" because he "served as the FBI Supervisory Special Agent," the court authorized the deposition because of Plaintiffs' representation that ASAC "Chan was identified [by Meta] as the FBI Agent who communicated with Facebook . . . about the Hunter Biden laptop" story. Depo. Order at 18-19; *see id.* at 18 ("Plaintiffs maintain that in response to their third-party subpoena, Meta's counsel identified [ASAC] Chan as the FBI agent who communicated with Facebook to suppress [the Hunter Biden laptop] story."). The Court "ultimately [found]" that if ASAC Chan communicated with Facebook about "suppress[ing]" the "Hunter Biden laptop" story, "there are reasons to believe that he has interfered in other ways, too."[2] Depo. Order at 19.

Shortly after the Court issued its Deposition Order, Meta sent Plaintiffs' counsel a letter making clear that Plaintiffs' understanding that "Meta's counsel identified [ASAC] Chan as the

---

[2] The Court also noted that "Plaintiffs cite to a podcast where Mark Zuckerberg stated that communications from the FBI led to Facebook censoring stories of the Hunter Biden Laptop." But Plaintiffs admit that, during that podcast, the host "asked Zuckerberg if the FBI has flagged the Hunter Biden laptop story . . . specifically, and Zuckerberg stated: 'I don't remember if it was that specifically . . . .'" 2d Am. Compl. ¶ 383. Zuckerberg made a similar comment during an October 28, 2020 Senate Hearing when Senator Johnson asked him: "Did the FBI contact you and say the New York Post story" about Hunter Biden "was false?" https://www.rev.com/blog/transcripts/tech-ceos-senate-testimony-transcript-october-28. Zuckerberg replied: "Senator, not about that story specifically." *Id.*

one who conveyed 'the communications between the FBI and Meta that led to Facebook's suppression of the Hunter Biden laptop story'" is "incorrect." Ex. A at 1. Meta further stated that Plaintiffs' error, in turn, caused the Court to "incorrect[ly]" note, in its Deposition Order, that "Meta's counsel identified [ASAC] Chan as the FBI agent who communicated with Facebook to suppress [the Hunter Biden laptop] story." Ex. A at 1. Meta emphasized that "Mr. Chan at no point in time advised Meta 'to suppress the Hunter Biden laptop story' . . . [n]or did any of his colleagues." Ex. A at 1-2.

## ARGUMENT

The Court should amend its Deposition Order and withdraw its authorization of a deposition of ASAC Chan. An interlocutory order "may be revised at any time before the entry of a [final] judgment." Fed. R. Civ. P. 54(b). The Court has "considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order" and should do so if there is "any legitimate reason to revisit its earlier determination[]." *Tarleton v. DG Louisiana LLC*, No. 6:20-CV-00294, 2022 WL 4242941, at *1 (W.D. La. June 3, 2022). Thus, here, the Court must ask only whether there is a "legitimate reason to revisit" its decision to authorize an extraordinary, expedited deposition of ASAC Chan, a management-level FBI official. As the Court previously noted, expedited discovery in general "is not the norm" and should be "allow[ed]" only "in limited circumstances." Depo. Order at 3.

Here, the Court has a "legitimate reason" to amend its Deposition Order, and withdraw its authorization of a deposition of ASAC Chan. The principal factual basis of the Court's initial decision on ASAC Chan's deposition—that Meta is representing that ASAC Chan "communicated with Facebook to suppress [the Hunter Biden laptop] story," Depo. Order at 18—is now demonstrably inaccurate. The Court's inference based on that inaccuracy, *i.e.*, that "there are

4

reasons to believe that [ASAC Chan] has interfered in other ways, too," Depo. Order at 19, likewise lacks a factual foundation.

Although, in the parties' joint statement, Plaintiffs also referred to certain public statements made by ASAC Chan—*e.g.*, remarks that the FBI shared intelligence with social media companies, and notified people that they could report misinformation to social media companies, *see supra* at 2-3—those statements are innocuous, and do not support a First Amendment coercion claim. The FBI, as part of its law enforcement and national security initiatives to combat cyber-crimes and foreign influence operations,[3] has routinely communicated, and exchanged information, with private parties. That alone does not render the FBI constitutionally responsible for the decisions of any private party. Rather, a government actor's communications with a private party may render it "responsible for a private decision only when [the government] has exercised coercive power or has provided such significant encouragement . . . that the choice must in law be deemed to be that of the" government. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the" government "responsible for those initiatives." *Id.* at 1004-05; *see also Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (citing *Blum* in the context of a First Amendment claim); *Caleb v. Grier,* 598 F. App'x 227, 233-36 (5th Cir. 2018) (same). Here, none of ASAC Chan's statements referenced by Plaintiffs suggests that ASAC Chan ever "coerced," or effectively "coerced," any social media company into taking any action. Again, in those public statements, ASAC Chan simply noted that the FBI shared intelligence with platforms, and that they could "do what [they] want with" that intelligence "to protect [their] networks."

---

[3] *See* https://www.fbi.gov/investigate/cyber; https://www.fbi.gov/investigate/counterintelligence/foreign-influence; https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/election-crimes-and-security.

https://www.banyansecurity.io/resource/get-it-started-get-it-done/ (cited in 2d Am. Compl. ¶¶ 387-89). Nowhere in those statements did Chan suggest that the FBI commanded social media companies to take any action. Accordingly, there is no basis for authorizing an expedited deposition of ASAC Chan.

Plaintiffs sent Meta a response letter disagreeing with Meta's recollection of the parties' prior communications concerning ASAC Chan, and asserting that Plaintiffs understood certain "oral[]" statements by Meta's counsel to mean that Meta "identified Elvis Chan as the FBI official who was involved in the [Hunter Biden laptop] communication." Ex. B at 3. But regardless of whether Meta's prior statements to Plaintiffs could have been interpreted to suggest that ASAC Chan engaged in the communication at issue, Meta has since clarified that that is not what Meta intended to convey and not what Meta believes. *See supra* at 3-4. Thus, the Court can no longer justifiably conclude that ASAC Chan engaged in the relevant communication based on anything Meta has said.[4]

Plaintiffs' letter then states that even if ASAC Chan did not "specifically flag[] the Hunter Biden laptop story to Meta," he may have "issued a more general advisory communication about Russian disinformation that led Facebook to suppress the story." Ex. B at 5-6. But a "general advisory communication" that simply has the *effect* of convincing a private company to voluntarily take a particular action cannot support a First Amendment claim, and Plaintiffs cite to no authority suggesting otherwise. Nor could they. As noted above, Supreme Court precedent makes clear that the federal government is responsible for private conduct only if it *coerced*, or *effectively coerced*,

---

[4] Additionally, Plaintiffs' letter does not appear to dispute Meta's assertion that it never indicated that ASAC Chan "*coerced*" Facebook into taking any particular measure with respect to the Hunter Biden story. Plaintiffs' letter states only that, to their recollection, Meta had represented that Chan was "involved" in some unspecified "communication" about that story.

the private party into engaging in that conduct. *See supra* at 5. Any other rule would be unworkable in our society and system of government. Suppose, for example, that a federal official, during an interview, remarks that misinformation can have calamitous effects, and a social media company viewing the interview finds that it agrees with that remark and decides to take more action against what it deems misinformation. The federal official's remark surely cannot render the federal government responsible for the subsequent, independent decision of a private social media company. If it did, then the federal government could be held responsible for the myriad of independent decisions that private actors might make simply because they agree with, or are persuaded by, public statements by federal officials. Nothing in *Blum* or any other binding precedent Defendants are aware of would support this theory. Thus, Plaintiffs' fallback argument—that ASAC Chan may have made some "general" comment that inspired Facebook to independently target the Hunter Biden story for removal—does not support a First Amendment claim and cannot support an expedited deposition of ASAC Chan.

Plaintiffs' letter to Meta then argues that, aside from the Hunter Biden laptop story, they "have filed with the Court 123 pages of documents demonstrating that Mr. Chan routinely sets up and participates in oral meetings with social-media platform(s) to discuss disinformation issues." Ex. B at 5 (citing ECF No. 86-6). Plaintiffs, in support, cite to a single 121-page document, but cannot quote one sentence from that document where ASAC Chan, or any other federal official, asked (much less coerced) any social media company to remove any content from its platform. *See* ECF No. 86-6. Instead, the document includes a series of calendar invitations where the parties discussed "Information Sharing" and foreign interference in elections. *Id.* at 48. Thus, this document does not show that ASAC Chan has, or likely has, engaged in any improper communications with social media companies that would support a First Amendment claim.

7

Plaintiffs have therefore failed to refer to any evidence justifying a time-consuming, expedited deposition of ASAC Chan, a management-level law enforcement official. Accordingly, the Court should amend its October 21, 2022 Deposition Order pursuant to Rule 54(b), and withdraw its authorization of a deposition of ASAC Elvis Chan.

Dated: October 28, 2022 Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel, Federal Programs Branch

*/s/ Kuntal Cholera*
ADAM D. KIRSCHNER (IL Bar No. 6286601)
Senior Trial Counsel
KYLA SNOW (OH Bar No. 96662)
INDRANEEL SUR (D.C. Bar No. 978017)
KUNTAL CHOLERA (D.C. Bar No. 1031523)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Tel: (202) 514-3259
kuntal.cholera@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | No. 3:22-cv-01213-TAD-KDM |

### [PROPOSED] ORDER

The Court **GRANTS** Defendants' Motion for Reconsideration Regarding the Deposition of FBI Assistant Special Agent in Charge Elvis Chan. Pursuant to F.R.C.P. 54(b), the Court hereby **AMENDS** its October 21, 2022 Order (ECF No. 90), and withdraws its authorization of a deposition of FBI Assistant Special Agent in Charge Elvis Chan.

It is **SO ORDERED** this ____ day of _____, 2022.

_____
The Honorable Judge Terry Doughty
United States District Judge