

ATTORNEY GENERAL OF MISSOURI

ERIC SCHMITT

October 26, 2022

Reginald J. Brown, P.C.
Daniel Kearney
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 2004
(202) 389-5522
reginald.brown@kirkland.com

Re:   Meta's Statements re Elvis Chan

Dear Reg and Dan:

We are in receipt of Reg's letter dated October 25, 2022, regarding your concerns about statements in the Court's October 21, 2022 order regarding the deposition of FBI SSA Elvis Chan. We respectfully disagree with your suggestion that there is any error in the Court's findings, and we stand by our representations to the Court and the Court's conclusions based on them. We obtained the disclosure of Mr. Chan's identity from Meta pursuant to a lawful third-party subpoena authorized by the district court, and we have correctly represented the results of that subpoena to the Court, as they relate to Mr. Zuckerberg's public disclosure of an FBI communication.

Our representation to the Court that Meta identified Elvis Chan as involved in the communication from the FBI to Meta that led to Facebook's suppression of the Hunter Biden laptop story—*i.e.*, the communication that Mr. Zuckerberg publicly identified on August 26, 2022 during Joe Rogan's podcast—is directly supported by: (1) the nature of the discovery authorized by the Court, (2) the information requested in our third-party subpoena, (3) the long course of negotiations between us and Meta, (4) our August 26 agreement with Meta about Meta's identification of federal officials, (5) my September 3 email to Meta requesting clarification regarding which FBI official engaged in the communication identified by Mr. Zuckerberg and follow-up request for clarification on September 12, (6) our September 15 phone call with Meta in which the disclosure was made, and (7) the email I sent to Meta *the same day as that phone call* recounting that Reg had identified Mr. Chan as "involved" in that communication. To the extent Meta may now deny that it identified Elvis Chan as involved in that communication—which I note that Reg's letter of yesterday does *not* directly claim—that is not accurate.

**St. Louis Office**
815 Olive Street, Suite 200
St. Louis, MO 63101
Reply to:
P.O. Box 861
St. Louis, MO 63188
Phone: (314) 340-6816
www.ago.mo.gov

-2-

As you may recall, on July 12, 2022, the Court authorized us to serve third-party subpoenas on five social-media platforms "seeking the identity of federal officials who have been or are communicating with social-media platforms about disinformation, misinformation, malinformation, and/or any censorship or suppression of speech on social media, including the nature and content of those communications." Doc. 34, at 13. On July 18, 2022, we served you with a third-party subpoena seeking that very information, *i.e.*, "the identity of federal officials" who communicate with Meta about misinformation and censorship, and "the nature and content of those communications." *Id.* For months, we have sought *the identity of federal officials who have communicated with Meta about misinformation, disinformation, and suppression of speech*—not just federal officials who are "point[s] of contact" with Meta, as Reg's letter suggests.

A lengthy process of meeting and conferring followed this subpoena. During this process, we repeatedly insisted that Meta identify federal officials who had communicated with Meta about misinformation and content modulation on Meta's platforms, as well as the nature and content of their communications. Ultimately, on August 26, Dan proposed a compromise agreement, to which we agreed (with caveats) on August 27. As the very first point in this agreement, Dan stated that Meta would identify federal officials who had "communicated with Meta regarding content moderation," stating: "Meta will agree to provide a list of the primary contacts within the federal government (Trump or Biden Administration) *who communicated with Meta regarding content moderation* between January 1, 2020 and July 19, 2022 as it relates to: (i) COVID-19 misinformation; (ii) the Department of Homeland Security's proposed Disinformation Governance Board; (iii) *the New York Post story from October 14, 2020 about Hunter Biden's laptop computer*; and/or (iv) election security, integrity, outcomes, and/or public confidence in election outcomes…." In other words, Meta agreed to disclose, not just "primary contacts" within the federal government, but federal officials "who communicated with Meta regarding content moderation." The disclosure of Mr. Chan was pursuant to this agreement.

The same day of Dan's proposed agreement, August 26, 2022, Meta's CEO Mark Zuckerberg appeared on Joe Rogan's podcast and disclosed that a communication from the FBI had led Facebook to censor the Hunter Biden laptop story, which was specifically referenced in Point 1 of the parties' agreement. Paragraphs 382 and 383 of our Second Amended Complaint describe this disclosure, including quotes from Mr. Zuckerberg's public statements:

> On August 26, 2022, Mark Zuckerberg appeared on Joe Rogan's podcast and revealed that Facebook's censorship of the Hunter Biden laptop story had occurred as a result of communications from the FBI. Zuckerberg stated: "The FBI basically came to us" and told Facebook to be "on high alert" relating to "a lot of Russian propaganda," that the FBI was "on notice" that "there's about to be some kind of dump … that's similar to that, so just be vigilant." Zuckerberg stated: "If the FBI … if they come to us and tell us we need to be on guard about something, then I want to take that seriously." … Joe Rogan asked Zuckerberg if the FBI had flagged the Hunter Biden laptop story as Russian disinformation specifically, and Zuckerberg stated: "I don't remember if it was that specifically, but [the story] basically fit the pattern" that the FBI had identified. *See* https://www.wptv.com/news/national/fbi-responds-to-mark-zuckerberg-claims-on-joe-rogan-show-about-hunter-bidens-laptop (video commencing around 7:30).

-3-

Doc. 84, ¶¶ 382-83. "This revelation that the FBI had induced Facebook's censorship of the Hunter Biden laptop story was widely recognized as a bombshell revelation of federal law-enforcement influence on social-media censorship." *Id.* ¶ 383. We immediately demanded that, in response to our third-party subpoena and in keeping with the parties' agreement that *specifically referenced communications from federal officials relating to the Hunter Biden laptop story*, Meta identify the federal official(s) involved in the communication described by Mr. Zuckerberg that led to Facebook's censorship of the Hunter Biden laptop story.

On September 2, 2022, Dan emailed us a supplemental list of federal officials involved in communications with Meta about content moderation on the identified topics. After that list, regarding our request for information about the FBI communication that Mr. Zuckerberg had publicly identified, Dan wrote: "Additionally, the FBI contact you requested is the Foreign Influence Task Force (FITF). FITF's Section Chief is Laura Dehmlow."

This was useful information, but our subpoena and subsequent requests—and Meta's August 26 agreement—had not called for just the identity of FTIF's section chief; they required Meta to disclose the identity of the federal official(s) who had been *involved in the communications* with Meta that led to the suppression of the Hunter Biden laptop story. Accordingly, on September 3, I responded to Dan with the following email, seeking clarification whether Ms. Dehmlow had *actually engaged in the communication* that Mr. Zuckerberg had identified, or whether there were other FBI official(s) who had done so. I wrote:

> One point of clarification: You have identified the FBI point of contact for communications relating to the Hunter Biden laptop story as the Foreign Influence Task Force, and identified its Section Chief as Laura Dehmlow. Our subpoena sought the identification of the names of individual federal officials who communicate(d) with Meta about Misinformation and Content Modulation, and our agreement calls for the identification of the names of the officials who engage(d) in such communications. ***Is Ms. Dehmlow, in fact, the official who has and/or is engaged in such communications with Meta? Or are there other names of FBI officials within (or without) that task force who have engaged in such communications?*** Your clarification is appreciated.

Thus, on September 3, I specifically asked whether Ms. Dehmlow had actually issued the FBI communication to Meta that Mr. Zuckerberg identified as leading to Meta's censorship of the Hunter Biden laptop story, or whether there was another FBI official who was actually involved in the communication. In response to *this* query, in the subsequent phone call on September 15, Reg orally identified Elvis Chan as the FBI official who was involved in the communication. In short, Meta identified Mr. Chan in response to my specific inquiry as to the identity of the federal official(s) who engaged in the communication with Meta that (according to Mr. Zuckerberg) led to Facebook's censorship of the Hunter Biden laptop story.

Meta did not immediately respond on my September 3 request for clarification. Instead, on September 7, Dan sent an email responding to my September 3 email which stated, *in toto*: "John: Apologies for the delay -- just wanted to let you know that we are checking with the client

-4-

on this and will get back to you. Thanks." Having heard nothing further on this point, on September 12, I sent a second request for clarification on this very issue, following up on my September 3 request for clarification and Dan's September 7 response, which stated: "Dan- Just following up on this request for clarification. Thanks, John." Thus, during the September 15 phone call, the issue under discussion with respect to Mr. Chan was our request for clarification as to whether Laura Dehmlow had made the specific communication discussed by Mr. Zuckerberg in Joe Rogan's podcast, or whether another FBI official had done so. It was in this context that Meta identified Mr. Chan.

Reg's letter of yesterday states that, on September 15 call, he "identified Mr. Chan as Meta's primary individual point of contact on the FBI's Foreign Influence Task Force." More specifically, Reg identified Mr. Chan as Meta's primary individual point of contact on the FBI's FITF *who was involved in the communications with Meta that Mr. Zuckerberg discussed in the Joe Rogan podcast* on August 26, 2022—which was the whole point of the September 15 disclosure. Reg's letter, quite correctly, does not directly deny that he made this disclosure. That was the precise information that I had requested in writing in my email of September 3 and my second request for clarification on September 12, that was the exact context of the disclosure, and that was the clear import of Reg's disclosure, as all parties understood at the time. Indeed, my follow-up email of the same day, September 15, which Reg's letter quotes in part, clearly communicated the mutual understanding that Meta had disclosed Elvis Chan not just as the "primary individual point of contact" for the FBI, but as *involved in that key communication*:

> Finally, as referenced in today's call, we continue to request communications between Meta and FBI's Foreign Influence Task Force, especially as it relates to the Hun[t]er Biden laptop story. Reg represented today that he did not believe there are written communications involving the FBI field officer in California **whom you mentioned was involved**, but we request any written communications that may exist, including but not limited to Laura Dehmlow, whose name Dan disclosed on September 2.

Thus, my email, sent shortly after the September 15 call on the same day, explicitly stated that Reg had identified Elvis Chan as "*involved*" in the communication that led to the censorship of the Hunter Biden laptop story. *Id.* And, of course, that was the very information that I had requested in writing in my September 3 and September 12 emails that led to this disclosure, the very information we had been seeking for weeks in our conferences with Meta, the very information requested by our third-party subpoena, and the very information that Judge Doughty authorized us to seek in the July 12 discovery order, Doc. 34—*i.e.*, the identity of federal official(s) involved in communications with social-media platforms about disinformation and censorship.

To the extent that Meta may now suggest that it identified Elvis Chan *only* as a primary point of contact with FBI's FITF, and *not* as directly involved in the FBI's communication that led Meta to suppress the Hunter Biden laptop story, that is incorrect. In fact, if Meta had merely identified a "point of contact" instead of identifying the federal official involved in that critical communication on September 15, we would have immediately objected and demanded further clarification—just as I had done in my emails to Dan of September 3 and September 12.

-5-

Reg's letter states that, during the September 15 call, he "informed [us] that we had not identified any emails between Mr. Chan and Meta about Hunter Biden's laptop." That is correct, as I stated in my September 15 email the same day: Reg "represented … that he did not believe there are *written* communications involving the FBI field officer in California whom you mentioned was involved." But communications can be *oral* as well as written, so Reg's statement that Meta had not identified any *written* communications of Mr. Chan is fully consistent with his disclosure that Mr. Chan was involved in the communication. Indeed, we have filed with the Court 123 pages of documents demonstrating that Mr. Chan routinely sets up and participates in *oral* meetings with social-media platform(s) to discuss disinformation issues. Doc. 86-6, at 1-123. Oral meetings appear to be Mr. Chan's *modus operandi* for discussing disinformation issues with social-media platforms, *see id.*, so it would be surprising if he had made this highly sensitive communication any other way.

Reg's letter also states that "Mr. Chan at no point in time advised Meta 'to suppress the Hunter Biden laptop story.'" In Joe Rogan's podcast, Mr. Zuckerberg stated that he could not recall whether the FBI had specifically flagged the Hunter Biden laptop story, or whether the FBI had provided a more general advisory about Russian disinformation that the Hunter Biden laptop story later matched, stating: "I don't remember if it was that specifically, but [the story] basically fit the pattern" that the FBI had identified. *See supra*. We are seeking to depose Mr. Chan to find out the exact nature of that communication. Either way, of course, the communication from federal law-enforcement officials that led Facebook to censor core (and truthful) political speech on a matter of enormous public import shortly before a Presidential election raises grave First Amendment concerns.

Consistent with the course of communication described above, our representations to the Court about this issue have been precise, truthful, and accurate. In the Second Amended Complaint, we correctly alleged that Meta's counsel had identified "Elvis Chan" as "involved in the communications between the FBI and Meta *that led to Facebook's suppression of the Hunter Biden laptop stor*y." Doc. 84, ¶ 384 (emphasis added). This representation is true regardless of whether Mr. Chan specifically flagged the Hunter Biden laptop story to Meta, or whether he issued a more general advisory communication about Russian disinformation that led Facebook to suppress the story; and it accurately represents Reg's communications, as described in detail above. Likewise, in the Joint Statement on Depositions, we stated the following, quoting Paragraph 384 of the Second Amended Complaint: "in response to Plaintiffs' third-party subpoena, Meta's counsel identified FBI SSA Elvis Chan as the one who conveyed 'the communications between the FBI and Meta that led to Facebook's suppression of the Hunter Biden laptop story.'" Doc. 86, at 19 (quoting Doc. 84, ¶ 384). Again, this is exactly what Reg disclosed to us on September 15. Whether Mr. Chan specifically flagged the Hunter Biden laptop story in this communication is a question for Mr. Chan to answer under oath—either way, Mr. Chan was directly involved in conveying "the communications between the FBI and Meta that led to Facebook's suppression of the Hunter Biden laptop story." *Id.*

Reg's letter suggests that the Court may be under the misapprehension that Reg disclosed that Mr. Chan specifically flagged the Hunter Biden laptop story to Meta and demanded that Meta

-6-

suppress it, instead of disclosing that Mr. Chan was the FBI point of contact involved in conveying the communication from the FBI that led to the censorship of the Hunter Biden laptop story. We disagree. The Court's order fairly and accurately summarizes our representations to the Court, which accurately characterized Meta's disclosure. The Court's order states: "Plaintiffs maintain that in response to their third-party subpoena, Meta's counsel identified Chan as the FBI agent who communicated with Facebook to suppress that story." Doc. 90, at 18. That is a perfectly fair and accurate summary of what we represented to the Court and what Meta conveyed to us. Moreover, as noted above, Mr. Chan's communication raises grave First Amendment concerns regardless of whether Mr. Chan specifically mentioned the forthcoming Hunter Biden laptop story to Meta when he urged them to censor so-called "Russian disinformation."

For all these reasons, the concerns raised in your letter are without merit. They are also immaterial to the Court's decision to authorize the deposition of Mr. Chan. Even if Reg had merely identified Elvis Chan as the "primary point of contact" between Meta and FBI's FITF—after specifically identifying FITF and its chief Laura Dehmlow on September 2 as *the source of the communications that led to the suppression of the Hunter Biden laptop story*—that would provide overwhelming justification to depose Mr. Chan, in addition to the many other factors cited in our Joint Statement and relied on by the Court. *See* Doc. 90, at 19 (finding that "there are reasons to believe [Chan] has interfered in other ways, too").

For all these reasons, we respectfully disagree with any suggestion in your letter that there has been any misstatement to the Court or holding of the Court that warrants correction.

Sincerely,

D. John Sauer
Solicitor General
Missouri Attorney General's Office

cc: Adam Kirschner, U.S. Dep't of Justice
Kyla Snow, U.S. Dep't of Justice
Kuntal Cholera, U.S. Dep't of Justice
Indraneel Sur, U.S. Dep't of Justice