**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, *et al.*,

     Plaintiffs,

v.

JOSEPH R. BIDEN, JR.,
in his official capacity as President of the United States, *et al.*,

     Defendants.

No. 3:22-cv-01213-TAD-KDM

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING AUDIOVISUAL RECORDINGS OF DEPOSITIONS AND PERSONALLY IDENTIFIABLE INFORMATION IN DEPOSITION TRANSCRIPTS AND REQUEST FOR EXPEDITED CONSIDERATION**</u>

## **TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................3

ARGUMENT .......................................................................................................................4

I.     The Court Should Enter A Limited Protective Order Sealing Audiovisual Recordings Of The Depositions Of Federal Deponents In This Action. ...........................4

       A.     The Current And Former Federal Employees To Be Deposed In This Case Have Significant Privacy Interests At Stake. .......................................................5

       B.     Public Interests Do Not Warrant Release Of Video Recordings of Depositions. .....................................................................................................11

       C.     Relevant Precedent Counsels In Favor Of Sealing Audiovisual Recordings Of Depositions Here.............................................................................................13

II.    The PII Of Federal Employees And Other Non-Parties Disclosed During Depositions Should Also Be Protected From Public Dissemination..............................15

CONCLUSION...................................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Austin Sanctuary Network v. U.S. Imm. & Customs Enf't.*,
  No. 2-cv-1686, 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022) .................................................7

*Caine v. City of Chicago*,
  No. 11 C 8996, 2012 WL 13059125 (N.D. Ill. June 28, 2012) .................................................5

*Citizens for Responsibility and Ethics in Washington v. Cheney*,
  580 F. Supp. 2d 168 (D.D.C. 2008) .........................................................................................4

*Creer v. City of Vallejo*,
  No. 214CV1428JAMDBPS, 2016 WL 5897748 (E.D. Cal. Oct. 11, 2016) ...........................16

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
  98 F.3d 1406 (D.C. Cir. 1996) ................................................................................................11

*Felling v. Knight,*
  No. IP 01-00571-C-T/G, 2001 WL 1782360 (S.D. Ind. Dec. 21, 2001)...............................5, 7

*Harris v. Amoco Prod. Co.*,
  768 F.2d 669 (5th Cir. 1985) ....................................................................................................4

*In re LeBlanc*,
  559 F. App'x 389 (5th Cir. 2014) ..............................................................................................4

*Jones v. Clinton*,
  12 F. Supp. 2d 931 (E.D. Ark. 1998) .......................................................................................5

*Joy v. North*,
  692 F.2d 880 (2d Cir. 1982) .....................................................................................................4

*Judicial Watch, Inc. v. U.S. Dep't of State*,
  No. 14-cv-1242, 2019 WL 11890739 (D.D.C. Apr. 25, 2019)...................................11, 12, 13

*Lesar v. U.S. Dep't of Just.*,
  636 F.2d 472 (D.C. Cir. 1980) ...........................................................................................15,16

*Lopez v. CSX Transp., Inc.*,
  No. 14-cv-257, 2015 WL 3756343 (W.D. Pa. June 16, 2015) .................................................4

*Low v. Trump Univ., LLC*,
  No. 3:13-cv-02519-GPC-WVG, 2016 WL 4098195 (S.D. Cal. Aug. 2, 2016) ......................14

*Paisley Park Enters., Inc. v. Uptown*,
  Prods., 54 F. Supp. 2d 347 (S.D.N.Y. 1999) ...........................................................4, 5, 10, 11

ii

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ................................................................................................*passim*

*Stern v. Cosby*,
   529 F. Supp. 2d 417 (S.D.N.Y. 2007) .......................................................................4

*Tavoulareas v. Washington Post Co.*,
   111 F.R.D. 653 (D.D.C. 1986).....................................................................................4

*United States v. McDougal*,
   103 F.3d 651 (8th Cir. 1996) ......................................................................................5

*Woodard v. U.S. Marshal Serv.*,
   No. CV 18-1249 (RC), 2022 WL 296171 (D.D.C. Feb. 1, 2022) ...........................16

*Zhao v. City of New York*,
   No. 07 CIV. 3636 LAK/MHD, 2007 WL 4205856 (S.D.N.Y. Nov. 21, 2007) ......16

## Rules

Fed. R. Civ. P. 26(c)(1) ......................................................................................................3

Fed. R. Civ. P. 26(c)(1)(F) ................................................................................................4

W.D. La. Local Rule 26.5...................................................................................................11

## Other Authorities

Ben Fox, Cybersecurity Official Fired by Trump Sues Over Threats, AP (Dec. 8, 2020),
   https://apnews.com/article/christopher-krebs-lawsui-joseph-digenova-
   5f38ee4dd03d26f146f306a6d6a64d57 ................................................................... 9

CISA, Leadership: Jen Easterly,
   https://www.cisa.gov/jen-easterly .......................................................................8, 9

Danielle Wallace, *Judge Orders Biden Admit to Turn Over Fauci,
Jean-Pierre 'Misinformation' Emails Sent to Social Media Giants*,
Fox News (Sept. 7, 2022),
   https://www.foxnews.com/politics/judge-orders-biden-admin-turn-over-fauci-jean-pierre-
   misinformation-emails-sent-social-media-giants.................................................... 6

DOJ, *Man Who Made Threats Against Dr. Anthony Fauci and Other Federal
Officials Sentenced to Over Three Years in Federal Prison*,
   https://www.justice.gov/usao-md/pr/man-who-made-threats-against-dr-anthony-
   fauci-and-other-federal-officials-sentenced-over (last visited Nov. 5, 2022) ........... 8

Jennifer Kay, *Republican State AGs Sue Biden, Claiming Social Media Censorship*, Bloomberg News (May 5, 2022), https://news.bloomberglaw.com/tech-and-telecom-law/republican-state-ags-sue-biden-claiming-social-media-censorship ............................................................................... 6

Jim Hoft, *Dr. Fauci Will Be Deposed on November 23rd in Missouri-Louisiana Social Media Collusion Case with Gateway Pundit's Jim Hoft as Plaintiff*, Gateway Pundit (Nov. 2, 2022), https://www.thegatewaypundit.com/2022/11/breaking-dr-fauci-deposed-november-23rd-missouri-louisiana-social-media-collusion-case-gateway-pundits-jim-hoft-plaintiff/ ............................................................................................................................... 6

Mark Moore, *Judge Orders White House to Turn Over Emails Fauci, Jean-Pierre Sent Big Tech*, N.Y. Post (Sept. 7, 2022), https://nypost.com/2022/09/07/judge-orders-wh-to-turn-over-emails-fauci-jean-pierre-sent-big-tech/ .............................................................................................. 6

Mark Moore, *Judge Orders Fauci, Psaki Deposed in Social Media Censorship Lawsuit*, N.Y. Post (Oct. 24, 2022), https://nypost.com/2022/10/24/fauci-psaki-can-be-deposed-in-censorship-lawsuit/ ................ 6

Morgan Chalfant, *Psaki Says She Received Threats as White House Press Secretary*, The Hill (May 12, 2022), https://thehill.com/homenews/administration/3486018-psaki-says-she-received-threats-as-white-house-press-secretary/ ................................................................................. 9

NIH, About NIAID, https://www.niaid.nih.gov/about/director ................................................................. 8

NLC, New Report: *Harassment, Threats, and Violence Directed at Local Elected Officials Rising at an Alarming Rate*, National League of Cities, https://www.nlc.org/post/2021/11/10/new-report-harassment-threats-and-violence-directed-at-local-elected-officials-rising-at-an-alarming-rate/ ................................16

NPR, "Fresh Air" With Terry Gross, *How an expert on online disinformation and harassment became the target of both* (May 26, 2022), https://www.npr.org/2022/05/26/1101439528/how-an-expert-on-online-disinformation-and-harassment-became-the-target-of-both .................................................. 7

Rob Stein, *Fauci Reveals He Has Received Death Threats and His Daughters Have Been Harassed*, NPR (Aug. 5, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/08/05/899415906/fauci-reveals-he-has-received-death-threats-and-his-daughters-have-been-harassed............... 8

Tim Starks, *Cyber Officials May Have to Testify About Alleged Social*

*Media Collusion*, Wash. Post (Oct. 25, 2022),
  https://www.washingtonpost.com/politics/2022/10/25/cyber-officials-may-have-testify-about-
  alleged-social-media-collusion ............................................................................................. 6

## Social Media Posts

Ann Lisey @lisey_ann, Twitter (Oct. 26, 2022 5:31 PM),
  https://twitter.com/lisey_ann/status/1585383647481188352?s=42&t=nunI
  Oa1FJaxJ5P6KwVDQhA.nunIOa1FJaxJ5P6KwVDQhA ......................................................10

Eric Schmitt @AGEricSchmitt, Twitter (Sept. 1, 2022, 10:30 AM)
  https://twitter.com/AGEricSchmitt/status/1565346263310118913?ref_src=twsrc%5Etfw ...... 6

Eric Schmitt @Eric_Schmitt, Twitter (Oct. 21, 2022 5:06 PM),
  https://twitter.com/eric_schmitt/status/1583565446057381888 .............................................. 6

## INTRODUCTION

Defendants respectfully move, pursuant to Federal Rule of Civil Procedure 26(c)(1), for a two-part protective order relating to the depositions of federal employees (both current and former) taken in this case.

First, Defendants seek a protective order sealing, according to the terms of the proposed order submitted as Exhibit A with this motion, any audio and/or video recordings (hereinafter referred to as "audiovisual recordings") of the depositions of current and former federal employees in this case. This case has garnered substantial attention from the media and the public. Some of the individuals whom Plaintiffs intend to depose are career civil servants who did not sign up to become public figures when they joined the federal ranks. Other deponents who have served in more public-facing roles have already experienced, and continue to experience, significant threats and harassment directed at them and their families because of their public positions; those harms are very likely to increase if recordings of their depositions may be publicly circulated and then misleadingly edited by third parties. Under these circumstances, all of these individuals have legitimate privacy interests in limiting public dissemination of audiovisual recordings of their depositions.

The significant privacy interests of these individuals (and their families) outweigh the public's interest in pretrial discovery materials created "only for purposes of trying [this] suit." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). To the extent the public has any interest in the content of the depositions, the public availability of the transcripts—to which Defendants raise no objection (provided that the transcripts be scrubbed of personally identifiable information of certain non-parties)—will satisfy that interest, as other courts have held in analogous situations. Accordingly, the Court should enter a protective order sealing all audiovisual recordings of federal employee depositions in this case.

1

Second, Defendants also request that the Court seal and establish procedures for redactions from the deposition transcripts of personally identifiable information ("PII") of current and former federal employees, as well as other non-parties, including the names of those who are not already associated with this case by their status as a defendant or deponent (again, according to the terms of the proposed order submitted herewith). Such employees have an inherent privacy interest in preserving the confidentiality of their PII in litigation documents that may be publicly disseminated. Additionally, non-parties who are not federal employees but who may be identified in depositions—including employees of social media companies or state and local election officials—have similar privacy interests in preserving the confidentiality of their PII. Thus, the proposed protective order would allow Defendants the opportunity to expeditiously review deposition transcripts and apply appropriate redactions to the PII of federal employees and other non-parties, subject to objection by Plaintiffs, prior to public dissemination of the deposition transcripts.

Finally, because the first of the depositions authorized under the Court's Memorandum and Order Regarding Witness Depositions, ECF No. 90 ("Deposition Order"), is scheduled to take place on Thursday, November 10, 2022, Defendants respectfully request expedited consideration of this motion. Counsel for Defendants conferred with Plaintiffs' counsel regarding this motion and was advised that Plaintiffs object to the relief requested herein. Additionally, Plaintiffs' counsel has so far rejected a proposal that the parties temporarily refrain from disclosing audiovisual recordings of depositions and PII of third parties in deposition transcripts during the pendency of the Government's motion for a protective order. Thus, to avoid any potential irreparable harm caused by disclosure of audiovisual recordings of depositions or of PII disclosed in depositions, prior to a Court ruling on this motion, Defendants respectfully request expedited relief.

## BACKGROUND

On October 21, 2022, the Court authorized expedited depositions of eight current and former federal officials: Dr. Anthony Fauci, Director of the National Institute of Allergy and Infectious Diseases and White House Chief Medical Advisor; Robert Flaherty, Deputy Assistant to the President and Director of White House Digital Strategy; Jennifer Psaki, former Assistant to the President and White House Press Secretary; Elvis Chan, Assistant Special Agent in Charge of the San Francisco Division of the Federal Bureau of Investigation; Jen Easterly, Director of the Cybersecurity and Infrastructure Security Agency (CISA); Vice Admiral Vivek H. Murthy, Surgeon General of the United States; Carol Crawford, Chief of the Digital Media Branch of the Centers for Disease Control; and Daniel Kimmage, Principal Deputy Coordinator of the Global Engagement Center, U.S. Department of State.[1] *See* Deposition Order at 27.[2]

The parties have agreed to a schedule for conducting the authorized depositions, with the first deposition (of Mr. Kimmage) scheduled for November 10, 2022. Plaintiffs served a Rule 45 deposition subpoena on Ms. Psaki, which provides that the deposition will be recorded by video and transcribed.[3] They have also served Rule 30 notices of depositions of party-deponents, which likewise indicate that the depositions will be recorded by video and transcribed.

---

[1] Plaintiffs elected to seek the deposition of Director Flaherty instead of the authorized alternative, Andrew Slavitt, the former White House Senior COVID-19 Advisory, and they elected to seek the deposition of Director Easterly instead of the authorized alternative, CISA official Lauren Protentis.

[2] Defendants have moved the Court to reconsider its authorization of a deposition of Mr. Chan. *See* ECF No. 96. They have also sought mandamus relief from the Court's order as to Director Flaherty, Director Easterly, and Surgeon General Murthy. *See In re Vivek H. Murthy, et al.*, No. 22-30697 (5th Cir.).

[3] Ms. Psaki's deposition subpoena is currently the subject of motions to quash filed by Ms. Psaki and the Government. *See* ECF Nos. 1, 7, *Psaki v. Missouri, et al.*, 1:22-mc-28 (E.D.Va.).

## ARGUMENT

I.     **The Court Should Enter A Limited Protective Order Sealing Audiovisual Recordings Of The Depositions Of Federal Deponents In This Action.**

Upon a party's showing of "good cause," courts have broad discretion to issue protective orders during discovery to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In addition to the interests enumerated in Rule 26(c)(1), the Supreme Court has understood the Rule's "broad purpose and language" to encompass "privacy" interests and "other rights or interests that may be implicated" by liberal discovery. *Seattle Times Co.*, 467 U.S. at 35 n.21. District courts "have broad discretion in determining whether to grant a motion for a protective order." *In re LeBlanc*, 559 F. App'x 389, 393 (5th Cir. 2014) (citing *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)).

With respect to depositions in particular, Rule 26(c)(1) permits a trial court to "requir[e] that a deposition be sealed" in its entirety "and opened only on court order." Fed. R. Civ. P. 26(c)(1)(F); *see also Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007); *Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653, 661 (D.D.C. 1986). The Rule grants trial courts broad latitude to seal depositions in part because, notwithstanding the public's interest in certain portions of some judicial proceedings, "pretrial depositions and interrogatories are not public components of a civil trial." *Seattle Times Co.*, 467 U.S. at 33; *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public."). Accordingly, protective orders are a frequently used tool for sealing access to audiovisual recordings of depositions when a deponents' privacy interests outweigh the public's interest in accessing information "made available only for purposes of trying [a] suit." *Seattle Times Co.*, 467 U.S. at 32; *see also, e.g.*, *Citizens for Resp. & Ethics in Wash. v. Cheney*, 580 F. Supp. 2d 168, 182-84 (D.D.C. 2008) (granting protective order providing that certain depositions "shall not be videotaped" at all, where movant did not object to public release

4

of deposition transcripts); *Lopez v. CSX Transp., Inc.*, No. 14-cv-257, 2015 WL 3756343, at *6 (W.D. Pa. June 16, 2015) (ordering deposition recordings *and* transcripts sealed, accepting argument "that, if information from the depositions is disclosed to the public, then employees of the Defendant would be subject to annoyance, embarrassment, and oppression"); *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) ("Given the existence of a legitimate litigation purpose for taping the deposition, the Court will permit the videotaping. But the videotape may be used solely for purposes of this litigation.").

In entering such protective orders, courts have emphasized the unique susceptibility of audiovisual recordings to inappropriate use. "Videotapes are subject to a higher degree of potential abuse than transcripts." *Felling v. Knight*, IP-01-00571-C-T/G, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001). The former "can be cut and spliced and used as 'sound-bites'" on the Internet and in the news. *Id.*; *see also Jones v. Clinton*, 12 F. Supp. 2d 931, 935 (E.D. Ark. 1998) (unsealing "the full transcript of the plaintiff's and President's respective depositions, but not, however, the videotapes of *any* depositions taken in connection with this lawsuit"). By contrast, "[b]ecause transcripts are less susceptible to wide public distribution, they pose a reduced risk of generating unfair prejudice against the deponents." *Caine v. City of Chicago*, No. 11 C 8996, 2012 WL 13059125, at *2 (N.D. Ill. June 28, 2012). For that reason, "[t]he practice of sealing videotapes of depositions has been approved in several high-profile cases where the written depositions have been released to the public." *Felling*, 2001 WL 1782360, at *3 (citing *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996)).

## A. The Current And Former Federal Employees To Be Deposed In This Case Have Significant Privacy Interests At Stake.

Given both the significant publicity that this case has attracted and the substantial privacy interests at stake, a protective order sealing any audiovisual recordings in this case of current and

former federal employees' depositions is necessary to prevent unwarranted attention, harassment, and invasions of privacy.

As an initial matter, it bears note that the high-profile nature of this case makes the risk of privacy invasion especially acute. Plaintiffs hypothesize that, over the last several years, Government officials have coerced social-media platforms into suppressing speech concerning matters of public controversy, including the integrity of the 2020 presidential election; policies surrounding the COVID-19 pandemic; and "the Hunter Biden laptop story." *See, e.g.*, 2d Am. Compl. ¶¶ 133-60, ECF No. 84. Consequently, this case has garnered significant media attention.[4] Likewise, the expedited discovery authorized in this case has been a subject of substantial public discourse.[5] Many of the documents that Defendants have produced during expedited discovery have in turn been circulated on social media,[6] and news outlets have reported on the same.[7] The Court's authorization of the upcoming depositions also has been publicized on Twitter,[8] and numerous news outlets have also published stories about the depositions.[9] In light of the publicity

---

[4] *See, e.g.*, Jennifer Kay, *Republican State AGs Sue Biden, Claiming Social Media Censorship*, Bloomberg News (May 5, 2022), https://news.bloomberglaw.com/tech-and-telecom-law/ republican-state-ags-sue-biden-claiming-social-media-censorship.

[5] *See, e.g.*, Danielle Wallace, *Judge Orders Biden Admit to Turn Over Fauci, Jean-Pierre 'Misinformation' Emails Sent to Social Media Giants*, Fox News (Sept. 7, 2022), https://www.foxnews.com/politics/judge-orders-biden-admin-turn-over-fauci-jean-pierre-misinformation-emails-sent-social-media-giants.

[6] @AGEricSchmitt, Twitter (Sept. 1, 2022, 10:30 AM) https://twitter.com/AGEricSchmitt/status/1565346263310118913?ref_src=twsrc%5Etfw.

[7] *See, e.g.*, Mark Moore, *Judge Orders White House to Turn Over Emails Fauci, Jean-Pierre Sent Big Tech*, N.Y. Post (Sept. 7, 2022), https://nypost.com/2022/09/07/judge-orders-wh-to-turn-over-emails-fauci-jean-pierre-sent-big-tech/.

[8] @Eric_Schmitt, Twitter (Oct. 21, 2022 5:06 PM), https://twitter.com/eric_schmitt/status/1583565446057381888.

[9] *See* Mark Moore, *Judge Orders Fauci, Psaki Deposed in Social Media Censorship Lawsuit*, N.Y. Post (Oct. 24, 2022), https://nypost.com/2022/10/24/fauci-psaki-can-be-deposed-in-censorship-lawsuit/; *see also* Tim Starks, *Cyber Officials May Have to Testify About Alleged Social Media Collusion*, Wash. Post (Oct. 25, 2022), https://www.washingtonpost.com/politics/2022/ 10/25/cyber-officials-may-have-testify-about-alleged-social-media-collusion/; *see also* Jim Hoft,

surrounding this case—and the attention paid to the upcoming depositions in particular—it is inevitable that if audiovisual recordings of federal deponents' testimony are made public, they will be widely disseminated by various media platforms. And those recordings will almost certainly be "cut and spliced and used as 'sound-bites'" *Felling*, 2001 WL 1782360, at *3, with testimony taken out of context and used for purposes unrelated to the litigation of Plaintiffs' claims. That publicity, in turn, will expose the deponents to undue harassment and invasions of privacy.

The federal employees to be deposed in this case have significant privacy interests in preventing the dissemination of audiovisual recordings of their testimony. To be sure, some of them hold (or held) more prominent positions than others. But no individual—not even the White House Press Secretary—sacrifices all of her privacy rights upon entering public service. *Cf. Austin Sanctuary Network v. U.S. Imm. & Customs Enf't*, No. 2-cv-1686, 2022 WL 4356732, at *29 (S.D.N.Y. Sept. 19, 2022) ("[E]ven public servants retain some privacy interest in their names upon entering public service."). What's more, the fact that Plaintiffs allege here that the witnesses exceeded the bounds of their authority as federal employees (which Defendants deny) does not mean that these individuals lack privacy interests.

In prior filings, Defendants have highlighted some of the invasions to personal privacy and threats of harassment that officials named in this case have encountered in relation to their public-facing roles and the alleged conduct at issue here. As previously explained, Defendant Nina Jankowicz suffered a barrage of online threats due to her former service as the head of the now-

---

*Dr. Fauci Will Be Deposed on November 23rd in Missouri-Louisiana Social Media Collusion Case with Gateway Pundit's Jim Hoft as Plaintiff*, Gateway Pundit (Nov. 2, 2022), https://www.thegatewaypundit.com/2022/11/breaking-dr-fauci-deposed-november-23rd-missouri-louisiana-social-media-collusion-case-gateway-pundits-jim-hoft-plaintiff/

terminated Disinformation Governance Board.[10] *See* Joint Statement Regarding Witness Deps., ECF No. 86 at 71.

Dr. Fauci's experience also serves as a cautionary tale of the kinds of concrete harms that federal deponents will suffer if their testimony is subjected to intense public scrutiny and misrepresentation through dissemination of their recorded depositions. For thirty-eight years, Dr. Fauci has served as Director of the National Institute of Allergy and Infectious Diseases at the National Institutes of Health.[11] In 2020, however—only after Dr. Fauci became the public face of the Nation's response to the COVID-19 pandemic—reports emerged that Dr. Fauci and his family had begun receiving death threats and other forms of harassment related to his work.[12] Just recently on August 4, 2022, U.S. District Judge Paula Xinis sentenced a West Virginia resident to thirty-seven months in federal prison for sending emails to Dr. Fauci threatening to harm him, his family, and other officials and their families.[13] Those messages threatened, among other things, that Dr. Fauci and his family would be "dragged into the street, beaten to death, and set on fire."[14] No public servant should have to face such threats of violence or other forms of harassment directed

---

[10] *See, e.g.*, NPR, "Fresh Air" With Terry Gross, *How an expert on online disinformation and harassment became the target of both* (May 26, 2022), https://www.npr.org/2022/05/26/ 1101439528/how-an-expert-on-online-disinformation-and-harassment-became-the-target-of-both.

[11] NIH, About NIAID, https://www.niaid.nih.gov/about/director (last visited Nov. 5, 2022).

[12] *See* Rob Stein, *Fauci Reveals He Has Received Death Threats and His Daughters Have Been Harassed*, NPR (Aug. 5, 2020), https://www.npr.org/sections/coronavirus-live-updates/ 2020/08/05/899415906/fauci-reveals-he-has-received-death-threats-and-his-daughters-have-been-harassed.

[13] U.S. Department of Justice, *Man Who Made Threats Against Dr. Anthony Fauci and Other Federal Officials Sentenced to Over Three Years in Federal Prison* (Aug. 4, 2022), https://www.justice.gov/usao-md/pr/man-who-made-threats-against-dr-anthony-fauci-and-other-federal-officials-sentenced-over.

[14] *Id.*

8

at him and his loved ones simply because he was called upon to work on matters that have engendered public controversy.

Dr. Fauci's experience is not unique—other federal officials have suffered similar invasions of their privacy due to their public positions, especially when those positions have required their engagement with matters of public controversy relating to issues highlighted in this case. The former Director of CISA, for example—whose role was to "lead[] CISA's efforts to efforts to understand, manage, and reduce risk to the cyber and physical infrastructure Americans rely on every day," including election infrastructure, ECF No. 57 at 57 (quoting CISA, Leadership: Jen Easterly, https://www.cisa.gov/jen-easterly (last accessed Nov. 2, 2022))—became bombarded with death threats after an attorney appeared on television and called for him to be "taken out at dawn and shot" for his official defense of the integrity of the 2020 presidential election.[15] The threats that followed were so severe that the former Director was forced temporarily to move out of his home and hire private security.[16] Deponent Jen Easterly now occupies the Director position at CISA. It requires no stretch of the imagination to conclude that she will be at risk of similar threats and harassment if audiovisual recordings of her deposition testimony may be circulated, edited, and used as soundbites, perhaps misleadingly, to advance purposes unrelated to the litigation of this case. Former White House Press Secretary Psaki has also reportedly faced similarly serious invasions of privacy and threats directed against her because of her public position.[17] The threats and harassment that officials such as Dr. Fauci and Ms. Psaki have

---

[15] Ben Fox, *Cybersecurity Official Fired by Trump Sues Over Threats*, AP (Dec. 8, 2020), https://apnews.com/article/christopher-krebs-lawsui-joseph-digenova-5f38ee4dd03d26f146f30 6a6d6a64d57.

[16] *Id.*

[17] As has been reported, Ms. Psaki has experienced invasions of privacy in the form of threatening letters, the exposition of private information relating to her young children, and individuals

reportedly already endured are virtually certain to be repeated, if not exceeded, should video recordings of their depositions be widely disseminated to the public.

These same concerns extend to the career civil servants who occupy less public-facing roles and whose depositions Plaintiffs intend now or may later seek to audiovisually record. These employees may not have experienced the same degree of public attention—let alone the same invasions of privacy—that Dr. Fauci, Ms. Psaki, and others have experienced. But that in itself is a compelling reason to shield these civil servants from the unwarranted intrusions and harassment that their more prominent colleagues have been unable to avoid. Civil servants do not volunteer to become public figures when they join the federal ranks; they do not expect to be dragged into the spotlight as a result of litigation. And, more specifically, they do not reasonably expect that they will be subjected to video-recorded, publicly disseminated cross-examination about the way that they carried out their job duties. The career civil servants who will be deposed, accordingly, have a heightened interest in maintaining their privacy and avoiding the harms suffered by their more high-profile counterparts. Indeed, at least one such federal employee has already been singled out on Twitter based on Plaintiffs' allegations against him.[18]

Without the requested protective order, and in light of the near certainty that any publicly released videos of federal deponents' testimony will be widely shared and edited by third parties, the risk of more harmful invasions of privacy to those deponents who have already experienced it is significant. And the risks to those career civil servants who are not public figures are even greater. To protect those individuals' privacy, this Court should enter the attached proposed

---

threatening her home. Morgan Chalfant, *Psaki Says She Received Threats as White House Press Secretary*, The Hill (May 12, 2022), https://thehill.com/homenews/administration/3486018-psaki-says-she-received-threats-as-white-house-press-secretary/.

[18] *See* @lisey_ann, Twitter (Oct. 26, 2022 5:31 PM), https://twitter.com/lisey_ann/status/1585383647481188352?s=42&t=nunIOa1FJaxJ5P6K wVDQhA.nunIOa1FJaxJ5P6KwVDQhA (tweet about Daniel Kimmage).

protective order preventing the public dissemination of audiovisual recordings of their deposition testimony.

**B.  Public Interests Do Not Warrant Release Of Video Recordings of Depositions.**

At the same time, no public interest in the audiovisual recordings of federal employees' depositions in this case outweighs the privacy interests of those individuals. The Federal Rules of Civil Procedure permit videotaped depositions "as a matter of routine" for the benefit of *juries*, and not the public. *See Paisley Park Enters., Inc.*, 54 F. Supp. 2d at 349 ("Rule 30(b)(2) was amended to permit videotaped depositions as a matter of routine in recognition of the fact that videotapes are a means of presenting deposition testimony to juries that is superior to readings from cold, printed records."). To be sure, there generally is a "strong presumption in favor of public access to *judicial proceedings*." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (emphasis added) (citation omitted). But the requested protective order will not threaten the public's access to these proceedings because audiovisual recordings of depositions are not part of any proceeding before the Court unless and until they are introduced as evidence at trial or otherwise submitted in connection with some pre-trial proceeding or motion. *See Seattle Times Co.*, 467 U.S. at 33 ("[P]retrial depositions and interrogatories are not public components of a civil trial."); *see also* W.D. La. Local Rule 26.5 ("In accordance with Federal Rule of Civil Procedure 5(d), disclosure of discovery materials shall not be filed with this court unless authorized.").

In addition, the deposition transcripts (except, as discussed below, for redacted PII), will remain available for dissemination. Defendants are not objecting to the public release of any written deposition transcripts in this case, other than protected PII. And for present purposes, even accepting that there is some public interest in the *content* of the testimony offered at the depositions in question, there is no incremental benefit to be had from releasing audiovisual recordings of those depositions that outweighs the deponents' privacy interests. *See Judicial Watch, Inc. v. U.S. Dep't*

*of State*, No. 14-cv-1242, 2019 WL 11890739, at *1 (D.D.C. Apr. 25, 2019) ("Although the public has an undoubtedly high interest in what these deponents say, the interest does not stretch beyond the testimony's substantive content.").

Moreover, Plaintiffs will not be prejudiced by the sealing of the audiovisual recordings. Under the terms of Defendants' proposed protective order, Plaintiffs may file under seal any recorded depositions on which they wish to rely in support of any pre-trial motion. The recordings may also be used during examination of subsequent deponents, or for any other litigation purpose, as specified in the attached proposed protective order. Thus, sealing the audiovisual recordings of the federal deponents' testimony will not impede Plaintiffs' ability to litigate their claims before the Court.

For these reasons, there are also no First Amendment concerns with Defendants' request. The Supreme Court has squarely held that even "[a] litigant" has "no First Amendment right of access to information made available only for purposes of trying his suit," as opposed to access to judicial proceedings. *Seattle Times Co.*, 467 U.S. at 32. And so "where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Id.* at 37. Those principles apply easily to the requested protective order here, which would apply only to audiovisual recordings of depositions taken during pretrial discovery in this case, and which would not inhibit the dissemination of the deposition transcripts subject to any PII redactions. Because "pretrial depositions . . . are not public components of a civil trial," and because "[d]iscovery rarely takes place in public" in any event, the requested order would "not [be] a restriction on a traditionally public source of information," *id.* at 33 & n.19, and therefore warrants no First Amendment scrutiny.

**C. Relevant Precedent Counsels In Favor Of Sealing Audiovisual Recordings Of Depositions Here.**

This is not the first motion of its kind in a high-profile case. Other courts have recently weighed considerations similar to those presented here, and those courts determined that individual public employees' privacy rights justified sealing any audiovisual recordings of their depositions.

For example, in a recent case related to former Secretary of State Hillary Clinton's use of a private server for official email, U.S. District Judge Royce Lamberth issued an order granting the same relief requested in the instant motion. *Judicial Watch, Inc.*, 2019 WL 11890739, at *1. As here, the Government's and the non-party deponents' motions pertained to the depositions of multiple current and former civil servants with varying degrees of notoriety, including Jake Sullivan, Secretary Clinton's foreign-policy adviser on her 2016 presidential campaign. *Id.* In granting the motions, Judge Lamberth recognized that a protective order sealing an audiovisual recording of a deposition is justified "[i]f an individual demonstrates that publicly disclosing discovery information would cause injury or embarrassment." *Id.* As Judge Lamberth explained, the public interest in the deposition "does not stretch beyond the testimony's substantive content . . . [s]o the public can satisfy its interest by reading a written transcript of the depositions." *Id.* These are the precise circumstances presented here: because the deponents face risks of harassment and invasions of privacy, and because the public's interest extends only to the substantive content of the deponents' testimony, a protective order sealing any audiovisual records of the depositions is warranted.

In another case related to Secretary Clinton's emails, U.S. District Judge Emmett Sullivan granted a similar motion to seal any audiovisual recordings of depositions. There, a non-party deponent sought to preclude the plaintiff "from publicizing all or any portion[s] of any audiovisual recording made" of the non-party's deposition. Motion by Non-Party Deponent, *Judicial Watch v.*

*U.S. Dep't of State*, 13-cv-1363-EGS (D.D.C. May 25, 2016) (ECF No. 79). Judge Sullivan both

granted the motion and *sua sponte* ordered the same relief as to all of the other depositions that

would be conducted in that case, including (but not limited to) depositions of career State

Department officials:

> The public has a right to know details related to the creation, purpose and
> use of the clintonemail.com system. Thus, the transcripts of all depositions
> taken in this case will be publicly available. It is therefore unnecessary to
> also make the audiovisual recording of [the movant's] deposition public. To
> avoid unnecessary briefing by the parties and non-parties going forward, the
> Court *sua sponte* orders that all audiovisual copies of depositions taken in
> this case shall be sealed until further order of the Court.

Minute Order, *Judicial Watch*, 13-cv-1363-EGS (D.D.C. May 26, 2016). Several years later, at a

motions hearing held on November 14, 2018, Judge Sullivan denied motions by both Judicial

Watch and third-party intervenors who sought to lift the seal on audiovisual copies of the

depositions. *See* Nov. 14, 2018 Hearing Transcript at 67, *Judicial Watch*, 13-cv-1363-EGS (ECF

No. 177). Judge Sullivan noted, among other things, the high degree of public scrutiny to which

that case had been subjected. *Id.* Judge Sullivan found it "inevitable" that "segments of the

depositions would be edited and taken out of context solely for the purpose of harassing or

embarrassing the deponents," and that the nature of the harm to the deponents derives from the

nature of the video medium itself. *Id.* at 70 (citing *Low v. Trump Univ., LLC*, No. 3:13-cv-02519-

GPC-WVG, 2016 WL 4098195, at *5 (S.D. Cal. Aug. 2, 2016)). Judge Sullivan found, therefore,

that "particularized harm will result if the Court grants the two motions and unseals the

recordings." *Id.*

The Court should reach the same result here.

## II.     The PII Of Federal Employees And Other Non-Parties Disclosed During Depositions Should Also Be Protected From Public Dissemination.

A protective order is also necessary to prevent unwarranted public dissemination of the PII of current and former federal employees, as well as that of other non-parties, that may be disclosed during depositions. Specifically, Defendants seek protection for any PII, such as names, contact information, or other personal information that is disclosed during depositions, or in any exhibits thereto, with the exception of the names of federal employees who are already publicly known to be associated with this case by their status as a named defendant or a deponent. To prevent disclosure of this information, the proposed protective order provides that deposition transcripts and exhibits shall remain sealed for a brief period to allow Defendants to designate and redact protected PII therein, and to allow the parties to resolve any disputes over such redactions (if necessary with the Court's aid), prior to the transcripts' release.

A Court order adopting procedures for sealing and redacting these categories of PII is necessary to protect the substantial privacy interests that would be put at risk through public disclosure of PII.

*First,* current and former federal employees who become associated with this case solely because they are referred to in a deposition or an exhibit thereto have strong interests in protecting their identities if deposition transcripts and exhibits are made public. As explained above, media coverage of this case has stirred public interest, and that interest will only increase with depositions about which several news outlets have already reported. Federal employees referred to in depositions thus face the very real prospects of being thrust into the public spotlight for the first time and becoming targets of the same kinds of threats and harassment discussed above. Indeed, some employees have already been the subject of vitriol on Twitter because of their association with this case through Plaintiffs' allegations. *See, e.g.*, *supra* note 18 (tweet about Mr. Kimmage).

15

To the extent any current or former federal employee who is not already publicly known to be associated with this case—through their status as a named defendant or as a deponent—is identified during a deposition, that employee has a strong privacy interest in preventing the public dissemination of their PII through deposition transcripts.

Indeed, law-enforcement personnel—whose identities their employing agencies have long sought to protect from public disclosure—may be included among the public servants whose PII could be revealed in deposition testimony (particularly during testimony from Federal Bureau of Investigation ("FBI") witnesses). A long line of cases supports protecting the confidentiality of law-enforcement personnel's identifying information to protect them from harassment, annoyance, or threats. *See Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980) ("As several courts have recognized, [FBI] agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives."); *see also Woodard v. U.S. Marshal Serv.*, No. CV 18-1249 (RC), 2022 WL 296171, at *4 (D.D.C. Feb. 1, 2022) (quoting *Lesar* and agreeing that redaction of law enforcement names, among other things, is generally upheld); *Creer v. City of Vallejo*, No. 214CV1428JAMDBPS, 2016 WL 5897748, at *1 (E.D. Cal. Oct. 11, 2016) ("Defendants shall redact the names of any Vallejo Police Department Officers and replace those names with number identifiers."); *Zhao v. City of New York*, No. 07 CIV. 3636 LAK/MHD, 2007 WL 4205856, at *2 (S.D.N.Y. Nov. 21, 2007) ("Defendants may redact the names and other identifying information of any non-party Police Department employees, but not those of the complainants.").

Moreover, here, personnel from FBI or the Department of Homeland Security who may have been involved in efforts to protect the Nation's election infrastructure during recent election

cycles may have a particularly strong privacy interest in their identities, as public reporting reveals increased threats to election officials over the past several years.[19]

Of course, the identities (i.e., the names) of those current or former federal employees who are already publicly associated with this case as parties or deponents are already matters of public record. Nevertheless, these individuals, too, have a strong interest in preventing additional public disclosures of their PII, such as their contact information or other personal information. As discussed above, various current and former federal employees have reportedly already been subjected to threats or other harassment because of their work on current issues implicated in this case, including the Government's pandemic response and the integrity of federal elections. *Supra* § I.A. Some of those reported threats have been targeted not only at the employees themselves but also at their family members. Thus, even those employees who are already associated with the case require protection against further disclosures of their PII that could leave them even more vulnerable to these kinds of threats and harassment.[20]

Moreover, sealing and redacting the PII of federal employees from deposition transcripts and exhibits would also be consistent with the parties' past practice in this case. The parties had previously agreed to protect the names of career civil servants (and the contact information of all individuals) by redacting such information from any public versions of interrogatory responses and document productions. Per that agreement, the redactions do not cover the names of those whose association with the litigation may be publicly known already, such as specific individuals who are identified in the operative Complaint. Thus, counsel for Plaintiffs has applied redactions

---

[19] NLC, *New Report: Harassment, Threats, and Violence Directed at Local Elected Officials Rising at an Alarming Rate*, National League of Cities, https://www.nlc.org/post/2021/11/10/new-report-harassment-threats-and-violence-directed-at-local-elected-officials-rising-at-an-alarming-rate/ (last visited Nov. 2, 2022).

[20] The proposed protective order provides for the use of such information, as necessary and appropriate, for litigation purposes only.

to names of low-level federal employees (who were not already known to be associated with the case) appearing in discovery documents filed with their first Joint Statement on written discovery on August 31, 2022, *see* attachments to Joint Statement, ECF No. 71, and to discovery documents filed with their Second Amended Complaint filed on October 6, 2022, *see* exhibits P & Q to Sec. Am. Compl, ECF Nos. 84-1, 84-2. More recently, however, Defendants have notified Plaintiffs' counsel that Plaintiffs did not appear to apply redactions to the same PII appearing in discovery documents appended to the parties' Joint Statement on depositions filed on October 14, 2022, *see* attachments to Joint Statement on Depositions, ECF No. 86, and have asked Plaintiffs to file revised versions with those redactions applied. To ensure this information is properly protected if it is disclosed in a deposition, this Court should enter a protective order preventing public disclosure of names and other PII of current and former federal employees who are not deponents or named defendants.

     *Second*, non-federal employees who are neither defendants nor deponents in this case, such as election officials and employees of social media companies whose names may be mentioned during the upcoming depositions, likewise have strong privacy interests at stake. Thus, Defendants request that the protective order allow Defendants the opportunity to apply redactions to those employees' names as well. As noted above, threats to election officials have increased in recent years, *see supra* note 19, and this case has garnered widespread media attention, including the publication of written discovery materials that Defendants have disclosed to Plaintiffs. As also noted above, the parties have already engaged in redacting PII of non-parties who are not current or former federal employees from interrogatory responses and documents produced in written

discovery.[21] Consistent with that practice, and to continue satisfying the parties' previous, shared goal of protecting non-parties' privacy interests, Defendants' proposed protective order contemplates the redaction of PII of third-parties who are not federal employees according to the same procedures that would apply to federal-employee PII.

The procedures set forth in the attached proposed order would protect the PII of federal employees and other non-parties while also satisfying any public interest in the contents of the depositions themselves. That is because the procedures ensure that, after a limited time period required to designate protected PII and resolve any potential disputes over such designations, only the PII appropriately designated for protection would be withheld from public disclosure.

Accordingly, the Court should enter the proposed protective order to prevent the public disclosure of PII of current and former federal employees, as well as that of other non-parties, contained in deposition transcripts and exhibits in this case.

## CONCLUSION

The significant likelihood that audiovisual recordings of federal employee depositions taken in this case will be manipulated or abused, combined with the important privacy interests at stake, counsels against publicly releasing any such recordings. In addition, to protect the privacy of current and former federal employees as well as other non-parties, the PII of such individuals disclosed during depositions in this case should be sealed, and procedures should be established for its redaction. For these reasons, the Court should enter Defendants' proposed protective order filed herewith.

---

[21] In fact, even while names of federal employees were not redacted from recent filings, names of employees of social media companies and other organizations identified in the same documents were redacted. *See* attachments to Joint Statement on Depositions, ECF No. 86.

Dated: November 9, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel, Federal Programs
Branch

*/s/ Amanda K. Chuzi*
ADAM D. KIRSCHNER (IL Bar No. 6286601)
Senior Trial Counsel
KYLA SNOW (OH Bar No. 96662)
INDRANEEL SUR (D.C. Bar No. 978017)
AMANDA K. CHUZI (D.C. Bar No. 1738545)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Tel.: (202) 514-4686
Fax: (202) 616-8470
Email: amanda.k.chuzi@usdoj.gov

*Attorneys for Defendants*

20