**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

|  |  |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 3:22-cv-01213-TAD-KDM |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, | |
| *Defendants*. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION**
**FOR RECONSIDERATION REGARDING DEPOSITION  OF**
**FBI ASSISTANT SPECIAL AGENT IN CHARGE ELVIS CHAN**

In the Deposition Order, this Court grounded authorization of the expedited deposition of the FBI's Assistant Special Agent in Charge (ASAC) Elvis Chan almost exclusively on Plaintiffs' description of statements by third-party Meta to Plaintiffs about Mr. Chan's communications with Meta. But the recent letter from Meta's counsel (ECF 96) clarifies that Plaintiffs' description of the relationship between those communications and the "Hunter Biden laptop story" was mistaken. In opposing reconsideration (ECF 106 ("Opp.")), Plaintiffs recite at length the events predating Meta's letter, which are unavailing, because the key question here is what is known now, not what Plaintiffs understood Meta to be saying before that letter. Plaintiffs additionally offer other new justifications for the deposition, which are founded on incomplete and incorrect accounts of two interviews of Mr. Chan. They also improperly attempt to lower the bar they must clear by treating the deposition as part of ordinary discovery rather than extraordinary, expedited discovery. Plaintiffs' contentions are mistaken, and show no connection between Mr. Chan's activities and

1

Plaintiffs' preliminary-injunction motion that would justify deposing him within the highly compressed expedited discovery period.

## ARGUMENT

*First*, the key point warranting reconsideration as to Mr. Chan's deposition is the statement in the October 25, 2022 letter by Meta's counsel that "Mr. Chan at no point in time advised Meta 'to suppress the Hunter Biden laptop story.' Nor did any of his colleagues." ECF 96 at 2. That statement is new evidence not previously available to the Court. Its clear import is that, now, the record does not support Plaintiffs' principal argument for the expedited deposition of Mr. Chan— their assertion that "in response to Plaintiffs' third-party subpoena, Meta's counsel identified [Mr. Chan] as the one who conveyed 'the communications between the FBI and Meta that led to Facebook's suppression of the Hunter Biden laptop story.'" ECF 86 at 19 (quoting 2d Am. Compl. ("SAC") ¶ 384).  In insisting that the expedited deposition remains justified, Plaintiffs recount at length (Opp. 2-9, 10; *cf.* ECF 96-1) their exchanges with Meta predating their section of the October 14, 2022 joint statement on depositions (ECF 86). That chronicle is beside the point: Plaintiffs' asserted basis for the deposition, on which the Court relied, was predicated on Plaintiffs' interpretation of Meta's statements, and Meta's letter makes it plain that—regardless of how that interpretation took shape—the predicate no longer exists.

Plaintiffs also seek to raise a new justification for the deposition, by leveling new allegations of misconduct in connection with the Hunter Biden laptop controversy. Opp. 11-14. To that end, they point to (1) an opinion piece from the *New York Post* (ECF 106-3), and (2) a December 17, 2020, declaration from a Twitter executive in a matter before the Federal Election Commission (ECF 106-4). Neither source supplies a factual basis for Plaintiffs' allegations concerning Mr. Chan and Meta. The opinion piece adds nothing new about Mr. Chan; instead, as to him, it at most characterizes and opines on documents produced in this litigation. The Twitter

declaration refers to meetings that "the FBI" and other agencies had with Twitter and unidentified "industry peers" regarding election security, during which the Twitter executive "learned . . . that there were rumors that a hack-and-leak operation would involve Hunter Biden." ECF 106-4 at ¶¶ 10-11. After the *New York Post* published articles in October 2020 concerning "a hard drive that allegedly belonged to Hunter Biden," the declaration continues, Twitter's "Trust & Safety leadership determined" those articles "violated" Twitter policies, and "instructed the Site Integrity Team to execute enforcement of those policies" (one concerning "Distribution of Hacked Materials," and the other concerning "Private Information"). ECF 106-4 at ¶¶ 12, 16. Nothing in the declaration contradicts Meta's letter, including the letter's statement that Mr. Chan "at no point in time advised Meta 'to suppress the Hunter Biden laptop story' . . . [n]or did any of his colleagues."

In short, neither Plaintiffs' recounting of events predating Meta's letter, nor their newly proffered sources, provide a sufficient link between Mr. Chan and Meta's treatment of the "Hunter Biden laptop story" to support continued authorization of the deposition.

*Second*, Plaintiffs strain to bolster their argument for an expedited deposition of Mr. Chan by focusing (Opp. 18-20) on two online interviews in which he discussed his interactions with social-media platforms. But neither of those interviews warrants a deposition. Neither supplies a factual basis for Plaintiffs' allegation (even "[o]n information and belief") that Mr. Chan's interactions with the platforms constitute "censorship and suppression of speech at the FBI's behest" (SAC ¶ 389).

In selectively quoting from the 2022 *Banyan Security* interview, Plaintiffs omit key portions showing that Mr. Chan's interactions with platforms and other technology companies occur in the context of cybersecurity investigations having no relation to Plaintiffs' allegations of

"censorship." For example, Plaintiffs quote (Opp. 18) Mr. Chan's statement that the FBI's San Francisco Field Office was "very involved in helping to protect" the United States "elections in 2020," but omit his immediately following remark that "there was *no malign foreign influence*" in those elections (emphasis added). Plaintiffs also omit Mr. Chan's remarks explaining that the phrase "shields up," as used by the Director of the Cybersecurity and Infrastructure Security Agency, referred to vigilance about "cyber reconnaissance activities" by foreign governments. So, contrary to Plaintiffs' contention (Opp. 18), the *Banyan Security* interview does not warrant a deposition, as it does not support Plaintiffs' assertions that Mr. Chan is "working with social-media companies on censorship and suppression of private speech."

In selectively quoting from the October 2020 *GovInfoSecurity* interview, Plaintiffs similarly omit (Opp. 19-20) key portions of Mr. Chan's statements. There, Mr. Chan described three risks the FBI "worr[ied] about" concerning the 2020 election—"hack and dump" operations, attacks "against the election system itself," and "foreign influence . . . campaigns" (~ 0:58-1:18). It was in that context that Mr. Chan described "sharing information" with private companies, including "social media companies," which he clarified meant "sharing threat information so they could clean" from "their platforms . . . all these *inauthentic* accounts" (emphasis added) (~ 2:45-2:56). Mr. Chan also described his "focus" as being on "foreign actors trying to sow doubt in our elections" and described election security as his "biggest focus" in the past four years (that is, 2016-20) (~ 6:18). Mr. Chan also advised that if a viewer of the interview were to "see something related to the election" on a particular "social media platform," then the viewer should report the concern to that platform—"all of them have portals where you can report that sort of information. They're being very aggressive in trying to take down any disinformation or misinformation" (~ 8:09-8:33). Plaintiffs thus again overlook that Mr. Chan's comments focus on cybersecurity

threats from "foreign actors" (such as China, Russia, and Iran), including, in particular as to social media platforms, the problem of "inauthentic accounts." But Plaintiffs do not argue that the First Amendment precludes law enforcement or other government efforts to curtail foreign threats and "inauthentic accounts" (nor could Plaintiffs prevail on that argument). Such efforts cannot be a basis for assuming that Mr. Chan participated in attempts to "pressure[e] social-media platforms to remove so-called 'misinformation or disinformation'" (Opp. 20).

Plaintiffs are also wrong to argue (Opp. 16-18) that meeting information obtained from LinkedIn implies that Mr. Chan's meetings involved discussions of "censorship." Among other important responsibilities, for example, the FBI has primary investigative authority for all computer network intrusions relating to threats to national security, including Computer Fraud and Abuse Act "cases involving espionage, foreign counterintelligence, [and] information protected against unauthorized disclosure for reasons of national defense or foreign relations." 18 U.S.C. § 1030(d)(2). Investigating violations of that statute involving *private* computer networks requires the FBI to exchange information with the *private* owners of those networks (both to uncover past intrusions and to prevent future ones). Plaintiffs lack any legitimate grounds for asserting that any such exchange of information should be presumed to reflect Government "censorship."

***Third****,* Plaintiffs also err in contending (Opp. 20-23) that the standard they must meet to justify taking the deposition of Mr. Chan now is simply the "ordinary discovery standard of relevance" (Opp. 20). Defendants have not argued that Mr. Chan is a senior Executive Branch official who may not be deposed in civil litigation absent "'exceptional circumstances.'" *See In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995). At any rate, the question here is whether the deposition is justified as part of *expedited* preliminary-injunction discovery, which is allowed "only . . . in limited circumstances," *Wilson v. Samson Contour Energy E & P, LLC*, No. 14-cv-109, 2014 WL

2949457, at *3 (W.D. La. June 30, 2014), and which all must be "narrowly tailored to the necessary information" the movant seeks, *GHX Indus. LLC v. Servco Hose & Supply LLC*, No. 19-cv-1552, 2020 WL 1492920, at *2 (W.D. La. Feb. 5, 2020); *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 61-62 (M.D. La. 2016). Defendants have shown that a deposition of Mr. Chan would not be "narrowly tailored" to Plaintiffs' preliminary injunction motion. Plaintiffs' generalization (Opp. 23) that "testifying is central to the role of law-enforcement officers" has little bearing on whether a deposition of Mr. Chan can be expected to elicit information that is necessary to resolution of that motion. To the contrary: In light of the letter from Meta, there is no foundation for Plaintiffs' contention that deposing Mr. Chan will reveal such information.

*     *     *     *     *

For the reasons stated above and in the opening memorandum, this Court should withdraw authorization of the expedited discovery-stage deposition of Mr. Chan.

Dated:  November 10, 2022                         Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

JAMES J. GILLIGAN
*Special Litigation Counsel, Federal Programs Branch*

*/s/ Indraneel Sur*
ADAM D. KIRSCHNER (IL Bar No. 6286601)
*Senior Trial Counsel*
KYLA SNOW (OH Bar No. 96662)
INDRANEEL SUR (D.C. Bar No. 978017)
AMANDA K. CHUZI (D.C. Bar No. 1738545)
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Tel: (202) 616-8488
indraneel.sur@usdoj.gov

*Attorneys for Defendants*