**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, *et al.*,

     Plaintiffs,

v.

JOSEPH R. BIDEN, JR.,
in his official capacity as President of the United States, *et al.*,

     Defendants.

No. 3:22-cv-01213-TAD-KDM

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE
ORDER REGARDING AUDIOVISUAL RECORDINGS OF DEPOSITIONS AND
<u>PERSONALLY IDENTIFIABLE INFORMATION IN DEPOSITION TRANSCRIPTS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND........................................................ 3

ARGUMENT ...................................................................................................................... 5

    I.   The Public Interest Overwhelmingly Favors Disclosure, and Defendants Fail to Satisfy the Arduous Standard for Sealing Record Evidence. ............................................................... 6

    II.  Defendants Failed to Submit Evidence in Support of Their Motion as Required by Fifth Circuit Precedent. ....................................................................................................... 12

    III.  Defendants Failed to Articulate with Specificity the Interests That They Claim Justify Sealing Record Evidence............................................................................................. 15

    IV.  Defendants' Demands Are Incompatible with the Procedures for Sealing Record Evidence. .............................................................................................................................. 17

    V.  Defendants' Categorical Demands Violate the Rule Against Sealing Publicly Available Information. ................................................................................................................ 18

    VI.  Defendants' Demands Are Unreasonably One-Sided and Incongruent to Any Needs in This Case. ........................................................................................................................... 20

    VII. Defendants' Long Delay Before Filing Their Motion Undercuts Their Claim of Urgency in the Relief Requested. ................................................................................................... 22

CONCLUSION................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
    564 U.S. 721 (2011)................................................................. 9, 10, 11, 22

*Binh Hoa Le v. Exeter Fin. Corp.*,
    990 F.3d 410 (5th Cir. 2021) ............................................................. 7, 17

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*,
    920 F.3d 209 (5th Cir. 2019) ............................................................... 17

*Bradley ex rel. AJW v. Ackal*,
    954 F.3d 216 (5th Cir. 2020) ........................................................... 7, 8, 10

*Cipollone v. Liggett Grp.*,
    785 F.2d 1108 (3d Cir. 1986).............................................................. 15

*Citizens United v. Fed. Elec. Comm'n*,
    558 U.S. 310 (2010)......................................................................... 9

*City of Houston v. Hill*,
    482 U.S. 451 (1987)........................................................................ 14

*Edwards v. Standard Fire Ins. Co.*,
    No. CIV.A. 07-6714, 2008 WL 1832366 (E.D. La. Apr. 23, 2008)........................ 22

*Felling*,
    2001 WL 1782360 ......................................................................... 16

*Gentile v. State Bar of Nev.*,
    501 U.S. 1030 (1991)...................................................................... 14

*Glenmede Tr. Co. v. Thompson*,
    56 F.3d 476 (3d Cir. 1995)................................................................ 15

*In re Terra Int'l, Inc.*,
    134 F.3d 302 (5th Cir. 1998) ........................................................ 12, 13, 15

*In re Violation of Rule 28(D)*,
    635 F.3d 1352 (Fed. Cir. 2011)........................................................... 18

*Judicial Watch, Inc. v. U.S. Department of State*,
    No. 14-cv-1242, 2019 WL 11890739 (D.D.C. Apr. 25, 2019)............................... 10

*June Med. Servs., L.L.C. v. Phillips*,
    22 F.4th 512 (5th Cir. 2022) ........................................................ passim

*Lesar v. U.S. Department of Justic*,
    636 F.2d 472 (D.C. Cir. 1980)......................................................... 11, 12

*Lewis v. City of New Orleans*,
    415 U.S. 130 (1974)....................................................................... 14

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*,
  40 F.3d 698 (5th Cir. 1994) ...................................................................................... 22

*Phillips ex rel. Est. of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) .................................................................................. 15

*Proctor & Gamble Co. v. Bankers Tr. Co.*,
  78 F.3d 219 (6th Cir. 1996) ...................................................................................... 17

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ............................................................................................... 9, 10

*Shane Grp. v. Blue Cross Blue Shield of Mich.*,
  825 F.3d 299 (6th Cir. 2016) .................................................................................. 8, 10

*United States v. Garrett*,
  571 F.2d 1323 (5th Cir. 1978) .............................................................................. 15, 16

*Whitney v. California*,
  274 U.S. 357 (1927) ................................................................................................... 9

*Woodward v. U.S. Marshal Service.*,
  *See* No. CV 18-1249 (RC), 2022 WL 296171 (D.D.C. Feb. 1, 2022) .................................... 12

**Rules**

Federal Rule of Civil Procedure 26(c) ............................................................... 12, 15, 16

**INTRODUCTION**

Defendants' belated motion for a protective order as to depositions scheduled to commence the next day, Doc. 110, is unsupported by evidence and ignores the enormous public interest in disclosure and access in this case—an interest deeply rooted in fundamental First Amendment values.  In the aftermath of this Court's Order on Depositions, Doc. 90, Defendants found plenty of time and resources to file a blitz of motions and briefs attacking those depositions in three different courts.  But they delayed another three weeks—until Plaintiffs were both responding to their scorched-earth motion blitz and preparing for the critical depositions—to file their motion for protective order in the evening of the day before depositions were to commence, and then peremptorily demanded an emergency stay and an emergency briefing schedule on a motion that they took many weeks to prepare.

Defendants' motion is meritless.  Defendants' weeks-long delay before filing the motion undermines their claim of urgency.  Defendants filed no *evidence* of any kind in support of their motion, relying instead on baseless speculation of possible future "harassment" of public officials involved in egregious First Amendment violations.  Though this case has been widely publicized for months and drawn enormous public interest, Defendants do not identify a single valid instance of threats or "harassment" that has arisen from the public disclosures and discussion of this case.  Instead, after months of public disclosures, they rely solely on alleged threats to public officials that arose from *other* matters, and a single Tweet criticizing one of the 67 named Defendants in this case in terms obviously protected by the First Amendment.  Defendants ignore the Fifth Circuit's standard governing protective orders and violate several binding legal norms.

Worst of all, Defendants' motion gives no weight—or even any meaningful consideration—to the overwhelming interests in public access and public disclosure to the

1

evidence and filings in this case, which alleges egregious, widespread violations of one of the most fundamental civil rights, the freedom of speech.  Defendants contend that the nationwide and valid public interest in this case constitutes a reason for *concealment*, not disclosure, of evidence—which flips the governing legal standards (and the First Amendment itself) on their heads.   Even worse, Defendants' motion replicates the very errors that led the Government to commit the egregious First Amendment violations at issue here in the first place.  Defendants, at the outset of their motion, argue that the Court should seal deposition recordings because they "may be publicly circulated and *misleadingly edited* by third parties."  Doc. 110-1, at 1 (emphasis added).  In other words, Defendants urge that the evidence in this case must be sealed lest it might be *truthfully* represented, but in a context that casts the Government in a negative light.  This concern about "misleadingly edited" evidence echoes CISA's definition of "malinformation" as *truthful* information that contradicts the Government's preferred contexts and narratives: "CISA defines 'malinformation' as information that is 'based on fact, but used out of context to mislead, harm, or manipulate.'"   CISA, *We're In This Together. Disinformation Stops With You*, *at* https://www.cisa.gov/sites/default/files/publications/SLTTCOVIDToolkit_FINAL_508.pdf (quoted in Second Amended Complaint, Doc. 84, ¶ 296).  Thinking like this is what led CISA to become the "nerve center" of federally-induced social-media censorship.  Doc. 90, at 19.

Thus, the dominant purpose of the Government's motion is not to protect its witnesses from supposed "harassment," which has not yet occurred a single time after seven months of public discussion of the case, but to **protect the Government from criticism** based on truthful information that casts the Government in a negative light.  Not only is that purpose unsupported by case law, it profoundly contradicts the First Amendment's fundamental values.

## FACTUAL AND PROCEDURAL BACKGROUND

This case was first filed on May 5, 2022.  Doc. 1.  Since the day it was filed, Defendants concede, it has attracted significant public interest and public reporting—a trend which has only increased since the Court ordered discovery in the case.

On July 12, 2022, this Court entered its Order authorizing expedited preliminary-injunction-related discovery.  Doc. 34.  This Order explicitly contemplated that depositions might be ordered in this case.  *Id.* at 14, ¶¶ (5)-(8).  On October 7, 2022, pursuant to this Order, Plaintiffs notified Defendants that they were seeking depositions of several witnesses.  The parties met and conferred multiple times over the next seven days.  On October 14, 2022, the parties filed their Joint Statement on Depositions, in which Plaintiffs sought the depositions of ten witnesses.  Doc. 86.  On October 21, 2022, the Court ordered the depositions of eight witnesses.  Doc. 90.  Plaintiffs immediately notified Defendants of their elections of Mr. Flaherty and Ms. Easterly, pursuant to the Court's order, and immediately requested available dates for all witnesses within the 30-day window authorized by the Court.

A campaign of scorched-earth legal resistance ensued, as Defendants fought to block or restrict the depositions in three different courts.  In rapid succession, Defendants filed: (1) a motion to stay the depositions of Mr. Flaherty, Dr. Murthy, and Ms. Easterly in this Court; (2) a petition for writ of mandamus to block those depositions in the Fifth Circuit; (3) a motion to stay those depositions in the Fifth Circuit; and (4) a motion to reconsider the deposition of Elvis Chan in this Court; and they joined with private counsel to file (5, 6) twin motions to quash the deposition of Jennifer Psaki in the Eastern District of Virginia.  Meanwhile, they stalled and delayed providing available dates for *any* witnesses for almost a week after the Court's Order, despite Plaintiffs' repeated requests for dates.  And when they did provide such dates, the very first date that *any* of

the Government's eight witnesses happened to be available was November 10—*i.e.*, 20 days into the Court's originally ordered 30-day window for depositions, and (in a coincidence that should surprise no one) two days *after* the November 8 midterm election.

On Friday, November 4, Defendants first notified Plaintiffs' counsel by phone call that Defendants were going to request a protective order to prevent the disclosure of video depositions—though Defendants did not provide details of their proposal or a proposed protective order at that time.  *See* Nov. 9, 2022 Email of J. Sauer to Defendants (attached as Ex. A), at 1.  On November 7, 2022—the same day Plaintiffs' responses were due to *both* the motion to reconsider the deposition of Elvis Chan and to the application for writ of mandamus in the Fifth Circuit— Plaintiffs emailed Defendants, for the very first time, a proposed protective order for the now-imminent depositions.  *Id.* at 4.  Defendants sent this proposed protective order 17 weeks after the Court's July 12 order authorizing Plaintiffs to seek depositions, a full month after Plaintiffs requested specific depositions, 17 days after the Court ordered specific depositions, and three days before the first deposition was scheduled to occur.  *See id.*

On November 9, 2022, Plaintiffs' counsel responded to the proposed protective order, rejecting the proposal and providing a detailed explanation of how Defendants' request violated applicable legal standards and gave no weight to compelling First Amendment interests in public disclosure.  *Id.* at 1-2.  Plaintiffs also refuted Defendants' erroneous suggestion that Plaintiffs had previously agreed to redaction of any public-employee names.  *See id.* at 2-3.   At 6:36 pm on the evening of November 9—just hours before the first deposition (Mr. Kimmage) was scheduled to commence the next morning—Defendants filed their motion for protective order.  Doc. 110.  After delaying for weeks before seeking a protective order, Defendants then demanded an emergency

temporary protective order and emergency briefing schedule on their last-minute demand for a protective order that they had taken at least three weeks to prepare.

**ARGUMENT**

Defendants have moved for a protective order sealing deposition recordings and partially sealing deposition transcripts. Specifically, Defendants seek to prevent public circulation of deposition recordings and redact deposition transcripts to hide the identities of the federal officials and third parties involved in discussions about censorship of content on social-media platforms— even though a central purpose of the depositions is to uncover the identities of these persons. *See* Doc. 34, at 13 (authorizing discovery to enable Plaintiffs to uncover "the identity of federal officials who have been and are communicating with social-media platforms about disinformation, misinformation, malinformation, and/or any censorship or suppression of speech on social media, including the nature and content of those communications"); Def. Ex. A (Defendants' proposed protective order).

For seven independently sufficient reasons, the Court should deny Defendants' motion.

*First*, Defendants give no weight to the overwhelming interests in public access and public disclosure in this case, which advance First Amendment values and decisively outweigh Defendants' speculative and unsupported predications of harm.  *Second*, Defendants failed to comply with the Fifth Circuit's requirement to submit *evidence* supporting their allegations of harm.  *Third*, Defendants did not even *allege* the harms that they fear with the specificity required to justify a protective order, and even taking Defendants' allegations of harm at face value, they do not satisfy the Fifth Circuit's "arduous" standard for shielding records from public view. *Fourth*, Defendants' demand for a blanket protective order providing in advance for the sealing of all "personal identifying information" of third parties and nonparty public officials violates the

Fifth Circuit's procedures for sealing documents filed with the Court. *Fifth*, Defendants' categorical demands violate the *per se* rule against sealing publicly available information. *Sixth*, Defendants' demands are unreasonably one-sided and incongruent to any need that could purportedly justify sealing record evidence. *Seventh*, Defendants' long delay before seeking a protective order appears tactical and undercuts their claim of urgency in the relief they seek.

## I.     The Public Interest Overwhelmingly Favors Disclosure, and Defendants Fail to Satisfy the Arduous Standard for Sealing Record Evidence.

First and foremost, this case raises questions of enormous and legitimate public concern, which has already triggered widespread public discussion in news articles, on social media, and in congressional interest.[1]  The widespread and legitimate public interest in this case favors *public*

---

[1] Defendants admit that the case has generate public interest, but they understate the magnitude and scope of that interest, which continues to generate dozens of media articles and significant interest in Congress.  *See, e.g.,* Adam Shaw, *Hawley Demands Answers on DHS 'Disinformation' Efforts, Accuses Mayorkas of Hiding Docs from Congress*, FOX NEWS (Nov. 14, 2022), https://www.foxnews.com/politics/hawley-demands-answers-dhs-disinformation-efforts-accuses-mayorkas-hiding-docs-congress; Josh Gerstein, *Psaki, DOJ Fight Social-Media Speech Suit Subpoena*, POLITICO (Nov. 4, 2022), https://www.politico.com/news/2022/11/04/psaki-doj-fight-social-media-speech-suit-subpoena-00065284; Miranda Devine, *How the Government Hid the Truth Behind Hunter Biden's Laptop*, NEW YORK POST (Nov. 2, 2022), https://nypost.com/2022/11/02/how-the-government-hid-the-truth-behind-hunter-bidens-laptop/; Jessica Chasmar & Adam Shaw, *Republicans Slam DHS' Ongoing Crackdown on 'Disinformation' after Disbanding Controversial Governance Board*, FOX NEWS (Nov. 2, 2022), https://www.foxnews.com/politics/republicans-slam-dhs-ongoing-crackdown-disinformation-disbanding-controversial-governance-board; Ryan Lovelace, *Biden Official Disputes Role in Social Media Censorship Amid Court-Ordered Deposition*, WASHINGTON TIMES (Nov. 1, 2022), https://www.washingtontimes.com/news/2022/nov/1/biden-official-disputes-role-social-media-censorsh/; Ken Klippenstein & Lee Fang, *Truth Cops: Leaked Documents Outline DHS's Plans to Police Disinformation*, THE INTERCEPT (Oct. 31, 2022), https://theintercept.com/2022/10/31/social-media-disinformation-dhs/; Tim Starks & Aaron Schaffer, *Cyber Officials May Have to Testify about Alleged Social Media Collusion*, WASHINGTON POST (Oct. 25, 2022), https://www.washingtonpost.com/politics/2022/10/25/cyber-officials-may-have-testify-about-alleged-social-media-collusion/; Miranda Devine, *Lawsuit Reveals Vast Censorship Scheme by Big Tech and the Federal Government*, NEW YORK POST (Oct. 23, 2022), https://nypost.com/2022/10/23/lawsuit-reveals-vast-censorship-scheme-by-big-tech-and-the-federal-government/; *Fauci Forced to Testify on Social Media Censorship*, RT NEWS (Oct. 22, 2022), https://www.rt.com/news/565124-fauci-testify-covid-censorship/; Danielle

*disclosure* of the evidence, not concealment, and Defendants' arguments to the contrary flip the governing legal standards on their heads.

"Courts should be ungenerous with their discretion to seal judicial records." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (per curiam) (alterations omitted). "[W]hen materials enter the court record, the standard for shielding [them] from public view" is "arduous." *Id.* "The court "must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure," applying at all times a "presumption in favor of the public's access to judicial records." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (quotation marks omitted); *see also June Med.*, 22 F.4th at 519–20 (noting that "sealing information placed in the judicial record" is "heavily disfavor[ed]"). The public interest in access is especially strong when "at least one of the parties to the action is a public entity or official," and it is even stronger when the case involves "matters of legitimate public concern." *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020). "[A] party's privacy interests are diminished when that party is a public person." *Id.*

The sweeping protective order that Defendants demand requires deposition recordings and portions of transcripts to be sealed in whole or part if and when filed with the Court. Thus, the proposed order triggers the Fifth Circuit's "arduous" standard for sealing judicial records. *June Med.*, 22 F.4th at 521. Defendants make no serious attempt to meet this standard. Nor could they. Not only does the analysis begin with a presumption in favor of public access, but Defendants'

---

Wallace & Edward Lawrence, *Judge Orders Biden Admin to Turn over Fauci, Jean-Pierre 'Misinformation' Emails Sent to Social Media Giants*, Fox News (Sep. 7, 2022), https://www.foxnews.com/politics/judge-orders-biden-admin-turn-over-fauci-jean-pierre-misinformation-emails-sent-social-media-giants; *Jenin Younes: Government Censorship Versus Misinformation Harm*, NTD News (Sep. 2, 2022), https://www.ntd.com/jenin-younes-government-censorship-versus-misinformation-harm_834852.html.

privacy interests are especially weak because they are public officials, and the public's interest in access is especially strong because the case involves the actions of "public entit[ies] or official[]s" on "matters of legitimate public concern"—indeed, extraordinary public concern, given that those matters implicate the First Amendment rights of millions of Americans. *AJW*, 954 F.3d at 233; *cf. Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access.").

To be sure, Defendants do not insist on sealing deposition transcripts in their entirety. But they do demand sealing deposition recordings in their entirety, and they demand sealing those parts of transcripts that would enable a reader to identify which federal officials were discussed in the deposition testimony. *See* Def. Ex. A at 1–2, ¶ 2. The public is entitled to this information. In fact, Defendants unwittingly make the case for public access when attempting to explain why the Court should order the information sealed. Defendants fear that audiovisual recordings will circulate more widely and lend themselves more readily to critical "spin" than written transcripts, *see* Doc. 110-1, at 7, and they fear that if the public is able to identify which federal officials were involved in talks with social-media companies about censoring private speech, then those officials might be subject to unwanted "attention" and angry criticism for violating Americans' fundamental rights, *see id.* at 6–7, 15.

Defendants' eagerness to control the circulation of ideas that they deem "misleading," and their horror at the prospect of being subject to criticism they find offensive, betrays the same cramped vision of First Amendment rights that gave rise to this lawsuit. If Defendants are correct that audiovisual recordings are likely to circulate more widely than written transcripts, then that is just another reason *in favor of* public access to and *against* the sealing of the recordings. "If there

be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring); *see also Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 361 (2010) ("[I]t is our law and our tradition that more speech, not less, is the governing rule."). Likewise, robust and uninhibited debate about the performance of public officials is not an evil to be avoided but rather is crucial for the functioning of our democratic system of government. *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) ("There is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs . . . . That agreement reflects our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." (cleaned up)).

Defendants cite *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), for the proposition that "a litigant has no First Amendment right of access to information made available only for purposes of trying his suit." Doc. 110-1, at 12 (quoting *Seattle Times*, 467 U.S. at 32). Indeed, Defendants go so far to claim (wrongly) that their proposed protective order "warrants no First Amendment scrutiny." *Id. Contra Seattle Times*, 467 U.S. at 32 ("In addressing [whether a litigant can disseminate information obtained in discovery] it is necessary to consider whether [prohibiting dissemination] furthers an important or substantial governmental interest unrelated to the suppression of expression and whether the limitation of First Amendment freedoms is no greater than is necessary . . . ." (cleaned up)). Although Defendants exaggerate, *see Seattle Times*, 467 U.S. at 32, it would make no difference even if they were correct. Plaintiffs argue that the Court should deny Defendants' motion for a protective order because it violates Rule 26(c), not because it violates the First Amendment. But the First Amendment reflects the "profound national

commitment" to open debate about public issues that the First Amendment embodies, and this gives the public an especially strong interest in access to the information that Defendants are asking the Court to seal, thereby rendering sealing improper under Rule 26(c). *Ariz. Free Enter.*, 564 U.S. at 755; *see AJW*, 954 F.3d at 233 (holding that the presumption against disclosure under Rule 26(c) is especially strong when the case involves "matters of legitimate public concern"). Contrary to Defendants' logic, Rule 26(c) is not blind to First Amendment concerns.

In addition to relying on *Seattle Times*, Defendants cite a smattering of out-of-circuit cases where courts granted or upheld protective orders as to deposition testimony. Even if the cases Defendants cite were on all fours with this case, this Court should reject them as unpersuasive and instead follow binding Fifth Circuit cases such as *June Medical*, *Le*, *AJW*, and *Garrett*—none of which Defendants even cite, let alone seriously address. In any event, the out-of-circuit cases Defendants cite are clearly distinguishable.

For example, Defendants rely heavily on a pair of cases involving allegations that former Secretary of State Hillary Clinton improperly used a private email server for official government business. Doc. 110-1, at 11, 13–14. But the public's interest in whether former Secretary Clinton properly followed security protocols related to her emails is simply not comparable to the public's interest in the subject matter of this case, which involves a constitutional challenge alleging violations of the First Amendment rights of millions of Americans. *Compare Judicial Watch, Inc. v. U.S. Department of State*, No. 14-cv-1242, 2019 WL 11890739, at *1 (D.D.C. Apr. 25, 2019), *with* Doc. 84, at 9–15. And the "public's interest in the litigation's subject matter" is part of what determines how strong a presumption in favor of public access the party seeking a protective order must overcome. *Shane Grp.*, 825 F.3d at 305.

Defendants also cite a collection of cases regarding FBI and law-enforcement concerns about personally identifiable information. Doc. 110-1, at 16. But Defendants provide no basis to anticipate that any personally identifiable information, other than names, will discussed in any deposition, including that of FBI agent Elvis Chan. This Court ordered the deposition of Elvis Chan and the other witnesses, Doc. 90, precisely for the purpose of giving Plaintiffs an opportunity to determine "the identity of federal officials who have been and are communicating with social-media platforms about disinformation, misinformation, malinformation, and/or any censorship or suppression of speech on social media, including the nature and content of those communications." Doc. 34, at 13. The names of the federal officials, even those in law enforcement, who are suppressing the First Amendment rights of the American people are matters of tremendous public interest. Any criticism that public officials endure as a result of public disclosure of their identities is simply the price of this nation's "profound . . . commitment" to "uninhibited, robust, and wide-open" "debate on public issues." *Ariz. Free Enter.*, 564 U.S. at 755.

Defendants also cite several cases for the proposition that law enforcement personnel have an interest in the secrecy of their personally identifiable information to avoid harassment or threats. Doc. 110-1, at 16. None is applicable here. In *Lesar v. U.S. Department of Justice*, a Freedom of Information Act (FOIA) case, the court held the balance of interests, in that instance, favored protection of the names of FBI agents "in light of the contemporary and controversial nature of the information," concluding that agents have a legitimate privacy interest in their names. 636 F.2d 472, 486 (D.C. Cir. 1980). But FOIA's statutory exemptions are distinct from Rule 26(c)'s standard for sealing record evidence. Moreover, the *Lesar* court clarified that "[i]n their capacity as public officials FBI agents may not have as great a claim to privacy as that afforded ordinarily to private citizens" and that its holding was not meant to "imply a blanket exemption for the names

of all FBI personnel in all documents." *Id.* at 487. Rather, the court based its FOIA holding on the extremely detailed and specific evidence of threats which comprised hundreds of pages. *Id.* at 488 n.96. By contrast, Defendants' nonexistent evidence here comprises zero pages.

Another point that the *Lesar* relied on was the fact that the records in question were "compiled for law enforcement purposes." *Id.* at 486–87. The same is true of another FOIA case cited by Defendants, *Woodward v. U.S. Marshal Service*. *See* No. CV 18-1249 (RC), 2022 WL 296171, at *3 (D.D.C. Feb. 1, 2022) (cited in Doc. 110-1, at 16). Colluding with social-media companies to suppress protected speech that the government disfavors cannot in any way be consistent with any legitimate law-enforcement purpose or investigation.  After all, FBI officials do not enjoy a "blanket exemption" from disclosure "in all documents."  *Lesar*, 636 F.2d at 487. If FBI agents were using their official capacities not for legitimate law enforcement purposes, but instead in furtherance of the violation of American citizens' First Amendment rights, their status as FBI agents cannot overcome the public interest in their identities.

In sum, Defendants fail to show that their asserted privacy interests are sufficient to justify sealing record evidence. Defendants rely on nonbinding caselaw that is inapplicable, and they fail to engage in any meaningful way with the binding Fifth Circuit caselaw that stands in clear opposition to their arguments.

## II.    Defendants Failed to Submit Evidence in Support of Their Motion as Required by Fifth Circuit Precedent.

On the other side of the scale, Defendants fail to make even the most basic showing that would be required to justify the sealing of evidence.  Federal Rule of Civil Procedure 26(c) requires "a showing of good cause to support the issuance of a protective order." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Accordingly, when deciding whether to grant a protective order, a court may not rely on the movant's unsupported allegations. Instead, the movant must convince

the court by means of "affidavits or other evidence" that a need for confidentiality exists that outweighs the public's common-law right of access. *Id.* Issuing a protective order on the basis of "conclusory allegation[s]" alone, unsupported by evidence, is "clearly and indisputably" erroneous. *Id.* at 305–06.

Here, Defendants "did not support [their] motion for protective order with any affidavits or other evidence that might provide support for" their conclusory allegations of harm. *Id.* at 306. Instead, Defendants offered a string of speculative inferences supported by nothing but their own *ipse dixit*. First, Defendants suggest that "it is inevitable that if audiovisual recordings of federal deponents' testimony are made public, they will be widely disseminated by various media platforms." Doc. 110-1, at 7. Next, Defendants speculate that "those recordings will almost certainly be cut and spliced and used as 'sound-bites,' with testimony taken out of context and used for purposes unrelated to the litigation of Plaintiffs' claims." *Id.* (internal quotation marks and citation omitted). "That publicity, in turn," Defendants predict, "will expose the deponents to undue harassment and invasions of privacy," *id.*, as well as "unwarranted attention," *id.* at 6. (Others might view this as "warranted attention.")

Defendants offer no evidence to support these vague and "conclusory allegation[s]." *Terra Int'l*, 134 F.3d at 306. They point to threats made for reasons completely unrelated to this litigation against Nina Jankowicz (whom Plaintiffs are not even deposing), Dr. Fauci, and Ms. Psaki. Doc. 110-1, at 7–9. But most of these threats occurred in 2020, long before the commencement of this action. *See id.* And they do not even purport to identify a single threat that arose from the seven months' of publicity already associated with this case. Defendants offer no evidence whatsoever to back up their confident assertion that "[t]he threats and harassment that officials such as Dr. Fauci and Ms. Psaki have reportedly already endured are virtually certain to be repeated, if not

13

exceeded, should video recordings of their depositions be widely disseminated to the public." *Id.* at 9–10. All Defendants offer is their assurance that "it requires no stretch of the imagination" to believe that deponents such as Ms. Easterly "will be at risk of similar threats and harassment if audiovisual recordings of her deposition testimony may be circulated, edited, and used as soundbites, perhaps misleadingly." *Id.* at 9.

Indeed, although information in publicly accessible court filings in this case has been circulating for weeks on social media, Defendants manage to produce only a single vulgar Tweet evincing the reaction that apparently they fear. The Tweet reads in full: "We finally have a name for the censor behind this all. F**k Daniel Kimmage[.]" @lisey_ann, Twitter (Oct. 26, 2022 4:31 PM), https://twitter.com/lisey_ann/status/1585383647481188352?s=42&t=nunIOa1FJaxJ5P6K wVDQhA.nunIOa1FJaxJ5P6KwVDQhA (cited in Doc. 110-1, at 10 n.18).

The Tweet itself may be short, but Defendants' attitude toward it speaks volumes. "[S]peech critical of the exercise of the State's power lies at the very center of the First Amendment," *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991), even when couched in "vulgar or offensive" terms and directed at particular public officials, *Lewis v. City of New Orleans*, 415 U.S. 130, 131–33 (1974); *see also City of Houston v. Hill*, 482 U.S. 451, 472 (1987) ("[T]he First Amendment recognizes . . . that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive."). Government officials have no right to be free from annoyance and unwanted "attention" caused by sharply worded criticism of how they execute their public duties. Doc. 110-1, at 6. Again, Defendants' request that this Court depart from its ordinary procedures in order to keep harsh criticism of public officials on social media to a minimum reflects the same cramped vision of First Amendment rights that gave rise to this lawsuit.

Defendants' near-exclusive reliance on a single, constitutionally protected Tweet underscores their failure to produce "affidavits or other evidence" to support their "conclusory allegation[s]" of unwarranted attention, harassment, and invasions of privacy in the absence of a protective order. *Terra Int'l*, 134 F.3d at 306. Assurances that their claims "require[] no stretch of the imagination," Doc. 110-1, at 9, is a bare speculative allegation, and no substitute for actual evidence. To grant a motion for a protective order under these circumstances would be "clearly and indisputably" erroneous. *Terra Int'l*, 134 F.3d at 305–06.

**III.    Defendants Failed to Articulate with Specificity the Interests That They Claim Justify Sealing Record Evidence.**

Third, Defendants' vague allegations of harm are not only unsupported by evidence, but also unspecific on their own terms. "For good cause to exist, the party seeking protection bears the burden of showing *specific* prejudice or harm will result if no protective order is granted." *Phillips ex rel. Est. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002) (emphasis added). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Grp.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Instead, the party seeking protection bears the burden of making "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); *see also Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (holding that a protective order is proper only "when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury").

Here, Defendants speak in very general terms of "unwarranted attention," "undue harassment," "invasions of privacy," and the like. *E.g.*, Doc. 110-1, at 6–7. The only specific examples they provide are the threats that Ms. Jankowicz, Dr. Fauci, and Ms. Psaki have received in the past for reasons unrelated to this litigation, as well as the Tweet criticizing Mr. Kimmage.

For the reasons explained above, even assuming that public access to the deposition recordings and transcripts leads to more Tweets like the one about Mr. Kimmage, that provides no basis for granting Defendants' proposed protective order. As for the threats against Ms. Jankowicz, Dr. Fauci, and Ms. Psaki, Defendants fail to articulate with any specificity a plausible causal connection between public access to the deposition recordings and transcripts and additional threats like those that Ms. Jankowicz, Dr. Fauci, and Ms. Psaki received previously. All Defendants offer is their loose string of hypotheticals:

> [I]t is inevitable that if audiovisual recordings of federal deponents' testimony are made public, they will be widely disseminated by various media platforms. And those recordings will almost certainly be "cut and spliced and used as 'sound-bites'" *Felling*, 2001 WL 1782360, at *3, with testimony taken out of context and used for purposes unrelated to the litigation of Plaintiffs' claims. That publicity, in turn, will expose the deponents to undue harassment and invasions of privacy.

Doc. 110-1, at 7. Such broad, speculative suggestions bear little resemblance to the "particular and specific" allegations that Rule 26(c) requires. *Garrett*, 571 F.2d at 1326 n.3. Defendants do not specify who is likely to cut and splice the deposition recordings, how such excerpts are likely to mislead, or to what improper non-litigation-related purposes the misleading excerpts are likely to be put. Nor do they articulate how such non-litigation-related uses of deposition recordings are likely to cause "undue harassment and invasions of privacy." Doc. 110-1, at 7.

Of course, even if Defendants had made "particular and specific" allegations, they would have needed to back up those allegations with a "particular and specific demonstration of fact," *Garrett*, 571 F.2d at 1326 n.3, which they failed to do, *see supra* Section II. Nonetheless, the "stereotyped and conclusory" character of Defendants' allegations provides an independent basis for denying Defendants' motion. *Id.*

IV.   **Defendants' Demands Are Incompatible with the Procedures for Sealing Record Evidence.**

Fourth, Defendants' demands are incompatible with the procedures for sealing record evidence established by the Fifth Circuit. "It is the *public* that has the right of access," *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211 (5th Cir. 2019), and "most litigants have no incentive to protect the public's right of access," *Le*, 990 F.3d at 419 (brackets omitted). "That's why judges, not litigants, must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Id.* (quotation marks omitted). A judge may not permit any documents or parts thereof to be sealed without first "evaluat[ing] all of the documents individually." *June Med.*, 22 F.4th at 521. "It is the solemn duty of the judge to scrupulously examine each document sought to be sealed." *Id.*; *accord Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 222 (6th Cir. 1996) ("The District Court cannot abdicate its responsibility to oversee the discovery process and to determine whether filings should be made available to the public.").

Defendants' proposed protective order violates these principles in at least three ways. First, the proposed order specifies a set of criteria that the litigants, not the Court, are to apply to determine what information to redact from public filings, with the Court becoming involved only if the litigants disagree about how to apply the criteria. Second, the proposed order specifies criteria for redacting information that are to apply categorically to all deposition testimony, precluding line-by-line balancing of the interests at stake. Third, the criteria that the proposed order specifies relate only to the interests favoring nondisclosure and not to the interest in public access.

For all these reasons, by asking the Court to issue their proposed protective order, Defendants are inviting the Court to abdicate its "solemn duty . . . to scrupulously examine each document sought to be sealed" and decide what, if anything, to seal on the basis of "a case-by-

case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *June Med.*, 22 F.4th at 521. The Court should decline Defendants' invitation.

## V.   Defendants' Categorical Demands Violate the Rule Against Sealing Publicly Available Information.

Fifth, Defendants' request for categorical sealing flouts the rule against sealing information that is already publicly available. "Publicly available information cannot be sealed." *Id.* at 520. Litigants who willfully violate this rule risk sanctions. *See In re Violation of Rule 28(D)*, 635 F.3d 1352, 1359–60 (Fed. Cir. 2011) (imposing sanctions *sua sponte* on an attorney for filing arguments pertaining to an event that had already been "publicly disclosed" under seal). The Fifth Circuit's caselaw on this issue is abundantly clear:

> We require information that would normally be private to become public by entering the judicial record. How perverse it would be to say that what was once public must become private—simply because it was placed in the courts that belong to the public. We will abide no such absurdity.

*June Med.*, 22 F.4th at 520 (citation omitted).

Undeterred, Defendants have asked this Court to order, in advance, that the parties file under seal any "personally identifiable information" of "current and former federal employees, other than the names of those who are parties to or deponents in this case," as well as "other third parties." Def. Ex. A at 1–2, ¶¶ 2–3. It is virtually certain that much, if not all, of this information will be publicly accessible. Certainly, there is no way to know in advance that none of it will be. Additionally, Defendants have asked Plaintiffs to file revised, partially redacted versions of documents that have been publicly filed on the public docket in this case for a month. During that time, as Defendants themselves acknowledge, the information in these filings has been circulating widely on traditional and social media and is now publicly accessible. *See* Doc. 110-1, at 6 & nn.6–

9 (observing that "the expedited discovery authorized in this case has been a subject of substantial public discourse"; recognizing that "[m]any of the documents that Defendants have produced during expedited discovery have in turn been circulated on social media, and news outlets have reported on the same"; and offering examples (footnotes omitted)). Defendants should not ask Plaintiffs, and the Court should not order Plaintiffs, to violate the rule against filing publicly available information under seal.

Illustrating this point, Defendants would treat "names" of federal employees as "protected PII," Doc. 110-1, at 15, which stretches the concept of "protected" personal identifying information beyond recognition. They also would treat "other personal information" as "protected PII," *id.*, which is so broad and vague as to sweep in all manner of publicly available information.

Defendants also represent to the Court that "[t]he parties had previously agreed to protect the names of career civil servants (and the contact information of all individuals) by redacting such information from any public versions of interrogatory responses and document productions. Per that agreement, the redactions do not cover the names of those whose association with the litigation may be publicly known already, such as specific individuals who are identified in the operative Complaint." Doc. 110-1, at 17. This unsupported statement is incorrect, and it misrepresents the parties' agreement and prior course of conduct. The parties had previously agreed, for the disclosures associated with the Joint Statement on Discovery Disputes, that *contact information* (such as phone numbers and email addresses) would be redacted, but *not* the names of federal employees. *See* Ex. A, at 2-3. Then, after publicity surrounding the Mar-a-Lago search warrant, Defendants asked for names of "low-level" employees to be redacted. Plaintiffs did *not* agree to that proposal, in part because Defendants never provided a satisfactory definition of who counted as "low-level." *Id.* Further, Defendants never produced the redacted version of their documents

19

to exclude contact information as they had agreed to do—and still have not done so to this day. *Id.* As the filing deadline approached, to avoid another dispute, Plaintiffs applied their own redactions that went beyond the parties' agreement to neutralize yet another dispute with DOJ, but Plaintiffs made clear that they did *not* agree to redacting names going forward. *See id.* Plaintiffs' statement, unsupported by any of the parties' relevant communications, simply misrepresents the parties' course of conduct *See id.*

## VI. Defendants' Demands Are Unreasonably One-Sided and Incongruent to Any Needs in This Case.

Sixth, the unreasonable and one-sided character of Defendants' demands shows them to be incongruent to any need for confidentiality that might be present in this case. "[T]o the extent that any sealing is necessary, it must be congruent to the need." *June Medical*, 22 F.4th at 521.

Defendants' proposed protective order does not comply with this requirement. On the one hand, it imposes unreasonable constraints on Plaintiffs' use of deposition materials. These unreasonable constraints include, but are not limited to, a built-in delay of up to *seven weeks* between the creation and filing of deposition evidence—a delay which appears tailor-made to interfere with the Court's schedule for supplemental briefs on Plainitffs' motion for preliminary injunction. *See* Def. Ex. A at 2–3, ¶¶ 4–5. Defendants offer no explanation for why the privacy interests they assert justify artificially prolonging of the process by which Plaintiffs can compile and present to the Court the evidence that the Court needs to grant Plaintiffs appropriate preliminary-injunctive relief.

On the other hand, Defendants' proposed order exempts Defendants from the very same restrictions on using the deposition materials that it imposes on Plaintiffs. *Id.* at 5 ¶ 8 (providing that the disclosure limitations "do not apply to the Federal Defendants and Attorney Professionals for the Federal Government"). The overtly one-sided nature of Defendants' proposed order dispels

any notion that the order is congruent to Defendants' professed need for confidentiality. Defendants cannot overcome the presumption in favor of public access, "heav[y]" to begin with and made much heavier still by the fact that this case involves conduct of public officials implicating the constitutional rights of millions of Americans, unless the privacy interests Defendants assert on behalf of nonparty individuals are extraordinary. *June Med.*, 22 F.4th at 519–20. But if these privacy interests are extraordinary enough to justify preventing Plaintiffs and others from speaking publicly about the deposition materials, then surely they are extraordinary enough to justify prohibiting Defendants from doing exactly the same thing. Defendants' haste to reserve their own rights to unrestricted use of the deposition materials shows that they do not really believe that the privacy interests they assert are sufficient to justify a sealing order.

The one-sided nature of Defendants' demand puts on full display Defendants' predominant motive for seeking a protective order. Defendants make vague and half-hearted gestures at "undue harassment" and "invasions of privacy," Doc. 110-1, at 7, which Defendants do not bother to support with any evidence. Instead, Defendants' opposition to open public discussion of what the depositions reveal lies at the heart of their motion. Defendants argue that the Court should treat audiovisual recordings more stringently than transcripts, noting that audiovisual clips are likely to circulate more widely in today's media environment than written excerpts. *See id.* at 5. Wide-open public discussion of the nature and propriety of federal officials' coordination with social-media companies on content modulation, including which federal officials were involved, is what Defendants oppose. They are willing to tolerate discussion of such issues only on their own terms, much as this lawsuit alleges that they are willing to tolerate discussion of other public issues only on their own terms. But "uninhibited, robust, and wide-open" "debate on public issues" is the only

way to ensure the accountability of the government to the people. *Ariz. Free Enter.*, 564 U.S. at 755. The First Amendment requires nothing less. *Id.*

## VII.   Defendants' Long Delay Before Filing Their Motion Undercuts Their Claim of Urgency in the Relief Requested.

Finally, as noted above, Defendants unreasonably delayed for many weeks before filing a motion for protective order on the very evening before the first deposition was scheduled.  Whether tactical or the result of negligence, this delay undermines Defendants' claim of urgency in the relief requested.   "[E]quity aids the vigilant and not those who slumber on their rights."   *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 708 (5th Cir. 1994); *see also Edwards v. Standard Fire Ins. Co.*, No. CIV.A. 07-6714, 2008 WL 1832366, at \*3 (E.D. La. Apr. 23, 2008) (same).  In the immediate aftermath of this Court's Order on Depositions, Doc. 90, Defendants found plenty of time to file no less than *five* major motions and pleadings to challenge the court-ordered depositions in this Court, the Fifth Circuit, and the Eastern District of Virginia.  Yet they waited until the very last minute to claim that they need a protective order to prevent public disclosure and criticism of the Government.  Whatever else this delay says about the Government's priorities, it undercuts their claim of urgency in the relief requested here.

## <u>CONCLUSION</u>

The Court should deny Defendants' motion for a protective order.

Dated: November 14, 2022

Respectfully submitted,

**ERIC S. SCHMITT**
**Attorney General of Missouri**

*/s/ D. John Sauer*
D. John Sauer, Mo. Bar No. 58721*
  *Solicitor General*
Justin D. Smith, Mo. Bar No. 63253
  *First Assistant Attorney General*
Kenneth C. Capps, Mo. Bar No. 70908*
  *Assistant Attorney General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
John.Sauer@ago.mo.gov
*Counsel for State of Missouri*


*   admitted *pro hac vice*

*/s/ Jenin Younes*
Jenin Younes *
John J. Vecchione *
New Civil Liberties Alliance
1225 19th Street N.W., Suite 450
Washington, DC 20036
Direct: (202) 918-6905
E-mail: jenin.younes@ncla.legal
*Counsel for Plaintiffs Dr. Jayanta Bhattacharya,*
*Dr. Martin Kulldorff, Dr. Aaron Kheriaty, and Jill Hines*

*/s/ John C. Burns*
John C. Burns
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: 314-329-5040
F: 314-282-8136
E-mail: john@burns-law-firm.com
*Counsel for Plaintiff Jim Hoft*

**JEFFREY M. LANDRY**
**Attorney General of Louisiana**

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill (La #20685)
  *Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana
Tel: (225) 326-6766
murrille@ag.louisiana.gov
*Counsel for State of Louisiana*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 14, 2022, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ D. John Sauer*