# EXHIBIT A

```
 1                  UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       Alexandria Division

 3
       JENNIFER R. PSAKI,              :    Civil Case
 4               Movant,               :    No. 1:22-mc-00028-PTG-IDD
            v.                         :
 5                                     :
       STATE OF MISSOURI,              :    November 18, 2022
 6     et al.,                         :    11:20 a.m.
                 Respondents.          :
 7     ...........................     :    ........................

 8                  TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE IVAN D. DAVIS
 9               UNITED STATES MAGISTRATE JUDGE

10     APPEARANCES:

11     FOR THE MOVANT              JEANNIE RHEE
       JENNIFER R. PSAKI:          PAUL, WEISS, RIFKIND, WHARTON &
12                                 GARRISON, LLP
                                   2001 K Street, NW
13                                 Washington, DC  20006
                                   202-223-7300
14
                                   DAVID KESSLER
15                                 PAUL WEISS RIFKIND WHARTON &
                                   GARRISON, LLP
16                                 1285 Avenue of The Americas
                                   New York, NY  10019
17                                 212-373-3000

18                                 EDWARD EVERETT BAGNELL, JR.
                                   SPOTTS FAIN, PC
19                                 411 E. Franklin Street
                                   Suite 600
20                                 Richmond, VA  23219
                                   804-697-2177
21
       FOR THE MOVANT              INDRANEEL SUR
22     UNITED STATES OF AMERICA:   LAUREN A. WETZLER
                                   U.S. ATTORNEY'S OFFICE
23                                 2100 Jamieson Avenue
                                   Alexandria, VA  22314
24                                 703-299-3700

25                                 (APPEARANCES CONTINUED ON
                                   FOLLOWING PAGE.)
```

```
 1    FOR THE RESPONDENT           JOSEPH O'MEARA MASTERMAN
      STATE OF LOUISIANA:          MICHAEL WEITZNER
 2                                 COOPER & KIRK, PLLC
                                   1523 New Hampshire Avenue, NW
 3                                 Washington, DC  20036
                                   202-330-9600
 4
      FOR THE RESPONDENTS          JOHN JULIAN VECCHIONE
 5    JAYANTA BHATTACHARYA,        JENIN YOUNES
      JILL HINES,                  NEW CIVIL LIBERTIES ALLIANCE
 6    MARTIN KULLDORFF,            1225 19th Street, NW
      AARON KHERIATY:              Suite 450
 7                                 Washington, DC  20036
                                   202-918-6905
 8
                                   DEAN JOHN SAUER
 9                                 OFFICE OF MISSOURI
                                   ATTORNEY GENERAL
10                                 P.O. Box 899
                                   Jefferson City, MO  65102
11                                 573-751-8870

12

13
                          ( Pages 1 - 52)
14

15
             COMPUTERIZED TRANSCRIPTION OF FTR RECORDING
16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Court calls Jennifer R. Psaki
 3    versus State of Missouri, case number 1:22-MC-28.
 4              Will counsel please note their appearances for the
 5    record.
 6              MR. BAGNELL:  Good morning, Your Honor.  I'm
 7    Eddie Bagnell here for the movant, Jennifer Psaki.
 8              THE COURT:  Good morning.
 9              MS. RHEE:  Good morning, Your Honor.  Jeannie Rhee.
10              MR. KESSLER:  Good morning, Your Honor.  David Kessler,
11    also for the movant.
12              MS. WETZLER:  Good morning, Your Honor.  Lauren Wetzler
13    appearing for the United States on behalf of the defendants in
14    the underlying action.  With me at counsel table are
15    Jim Gilligan and Indraneel Sur, and Mr. Sur will be presenting
16    argument for the United States.
17              THE COURT:  All right.
18              MR. WEITZNER:  Good morning, Your Honor.
19    Michael Weitzner on behalf of the State of Louisiana, along with
20    my colleague, Joe Masterman, who will be arguing on behalf the
21    State of Louisiana.
22              There's one minor point, after the introductions, that
23    I'd like the Court -- that I'd like to bring to the Court's
24    attention.
25              THE COURT:  All right.
```

1          MR. WEITZNER:  Okay.

2          THE COURT:  Is it a point that's going to assist the

3     Court in doing its job in resolving these motions?  Those are

4     the only points I'm concerned about.

5          MR. WEITZNER:  I believe so, Your Honor.

6          THE COURT:  Okay.

7          MR. SAUER:  Good morning, Your Honor.  John Sauer with

8     the Missouri Attorney General's office, on behalf of the

9     State of Missouri.  Mr. Masterman will be presenting argument on

10    behalf of all the plaintiffs, or the respondents here.

11         MR. MASTERMAN:  Good morning, Your Honor.

12         THE COURT:  Good morning.

13         MR. VECCHIONE:  John Vecchione and Jenin Younes for the

14    individual defendants, Kulldorff, Bhattacharya, Kheriaty, and

15    Hines.

16         THE COURT:  Good morning.

17         MR. VECCHIONE:  Good morning.

18         THE COURT:  We have two matters here before the Court.

19    Essentially, they appear, at least to this Court, to be the

20    same, substantially identical, substantially similar motion;

21    that is, a motion to quash a subpoena issued to a

22    Ms. Jennifer Psaki, who is now the movant in this matter, the

23    underlying case being in the Western District of Louisiana.  And

24    Ms. Psaki has filed a motion to quash that subpoena of her.

25         The Court has had an opportunity to review that motion,

1   memorandum in support, opposition, and reply.  The

2   United States, as a party to that, has also filed a motion to

3   quash that same subpoena to Ms. Jennifer Psaki, so essentially

4   it deals with the same issue.

5        So obviously the Court -- since Ms. Psaki is the actual

6   movant, we'll start with her motion for her -- yes, her motion

7   first.

8        The Court has also had an opportunity to review the

9   United States' motion, memorandum in support, opposition, and

10  reply to that opposition.  I believe the opposition was the same

11  opposition for both cases.  Is that correct?

12       MR. SAUER:  Yes, Your Honor.  We filed a combined

13  opposition.

14       THE COURT:  Okay.  Well, for future reference, and

15  maybe there will be no further because this is a miscellaneous

16  case here, but when we do that, we're -- first, logistically

17  speaking, we must seek, in the Eastern District of Virginia --

18  at least the Alexandria Division of the Eastern District of

19  Virginia, we must seek leave of court to file a combined

20  briefing.

21       Second, for both parties, it appears that their

22  briefings were above this local court's page limits:  30 pages

23  for a motion, a memorandum in support or a brief, 30 pages for

24  the opposition, and 20 for any replies.

25       The motions themselves, or the memorandums in support,

1    appears that the government's or the United States' was

2    31 pages, and the opposition was 33 pages.  I can understand why

3    the parties believe, since it was combined, that you obviously

4    would get more than the 30 pages, if you were aware that there

5    was a 30-page limit.

6         But this is why we have to seek leave of court.  We

7    seek leave of court to file a combined motion, and then leave to

8    have additional pages, since it's a combined motion or combined

9    opposition.

10        Now, that we've dealt with the logistical aspects or

11   the administrative aspects of this matter, let's move on to the

12   substance.  Is there anything Ms. Psaki would like to add to her

13   motion at this time?

14        MS. RHEE:  Good morning, Your Honor.

15        THE COURT:  Good morning.

16        MS. RHEE:  At this time, on behalf of Ms. Psaki, we're

17   happy to rest on our papers; certainly happy to answer any

18   questions should this court pose any.

19        Just very briefly, Your Honor, we're here under the

20   very well settled doctrine of the Fourth Circuit on behalf of a

21   private nonparty citizen under Rule 45, on her behalf, because

22   of the special circumstance under Rule 45.  Because, as a

23   nonparty here, under the standards, the motion to quash is

24   resting on the fact that there needs to be demonstrated

25   relevance need that the contents that are being sought for in

```
 1    this deposition can really only be obtained from Ms. Psaki and
 2    not from anybody else.
 3         And particularly because she is a senior ranking former
 4    government official, and because the Apex Doctrine situation and
 5    the comities and the policy considerations kick in and should be
 6    taken into account under the Rule 45 considerations, because --
 7         THE COURT:  So your position is that all of that is to
 8    be considered in making a determination on whether or not it's
 9    an undue burden?
10         MS. RHEE:  Correct, Your Honor.  Correct.
11         THE COURT:  And I'm going to have to say here, this
12    court likes to be as up front as possible.  Let's be clear about
13    the Fourth Circuit's policy as well concerning the proof
14    necessary for undue burden:  Specifics, affidavits, and
15    supporting documentation.  I don't see any.  I see general
16    allegations.  I saw statements about her having to spend time
17    away from her family, several days, and her having to speak to
18    two sets of attorneys.  I'm finding it difficult to see how
19    that's different than any other deponent.
20         First, I'm confused on the representation about how she
21    would have to spend several days away from her family.  Well,
22    "away from" is confusing, because it appears the reason we're
23    here is because this is the place of compliance.  This is where
24    Ms. Psaki lives.
25         So the "away from" is confusing because -- unless her
```

1    family is somewhere else.  But if her family was somewhere else

2    and she were here, she's already away from her family.  So if

3    both her and her family are here, I don't understand what the

4    "away from her family" means.  Except maybe during the business

5    day, which, generally speaking, if she's employed, she would be

6    away from them during that period of time anyway.  But let's

7    move on.

8            Then we say "several days away from her family."  That

9    is even more confusing, based on the fact that the biggest

10   representations is, it's an undue burden because she really has

11   nothing to say.  So, how much time does it take to prepare a

12   witness for a deposition when she doesn't have anything to say?

13   That's confusing.

14           MS. RHEE:  So under the case law, Your Honor --

15           THE COURT:  We're talking about facts.  Generally

16   speaking, undue burden is based on facts.  It's specific

17   representations about specific burdens.

18           That's why the

19   Fourth Circuit's policy is, there has to be specifics about the

20   burden supported by affidavit and other types of evidence; like,

21   you know, affidavits about how much time this takes, how many

22   documents this will take to produce, you know, those types of

23   things.  How many hours, how much money.  That's what we deal

24   with in the Fourth Circuit, and therefore in the

25   Alexandria Division of the Eastern District of Virginia.  I

1    didn't see any of that.

2         MS. RHEE:  With respect to the Apex Doctrine,

3    Your Honor, there --

4         THE COURT:  Let's talk about the Apex Doctrine.

5         We understand -- first, let's be clear that the

6    Fourth Circuit has not officially recognized the Apex Doctrine,

7    since we like to talk about the Fourth Circuit.  But, even if it

8    implicitly accepted the Apex Doctrine, of course the -- the

9    burden in regards to the Apex Doctrine is -- experience proves

10   that burden is more -- even though the doctrine does apply to

11   former, the burden is more on current high-ranking officials

12   because it takes them away from their current job in fulfilling

13   the obligations they have to the American people based on that

14   job.

15        Kind of like, an example, the head of FEMA, after a

16   hurricane, having to go down to Louisiana to look at things, to

17   check it out to see what kind of help Louisianians may need, but

18   on that day someone wants a deposition of that person.  That's

19   extremely disruptive.

20        MS. RHEE:  Your Honor --

21        THE COURT:  So that can occur with former officials,

22   but I see nothing in the papers that suggests a significant

23   disruption of the governmental office that Ms. Psaki previously

24   held, based on her deposition as now a former member of that

25   office, or any disruption of her current life, except for what

1    I've already mentioned, her being away from her family for

2    several days and having to talk to two sets of lawyers.

3              So it appears, even if we look at the Apex Doctrine, it

4    does not fall in Ms. Psaki's favor.

5              MS. RHEE:  With all due respect --

6              THE COURT:  And you'd be amazed at how many times, on

7    Friday mornings, I hear that phrase.

8              MS. RHEE:  Well, with all due respect --

9              THE COURT:  But it needs to be followed by something

10   that's more convincing.

11             MS. RHEE:  Yes.  We disagree because the --

12             THE COURT:  Of course you do.

13             MS. RHEE:  -- reason why --

14             THE COURT:  That's why you're here.

15             MS. RHEE:  Yes.

16             THE COURT:  But in order for me to grant whatever

17   relief you're seeking, you must convince me that you're right

18   and I'm wrong.

19             MS. RHEE:  Right.  Well, with all due respect, the

20   reason why we disagree and the reason why the doctrine extends

21   to formers is because the disruption for formers is equally

22   applicable.  Even though it doesn't take them away from their

23   present job, the logic follows because --

24             THE COURT:  How is the disrupt -- what disruption in

25   Ms. Psaki's life and/or the White House press corps, or whatever

1    you want to call it, is there -- would there be from a

2    deposition of Ms. Psaki?

3         MS. RHEE:  Because the logic for why it is that they

4    want to depose her is because they want to probe all of the

5    statements that fall within what they say are the subject matter

6    from which she spoke at the podium --

7         THE COURT:  But that has nothing to do with the title

8    of former White House press secretary for purposes of the

9    Apex Doctrine.  That just means you think it's irrelevant and

10   therefore an undue burden.  I get that part.  But we're talking

11   about the Apex Doctrine for a former White House press

12   secretary.

13        MS. RHEE:  Right.  And it's the preparation.  It's the

14   preparation, and it's about --

15        THE COURT:  No, the preparation --

16        MS. RHEE:  -- having to prepare --

17        THE COURT:  -- goes back to the undue burden.

18        Prepping Ms. Psaki for a deposition will in no way,

19   shape, or form disrupt the White House and the current press

20   secretary's job at all.

21        MS. RHEE:  No.  It's the chilling effect --

22        THE COURT:  What should -- okay.

23        MS. RHEE:  -- which is what --

24        THE COURT:  Okay.  What chilling effect?

25        MS. RHEE:  Because it's the chilling effect with

```
 1    respect to anybody who holds that position.  And the case --
 2              THE COURT:  How?
 3              MS. RHEE:  -- law talks about -- because basically
 4    anybody who is in that position is now put on notice that
 5    anybody who says anything from that podium is subject to
 6    possible deposition.
 7              THE COURT:  So what --
 8              MS. RHEE:  That any statement that anybody makes from
 9    that podium --
10              THE COURT:  So --
11              MS. RHEE:  -- will now be subject to a possible
12    deposition about anything that anybody ever says when they're up
13    on that podium.
14              THE COURT:  So what your position is, is the
15    Apex Doctrine stands for the proposition that no current or
16    former high-ranking official in the government should ever be
17    deposed?
18              MS. RHEE:  No.  What the Apex Doctrine says is that you
19    need to satisfy an extraordinary burden, which is that you need
20    to demonstrate need, you need to demonstrate relevance, and that
21    that person --
22              THE COURT:  So we differ --
23              MS. RHEE:  -- is in a unique --
24              THE COURT:  -- on --
25              MS. RHEE:  -- circumstance to be able --
```

1            THE COURT:  Ma'am --

2            MS. RHEE:  -- to be able to provide --

3            THE COURT:  Ma'am --

4            MS. RHEE:  -- that testimony and --

5            THE COURT:  Ma'am --

6            MS. RHEE:  -- only that person.

7            THE COURT:  When the Court speaks, you do not.

8            MS. RHEE:  Apologies, Your Honor.

9            THE COURT:  These are all rhetorical statements.  These

10   are all generalities.  All you're saying is that the parties

11   differ on the relevance of the information that is sought from

12   Ms. Psaki.  That's your argument, and, therefore, since you

13   believe that the information is not very relevant, any

14   deposition of her is unduly burdensome.

15            MS. RHEE:  No, Your Honor.  What we're --

16            THE COURT:  Because the requirement and the standard is

17   not a burden.  Anyone who gets deposed is burdened.  The

18   requirement is undue.  And the undue part, in your argument,

19   comes from the fact -- several portions.  One, that you don't

20   think the information is very relevant; two, that you believe

21   the information they can get from Ms. Psaki they either have

22   acquired from another source or can acquire from another source,

23   and therefore any deposition of Ms. Psaki is unduly burdensome.

24   That's your argument.  Correct?

25            MS. RHEE:  Our argument is akin to what the

 1    Fifth Circuit very recently opined in the *Paxton* case,

 2    Your Honor.  It's about four high-ranking officials like the AG

 3    that -- that --

 4         THE COURT:  I'm going to have to stop you there.

 5    Referencing case law is not very pertinent, because all it does

 6    is gives the general standards by which this court must then

 7    apply facts that are specific to this case.  If you want to win

 8    this argument, you must apply that law to the facts of this

 9    case.  Because those were different high-ranking officials doing

10    different jobs in a different place, so the burden on them may

11    be completely different than the burden on Ms. Psaki.

12         MS. RHEE:  I think it's highly relevant, Your Honor,

13    because the circumstances and the kind of statement were very

14    similar, Your Honor.  Because it was a statement, you know,

15    essentially from the podium, where there was no direct

16    knowledge.  It was a statement of, you know, an Administration

17    position, and the theory by which the parties were trying to

18    seek further information was to get at what -- what did

19    the speaker, the senior ranking officer, mean by that very

20    general statement, essentially, from the podium.

21         And, again, the -- the doctrine, the Apex Doctrine, is

22    to say that, you know, for lots of policy reasons, for

23    separation of powers principles, that you don't really get to

24    just take depositions and to take discovery to probe behind,

25    what did that senior official mean by a podium statement,

1    without good reason.

2          And here, you know, again, just to take a step back and

3    to think about the procedural history, Your Honor, the parties

4    and the litigants here have gotten lots of discovery already,

5    and have gotten discovery where, on the record, Ms. Psaki, her

6    e-mails from the White House Press Secretary's Office have

7    already been searched.  There is no dispute in the record that

8    she had no responsive communications with any of the

9    social media companies.

10         THE COURT:  In the current record.

11         MS. RHEE:  Correct, Your Honor.

12         THE COURT:  They're trying to expand that record.

13   That's the purpose of the request.

14         MS. RHEE:  But it's essentially a fishing expedition to

15   say, okay, the record shows there's been no written

16   communications, and so they're operating on --

17         THE COURT:  Because --

18         MS. RHEE:  -- a theory that --

19         THE COURT:  -- everybody makes statements about what

20   they mean by things only in the written form.  They only utilize

21   e-mail when they want to talk about what they meant by

22   something.  They don't go out to dinner and talk to their

23   friends about it, or, you know, meet in the coffee room and have

24   discussions with someone while they're drinking some coffee and

25   reading the newspaper about, you remember what I said yesterday

1    in that press briefing?  You know what I meant by that?  What I

2    meant was...

3          They don't do that.  Because judicial experience

4    suggests the otherwise; that that's exactly what people do.

5          MS. RHEE:  But, Your Honor --

6          THE COURT:  In fact, smart people, it can be argued,

7    from years of experience, do that and that only because they

8    don't want written evidence of what may not have been

9    appropriate.  Because that can come back to bite them.

10         MS. RHEE:  That's not even, though, the theory by which

11   the plaintiffs are operating.

12         THE COURT:  Their theory -- they say they want to know

13   what she meant when she made those statements.  Let's look at

14   one statement that I believe was -- that I may have tagged.  I

15   can't...

16         There was something in one of these briefs about, "And

17   those companies know what we mean by that," something to that

18   effect.  Because, you know, from a layperson's standpoint, like

19   a trier of fact, that could have certain connotations.  That

20   could suggest pressure; the companies know -- when we ask that,

21   they know exactly what we're asking for.

22         Our job is not to try cases in the discovery process,

23   it's to authorize parties to request information that is

24   reasonably calculated to lead to the discovery of admissible

25   evidence.  Their requests don't even have to lead to admissible

1    evidence; their requests only have to be reasonably calculated

2    to do so.

3         They gave bases for which they are seeking her

4    information, what she meant by certain things.  The meaning of

5    terms may be deemed important by the trier of fact in

6    determining whether a conspiracy existed.  Because it's an

7    agreement, and that agreement normally isn't written down

8    between two parties to conduct an act that the law says is

9    unlawful.

10        The meaning of words go a long way in doing that.  We,

11   in this courtroom, see that all the time.  Drug dealers have an

12   innate ability to utilize phrases other than "the drugs" to talk

13   about the drugs.  The government puts on FBI, DEA agents to say:

14   What that meant was cocaine.  So the meaning is important in

15   defining a conspiracy.

16        So it seems that requesting the meaning from the person

17   who actually stated the phrases may go a long way in proving

18   that element of the conspiracy.

19        So it appears, at least at first glance, to be

20   reasonably calculated to lead to the discovery of admissible

21   evidence; whether you want it to or not is another issue.

22        MS. RHEE:  Your Honor, again, just to take a step back,

23   this is a White House spokesperson who is, from the podium,

24   paraphrasing/making broad statements that are not direct quotes

25   of anyone or anything, and, by the plaintiffs' own admission, is

1    not making any statements that are representations of any direct

2    knowledge whatsoever.

3            THE COURT:  That is your interpretation of what her

4    statements mean.  The other side has an absolute right to their

5    own interpretation.  That's argument for the trier of fact.

6    That's not a basis to disallow discovery, simply because your

7    interpretation of what she says is different than the other

8    side's.

9            MS. RHEE:  Your Honor, at least --

10           THE COURT:  That happens often in civil litigation.

11           MS. RHEE:  Your Honor, at least according to their own

12   papers, they are not claiming that she has direct knowledge.

13   They're saying that they are --

14           THE COURT:  Direct knowledge of what?

15           MS. RHEE:  That she had direct communications with the

16   social media companies.  They are claiming that they want to

17   take her deposition --

18           THE COURT:  And is that an element --

19           MS. RHEE:  -- about --

20           THE COURT:  -- of what claims they need to prove in

21   this case?

22           They're saying this whole thing -- my understanding,

23   which we'll get to in a little while, maybe not with you.

24   Because the intricacies of this case and the elements of what

25   have to be proven is what strongly suggests that this motion and

1    many others should be in the Western District of Louisiana.

2    Because now I am placed in a position in which I am required to

3    delve into the legal strategies of the parties in the underlying

4    pending action to determine whether information sought by this

5    deponent is relevant to the claims or the defenses in that

6    action.

7         Because the determination of relevance is the first

8    bases of determining whether or not the request is reasonably

9    calculated to lead to the discovery of admissible evidence,

10   because admissible evidence is defined as only that evidence

11   that is relevant.  And to require this Court to go through that

12   entire process, when it appears that a district judge in the

13   Western District of Louisiana has already done so, would seem to

14   be the philosophy behind the portion of the rule that authorizes

15   this court to transfer these matters to the Western District of

16   Louisiana.

17        MS. RHEE:  Your Honor, here, at least, according to the

18   limited circumstance in which pre-injunction discovery had been

19   granted in the first instance, was about --

20        THE COURT:  All I'm here to deal with in regards to

21   your motion, for this motion, is whether one of these factors

22   set forth in 45 have been met.  There are generally five, I

23   believe; two for permissive quashing, three for mandatory

24   quashing.  You're utilizing one, and the only one that fits is

25   45(d)(3)(A)(iv):

1          "When required, on timely motion, the court for the

2     district where compliance is required must quash or modify a

3     subpoena that" -- there are no allegations it fails to allow

4     reasonable time to comply, no allegation it requires the person

5     to comply beyond the geographical limits specified in

6     Rule 45(c).

7          There may be some issues, "requires disclosure of

8     privileged or other protected matter if no exception or waiver

9     applies," for someone that seems to have brought up the

10    possibility of executive privilege.  That may be better left for

11    an argument for the United States.  But that would appear to be

12    better left to be dealt with, how executive privilege may or may

13    not apply, whether it may or may not have been waived under

14    circumstances of the facts of the particular case, by the judge

15    presiding over that case.

16         So what you're left with is, subjects Ms. Psaki to

17    undue burden.  Up to this point, I have not heard sufficient

18    enough information that would suggest you satisfied your

19    obligation to prove that particular paragraph.

20         MS. RHEE:  Your Honor, from Ms. Psaki's vantage point,

21    it is not an absolute standard, it's a relative one.  And it is

22    about undue burden relative to the context in which the

23    deposition is sought.  And so from --

24         THE COURT:  So besides your Apex Doctrine, what's

25    unduly burdensome to Ms. Psaki of participating in this

1      deposition?

2              MS. RHEE:  Given the position in which she held and the

3      nature of the questioning and the examination, and the fact that

4      there are two sets of lawyers, so the personal attorneys

5      cannot --

6              THE COURT:  What does that mean --

7              MS. RHEE:  -- participate --

8              THE COURT:  -- the nature of the questioning?

9              MS. RHEE:  For every statement that she made while she

10     was at the podium, and all of the executive privilege and

11     the sensitive privilege and comity considerations, the

12     government attorneys who are going to prepare her will not allow

13     her personal attorneys to participate in that preparation.

14              There are --

15              THE COURT:  And?

16              MS. RHEE:  And then there are separate preparations --

17              THE COURT:  So that would --

18              MS. RHEE:  -- that will have to --

19              THE COURT:  -- seem to be unduly burdensome on you --

20              MS. RHEE:  And her.

21              THE COURT:  -- not Ms. Psaki.

22              MS. RHEE:  And her.

23              THE COURT:  How?

24              MS. RHEE:  Because then she has to actually take that

25     preparation, segregate it, digest it, and then have a separate

1    preparation with respect to her personal preparation, separate

2    and apart from the preparation with the government attorneys.

3          THE COURT:  So she has to --

4          MS. RHEE:  She is not --

5          THE COURT:  -- do a little extra --

6          MS. RHEE:  -- a lawyer.

7          THE COURT:  -- work --

8          MS. RHEE:  She is not a lawyer.

9          THE COURT:  -- to prepare.

10         Well, how is that not similar to a case that just

11    involves multiple parties, multiple defendants?  They would

12    have -- may have to prepare for questioning by different counsel

13    as well.

14          MS. RHEE:  It's not just the preparation with different

15    counsel, Your Honor.

16          THE COURT:  Okay.  Well, then, what else is it?

17          MS. RHEE:  It's about having to incorporate and digest

18    the instructions --

19          THE COURT:  Every deponent --

20          MS. RHEE:  -- and the sensitivities --

21          THE COURT:  -- has to incorporate and digest answers to

22    questions and how they're going to deal with them.  That's no

23    different than any other deponent.  Some people are better at it

24    than others.  It would appear, based on her former employment,

25    she would probably be very good at it.

1           What else is there that's unduly burdensome?

2           MS. RHEE:  Your Honor, though, the undue burden

3     standard is not one where, because of -- her sophistication

4     and/or her ability to do it well doesn't make it undue.

5           THE COURT:  Yes, that is to be taken into

6     consideration, because what is unduly burdensome to one person

7     may not be unduly burdensome to another.  Because certain things

8     are easier for some people.  If it's easy for you, how is it an

9     undue burden?

10          MS. RHEE:  Your Honor, though, the undue burden

11    standard, especially for a nonparty, actually says, though --

12    the standard actually is to take into account that the

13    presumption is that you're not to actually impose on a nonparty

14    litigant in this way.  And so --

15          THE COURT:  No.  In -- you are not supposed to if you

16    can acquire the information from parties.  You are supposed to

17    seek it from parties first, and if you don't believe you've

18    acquired what you believe is necessary to prove the elements or

19    the defenses of the claims in the case, then you go elsewhere.

20    That's why we have third-party discovery.

21          MS. RHEE:  And here, Your Honor, the position that we

22    are taking is, really that information can be sought elsewhere

23    and there is no need to go to Ms. Psaki.

24          THE COURT:  And their position is, no one knows what

25    Ms. Psaki knew -- what she meant by what she said but her.

1          MS. RHEE:  But --

2          THE COURT:  And from a logical standpoint, that would

3     appear reasonable.  Because as we -- as judges instruct members

4     in juries all the time, there's difficulty in determining

5     someone's knowledge and what they meant.  Rarely is there direct

6     evidence of it.  What they are seeking is direct evidence first,

7     by asking the propounder of the information - that being

8     Ms. Psaki - before they then feel the need to have to rely on

9     circumstantial evidence, which is what we normally rely on to

10    determine meaning.  Because as we always instruct, you can't get

11    into someone's head to determine what they thought and what they

12    meant at a particular time.

13         MS. RHEE:  But again --

14         THE COURT:  Unless they say so.

15         MS. RHEE:  But again, Your Honor, I mean, this is where

16    this belies the fallacy.  Because as a White House spokesperson,

17    there is no direct knowledge.  She is --

18         THE COURT:  Direct knowledge of what she meant would be

19    from her.

20         MS. RHEE:  But again, the --

21         THE COURT:  She's not -- if the question is, what do

22    you believe -- you got this information from so and so.  Right?

23    When you made that statement at the press briefing,

24    you -- that's not information you had; you got that information

25    from A, B, and C.  What did A, B, and C mean?  You're at the

1    deposition:  Objection.  Calls for speculation.

2         Move on.  That's how it works.

3         MS. RHEE:  But again --

4         THE COURT:  Simply because --

5         MS. RHEE:  -- that was --

6         THE COURT:  -- some of that information may be

7    objectionable or irrelevant, you do so at the deposition.

8    That's not a bases not to have it.

9         MS. RHEE:  But that's precisely why it is so unduly

10   burdensome.  All of the underlying information for the theory of

11   the conspiracy; i.e., that there were Administration officials

12   talking to the social media companies and imposing

13   obligations --

14        THE COURT:  But they're not --

15        MS. RHEE:  -- on those social media companies --

16        THE COURT:  They're getting information about what

17   those statements may have meant from those officials.  They want

18   information about what Ms. Psaki meant when she made the

19   statements.  It appears, from a rational standpoint, that the

20   only place to get that from would be Ms. Psaki or individuals

21   who may -- Ms. Psaki may have had close relationships with, who

22   she may then had discussed it with at the coffee machine.  They

23   appear not to have names of those people as of yet, so they

24   prefer to try to get it from Ms. Psaki than to put themselves

25   through the undue burden of trying to seek out those unnamed

1    individuals.

2            MS. RHEE:  That is -- those individuals are --

3            THE COURT:  But also --

4            MS. RHEE:  -- what they're entitled to.

5            THE COURT:  -- be -- you don't know.  Those individuals

6    also could be third parties.

7            MS. RHEE:  Those individuals are all within the

8    Administration, Your Honor.

9            THE COURT:  At the time, or they were at the time

10   Ms. Psaki was there.  Administrations turn over all the time.

11   Their employees turn over all the time.  We have absolutely no

12   idea whether someone Ms. Psaki may have talked to at the coffee

13   machine is still there or not.  That would be speculation.

14           MS. RHEE:  Your Honor, again --

15           THE COURT:  You may bode better in the Western District

16   of Louisiana.  But let's just get to that.

17           This court was concerned when it received the motions.

18   It could be interpreted by some judges that this could be an

19   attempt at an end-around on a ruling made by a district judge in

20   the Western District of Louisiana.  There's much argument about

21   he -- this individual didn't address this, I guess, in his

22   memorandum opinion.  Well, we judges can't address everything.

23   But addressing it and considering it are two different things.

24   I have absolutely no idea whether the district judge in the

25   Western District of Louisiana considered those things you said

1    he obviously didn't in making his ruling.  The only person that

2    knows that would be the district judge in the

3    Western District of Louisiana.

4         If you believed he didn't consider it, the more

5    appropriate motion would be a motion for clarification to the

6    district judge in the Western District of Louisiana.  If you

7    believed there were important things that were not put forth in

8    front of him for his appropriate decision, and it meets the

9    requirements of the rule, you had another option:  A motion to

10   reconsider to the district judge in the Western District of

11   Louisiana.  You did neither.

12        I don't know what he considered and/or what he didn't

13   consider.  It appears that he did.  We say he didn't consider

14   the burden.  He specifically uses the word "burden":  "Any

15   burden on Psaki is outweighed by the need to determine whether

16   free speech has been suppressed."  So he's making a

17   determination of relevance, burden.  The Court determined there

18   are substantive reasons for taking the depositions.

19        You said he didn't consider the exceptional

20   circumstances that are required by Rule 45.  The next sentence:

21   "Extraordinary circumstances are present.  Psaki has made a

22   number of statements that are relevant to the government's

23   involvement in a number of social media platforms' efforts to

24   censor its users across the board for sharing information

25   related to COVID-19."  It appears he's addressed many of the

1    issues that have been suggested he didn't address.

2          The Court received the -- at the midnight hour last

3    night, there was a concern about, well, more burden on Ms. Psaki

4    because she -- they may be attempting to make public the videos

5    of her deposition, and...well, I'm in possession now of a letter

6    from the Attorney General's Office of Missouri saying that

7    Ms. Psaki claimed that the procedures in the Western District of

8    Louisiana support her argument, presents an undue burden:

9    Louisiana Federal District Court granted defendant's motion for

10   a protective order in part, holding that the videotaped

11   depositions must be sealed.

12         So, once again, the district judge in the

13   Western District of Louisiana is dealing with the issue of

14   burden on Ms. Psaki.  Why would this court ever get involved in

15   the middle of this?  If you believed his decision was just

16   completely wrong, and therefore a motion to clarify and a motion

17   to reconsider was inappropriate, then there's the other option.

18   You appeal his decision, which you've done.

19         So now this court is supposed to make a determination,

20   preemptively, of a circuit court, when this court felt

21   completely inappropriate that to make a decision as a magistrate

22   judge, to trump a district judge's ruling in the

23   Western District of Louisiana, would be inappropriate.  Now I'm

24   supposed to preempt the circuit court, where there can be

25   Circuit Court 1 ruling, Western District of Louisiana District

1    Judge 1 ruling, I, another ruling.

2         This case, this set of circumstances, smacks of the

3    basis for the exception:  The possibility of inconsistent

4    rulings.

5         MS. RHEE:  Your Honor, for --

6         THE COURT:  With all due respect, we disagree.

7         I understand.

8         MS. RHEE:  As personal counsel to Ms. Psaki, we have

9    never appeared in the Western District of Louisiana --

10        THE COURT:  And Ms. Psaki doesn't have to either.  If

11   they require her to do that, you have a stronger argument for

12   quashing the deposition.  On another basis, though, it would

13   require her to go out of the geographical limit set forth in the

14   rule.

15        MS. RHEE:  This is the reason why, by operation of

16   Rule 45, we appeared here, in the jurisdiction of her residence,

17   to file the motion to quash.

18        THE COURT:  Oh, I know why you're here.  I'm just

19   saying it would be -- this motion would be more appropriate in

20   the Western District of Louisiana.

21        MS. RHEE:  You'll also note, Your Honor, that the --

22        THE COURT:  But I haven't decided the issue yet because

23   I haven't heard from the other parties.

24        MS. RHEE:  And the only other thing that I would note,

25   Your Honor, that with respect to the current officials, there is

1    a DOJ filing with respect to amending this petition for which

2    Ms. Psaki is not a party.

3            THE COURT:  But we do not -- we can't believe, based on

4    the subject matter of that writ, that the ruling in that regard

5    would not have an impact on any ruling concerning a motion to

6    quash the deposition of Ms. Psaki.

7            MS. RHEE:  I am just noting that she is differently

8    situated.

9            THE COURT:  Yes.  They are better situated to quash a

10   deposition than is Ms. Psaki.

11           Anything further?

12           MS. RHEE:  No, Your Honor.

13           THE COURT:  Counsel?

14           MR. WEITZNER:  Your Honor, briefly, before

15   Mr. Masterman addresses any of the Court's concerns from our

16   side, Mr. Masterman and Mr. Sauer both have pending *pro hac vice*

17   motions before the Court, which have not been granted.  Before

18   they begin presentation, we would request that those motions be

19   granted for admission *pro hac vice* for Mr. Masterman and

20   Mr. Sauer.

21           THE COURT:  We'll preliminarily grant them on an oral

22   basis.  Oh, they have been?  Okay.

23           MR. WEITZMAN:  Okay.  Thank you, Your Honor.

24           MR. SUR:  May I ask the Court, since I'll be

25   representing the government, would you -- would you prefer that

1       the government speak next?

2                THE COURT:  I mean, yes.  They're the same motion,

3       essentially, so we might as well -- they're just filed by two

4       different parties.  We might as well hear them both so the other

5       party or the movant can -- or the nonmovant can deal with both

6       issues for both parties at once.

7                MR. SUR:  And may I ask if I can reserve some time for

8       rebuttal?

9                THE COURT:  Well, it's your motion, is it not?

10               MR. SUR:  Yes.

11               THE COURT:  Then you always have the last say.

12               MR. SUR:  Oh, thank you.  Um --

13               THE COURT:  But let's try to deal with all the issues

14      in your first round.

15               MR. SUR:  Yes, Your Honor.

16               So, if I may, the Rule 45 analysis, the Fourth Circuit

17      in the *Jordan* case from 2019 underscored that it warrants a

18      special solicitude for the nonparty.  The Rule 45 analysis was

19      not one that was ever before the issuing court in this

20      situation.  I use the term "issuing court" for the Western

21      District of Louisiana --

22               THE COURT:  But the Rule 45 analysis based on the bases

23      under Rule 45 that this was brought is undue burden.  I have

24      just noted that that court appears to have dealt with the burden

25      on Ms. Psaki on more than one occasion.

```
 1              MR. SUR:  Your Honor, I think that the phrase "undue

 2      burden," absent a demonstration or any contemplation of

 3      submissions in that court by the nonparty, it isn't a -- it

 4      isn't a pronouncement for purposes of Rule 45.  The only

 5      question --

 6              THE COURT:  Why does it have to be a pronouncement?

 7              MR. SUR:  Well, in --

 8              THE COURT:  We deal with an issue or we don't.  That's

 9      like contract law.  You know, the title of the paragraph is not

10      relevant.  It's the substance.

11              Now, you can say this is a general release.  You can

12      use the words "general release."  But then, if in that paragraph

13      in which you define it it is not a general release, it's the

14      definition that's important for interpretation purposes, not the

15      words "general release."

16              So whether or not the district judge in the

17      Western District of Louisiana used the term "undue burden" or

18      not is not as relevant as if he dealt with the issue of how much

19      burden it would be.  And in this court's opinion, it appears he

20      has.

21              And if you didn't believe that he had, like I said to

22      the previous counsel, the more appropriate thing -- because

23      maybe he did consider it, and maybe he didn't write it in his

24      memo.  It seems the more appropriate motion would have been a

25      motion for clarification.
```

```
1                    MR. SUR:  If I may, briefly.

2                    So we understand the ruling on the deposition's order

3        to be simply a grant of leave to the plaintiffs to seek

4        depositions ahead of the ordinary course, which is, under 26(d)

5        and 26(f) --

6                    THE COURT:  Yes.  And he granted --

7                    MR. SUR:  -- before the conference.

8                    THE COURT:  He granted --

9                    MR. SUR:  So he granted --

10                   THE COURT:  -- the -- he granted the deposition of

11       Ms. Psaki.  What we're seeking is to overturn that ruling.

12                   MR. SUR:  Your Honor, he could not have adjudicated a

13       Rule 45 question when --

14                   THE COURT:  He doesn't have to.

15                   MR. SUR:  -- a nonparty wasn't before him.

16                   THE COURT:  He said a deposition of Ms. Psaki is

17       appropriate.

18                   MR. SUR:  That conclusion was made for --

19                   THE COURT:  And in making that determination, he dealt

20       with un -- he dealt with the burden on Ms. Psaki, which is what

21       we're dealing with here.  It appears, based on his statement

22       about extraordinary circumstances, he dealt with the issue of

23       exceptional circumstances that we typically may have to deal

24       with under Rule 45.

25                   So whether he said, "I, dealing with Rule 45" - because
```

1    obviously he couldn't, because nothing would be in front of him

2    under Rule 45, because Rule 45 is specific to the place of

3    compliance - doesn't mean he didn't recognize that fact.   In

4    fact, he probably recognized it so much, because the statements

5    and representations about his ruling suggested to him that they

6    would probably be appealed.   So he felt it necessary to make

7    statements concerning issues that he knew probably would be

8    dealt with at the Rule 45.

9         But this is the particular reason there's a section for

10   "Purposes of Transcript."

11        MR. SUR:  If I --

12        THE COURT:  Because now -- because he didn't have the

13   authority to deal specifically with that rule because it wasn't

14   the place of compliance, he had to skirt around the issues and

15   deal with the underlying substance, now we can send it right

16   back to him.  He can say:  Well, now, under Rule 45, I find no

17   undue burden and exceptional circumstances.   Counsel satisfied

18   now?

19        I would anticipate that may be what you'll hear.   You

20   don't want to hear that.   That's why you're here.

21        MR. SUR:  Respectfully --

22        THE COURT:  But -- "respectfully," we like to use that

23   word.  I haven't made any rules, but let's just say, you may not

24   want me to rule on this motion.

25        MR. SUR:  Your Honor, if I may.

```
1              The -- again, briefly.  Since -- we've addressed this
2     since then, but on the doctrine of exceptional circumstances,
3     it's necessary to satisfy a discovery -- a burden of this kind
4     on a current or formal official, we don't understand the
5     Fourth Circuit's cases in this area to be substantially
6     different from the other circuits.
7              And under that test, for example, in In Re: McCarthy,
8     which is a 2015, albeit unpublished, Fourth Circuit decision,
9     quashing a deposition for the --
10             THE COURT:  Well, let's be clear about that.
11             MR. SUR:  Yeah.
12             THE COURT:  Because the Fourth Circuit is clear,
13    unpublished decisions cannot be used as precedent.
14             MR. SUR:  Your Honor, I believe that the reason that
15    the Fourth Circuit didn't publish is because --
16             THE COURT:  Oh, I'm not trying to get into the thoughts
17    of the -- this is why we're here.
18             MR. SUR:  Right.
19             THE COURT:  They're trying to get into the thought
20    processes of Ms. Psaki.  Now, you want me to get into the
21    thought process of the Fourth Circuit?  Let's move on.
22             MR. SUR:  Sure.
23             The doctrine as it exists - and the circuits seem to
24    agree - requires not only unique personal knowledge that can't
25    be just inferred from public statements, because if you relied
```

1    only on public statements, because public officials of all kinds

2    make public statements, that would subject them to, to use the

3    phrase from the District of Maryland in the *Walmart* case from

4    2002, a mailbag full of deposition --

5         THE COURT:  Yes.

6         MR. SUR:  -- notices whenever --

7         THE COURT:  And maybe their argument is some scintilla

8    of support for our belief about what she meant is in the other

9    15,000 pages of documents you-all gave us in discovery.  Have

10   you had that discussion with them before this motion came --

11        MR. SUR:  Well --

12        THE COURT:  -- that was required, obviously, pursuant

13   to the good faith meet and confer, to determine whether or not

14   the parties could work it out?

15        MR. SUR:  That's right.  So the -- so --

16        THE COURT:  No, no, no.  That was a question.

17        MR. SUR:  There have been extensive --

18        THE COURT:  Did you have that discussion with them --

19        MR. SUR:  There have been extensive discussions between

20   the parties.

21        THE COURT:  Concerning that particular subject matter?

22        MR. SUR:  Well, I think that -- if I may turn to the

23   alternatives, the first ground is the unique personal knowledge

24   of the current or former officer.  But even holding that to one

25   side, the second important element of the doctrine is, are there

1    alternative sources for the information that have not yet been

2    exhausted.  And so long as there are alternative sources for,

3    you know --

4            THE COURT:  And --

5            MR. SUR:  -- the information --

6            THE COURT:  -- I've had --

7            MR. SUR:  -- then --

8            THE COURT:  -- this discussion with the previous

9    counsel.  What alternative sources would there be, other than

10   Ms. Psaki, about what Ms. Psaki meant about statements she made?

11           MR. SUR:  Well, if I may.

12           The statement itself is one that --

13           THE COURT:  Well, there are plenty of statements.

14   Let's be clear about that.  There's not one statement.  If there

15   was one statement, there would be no case pending in the

16   Eastern District of Virginia -- I mean, in the Western District

17   of Louisiana, in all likelihood.

18           MR. SUR:  Well, we don't know that yet because there

19   haven't been any merits decisions of any kind.

20           So -- but the statements themselves are press

21   conferences.  And when the transcripts are reviewed in their

22   entirety, there's much more to it than the excerpts.

23           But even holding that to one side, the premise of the

24   statements is a discussion about, in particular in the 2015

25   statement, the Surgeon General's efforts against COVID-19

1     misinformation --

2          THE COURT:  See, this is the whole problem with having

3     this in the Eastern District of Virginia.  You want me to delve

4     into the minutiae of the facts of the case that is pending in

5     the Western District of Louisiana to decide a simple issue of

6     whether or not Ms. Psaki should be deposed in this district.

7          MR. SUR:  Your Honor, if I may.

8          To decide whether there's an alternative source for the

9     information, you needn't delve into the merits.  There's a case

10    in the DDC that both parties cite from 2015, *Galan-Alvarez*.  It

11    was an FDIC against Galan-Alvarez case.

12         THE COURT:  How do I know there's an alternative source

13    without knowing what those sources are?  What type of discovery

14    was sought in this case?  What type of discovery was provided in

15    this case?  What can be interpreted from the discovery provided

16    in this case?  All of that would have to be looked at under a

17    microscope, almost, to determine whether or not there's

18    information that answers those questions somewhere other than

19    the voice of Ms. Psaki.

20         MR. SUR:  If I may.

21         There were alternative witnesses who were offered, and

22    there's no explanation from --

23         THE COURT:  So you say.  Well, then, maybe your motion

24    is completely premature.  Maybe the parties should have met and

25    conferred in good faith pursuant to this local rule, sought

1    those depositions, completed those depositions, reviewed the

2    15,000 documents, reviewed the interrogatory responses, and

3    determined whether or not they had acquired the information that

4    they sought from Ms. Psaki from another source, before saying,

5    well -- objecting and opposing.  That's what a good faith meet

6    and confer should have done.

7              MR. SUR:  Your Honor, for --

8              THE COURT:  Then maybe we would not be here.

9              MR. SUR:  I think additional discussions are certainly

10   possible.  But the position of the plaintiffs has been that they

11   would not accept the alternative witnesses that the government

12   offered on the subject of the social media --

13             THE COURT:  And so --

14             MR. SUR:  -- platform --

15             THE COURT:  -- now this court has to delve into

16   complex -- just as I say it, a determination on whether or not

17   their nonacceptance of alternatives was appropriate because they

18   have -- they literally can get the information they seek from

19   Ms. Psaki from other sources.  Which could require this court to

20   look at the 15,000 pages of documents provided to them, and the

21   transcripts of the depositions already taken, order them to take

22   the other depositions, then view those deposition transcripts to

23   see -- and then provide them another opportunity to supplement

24   their briefing.

25             Then say, well, through all of that, did you get what

1   you -- what from Ms. Psaki do you want that you didn't get from

2   all of that?  This court would be required to participate in

3   that process, and then still could rule completely

4   inconsistently with the Western District of Louisiana.

5          MR. SUR:  Your Honor, if I may.

6          I -- all that's required is to see that the plaintiffs

7   have not --

8          THE COURT:  You are not in a position to tell the Court

9   what the Court is required to view to make an appropriate ruling

10  under the law on a motion before it.

11         MR. SUR:  Having addressed the alternatives, if I may?

12         Turning to the transfer point, 45(f), the

13  statute -- right?  It's a statute.  Congress' language is

14  "exceptional circumstances."  So they don't envision transfer

15  as being something that is anything other than rare.  And this

16  is not such a case.

17         THE COURT:  And exceptional circumstances includes the

18  possibility of inconsistent rulings.  Not only that, that

19  possibility exists in this case more than in many others because

20  there has already been a ruling:  Ms. Psaki shall be deposed.

21  What you are asking this court is to say:  She shall not be.

22         I can see no larger inconsistency that would exist

23  between two rulings.

24         MR. SUR:  Your Honor, the district judge in the

25  Western District of Louisiana did not have the nonparty before

1    that point.

2             THE COURT:  Doesn't need to.  He had experienced,

3    competent counsel to argue the position, which experienced,

4    competent counsel did.  And he ruled extraordinary

5    circumstances; he ruled lack of burden; he ruled her

6    information, based on his review of things, was significantly

7    relevant enough to overcome any burden that would exist for her,

8    for purposes of parties acquiring the information that the law

9    authorizes them to have to prove the elements of the claimed

10   offenses before him.

11            MR. SUR:  If I may.

12            45(f) transfer requires more than just a -- just a

13   conclusion that there's a possibility of inconsistent

14   rulings --

15            THE COURT:  There is no --

16            MR. SUR:  There is --

17            THE COURT:  -- conclusion of possibilities.  He

18   had -- you're right, there's one of two things this court can

19   do:  Say Ms. Psaki shall not be deposed.  Which is not just a

20   possibility; that's a complete inconsistent ruling than his.

21            Or say:  She shall be deposed.  Which, of course, is

22   not what you're looking for.

23            MR. SUR:  The reason --

24            THE COURT:  So, either way, you lose.  I either produce

25   an order that is inconsistent with his, or I rule consistently

 1    with him.  What do you want?

 2            MR. SUR:  We don't believe there's an inconsistency,

 3    because the order was --

 4            THE COURT:  And this court will conclude --

 5            MR. SUR:  -- granted --

 6            THE COURT:  -- you would be wrong.

 7            MR. SUR:  Okay.  But --

 8            THE COURT:  And needs no further argument in that

 9    regard.

10            MR. SUR:  But may I briefly address the other 45(f)

11    considerations?

12            THE COURT:  You may.

13            MR. SUR:  Okay.

14            So 45(f), we're all relying on the advisory committee

15    notes, and the committee notes had a strong presumption in favor

16    of the local resolution unless the other considerations

17    overwhelm that.  And there really is not any reason to conclude

18    that here.

19            I mean, they've pointed to you cases that involve

20    indicia of complexity far more than is the situation here.  This

21    case has only been going on for seven months.  Even they call it

22    nascent.  The underlying case is not a class action --

23            THE COURT:  This case is an underlying case in the

24    Western District of Louisiana --

25            MR. SUR:  That much is true --

1          THE COURT:  -- that involves the State of Missouri,

2     with a motion in the Eastern District of Virginia.  How much

3     more complex do you want it to be?

4          MR. SUR:  Well, complexity includes things like class

5     action status, how many years the case has been going on --

6          THE COURT:  There are a lot of cases that are a lot

7     more complex than class action.

8          The number of parties does not make a case complex.

9     It's the issues that are involved.  This, it's my understanding,

10    involves the First Amendment of the United States Constitution,

11    and an interpretation on whether or not it has been violated

12    through censorship by memb -- high-ranking members of the

13    United States Government.

14         MR. SUR:  So --

15         THE COURT:  How much more complex do we want to get?

16         MR. SUR:  But we -- because those are sources of

17    federal law, all the courts across the nation, the federal

18    courts, are equally competent to address the First Amendment.

19    Certainly --

20         THE COURT:  You're right.

21         MR. SUR:  -- this court is familiar with the

22    First Amendment --

23         THE COURT:  Equally.  Like the Western District of

24    Louisiana, since the actual case is pending there.

25         So if we have to delve through much of the issues that

1    he is going to have to deal with anyway here, that makes the job

2    much more complex here.  And it would be dual work.

3           Now, judicial efficiency is not top on the list for

4    purposes of transfer, but it is a consideration.  This case is

5    a -- this district and court's authority and requirement to case

6    manage is also a consideration.

7           This court's opinion up to this point in time falls

8    heavy in favor of transfer, because it appears that all of that

9    falls in favor of this issue, which appears, actually, to have

10   been decided.  Because if it hadn't been decided, and issues --

11   collateral issues related to it, there would not be a basis for

12   an appeal to the Fifth Circuit.

13          MR. SUR:  If I may.

14          The mandamus petition to the Fifth Circuit involves

15   different officers that are -- all of whom are the

16   current officials.

17          THE COURT:  And we're using what arguments?

18          MR. SUR:  This is just to --

19          THE COURT:  No, what arguments are we using in that

20   regard?  Are we discussing Apex?

21          MR. SUR:  Yes, only as a discussion.  But it's as to

22   those --

23          THE COURT:  And so --

24          MR. SUR:  -- officers.

25          THE COURT:  -- they are current officials.

1              MR. SUR:  It's --

2              THE COURT:  So if the Fifth Circuit says, under the

3    circumstances we don't find that the Apex Doctrine should apply

4    with current officials, you don't think that would impact a

5    judge's ruling on whether it should impact a former member of

6    the White House who's being requested to be deposed?  You don't

7    think that decision would have some impact?

8              MR. SUR:  The potential for rulings --

9              THE COURT:  Wrought with issues --

10             MR. SUR:  -- to go in different directions always

11   exists, and if that were sufficient for a 45 transfer --

12             THE COURT:  This is more than just --

13             MR. SUR:  -- then it wouldn't be exceptional

14   circumstances --

15             THE COURT:  -- exists.  This is a reasonable inference,

16   based on the facts as they stand today, and reasonable

17   inferences are a lot more than speculation and assumption.

18             This is why we as judges instruct jury members that

19   your decisions are to be made based upon the facts and all

20   reasonable inferences therefrom.

21             MR. SUR:  I understand Your Honor's concern on that

22   point.  But if it were true that the -- so in -- courts have

23   observed that the bare familiarity of the issuing district is

24   always --

25             THE COURT:  I have spent --

1          MR. SUR:  -- going to be greater --

2          THE COURT:  -- a whole lot here today, in the last hour

3     or so, discussing a lot more than the Western District of

4     Louisiana's familiarity with this case.

5          MR. SUR:  Okay.  I understand.

6          Briefly, if I may, just to wrap up.  The Apex Doctrine

7     does require some contemplation of future proceedings.  It's the

8     cumulative burden.  It may be that in -- in one particular case

9     it may seem as though there's sufficient reason to go forward

10    on, you know, one application.  But if you only consider the

11    application that the instant --

12         THE COURT:  Was this argument not made --

13         MR. SUR:  -- requirements are met --

14         THE COURT:  -- before the Western District of

15    Louisiana, and his making a determination on whether she was

16    supposed to be deposed in the first place?

17         MR. SUR:  Well, having no Rule 45 --

18         THE COURT:  No, no, no, that --

19         MR. SUR:  -- subpoena before him, he wasn't --

20         THE COURT:  -- wasn't the question.  The question was,

21    was this argument made in front of the district judge in the

22    Western District of Louisiana as a basis to determine -- or as a

23    basis to get him to conclude that a deposition of Ms. Psaki

24    would be inappropriate in the first instance?

25         MR. SUR:  Yes, the government did raise --

```
 1                THE COURT:  So what we're --

 2                MR. SUR:  -- the Apex Doctrine.

 3                THE COURT:  And he obviously decided that the

 4   Apex Doctrine was not applicable to this set of circumstances,

 5   or should be outweighed by the particulars of this set of

 6   circumstances.

 7                So what you're requesting me to do is make an

 8   inconsistent ruling with his Apex ruling in the Western District

 9   of Louisiana.

10                MR. SUR:  Well, because no Rule 45 question was then

11   pending before --

12                THE COURT:  We're not talking about --

13                MR. SUR:  -- him, the rulings would have been --

14                THE COURT:  -- Rule 45.  We're talking about Apex.

15                MR. SUR:  -- inconsistent.

16                Your Honor, we can only --

17                THE COURT:  The only reason we're talking about Apex is

18   because the Apex Doctrine has some influence on whether or not

19   you have fulfilled your obligation to prove to this court that a

20   deposition of Ms. Psaki in this district will be unduly

21   burdensome.

22                MR. SUR:  So we can only understand the

23   District Court's opinion from what he wrote, and he didn't

24   address a major aspect --

25                THE COURT:  You could have --
```

1          MR. SUR:  -- of -- the major aspect --

2          THE COURT:  -- requested clarification.

3          MR. SUR:  Well, I -- not in a situation, Your Honor,

4    where the --

5          THE COURT:  Maybe you still should do so.

6          MR. SUR:  Okay.  I believe I've made the points that I

7    expected to make from the government's position.  If the Court

8    has any questions from the government's position, I'm happy to

9    address them.

10         THE COURT:  No questions.

11         MR. SUR:  Okay.

12         MR. MASTERMAN:  Your Honor, we agree that transfer is

13   appropriate here, for the reasons in our papers and as you've

14   been discussing.  If you have any other questions, I'm happy to

15   answer them.

16         THE COURT:  No further questions.

17         MR. MASTERMAN:  Thank you, Your Honor.

18         THE COURT:  It appears that, based upon all the

19   discussion, this court has concluded that it's more appropriate

20   for these motions to quash be transferred to the

21   Western District of Louisiana.

22         MR. SUR:  Your Honor, may I briefly?

23         I would ask the Court to consider the government's

24   application for a stay of --

25         THE COURT:  Of what?  Of transferring this motion to

1    the Western District of Louisiana?  Why would I need to do that?

2            If you don't want it decided in the Western District of

3    Louisiana, you can -- look, I know, just based on experience,

4    that the Western District of Louisiana moves a lot slower than

5    the Eastern District of Virginia.  So whatever time you may need

6    to do whatever you think you need to do you may have before this

7    motion even reaches it.

8            MR. SUR:  Your Honor, if I may.

9            If the Court's conclusion today is that it is going to

10   deny the motions --

11           THE COURT:  I'm not -- denial of the motion would be

12   ruling on it.  I just said I'm transferring the motions to the

13   Western District of Louisiana.

14           MR. SUR:  And if I may?

15           If I may ask that the Court stay the transfer pending

16   the full consideration by the District Court of the -- this

17   court's -- this court's ruling on that question.  A stay would

18   be appropriate because if the deposition goes forward on the

19   schedule that it's set for, that can't be undone.  It's like you

20   can't unring a bell.  And the -- so the harm --

21           THE COURT:  But no deposition can be taken until the

22   motion is ruled upon.  Correct?

23           MR. SUR:  That's true.  But we don't -- we -- I mean, I

24   didn't think we --

25           THE COURT:  So -- and I'm not ruling on it, so my

1    ruling to transfer it has no impact on that schedule.  The only

2    decision that would have an impact on that schedule would be a

3    decision by the judge in the Western District of Louisiana.  So

4    any request to stay or not hear would be more appropriately put

5    forth in front of that judge.

6            MR. SUR:  The purpose of the request for the stay would

7    be to allow for --

8            THE COURT:  There's no basis --

9            MR. SUR:  -- the district judge --

10           THE COURT:  -- for a stay of a ruling to transfer.

11           MR. SUR:  If the -- but if the -- if the District Court

12   is not allowed sufficient time to determine whether --

13           THE COURT:  Then their -- if you want --

14           MR. SUR:  -- the transfer is appropriate --

15           THE COURT:  -- this -- my ruling to be heard more

16   quickly in front of a district judge, the rules give you a

17   process by which to deal with that.

18           MR. SUR:  So do I understand the Court will not

19   entertain, then, a motion for a stay of the decision --

20           THE COURT:  This court finds no legitimate basis to

21   stay based upon the facts of this case.  That's kind of like a

22   preliminary injunction.  You show me that there is no possible

23   harm that can occur from me transferring this case, simply

24   transferring this motion to the Western District of Louisiana.

25   The only harm can come from that court ruling upon the motion.

1    You can make any request of that court not to do so --

2         MR. SUR:  The District -- Your Honor --

3         THE COURT:  -- pending anything you would like to do

4    here.

5         I'm sure the Western District of Louisiana would

6    probably prefer not to deal with it, maybe, and -- but put off

7    ruling on this motion as long as you'd like them to.

8         But this court has a different case management style

9    than the Western District of Louisiana.  And you, not having

10   provided this court a legally sufficient basis to stay an order

11   of this court that it deems has no impact on this motion is

12   denied.

13        MR. SUR:  Your Honor, the only goal was to maintain the

14   status quo pending further review by the District Court in this

15   district, so -- and that is -- that is, in our view, a valid

16   basis for a stay.

17        THE COURT:  You can -- if the Louisiana court takes

18   anything, you can make a request of them to accomplish the same

19   goal.  But why should I make a ruling based on speculation that

20   they might do something prior to some action that might be taken

21   by the district judge in this district?  That is a legally

22   insufficient basis for a stay.

23        MR. SUR:  Okay.  The only purpose of the stay would be

24   for the district court here in this district --

25        THE COURT:  I --

```
1            MR. SUR:  -- to --

2            THE COURT:  -- understood the request.

3            MR. SUR:  Okay.  I just wanted to -- I wanted to

4   clarify that.

5            Thank you, Your Honor.

6            THE COURT:  Anything further in this matter?

7            MR. MASTERMAN:  Not from us, Your Honor.

8            MS. RHEE:  No, Your Honor.

9            THE COURT:  All right.  Let's recall the previous case.

10           (Off the record at 11:33 a.m.)

11

12

13

14

15            CERTIFICATE OF OFFICIAL COURT REPORTER

16

17            I, Rebecca Stonestreet, certify that the foregoing is a

18   correct transcript from the recording of FTR proceedings in the

19   above-entitled matter.

20

21

22   ____//Rebecca Stonestreet_____          __11/23/22___

23   SIGNATURE OF COURT REPORTER                DATE

24

25
```

## /

**//Rebecca** [1] - 52:22

## 1

**1** [3] - 2:13, 28:25, 29:1
**10019** [1] - 1:16
**11/23/22** [1] - 52:22
**11:20** [1] - 1:6
**11:33** [1] - 52:10
**1225** [1] - 2:6
**1285** [1] - 1:16
**15,000** [3] - 36:9, 39:2, 39:20
**1523** [1] - 2:2
**18** [1] - 1:5
**19th** [1] - 2:6
**1:22-mc-00028-PTG-IDD** [1] - 1:4
**1:22-MC-28** [1] - 3:3

## 2

**20** [1] - 5:24
**20006** [1] - 1:13
**2001** [1] - 1:12
**2002** [1] - 36:4
**20036** [2] - 2:3, 2:7
**2015** [3] - 35:8, 37:24, 38:10
**2019** [1] - 31:17
**202-223-7300** [1] - 1:13
**202-330-9600** [1] - 2:3
**202-918-6905** [1] - 2:7
**2022** [1] - 1:5
**2100** [1] - 1:23
**212-373-3000** [1] - 1:17
**22314** [1] - 1:23
**23219** [1] - 1:12
**26(d** [1] - 33:4
**26(f** [1] - 33:5

## 3

**30** [3] - 5:22, 5:23, 6:4
**30-page** [1] - 6:5
**31** [1] - 6:2
**33** [1] - 6:2

## 4

**411** [1] - 1:19
**45** [22] - 6:21, 6:22, 7:6, 19:22, 27:20, 29:16, 31:16, 31:18, 31:22, 31:23, 32:4,

33:13, 33:24, 33:25, 34:2, 34:8, 34:16, 45:11, 46:17, 47:10, 47:14
**45(c)** [1] - 20:6
**45(d)(3)(A)(iv** [1] - 19:25
**45(f** [4] - 40:12, 41:12, 42:10, 42:14
**450** [1] - 2:6

## 5

**573-751-8870** [1] - 2:11

## 6

**600** [1] - 1:19
**65102** [1] - 2:10

## 7

**703-299-3700** [1] - 1:24

## 8

**804-697-2177** [1] - 1:20
**899** [1] - 2:10

## A

**a.m** [2] - 1:6, 52:10
**AARON** [1] - 2:6
**ability** [2] - 17:12, 23:4
**able** [2] - 12:25, 13:2
**above-entitled** [1] - 52:19
**absent** [1] - 32:2
**absolute** [2] - 18:4, 20:21
**absolutely** [2] - 26:11, 26:24
**accept** [1] - 39:11
**accepted** [1] - 9:8
**accomplish** [1] - 51:18
**according** [2] - 18:11, 19:17
**account** [2] - 7:6, 23:12
**acquire** [2] - 13:22, 23:16
**acquired** [3] - 13:22, 23:18, 39:3
**acquiring** [1] - 41:8
**act** [1] - 17:8
**action** [7] - 3:14, 19:4,

19:6, 42:22, 43:5, 43:7, 51:20
**actual** [2] - 5:5, 43:24
**add** [1] - 6:12
**additional** [2] - 6:8, 39:9
**address** [7] - 26:21, 26:22, 28:1, 42:10, 43:18, 47:24, 48:9
**addressed** [3] - 27:25, 35:1, 40:11
**addresses** [1] - 30:15
**addressing** [1] - 26:23
**adjudicated** [1] - 33:12
**Administration** [3] - 14:16, 25:11, 26:8
**administrations** [1] - 26:10
**administrative** [1] - 6:11
**admissible** [5] - 16:24, 16:25, 17:20, 19:9, 19:10
**admission** [2] - 17:25, 30:19
**advisory** [1] - 42:14
**affidavit** [1] - 8:20
**affidavits** [2] - 7:14, 8:21
**AG** [1] - 14:2
**agents** [1] - 17:13
**agree** [2] - 35:24, 48:12
**agreement** [1] - 17:7
**ahead** [1] - 33:4
**akin** [1] - 13:25
**al** [1] - 1:6
**albeit** [1] - 35:8
**Alexandria** [4] - 1:2, 1:23, 5:18, 8:25
**allegation** [1] - 20:4
**allegations** [2] - 7:16, 20:3
**ALLIANCE** [1] - 2:5
**allow** [2] - 20:3, 21:12, 50:7
**allowed** [1] - 50:12
**almost** [1] - 38:17
**alternative** [7] - 37:1, 37:2, 37:9, 38:8, 38:12, 38:21, 39:11
**alternatives** [3] - 36:23, 39:17, 40:11
**Alvarez** [2] - 38:10, 38:11
**amazed** [1] - 10:6
**amending** [1] - 30:1
**Amendment** [3] - 43:10, 43:18, 43:22

**AMERICA** [1] - 1:22
**American** [1] - 9:13
**Americas** [1] - 1:16
**analysis** [3] - 31:16, 31:18, 31:22
**and...well** [1] - 28:5
**answer** [2] - 6:17, 48:15
**answers** [2] - 22:21, 38:18
**anticipate** [1] - 34:19
**anyway** [2] - 8:6, 44:1
**apart** [1] - 22:2
**Apex** [22] - 7:4, 9:2, 9:4, 9:6, 9:8, 9:9, 10:3, 11:9, 11:11, 12:15, 12:18, 14:21, 20:24, 44:20, 45:3, 46:6, 47:2, 47:4, 47:8, 47:14, 47:17, 47:18
**apologies** [1] - 13:8
**appeal** [2] - 28:18, 44:12
**appealed** [1] - 34:6
**appear** [5] - 4:19, 20:11, 22:24, 24:3, 25:23
**appearances** [1] - 3:4
**APPEARANCES** [2] - 1:10, 1:25
**appeared** [2] - 29:9, 29:16
**appearing** [1] - 3:13
**applicable** [2] - 10:22, 47:4
**application** [3] - 46:10, 46:11, 48:24
**applies** [1] - 20:9
**apply** [5] - 9:10, 14:7, 14:8, 20:13, 45:3
**appropriate** [13] - 16:9, 27:5, 27:8, 29:19, 32:22, 32:24, 33:17, 39:17, 40:9, 48:13, 48:19, 49:18, 50:14
**appropriately** [1] - 50:4
**area** [1] - 35:5
**argue** [1] - 41:3
**argued** [1] - 16:6
**arguing** [1] - 3:20
**argument** [16] - 3:16, 4:9, 13:12, 13:18, 13:24, 13:25, 14:8, 18:5, 20:11, 26:20, 28:8, 29:11, 36:7, 42:8, 46:12, 46:21
**arguments** [2] - 44:17,

44:19
**aspect** [2] - 47:24, 48:1
**aspects** [2] - 6:10, 6:11
**assist** [1] - 4:2
**assumption** [1] - 45:17
**attempt** [1] - 26:19
**attempting** [1] - 28:4
**attention** [1] - 3:24
**ATTORNEY** [1] - 2:9
**Attorney** [2] - 4:8, 28:6
**ATTORNEY'S** [1] - 1:22
**attorneys** [5] - 7:18, 21:4, 21:12, 21:13, 22:2
**authority** [2] - 34:13, 44:5
**authorize** [1] - 16:23
**authorizes** [2] - 19:14, 41:9
**Avenue** [3] - 1:16, 1:23, 2:2
**aware** [1] - 6:4

## B

**BAGNELL** [2] - 1:18, 3:6
**Bagnell** [1] - 3:7
**bare** [1] - 45:23
**based** [15] - 8:9, 8:16, 9:13, 9:24, 22:24, 30:3, 31:22, 33:21, 41:6, 45:16, 45:19, 48:18, 49:3, 50:21, 51:19
**bases** [4] - 17:3, 19:8, 25:8, 31:22
**basis** [12] - 18:6, 29:3, 29:12, 30:22, 44:11, 46:22, 46:23, 50:8, 50:20, 51:10, 51:16, 51:22
**BEFORE** [1] - 1:8
**begin** [1] - 30:18
**behalf** [8] - 3:13, 3:19, 3:20, 4:8, 4:10, 6:16, 6:20, 6:21
**behind** [2] - 14:24, 19:14
**belief** [1] - 36:8
**belies** [1] - 24:16
**bell** [1] - 49:20
**better** [5] - 20:10, 20:12, 22:23, 26:15, 30:9

between [3] - 17:8, 36:19, 40:23
beyond [1] - 20:5
Bhattacharya [1] - 4:14
BHATTACHARYA [1] - 2:5
biggest [1] - 8:9
bite [1] - 16:9
board [1] - 27:24
bode [1] - 26:15
Box [1] - 2:10
brief [1] - 5:23
briefing [4] - 5:20, 16:1, 24:23, 39:24
briefings [1] - 5:22
briefly [7] - 6:19, 30:14, 33:1, 35:1, 42:10, 46:6, 48:22
briefs [1] - 16:16
bring [1] - 3:23
broad [1] - 17:24
brought [2] - 20:9, 31:23
burden [38] - 7:9, 7:14, 8:10, 8:16, 8:20, 9:9, 9:10, 9:11, 11:10, 11:17, 12:19, 13:17, 14:10, 14:11, 20:17, 20:22, 23:2, 23:9, 23:10, 25:25, 27:14, 27:15, 27:17, 28:3, 28:8, 28:14, 31:23, 31:24, 32:2, 32:17, 32:19, 33:20, 34:17, 35:3, 41:5, 41:7, 46:8
burdened [1] - 13:17
burdens [1] - 8:17
burdensome [9] - 13:14, 13:23, 20:25, 21:19, 23:1, 23:6, 23:7, 25:10, 47:21
business [1] - 8:4

**C**

calculated [4] - 16:24, 17:1, 17:20, 19:9
can't.. [1] - 16:15
cannot [2] - 21:5, 35:13
Case [1] - 1:3
case [42] - 3:3, 4:23, 5:16, 8:14, 12:1, 14:1, 14:5, 14:7, 14:9, 18:21, 18:24, 20:14, 20:15, 22:10, 23:19, 29:2, 31:17, 36:3, 37:15, 38:4,

43:7
clear [5] - 7:12, 9:5, 35:10, 35:12, 37:14
close [1] - 25:21
cocaine [1] - 17:14
coffee [4] - 15:23, 15:24, 25:22, 26:12
collateral [1] - 44:11
colleague [1] - 3:20
combined [6] - 5:12, 5:19, 6:3, 6:7, 6:8
comities [1] - 7:5
comity [1] - 21:11
committee [2] - 42:14, 42:15
communications [2] - 15:8, 15:16, 18:15
companies [6] - 15:9, 16:17, 16:20, 18:16, 25:12, 25:15
competent [3] - 41:3, 41:4, 43:18
complete [1] - 41:20
completed [1] - 39:1
completely [5] - 14:11, 28:16, 28:21, 38:24, 40:3
complex [6] - 39:16, 43:3, 43:7, 43:8, 43:15, 44:2
complexity [2] - 42:20, 43:4
compliance [4] - 7:23, 20:2, 34:3, 34:14
comply [2] - 20:4, 20:5
COMPUTERIZED [1] - 2:15
concern [2] - 28:3, 45:21
concerned [2] - 4:4, 26:17
concerning [4] - 7:13, 30:5, 34:7, 36:21
concerns [1] - 30:15
conclude [3] - 42:4, 42:17, 46:23
concluded [1] - 48:19
conclusion [4] - 33:18, 41:13, 41:17, 49:9
conduct [1] - 17:8
confer [2] - 36:13, 39:6
conference [1] - 33:7
conferences [1] - 37:21
conferred [1] - 38:25
confused [1] - 7:20
confusing [4] - 7:22, 7:25, 8:9, 8:13

Congress' [1] - 40:13
connotations [1] - 16:19
consider [7] - 27:4, 27:13, 27:19, 32:23, 46:10, 48:23
consideration [4] - 23:6, 44:4, 44:6, 49:16
considerations [5] - 7:5, 7:6, 21:11, 42:11, 42:16
considered [3] - 7:8, 26:25, 27:12
considering [1] - 26:23
consistently [1] - 41:25
conspiracy [4] - 17:6, 17:15, 17:18, 25:11
Constitution [1] - 43:10
contemplation [2] - 32:2, 46:7
contents [1] - 6:25
context [1] - 20:22
CONTINUED [1] - 1:25
contract [1] - 32:9
convince [1] - 10:17
convincing [1] - 10:10
COOPER [1] - 2:2
corps [1] - 10:25
correct [7] - 5:11, 7:10, 13:24, 15:11, 49:22, 52:18
counsel [11] - 3:4, 3:14, 22:12, 22:15, 29:8, 30:13, 32:22, 34:17, 37:9, 41:3, 41:4
course - 9:8, 10:12, 33:4, 41:21
Court [24] - 3:23, 4:3, 4:18, 4:19, 4:25, 5:5, 5:8, 13:7, 19:11, 27:17, 28:2, 28:9, 28:25, 30:17, 30:24, 40:8, 40:9, 48:7, 48:23, 49:15, 49:16, 50:11, 50:18, 51:14
court [36] - 3:2, 5:19, 6:6, 6:7, 6:18, 7:12, 14:6, 19:15, 20:1, 26:17, 28:14, 28:19, 28:20, 28:24, 31:19, 31:20, 31:24, 32:3, 39:15, 39:19, 40:2, 40:21, 41:18, 42:4, 43:21, 47:19, 48:19, 50:20, 50:25, 51:1,

51:8, 51:10, 51:11, 51:17, 51:24
COURT [183] - 1:1, 3:8, 3:17, 3:25, 4:2, 4:6, 4:12, 4:16, 4:18, 5:14, 6:15, 7:7, 7:11, 8:15, 9:4, 9:21, 10:6, 10:9, 10:12, 10:14, 10:16, 10:24, 11:7, 11:15, 11:17, 11:22, 11:24, 12:2, 12:7, 12:10, 12:14, 12:22, 12:24, 13:1, 13:3, 13:5, 13:7, 13:9, 13:16, 14:4, 15:10, 15:12, 15:17, 15:19, 16:6, 16:12, 18:3, 18:10, 18:14, 18:18, 18:20, 19:20, 20:24, 21:6, 21:8, 21:15, 21:17, 21:19, 21:21, 21:23, 22:3, 22:5, 22:7, 22:9, 22:16, 22:19, 22:21, 23:5, 23:15, 23:24, 24:2, 24:14, 24:18, 24:21, 25:4, 25:6, 25:14, 25:16, 26:3, 26:5, 26:9, 26:15, 29:6, 29:10, 29:18, 29:22, 30:3, 30:9, 30:13, 30:21, 31:2, 31:9, 31:11, 31:13, 31:22, 32:6, 32:8, 33:6, 33:8, 33:10, 33:14, 33:16, 33:19, 34:12, 34:22, 35:10, 35:12, 35:16, 35:19, 36:5, 36:7, 36:12, 36:16, 36:18, 36:21, 37:4, 37:6, 37:8, 37:13, 38:2, 38:12, 38:23, 39:8, 39:13, 39:15, 40:8, 40:17, 41:2, 41:15, 41:17, 41:24, 42:4, 42:6, 42:8, 42:12, 42:23, 43:1, 43:6, 43:15, 43:20, 43:23, 44:17, 44:19, 44:23, 44:25, 45:2, 45:9, 45:12, 45:15, 45:25, 46:2, 46:12, 46:14, 46:18, 46:20, 47:1, 47:3, 47:12, 47:14, 47:17, 47:25, 48:2, 48:5, 48:10, 48:16, 48:18, 48:25, 49:11, 49:21, 49:25, 50:8, 50:10, 50:13, 50:15, 50:20, 51:3, 51:17, 51:25, 52:2,

52:6, 52:9, 52:15, 52:23
court's [6] - 5:22, 32:19, 44:5, 44:7, 49:17
Court's [4] - 3:23, 30:15, 47:23, 49:9
courtroom [1] - 17:11
COURTROOM [1] - 3:2
courts [3] - 43:17, 43:18, 45:22
COVID-19 [2] - 27:25, 37:25
cumulative [1] - 46:8
current [12] - 9:11, 9:12, 9:25, 11:19, 12:15, 15:10, 29:25, 35:4, 36:24, 44:16, 44:25, 45:4

**D**

DATE [1] - 52:23
David [1] - 3:10
DAVID [1] - 1:14
DAVIS [1] - 1:8
days [4] - 7:17, 7:21, 8:8, 10:2
DC [3] - 1:13, 2:3, 2:7
DDC [1] - 38:10
DEA [1] - 17:13
deal [12] - 8:23, 19:20, 22:22, 31:5, 31:13, 32:8, 33:23, 34:13, 34:15, 44:1, 50:17, 51:6
dealers [1] - 17:11
dealing [3] - 28:13, 33:21, 33:25
deals [1] - 5:4
dealt [8] - 6:10, 20:12, 31:24, 32:18, 33:19, 33:20, 33:22, 34:8
DEAN [1] - 2:8
decide [2] - 38:5, 38:8
decided [5] - 29:22, 44:10, 47:3, 49:2
decision [9] - 27:8, 28:15, 28:18, 28:21, 35:8, 45:7, 50:2, 50:3, 50:19
decisions [3] - 35:13, 37:19, 45:19
deemed [1] - 17:5
deems [1] - 51:11
defendant's [1] - 28:9
defendants [3] - 3:13, 4:14, 22:11
defenses [2] - 19:5,

23:19
define [1] - 32:13
defined [1] - 19:10
defining [1] - 17:15
definition [1] - 32:14
delve [5] - 19:3, 38:3, 38:9, 39:15, 43:25
demonstrate [2] - 12:20
demonstrated [1] - 6:24
demonstration [1] - 32:2
denial [1] - 49:11
denied [1] - 51:12
deny [1] - 49:10
deponent [4] - 7:19, 19:5, 22:19, 22:23
depose [1] - 11:4
deposed [8] - 12:17, 13:17, 38:6, 40:20, 41:19, 41:21, 45:6, 46:16
deposition [28] - 7:1, 8:12, 9:18, 9:24, 11:2, 11:18, 12:6, 12:12, 13:14, 13:23, 18:17, 20:23, 21:1, 25:1, 25:7, 28:5, 29:12, 30:6, 30:10, 33:10, 33:16, 35:9, 36:4, 39:22, 46:23, 47:20, 49:18, 49:21
deposition's [1] - 33:2
depositions [8] - 14:24, 27:18, 28:11, 33:4, 39:1, 39:21, 39:22
DEPUTY [1] - 3:2
determination [7] - 7:8, 19:7, 27:17, 28:19, 33:19, 39:16, 46:15
determine [8] - 19:4, 24:10, 24:11, 27:15, 36:13, 38:17, 46:22, 50:12
determined [2] - 27:17, 39:3
determining [3] - 17:6, 19:8, 24:4
differ [2] - 12:22, 13:11
different [15] - 7:19, 14:9, 14:10, 14:11, 18:7, 22:12, 22:14, 22:23, 26:23, 31:4, 35:6, 44:15, 45:10, 51:8
differently [1] - 30:7

difficult [1] - 7:18
difficulty [1] - 24:4
digest [3] - 21:25, 22:17, 22:21
dinner [1] - 15:22
direct [10] - 14:15, 17:24, 18:1, 18:12, 18:14, 18:15, 24:5, 24:6, 24:17, 24:18
directions [1] - 45:10
disagree [3] - 10:11, 10:20, 29:6
disallow [1] - 18:6
disclosure [1] - 20:7
discovery [15] - 14:24, 15:4, 15:5, 16:22, 16:24, 17:20, 18:6, 19:9, 19:18, 23:20, 35:3, 36:9, 38:13, 38:14, 38:15
discussed [1] - 25:22
discussing [3] - 44:20, 46:3, 48:14
discussion [6] - 36:10, 36:18, 37:8, 37:24, 44:21, 48:19
discussions [3] - 15:24, 36:19, 39:9
dispute [1] - 15:7
disrupt [2] - 10:24, 11:19
disruption [4] - 9:23, 9:25, 10:21, 10:24
disruptive [1] - 9:19
DISTRICT [2] - 1:1, 1:1
District [52] - 4:23, 5:17, 5:18, 8:25, 19:1, 19:13, 19:15, 26:15, 26:20, 26:25, 27:3, 27:6, 27:10, 28:7, 28:9, 28:13, 28:23, 28:25, 29:9, 29:20, 31:21, 32:17, 36:3, 37:16, 38:3, 38:5, 40:4, 40:25, 42:24, 43:2, 43:23, 46:3, 46:14, 46:22, 47:8, 47:23, 48:21, 49:1, 49:2, 49:4, 49:5, 49:13, 49:16, 50:3, 50:11, 50:24, 51:2, 51:5, 51:9, 51:14
district [23] - 19:12, 20:2, 26:19, 26:24, 27:2, 27:6, 27:10, 28:12, 28:22, 32:16, 38:6, 40:24, 44:5, 45:23, 46:21, 47:20, 50:9, 50:16, 51:15,

51:21, 51:24
Division [3] - 1:2, 5:18, 8:25
doctrine [7] - 6:20, 9:10, 10:20, 14:21, 35:2, 35:23, 36:25
Doctrine [18] - 7:4, 9:2, 9:4, 9:6, 9:8, 9:9, 10:3, 11:9, 11:11, 12:15, 12:18, 14:21, 20:24, 45:3, 46:6, 47:2, 47:4, 47:18
documentation [1] - 7:15
documents [4] - 8:22, 36:9, 39:2, 39:20
DOJ [1] - 30:1
done [3] - 19:13, 28:18, 39:6
down [2] - 9:16, 17:7
drinking [1] - 15:24
drug [1] - 17:11
drugs [2] - 17:12, 17:13
dual [1] - 44:2
due [4] - 10:5, 10:8, 10:19, 29:6
during [2] - 8:4, 8:6

**E**

e-mail [1] - 15:21
e-mails [1] - 15:6
easier [1] - 23:8
EASTERN [1] - 1:1
Eastern [7] - 5:17, 5:18, 8:25, 37:16, 38:3, 43:2, 49:5
easy [1] - 23:8
Eddie [1] - 3:7
EDWARD [1] - 1:18
effect [4] - 11:21, 11:24, 11:25, 16:18
efficiency [1] - 44:3
efforts [2] - 27:23, 37:25
either [4] - 13:21, 29:10, 41:24
element [3] - 17:18, 18:18, 36:25
elements [3] - 18:24, 23:18, 41:9
elsewhere [2] - 23:19, 23:22
employed [1] - 8:5
employees [1] - 26:11
employment [1] - 22:24
end [1] - 26:19

end-around [1] - 26:19
entertain [1] - 50:19
entire [1] - 19:12
entirety [1] - 37:22
entitled [2] - 26:4, 52:19
envision [1] - 40:14
equally [3] - 10:21, 43:18, 43:23
especially [1] - 23:11
essentially [6] - 4:19, 5:3, 14:15, 14:20, 15:14, 31:3
et [1] - 1:6
EVERETT [1] - 1:18
evidence [11] - 8:20, 16:8, 16:25, 17:1, 17:21, 19:9, 19:10, 24:6, 24:9
exactly [2] - 16:4, 16:21
examination [1] - 21:3
example [2] - 9:15, 35:7
except [2] - 8:4, 9:25
exception [2] - 20:8, 29:3
exceptional [7] - 27:19, 33:23, 34:17, 35:2, 40:14, 40:17, 45:13
excerpts [1] - 37:22
executive [3] - 20:10, 20:12, 21:10
exhausted [1] - 37:2
exist [2] - 40:22, 41:7
existed [1] - 17:6
exists [4] - 35:23, 40:19, 45:11, 45:15
expand [1] - 15:12
expected [1] - 48:7
expedition [1] - 15:14
experience [4] - 9:9, 16:3, 16:7, 49:3
experienced [2] - 41:2, 41:3
explanation [1] - 38:22
extends [1] - 10:20
extensive [2] - 36:17, 36:19
extra [1] - 22:5
extraordinary [1] - 12:19, 27:21, 33:22, 41:4
extremely [1] - 9:19

## F

**fact** [10] - 6:24, 8:9, 13:19, 16:6, 16:19, 17:5, 18:5, 21:3, 34:3, 34:4
**factors** [1] - 19:21
**facts** [9] - 8:15, 8:16, 14:7, 14:8, 20:14, 38:4, 45:16, 45:19, 50:21
**fails** [1] - 20:3
**FAIN** [1] - 1:18
**faith** [3] - 36:13, 38:25, 39:5
**fall** [2] - 10:4, 11:5
**fallacy** [1] - 24:16
**falls** [2] - 44:7, 44:9
**familiar** [1] - 43:21
**familiarity** [2] - 45:23, 46:4
**family** [9] - 7:17, 7:21, 8:1, 8:2, 8:3, 8:4, 8:8, 10:1
**far** [1] - 42:20
**favor** [4] - 10:4, 42:15, 44:8, 44:9
**FBI** [1] - 17:13
**FDIC** [1] - 38:11
**federal** [2] - 43:17
**Federal** [1] - 28:9
**felt** [2] - 28:20, 34:6
**FEMA** [1] - 9:15
**Fifth** [4] - 14:1, 44:12, 44:14, 45:2
**file** [3] - 5:19, 6:7, 29:17
**filed** [4] - 4:24, 5:2, 5:12, 31:3
**filing** [1] - 30:1
**first** [13] - 5:7, 5:16, 7:20, 9:5, 17:19, 19:7, 19:19, 23:17, 24:6, 31:14, 36:23, 46:16, 46:24
**First** [3] - 43:10, 43:18, 43:22
**fishing** [1] - 15:14
**fits** [1] - 19:24
**five** [1] - 19:22
**followed** [1] - 10:9
**FOLLOWING** [1] - 1:25
**follows** [1] - 10:23
**FOR** [5] - 1:1, 1:11, 1:21, 2:1, 2:4
**foregoing** [1] - 52:17
**form** [2] - 11:19, 15:20
**formal** [1] - 35:4
**former** [10] - 7:3, 9:11,

9:21, 9:24, 11:8, 11:11, 12:16, 22:24, 36:24, 45:5
**formers** [2] - 10:21
**forth** [4] - 19:22, 27:7, 29:13, 50:5
**forward** [2] - 46:9, 49:18
**four** [1] - 14:2
**Fourth** [12] - 6:20, 7:13, 8:19, 8:24, 9:6, 9:7, 31:16, 35:5, 35:8, 35:12, 35:15, 35:21
**Franklin** [1] - 1:19
**free** [1] - 27:16
**Friday** [1] - 10:7
**friends** [1] - 15:23
**front** [6] - 7:12, 27:8, 34:1, 46:21, 50:5, 50:16
**FTR** [2] - 2:15, 52:18
**fulfilled** [1] - 47:19
**fulfilling** [1] - 9:12
**full** [2] - 36:4, 49:16
**future** [2] - 5:14, 46:7

## G

**Galan** [2] - 38:10, 38:11
**Galan-Alvarez** [2] - 38:10, 38:11
**GARRISON** [2] - 1:12, 1:15
**GENERAL** [1] - 2:9
**general** [7] - 7:15, 14:6, 14:20, 32:11, 32:12, 32:13, 32:15
**General's** [3] - 4:8, 28:6, 37:25
**generalities** [1] - 13:10
**generally** [3] - 8:5, 8:15, 19:22
**geographical** [2] - 20:5, 29:13
**Gilligan** [1] - 3:15
**given** [1] - 21:2
**glance** [1] - 17:19
**goal** [2] - 51:13, 51:19
**Government** [1] - 43:13
**government** [9] - 7:4, 12:16, 17:13, 21:12, 22:2, 30:25, 31:1, 39:11, 46:25
**government's** [5] - 6:1, 27:22, 48:7, 48:8, 48:23

**governmental** [1] - 9:23
**grant** [3] - 10:16, 30:21, 33:3
**granted** [9] - 19:19, 28:9, 30:17, 30:19, 33:6, 33:8, 33:9, 33:10, 42:5
**greater** [1] - 46:1
**ground** [1] - 36:23
**guess** [1] - 26:21

## H

**hac** [2] - 30:16, 30:19
**Hampshire** [1] - 2:2
**happy** [4] - 6:17, 48:8, 48:14
**harm** [3] - 49:20, 50:23, 50:25
**head** [2] - 9:15, 24:11
**hear** [5] - 10:7, 31:4, 34:19, 34:20, 50:4
**heard** [3] - 20:17, 29:23, 50:15
**HEARING** [1] - 1:8
**heavy** [1] - 44:8
**held** [2] - 9:24, 21:2
**help** [1] - 9:17
**high** [5] - 9:11, 12:16, 14:2, 14:9, 43:12
**high-ranking** [5] - 9:11, 12:16, 14:2, 14:9, 43:12
**highly** [1] - 14:12
**HINES** [1] - 2:5
**Hines** [1] - 4:15
**history** [1] - 15:3
**holding** [3] - 28:10, 36:24, 37:23
**holds** [1] - 12:1
**Honor** [61] - 3:6, 3:9, 3:10, 3:12, 3:18, 4:5, 4:7, 4:11, 5:12, 6:14, 6:19, 7:10, 8:14, 9:3, 9:20, 13:8, 13:15, 14:2, 14:12, 14:14, 15:3, 15:11, 16:5, 17:22, 18:9, 18:11, 19:17, 20:20, 22:15, 23:2, 23:10, 23:21, 24:15, 26:8, 26:14, 29:5, 29:21, 29:25, 30:12, 30:14, 30:23, 31:15, 32:1, 33:12, 34:25, 35:14, 38:7, 39:7, 40:5, 40:24, 47:16, 48:3, 48:12, 48:17, 48:22, 49:8, 51:2, 51:13, 52:5,

52:7, 52:8
**Honor's** [1] - 45:21
**HONORABLE** [1] - 1:8
**hour** [2] - 28:2, 46:2
**hours** [1] - 8:23
**House** [6] - 10:25, 11:8, 11:11, 11:19, 15:6, 17:23, 24:16, 45:6
**hurricane** [1] - 9:16

## I

**i.e** [1] - 25:11
**idea** [2] - 26:12, 26:24
**identical** [1] - 4:20
**impact** [7] - 30:5, 45:4, 45:5, 45:7, 50:1, 50:2, 51:11
**implicitly** [1] - 9:8
**important** [5] - 17:5, 17:14, 27:7, 32:14, 36:25
**impose** [1] - 23:13
**imposing** [1] - 25:12
**inappropriate** [4] - 28:17, 28:21, 28:23, 46:24
**includes** [2] - 40:17, 43:4
**inconsistency** [2] - 40:22, 42:2
**inconsistent** [7] - 29:3, 40:18, 41:13, 41:20, 41:25, 47:8, 47:15
**inconsistently** [1] - 40:4
**incorporate** [2] - 22:17, 22:21
**indicia** [1] - 42:20
**individual** [2] - 4:14, 26:21
**individuals** [5] - 25:20, 26:1, 26:2, 26:5, 26:7
**Indraneel** [1] - 3:15
**INDRANEEL** [1] - 1:21
**inference** [1] - 45:15
**inferences** [2] - 45:17, 45:20
**inferred** [1] - 35:25
**influence** [1] - 47:18
**information** [28] - 13:11, 13:13, 13:20, 13:21, 14:18, 16:23, 17:4, 19:4, 20:18, 23:16, 23:22, 24:7, 24:22, 24:24, 25:6, 25:10, 25:16, 25:18,

27:24, 37:1, 37:5, 38:9, 38:18, 39:3, 39:18, 41:6, 41:8
**injunction** [2] - 19:18, 50:22
**innate** [1] - 17:12
**instance** [2] - 19:19, 46:24
**instant** [1] - 46:11
**instruct** [3] - 24:3, 24:10, 45:18
**instructions** [1] - 22:18
**insufficient** [1] - 51:22
**interpretation** [5] - 18:3, 18:5, 18:7, 32:14, 43:11
**interpreted** [2] - 26:18, 38:15
**interrogatory** [1] - 39:2
**intricacies** [1] - 18:24
**introductions** [1] - 3:22
**involve** [1] - 42:19
**involved** [2] - 28:14, 43:9
**involvement** [1] - 27:23
**involves** [4] - 22:11, 43:1, 43:10, 44:14
**irrelevant** [2] - 11:9, 25:7
**issue** [9] - 5:4, 17:21, 28:13, 29:22, 32:8, 32:18, 33:22, 38:5, 44:9
**issued** [1] - 4:21
**issues** [11] - 20:7, 28:1, 31:6, 31:13, 34:7, 34:14, 43:9, 43:25, 44:10, 44:11, 45:9
**issuing** [1] - 31:19, 31:20, 45:23
**itself** [1] - 37:12
**IVAN** [1] - 1:8

## J

**Jamieson** [1] - 1:23
**JAYANTA** [1] - 2:5
**Jeannie** [1] - 3:9
**JEANNIE** [1] - 1:11
**Jefferson** [1] - 2:10
**Jenin** [1] - 4:13
**JENIN** [1] - 2:5
**Jennifer** [4] - 3:2, 3:7, 4:22, 5:3
**JENNIFER** [2] - 1:3,

1:11
**JILL** [1] - 2:5
**Jim** [1] - 3:15
**job** [7] - 4:3, 9:12, 9:14, 10:23, 11:20, 16:22, 44:1
**jobs** [1] - 14:10
**Joe** [1] - 3:20
**JOHN** [2] - 2:4, 2:8
**John** [2] - 4:7, 4:13
**Jordan** [1] - 31:17
**JOSEPH** [1] - 2:1
**JR** [1] - 1:18
**judge** [17] - 19:12, 20:14, 26:19, 26:24, 27:2, 27:6, 27:10, 28:12, 28:22, 32:16, 40:24, 46:21, 50:3, 50:5, 50:9, 50:16, 51:21
**JUDGE** [1] - 1:9
**Judge** [1] - 29:1
**judge's** [2] - 28:22, 45:5
**judges** [4] - 24:3, 26:18, 26:22, 45:18
**judicial** [2] - 16:3, 44:3
**JULIAN** [1] - 2:4
**juries** [1] - 24:4
**jurisdiction** [1] - 29:16
**jury** [1] - 45:18

## K

**Kessler** [1] - 3:10
**KESSLER** [2] - 1:14, 3:10
**KHERIATY** [1] - 2:6
**Kheriaty** [1] - 4:14
**kick** [1] - 7:5
**kind** [6] - 9:15, 9:17, 14:13, 35:3, 37:19, 50:21
**kinds** [1] - 36:1
**KIRK** [1] - 2:2
**knowing** [1] - 38:13
**knowledge** [9] - 14:16, 18:2, 18:12, 18:14, 24:5, 24:17, 24:18, 35:24, 36:23
**knows** [2] - 23:24, 27:2
**Kulldorff** [1] - 4:14
**KULLDORFF** [1] - 2:6

## L

**lack** [1] - 41:5
**language** [1] - 40:13
**larger** [1] - 40:22

last [3] - 28:2, 31:11, 46:2
**LAUREN** [1] - 1:22
**Lauren** [1] - 3:12
**law** [9] - 8:14, 12:3, 14:5, 14:8, 17:8, 32:9, 40:10, 41:8, 43:17
**lawyer** [2] - 22:6, 22:8
**lawyers** [2] - 10:2, 21:4
**layperson's** [1] - 16:18
**lead** [4] - 16:24, 16:25, 17:20, 19:9
**least** [6] - 4:19, 5:18, 17:19, 18:9, 18:11, 19:17
**leave** [5] - 5:19, 6:6, 6:7, 33:3
**left** [3] - 20:10, 20:12, 20:16
**legal** [1] - 19:3
**legally** [2] - 51:10, 51:21
**legitimate** [1] - 50:20
**letter** [1] - 28:5
**LIBERTIES** [1] - 2:5
**life** [2] - 9:25, 10:25
**likelihood** [1] - 37:17
**limit** [2] - 6:5, 29:13
**limited** [1] - 19:18
**limits** [2] - 5:22, 20:5
**list** [1] - 44:3
**literally** [1] - 39:18
**litigant** [1] - 23:14
**litigants** [1] - 15:4
**litigation** [1] - 18:10
**lives** [1] - 7:24
**LLP** [2] - 1:12, 1:15
**local** [3] - 5:22, 38:25, 42:16
**logic** [2] - 10:23, 11:3
**logical** [1] - 24:2
**logistical** [1] - 6:10
**logistically** [1] - 5:16
**look** [5] - 9:16, 10:3, 16:13, 39:20, 49:3
**looked** [1] - 38:16
**looking** [1] - 41:22
**lose** [1] - 41:24
**Louisiana** [41] - 3:19, 3:21, 4:23, 9:16, 19:1, 19:13, 19:16, 26:16, 26:20, 26:25, 27:3, 27:6, 27:11, 28:8, 28:9, 28:13, 28:23, 28:25, 29:9, 29:20, 31:21, 32:17, 37:17, 38:5, 40:4,

40:25, 42:24, 43:24, 46:15, 46:22, 47:9, 48:21, 49:1, 49:3, 49:4, 49:13, 50:3, 50:24, 51:5, 51:9, 51:17
**LOUISIANA** [1] - 2:1
**Louisiana's** [1] - 46:4
**Louisianians** [1] - 9:17

## M

**ma'am** [3] - 13:1, 13:3, 13:5
**machine** [2] - 25:22, 26:13
**MAGISTRATE** [1] - 1:9
**magistrate** [1] - 28:21
**mail** [1] - 15:21
**mailbag** [1] - 36:4
**mails** [1] - 15:6
**maintain** [1] - 51:13
**major** [2] - 47:24, 48:1
**manage** [1] - 44:6
**management** [1] - 51:8
**mandamus** [1] - 44:14
**mandatory** [1] - 19:23
**MARTIN** [1] - 2:6
**Maryland** [1] - 36:3
**Masterman** [3] - 3:20, 30:16, 30:19
**MASTERMAN** [5] - 2:1, 4:11, 48:12, 48:17, 52:7
**masterman** [2] - 4:9, 30:15
**matter** [8] - 4:22, 6:11, 11:5, 20:8, 30:4, 36:21, 52:6, 52:19
**matters** [2] - 4:18, 19:15
**McCarthy** [1] - 35:7
**mean** [13] - 14:19, 14:25, 15:20, 16:17, 18:4, 21:6, 24:15, 24:25, 31:2, 34:3, 37:16, 42:19, 49:23
**meaning** [5] - 17:4, 17:10, 17:14, 17:16, 24:10
**means** [2] - 8:4, 11:9
**meant** [14] - 15:21, 16:1, 16:2, 16:13, 17:4, 17:14, 23:25, 24:5, 24:12, 24:18, 25:17, 25:18, 36:8, 37:10
**media** [6] - 15:9,

18:16, 25:12, 25:15, 27:23, 39:12
**meet** [3] - 15:23, 36:13, 39:5
**meets** [1] - 27:8
**memb** [1] - 43:12
**member** [1] - 9:24, 45:5
**members** [3] - 24:3, 43:12, 45:18
**memo** [1] - 7:16
**memorandum** [4] - 5:1, 5:9, 5:23, 26:22
**memorandums** [1] - 5:25
**mentioned** [1] - 10:1
**merits** [2] - 37:19, 38:9
**met** [3] - 19:22, 38:24, 46:13
**Michael** [1] - 3:19
**MICHAEL** [1] - 2:1
**microscope** [1] - 38:17
**middle** [1] - 28:15
**midnight** [1] - 28:2
**might** [4] - 31:3, 31:4, 51:20
**minor** [1] - 3:22
**minutiae** [1] - 38:4
**miscellaneous** [1] - 5:15
**misinformation** [1] - 38:1
**MISSOURI** [2] - 1:5, 2:9
**Missouri** [5] - 3:3, 4:8, 4:9, 28:6, 43:1
**MO** [1] - 2:10
**modify** [1] - 20:2
**money** [1] - 8:23
**months** [1] - 42:21
**morning** [13] - 3:6, 3:8, 3:9, 3:10, 3:12, 3:18, 4:7, 4:11, 4:12, 4:16, 4:17, 6:14, 6:15
**mornings** [1] - 10:7
**MOTION** [1] - 1:8
**motion** [44] - 4:20, 4:21, 4:24, 4:25, 5:2, 5:6, 5:9, 5:23, 6:7, 6:8, 6:13, 6:23, 18:25, 19:21, 20:1, 27:5, 27:9, 28:9, 28:16, 29:17, 29:19, 30:5, 31:2, 31:9, 32:24, 32:25, 34:24, 36:10, 38:23, 40:10, 43:2, 48:25, 49:7,

49:11, 49:22, 50:19, 50:24, 50:25, 51:7, 51:11
**motions** [8] - 4:3, 5:25, 26:17, 30:17, 30:18, 48:20, 49:10, 49:12
**movant** [6] - 1:4, 3:7, 3:11, 4:22, 5:6, 31:5
**MOVANT** [2] - 1:11, 1:21
**move** [4] - 6:11, 8:7, 25:2, 35:21
**moves** [1] - 49:4
**MR** [104] - 3:6, 3:10, 3:18, 4:1, 4:5, 4:7, 4:11, 4:13, 4:17, 5:12, 30:14, 30:23, 30:24, 31:7, 31:10, 31:12, 31:15, 32:1, 32:7, 33:1, 33:7, 33:9, 33:12, 33:15, 33:18, 34:11, 34:21, 34:25, 35:11, 35:14, 35:18, 35:22, 36:6, 36:11, 36:15, 36:17, 36:19, 36:22, 37:5, 37:7, 37:11, 37:18, 38:7, 38:20, 39:7, 39:9, 39:14, 40:5, 40:11, 40:24, 41:11, 41:16, 41:23, 42:2, 42:5, 42:7, 42:10, 42:13, 42:25, 43:4, 43:14, 43:16, 43:21, 44:13, 44:18, 44:21, 44:24, 45:1, 45:8, 45:10, 45:13, 45:21, 46:1, 46:5, 46:13, 46:17, 46:19, 46:25, 47:2, 47:10, 47:13, 47:15, 47:22, 48:1, 48:3, 48:6, 48:11, 48:12, 48:17, 48:22, 49:8, 49:14, 49:23, 50:6, 50:9, 50:11, 50:14, 50:18, 51:2, 51:13, 51:23, 52:1, 52:3, 52:7
**MS** [82] - 3:9, 3:12, 6:14, 6:16, 7:10, 8:14, 9:2, 9:20, 10:5, 10:8, 10:11, 10:13, 10:15, 10:19, 11:3, 11:13, 11:16, 11:21, 11:23, 11:25, 12:3, 12:8, 12:11, 12:18, 12:23, 12:25, 13:2, 13:4, 13:6, 13:8, 13:15, 13:25, 14:12,

15:11, 15:14, 15:18, 16:5, 16:10, 17:22, 18:9, 18:11, 18:15, 18:19, 19:17, 20:20, 21:2, 21:7, 21:9, 21:16, 21:18, 21:20, 21:22, 21:24, 22:4, 22:6, 22:8, 22:14, 22:17, 22:20, 23:2, 23:10, 23:21, 24:1, 24:13, 24:15, 24:20, 25:3, 25:5, 25:9, 25:15, 26:2, 26:4, 26:7, 26:14, 29:5, 29:8, 29:15, 29:21, 29:24, 30:7, 30:12, 52:8
**multiple** [2] - 22:11
**must** [7] - 5:17, 5:19, 10:17, 14:6, 14:8, 20:2, 28:11

**N**

**names** [1] - 25:23
**nascent** [1] - 42:22
**nation** [1] - 43:17
**nature** [2] - 21:3, 21:8
**necessary** [4] - 7:14, 23:18, 34:6, 35:3
**need** [14] - 6:25, 9:17, 12:19, 12:20, 18:20, 23:23, 24:8, 27:15, 41:2, 49:1, 49:5, 49:6
**needn't** [1] - 38:9
**needs** [3] - 6:24, 10:9, 42:8
**never** [1] - 29:9
**NEW** [1] - 2:5
**New** [2] - 1:16, 2:2
**newspaper** [1] - 15:25
**next** [2] - 27:20, 31:1
**night** [1] - 28:3
**nonacceptance** [1] - 39:17
**nonmovant** [1] - 31:5
**nonparty** [8] - 6:21, 6:23, 23:11, 23:13, 31:18, 32:3, 33:15, 40:25
**normally** [2] - 17:7, 24:9
**note** [3] - 3:4, 29:21, 29:24
**noted** [1] - 31:24
**notes** [2] - 42:15
**nothing** [4] - 8:11, 9:22, 11:7, 34:1
**notice** [1] - 12:4

**notices** [1] - 36:6
**noting** [1] - 30:7
**November** [1] - 1:5
**number** [4] - 3:3, 27:22, 27:23, 43:8
**NW** [3] - 1:12, 2:2, 2:6
**NY** [1] - 1:16

**O**

**O'MEARA** [1] - 2:1
**objecting** [1] - 39:5
**objection** [1] - 25:1
**objectionable** [1] - 25:7
**obligation** [2] - 20:19, 47:19
**obligations** [2] - 9:13, 25:13
**observed** [1] - 45:23
**obtained** [2] - 7:1
**obviously** [6] - 5:5, 6:3, 27:1, 34:1, 36:12, 47:3
**occasion** [1] - 31:25
**occur** [2] - 9:21, 50:23
**OF** [9] - 1:1, 1:5, 1:8, 1:22, 2:1, 2:9, 2:15, 52:15, 52:23
**offenses** [1] - 41:10
**offered** [2] - 38:21, 39:12
**OFFICE** [1] - 1:22, 2:9
**office** [3] - 4:8, 9:23, 9:25
**Office** [2] - 15:6, 28:6
**officer** [2] - 14:19, 36:24
**officers** [2] - 44:15, 44:24
**OFFICIAL** [1] - 52:15
**official** [4] - 7:4, 12:16, 14:25, 35:4
**officially** [1] - 9:6
**officials** [11] - 9:11, 9:21, 14:2, 14:9, 25:11, 25:17, 29:25, 36:1, 44:16, 44:25, 45:4
**often** [1] - 18:10
**ON** [1] - 1:25
**once** [2] - 28:12, 31:6
**one** [21] - 3:22, 13:19, 16:14, 16:16, 19:21, 19:24, 20:21, 23:3, 23:6, 23:24, 31:19, 31:25, 36:24, 37:12, 37:14, 37:15, 37:23, 41:18, 46:8, 46:10
**operating** [2] - 15:16,

16:11
**operation** [1] - 29:15
**opined** [1] - 14:1
**opinion** [4] - 26:22, 32:19, 44:7, 47:23
**opportunity** [3] - 4:25, 5:8, 39:23
**opposing** [1] - 39:5
**opposition** [9] - 5:1, 5:9, 5:10, 5:11, 5:13, 5:24, 6:2, 6:9
**option** [2] - 27:9, 28:17
**oral** [1] - 30:21
**order** [7] - 10:16, 28:10, 33:2, 39:21, 41:25, 42:3, 51:10
**ordinary** [1] - 33:4
**otherwise** [1] - 16:4
**outweighed** [2] - 27:15, 47:5
**overcome** [1] - 41:7
**overturn** [1] - 33:11
**overwhelm** [1] - 42:17
**own** [3] - 17:25, 18:5, 18:11

**P**

**P.O** [1] - 2:10
**page** [1] - 5:22
**PAGE** [1] - 1:25
**pages** [9] - 2:13, 5:22, 5:23, 6:2, 6:4, 6:8, 36:9, 39:20
**papers** [4] - 6:17, 9:22, 18:12, 48:13
**paragraph** [3] - 20:19, 32:9, 32:12
**paraphrasing/ making** [1] - 17:24
**part** [3] - 11:10, 13:18, 28:10
**participate** [3] - 21:7, 21:13, 40:2
**participating** [1] - 20:25
**particular** [6] - 20:14, 20:19, 24:12, 34:9, 36:21, 37:24, 46:8
**particularly** [1] - 7:3
**particulars** [1] - 47:5
**parties** [15] - 5:21, 6:3, 13:10, 14:17, 15:3, 16:23, 17:8, 19:3, 22:11, 23:16, 23:17, 26:6, 29:23, 31:4, 31:6, 36:14, 36:20, 38:10, 38:24, 41:8, 43:8

**party** [4] - 5:2, 23:20, 30:2, 31:5
**PAUL** [2] - 1:11, 1:15
**Paxton** [1] - 14:1
**PC** [1] - 1:18
**pending** [9] - 19:4, 30:16, 37:15, 38:4, 43:24, 47:11, 49:15, 51:3, 51:14
**people** [6] - 9:13, 16:4, 16:6, 22:23, 23:8, 25:23
**period** [1] - 8:6
**permissive** [1] - 19:23
**person** [7] - 9:18, 12:21, 13:6, 17:16, 20:4, 23:6, 27:1
**personal** [6] - 21:4, 21:13, 22:1, 29:8, 35:24, 36:23
**pertinent** [1] - 14:5
**petition** [2] - 30:1, 44:14
**philosophy** [1] - 19:14
**phrase** [3] - 10:7, 32:1, 36:3
**phrases** [2] - 17:12, 17:17
**place** [6] - 7:23, 14:10, 15:20, 34:2, 34:14, 46:16
**placed** [1] - 19:2
**plaintiffs** [5] - 4:10, 16:11, 33:3, 39:10, 40:6
**plaintiffs'** [1] - 17:25
**platform** [1] - 39:14
**platforms'** [1] - 27:23
**plenty** [1] - 37:13
**PLLC** [1] - 2:2
**podium** [9] - 11:6, 12:5, 12:9, 12:13, 14:15, 14:20, 14:25, 17:23, 21:10
**point** [8] - 3:22, 4:2, 20:17, 20:20, 40:12, 41:1, 44:7, 45:22
**pointed** [1] - 42:19
**points** [2] - 4:4, 48:6
**policy** [4] - 7:5, 7:13, 8:19, 14:22
**portion** [1] - 19:14
**portions** [1] - 13:19
**pose** [1] - 6:18
**position** [14] - 7:7, 12:1, 12:4, 12:14, 14:17, 19:2, 21:2, 23:21, 23:24, 39:10, 40:8, 41:3, 48:7, 48:8

**possession** [1] - 28:5
**possibilities** [1] - 41:17
**possibility** [6] - 20:10, 29:3, 40:18, 40:19, 41:13, 41:20
**possible** [5] - 7:12, 12:6, 12:11, 39:10, 50:22
**potential** [1] - 45:8
**powers** [1] - 14:23
**pre** [1] - 19:18
**pre-injunction** [1] - 19:18
**precedent** [1] - 35:13
**precisely** [1] - 25:9
**preempt** [1] - 28:24
**preemptively** [1] - 28:20
**prefer** [3] - 25:24, 30:25, 51:6
**preliminarily** [1] - 30:21
**preliminary** [1] - 50:22
**premature** [1] - 38:24
**premise** [1] - 37:23
**preparation** [9] - 11:13, 11:14, 11:15, 21:13, 21:25, 22:1, 22:2, 22:14
**preparations** [1] - 21:16
**prepare** [5] - 8:11, 11:16, 21:12, 22:9, 22:12
**prepping** [1] - 11:18
**present** [2] - 10:23, 27:21
**presentation** [1] - 30:18
**presenting** [2] - 3:15, 4:9
**presents** [1] - 28:8
**presiding** [1] - 20:15
**Press** [1] - 15:6
**press** [7] - 10:25, 11:8, 11:11, 11:19, 16:1, 24:23, 37:20
**pressure** [1] - 16:20
**presumption** [2] - 23:13, 42:15
**previous** [3] - 32:22, 37:8, 52:9
**previously** [1] - 9:23
**principles** [1] - 14:23
**private** [1] - 6:21
**privilege** [4] - 20:10, 20:12, 21:10, 21:11
**privileged** [1] - 20:8
**pro** [2] - 30:16, 30:19

**probe** [2] - 11:4, 14:24
**problem** [1] - 38:2
**procedural** [1] - 15:3
**procedures** [1] - 28:7
**proceedings** [2] - 46:7, 52:18
**process** [5] - 16:22, 19:12, 35:21, 40:3, 50:17
**processes** [1] - 35:20
**produce** [2] - 8:22, 41:24
**pronouncement** [2] - 32:4, 32:6
**proof** [1] - 7:13
**proposition** [1] - 12:15
**propounder** [1] - 24:7
**protected** [1] - 20:8
**protective** [1] - 28:10
**prove** [5] - 18:20, 20:19, 23:18, 41:9, 47:19
**proven** [1] - 18:25
**proves** [1] - 9:9
**provide** [2] - 13:2, 39:23
**provided** [4] - 38:14, 38:15, 39:20, 51:10
**proving** [1] - 17:17
**PSAKI** [2] - 1:3, 1:11
**Psaki** [56] - 3:2, 3:7, 4:22, 4:24, 5:3, 5:5, 6:12, 6:16, 7:1, 7:24, 9:23, 11:2, 11:18, 13:12, 13:21, 13:23, 14:11, 15:5, 20:16, 20:25, 21:21, 23:23, 23:25, 24:8, 25:18, 25:20, 25:21, 25:24, 26:10, 26:12, 27:15, 27:21, 28:3, 28:7, 28:14, 29:8, 29:10, 30:2, 30:6, 30:10, 31:25, 33:11, 33:16, 33:20, 35:20, 37:10, 38:6, 38:19, 39:4, 39:19, 40:1, 40:20, 41:19, 46:23, 47:20
**Psaki's** [3] - 10:4, 10:25, 20:20
**public** [5] - 28:4, 35:25, 36:1, 36:2
**publish** [1] - 35:15
**purpose** [3] - 15:13, 50:6, 51:23
**purposes** [5] - 11:8, 32:4, 32:14, 41:8, 44:4
**Purposes** [1] - 34:10

**pursuant** [2] - 36:12, 38:25
**put** [5] - 12:4, 25:24, 27:7, 50:4, 51:6
**puts** [1] - 17:13

## Q

**quash** [9] - 4:21, 4:24, 5:3, 6:23, 20:2, 29:17, 30:6, 30:9, 48:20
**quashing** [4] - 19:23, 19:24, 29:12, 35:9
**questioning** [3] - 21:3, 21:8, 22:12
**questions** [7] - 6:18, 22:22, 38:18, 48:8, 48:10, 48:14, 48:16
**quickly** [1] - 50:16
**quo** [1] - 51:14
**quotes** [1] - 17:24

## R

**raise** [1] - 46:25
**ranking** [7] - 7:3, 9:11, 12:16, 14:2, 14:9, 14:19, 43:12
**rare** [1] - 40:15
**rarely** [1] - 24:5
**rational** [1] - 25:19
**Re** [1] - 35:7
**reaches** [1] - 49:7
**reading** [1] - 15:25
**really** [5] - 7:1, 8:10, 14:23, 23:22, 42:17
**reason** [7] - 7:22, 10:13, 10:20, 15:1, 29:15, 34:9, 35:14, 41:23, 42:17, 46:9, 47:17
**reasonable** [5] - 20:4, 24:3, 45:15, 45:16, 45:20
**reasonably** [4] - 16:24, 17:1, 17:20, 19:8
**reasons** [3] - 14:22, 27:18, 48:13
**Rebecca** [1] - 52:17
**rebuttal** [1] - 31:8
**received** [2] - 26:17, 28:2
**recently** [1] - 14:1
**recognize** [1] - 34:3
**recognized** [2] - 9:6, 34:4
**reconsider** [2] - 27:10, 28:17

**record** [7] - 3:5, 15:5, 15:7, 15:10, 15:12, 15:15, 52:10
**recording** [1] - 52:18
**RECORDING** [1] - 2:15
**reference** [1] - 5:14
**referencing** [1] - 14:5
**regard** [3] - 30:4, 42:9, 44:20
**regards** [2] - 9:9, 19:20
**related** [2] - 27:25, 44:11
**relationships** [1] - 15:21
**relative** [2] - 20:21, 20:22
**release** [4] - 32:11, 32:12, 32:13, 32:15
**relevance** [5] - 6:25, 12:20, 13:11, 19:7, 27:17
**relevant** [9] - 13:13, 13:20, 14:12, 19:5, 19:11, 27:22, 32:10, 32:18, 41:7
**relied** [1] - 35:25
**relief** [1] - 10:17
**rely** [2] - 24:8, 24:9
**relying** [1] - 42:14
**remember** [1] - 15:25
**replies** [1] - 5:7
**reply** [2] - 5:1, 5:10
**REPORTER** [2] - 52:15, 52:23
**representation** [1] - 7:20
**representations** [4] - 8:10, 8:17, 18:1, 34:5
**representing** [1] - 30:25
**request** [9] - 15:13, 16:23, 19:8, 30:18, 50:4, 50:6, 51:1, 51:18, 52:2
**requested** [2] - 45:6, 48:2
**requesting** [2] - 17:16, 47:7
**requests** [2] - 16:25, 17:1
**require** [5] - 19:11, 29:11, 29:13, 39:19, 46:7
**required** [8] - 19:2, 20:1, 20:2, 27:20, 36:12, 40:2, 40:6, 40:9

**requirement** [3] - 13:16, 13:18, 44:5
**requirements** [2] - 27:9, 46:13
**requires** [4] - 20:4, 20:7, 35:24, 41:12
**reserve** [1] - 31:7
**residence** [1] - 29:16
**resolution** [1] - 42:16
**resolving** [1] - 4:3
**respect** [9] - 9:2, 10:5, 10:8, 10:19, 12:1, 22:1, 29:6, 29:25, 30:1
**respectfully** [2] - 34:21, 34:22
**RESPONDENT** [1] - 2:1
**respondents** [1] - 4:10
**RESPONDENTS** [1] - 2:4
**Respondents** [1] - 1:6
**responses** [1] - 39:2
**responsive** [1] - 15:8
**rest** [1] - 6:17
**resting** [1] - 6:24
**review** [4] - 4:25, 5:8, 41:6, 51:14
**reviewed** [3] - 37:21, 39:1, 39:2
**Rhee** [1] - 3:9
**RHEE** [82] - 1:11, 3:9, 6:14, 6:16, 7:10, 8:14, 9:2, 9:20, 10:5, 10:8, 10:11, 10:13, 10:15, 10:19, 11:3, 11:13, 11:16, 11:21, 11:23, 11:25, 12:3, 12:8, 12:11, 12:18, 12:23, 12:25, 13:2, 13:4, 13:6, 13:8, 13:15, 13:25, 14:12, 15:11, 15:14, 15:18, 16:5, 16:10, 17:22, 18:9, 18:11, 18:15, 18:19, 19:17, 20:20, 21:2, 21:7, 21:9, 21:16, 21:18, 21:20, 21:22, 21:24, 22:4, 22:6, 22:8, 22:14, 22:17, 22:20, 23:2, 23:10, 23:21, 24:1, 24:13, 24:15, 24:20, 25:3, 25:5, 25:9, 25:15, 26:2, 26:4, 26:7, 26:14, 29:5, 29:8, 29:15, 29:21, 29:24, 30:7, 30:12, 52:8

**rhetorical** [1] - 13:9
**Richmond** [1] - 1:20
**RIFKIND** [2] - 1:11, 1:15
**room** [1] - 15:23
**round** [1] - 31:14
**rule** [8] - 19:14, 27:9, 29:14, 34:13, 34:24, 38:25, 40:3, 41:25
**Rule** [21] - 6:21, 6:22, 7:6, 20:6, 27:20, 29:16, 31:16, 31:18, 31:22, 31:23, 32:4, 33:13, 33:24, 33:25, 34:2, 34:8, 34:16, 46:17, 47:10, 47:14
**ruled** [4] - 41:4, 41:5, 49:22
**rules** [2] - 34:23, 50:16
**ruling** [26] - 26:19, 27:1, 28:22, 28:25, 29:1, 30:4, 30:5, 33:2, 33:11, 34:5, 40:9, 40:20, 41:20, 45:5, 47:8, 49:12, 49:17, 49:25, 50:1, 50:10, 50:15, 50:25, 51:7, 51:19
**rulings** [6] - 29:4, 40:18, 40:23, 41:14, 45:8, 47:13

## S

**satisfied** [2] - 20:18, 34:17
**satisfy** [2] - 12:19, 35:3
**Sauer** [3] - 4:7, 30:16, 30:20
**SAUER** [3] - 2:8, 4:7, 5:12
**saw** [1] - 7:16
**schedule** [3] - 49:19, 50:1, 50:2
**scintilla** [1] - 36:7
**sealed** [1] - 28:11
**searched** [1] - 15:7
**second** [2] - 5:21, 36:25
**secretary** [2] - 11:8, 11:12
**Secretary's** [1] - 15:6
**secretary's** [1] - 11:20
**section** [1] - 34:9
**see** [11] - 7:15, 7:18, 9:1, 9:17, 9:22, 17:11, 38:2, 39:23, 40:6, 40:22

**seek** [9] - 5:17, 5:19, 6:6, 6:7, 14:18, 23:17, 25:25, 33:3, 39:18

**seeking** [4] - 10:17, 17:3, 24:6, 33:11

**seem** [4] - 19:13, 21:19, 35:23, 46:9

**segregate** [1] - 21:25

**send** [1] - 34:15

**senior** [3] - 7:3, 14:19, 14:25

**sensitive** [1] - 21:11

**sensitivities** [1] - 22:20

**sentence** [1] - 27:20

**separate** [3] - 21:16, 21:25, 22:1

**separation** [1] - 14:23

**set** [6] - 19:22, 29:2, 29:13, 47:4, 47:5, 49:19

**sets** [3] - 7:18, 10:2, 21:4

**settled** [1] - 6:20

**seven** [1] - 42:21

**several** [5] - 7:17, 7:21, 8:8, 10:2, 13:19

**shall** [4] - 40:20, 40:21, 41:19, 41:21

**shape** [1] - 11:19

**sharing** [1] - 27:24

**show** [1] - 50:22

**shows** [1] - 15:15

**side** [4] - 18:4, 30:16, 36:25, 37:23

**side's** [1] - 18:8

**sIGNATURE** [1] - 52:23

**significant** [1] - 9:22

**significantly** [1] - 41:6

**similar** [3] - 4:20, 14:14, 22:10

**simple** [1] - 38:5

**simply** [4] - 18:6, 25:4, 33:3, 50:23

**situated** [2] - 30:8, 30:9

**situation** [4] - 7:4, 31:20, 42:20, 48:3

**skirt** [1] - 34:14

**slower** [1] - 49:4

**smacks** [1] - 29:2

**smart** [1] - 16:6

**social** [6] - 15:9, 18:16, 25:12, 25:15, 27:23, 39:12

**solicitude** [1] - 31:18

**someone** [4] - 9:18,

15:24, 20:9, 26:12

**somewhere** [3] - 8:1, 38:18

**sophistication** [1] - 23:3

**sought** [8] - 6:25, 13:11, 19:4, 20:23, 23:22, 38:14, 38:25, 39:4

**source** [5] - 13:22, 38:8, 38:12, 39:4

**sources** [6] - 37:1, 37:2, 37:9, 38:13, 39:19, 43:16

**speaker** [1] - 14:19

**speaking** [3] - 5:17, 8:5, 8:16

**speaks** [1] - 13:7

**special** [2] - 6:22, 31:18

**specific** [4] - 8:16, 8:17, 14:7, 34:2

**specifically** [2] - 27:14, 34:13

**specifics** [2] - 7:14, 8:19

**specified** [1] - 20:5

**speculation** [4] - 25:1, 26:13, 45:17, 51:19

**speech** [1] - 27:16

**spend** [2] - 7:16, 7:21

**spent** [1] - 45:25

**spokesperson** [2] - 17:23, 24:16

**SPOTTS** [1] - 1:18

**stand** [1] - 45:16

**standard** [5] - 13:16, 20:21, 23:3, 23:11, 23:12

**standards** [2] - 6:23, 14:6

**standpoint** [3] - 16:18, 24:2, 25:19

**stands** [1] - 12:15

**start** [1] - 5:6

**State** [5] - 3:3, 3:19, 3:21, 4:9, 43:1

**STATE** [2] - 1:5, 2:1

**statement** [14] - 12:8, 14:13, 14:14, 14:16, 14:20, 14:25, 16:14, 21:9, 24:23, 33:21, 37:12, 37:14, 37:15, 37:25

**statements** [20] - 7:16, 11:5, 13:9, 15:19, 16:13, 17:24, 18:1, 18:4, 25:17, 25:19, 27:22, 34:4, 34:7, 35:25, 36:1, 36:2,

37:10, 37:13, 37:20, 37:24

**States** [6] - 3:13, 3:16, 5:2, 20:11, 43:10, 43:13

**STATES** [3] - 1:1, 1:9, 1:22

**States'** [2] - 5:9, 6:1

**status** [2] - 43:5, 51:14

**statute** [2] - 40:13

**stay** [12] - 48:24, 49:15, 49:17, 50:4, 50:6, 50:10, 50:19, 50:21, 51:10, 51:16, 51:22, 51:23

**step** [2] - 15:2, 17:22

**still** [3] - 26:13, 40:3, 48:5

**Stonestreet** [2] - 52:17, 52:22

**stop** [1] - 14:4

**strategies** [1] - 19:3

**Street** [3] - 1:12, 1:19, 2:6

**strong** [1] - 42:15

**stronger** [1] - 29:11

**strongly** [1] - 18:25

**style** [1] - 51:8

**subject** [7] - 11:5, 12:5, 12:11, 30:4, 36:2, 36:21, 39:12

**subjects** [1] - 20:16

**submissions** [1] - 32:3

**subpoena** [5] - 4:21, 4:24, 5:3, 20:3, 46:19

**substance** [3] - 6:12, 32:10, 34:15

**substantially** [4] - 4:20, 35:5

**substantive** [1] - 27:18

**sufficient** [5] - 20:17, 45:11, 46:9, 50:12, 51:10

**suggest** [2] - 16:20, 20:18

**suggested** [2] - 28:1, 34:5

**suggests** [3] - 9:22, 16:4, 18:25

**Suite** [2] - 1:19, 2:6

**supplement** [1] - 39:23

**support** [6] - 5:1, 5:9, 5:23, 5:25, 28:8, 36:8

**supported** [1] - 8:20

**supporting** [1] - 7:15

**supposed** [5] - 23:15, 23:16, 28:19, 28:24, 46:16

**suppressed** [1] - 27:16

**Sur** [2] - 3:15

**SUR** [90] - 1:21, 30:24, 31:7, 31:10, 31:12, 31:15, 32:1, 32:7, 33:1, 33:7, 33:9, 33:12, 33:15, 33:18, 34:11, 34:21, 34:25, 35:11, 35:14, 35:18, 35:22, 36:6, 36:11, 36:15, 36:17, 36:19, 36:22, 37:5, 37:7, 37:11, 37:18, 38:7, 38:20, 39:7, 39:9, 39:14, 40:5, 40:11, 40:24, 41:11, 41:16, 41:23, 42:2, 42:5, 42:7, 42:10, 42:13, 42:25, 43:4, 43:14, 43:16, 43:21, 44:13, 44:18, 44:21, 44:24, 45:1, 45:8, 45:10, 45:13, 45:21, 46:1, 46:5, 46:13, 46:17, 46:19, 46:25, 47:2, 47:10, 47:13, 47:15, 47:22, 48:1, 48:3, 48:6, 48:11, 48:22, 49:8, 49:14, 49:23, 50:6, 50:9, 50:11, 50:14, 50:18, 51:2, 51:13, 51:23, 52:1, 52:3

**Surgeon** [1] - 37:25

# T

**table** [1] - 3:14

**tagged** [1] - 16:14

**talks** [1] - 12:3

**term** [2] - 31:20, 32:17

**terms** [1] - 35:7

**test** [1] - 35:7

**testimony** [1] - 13:4

**THE** [187] - 1:1, 1:8, 1:11, 1:21, 2:1, 2:4, 3:2, 3:8, 3:17, 3:25, 4:2, 4:6, 4:12, 4:16, 4:18, 5:14, 6:15, 7:7, 7:11, 8:15, 9:4, 9:21, 10:6, 10:9, 10:12, 10:14, 10:16, 10:24, 11:7, 11:15, 11:17, 11:22, 11:24, 12:2, 12:7, 12:10, 12:14,

12:22, 12:24, 13:1, 13:3, 13:5, 13:7, 13:9, 13:16, 14:4, 15:10, 15:12, 15:17, 15:19, 16:6, 16:12, 18:3, 18:10, 18:14, 18:18, 18:20, 19:20, 20:24, 21:6, 21:8, 21:15, 21:17, 21:19, 21:21, 21:23, 22:3, 22:5, 22:7, 22:9, 22:16, 22:19, 22:21, 23:5, 23:15, 23:24, 24:2, 24:14, 24:18, 24:21, 25:4, 25:6, 25:14, 25:16, 26:3, 26:5, 26:9, 26:15, 29:6, 29:10, 29:18, 29:22, 30:3, 30:9, 30:13, 30:21, 31:2, 31:9, 31:11, 31:13, 31:22, 32:6, 32:8, 33:6, 33:8, 33:10, 33:14, 33:16, 33:19, 34:12, 34:22, 35:10, 35:12, 35:16, 35:19, 36:5, 36:7, 36:12, 36:16, 36:18, 36:21, 37:4, 37:6, 37:8, 37:13, 38:2, 38:12, 38:23, 39:8, 39:13, 39:15, 40:8, 40:17, 41:2, 41:15, 41:17, 41:24, 42:4, 42:6, 42:8, 42:12, 42:23, 43:1, 43:6, 43:15, 43:20, 43:23, 44:17, 44:19, 44:23, 44:25, 45:2, 45:9, 45:12, 45:15, 45:25, 46:2, 46:12, 46:14, 46:18, 46:20, 47:1, 47:3, 47:12, 47:14, 47:17, 47:25, 48:2, 48:5, 48:10, 48:16, 48:18, 48:25, 49:11, 49:21, 49:25, 50:8, 50:10, 50:13, 50:15, 50:20, 51:3, 51:17, 51:25, 52:2, 52:6, 52:9

**themselves** [3] - 5:25, 25:24, 37:20

**theory** [5] - 14:17, 15:18, 16:10, 16:12, 25:10

**therefore** [5] - 8:24, 11:10, 13:12, 13:23, 28:16

**therefrom** [1] - 45:20

**they've** [1] - 42:19

**third** [2] - 23:20, 26:6
**third-party** [1] - 23:20
**thoughts** [1] - 35:16
**three** [1] - 19:23
**timely** [1] - 20:1
**title** [2] - 11:7, 32:9
**today** [3] - 45:16, 46:2, 49:9
**top** [1] - 44:3
**Transcript** [1] - 34:10
**transcript** [1] - 52:18
**TRANSCRIPT** [1] - 1:8
**TRANSCRIPTION** [1] - 2:15
**transcripts** [3] - 37:21, 39:21, 39:22
**transfer** [12] - 19:15, 40:12, 40:14, 41:12, 44:4, 44:8, 45:11, 48:12, 49:15, 50:1, 50:10, 50:14
**transferred** [1] - 48:20
**transferring** [4] - 48:25, 49:12, 50:23, 50:24
**trier** [3] - 16:19, 17:5, 18:5
**true** [3] - 42:25, 45:22, 49:23
**trump** [1] - 28:22
**try** [3] - 16:22, 25:24, 31:13
**trying** [5] - 14:17, 15:12, 25:25, 35:16, 35:19
**turn** [3] - 26:10, 26:11, 36:22
**turning** [1] - 40:12
**two** [11] - 4:18, 7:18, 10:2, 13:20, 17:8, 19:23, 21:4, 26:23, 31:3, 40:23, 41:18
**type** [2] - 38:13, 38:14
**types** [2] - 8:20, 8:22
**typically** [1] - 33:23

---

## U

**U.S** [1] - 1:22
**under** [16] - 6:19, 6:21, 6:22, 6:23, 7:6, 8:14, 20:13, 31:23, 33:4, 33:24, 34:2, 34:16, 35:7, 38:16, 40:10, 45:2
**underlying** [7] - 3:14, 4:23, 19:3, 25:10, 34:15, 42:22, 42:23
**underscored** [1] - 31:17

**understood** [1] - 52:2
**undone** [1] - 49:19
**undue** [20] - 7:9, 7:14, 8:10, 8:16, 11:10, 11:17, 13:18, 20:17, 20:22, 23:2, 23:4, 23:9, 23:10, 25:25, 28:8, 31:23, 32:1, 32:17, 34:17
**unduly** [9] - 13:14, 13:23, 20:25, 21:19, 23:1, 23:6, 23:7, 25:9, 47:20
**unique** [3] - 12:23, 35:24, 36:23
**United** [8] - 3:13, 3:16, 5:2, 5:9, 6:1, 20:11, 43:10, 43:13
**UNITED** [3] - 1:1, 1:9, 1:22
**unlawful** [1] - 17:9
**unless** [3] - 7:25, 24:14, 42:16
**unnamed** [1] - 25:25
**unpublished** [2] - 35:8, 35:13
**unring** [1] - 49:20
**up** [6] - 7:12, 12:12, 20:9, 20:17, 44:7, 46:6
**users** [1] - 27:24
**uses** [1] - 27:14
**utilize** [2] - 15:20, 17:12
**utilizing** [1] - 19:24

---

## V

**VA** [2] - 1:20, 1:23
**valid** [1] - 51:15
**vantage** [1] - 20:20
**VECCHIONE** [3] - 2:4, 4:13, 4:17
**Vecchione** [1] - 4:13
**versus** [1] - 3:3
**vice** [2] - 30:16, 30:19
**videos** [1] - 28:4
**videotaped** [1] - 28:10
**view** [3] - 39:22, 40:9, 51:15
**violated** [1] - 43:11
**VIRGINIA** [1] - 1:1
**Virginia** [7] - 5:17, 5:19, 8:25, 37:16, 38:3, 43:2, 49:5
**voice** [1] - 38:19

---

## W

**waived** [1] - 20:13

**waiver** [1] - 20:8
**Walmart** [1] - 36:3
**wants** [1] - 9:18
**warrants** [1] - 31:17
**was..** [1] - 16:2
**Washington** [3] - 1:13, 2:3, 2:7
**WEISS** [2] - 1:11, 1:15
**WEITZMAN** [1] - 30:23
**WEITZNER** [5] - 2:1, 3:18, 4:1, 4:5, 30:14
**Weitzner** [1] - 3:19
**Western** [37] - 4:23, 19:1, 19:13, 19:15, 26:15, 26:20, 26:25, 27:3, 27:6, 27:10, 28:7, 28:13, 28:23, 28:25, 29:9, 29:20, 31:20, 32:17, 37:16, 38:5, 40:4, 40:25, 42:24, 43:23, 46:3, 46:14, 46:22, 47:8, 48:21, 49:1, 49:2, 49:4, 49:13, 50:3, 50:24, 51:5, 51:9
**WETZLER** [2] - 1:22, 3:12
**Wetzler** [1] - 3:12
**WHARTON** [2] - 1:11, 1:15
**whatsoever** [1] - 18:2
**White** [8] - 10:25, 11:8, 11:11, 11:19, 15:6, 17:23, 24:16, 45:6
**whole** [3] - 18:22, 38:2, 46:2
**win** [1] - 14:7
**witness** [1] - 8:12
**witnesses** [2] - 38:21, 39:11
**word** [2] - 27:14, 34:23
**words** [3] - 17:10, 32:12, 32:15
**works** [1] - 25:2
**wrap** [1] - 46:6
**writ** [1] - 30:4
**write** [1] - 32:23
**written** [4] - 15:15, 15:20, 16:8, 17:7
**wrote** [1] - 47:23
**wrought** [1] - 45:9

---

## Y

**years** [2] - 16:7, 43:5
**yesterday** [1] - 15:25
**York** [1] - 1:16
**you-all** [1] - 36:9

**YOUNES** [1] - 2:5
**Younes** [1] - 4:13