# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI, *et al.*,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | Case No. 3:22-cv-01213-TAD-KDM |
| v.  ) | |
| ) | |
| JOSEPH R. BIDEN, JR., in his official  ) | |
| capacity as President of the United States, *et*  ) | |
| *al.*,  ) | |
| ) | |
| Defendants.  ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING DEPOSITIONS OF HIGH-RANKING OFFICIALS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 4

I.      The Court Should Not Allow Any Further Discovery Before Ruling On
        Defendants' Pending Motion To Dismiss. ........................................................... 4

        1.      The Rule 12(b) Motion Raises Threshold Issues That Should Be Resolved
                Before Further Discovery Continues. ..................................................... 5

        2.      The Pendency Of A Preliminary Injunction Motion Is No Basis For
                Allowing Further Expedited Discovery Before The Court Resolves The
                Motion To Dismiss. ............................................................................... 8

        3.      Plaintiffs' Remaining Objections To Pausing Expedited Discovery While
                Resolving The Motion To Dismiss Are Unavailing. ............................. 11

II.     Any Discovery Ordered In Lieu Of The Depositions of High-Ranking Officials
        Should Be Limited And Narrowly Tailored To The Context Of Expedited
        Discovery. ......................................................................................................... 13

        1.      White House Director of Digital Strategy Robert Flaherty ................... 14

        2.      Cybersecurity and Infrastructure Security Agency Jen Easterly ........... 19

        3.      Surgeon General Vivek Murthy ............................................................ 23

        4.      Former White House Press Secretary Jennifer Psaki ............................ 28

III.    This Court Should Establish Guardrails To The Extent It Orders Further
        Discovery. ......................................................................................................... 31

CONCLUSION ................................................................................................................. 35

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Jesuits of Mo. Province*,
  175 F.R.D. 556 (D. Kan. 1997) ............................................................................ 23

*Am. LegalNet, Inc. v. Davis*,
  673 F. Supp. 2d 1063 (C.D. Cal. 2009) .............................................................. 10

*Amos v. Taylor*,
  No. 4:20-cv-7, 2020 WL 7049848 (N.D. Miss. Dec. 1, 2020) .............................. 32

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 7, 12

*BKGTH Prods., LLC v. Does 1-20*,
  Civ. A. No. 13-5310, 2013 WL 5507297 (E.D. La. Sept. 30, 2013) ..................... 10, 13, 21, 32

*Carswell v. Camp*,
  37 F.4th 1062 (5th Cir. 2022) .............................................................................. 5

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ................................................................................... *passim*

*City of Las Cruces v. United States.*,
  No. 17-809, 2021 WL 330062 (D.N.M. Feb. 1, 2021),
  *objections overruled*, No. 17-809, 2021 WL 1890132 (D.N.M. May 11, 2021) .............. 30, 31

*ELargo Holdings, LLC v. Doe-68.105.146.38*,
  318 F.R.D. 58 (M.D. La. 2016) ........................................................................... 32

*Fund Tex. Choice v. Paxton*,
  No. 1:22-CV-859-RP, 2022 WL 6851755 (W.D. Tex. Oct. 4, 2022) ..................... 8

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) .......................................................................................... 5

*GHX Indus. LLC v. Servco Hose & Supply LLC*,
  No. 6:19-cv-01552, 2020 WL 1492920 (W.D. La. Feb. 5, 2020) ......................... 32

*In re FDIC*,
  58 F.3d 1055 (5th Cir. 1995) .............................................................................. 26

*In re Gee*,
  941 F.3d 153 (5th Cir. 2019) ...................................................................... 4, 5, 11

*In re Paxton*,
  --- F.4th ---, 2022 WL 16921697 (5th Cir. 2022) .................................... *passim*

*In re Supplement Spot, LLC*,
   Civ. A. No. H-09-1144, 2009 WL 1343165 (S.D. Tex. May 12, 2009) ................................. 11

*In re Tullius*,
   No. 11-mc-365, 2011 WL 5006673 (W.D. Tex. Oct. 20, 2011) .............................................. 11

*Mullane v. Almon*,
   339 F.R.D. 659 (N.D. Fla. 2021) ......................................................................................... 10

*Patterson v. Dallas/Fort Worth Int'l Airport Bd.*,
   No. 3:18-cv-00307, 2021 WL 4240479 (N.D. Tex. Jan. 6, 2021) ........................................ 11

*Russell v. Jones*,
   49 F.4th 507 (5th Cir. 2022) .................................................................................................. 6

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................................................................ 5

*Texas v. Caremark, Inc.*,
   584 F.3d 655 (5th Cir. 2009) ................................................................................................. 6

*Tween Brands Inv., LLC v. Bluestar All., LLC*,
   No. 2:15-cv-2663, 2015 WL 5139487 (S.D. Ohio Sept. 1, 2015) ....................................... 10

*United Transp. Serv. Emps. of Am., CIO v. Nat'l Mediation Bd.*,
   179 F.2d 446 (D.C. Cir. 1949) .............................................................................................. 7

*Wilson v. Samson Contour Energy E&P, LLC*,
   No. 14-0109, 2014 WL 2949457 (W.D. La. June 30, 2014) ................................................ 32

**RULES**

Fed. R. Civ. P. 12 ............................................................................................................ *passim*

Fed. R. Civ. P. 26 ................................................................................................................ 2, 3

**INTRODUCTION**

In response to the Government's mandamus petition, the Fifth Circuit on November 21, 2022, stayed the depositions of three high-ranking officials "pending [the district court's] further consideration" of two issues: (1) "whether further discovery should be paused until a ruling on a timely-filed motion by the Government to dismiss," and (2) whether the information sought by Plaintiffs through depositions of the high-ranking officials "can be obtained through less intrusive, alternative means, such as further written discovery or depositions of lower-ranking officials." Order on Pet. for Mandamus at 1, 4-5, *In re Murthy*, No. 22-30697 (5th Cir. Nov. 21, 2022) ("*Murthy* Order"). In the meantime, the Fifth Circuit ruled that the depositions of the high-ranking officials—Surgeon General Vivek Murthy, Cybersecurity and Infrastructure Security Agency Director Jennifer Easterly, and White House Director of Digital Strategy and Deputy Assistant to the President Robert Flaherty—could not go forward absent "further order of" that court. *Id.* at 5.

This Court then granted the parties' request to submit supplemental briefing addressing the Fifth Circuit's order. Order, ECF No. 127. In doing so, the Court directed the parties to "brief whether any additional discovery should be paused pending this Court's resolution of Federal Defendants' forthcoming motion to dismiss." *Id.* Additionally, the Court directed the parties to "provid[e]" it "with suitable, alternative sources, besides . . . Dr. Vivek Murthy, Rob Flaherty, and Jen Easterly, for the evidence sought in the proposed depositions." *Id.* The Court has since made clear that its directives also apply with regard to former White House Press Secretary Jennifer Psaki, whose deposition was scheduled for December 8, 2022. *See* Order Denying Adjournment at 3, ECF No. 133. While the parties brief these issues and the Court considers the parties' positions, the parties have agreed to provisionally reschedule Ms. Psaki's deposition for December 22, 2022.

This Court should conclude that no additional expedited discovery is necessary pending resolution of Defendants' motion to dismiss. Five months ago, Plaintiffs moved for a preliminary injunction and claimed to need targeted expedited discovery to support that motion. In the five months since, Plaintiffs have received voluminous discovery: more than 15,000 pages of documents, interrogatory responses totaling nearly 100 pages, and depositions of four individuals, including Dr. Anthony Fauci. Any further discovery is neither "targeted" nor necessary for Plaintiffs to sufficiently supplement their long-pending preliminary injunction motion. On the contrary, Plaintiffs contend that the discovery they have obtained thus far already proves the purported "collusion and pressure" to censor speech and the irreparable harm asserted in the preliminary injunction motion. Pls.' Supplemental Br. Addressing the Fifth Circuit's Nondispositive Order Re Depositions at 30, ECF No. 137 ("Supp."). It is time for Plaintiffs to supplement that motion with the substantial discovery they have already obtained, rather than further prolong the expedited discovery period to the detriment of the orderly litigation procedures (including critical limitations and timetables) established by the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 26. Likewise, consistent with the Fifth Circuit's order, this Could should resolve the Government's now-filed motion to dismiss, which raises several threshold questions concerning the Court's subject-matter jurisdiction, and also challenges the facial plausibility of Plaintiffs' central legal claims, before ordering any more discovery. In that regard, Plaintiffs' accusation that Defendants have improperly delayed the motion to dismiss is baseless: It is Plaintiffs' conduct—continually amending their pleadings and leveling new allegations concerning scores of defendants, while burdening Defendants with expansive discovery requests—that underlies the passage of time between the Government's original July 12, 2022, motion to dismiss, and the now pending motion to dismiss that the Government filed on November

22, 2022. And it is Plaintiffs who have delayed resolution of the preliminary injunction motion by pressing forward with expedited discovery while failing to explain why that discovery is necessary to a decision on that motion. The time has come to turn to the parties' pending motions, and for the expedited discovery period to end.

If this Court nevertheless allows the extraordinary, expedited discovery here to continue before considering the motion to dismiss (and the preliminary injunction motion), the Court should still vacate its authorization of all depositions of high-ranking officials—Dr. Murthy, Director Easterly, Director Flaherty, and Ms. Psaki. As an alternative to those depositions, the Court should allow only limited discovery, as proposed by Defendants below, which provides sufficient alternatives for obtaining the information Plaintiffs seek. Further, this Court should make clear that after such limited alternative discovery, the expedited discovery period will end. All other discovery should be deferred, if it occurs at all, until after the Court decides the motion to dismiss and the preliminary injunction motion (including any supplement to that motion by the Plaintiffs) and, if necessary, the parties hold a Rule 26 conference to set the bounds of further discovery. Moreover, any schedule that allows discovery from such alternative sources should take account of the upcoming holidays. To avoid imposing impractical and disruptive discovery deadlines on Defendants, and especially on career public officials who may be subject to deposition as alternative witnesses, which would entail labor over the upcoming holidays, the deadline to complete expedited discovery from alternative sources should be set for January 13, 2023, at the earliest.

Additionally, if this Court does not vacate the deposition of Ms. Psaki, now provisionally scheduled for December 22, 2022, Defendants ask this Court to stay that deposition for at least 14 days, and pending the disposition of any mandamus petition filed within that period to challenge

the authorization of the deposition. If the Court declines to grant such a stay, then any ruling further authorizing Ms. Psaki's deposition should issue no later than December 8, 2022, 14 days before the deposition is currently scheduled.

## **ARGUMENT**

### I.     **The Court Should Not Allow Any Further Discovery Before Ruling On Defendants' Pending Motion To Dismiss.**

In staying the depositions of the high-ranking officials subject to Defendants' mandamus petition, the Fifth Circuit directed this Court to enter an order addressing "whether further discovery should be paused until a ruling on a timely-filed motion by the Government to dismiss." *Murthy* Order at 4-5. That question is answered by the Fifth Circuit's recent decision in *In re Paxton*, --- F.4th ---, 2022 WL 16921697 (5th Cir. 2022).

In *Paxton*, the Fifth Circuit issued a writ of mandamus and directed the district court to quash subpoenas seeking testimony from Texas Attorney General Ken Paxton. The court concluded that the district court had "clearly erred by not first ensuring its own jurisdiction" because "[a] court has a fundamental duty to examine its jurisdiction"—and a duty of "'making further inquiry'" when the court's jurisdiction is challenged. *Id.* at *1-3 (quoting *In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019) (per curiam)).

*Paxton* requires the Court to address the threshold issues raised in the motion to dismiss prior to authorizing (additional) discovery. Defendants' motion to dismiss contends that the Court lacks jurisdiction—because of an absence of Article III standing and because the Agency Defendants possess sovereign immunity—such that the Court lacks authority to order additional discovery. Moreover, given that Plaintiffs are seeking an additional round of extraordinary, expedited discovery, the Court should also resolve Defendants' pending motion to dismiss under

Fed. R. Civ. P. 12(b)(6), because those arguments, should they prevail, would also obviate the need for further discovery.

### 1. The Rule 12(b) Motion Raises Threshold Issues That Should Be Resolved Before Further Discovery Continues.

The Fifth Circuit ordered this Court to consider whether further discovery is appropriate while Defendants' motion to dismiss remains pending, and if so, to explain why. For the reasons set forth below, this Court should decline to allow any further discovery before resolving important threshold questions—on subject-matter jurisdiction and the merits—presented in Defendants' now-pending Rule 12(b) motion.

Whether the Court has jurisdiction over this case is a "first and fundamental" question that must be resolved before the case may "proceed at all." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citations omitted). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* (cleaned up). Accordingly, "[a] court has a fundamental duty to examine its jurisdiction" upon "[a]n appropriate jurisdictional challenge." *In re Paxton*, 2022 WL 16921697, at *2-3; *see also In re Gee*, 941 F.3d at 159 ("A district court's obligation to consider a challenge to its jurisdiction is non-discretionary."). "[S]tanding 'is perhaps the most important of [the jurisdictional] doctrines.'" *Id.* (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 217, 231 (1990))). And in suits against the Government, sovereign immunity—which provides "immunity from suit" entirely—is an equally important jurisdictional doctrine. *In re Paxton*, 2022 WL 16921697, at *3. Indeed, the principle that "a defendant's entitlement to immunity 'should be determined at the earliest possible stage of the litigation . . . admits of no exceptions.'" *Id.* (quoting *Carswell v. Camp*, 37 F.4th 1062, 1067 (5th Cir. 2022)).

The Fifth Circuit's order in this case came on the heels of its published decision in *Paxton*, where the court held that a district court may not postpone consideration of jurisdictional challenges on the ground that it "prefer[s] to put off the motion [to dismiss] until 'other legal issues [are] resolved and further discovery [is] conducted.'" *Id.* at *3 (quoting *Texas v. Caremark, Inc.*, 584 F.3d 655, 657 (5th Cir. 2009)). The court emphasized, moreover, that Paxton's motion to dismiss argued that sovereign immunity posed a jurisdictional bar to the plaintiffs' suit. *Id.*; *see also Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022) ("Where sovereign immunity applies, it applies totally. Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery. They don't pass go.").

In light of *Paxton*, the Court must decide Defendants' Rule 12(b)(1) motion before allowing additional discovery. As in *Paxton*, the Rule 12(b)(1) motion here raises substantial challenges to the Court's subject-matter jurisdiction because Plaintiffs lack Article III standing and their claims are barred by sovereign immunity. *See* Mot. to Dismiss Second Am. Compl. at 17-49, ECF No. 128 ("Mot. to Dismiss"). The Court has not yet considered, with the benefit of full briefing, whether Plaintiffs have Article III standing.[1] And it has not considered *at all* whether

---

[1] In its July 12, 202 Discovery Order, issued just hours *before* Defendants filed their earlier motion to dismiss, the Court stated that the States have standing to bring this suit. Discovery Order at 3-9, ECF No. 34. That conclusion was based, however, only on Defendants' preview, in their July 1 opposition to expedited discovery, of the defects in the States' standing allegations that would be elaborated in Defendants' forthcoming motion to dismiss. *See* Defs.' Resp. to the States' Mot. for Expedited Discovery at 9, ECF No. 26 ("On July 12, 2022—Defendants' current deadline to respond to the Complaint—Defendants expect to file a Rule 12(b) motion to dismiss explaining that the States lack Article III standing. The Court should resolve that motion before *any* discovery is allowed, much less expedited discovery."). Indeed, Defendants' motion to dismiss filed later that same day explained in detail why the States not only lacked standing but also failed to allege a waiver of sovereign immunity as to their claims against the Agency Defendants. *See* Mot. to Dismiss, ECF No. 35. Because Plaintiffs subsequently amended their complaint, First Am. Compl., ECF No. 45, Defendants withdrew their motion to dismiss the original complaint, *see* ECF No. 53, and that motion was not fully briefed. After Plaintiffs filed their Second Amended Complaint on

6

an applicable waiver of sovereign immunity permits them to bring their claims against the Agency Defendants.[2]

Even if the Court concludes that it has subject-matter jurisdiction, it should consider the second important question raised in Defendants' Rule 12(b) motion before permitting further discovery: whether Plaintiffs' allegations state a facially plausible claim for relief. The Fifth Circuit determined that this was "[a]nother consideration [that] needs to be addressed" by this Court. *Murthy* Order at 4. As the Rule 12(b) motion explains, the allegations in the operative Complaint do not state a facially plausible claim for relief under the Free Speech Clause or any other law, and thus any discovery—expedited or otherwise—is unwarranted. And there is no reason to allow further discovery before testing the legal sufficiency of Plaintiffs' 163 pages of allegations under Rule 12(b)(6). Plaintiffs do not assert that any discovery is necessary before the Court may assess the facial plausibility of their claims, nor could they: when a "complaint is deficient under Rule 8," the pleader "is not entitled to discovery, cabined or otherwise." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).[3] On the contrary, Plaintiffs have asserted time and time again that they have all they need to prove the First Amendment violations they allege. *See* Supp. at 30. Despite purportedly having all they need to state their claims, Plaintiffs continue to seek more. But the discovery Defendants have already produced—in this unusual, expedited posture—is "extensive." *Murthy* Order at 4. The parties should "not be put to the trouble and expense of any

_____

October 6, 2022, ECF No. 84 ("SAC"), Defendants filed their currently pending motion to dismiss on November 22, 2022, ECF No. 128.

[2] As stated in the motion to dismiss, "Agency Defendants" includes all agencies, and the officials sued in their official capacities, against whom Plaintiffs have brought First Amendment and Administrative Procedure Act claims. Mot. to Dismiss at 14.

[3] Nor have Plaintiffs asserted that discovery is necessary to support their jurisdictional allegations. To the contrary, Plaintiffs have consistently urged further discovery to prove the merits of their claims for purposes of litigating their preliminary injunction motion.

further proceedings" in expedited discovery, "and the time of the court should not be" further occupied with such proceedings, *United Transp. Serv. Emps. of Am., CIO v. Nat'l Mediation Bd.*, 179 F.2d 446, 454 (D.C. Cir. 1949), until Plaintiffs' allegations surpass the threshold plausibility test.

Accordingly, the Court should not permit any further expedited discovery, including depositions of high-ranking officials or discovery from any alternative sources, until first resolving Defendants' pending motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim.

### 2. The Pendency Of A Preliminary Injunction Motion Is No Basis For Allowing Further Expedited Discovery Before The Court Resolves The Motion To Dismiss.

Plaintiffs' primary objection to resolving the Rule 12(b) motion without further expedited discovery is that doing so would purportedly delay resolution of their motion for preliminary injunction. But that motion for interim relief—the resolution of which Plaintiffs have delayed by seeking voluminous discovery for more than five months—neither dispenses with the obligation to ascertain the Court's jurisdiction and the sufficiency of Plaintiffs' claims, nor permits Plaintiffs to continue seeking broad-ranging discovery outside the usual framework and timetable of Rule 26.

First, Plaintiffs' argument cannot be squared with the Fifth Circuit's decision in *Paxton*. There, as here, the plaintiffs had filed a motion for preliminary injunction. *Fund Tex. Choice v. Paxton*, No. 1:22-CV-859-RP, 2022 WL 6851755, at *1 (W.D. Tex. Oct. 4, 2022). Indeed, the subpoenas at issue in that case had ordered Paxton to testify "at a hearing on Plaintiffs' motion for a preliminary injunction." *Id.* The fact that a motion for preliminary injunction was pending had no bearing on the Fifth Circuit's determination that the district court "had a non-discretionary duty to ascertain its jurisdiction by ruling on Paxton's motion to dismiss" before ordering Paxton to

testify. *In re Paxton*, 2022 WL 16921697, at *4. The same is true here: Plaintiffs' one-sided view that they are entitled to expedited, preliminary relief cannot supersede the Court's obligation to ascertain its jurisdiction by resolving Defendants' motion to dismiss.

In any event, Plaintiffs' assertion that discovery must continue for purposes of supporting their motion for preliminary injunction, even while the Court resolves Defendants' motion to dismiss, is contradicted by their own allegations. Plaintiffs contend that they "continue to suffer irreparable harm *every day* their preliminary injunction motion remains pending." Supp. at 30 (emphasis added). And they disclaim a need for further discovery to bolster their preliminary injunction arguments—according to Plaintiffs, the discovery they have already received already "*attest[s]* to ongoing collusion and pressure by federal officials" purportedly causing such harm. *Id.* (emphasis added). But if all of this is true, then the proper course is to end expedited discovery and to litigate the preliminary injunction motion. Defendants have repeatedly urged the Court to "resolve Plaintiffs' pending preliminarily injunction motion before allowing [them] to conduct" further expedited discovery. The Parties' Joint Stmt. on Discovery Disputes at 33, ECF No. 71 ("Joint Stmt. on Written Discovery"). It is unclear why Plaintiffs resist the Court doing so, given their complaints of "irremediable loss" without an injunction. Supp. at 31. Plaintiffs even contend that the alleged "censorship is likely to increase and expand" "*unless and until* the district court provides Plaintiffs with injunctive relief." *Id.* (emphasis added). In light of Plaintiffs' own assertions, not only is there no permissible ground for further expedited discovery before Defendants' motion to dismiss is resolved, but there is also no need for it.

This Court could meet Plaintiffs' professed concern about harm to their Free Speech Clause rights while the Rule 12(b) motion is decided by setting a schedule under which briefing on the preliminary injunction motion and the Rule 12(b) motion concludes concurrently. Under the most

recent schedule adopted prior to the Fifth Circuit's Order, Plaintiffs' opposition to Defendants' motion to dismiss is due on the same day, December 29, as Plaintiffs' supplemental briefing on their preliminary injunction motion. *See* Order, ECF No. 99 (setting the deadline for completing depositions on December 9); Discovery Order at 14 (giving Plaintiffs 20 days after the completion of depositions to supplement their preliminary injunction motion); Order, ECF No. 108 (setting December 29 as the deadline for Plaintiffs' response to the motion to dismiss). In considering Defendants' motion to adjourn the deposition of Ms. Psaki, the Court extended the close of the expedited discovery on depositions from December 9 to December 30. But the Court can realign the schedules for both motions if it rules by December 9 that no additional discovery will be permitted before those two motions are decided. Were the Court to do so, Plaintiffs would have 20 days, or until December 29, both to respond to the motion to dismiss and to supplement their motion for preliminary injunction.[4]

As things stand, Plaintiffs appear content to delay the resolution of their motion by seeking continual discovery. No amount of expedited discovery, however, is "automatic[]" "merely because a party seeks a preliminary injunction" alleging irreparable harm, as Plaintiffs' arguments appear to assume. *Mullane v. Almon*, 339 F.R.D. 659, 665 n.2 (N.D. Fla. 2021) (quoting *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009)); *Tween Brands Inv., LLC v. Bluestar All., LLC*, No. 2:15-cv-2663, 2015 WL 5139487, at *3 (S.D. Ohio Sept. 1, 2015) ("Although requests for expedited discovery typically arise in connection with a motion for preliminary injunction, such requests are not automatically granted simply because a motion for preliminary injunction is pending."). The information sought on an expedited basis must be

---

[4] If the Court concludes that no further discovery should continue before the motions are resolved, Defendants will not oppose a reasonable extension of Plaintiffs' deadline to respond, in light of the upcoming holidays.

"narrowly tailored" and "*necessary*" to resolving such a motion. *BKGTH Prods., LLC v. Does 1-20*, Civ. A. No. 13-5310, 2013 WL 5507297, at *5-6 (E.D. La. Sept. 30, 2013) (emphasis added). Yet Plaintiffs do not explain how the information they seek from the high-ranking officials, or any alternative source, is necessary to litigate the preliminary injunction motion. Again, they purport to have extensive documents that "attest to" the merits of their claims. Supp. at 30. Those claims should be tested now through resolution of the motion to dismiss and the preliminary injunction motion in concurrent or coordinated briefing.

### 3. Plaintiffs' Remaining Objections To Pausing Expedited Discovery While Resolving The Motion To Dismiss Are Unavailing.

Plaintiffs' remaining objections to this Court's orderly resolution of the Rule 12(b) motion prior to authorizing further discovery center on the timing of the Rule 12(b) motion. Those objections are meritless and mischaracterize the record.

First, for jurisdictional purposes, it makes no difference that Defendants filed their motion to dismiss after expedited discovery commenced. "An appropriate jurisdictional challenge triggers a 'duty of making further inquiry as to [the court's] own jurisdiction.'" *In re Paxton*, 2022 WL 16921697, at *2 (quoting *In re Gee*, 941 F.3d at 159). That rule does not depend on the timing of a motion to dismiss for lack of subject-matter jurisdiction, and Plaintiffs cite no authority to the contrary. Thus, the timing of the Rule 12(b) motion could not possibly dispense with the Court's obligation to address its subject-matter jurisdiction and the sufficiency of Plaintiffs' claims.

Second, Plaintiffs err in contending that Defendants "waived any objection to proceeding with expedited discovery . . . by acquiescing in expedited discovery for four months without appellate challenge." Supp. at 29. Interlocutory orders are generally not subject to appeal; instead, interlocutory appellate review is "exceptional," *Patterson v. Dallas/Fort Worth Int'l Airport Bd.*, No. 3:18-cv-00307, 2021 WL 4240479, at *1 (N.D. Tex. Jan. 6, 2021), and "generally

inappropriate" when it comes to discovery orders, *In re Tullius* No. 11-mc-365, 2011 WL 5006673, at *2 (W.D. Tex. Oct. 20, 2011) (quoting *In re Supplement Spot, LLC*, Civ. A. No. H-09-1144, 2009 WL 1343165, at *1 (S.D. Tex. May 12, 2009)). Plaintiffs essentially fault Defendants for resorting to mandamus—an "extraordinary remedy" imposing "stringent standards," *In re Paxton*, 2022 WL 16921697, at *2—only as to the court-authorized depositions of several high-ranking officials. But Defendants' compliance with this Court's discovery orders and decision to seek mandamus only as to some depositions does not mean that Defendants waived or forfeited objection to all other discovery authorized in this case; it means Defendants showed restraint in seeking appellate relief, in deference to both this Court and the Fifth Circuit given the extraordinary nature of that relief. At the same time, Defendants have repeatedly urged the Court to rule on the Rule 12(b) motion or Plaintiffs' preliminary injunction motion prior to authorizing further discovery. *See, e.g.*, Defs. Resp. to the State's Mot. for Expedited Discovery at 8-12, ECF No. 26; Joint Stmt. on Written Discovery at 32-34.

Third, the procedural history belies the notion that Defendants improperly delayed filing the Rule 12(b) motion. Plaintiffs mischaracterize the record when they assert that Defendants waited "nearly seven months after Plaintiffs filed their original Complaint" to move to dismiss. Supp. at 32-33. On the contrary, Defendants moved to dismiss the original Complaint on July 12, 2022—60 days after service of the complaint, as provided by the Federal Rules. Since then, Plaintiffs have twice amended their complaint, and Defendants have timely moved to dismiss the operative complaint. Accordingly, it is far from clear how *Plaintiffs* have been prejudiced by the timing of Defendants' motion to dismiss when Plaintiffs have availed themselves of the opportunity to supplement their complaint with discovery material outside of the ordinary process. *See Iqbal*, 556 U.S. at 678-79. Moreover, Plaintiffs made these same, erroneous timeliness

arguments before the Fifth Circuit, *see* Response to Pet. for Mandamus at 13-14, *In re Murthy*, No. 22-30697 (5th Cir. Nov. 14, 2022), but that court's order does not suggest it was persuaded that the timing of Defendants' Rule 12(b) motion reflected improper delay or had any bearing on whether discovery should move forward absent this Court's ruling on it. Rather, the Fifth Circuit highlighted that Defendants had "already produced extensive written discovery," and admonished this Court to "evaluate the prudence of first ruling on the Government's forthcoming motion to dismiss before authorizing additional depositions." *Murthy* Order at 4.

## II.   Any Discovery Ordered In Lieu Of The Depositions Of High-Ranking Officials Should Be Limited And Narrowly Tailored To The Context Of Expedited Discovery.

For the reasons explained above, no further discovery should go forward at this stage of the litigation. Instead, this Court should first resolve the Rule 12(b) motion and the preliminary injunction motion. If the Court does order further discovery, none of the depositions of the high-ranking officials—Director Flaherty, Director Easterly, Dr. Murthy, and Ms. Psaki—should go forward. Rather, to the extent the Court concludes that more discovery is necessary, it should limit that discovery to the less intrusive and sufficient alternatives to such depositions that are outlined below.

Plaintiffs claim that "[a]ll four officials at issue here . . . possess information that is crucial to Plaintiffs' First Amendment claims" and that "[t]he only question is whether Plaintiffs can access this information by alternative, less intrusive means than depositions." *See* Supp. at 2. Whether the information sought is in any way relevant, or even "crucial," to the litigation of Plaintiffs' First Amendment claims is, to put it mildly, a disputed proposition—but in any event it frames the question far too broadly. The focus of the inquiry at this juncture should be whether the information sought is "necessary" for the litigation of the *preliminary injunction motion*. *BKGTH Prods., LLC*, 2013 WL 5507297, at *5. Thus, when considering less intrusive alternatives to the

depositions of these officials, this Court should assess whether *any* such discovery is necessary, even if it comes from an alternative source, in order to resolve the preliminary injunction motion only—not whether Plaintiffs have obtained discovery on every allegation in their sprawling, 163-page Second Amended Complaint.

As discussed below, Plaintiffs have sufficient information for current purposes of their preliminary injunction motion and no further discovery should be ordered as to certain of the high-ranking officials. Indeed, Plaintiffs' supplemental brief includes *new* grounds for seeking particular depositions. Those arguments should give the Court pause: it is doubtful that "exceptional" circumstances exist when Plaintiffs' arguments continually shift. But if this Court were to order any additional discovery pertaining to each of the high-ranking officials, then, for the reasons explained below, it should order no more than the following:

- The production by January 13, 2023, of e-mail communications between social media platforms and Director Flaherty pertaining to misinformation and/or content modulation, in lieu of any deposition of Director Flaherty.
- The deposition of Geoffrey Hale, to be completed by January 13, 2023, in lieu of any deposition of Director Easterly.
- The deposition of Eric Waldo, to be completed by January 13, 2023, in lieu of any deposition of Dr. Murthy.
- Amendment by January 13, 2023, of Defendants' interrogatory responses on behalf of the White House Office of the Press Secretary after conferring with Ms. Psaki to obtain additional relevant information, if any, from her, in lieu of any deposition of Ms. Psaki.

To the extent this Court orders such discovery, that discovery should mark the end of the expedited discovery period ahead of the Court's resolution of the preliminary injunction motion.

Defendants discuss below the sufficient, alternative sources of information for each of the four high-ranking officials at issue.

14

1.   **White House Director of Digital Strategy Robert Flaherty.**

The Fifth Circuit has recognized that Robert Flaherty, serving as a "Deputy Assistant to the President, two levels removed from the chief executive," and "as the Director of the Office of Digital Strategy, the chief manager of the President's digital communications," is a high-ranking official according to Fifth Circuit precedent. *See Murthy* Order at 2-3. Thus, Plaintiffs must demonstrate "exceptional circumstances" to warrant taking his deposition. *Id*. Recognizing that they cannot make such a showing, Plaintiffs now ask this Court to impose other burdens on this high-ranking official by subjecting him to written discovery, including written interrogatories, with a threat that any "vague" or "evasive" response, as purportedly interpreted by Plaintiffs, would then be grounds for his deposition. *See* Supp. at 10. But this Court should reject imposing those burdens on this high-ranking official. That is especially so here given that Plaintiffs have more than sufficient information in their possession to supplement and resolve their motion for preliminary injunction. If this Court does order any written discovery on Director Flaherty, it should establish proper guardrails, as discussed below, to lessen the burden.

Of course, establishing exceptional circumstances to depose a high-ranking official—and in particular, a White House official—requires exhaustion of all other sources of information first. *See generally Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004). But Plaintiffs forfeited their right to seek the alternative discovery necessary to meet that prerequisite as to Director Flaherty by failing to serve him with written discovery by the deadline set by the Court's initial discovery order. The Court's July 12 authorization of expedited written discovery provided that such discovery must be served within five days—that is, by July 17. Order, ECF No. 34, at 13. Plaintiffs did not serve discovery on Director Flaherty by that date. They instead sought discovery from the White House Office of the Press Secretary only. Any unawareness of Director Flaherty's

discussions with social media officials at that time is no excuse to their failure to serve his office: It strains credulity that Plaintiffs did not consider including the White House Office of Digital Strategy in a case addressing social media. Thus, this Court correctly denied Plaintiffs' subsequent, belated request to serve written discovery on Director Flaherty, and a range of others who were to be newly added as defendants in the Second Amended Complaint filed in October. *See* Order, ECF No. 72, at 3-4.

Plaintiffs now seek a do-over, asking the Court again to open up written discovery as to Director Flaherty that the Court already denied. But, Plaintiffs should not be permitted to use the re-evaluation of the authorization of his deposition as a new opportunity to *reopen* written discovery that has already closed. That would allow them to turn what is supposed to be an expedited process of targeted discovery into a never-ending effort to extract more and more discovery from Defendants while at the same time claiming already to possess compelling evidence supporting their claims. *See id.* at 4 ("This Court is aware of the burden it has put on all parties in this proceeding with the expedited discovery schedule. To add additional expedited discovery during the current schedule would be too much.").

Even if Plaintiffs had not forfeited their right to obtain written discovery from Director Flaherty, it would still be improper in its own right. Although a deposition is certainly the most intrusive and burdensome form of discovery—and Defendants agree with Plaintiffs that a deposition of Andrew Slavitt, a former senior White House official, would not be an appropriate alternative including because Mr. Slavitt's position was also high-ranking—written discovery imposes its own burdens. A court should be mindful of those burdens for high-ranking White House officials, even if the discovery does not implicate questions of privilege. The Supreme Court has long recognized "the paramount necessity of protecting the Executive Branch from vexatious

16

litigation that might distract it from the energetic performance of its constitutional duties." *Cheney*, 542 U.S. at 382; *id*. at 385 (admonishing courts "that the Executive's 'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of litigation against it"). In particular, interrogatories that require a high-ranking official to personally answer an open-ended series of questions can impose substantial burdens that divert their time and attention from their official duties and should not be unnecessarily imposed.

These burdens are not warranted. Plaintiffs' own supplemental brief shows that they already have more than sufficient information about Director Flaherty's communications with social-media companies to supplement their preliminary injunction motion. In seeking additional written discovery concerning his communications, Plaintiffs cite a series of such communications already in their possession. *See* Supp. at 6-8 (citing what appear to be more than ten examples). And according to Plaintiffs, these e-mails already "provide[] compelling evidence that [Director] Flaherty was pressuring and colluding with social-media platforms to censor speech." *See id.* at 5. Thus, for purposes of the current proceedings—again, discovery merely to allow Plaintiffs to supplement their long-pending motion for preliminary injunction—there is no need for further written discovery from Director Flaherty. Discovery should close and Plaintiffs should supplement their already filed motion for preliminary injunction with the voluminous evidence they have already gathered. All other discovery questions can be deferred, if necessary, until after Defendants' motion to dismiss and the preliminary injunction motion are decided.

If this Court orders written discovery on Director Flaherty, it should impose proper guardrails. First, any written discovery should be limited to document requests, rather than interrogatories. The requests should be confined to the same requests that Defendants have already responded to on behalf of other custodians: external e-mail communications with social media

17

platforms concerning misinformation or content modulation during Director Flaherty's time in Government. Any requests for internal governmental communications that may implicate privileged communications would be particularly burdensome and improper as applied to a senior White House official. As the Supreme Court explained, "precedents provide no support for the . . . requirement that the Executive Branch bear the burden of invoking executive privilege with sufficient specificity and of making particularized objections [to producing large numbers of individual documents]. Indeed, those precedents suggest just the opposite." *Cheney*, 542 U.S. at 371. Likewise, as discussed above, interrogatories directed at high-ranking officials impose their own burdens, and Plaintiffs cannot show any particular need to serve interrogatories on Director Flaherty in the context of Defendants producing responsive external e-mail communications with social media companies.

Additionally, in light of the holiday season and the burdens such further discovery would impose, Defendants should have until January 13, 2023, to respond to any such document requests served on Director Flaherty. And, again, whatever discovery this Court may now authorize in lieu of Director Flaherty's deposition, if any, should be the end of expedited discovery as to him.

In sum, this Court should not order any additional discovery for Director Flaherty at this stage of the proceedings. But if it does, it should limit such discovery to document requests for his external e-mail communications with social media platforms, during his Government service, on the subjects of misinformation and content modulation, as raised in the preliminary injunction motion.

18

### 2.   Cybersecurity and Infrastructure Security Agency Jen Easterly.

A deposition of Director Easterly is also unjustified in light of the Fifth Circuit's reasoning in *Murthy*. Ignoring that reasoning, Plaintiffs purport to seek authorization to depose two other Cybersecurity and Infrastructure Security Agency (CISA) officials in her place—Brian Scully and Lauren Protentis—while still insisting on the right to question her if (in their estimation) Ms. Easterly's "deposition is still needed." Supp. at 6. Plaintiffs' approach is untenable. The Court should unequivocally disallow Director Easterly's deposition for purposes of the preliminary injunction motion, and if the Court is inclined to afford Plaintiffs an opportunity to take a deposition in lieu of Director Easterly's, then the appropriate alternative witness is Geoffrey Hale, CISA's Associate Director of Election Security and Resilience who often reports to Director Easterly.

As an initial matter, Plaintiffs have not shown that additional discovery of any kind concerning CISA is necessary for them to support their already filed preliminary injunction motion. Defendants have produced a voluminous body of e-mails from CISA employees. Plaintiffs can supplement their preliminary injunction motion by drawing on those e-mails. They need no deposition testimony from any witness, much less Director Easterly, to be able to do so.

Plaintiffs previously argued that the deposition of Director Easterly was necessary because her public statements purportedly exhibited personal knowledge relevant to Plaintiffs' claims in this action. But the Fifth Circuit concluded that "[i]t is unlikely that a desire to probe the meaning of" public "statements" "warrants the extraordinary measure of deposing" the "high-ranking official" who makes them. *Murthy* Order at 4 n.1 (citing *In re Paxton*, 2022 WL 16921697, at *4). And the Fifth Circuit referred to Director Easterly by name to illustrate that point: the Court of Appeals deemed it "unlikely" that "public statements Easterly has made regarding her agency's

mission to protect our nation's 'cognitive infrastructure'" would "warrant[]" authorizing her deposition. *Id.* Thus, for similar reasons, there is no need for this Court to consider whether there are alternative sources of the information Plaintiffs seek from Director Easterly when obtaining that information would be an insufficient justification for deposing her, even if she were the only source. That is especially true here given that the only authorized function of the expedited discovery is to enable Plaintiffs to supplement their already filed preliminary injunction motion, which Plaintiffs can do by drawing on the voluminous CISA records that Plaintiffs have possessed *since mid-August*.

If the Court nevertheless concludes that Plaintiffs must be afforded at least *some* deposition testimony from a CISA official as an alternative to deposing Director Easterly, the Court should authorize Plaintiffs to take only one deposition in lieu of Director Easterly's—in particular, a deposition of Geoffrey Hale. Again, Mr. Hale is the Associate Director of Election Security and Resilience at CISA. And unlike Director Easterly, he was employed by the agency during the 2020 election, the time-period of interest to Plaintiffs so far as CISA is concerned. Furthermore, based on a review of Defendants' e-mail productions, Mr. Hale appeared to be on substantially more e-mail communications with social media companies than Director Easterly (even though each was a custodian whose e-mail account was searched). Tellingly, although Defendants previously offered Mr. Hale as a substitute deponent for Director Easterly, Plaintiffs never identified any reason (substantive or otherwise) for their refusal of that offer and for their insistence instead on deposing Director Easterly.

Plaintiffs' position that they should be allowed to depose Mr. Scully *and* Ms. Protentis (while still leaving the door open to a potential deposition of Director Easterly) is unsound. To state the obvious, ordering *two* additional depositions at this preliminary stage would exceed the

bounds of expedited discovery, which must be "narrowly tailored" and "necessary" to resolving Plaintiffs' motion for preliminary injunction. *BKGTH Prods., LLC*, 2013 WL 5507297, at *5. This is especially true in light of the fact that Mr. Hale is a better alternative than Mr. Scully, Ms. Protentis, or both.

As to Mr. Scully: Plaintiffs stumble out of the gate by arguing (Supp. at 15-18) that an expedited deposition of *Mr. Scully* is necessary to obtain information *he* uniquely possesses and which they did not seek to obtain from *Director Easterly* in the first instance. Again, the question before the Court is whether there exist adequate alternative sources of the information that Plaintiffs sought from Director Easterly. Plaintiffs go beyond that inquiry and propose to seek *new* information, entirely unrelated to their proposed deposition of Director Easterly, to justify the deposition of a *new* official. In particular, Plaintiffs suggest that Mr. Scully would be able to testify to CISA's involvement in the Election Integrity Partnership (EIP). Supp. at 18-19. In support, Plaintiffs cite numerous e-mails between social media companies and Mr. Scully. *Id.* Those e-mails are not indicative, however, of knowledge possessed by *Director Easterly*, and they do not explain why Mr. Scully would be the most logical alternative source for that knowledge; indeed, Director Easterly is not included on the e-mails that Plaintiffs cite. By contrast, Mr. Hale—a more direct advisor to Director Easterly (and Mr. Scully's supervisor)—would be more likely to share knowledge of any relevant information that Plaintiffs purport to seek from Director Easterly.

As for Plaintiffs' separate interest in deposing Mr. Scully on subjects unrelated to their proposed deposition of Director Easterly, Plaintiffs' arguments arrive too late because they failed, by the October 14 deadline for the parties' submissions on expedited discovery depositions, to argue that Mr. Scully's deposition was necessary. In the operative complaint filed October 6, Plaintiffs named Mr. Scully as a defendant and sought to depict his conduct as giving rise to

liability, SAC ¶ 425, so Plaintiffs could of course have argued in their October 14 submission that his deposition was necessary. They made no such argument—they did not discuss Mr. Scully in the October 14 submission—so the time for seeking his deposition has come and gone.

Indeed, Plaintiffs' position that the Court should now entertain their newly-minted depiction of Mr. Scully as "a government contact in three-way discussions among [EIP], social-media platforms, and CISA," *see* Supp. at 18, is an impermissible departure from Plaintiffs' October 14 submission. There, based on the Complaint's allegations about the EIP, SAC ¶¶ 415-16, 440, Plaintiffs sought to depose Daniel Kimmage of the Department of State—not Mr. Scully. Joint Stmt. Re Witness Dep. at 30-31, ECF No. 86. Of course, following this Court's order, Plaintiffs deposed Mr. Kimmage on November 10. Plaintiffs thus had their opportunity to obtain testimony about the EIP from a live witness. Their strategic decision to pursue Mr. Kimmage rather than Mr. Scully is a litigation choice they cannot now be allowed to revisit.

As to Ms. Protentis: Mr. Hale is a suitable alternative source of the information that Plaintiffs seek from Director Easterly such that the deposition of Ms. Protentis would be unnecessary. Plaintiffs argue generally that "it is likely that [Ms.] Protentis is familiar with what occurs during a significant and relevant subset of [CISA] meetings." Supp. at 16. In support, Plaintiffs cite e-mails that Ms. Protentis sent to social media companies regarding CISA's Election Security and Resilience meetings (mainly, the meeting agendas). *Id.* Mr. Hale, however, was also on many of those e-mails. *See* ECF No. 134-3 at 1-9. Plaintiffs also note that Ms. Protentis gave a presentation at an Election Infrastructure Subsector Coordinating Council Meeting on March 31, 2022. Supp. at 17. But Mr. Hale presented at that meeting, too. *See* Ex. 8, Joint Stmt. Re Witness Dep. at 3, ECF No. 86-8. Accordingly, for the purpose of obtaining Director Easterly's personal knowledge of CISA's meetings with social media companies, the evidence Plaintiffs cite fails to

show that Ms. Protentis is a more suitable alternative than Mr. Hale. And more generally, Plaintiffs remain unable to explain why Mr. Hale is not better positioned to speak in lieu of Director Easterly, given that he reports more directly to Director Easterly, whereas Ms. Protentis is at least two further steps removed from Director Easterly in the organizational chart. Ms. Protentis is even further removed from Director Easterly than Mr. Scully, to whom she reports.

Also of critical practical importance is that Ms. Protentis is on maternity leave, as Defendants previously explained. *See* Joint Stmt. Re Witness Dep. at 63 n.4, ECF No. 86. Ms. Protentis does not return from leave until late January. It would be unreasonably cumulative and duplicative to require her deposition, given the document discovery concerning CISA that Plaintiffs have already obtained, and requiring her to sit for a seven-hour deposition would serve only as a nuisance, indeed, an undue burden upon Ms. Protentis at this time. Courts avoid imposing such irresponsible burdens. *Cf. Alexander v. Jesuits of Mo. Province*, 175 F.R.D. 556, 559 (D. Kan. 1997) (quashing subpoena to prevent harassing deposition of pregnant witness).

Accordingly, this Court should find that Plaintiffs have sufficient alternative sources of information already in their possession but, at most, this Court should order the deposition of Geoffrey Hale in lieu of Director Easterly. Given the upcoming holidays, this Court should give the parties until January 13, 2023, to conduct any such deposition. And, to avoid further elongating this process, that should be the close of any discovery on CISA during these expedited discovery proceedings.

### 3. Surgeon General Vivek Murthy.

Although Plaintiffs once again ask this Court to authorize the deposition of the Surgeon General, that deposition remains improper in light of the Fifth Circuit's guidance. The question

now is whether there are "suitable alternative sources for the evidence sought in the proposed depositions." *Murthy* Order at 4-5. And there are such alternatives here.

At the outset, Plaintiffs again have not shown that additional discovery of any kind concerning the Office of the Surgeon General is necessary for them to support the preliminary injunction motion. Defendants have produced voluminous e-mails from the Office of the Surgeon General through which Plaintiffs can supplement their motion. They need no deposition testimony from any witness, much less the Surgeon General, to be able to do so. The written materials, in other words, are themselves a "suitable alternative source[]."

Even if the "suitable alternative source[]" inquiry were to call for a deponent, Dr. Murthy's deposition would remain improper, given that even Plaintiffs appear to acknowledge (albeit "[i]n the alternative" (Supp. at 22)) that the senior advisor and former chief engagement officer in Dr. Murthy's Office, Mr. Waldo, is an adequate alternative witness to the extent there is any need for any further discovery directed to the Office of Surgeon General in the current posture. That obviates the need to further address Plaintiffs' renewed bid for Dr. Murthy's deposition, but in any event, Plaintiffs' arguments concerning Dr. Murthy continue to fail to satisfy the exceptional circumstances test because he lacks unique personal knowledge essential to the preliminary injunction motion.

*First*, although Plaintiffs maintain that they do not "concede" that Mr. Waldo is an "adequate" alternative witness, *see* Supp. at 22, Plaintiffs not only accept Mr. Waldo "in the alternative," but they underscore Mr. Waldo's fitness for the purpose by attaching correspondence reflecting his participation in communications in which he functioned "on behalf of" Dr. Murthy when discussing COVID-19 misinformation on social media platforms. ECF No. 134-7 at 3. Those communications came from the voluminous records from the Office of the Surgeon General that

24

Defendants produced, and a deposition of Mr. Waldo combined with those records is more than sufficient to fully litigate the preliminary injunction motion. The key question from the Fifth Circuit is thus easy to answer here because Mr. Waldo's deposition would be a "less intrusive, alternative means" for obtaining testimony from Dr. Murthy. *See Murthy* Order at 4.

Plaintiffs' effort to continue to dispute the sufficiency of Mr. Waldo—an alternative witness Defendants previously offered to Plaintiffs as a reasonable compromise of their deposition demands—misunderstands the key concept. In directing this Court to enter findings regarding "*suitable alternative* sources for the evidence sought in the proposed depositions," *Murthy* Order at 4-5 (emphasis added), the Fifth Circuit in no way indicated that a subordinate official's testimony must be a perfect alternative rather than a "suitable" one for the high-ranking officials' testimony. That is, the Court can readily conclude that Mr. Waldo is a suitable alternative without requiring representations that Mr. Waldo and Dr. Murthy have precisely identical knowledge. (Given that no two witnesses ever have precisely identical knowledge, such a requirement would be nonsensical.) Plaintiffs' notion that the Court should entertain the prospect of ordering Dr. Murthy's deposition after the completion of Mr. Waldo's deposition (Supp. at 25-26) is therefore untenable.

*Second*, although there is no need to reach Plaintiffs' renewed bid to depose Dr. Murthy given that the Court can accept Mr. Waldo as an adequate substitute, Plaintiffs' arguments as to Dr. Murthy are incorrect even on their own terms. Plaintiffs once again fixate on text messages between Dr. Murthy and Facebook executive Nick Clegg, echoing their prior position (ECF 86 at 26) that the exchange implies personal knowledge unique to Dr. Murthy for purposes of the doctrine restricting depositions of high-ranking government officials. But those text messages remain inadequate. The Fifth Circuit has rejected the notion that correspondence between a high-

ranking government official and a private entity or person alone suffices to warrant a deposition of that official. "Agency leaders often send and receive correspondence relative to their actions," including actions potentially affecting private parties, but that "does not of itself subject them to the burdens of litigation discovery." *In re FDIC*, 58 F.3d 1055, 1061 (5th Cir. 1995).

And even apart from that critical flaw in Plaintiffs' argument, their contention that Dr. Murthy's testimony about the exchange with Mr. Clegg is "*crucial* to Plaintiffs' claims" (Supp. at 21 (emphasis added)) misses the mark. The key inquiry, within this *expedited* discovery period, is not whether the testimony sought is necessary to adjudicate Plaintiffs' claims on the merits, but instead whether it is necessary to decide the preliminary injunction motion. And Plaintiffs have not attempted to show a "substantive need" for Dr. Murthy's testimony about the exchange in 2021 with Mr. Clegg for *preliminary injunction* purposes in light of Mr. Waldo's availability as an alternative. *See In re Paxton*, 2022 WL 16921697 at *4. Mr. Waldo participated in and can testify about communications between Dr. Murthy's office and the social media companies about misinformation, which will provide the Court with enough information about those communications to frame an injunction directed to the Office of the Surgeon General—and Plaintiffs do not attempt to argue otherwise. Nor could they do so, without impermissibly watering down the exceptional circumstances test: If isolated text exchanges were enough to "impart[] unique knowledge," then "high-level officials" would "*routinely* have to testify," and the exceptional circumstances test would be an empty doctrine. *In re Paxton*, 2022 WL 16921697 at *4 (emphasis added).

Plaintiffs also rely (Supp. at 21-25) on the account in *New York Times* article dated July 21, 2021, that refers to "at least one" meeting about misinformation in which Dr. Murthy and Facebook personnel participated, and new allegations of misconduct (not raised previously in this

Court and not alleged in the operative Complaint) stemming from an April 2022 report (*Memes, Magnets, and Microchips*, ECF No. 134-6) by a nongovernmental entity, the Virality Project. But Plaintiffs did not raise those purported grounds for attributing "personal knowledge" to Dr. Murthy when they applied in October 2022 for the Court's authorization of Dr. Murthy's deposition. ECF 86. Plaintiffs do not attempt to argue that either of these sources was previously unavailable; indeed, the operative Complaint quoted from the *New York Times* article (albeit for a different assertion). SAC ¶ 232. Given that Plaintiffs evidently could have advanced those grounds previously but simply chose not to, they cannot now rely on those sources to compensate for deficiencies in their October 14 submission urging authorization of depositions. This Court's deadline for Plaintiffs to present evidence and argument for expedited discovery depositions was October 14, and arguments that Plaintiffs did not assert by that deadline cannot fairly be considered at this late stage of this expedited discovery period.

As for the Virality Project allegations, Plaintiffs make no effort to explain why they did not seek further information about Dr. Murthy's cooperation with the researchers running that project from those researchers themselves, or from other sources. In that regard, Plaintiffs omit that the Virality Project report on which they rely states that the researchers "hosted" Dr. Murthy "for a seminar on vaccine mis- and disinformation," and that the report also states that a "recording of the event" is available for public viewing on YouTube. ECF No. 134-6 at 20 & n.53. The Fifth Circuit in *Murthy* underscored that "[i]t is unlikely that a desire to probe the meaning of" public "statements" "warrants the extraordinary measure of deposing" the "high-ranking official" who makes them. *Murthy* Order at 4 n.1 (citing *In re Paxton*, 2022 WL 16921697, at *4). So too, Dr. Murthy's public statements released through the Virality Project provide no sound basis for

Plaintiffs' assertion that Dr. Murthy exclusively possess "personal knowledge" about the activities of that nongovernmental research project.

In short, although no further expedited depositions are warranted, if the Court concludes that further depositions are necessary consistent with the Fifth Circuit's Order, the Court should simply order Mr. Waldo's deposition in lieu of Dr. Murthy's, and further allow the parties until January 13, 2023, to complete that deposition. And, once again, that should be the close of expedited discovery directed at the Office of the Surgeon General during these expedited discovery proceedings.

**4. Former White House Press Secretary Jennifer Psaki.**

As this Court recognized, the analysis and conclusions of the Fifth Circuit's Order apply equally to Jennifer Psaki. *See* Order, ECF No. 133, at 3 ("Although the Fifth Circuit's ruling does not directly involve Psaki, this Court must undoubtedly evaluate the need for Psaki's deposition in the same manner as the depositions of Murthy, Easterly, and Flaherty."). There can be no dispute that Ms. Psaki, as the former White House Press Secretary and Assistant to the President, is a high-ranking official, and thus Plaintiffs must demonstrate "exceptional circumstances" to take her deposition. *See Murthy* Order at 2-3. Plaintiffs cannot make that showing. No further discovery should be authorized involving Ms. Psaki at this stage of the proceedings. To the extent the Court allows any discovery at all, it should at most allow Plaintiffs to serve interrogatories on the Government for information in Ms. Psaki's possession in lieu of any deposition. Should this Court not vacate Ms. Psaki's deposition, now provisionally scheduled for December 22, 2022, it should stay that deposition for at least 14 days, and pending the disposition of any mandamus petition filed within that period to challenge the authorization of the deposition. If the Court declines to grant such a stay, then any ruling authorizing Ms. Psaki's deposition should issue no later than

28

December 8, 2022, which is 14 days before the deposition is currently scheduled.

This Court should not order any further discovery when it comes to Ms. Psaki at this stage of the litigation. Plaintiffs make no showing that more discovery is needed from Ms. Psaki in support of their motion for preliminary injunction. Defendants have already searched Ms. Psaki's e-mails for the time period specified in the request and did not identify any responsive communications between Ms. Psaki and social media platforms concerning misinformation. *See* Ex. B to Defs.' Notice of Transfer, ECF No. 119-2 (containing briefing and exhibits in support of Defs.' Motion to Quash Ms. Psaki's Deposition). Rather, Plaintiffs merely seek to find out what Ms. Psaki learned at least second- or third-hand about communications that other Government officials had with social-media companies. But Defendants have already produced approximately 15,000 pages of documents, provided dozens of pages in interrogatory responses, and have had four witnesses sit for depositions—all to provide that very information. In addition, in their filings Plaintiffs have referenced information they have obtained through third-party subpoenas of social media companies, such as information identifying the individuals in the Federal Government, including within the White House, with whom those companies communicated. It is unnecessary, cumulative, and serves only as harassment to ask a former Assistant to the President the same questions for which Plaintiffs have already obtained answers. On Plaintiffs' logic, the White House Press Secretary would be continually subject to deposition for every subject she conveys second- or third-hand.

Further, Plaintiffs have no basis to depose Ms. Psaki based on their assertion that they need to know what she meant when she made certain comments from the White House podium. The press briefings themselves provide Plaintiffs with all the information they need on this issue for purposes of any preliminary injunction motion. The transcript is available online, but Defendants

have also provided the relevant portions to Plaintiffs in their written responses to interrogatories. That transcript contains Ms. Psaki's lengthy explanation of what "asks" the White House made to social media companies with respect to misinformation on their platforms—the very information Plaintiffs purport to seek through a burdensome deposition of Ms. Psaki. *See* Supp. at 24. Plaintiffs obscure the fact that they already have the information they seek by selectively quoting from that transcript and raising questions as to what those quotes, divorced from context, might mean. *See* Defendants' Amended Combined Objections and Responses to Pls.' First Set of Expedited Prelim. Injunction Related Interrogatories at 74-87, ECF No. 86-3 (citing and reproducing relevant portions of the press briefing transcripts). Reading those selective quotations in the context of the full transcript answers Plaintiffs' questions as to what Ms. Psaki meant. For example, Ms. Psaki's explanation of the "requests" made to social media companies is quite detailed. *See id*. Plaintiffs appear to recognize the extent of the elaboration at the press briefing by noting the follow-up questions by the press on the subjects they seek to probe. *See* Supp. at 26. Nothing more is necessary for the purposes of examining a motion for preliminary injunction and certainly nothing more should be required at this time before imposing discovery burdens on Ms. Psaki.

If the Court orders further discovery from Ms. Psaki, however, it should be limited to less burdensome means than a deposition. *See Murthy* Order at 4. One adequate alternative would be for Defendants to amend their previous interrogatory responses on behalf of the White House Office of the Press Secretary, subject to the same objections it previously asserted, to include information obtained from Ms. Psaki in response to those inquiries. Although it is generally recognized as burdensome to compel a party to respond to interrogatories by seeking information from former employees, so long as the information sought can be obtained with reasonable effort, it is permissible under the Federal Rules of Civil Procedure. *See, e.g.*, *City of Las Cruces v. United*

*States*. No. 17-809, 2021 WL 330062, *8 (D.N.M. Feb. 1, 2021) (holding that an obligation in responding to interrogatory "extends to information that a party may obtain with reasonable effort, including that held by assignors, agents, representatives, current employees, and former employees, even if they are not personally known to the party"), *objections overruled*, No. 17-809, 2021 WL 1890132, at *4 (D.N.M. May 11, 2021) (holding that, under the "particular circumstances" presented, the magistrate judge did not err in "requiring [the] [d]efendant to attempt to contact and interview former employees who may have relevant information" for interrogatory responses).

Amending interrogatory responses in this manner is still quite extraordinary, especially when such discovery is directed at the White House, *see generally Cheney*, 542 U.S. at 382, 385, but it would be less intrusive than a deposition if this Court concludes some form of discovery concerning Ms. Psaki's statements is necessary. Defendants have conferred with Ms. Psaki's counsel, and they advised that Ms. Psaki would be willing to cooperate in providing information responsive to Plaintiffs' interrogatories, if she indeed possesses any, as an alternative to a deposition. In light of the lengthy interrogatory requests and the upcoming year-end holidays, Defendants ask to have until January 13, 2023, to provide amended responses. And, if the Court does order this alternative form of discovery, it should again be the end of any discovery concerning Ms. Psaki ahead of any consideration of the motion to dismiss and preliminary injunction motion.

Thus, this Court should reject any further discovery regarding Ms. Psaki during this stage of the proceedings. Alternatively, if this Court orders any such discovery, it should be limited to any information Ms. Psaki could provide in response to the interrogatories previously served on

the White House Office of the Press Secretary, and those responses should be due on January 13, 2023.

## III.    This Court Should Establish Guardrails To The Extent It Orders Further Discovery.

If this Court orders additional discovery ahead of resolving the motion to dismiss, it should ensure that there are appropriate limits in place to prevent the discovery process from snowballing further. Again, any requests for discovery at this juncture should be viewed through the prism of how extraordinary it is to engage in such extensive discovery at this stage of a case. "[E]xpedited discovery is not the norm . . . and courts only allow it in limited circumstances." *Wilson v. Samson Contour Energy E&P, LLC*, No. 14-0109, 2014 WL 2949457, at *3 (W.D. La. June 30, 2014) (citation omitted). And any such discovery must be "*necessary*" for Plaintiffs to litigate their preliminary injunction motion. *GHX Indus. LLC v. Servco Hose & Supply LLC*, No. 6:19-cv-01552, 2020 WL 1492920, at *2 (W.D. La. Feb. 5, 2020) (emphasis added). That is especially significant here, given how much discovery has already been conducted in this case.

If the Court does conclude that additional discovery is warranted concerning information Plaintiffs seek from any of the four high-ranking officials, then it should adopt Defendants' proposed alternatives, as described above, in lieu of requiring that any of the four officials sit for depositions. *See Amos v. Taylor*, No. 4:20-cv-7, 2020 WL 7049848, at *5 (N.D. Miss. Dec. 1, 2020) (the "party seek[ing] to compel *expedited discovery*" must show "that the requested discovery falls within the scope of permitted expedited discovery—in other words, that it is narrowly tailored to obtain information relevant to a preliminary injunction determination" (emphasis in original)); *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 61-62 (M.D. La. 2016).

Next, Defendants should have sufficient time to respond to any additional discovery. Plaintiffs cannot complain of any undue delay given that it is Plaintiffs whose requests have prolonged the expedited discovery process. Defendants are prepared to concurrently brief their motion to dismiss alongside the supplemented preliminary injunction motion such that the Court may promptly rule on the two motions. But Defendants should not be penalized by Plaintiffs' efforts to delay such resolution. Accordingly, if this Court accepts Defendants' proposed alternative discovery, including depositions of career officials, it should give Defendants until January 13, 2023, to complete the discovery. That is only two weeks beyond the December 30, 2022 discovery deadline the Court just entered. *See* Order, ECF No. 133, at 4. And it takes into account the time needed to conduct such additional discovery during the holiday season.

However, if the Court accepts Plaintiffs' request to depose Dr. Murthy, that would invariably lead to further proceedings in the Fifth Circuit that would require further extension of the discovery period. Dr. Murthy's deposition is stayed pending further order of the Fifth Circuit after this Court resolves the issues addressed in this brief. And, as discussed above, the Government seeks the stay of any deposition for Ms. Psaki pending an opportunity to seek appellate relief if necessary. Additionally, if this Court later authorizes the depositions of Director Flaherty and Director Easterly, after another round of discovery (a possibility left open by Plaintiffs' proposals), those authorizations would lead to proceedings in the Fifth Circuit—their depositions, like Dr. Murthy's, are stayed pending further order of the Fifth Circuit. These potential appellate proceedings would certainly require the discovery period to be extended further, pending their completion.

Moreover, whatever discovery, if any, that this Court chooses to authorize in response to this supplemental briefing, should mark the conclusion of expedited discovery. Plaintiffs instead

ask this Court to "defer ruling on 'the availability of suitable alternative[s]' to deposing" the high-ranking officials, and to instead direct the parties to engage in additional discovery before meeting and conferring over whether such depositions "remain[] necessary." *See* Supp. at 10, 11, 18, 23 (quoting *Murthy* Order at 4). Plaintiffs' request for this Court to effectively treat the depositions of the "suitable alternative" witnesses not as alternatives at all, but rather as mere steppingstones and means to expand, rather than limit, the burdens the expedited discovery in this case has already imposed, is irreconcilable with the Fifth Circuit's reasoning in *Murthy* and should be rejected. For example, and as discussed above, Plaintiffs seek to leave open the possibility of deposing Director Easterly notwithstanding the Fifth Circuit's well-taken doubts about her personal knowledge. This Court should reject such an approach for all of these high-ranking officials.

Further, such an approach is far removed from what was supposed to be targeted and limited discovery. Prior to proceeding with discovery, parties in the ordinary course enter into a discovery plan that has negotiated limitations (*e.g.*, limitations on duration of the discovery period or on the numbers of depositions). But Plaintiffs have avoided that process thus far by invoking a purported need for expedited discovery to more effectively supplement their already filed preliminary injunction motion. Plaintiffs have now had ***five*** months of supposedly targeted and expedited discovery and are still asking for more, with no contemplated end in sight. This Court should reject Plaintiffs' efforts to unduly protract the purportedly narrow and exceptional expedited discovery authorized. Rather than proceeding without limitation, this Court should ensure that no further discovery proceeds beyond whatever, if any, discovery into alternative sources of information it now orders.

## <u>CONCLUSION</u>

For the reasons stated herein, this Court should defer any future discovery until it resolves the motion to dismiss. If any discovery is ordered, it should adopt Defendants' proposed alternatives and have those serve as the conclusion of expedited discovery in this matter.

Dated: December 2, 2022           Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

JAMES J. GILLIGAN
*Special Litigation Counsel, Federal Programs Branch*

*/s/ Adam D. Kirschner*
ADAM D. KIRSCHNER (IL Bar No. 6286601)
*Senior Trial Counsel*
KYLA SNOW (OH Bar No. 96662)
INDRANEEL SUR (D.C. Bar No. 978017)
AMANDA K. CHUZI (D.C. Bar No. 1738545)
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Tel: (202) 598-3846
Adam.Kirschner@usdoj.gov

*Attorneys for Defendants*