**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

|  |  |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, *et al.*, | |
| Plaintiffs, | |
| v. | No. 3:22-cv-01213-TAD-KDM |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' REPLY BRIEF ADDRESSING THE FIFTH CIRCUIT'S**
**<u>NONDISPOSITIVE ORDER REGARDING DEPOSITIONS</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.   The Court Should Authorize Written Discovery Regarding Rob Flaherty and Jen Psaki, and Authorize the Depositions of Brian Scully, Lauren Protentis, and Eric Waldo, Before Considering Whether the Depositions of Rob Flaherty, Jen Easterly, Vivek Murthy, and Jen Psaki Are Still Needed................................................................................................ 1

   A.  The Court Should Order Rob Flaherty To Respond to Interrogatories and Document Requests Within 14 Days and Then Consider Whether Flaherty's Deposition Is Still Needed. ..................................................................................................... 2

   B.  The Court Should Authorize the Depositions of Brian Scully and Lauren Protentis Before Assessing Whether Jen Easterly's Deposition Is Still Needed. ........................ 5

   C.  The Court Should Order Eric Waldo's Deposition by December 30, And Then Assess Whether Dr. Murthy's Deposition Is Still Needed. .................................................. 11

   D.  The Court Should Order Both Supplemental Responses to the Interrogatories Directed to the White House Press Secretary *And* the Designation of Lower-Level White House Official(s) With the Same Knowledge as Ms. Psaki.................................................. 13

II.  The Court Should Not Stay Discovery Pending the Resolution of Defendants' Motion to Dismiss.................................................................................................................... 16

A.   *In re Paxton* Does Not Require Staying Discovery. .................................................... 17

B.   Defendants' Inclusion of Arguments Related to Subject-Matter Jurisdiction and Sovereign Immunity in Their Motion to Dismiss Does Not Require Staying Discovery. ................................................................................................................ 18

C.   Defendants Do Not Meaningfully Discuss the Factors Weighing Against Staying Discovery. ................................................................................................................ 19

CONCLUSION .................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ala. Rural Fire Ins. v. Naylor*,
530 F.2d 1221 (5th Cir. 1976) ............................................................................. 21

*Am. Cas. Co. of Reading, Pa. v. Krieger*,
160 F.R.D. 582 (S.D. Cal. 1995) .......................................................................... 14

*Center for Effective Government v. U.S. Department of State*,
7 F. Supp. 3d 16 (D.D.C. 2013) ........................................................................ 3, 4

*Hay & Forage Indus. v. Ford New Holland, Inc.*,
132 F.R.D. 687 (D. Kan. 1990) ............................................................................ 14

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
No. 21 C 135, 2021 WL 5862495 (N.D. Ill. Aug. 31, 2021) ................................ 16

*In re FDIC*,
58 F.3d 1055 (5th Cir. 1995) ................................................................................ 13

*In re Paxton*,
--- F.4th ---, 2022 WL 16921697 (5th Cir. Nov. 14, 2022) ........................... 17, 18

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ............................................................................... 3

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) .............................................................................................. 21

*McGinn v. El Paso Cnty.*,
--- F. Supp. 3d ---, 2022 WL 16924058 (D. Colo. Nov. 14, 2022) ................. 16, 19

*Moran v. Flaherty*,
No. 92 Civ. 3200 (PKL), 1992 WL 276913 (S.D.N.Y. Sep. 25, 1992) ................. 16

*Scott v. Schedler*,
826 F.3d 207 (5th Cir. 2016) ........................................................................... 2, 20

*SK Hand Tool Corp. v. Dresser Indus.*,
852 F.3d 936 (7th Cir. 1988) ................................................................................ 19

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
206 F.R.D. 367 (S.D.N.Y. 2002) .......................................................................... 19

*United Healthcare Ins. Co. v. Azar*,
316 F. Supp 3d 339 (D.C.C. 2018) ......................................................................... 3

*United States v. Jaimes-Jaimes*,
406 F.3d 845 (7th Cir. 2005) .................................................................................. 3

*United States v. Olano*,
507 U.S. 725 (1993) ................................................................................................ 3

*Von Drake v. Nat'l Broad. Co.*,
No. 3-04-CV-0652R, 2004 WL 1144142 (N.D. Tex. May 20, 2004) ..................................... 16

**Other Authorities**

FEDERAL PRACTICE AND PROCEDURE, § 2163 (2022) ..................................................................... 14

## INTRODUCTION

In light of the Fifth Circuit's order, the Court should (1) authorize Plaintiffs to serve interrogatories and document requests on Rob Flaherty within three days and direct Mr. Flaherty to respond in fourteen days, after which the parties should submit a statement on whether Mr. Flaherty's deposition is still needed; (2) order Defendants to produce Brian Scully and Lauren Protentis for deposition by December 30, after which the parties should submit a statement on whether Jen Easterly's deposition is still needed; (3) order Defendants to produce Eric Waldo for deposition by December 30, after which the parties should submit a statement on whether Surgeon General Murthy's deposition is still needed; and (4) order Defendants to supplement the interrogatory responses of the White House Press Secretary in light of information received directly from Ms. Psaki, *and* order Defendants to identify a lower-level official with knowledge of which White House officials are communicating with social-media platforms about misinformation and censorship, and direct that lower-level official to respond to written discovery requests within 14 days, after which the parties should submit a statement on whether Ms. Psaki's deposition is still needed.  The Court should not stay preliminary-injunction-related discovery pending resolution of Defendants' motion to dismiss, but should allow the two motions to proceed simultaneously in parallel.

## ARGUMENT

**I.    The Court Should Authorize Written Discovery Regarding Rob Flaherty and Jen Psaki, and Authorize the Depositions of Brian Scully, Lauren Protentis, and Eric Waldo, Before Considering Whether the Depositions of Rob Flaherty, Jen Easterly, Vivek Murthy, and Jen Psaki Are Still Needed.**

The Government argues that additional discovery in lieu of the stayed depositions should be "limited and narrowly tailored to the context of expedited discovery."  Doc. 139, at 13.  In fact, the Court should authorize Plaintiffs to pursue exactly the same information that it authorized in

its initial order granting expedited discovery: "the identity of federal officials who have been and are communicating with social-media platforms about disinformation, misinformation, malinformation, and/or any censorship or suppression of speech on social media, including the nature and content of those communications."  Doc. 34, at 13.  Contrary to the Government's arguments, this is exactly the information that is "necessary" to adjudicate the preliminary injunction motion, because it will illuminate to the Court *whom to enjoin* and *what precise conduct to enjoin*.  *See Scott v. Schedler*, 826 F.3d 207, 211–12 (5th Cir. 2016).  If Plaintiffs and the Court remain unaware of key federal officials who are colluding with and pressuring social-media platforms to censor Americans' speech, that creates the risk of an ineffective preliminary injunction that could permit unidentified federal officials to continue to violate First Amendment rights.  And if the Court and Plaintiffs are unaware of the nature and content of those communications, the Court will lack guidance on what precise conduct to enjoin.  *See id.*

A.     **The Court Should Order Rob Flaherty to Respond to Interrogatories and Document Requests Within 14 Days and Then Consider Whether Flaherty's Deposition Is Still Needed.**

Plaintiffs propose serving written discovery—to include both interrogatories and document requests, as authorized in this Court's original order, Doc. 34, at 13—upon Rob Flaherty, and then to assess whether his deposition is still needed.  This approach is consistent with the Fifth Circuit's comment that "with respect to Flaherty, it appears that the plaintiffs have not taken any written discovery at all."  Doc. 121, at 3.

The Government opposes Plaintiffs' proposal of authorizing written discovery upon Flaherty, but its arguments are meritless.  First, the Government argues that "Plaintiffs forfeited their right to seek the alternative discovery necessary to meet that prerequisite as to Director Flaherty by failing to serve him with written discovery by the deadline set by the Court's initial

discovery order," *i.e.*, July 17.  Doc. 139, at 15.  This argument is meritless.  Waiver is voluntarily relinquishing a *known* right, *United States v. Olano*, 507 U.S. 725, 733 (1993), and forfeiture is the failure timely to assert a right "because of neglect," *United States v. Jaimes-Jaimes*, 406 F.3d 845, 849 (7th Cir. 2005).  Plaintiffs did not know about Flaherty's involvement in pressuring social-media platforms on July 17, 2022, because the Government had concealed his involvement from the public.  As soon as Plaintiffs became aware of it, Plaintiffs sought written discovery from Flaherty.  Doc. 71, at 25-26.  In denying Plaintiffs' request at the time, the Court did not hold that Plaintiffs *waived* their ability seek written discovery from Flaherty, but it held that additional written discovery would not fit within the expedited schedule already adopted (which Defendants' procedural maneuvers have now disrupted).  Doc. 72, at 4.  In fact, the Court explicitly left open the possibility that it would authorize written discovery against Flaherty and other newly identified Defendants in the future.  *See id.*  It should do so now.

Next, the Government cites *Cheney*, but in the same breath, the Government admits that "*the discovery does not implicate questions of privilege*" because it concerns federal officials' communications without outside third parties, *i.e.*, social-media platforms.  Doc. 139, at 16 (emphasis added).  Indeed, this Court has already rejected the Government's argument that discovery into its communications with social-media platforms raises questions of privilege: "The White House has waived its claim of privilege in relation to specific documents that it voluntarily revealed to third parties outside the White House."  Doc. 72, at 7 (citing *Center for Effective Government v. U.S. Department of State*, 7 F. Supp. 3d 16, 25, 27 (D.D.C. 2013); *In re Sealed Case*, 121 F.3d 729, 741-42 (D.C. Cir. 1997); and *United Healthcare Ins. Co. v. Azar*, 316 F. Supp 3d 339, 349 (D.C.C. 2018)).  Defendants offer no reason to revisit this conclusion.

3

The Government also argues that "written discovery imposes its own burdens."  Doc. 139, at 16.  But the Government cites *no* authority holding that "written discovery" against high-ranking officials requires a showing of "exceptional circumstances," because it does not.  High-ranking officials are routinely served with written discovery requests in their official capacity as the heads of agencies and divisions of the federal government, and if "exceptional circumstances" were required for all these discovery requests, litigation against the federal government would grind to a halt.  Indeed, the Fifth Circuit recognized this distinction between written discovery and depositions of high-ranking officials by noting that Plaintiffs have not yet obtained any *written discovery* from Flaherty, noting this as a potential alternative to his deposition.  Doc. 121, at 3.

The Government argues that written discovery against Flaherty should exclude interrogatories, and should be limited to document requests for "external e-mail communications with social-media platforms concerning misinformation or content modulation during Director Flaherty's time in Government."  Doc. 139, at 17-18.  The Court should reject these artificial limitations as yet another gambit by the Government to conceal highly relevant information.  Interrogatories should be authorized because, as Plaintiffs have long emphasized, Flaherty and others repeatedly communicated with social-media platforms through *oral meetings* whose contents were not recorded in emails.  Flaherty should be required to identify all such meetings under oath, including identifying all participants in such meetings with social-media platforms and describing *in detail* the nature and content of the communications at those meetings; and if he fails to do so, he should be deposed.  Likewise, Flaherty's written communications should not be limited to emails.  The Government unilaterally limited its initial production to emails, and after Plaintiffs objected, the Government produced highly probative text messages between Vivek Murthy and Nick Clegg of Facebook, and between Jen Easterly and Matt Masterson of Google.  *See* Doc. 71-

5.  And the discovery so far has *repeatedly* identified alternative channels of communication between social-media platforms and federal officials—including "misinformation reporting channels" at Facebook and Twitter, "trusted flagger" status at YouTube, encrypted Teleporter messages from the FBI to social-media platforms first disclosed in Elvis Chan's deposition last week, and even the FBI's use of the self-deleting messaging app Signal to communicate with social-media platforms. *See, e.g.,* Ex. A, Tr. of Deposition of Elvis Chan, at 295:7-298:7. Flaherty should be required to disclose and produce any and all such written communications by any and all such channels, as well as identifying and describing in detail all oral meetings.

In short, this Court should authorize Plaintiffs to serve on Flaherty exactly what it authorized Plaintiffs to do on July 12, 2022: "serve interrogatories and document requests upon [Flaherty] … seeking the identity of federal officials who have been and are communicating with social-media platforms about disinformation, misinformation, malinformation, and/or any censorship or suppression of speech on social media, including the nature and content of those communications." Doc. 34, at 13.

Finally, the Court should reject Defendants' artificially lengthened time frame (until January 13) for Flaherty to respond to written discovery as another delay tactic. Defendants have had weeks to prepare for this discovery. The Court should authorize Plaintiffs to serve interrogatories and document requests on Flaherty within three business days of its ruling, order Flaherty to respond within 14 days, and direct the parties to submit a written statement to the Court within seven days thereafter about whether Flaherty's deposition is still needed.

### B. The Court Should Authorize the Depositions of Brian Scully and Lauren Protentis Before Assessing Whether Jen Easterly's Deposition Is Still Needed.

In keeping with the Fifth Circuit's instruction to consider alternatives to Easterly's deposition, Plaintiffs request authority to depose two lower-level CISA officials—Brian Scully

and Lauren Protentis—in lieu of Director Easterly, and then assess whether the deposition of Easterly is still needed.  Doc. 137, at 11-18.  Defendants do not seriously oppose Plaintiffs' request for alternative depositions of lower-level CISA official(s), but they contend that *Defendants* should get to pick the witness, and they offer Geoffrey Hale.  Doc. 139, at 20.

Defendants should not get to cherry-pick the witness to prove *Plaintiffs'* case.  Defendants have a glaring conflict of interest and an obvious incentive to select a witness who will provide as little meaningful information as possible—and Mr. Hale seems likely to fit the bill.  Plaintiffs have already taken multiple depositions of federal officials in which the witnesses' testimony became vague and their memory became mysteriously foggy when the most pointed questions were asked, even to the point of absurdity.  Dr. Fauci, for example, stated "I don't recall" 174 times in his deposition, and stated variations on that point (such as "I don't remember" or "I don't specifically recall") no less than a staggering 212 times.  Ex. B, Tr. of Deposition of Anthony Fauci, at 29:3 (first instance of "I don't recall") to 352:17 (174th instance of "I don't recall").  Notably, Dr. Fauci stated "I don't recall" ***98 times*** when discussing his well-documented involvement in the February 1, 2020 conference call and ensuing conspiracy to suppress the lab-leak theory of COVID-19's origins—in stark contrast to his statement to USA Today on June 7, 2021 that "I remember it very well."  Alison Young*, 'I remember it very well': Dr. Fauci describes a secret 2020 meeting to talk about COVID origins*, USA Today (June 7, 2021), at https://www.usatoday.com/story/opinion/2021/06/17/covid-19-fauci-lab-leaks-wuhan-china-origins/7737494002/.

Daniel Kimmage, likewise, testified that he has virtually no recollection of the involvement of the State Department's Global Engagement Center (which he has overseen for over years) in the Election Integrity Partnership, *see* Ex. C, Tr. of Deposition of Daniel Kimmage, at

202:5-205:23—though the EIP itself repeatedly boasts of the GEC's direct involvement, noting that GEC was a "trusted partner" and had authority to submit (and did submit) "tickets" to the EIP to procure the censorship of social-media speech.  Doc. 137-3, at 29-30 (pp. 11-12 of the Report) (identifying the GEC among "Four Major Stakeholder Groups" in the EIP, and noting that "Government … partners could create tickets or send notes to EIP analysts, and they used these procedures to flag incidents or emerging narratives" on social-media for censorship); *id.* at 56 (p. 38 of Report) (quantifying tickets "flagging" content for censorship submitted by GEC).  Kimmage further admitted that he and GEC officials had repeated, large meetings with the content modulation teams at Twitter, Facebook, and other social-media platforms, but he testified that he couldn't remember anything specific that was discussed at those meetings.  Ex. C, Kimmage Depo., 79:4-85:11, 128:22-150:1.

Perhaps worst of all, Elvis Chan repeatedly testified that he could not recall whether he discussed with any *other* FBI officials his repeated warnings to social-media platforms that there might be a "hack and leak" operation prior to the 2020 election, which led those social-media platforms to censor the Hunter Biden laptop story.  Ex. A, Chan Depo., at 189:14-191:21. Defendants' proffer of Mr. Hale—who is not as directly connected to critical events as Mr. Scully and Ms. Protentis—appears to be part of the same strategy, *i.e.*, to offer a witness and then have that witness deny recollection or actual knowledge of the key events and communications with social-media platforms.

Defendants' other arguments against the depositions of Scully and Protentis are meritless. Defendants contend that "Mr. Hale is the Associate Director of Election Security and Resilience at CISA."  Doc. 139, at 20.  But both Scully and Protentis serve on the so-called "Mis- Dis- and Malinformation Team" or "MDM Team"—Scully, in fact, is its leader—which lies at the heart of

CISA's censorship activities, so they are much more likely to have first-hand knowledge of CISA's censorship activities than Hale.  Notably, Defendants never provide any specific account of what Hale supposedly knows, or how his knowledge replicates that of Ms. Easterly.  Plaintiffs, having reviewed the discovery, have identified Scully and Protentis as those most likely to have relevant information to Plaintiffs' claims.  Defendants have no basis to second-guess that determination.

Defendants object to producing *two* witnesses in lieu of Director Easterly, Doc. 139, at 20-21, but it is wholly unsurprising that multiple witnesses are necessary to replicate (albeit imperfectly) the knowledge of the agency head.  Plaintiffs explained in detail in their opening brief specific information that they expect each witness to have that will attempt to substitute for Director Easterly's knowledge, and the basis for those expectations.   Doc. 137, at 11-18.  Defendants do not refute, or even address, this detailed justification. *See* Doc. 139, at 20-21.  And Defendants do not argue that any *single* witness could possibly serve as an adequate substitute for Easterly, who oversees all of CISA's activities—and they offer no assurances that Mr. Hale could do so.  Moreover, Defendants fail to acknowledge that this Court has already ordered the deposition of Lauren Protentis, finding it fully justified in this expedited preliminary-injunction-related discovery.  Doc. 90, at 21-22.  Defendants provide no reason to reconsider the Court's well-reasoned decision on that point, and Protentis is not a high-level official, so no "exceptional circumstances" are required for her deposition in any event.

Defendants argue that Plaintiffs should not be allowed to seek the deposition of Mr. Scully on the ground that he has detailed knowledge of CISA's involvement in the so-called "Election Integrity Partnership," a joint federal-private enterprise that is a juggernaut of social-media censorship.  Defendants argue that Plaintiffs "failed, by the October 14 deadline … to argue that Mr. Scully's deposition was necessary."  Doc. 139, at 21-22. But that is because Plaintiffs sought

*Director Easterly*'s deposition on October 14, in part to ask her about the Election Integrity Partnership, among many other topics.  Plaintiffs now seek Mr. Scully's deposition in light of the Fifth Circuit's order calling for the Court to consider alternative avenues before authorizing Easterly's deposition.  Defendants complain that Plaintiffs did not specifically identify the Election Integrity Partnership in their proposed topics of questioning for Easterly in the Joint Statement on Depositions, Doc. 139, at 22, but Plaintiffs had no obligation to identify *every* line of questioning that they planned for Director Easterly in that joint statement.  Indeed, they could not possibly have done so, and Defendants had no entitlement to know in advance all of Plaintiffs' planned topics of questioning before Easterly's deposition in any event.  Moreover, Defendants cannot plausibly claim surprise, as the Second Amended Complaint provides 20 paragraphs of allegations about the EIP and specifically pleads that *both* CISA and the State Department's GEC are involved in EIP, Doc. 84, ¶¶ 402, 401-420—which EIP's own public report  also confirms.  *See* Doc. 137-3, at 20 (p. 2 of Report) (noting that CISA personnel originated the Election Integrity Partnership and launched it to avoid First Amendment restrictions on social-media censorship by the Government); *id.* at 30 (p. 12 of the Report) (noting that CISA is one of "Four Major Stakeholder Groups" in the EIP); *id.* at 31 (p. 13 of the Report) (noting that "a subcomponent of CISA aided in the reporting process" for EIP).

Defendants argue that Plaintiffs "sought to depose Daniel Kimmage of the Department of State" about the EIP, whom was deposed on November 10, and "Plaintiffs thus had their opportunity to obtain testimony about the EIP from a live witness."  Doc. 139, at 22.  This argument lacks merit.  As Defendants are well aware, Daniel Kimmage denied any specific knowledge about virtually any aspect of EIP, claiming that he was barely aware that GEC was involved in EIP, notwithstanding the group's public trumpeting of GEC's direct involvement.  *See supra*.

Accordingly, deposing a knowledgeable CISA witness about the federal government's involvement in EIP is *all the more* important after Kimmage's deposition. *See* Doc. 137-4.

Moreover, additional compelling reasons to depose Mr. Scully emerged during Elvis Chan's deposition on November 29—the same day that Plaintiffs filed their opening supplemental brief in light of the Fifth Circuit's order, Doc. 137, which was filed while that deposition was still ongoing. Elvis Chan identified Mr. Scully as *leading* the joint meetings between CISA, the FBI, and other federal agencies and several social-media platforms that occurred monthly (and, closer to the election, weekly) in both the 2020 and 2022 election cycles, and are scheduled to continue occurring. Ex. A, Chan Depo, 23:19-24:19, 25:8-26:22 170:3-176:21. Defendants identified these meetings as "USG-Industry" meetings with "monthly cadence" in their interrogatory responses, Doc. 86-3, at 37-38, but they provided no specific information about these meetings and did not identify any participants—including Scully or Chan. Notably, Scully led the meetings along with Matt Masterson, Elvis Chan and many other federal officials participated, and Chan used these meetings as a vehicle to make the FBI's communications about the risk of a "hack and leak" operation that led to the suppression of the Hunter Biden laptop story. Scully even made statements that reinforced Chan's message about the supposed "hack and leak" operation. Ex. A, Chan Depo. 211:24-212:22, 221:8-221:22. Further, other relevant matters were discussed at those meetings, but Chan testified that he did not participate in all of them, so Scully has unique firsthand knowledge of the contents of those meetings.

As to Protentis, as noted above, the Court has already concluded that Protentis's deposition is justified. Doc. 90, at 21-22. Plaintiffs explained in detail their basis to conclude that Protentis has first-hand knowledge that may provide a substitute for Easterly on at least two significant topics. Doc. 137, at 15-18. Defendants fail to address this detailed, specific justification.

Defendants claim that Protentis is "on maternity leave" and "does not return from leave until late January." Doc. 139, at 23. The Court has already considered this argument and concluded that Protentis's deposition is justified. Doc. 90, at 21 n.47. Though it may be inconvenient to participate in a deposition during maternity leave, the need to obtain discovery about CISA's egregious First Amendment violations (including Protentis's *personal involvement* in such violations) decisively outweighs any inconvenience to Protentis.

Finally, Defendants ask for yet another extension to the discovery period for these depositions, to January 13, 2023—six weeks from now. Doc. 139, at 23. The Court should reject this request. The Court has already extended the period for depositions to December 30 due to Defendants' procedural wrangling. The Court should extend that period no further, and order Defendants to produce their witnesses for deposition by December 30.

Accordingly, the Court should order Defendants to produce Defendants Brian Scully and Lauren Protentis for deposition by December 30. Once those depositions are concluded, the parties should meet and confer and report to the Court within seven days about whether Director Easterly's deposition is still needed.

## C. The Court Should Order Eric Waldo's Deposition by December 30, And Then Assess Whether Dr. Murthy's Deposition Is Still Needed.

In light of the Fifth Circuit's order, Vivek Murthy's deposition is still justified for the reasons stated in Plaintiffs' supplemental brief. Doc. 137, at 18-23. But because the other proposals in this order will inevitably affect scheduling, Plaintiffs do not object to taking the deposition of Eric Waldo before Dr. Murthy, within the same timeframe for the alternative CISA depositions, and then addressing whether Dr. Murthy's deposition is still justified. But the Court should not accept Defendants' request to cancel Dr. Murthy's deposition outright, because it is highly doubtful that Waldo will serve as an adequate substitute for Dr. Murthy. Among other

things, the Government does not contend that Waldo has firsthand (or any) knowledge of the Surgeon General's personal pressure campaign against social-media platforms, conducted through face-to-face meetings and oral conversations with senior social-media executives like Nick Clegg, which is critically relevant information for the motion for preliminary injunction.

The Government contends that Eric Waldo is "an adequate alternative witness" to Surgeon General Murthy.  Doc. 139, at 24.  But the Government never contends that Waldo participated in or has firsthand knowledge of Dr. Murthy's series of "talks" with social-media platforms where he "angrily" demanded greater censorship of COVID-19-related speech.  Doc. 137, at 18 (quoting Zolan Kanno-Youngs, et al., *"They're Killing People": Biden Denounces Social Media for Virus Disinformation*, NEW YORK TIMES (July 16, 2021)).  The Government merely offers the generic assurance that "Mr. Waldo participated in and can testify about communications between Dr. Murthy's office and the social media companies about misinformation…."  Doc. 139, at 26.  This admission, of course, is reason enough to order the deposition of Mr. Waldo, but it provides no assurance that Mr. Waldo is an adequate substitute for Dr. Murthy, or to conclude that Waldo's deposition "will provide the Court with enough information about those communications to frame an injunction directed to the Office of the Surgeon General."  *Id.*  On the contrary, the Government's litigation position appears tailor-made to conceal the most probative evidence from Plaintiffs—*i.e.*, the pressure and coercion campaign from the top level of the Office of Surgeon General (*i.e.*, personal pressure from the Surgeon General himself, with the direct backing of the White House) imposed on the top levels of the social-media platforms' management (*i.e.*, Nick Clegg and potentially other senior C-suite Facebook executives, to say nothing of executives at Twitter, Google, and others).

Regarding the text messages between Murthy and Nick Clegg of Facebook, the Government contends that "[a]gency leaders often send and receive correspondence relative to their actions," but that "does not of itself subject them to the burdens of litigation discovery."  Doc. 139, at 26 (quoting *In re FDIC*, 58 F.3d 1055, 1061 (5th Cir. 1995)).  But agency leaders do not often "send and receive" text messages setting up and alluding to secret oral meetings with senior Big Tech officials where the agency leaders evidently demand and receive assurances of greater censorship of Americans' free speech—which is exactly what those text messages imply, especially when viewed along with contemporaneous emails.  *See* Doc. 71-5, at 1-2.

For these reasons, it is highly doubtful that Waldo will serve as an adequate substitute for Dr. Murthy.  The Court should order the Government to produce Mr. Waldo for deposition by December 30, and then require the parties to meet and confer and report back to the Court within seven days as to whether Murthy's deposition is still needed.

> **D.      The Court Should Order Both Supplemental Responses to the Interrogatories Directed to the White House Press Secretary *And* the Designation of Lower-Level White House Official(s) With the Same Knowledge as Ms. Psaki.**

The parties agree that, at this stage, the Court should order supplemental discovery before authorizing the deposition of Ms. Psaki.  In their opening brief, Plaintiffs requested that the Court "order[] Defendants to identify and produce lower-ranking official(s) who have the information Plaintiffs seek from Psaki," *i.e.*, the identities of federal officials within the White House who communicate with social-media platforms about misinformation, disinformation, and censorship, and the nature and content of those communications.  Doc. 137, at 4.  In response, Defendants make a much narrower proposal—they propose that the Court should "allow Plaintiffs to serve interrogatories on the Government for information in Ms. Psaki's possession in lieu of a deposition," Doc. 139, at 28, and that they will confer with Ms. Psaki and relay any information

she provides second-hand, without placing Ms. Psaki under oath.   (Defendants' proposal demonstrates that, before responding to Plaintiffs' interrogatories, Defendants made no effort to consult with Ms. Psaki to obtain responsive information.)   Defendants represent that they have "conferred with Ms. Psaki's counsel, and they advised that Ms. Psaki would be willing to cooperate in providing information responsive to Plaintiffs' interrogatories, *if she indeed possesses any*, as an alternative to a deposition."   Doc. 139, at 31 (emphasis added).

The emphasized qualifier is ominous, as the Government will almost certainly dutifully relay that Ms. Psaki has no meaningful information to add.   Ms. Psaki will not be under oath in this scenario, and the Government's representative will merely be dutifully relaying vague or meaningless information.   This is exactly why written discovery is not an adequate substitute for a deposition.   *See, e.g.,* CHARLES WRIGHT & ALAN MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2163 (2022); *Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 589 90 (S.D. Cal. 1995); *Hay & Forage Indus. v. Ford New Holland, Inc*., 132 F.R.D. 687, 689 91 (D. Kan. 1990).   To obtain truthful and detailed information, follow-up questioning is often imperative.   *See id.*   Based on the Government's prior vague, evasive interrogatory responses, Doc. 86-3, the Court can reasonably anticipate that Defendants' proposal will result in the disclosure of no useful information.   Most likely, adding a second layer of communication between Ms. Psaki and Plaintiffs will make the problem of vague, evasive, unspecific responses even more acute.

Accordingly, Plaintiffs propose that the Court combine the parties' two approaches.   Based on Defendants' proposal, the Court should order Defendants to consult with Ms. Psaki and supplement their prior responses to the interrogatories and document requests directed to Karine Jean-Pierre (Ms. Psaki's official successor) based on information received from Ms. Psaki.   And the Court should *also* order Defendants to designate a lower-level official(s) with actual knowledge

of who within the White House communicates with social-media platforms about misinformation, disinformation, and censorship, and authorize Plaintiffs to serve written interrogatories and document requests on that official or officials within three business days of the Court's ruling. That official or officials should be required to respond within fourteen business days.  After those responses, the parties should meet and confer and report back to the Court within seven days about whether either (1) Ms. Psaki's deposition, or (2) the deposition(s) of those alternative lower-level officials, are still needed.

Defendants rehash several of their well-worn, long-rejected arguments against seeking discovery from Ms. Psaki in the first place.  Doc. 139, at 28-31.  These arguments are meritless. For example, Defendants contend that they "have already searched Ms. Psaki's emails," *id.* at 29, but they ignore the prospect of oral communications, and the likelihood (based on her own statements) that Ms. Psaki is aware of *others* of the White House's "senior staff" who engage in such communications.  Defendants argue that Ms. Psaki's knowledge is second-hand, and that "[o]n Plaintiffs' logic, the White House Press Secretary would be continually subject to deposition for every subject she conveys second- or third-hand."  *Id.*  On the contrary, "on Plaintiffs' logic," the White House Press Secretary is subject to discovery requests and deposition only when she publicly announces that she is aware of the identities of federal officials directly involved in egregious First Amendment violations, including "what their asks are," and that critical information about the identities of federal officials engaged in ongoing civil-rights violations is readily available from no other source due to the Government's own stonewalling.  The Government argues that "the press briefings themselves provide Plaintiffs with all the information they need on this issue," *id.*, but that is obviously wrong.  Among other things, the press briefings do not identify *any* of the individual federal officials who are "flagging problematic posts" and

issuing specific "asks" to social-media platforms, nor do they provide any description of the nature and content of those communications.

## II. The Court Should Not Stay Discovery Pending the Resolution of Defendants' Motion to Dismiss.

Defendants frame the decision that this Court must make as a choice between delaying the completion of discovery until their motion to dismiss has been resolved and delaying the resolution of their motion to dismiss until discovery is complete. *See, e.g.*, Doc. 139 at 9 (characterizing Plaintiffs' request for "expedited, preliminary relief" as in competition with "the Court's obligation to ascertain its jurisdiction by resolving Defendants' motion to dismiss"). But there is an obvious third alternative: allow discovery and briefing on the motion to dismiss to proceed in parallel, without delaying either. Having consented to Defendants' proposed briefing schedule for their motion to dismiss, Plaintiffs agree that the Court need not and should not postpone that schedule to ensure that discovery is complete before the Court rules on the motion. But neither should the Court postpone discovery while the parties brief and the Court rules on the motion to dismiss. "It is well-settled that the mere filing of a motion to dismiss does not automatically stay discovery." *In re Clearview AI, Inc. Consumer Privacy Litig.*, No. 21 C 135, 2021 WL 5862495, at *1 (N.D. Ill. Aug. 31, 2021) (cleaned up); *see also Von Drake v. Nat'l Broad. Co.*, No. 3-04-CV-0652R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004). On the contrary, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Moran v. Flaherty*, No. 92 Civ. 3200 (PKL), 1992 WL 276913, at *1 (S.D.N.Y. Sep. 25, 1992). Defendants bear the burden of showing that this case is "an exception," *McGinn v. El Paso Cnty.*, --- F. Supp. 3d ---, 2022 WL 16924058, at *2 (D. Colo. Nov. 14, 2022), and they fail to carry that burden here.

A.    *In re Paxton* **Does Not Require Staying Discovery.**

First, Defendants appeal to precedent. According to Defendants, when the Fifth Circuit directed this Court to address "whether further discovery should be paused until a ruling on a timely-filed motion by the Government to dismiss," it was asking a rhetorical question, one that it had already answered in *In re Paxton*, --- F.4th ---, 2022 WL 16921697 (5th Cir. Nov. 14, 2022). Doc. 139, at 4 ("That question is answered by the Fifth Circuit's recent decision in [*Paxton*]."). Defendants are mistaken. *Paxton* bears little resemblance to this case, and it leaves the question that the Fifth Circuit posed to this Court wide open.

The Fifth Circuit summarized the district court's error in *Paxton* as follows:

> Paxton . . . mov[ed] to dismiss for lack of jurisdiction on both standing and sovereign immunity grounds, well before Plaintiffs subpoenaed him. The district court failed to rule on that motion before refusing to quash the subpoenas. Indeed, in the same order compelling Paxton to testify, the court stayed Plaintiffs' deadline to respond to the motion to dismiss pending Paxton's testimony.

> A court has a fundamental duty to examine its jurisdiction. The district court's failure to do so here extends beyond a mere jurisdictional error or mere failure to spot a jurisdictional issue. Indeed, the district court's order explicitly postpones Paxton's assertion of sovereign immunity pending his deposition.

*Paxton*, 2022 WL 16921697, at *2–3 (quotation marks and citation omitted). The basis of the Fifth Circuit's conclusion that the district court had erred was threefold: (1) the defendant moved to dismiss promptly, "well before Plaintiffs subpoenaed him"; (2) the district court stayed briefing on the motion to dismiss pending the deposition; and (3) the district court did not otherwise "examine its jurisdiction" before allowing the deposition to proceed. *Id.*

Not one of those facts is present here. Defendants did not move to dismiss promptly, "well before" the Plaintiffs requested and the Court ordered the depositions of Flaherty, Easterly, and Murthy. *Id.* at *2. On the contrary, Defendants did not move to dismiss until well *after* the depositions were requested and ordered. *See* Doc. 86 (joint statement on depositions October 14);

Doc. 90 (order authorizing depositions on October 21); Doc. 128-1 (motion to dismiss on November 22). This Court has not stayed briefing or otherwise delayed the resolution of Defendants' motion to dismiss. And this Court *did* "examine its jurisdiction" prior to allowing any discovery at all. *Paxton*, 2022 WL 16921697, at *3; Doc. 34, at 3–9. Indeed, the Court explicitly considered and rejected substantially the same standing arguments that Defendants now raise in their motion to dismiss. *Compare* Doc. 34, at 3–9, *with* Doc. 128-1, at 16–43.

Thus, this case bears little resemblance to *Paxton*. At most, *Paxton* implies that this Court should not delay briefing on the motion to dismiss until expedited discovery is complete (something Plaintiffs have never asked the Court to do). The Court can, and should, allow discovery and briefing on the motion to dismiss to proceed in parallel.

**B.      Defendants' Inclusion of Arguments Related to Subject-Matter Jurisdiction and Sovereign Immunity in Their Motion to Dismiss Does Not Require Staying Discovery.**

Next, Defendants cite the well-worn statements that subject-matter jurisdiction is a threshold issue in every case and that sovereign immunity is immunity from suit. Doc. 139, at 5. Neither generic proposition requires a district court to pause discovery immediately upon the filing of a motion to dismiss that raises issues of subject-matter jurisdiction or sovereign immunity. As Defendants' own citations demonstrate, the fact that subject-matter jurisdiction is a threshold issue in every case just means that a court has a "duty to examine its own jurisdiction" either upon an appropriate jurisdictional challenge or, in the absence of such a challenge, *sua sponte*. *Id.* (quoting *Paxton*, 2022 WL 16921697, at *2–3). And the fact that sovereign immunity is immunity from suit just means that a defendant's entitlement to sovereign immunity "should be determined at the earliest possible stage of the litigation." *Id.* (quoting *Paxton*, 2022 WL 16921697, at *3).

18

Plaintiffs are not asking the Court to violate either of these principles. The Court already examined its own jurisdiction *sua sponte* before authorizing any discovery, and Plaintiffs agree that the Court should give expeditious consideration to Defendants' motion to dismiss according to the briefing schedule that Defendants themselves proposed. The question is not whether the issues of subject-matter jurisdiction and sovereign immunity that Defendants have raised should be resolved without delay—everyone agrees that they should—but whether all discovery must grind to a halt in the meantime. The answer to the latter question is "no." *See, e.g.*, *SK Hand Tool Corp. v. Dresser Indus.*, 852 F.3d 936, 945 (7th Cir. 1988) (noting that "there is no requirement that . . . discovery cease during the pendency of a motion to dismiss").

**C. Defendants Do Not Meaningfully Discuss the Factors Weighing Against Staying Discovery.**

Conspicuously absent from Defendants' response is any meaningful discussion of the factors that weigh against staying discovery pending the resolution of a motion to dismiss. Defendants devote an entire section to a strawman of their own creation, arguing at length that the pendency of a preliminary-injunction motion does not preclude staying discovery to resolve a motion to dismiss. *See* Doc. 139, at 8–11. But they do not address the factors that Plaintiffs actually argued, and courts have actually held, weigh against staying discovery to resolve a motion to dismiss in a case like this. These factors include (1) "the potential prejudice to the plaintiff of a delay," *McGinn*, 2022 WL 16924058, at *2, (2) "the interests of" nonparties and of "the public" generally, *id.*, and (3) "the strength of the dispositive motion that is the basis of the discovery stay application," *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002).

As Plaintiffs explained in their opening supplemental brief, all three factors weigh against staying discovery here. As to the first two factors, Plaintiffs explained that further delay in

completing preliminary-injunction-related discovery would prejudice Plaintiffs because they are suffering irreparable harm in the meantime and that further delay would also be contrary to the public interest because the harm is affecting not only Plaintiffs but millions of Americans not before the Court. Doc. 137, at 30–32.

Instead of meaningfully addressing these points, Defendants change the subject, accusing Plaintiffs of delaying by seeking additional discovery despite already having sufficient evidence to establish a likelihood of success on the merits in connection with their preliminary-injunction motion. *See* Doc. 139, at 9–11. But as Plaintiffs have repeatedly explained, evidence that First Amendment violations are ongoing, without specifics as to the scope of the violations as well as how and by whom they are being perpetrated, is insufficient to enable the Court to craft appropriate and fully effective injunctive relief. *See Scott v. Schedler*, 826 F.3d 207, 211–12 (5th Cir. 2016) (explaining that an injunction "must state its terms specifically and describe in reasonable detail the conduct restrained or required" (quotation marks omitted)). Besides, Plaintiffs expect Defendants to vigorously dispute Plaintiffs' account of what the evidence shows. Accordingly, Plaintiffs seek an evidentiary record that is sufficiently robust to withstand Defendants' arguments and to provide the Court with specific information about the who, what, when, where, and why of the relevant federal censorship activities. For both these reasons, Plaintiffs' claim to have uncovered evidence in support of their claims is perfectly consistent with their opposition to delaying or calling off additional discovery. The only inconsistency here is between Defendants' assertion now that Plaintiffs have sufficient evidence to establish a likelihood of success of the merits and Defendants' inevitable assertion later, when opposing Plaintiffs' preliminary-injunction motion, that Plaintiffs lack sufficient evidence to establish a likelihood of success on the merits.

In their opening supplemental brief, Plaintiffs also explained that the third factor listed above, the strength of Defendants' motion to dismiss, weighs against staying discovery. Plaintiffs noted that this Court already considered and rejected the substance of Defendants' standing arguments. *Id.* at 4, 36. "Although it is conceivable that Defendants' second attempt to convince the Court otherwise might succeed, it is not likely." *Id.* at 36. Defendants emphasize that their latest motion to dismiss features new arguments related to sovereign immunity. But even if those arguments were meritorious as to Plaintiffs' Administrative Procedure Act claims (and they are not), any assertion of sovereign immunity as to Plaintiffs' claim for injunctive relief based on ongoing First Amendment violations is clearly meritless. *See, e.g.*, *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 696–704 (1949) (describing "the constitutional exception to the doctrine of sovereign immunity" as applied to federal officers sued in their official capacities); *Ala. Rural Fire Ins. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976) (explaining that "a suit [for equitable relief] is not violative of the doctrine of sovereign immunity if . . . the officer acts in an unconstitutional manner").

## CONCLUSION

The Court should order supplemental discovery as set forth herein before considering whether to order the depositions of Rob Flaherty, Jen Easterly, Vivek Murthy, and Jennifer Psaki.

Dated: December 5, 2022

**ERIC S. SCHMITT**
**Attorney General of Missouri**

*/s/ D. John Sauer*
D. John Sauer, Mo. Bar No. 58721*
  *Solicitor General*
Justin D. Smith, Mo. Bar No. 63253
  *First Assistant Attorney General*
Kenneth C. Capps, Mo. Bar No. 70908*
  *Assistant Attorney General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
John.Sauer@ago.mo.gov
*Counsel for State of Missouri*


*  admitted *pro hac vice*

*/s/ Jenin Younes*
Jenin Younes *
John J. Vecchione *
New Civil Liberties Alliance
1225 19th Street N.W., Suite 450
Washington, DC 20036
Direct: (202) 918-6905
E-mail: jenin.younes@ncla.legal
*Counsel for Plaintiffs Dr. Jayanta Bhattacharya,*
*Dr. Martin Kulldorff, Dr. Aaron Kheriaty, and Jill Hines*

*/s/ John C. Burns*
John C. Burns
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: 314-329-5040
F: 314-282-8136
E-mail: john@burns-law-firm.com
*Counsel for Plaintiff Jim Hoft*

Respectfully submitted,

**JEFFREY M. LANDRY**
**Attorney General of Louisiana**

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill (La #20685)
  *Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana
Tel: (225) 326-6766
murrille@ag.louisiana.gov
*Counsel for State of Louisiana*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 5, 2022, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

<em>/s/ D. John Sauer</em>