IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STATE OF MISSOURI, STATE OF LOUISIANA, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, JR.,<br>in his official capacity as President of the United States, *et al.*,<br><br>       Defendants. | No. 3:22-cv-01213-TAD-KDM |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
SUPPLEMENTAL DISCLOSURES FROM DEFENDANT CYBERSECURITY AND
<u>INFRASTRUCTURE SECURITY AGENCY</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

CERTIFICATE OF COUNSEL UNDER LOCAL RULE 37.1 ..................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND..................................................................... 2

ARGUMENT .................................................................................................................................. 8

CONCLUSION ............................................................................................................................. 11

CERTIFICATE OF SERVICE ..................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Colgate-Palmolive Co.*,
 No. 79 Civ. 1076-CSH, 1985 WL 191 (S.D.N.Y. Jan. 14, 1985) ............................................ 10

*Bucceri v. Cumberland Farms, Inc.*,
 No. 1:15-cv-13955-IT, 2020 WL 584248, at *6 (D. Mass. Jan. 6, 2020) ................................. 9

*Covil Corp. ex rel. Protopapas v. U.S. Fidelity & Guarantee Co.*,
 544 F. Supp. 3d 588 (M.D.N.C. 2021) ............................................................................... 9, 10

*DR Distrib., LLC v. 21 Century Smoking, Inc.*,
 513 F. Supp. 3d 839 (N.D. Ill. 2021) ....................................................................................... 9

*Gault v. Nabisco Biscuit Co.*,
 184 F.R.D. 620 (D. Nev. 1999) .............................................................................................. 10

*In re BankAtlantic BanCorp., Inc.*,
 No. 07–61542–CIV, 2010 WL 3294342 (S.D. Fla. Aug. 20, 2010) ....................................... 10

*Lane v. Lucent Techs., Inc.*,
 No. 1:04CV00789, 2007 WL 2079879 (M.D.N.C. July 13, 2007) ........................................ 10

*Rodriguez v. IBP, Inc.*,
 243 F.3d 1221 (10th Cir. 2001) .............................................................................................. 10

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
 272 F.R.D. 350 (W.D.N.Y. 2011) .......................................................................................... 10

**Rules**

Fed. R. Civ. P. 26(e)(1)(A) ............................................................................................................. 9

Fed. R. Civ. P. 33(d) ....................................................................................................................... 4

Fed. R. Civ. P. 26(e) ................................................................................................................. 9, 10

## INTRODUCTION

The Court should order Defendant Cybersecurity and Infrastructure Security Agency ("CISA") to supplement its document production to include responsive documents from five current and former CISA officials—Chad Josiah, Rob Schaul, Alex Zaheer, John Stafford, and Pierce Lowary.  It emerged during Brian Scully's deposition last Thursday, January 12, that these five officials are or have directly engaged in routing reports of so-called "disinformation" from government officials to social-media platforms for censorship—or "switchboarding," as CISA calls it.  Plaintiffs' discovery requests clearly and explicitly requested these very communications, yet CISA failed to search the ESI of these five officials or produce any responsive documents from them.  On the contrary, CISA's interrogatory responses implied that it had made a good-faith determination that these officials are *not* among those "having relevant information"—when, in fact, the opposite is true.  The Court should order CISA remedy this deficiency and supplement its production by providing responsive documents from these five CISA officials without delay.

## CERTIFICATE OF COUNSEL UNDER LOCAL RULE 37.1

Pursuant to Local Rule 37.1, the undersigned counsel for Plaintiffs hereby certifies that he requested an opportunity to meet and confer with counsel for Defendants in person or by telephone for purposes of amicably resolving the issues raised in this motion, but that opposing counsel refused to so confer after reasonable notice.  In particular, on Tuesday, January 17, 2023, Plaintiffs' counsel requested that Defendants' counsel participate in a meet and confer top discuss the issues at any time on Wednesday, January 18, 2023.  *See* Ex. 7 (Email chain of Plaintiffs' and Defendants' counsel), at 7.  When Plaintiffs' counsel received no response, Plaintiffs' counsel again requested the opportunity to meet and confer with counsel for Defendants on January 18.  *Id.* at 4.  Defendants' counsel then responded that they were "unavailable for a meet and confer," and

1

instead of meeting in person or by telephone, responded in writing by refusing to agree to any of Plaintiffs' requests. *Id.* at 1-2.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2022, Plaintiffs filed their original Complaint in this matter. Doc. 1. The Complaint named, among other Defendants, the Cybersecurity and Infrastructure Agency (CISA) and its Director, Jen Easterly. Doc. 1, ¶¶ 25-26. The Complaint alleged in detail that CISA is violating the First Amendment by pressuring and coordinating with social-media platforms to censor Americans' speech on election-related topics. Doc. 1, ¶¶ 210-221. As relevant here, the Complaint alleged that "CISA appears to be the focus of many of DHS's attempts to police the content of speech and viewpoints on social media," *id.* ¶ 214. The Complaint emphasized that CISA published a bulletin on April 12, 2022, "announcing that it was coordinating directly with social-media platforms to police 'Mis, Dis, Malinformation,' (which it calls 'MDM')." *Id.* ¶ 219. The Complaint quoted the bulletin's statement that "[CISA's] MDM team *serves as a switchboard for routing disinformation concerns to appropriate social media platforms*." *Id.* ¶ 220 (emphasis added).

Plaintiffs' motion for preliminary injunction, filed on June 15, 2022, emphasized the same point—that CISA admits that it serves as a "switchboard" to steer demands for censorship to social-media platforms: "CISA's 'Mis, Dis, Malinformation' bulletin openly boasts that CISA works directly with social-media companies to flag content for censorship: 'The MDM team *serves as a switchboard for routing disinformation concerns to appropriate social media platforms*….'" Doc. 15, at 29 (emphasis in Doc. 15). Thus, this allegation—that CISA "serves a switchboard" for "routing disinformation concerns to appropriate social media platforms," *id.*—was and is a central allegation about CISA's activities in the Complaint and motion for preliminary injunction.

2

On July 12, 2022, this Court authorized Plaintiffs to seek expedited discovery of "the identity of federal officials who have been and are communicating with social-media platforms about disinformation, misinformation, malinformation, and/or any censorship or suppression of speech on social media, including the nature and content of those communications." Doc. 34, at 13. Again, the identity of CISA officials who are "switchboarding" by "routing disinformation concerns to appropriate social-media platforms" from government officials, and the nature and content of those communications, constitute centrally relevant information under this Order. *Id.*

On July 17, 2022, Plaintiffs served interrogatories and document requests on CISA and Jen Easterly, along with the other Defendants. *See* Ex. 1 (Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories to CISA); Ex. 2 (Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories to Jen Easterly); Ex. 3 (Plaintiffs First Set of Expedited Preliminary-Injunction-Related Requests for Production to Defendants CISA and Jen Easterly). All of Plaintiffs' discovery requests specifically asked for CISA's "switchboarding" communications, in both general and specific terms. *See* Ex. 1, at 8-10 (Interrogatories 1-4, 10); Ex. 2, at 8, 10 (Interrogatories 1-4, 10); Ex. 3, at 8, 11 (RFPs 1-2, 12, 14). In particular, Interrogatory 10 to both CISA and Jen Easterly requested: "Identify every instance in which CISA's 'MDM team' has 'serve[d] as a switchboard for routing disinformation concerns to appropriate social media platforms," as stated in Your April 12, 2022 bulletin, including all Communication(s) related to such instance.'" Ex. 1, at 10. Request for Production No. 14 to CISA and Easterly requested: "Produce all Communications with any Social-Media Platform relating to every instance in which CISA's 'MDM team' has 'serve[d] as a switchboard for routing disinformation concerns to appropriate social media platforms,' as stated in Your April 12, 2022 bulletin." Ex. 3, at 11.

On August 17, 2022, Defendants served their responses to Plaintiffs' discovery requests, including a combined set of objections and responses to Plaintiffs' interrogatories to all Defendants, and a combined set of objections and responses on behalf of CISA and Easterly to Plaintiffs' document requests. *See* Ex. 4 (Defendants' Combined Interrogatory Responses); Ex. 5 (CISA's and Easterly's Combined Responses to RFPs). Defendants' interrogatory responses referred Plaintiffs to their document production, and this occurred specifically with respect to CISA's "switchboarding" communications. In response to Interrogatory 10, which specifically asked CISA and Easterly to identify every instance of "switchboarding" and all communications associated with such instance(s), Easterly replied: "Subject to and without waiving the above objections, Defendant CISA responds on behalf of Ms. Easterly, and refers to the response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d)." Ex. 4, at 65. Rule 33(d) authorizes a party to refer to documents containing the relevant information in lieu of responding to interrogatories. *See* Fed. R. Civ. P. 33(d). Thus, Defendants simply pointed to their document production in lieu of responding to Plaintiffs' request that CISA and Easterly identify all instances of CISA's "switchboarding" by routing disinformation reports from government officials to social-media platforms.

In response to RFP 14 directed to Easterly and CISA—which, again, specifically requested the "switchboarding" communications—Defendants replied that they would identify relevant key custodians and search their ESI for responsive communications: "Defendants will produce non-privileged e-mail communications between Defendants and employees of the Social-Media Platforms concerning Misinformation that can be located within a review population consisting of Custodial Social Media Emails that contain one or more of Plaintiffs' Search Terms." Ex. 5, at 18. This, in fact, was their generic response to RFPs. *See id.*

4

Defendants' interrogatory responses identified *which* custodians from CISA whose ESI it would search. Ex. 4, at 18. In those responses, the Government represented that CISA had "identified the following custodians as *having relevant communications*": Jen Easterly, Christopher Krebs, Matthew Masterson, Geoff Hale, Brian Scully, and Lauren Protentis. *Id.* (emphasis added). Then, the Government went on to state: "*In addition* to the custodians identified above, CISA has identified the following current and former agency personnel *as appearing in the communications* produced in response to Plaintiffs' Requests For Production": Chad Josiah, Robert Schaul, Alex Zaheer, and John Stafford. *Id.* (emphasis added). The juxtaposition of these two statements plainly implied that the first six custodians (Easterly, Krebs, Masterson, Hale, Scully, and Protentis) were the ones that CISA had "identified … as having relevant communications," while the latter four had *not* been identified as "having relevant communications," but happened to be included on some communications from the six key custodians. *Id.* As it turns out, this implication was misleading, at best.

The Government's document production included many emails from Brian Scully, the head of the MDM team, engaging in such "switchboarding" emails. By contrast, emails from Josiah, Schaul, Zaheer, and Stafford were only included to the extent that they happened to be included in email chains that involved Brian Scully "switchboarding" concerns to social-media platforms. Consistent with CISA's identification of key custodians "having relevant information" in its interrogatory responses, Ex. 4, at 18, these documents left the clear impression that *Brian Scully* was involved in sending "switchboarding" communications to social-media platforms, and that the other four custodians (Josiah, Schaul, Zaheer, and Stafford) were involved only obliquely in such "switchboarding" activities. Indeed, that is exactly what the Government's interrogatory responses indicated by identifying Scully as one of six custodians "having relevant information," while

5

identifying the other four as people who were merely "appearing in the communications produced" on behalf of Scully. Ex. 4, at 18.

Plaintiffs deposed Brian Scully last Thursday, January 12, 2023. *See* Ex. 6 (Transcript of Deposition of Brian Scully). In his deposition, it emerged that Scully is not the only "switchboarder" for CISA. In fact, he was only one of *six* CISA officials who "switchboard" disinformation reports to social-media platforms. The other five include the four CISA officials who Defendants' interrogatory responses had stated were *not* included as custodians "having relevant information"—*i.e.*, Chad Josiah, Robert Schaul, Alex Zaheer, and John Stafford. Ex. 4, at 18. Moreover, Scully attempted to avoid identifying the fifth—Pierce Lowary—by repeatedly refusing to answer questions about Lowary's identity.

In his deposition testimony, Scully described CISA's practice of "rout[ing] disinformation concerns to social-media platforms" as a "switchboarding function." Scully Dep. 193:6; *see also id.* at 241:4-242:11. Scully testified that "the MDM team took shifts" in covering the "switchboarding" emails to social-media platforms. Scully Dep. 166:9. In addition to Scully, those taking "shifts" included Chad Josiah, Rob Schaul, Alex Zaheer, and "an intern, which I'm not going to name"—later identified as Pierce Lowary. Scully Dep. 166:16-20. John Stafford also took such "shifts" in routing disinformation concerns to social-media platforms. Scully Dep. 167:17-20.

The interns who were involved in "switchboarding" on behalf of CISA—Alex Zaheer (then an intern, later a full-time CISA official) and Pierce Lowary—were, at that time, simultaneously working for both CISA and the Stanford Internet Observatory, which led the Election Integrity Partnership in pressuring social-media platforms for censorship of election speech. Scully Dep. 169:6-171:18. There were at least 200 emails from CISA to social-media platforms "routing

6

disinformation concerns to the social-media platforms in 2020," only some of which were produced to Plaintiffs in discovery. Scully Dep. 189:21-190:7. Scully repeatedly refused to disclose the name of the other intern (besides Alex Zaheer) who engaged in "switchboarding" for CISA. Scully Dep. 172:15-21.

CISA "had people on a schedule" in routing disinformation concerns to social-media platforms during the 2020 election cycle, and CISA "ramped up as we got closer to the election." Scully Dep. 174:1-11. CISA's six officials split the time into one-day shifts, and they would "monitor their phones" including during "off-hours" to ensure that disinformation reports were promptly forwarded to social-media platforms. Scully Dep. 175:2-21. Those CISA officials were "responsible for forwarding" such reports to the platforms. Scully Dep. 175:20. The CISA officials who did this, other than Scully himself, included "the five officials … just listed," *i.e.*, Josiah, Schaul, Stafford, Zaheer, and Lowary. Scully Dep. 180:11-181:1. Scully admitted that "there's probably other e-mail chains with those five representatives on it," *id.*, other than the Scully emails that Defendants produced in discovery.

After consulting with counsel in the lunch break, Scully returned and identified the CISA official he had repeatedly refused to identify that morning as Pierce Lowary. Scully Dep. 183:10-22. Like Zaheer, Lowary simultaneously worked for CISA and the Stanford Internet Observatory as a member of the Election Integrity Partnership. Scully Dep. 183:20-22, 185:12-19. And Lowary was involved in "switchboarding" to social-media platforms for CISA—he "forwarded over to the platforms" reports of disinformation for censorship. Scully Dep. 184:1-16.

Scully was directly involved in preparing CISA's responses to the discovery requests, and he "provided names of key custodians … who might have relevant emails in their inboxes" in

7

preparing the responses.  Scully Dep. 188:20-189-12.  He also reviewed CISA's interrogatory responses, which identified the custodians whose ESI was searched.  Scully Dep. 189:13-20.

During Scully's deposition, Plaintiffs' counsel formally requested, on the record, that CISA supplement its disclosures to include relevant and responsive ESI from the five newly disclosed custodians—Chad Josiah, Rob Schaul, Adam Zaheer, John Stafford, and Pierce Lowary.  Scully Dep. 276:11-277:12.  While the deposition was taking place, the Court issued an order extending the expedited discovery period to January 27, 2023.  Doc. 175, at 1.  The next morning, Friday, January 13, counsel for Plaintiffs emailed counsel for Defendants requesting that Defendants supplement their CISA disclosures to include relevant and responsive ESI from those five custodians by Wednesday, January 18.  *See* Ex. 7, at 9-10 (email chain between Plaintiffs' and Defendants' counsel).  On Tuesday, January 17, the Government responded by refusing to supplement its disclosures; and on Wednesday, January 18, the Government also declined to meet and confer about these issues.  *Id.* at 4, 7-9.  This motion followed.

**ARGUMENT**

As the facts recounted above make clear, CISA has a clear obligation to supplement its discovery responses to produce responsive documents from the five custodians identified in Mr. Scully's deposition—Chad Josiah, Rob Schaul, Alex Zaheer, John Stafford, and Pierce Lowary.  Plaintiffs explicitly requested documents that Scully admitted are in these custodians' possession—including, but not limited to, the "switchboarding" emails with social-media platforms that they sent while serving "shifts" for CISA.  CISA, through Mr. Scully, was fully aware that these five custodians likely possessed highly relevant and directly responsive communications.  Yet CISA pointedly decided not to search their ESI for responsive information, and indeed, CISA implied in its interrogatory responses that CISA had made a good-faith

8

determination that they were *not* custodians "having relevant information."  CISA has been under an obligation to supplement its document production with responsive documents from these five individuals since August, though this duty came to light only last Thursday, January 12, 2023, during Mr. Scully's deposition.

Federal Rule of Civil Procedure 26(e) requires a litigant to "supplement or correct its disclosure or response" to "an interrogatory, request for production, or request for admission . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A).  An initial failure to produce ESI that is responsive to a request for production triggers a duty to supplement under Rule 26(e).  *See, e.g.*, *DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 939 (N.D. Ill. 2021) ("ESI that falls under the scope of required initial disclosures or a production request must be made as supplemental disclosures or productions under Rule 26(e).");  *Bucceri v. Cumberland Farms, Inc.*, No. 1:15-cv-13955-IT, 2020 WL 584248, at *6 (D. Mass. Jan. 6, 2020) ("[T]o the extent that Defendant has discovered ESI that is responsive to Plaintiffs' Requests and has not yet produced it, Defendant must produce the ESI pursuant to Defendant's obligation to supplement Response under Federal Rule of Civil Procedure 26(e)(1)(A).").

Defendants contend that they have no duty to supplement their disclosures because expedited preliminary-injunction-related discovery was scheduled to close on January 13, 2023. But on January 12, 2023, the Court extended the deadline to complete expedited discovery to January 27, 2023.  Doc. 175, at 1 ("[T]he schedule for expedited preliminary-injunction related discovery is extended from January 13, 2023, until January 27, 2023.").  Moreover, even if discovery had closed, CISA's duty to supplement would still remain in full force.  "The duty to supplement continues beyond the close of discovery."  *Covil Corp. ex rel. Protopapas v. U.S.*

9

*Fidelity & Guarantee Co.*, 544 F. Supp. 3d 588, 595 (M.D.N.C. 2021); *see also Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001). Accordingly, "[a]lthough a party generally must file a motion to compel before the close of discovery, that rule merits less rigid application in the context of motions asserting Rule 26(e) violations." *Protopapas*, 544 F. Supp. 3d at 597 (citations omitted); *see, e.g.*, *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011) (concluding that a motion to compel "[wa]s not untimely because the duty to supplement continues even following the close of discovery"); *In re BankAtlantic BanCorp., Inc.*, No. 07–61542–CIV, 2010 WL 3294342, at *5–6 (S.D. Fla. Aug. 20, 2010) (granting a motion to compel filed after the close of discovery based on a failure to supplement or correct); *Allen v. Colgate-Palmolive Co.*, No. 79 Civ. 1076-CSH, 1985 WL 191, at *1, 3 (S.D.N.Y. Jan. 14, 1985) (same). Rather, a court should deny a motion to compel based on a Rule 26(e) violation as untimely only when "the moving party has unduly delayed." *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999); *see also Lane v. Lucent Techs., Inc.*, No. 1:04CV00789, 2007 WL 2079879, at *3 (M.D.N.C. July 13, 2007) (indicating that the movant need only file within "a reasonable time").

Here, Plaintiffs have not "unreasonably delayed" in seeking documents from Josiah, Schaul, Zaheer, Stafford, and Lowary. On the contrary, as explained above, the egregious omission from CISA's document production came to light only during Mr. Scully's testimony last Thursday, January 12, 2023. Once Plaintiffs became aware of the issue, they formally requested that CISA supplement its production on the record during the deposition on January 12, 276:11-277:12; followed up with a demand for supplementation by email the next morning, January 13; received Defendants' response refusing to supplement on Tuesday, January 17; requested a meet

10

and confer on the issue for Wednesday, January 18, which Defendants declined; and filed this motion to compel on Thursday, January 19. This reflects diligence, not undue delay.

In sum, Defendant CISA has a clear, unambiguous obligation to supplement its document production by producing all responsive documents from current and former CISA officials Chad Josiah, Rob Schaul, Alex Zaheer, John Stafford, and Pierce Lowary. The Court should order CISA to supplement its production accordingly.

## CONCLUSION

For the reasons stated, the Court should order Defendant CISA to supplement its document production by producing any and all documents responsive to Plaintiffs' discovery requests from CISA custodians Chad Josiah, Rob Schaul, Alex Zaheer, John Stafford, and Pierce Lowary.

Dated: January 19, 2023

**ANDREW BAILEY**
**Attorney General of Missouri**

*/s/ D. John Sauer*
D. John Sauer, Mo. Bar No. 58721*
  *Deputy Attorney General*
Joshua M. Divine, Mo. Bar No. 69875*
  *Solicitor General*
Charles F. Capps, Mo. Bar No. 72734*
  *Deputy Solicitor General*
Todd A. Scott, Mo. Bar No. 56614*
  *Senior Counsel*
Kenneth C. Capps, Mo. Bar No. 70908*
  *Assistant Attorney General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
John.Sauer@ago.mo.gov
*Counsel for State of Missouri*


\*  admitted *pro hac vice*

*/s/ Jenin Younes*
Jenin Younes *
John J. Vecchione *
New Civil Liberties Alliance
1225 19th Street N.W., Suite 450
Washington, DC 20036
Direct: (202) 918-6905
E-mail: jenin.younes@ncla.legal
*Counsel for Plaintiffs Dr. Jayanta Bhattacharya,*
*Dr. Martin Kulldorff, Dr. Aaron Kheriaty, and Jill Hines*

*/s/ John C. Burns*
John C. Burns
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: 314-329-5040
E-mail: john@burns-law-firm.com
*Counsel for Plaintiff Jim Hoft*

Respectfully submitted,

**JEFFREY M. LANDRY**
**Attorney General of Louisiana**

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill (La #20685)
  *Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana
Tel: (225) 326-6766
murrille@ag.louisiana.gov
*Counsel for State of Louisiana*

12

## CERTIFICATE OF SERVICE

I hereby certify that, on January 19, 2023, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

<i>/s/ D. John Sauer</i>