**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, and

STATE OF LOUISIANA ex rel. JEFFREY M. LANDRY, Attorney General,

*Plaintiffs*,

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,

*Defendants*.

Case No. 3:22-cv-01213

**PLAINTIFFS' FIRST SET OF EXPEDITED PRELIMINARY-INJUNCTION RELATED INTERROGATORIES TO DEFENDANT CYBERSECURITY AND INFRASTUCTURE SECURITY AGENCY**

Plaintiffs State of Missouri and State of Louisiana, by and through counsel, pursuant to the Federal Rules of Civil Procedures and the Court's Order of July 12, 2022, Doc. 34, request that Defendant Cybersecurity and Infrastructure Security Agency answer these Interrogatories in writing within thirty days. These Interrogatories are deemed to be continuing in nature and should be supplemented as required by Defendant's obligation under the Rules.

**DEFINITIONS**

A. "And," "or" and "and/or" and any other conjunctions or disjunctions used herein shall be read both conjunctively and disjunctively so as to require the production of all Documents (as hereinafter defined) responsive to all or any part of each particular request.

B. "Any," "each," "every," and "all" shall be read to be inclusive and to require the production of each and every Document (hereinafter defined) responsive to the particular request.

C. "Content Modulation" means any action by any Social-Media Platform to limit, restrict, or eliminate distribution of speech or content determined to be misinformation or sanction a speaker for speech or content determined to be misinformation. "Content Modulation" includes any form of restriction on access, censorship, suppression, or modulation of speakers, viewpoints, speech, and/or content by any Social-Media Platform, including any reference to or discussion of any speech or content considered to be Misinformation, or any speaker considered to be a purveyor of Misinformation. "Content Modulation" includes any form of blocking, deterring, deleting, suspending, suppressing, reducing the exposure of, and/or restricting or limiting access to, any speech, content, or speaker on social media, including but not limited to termination of account(s) or channel(s), permanent or temporary suspension of account(s) or channel(s), removal of content or posting(s), issuing strike(s) or warning(s) against account(s) or speaker(s), suppression of content, de-boosting, de-emphasizing, de-monetizing, deindexing, downlisting, shadow-banning, limiting number(s) of followers or subscribers, affixing advisory label(s) or warning label(s) to content, preventing the amplification of content, requiring additional click(s) to access content, and/or reducing or restricting the distribution of content in any way; and it includes, but is not limited to, the use or adjustment of algorithm(s) to achieve any of the foregoing.

D. "CDC" means the Centers for Disease Control and Prevention, and any officer, official, employee, or agent of the CDC, as well as all of its divisions, agencies, boards, employees, contractors, and any subordinate agency or entity.

E. "CISA" means the Cybersecurity and Infrastructure Security Agency within DHS, and any officer, official, employee, or agent of CISA, as well as all of its divisions, agencies, boards, employees, contractors, and any subordinate agency or entity.

F. "Communication" means any disclosure, transfer, or exchange of information, expression, or opinion, however made, including oral, graphic, written, or electronic transmittal of information, including any Document that contains or references a Communication.

G. "Content" means any material, including but not limited to messages, videos, photographs, and sound files, posted or sent by users on Social-Media Platform(s).

H. "Defendant" means President Joseph R. Biden, Jr., White House Press Secretary Jennifer Psaki, Surgeon General Vivek Murthy, HHS Secretary Xavier Becerra, NIAID Director and White House Science Advisor Anthony Fauci, DHS Secretary Alejandro Mayorkas, Director Jen Easterly, Director Nina Jankowicz, all in their official capacity, and the departments and agencies known as HHS, DHS, NIAID, CDC, and CISA.

I. "DHS" means the U.S. Department of Homeland Security, as identified in 5 U.S.C. § 101, and all of its divisions, agencies, boards, employees, contractors, and any subordinate agency or entity, including CISA and the Disinformation Governance Board, as well as any officer, official, employee, or agent of DHS.

J. "Document" means without limitation, any written, recorded, graphic, or other material, however produced or reproduced, whether or not claimed to be privileged against discovery on any grounds, including, but not limited to, material in the forms of reports, statements, records (including any workflow software record), agreements, lists, memoranda, correspondence, sound and/or video recordings (or transcripts of recordings), appointment calendars, appointment invitations and responses, worksheets, emails, computer files, or any other documents of any kind

whatsoever, irrespective of form. All attachments or enclosures to a document are deemed to be part of such document. "Document" and "Communication" include responsive documents retained on personal devices and/or in personal email accounts or other personal accounts.

K. "HHS" means the U.S. Department of Health and Human Services, as identified in 5 U.S.C. § 101, and all of its divisions, agencies, boards, employees, contractors, and any subordinate agency or entity, including CDC and NIAID, as well as any officer, official, employee, or agent of HHS.

L. "Identify" means when referring to: (a) a person, to state the name, his or her employer, job title, team or working group, email address, and present or last known address and telephone number; (b) a document, to state its date, its author(s) and addressees(s), and its nature and substance with sufficient particularity to enable it to be identified; (c) a communication, if other than a document, to state the mode of communication, (e.g., face-to-face, telephonic, email), the date and place thereof, to identify the person(s) who were present at or participated in, or who have knowledge or information relating to each event or occurrence, and to state the general subject matter thereof; (d) a meeting, to state the date, time, place, participants, and topic(s) discussed.

M. "Including" means including, but not limited to.

N. "Information" means data, documents, communications, writings, drawings, graphs, charts, photographs, sound recordings, images, records generated by individuals or machines, or the compilation of any of the foregoing stored in any medium, including electronically stored information.

O. "Misinformation" means any form of speech, expression, writing, or other communication or content considered to be potentially or actually incorrect, mistaken, false,

misleading, lacking proper context, disfavored, having the tendency to deceive or mislead, or otherwise objectionable on similar grounds, including but not limited to any content or speech considered by any federal official or employee to be "misinformation," "disinformation," "malinformation," "MDM," "misinfo," "disinfo," or "malinfo." "Misinformation" includes, but is not limited to, any speech, expression, or content that discusses Hunter Biden's laptop, the "lab-leak hypothesis" or theory that the SARS-CoV-2 virus originated from a laboratory in China, the efficacy of COVID-19 restrictions such as mask-wearing or lockdowns, the security of voting by mail, and any content considered to be "conspiracies about the validity and security of elections," "disinformation related to the origins and effects of COVID-19 vaccines or the efficacy of masks," "false or misleading narratives and conspiracy theories," and/or "false or misleading narratives regarding unsubstantiated widespread election fraud and COVID-19."

      P.      "Meeting" includes gatherings conducted in person, by telephone, or virtually.

      Q.      "NIAID" means the National Institute of Allergy and Infectious Diseases, and any officer, official, employee, or agent of NIAID, as well as all of its divisions, agencies, boards, employees, contractors, and any subordinate agency or entity.

      R.      "Disinformation Governance Board" means the entity with that name within DHS.

      S.      "Person" means any natural person, firm, partnership, association, joint venture, corporation, governmental entity or agency, or other organization or legal or business entity, without any limitation, or any party (including agents or employees) to this litigation.

      T.      "Relates to" or "relating to" means involving, discussing, identifying, referring to, concerning or in any way touching upon the matter sought.

      U.      "Search Terms" mean the following terms, deemed to be case-neutral and thus inclusive of both uppercase and lowercase letters: "misinformation, "misinfo," "disinformation,"

"disinfo," "malinformation," "malinfo," "MDM," "mask," "masks," "masking," "COVID," "SARS-CoV-2," "lockdown," "election," "conspiracy," "conspiracies," "flag," "flagging," "Berenson," "Barrington," "gbdeclaration," "Bhattacharya," "Kulldorff," "Hoft," "Hines," "HealthFreedom," "Kheriaty," "Changizi," "Kotzin," "Senger," "McCollum," "A.J. Kay," "Baumgartner," "Jeff Allen," "Gateway Pundit," "gatewaypundit," "NewsTalkSTL," "Epoch Times," "lab-leak," "lab leak," "Section 230," "antitrust," "anti-trust," "DGB," "Disinformation Governance Board," "Analytic Exchange," "Disinformation Dozen," "Kennedy," "Daszak," "Wuhan," "algorithm," "Hunter Biden's laptop," "Hunter Biden laptop," "DeSantis," "Atlas," "Trump," "super-spreader," "Babylon Bee," "Federalist," "Daily Wire," and "New York Post."

V. "Social-Media Platform" means any organization that provides a service for public users to disseminate speech, expression, information, or other content (typically content that includes messages, videos, photographs, and/or sound files) to other users or the public. "Social-Media Platform" includes both the organization and any of its officers, agents, employees, contractors, or any other person employed by or acting on behalf of the Social-Media Platform; as well subcontractors or entities used to conduct fact-checking or any other activities relating to Content Modulation. "Social-Media Platforms" include, but are not limited to, YouTube, Facebook (n/k/a Meta), Twitter, NextDoor, LinkedIn, and Instagram, Google, Reddit, Facebook Messenger, WeChat, TikTok, Weibo, Wikipedia, Snapchat, and Pinterest, among others.

W. "White House Communications Team" means any person with an email domain of @who.eop.gov, including but not limited to Ron Klain, Kate Bedingfield, Jennifer Psaki, Gina McCarthy, and Karine Jean-Pierre, among others.

X. "You" and "Your" refer to CISA, including all of CISA's sub-divisions, sub-agencies, and any other of its components, as well as all of its officers, officials, employees, agents, staff, personnel, contractors, and other(s) acting on CISA's behalf.

**INSTRUCTIONS**

1. If your response to a request is that you do not have possession, custody, or control of a document or communication, please describe the efforts you have made to locate the document and identify who has control of the document and its location.

2. In the event that any information requested is withheld on the basis of a claim of privilege, state the ground(s) of the privilege claimed with sufficient particularity to evaluate the claim, and, if any documents are claimed to be privileged, set forth the author, addressee, indicated or blind copied, number of pages, attachments or appendices, all persons to whom distributed or shown or explained, present custodian, and a general description (e.g., "letter" or "memorandum") of the document.

3. Any information not provided on the basis that the disclosure would be burdensome or oppressive should be identified by stating the approximate number of documents to be produced, the approximate number of person-hours to be incurred in the identification, and the estimated cost of responding to the request. If a reasonable alternative can be identified, Plaintiffs will meet and confer on that matter.

4. Each copy or duplicate of a document bearing initials, stamps, comments or notations of any character which are not part of the original text shall be considered a separate document. Additionally, all drafts (whether typed, handwritten or otherwise) made or prepared in connection with any document shall be considered a separate document.

5. Documents kept in an electronic or digital format should be produced with all metadata and delivered in their original format or in a manner agreed to by counsel.

6. Emails must identify all recipients and include attachments, previous threads, and forwards.

7. The singular of any noun includes the plural.

8. Unless otherwise directed, these requests ask for discoverable materials from January 1, 2020 to the present.

## INTERROGATORIES

**INTERROGATORY NO. 1.** Identify every officer, official, employee, staff member, personnel, contractor, or any other agent of DHS and/or CISA who has communicated or is communicating with any Social-Media Platform regarding Content Modulation and/or Misinformation.

**RESPONSE:**


**INTERROGATORY NO. 2.** Identify all Communications with any Social-Media Platform relating to Content Modulation and/or Misinformation.

**RESPONSE:**


**INTERROGATORY NO. 3.** Identify all Social-Media Platforms with which You have communicated or are communicating with relating to Content Modulation and/or Misinformation, including the person(s) with whom You have communicated or are communicating.

**RESPONSE:**

**INTERROGATORY NO. 4.** Identify all meetings with any Social-Media Platform relating to Content Modulation and/or Misinformation.

**RESPONSE:**

**INTERROGATORY NO. 5.** Identify all Communications with any Social-Media Platform that contain any of the Search Term(s).

**RESPONSE:**

**INTERROGATORY NO. 6.** Define what is an "Analytic Exchange" with Twitter or any other Social-Media Platform, and identify any existing "Analytic Exchanges," including all participant(s) in such Analytic Exchange(s).

**RESPONSE:**

**INTERROGATORY NO. 7.** Identify all participants and topics of discussion in the "series of monthly meetings between the government and tech companies" prior to the 2020 election, as discussed in Paragraphs 182-184 of the Complaint.

**RESPONSE:**

**INTERROGATORY NO. 8.** Identify every working group, "analytic exchange," task force, joint government-private enterprise, or similar formal or informal arrangement that involves

federal official(s) communicating with any Social-Media Platform(s) about Content Modulation and/or Misinformation, including all participants in such group.

**RESPONSE:**

**INTERROGATORY NO. 9.** Identify all "social-media companies" who "work in close coordination" with "the MDM team" to "build resilience against malicious information activities," as stated in CISA's April 12, 2022 bulletin, including the nature of the coordination.

**RESPONSE:**

**INTERROGATORY NO. 10.** Identify every instance in which CISA's "MDM team" has "serve[d] as a switchboard for routing disinformation concerns to appropriate social media platforms," as stated in Your April 12, 2022 bulletin, including all Communication(s) related to such instance.

**RESPONSE:**

**INTERROGATORY NO. 11.** Identify all Communications with any Social-Media Platform that refer or relate in any way to what CISA publications refer to as "unsubstantiated rumors regarding the origin of the COVID-19 virus," as quoted in Paragraph 219 of the Complaint.

**RESPONSE:**

**INTERROGATORY NO. 12.** Identify all "social-media companies" with which CISA works to "on a variety of projects to build resilience against malicious information activities," as quoted in Paragraph 221 of the Complaint, including the nature and participants in such projects and any Communication(s) related to such projects.

**RESPONSE:**

**INTERROGATORY NO. 13.** Identify how "[t]he MDM team supports the … private sector partners' COVID-19 response efforts via regular reporting and analysis of key pandemic-related MDM trends," as stated in CISA's bulletin quoted in Paragraph 223 of the Complaint.

**RESPONSE:**

**INTERROGATORY NO. 14.** Identify all "partners in the private sector," including any "partners" that are Social-Media Platforms, whom You "work with" to "ensure that the American people have the facts they need," as noted in Paragraph 214 of the Complaint, including the nature of the work.

**RESPONSE:**

Dated: July 18, 2022

Respectfully submitted,

**ERIC S. SCHMITT**
**Attorney General of Missouri**

/s/ D. John Sauer
D. John Sauer, Mo. Bar No. 58721*
*Solicitor General*
Justin D. Smith, Mo. Bar No. 63253
*First Assistant Attorney General*
Todd Scott, Mo. Bar No. 56614
*Senior Counsel*
Michael E. Talent, Mo. Bar No. 73339*
*Deputy Solicitor General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
John.Sauer@ago.mo.gov
*Counsel for State of Missouri*

**JEFFREY M. LANDRY**
**Attorney General of Louisiana**

/s/ Elizabeth B. Murrill
Elizabeth B. Murrill (La #20685)
*Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
*Counsel for State of Louisiana*

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 18, 2022, I caused a true and correct copy of the foregoing to be served by electronic mail, pursuant to agreement of counsel, on counsel for all Defendants.

*/s/ D. John Sauer*