**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| THE STATE OF MISSOURI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:22-cv-01213-TAD-KDM |
| | ) |
| JOSEPH R. BIDEN, JR., in his official | ) |
| capacity as President of the United States, *et* | ) |
| *al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT CYBERSECURTY AND INFRASTRUCTURE SECURITY AGENCY'S**
**OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SUPPLEMENTAL**
**DISCLOSURES**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

BACKGROUND..................................................................................................................4

ARGUMENT.....................................................................................................................10

I.      CISA'S IDENTIFICATION OF CUSTODIANS AND SEARCH FOR
        RESPONSIVE DOCUMENTS WERE ENTIRELY REASONABLE AND
        FULLY DISCLOSED, AND PLAINTIFFS' COMPLAINTS CONCERNING
        CISA'S RESPONSES ARE UNTIMELY ...................................................................10

II.     PLAINTIFFS HAVE ALREADY RECEIVED THE INFORMATION THEY
        CLAIM THEY NEED FOR THEIR PRELIMINARY INJUNCTION MOTION,
        WHICH IN ANY EVENT IS IRRELEVANT .............................................................13

III.    THE COURT'S ORDER EXTENDING DISCOVERY FOR THE PURPOSE OF
        OBTAINING INFORMATION FROM MS. PSAKI DOES NOT MAKE
        PLAINTIFFS' MOTION TIMELY ............................................................................15

IV.     IF THE COURT ORDERS ADDITIONAL DISCOVERY IT SHOULD ALLOW
        AT LEAST TWENTY-ONE DAYS TO COMPLY .....................................................16

CONCLUSION..................................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ............................................................................... 14

**RULES**

Fed. R. Civ. P. 26 ............................................................................................. 3, 15

## INTRODUCTION

As the Fifth Circuit recently recognized, even before the latest round of written discovery on the White House, the Defendants in this case collectively "produced more than 15,000 pages of discovery about social-media content moderation, including communications between federal officials and social-media platforms about misinformation and disinformation." *In re* Murthy, No. 22-30697, at 2 (5th Cir. Nov. 21, 2022). The Cybersecurity and Infrastructure Security Agency (CISA) alone has produced nearly 5,000 pages of responsive documents, responded to numerous interrogatories, and had a witness sit for a full-day deposition—all in the context of expedited discovery in service of Plaintiffs' motion for a preliminary injunction.

Despite these enormous efforts, Plaintiffs have filed an eleventh-hour motion to compel seeking yet more discovery from CISA. Plaintiffs seek a court order requiring CISA to search for and produce responsive documents from the files of five additional custodians—Chad Josiah, Robert Schaul, former employee John Stafford, and former interns Alex Zaheer (who is now a permanent CISA employee) and Pierce Lowary. Plaintiffs ground their motion on the asserted premise that they only recently discovered that in 2020 these individuals participated in forwarding potential misinformation to social media companies, a now-discontinued practice referred to as "switchboarding,"[1] during the deposition of CISA employee Brian Scully. They

---

[1] "Switchboarding" is a practice that was discontinued after the 2020 election cycle by which state and local election officials—including officials of Plaintiff Missouri and the Secretary of State for Plaintiff Louisiana—brought potential misinformation aimed at their jurisdictions to the attention of CISA, which would then forward this information to the appropriate social media companies. *See* Depo. Tr. of Brian J. Scully at 17:1-8; 23:19-24:2; 21:19-25; 63:15-18, ECF No. 179-6 ("Scully Depo. Tr."). CISA did not ask social media companies to take any particular action regarding the information it forwarded to them. Rather, CISA forwarded this information to social media companies for informational awareness and to ensure that social media companies were aware of potential disinformation and could make decisions on content based on their own content moderation policies. *Id.* at Scully Depo. Tr. 17:9-21. Indeed, most of CISA's communications with social media companies forwarding potential misinformation expressly

further contend that these additional communications are relevant to their motion for a preliminary injunction.  Plaintiffs are mistaken on both counts.

First, Plaintiffs have been well aware since August 2022 that individuals other than Mr. Scully—including most of the individuals identified in Plaintiffs' motion to compel—were involved in switchboarding and that Defendants did not search for or produce their documents. Yet despite the Court's order that all challenges to Defendants' objections and discovery responses must be included in the parties August 31, 2022 joint statement, ECF No. 34 at 13-14, Plaintiffs waited five months, until the waning days of the discovery period, to raise this issue. More fundamentally, CISA reasonably focused its search for switchboarding-related documents on Mr. Scully because, as he acknowledged during his deposition, of the approximately 200 switchboarding emails that were forwarded to social media companies during the 2020 election cycle, the vast majority came from him or included him as a recipient when other custodians, such as Mr. Josiah, Mr. Schaul, and Mr. Stafford, sent the communications.  It is hardly remarkable that CISA would focus its production efforts during expedited discovery on individuals like Mr. Scully, who were centrally involved in switchboarding and other matters raised in this lawsuit, rather than on individuals like Messrs. Zaheer and Lowary, who were CISA interns during the 2020 election cycle and whose involvement in switchboarding efforts was comparatively minimal.

---

stated that CISA "affirms that it neither has nor seeks the ability to remove or edit what information is made available on social media platforms," and that "CISA makes no recommendations about how the information it is sharing should be handled or used by social media companies." *See* Ex. 1 at MOLA_DEFSPROD_00009680.  CISA also made clear in these communications that it would "not take any action, favorable or unfavorable, towards social media companies based on decisions about how or whether to use this information." *Id.*

Second, Plaintiffs' contention that information concerning now-discontinued switchboarding efforts—which last took place during the 2020 election cycle—are relevant for the purpose of assessing Plaintiffs' entitlement to preliminary injunctive relief is also mistaken. Given that Plaintiffs must show imminent, irreparable harm, Plaintiffs' request for documents concerning a now-defunct process cannot possibly support their entitlement to a preliminary injunction. And even if this information were relevant, Plaintiffs have the information they claim they needed for their preliminary injunction motion; they have both identities of the CISA employees and interns that participated in switchboarding and the nature of those switchboarding communications with social media companies. The lack of relevance to Plaintiffs' preliminary injunction motion makes Plaintiffs' untimely request for yet more discovery on this same topic inherently burdensome and disproportionate to the needs of the case.

Plaintiffs' alternative arguments that their motion is timely because the Court's January 12, 2023, Order extended the discovery deadline, and that even if discovery has closed Defendants have an obligation to supplement their discovery responses under Federal Rule of Civil Procedure 26(e), fare no better. The Court's January 12 Order extended discovery for the limited purpose of supplementing Defendants' interrogatories after consultation with former White House Press Secretary Jennifer Psaki. And Rule 26(e) does not apply by its plain terms because the involvement of these individuals in switchboarding activities is not new information. Rather, as discussed below, CISA clearly articulated the scope of its search and production efforts in its discovery responses, and the switchboarding activities of individuals other than Mr. Scully are plainly reflected in CISA's August 2022 document productions.

Finally, if the Court concludes that additional productions are appropriate, it should reject as unreasonable Plaintiffs' request that those productions be completed within seven days of the

3

Court's order and order any supplemental productions be completed within twenty-one days of the Court's order.

At bottom, Plaintiffs' motion appears to assume that discovery in connection with a preliminary injunction motion must be as comprehensive as merits discovery. By definition discovery in the context of an expedited preliminary injunction proceeding is not intended to be as complete as merits discovery, and in this case, Defendants have produced thousands of documents, responded to a significant number of interrogatories, and have had six deponents sit for full-day depositions. Discovery on the exhaustive scale that Plaintiffs now demand of CISA, if ever appropriate, should await the Court's resolution of Plaintiffs' requests for preliminary relief and Defendants' motion to dismiss. For the reasons discussed below, Plaintiffs' motion to compel yet more discovery, which is irrelevant to their preliminary injunction motion, should be denied.

## BACKGROUND

On June 15, 2022, Plaintiffs filed their motion for a preliminary injunction. ECF No. 15. Two days later, Plaintiffs filed a motion for expedited preliminary injunction-related discovery. ECF No. 18. In that motion, Plaintiffs sought discovery, "on a limited basis, to allow Plaintiffs to ascertain the identities and nature of communications of federal officials who are coordinating with social-media platforms on the suppression and censorship of online speech." *Id.* at 1. In support of their request for expedited discovery, Plaintiffs explained that "[a] fully effective preliminary injunction will not only enjoin Defendants in general terms from trampling on free-speech rights on social media, but it will enjoin the specific actors most directly engaged in such unlawful activity, and their specific unlawful conduct." *Id.* at 3. Plaintiffs further contended that expedited discovery was appropriate because "Missouri, Louisiana, and millions of their citizens are experiencing ongoing irreparable injuries to their right to speak and listen freely on social

media." *Id.* at 7-8.  Plaintiffs also argued that expedited discovery was appropriate "to identify

the participants in an unlawful scheme." *Id.* at 8.  Plaintiffs contended that their requested

discovery was "reasonably tailored, based both on the time-sensitivity and urgency of the issues

at stake in the preliminary-injunction motion." *Id.* at 11.  Plaintiffs proposed an expedited

schedule that would provide "Defendants a full and fair opportunity to object on [overbreadth]

ground[s], meet and confer, and present any dispute about overbreadth to the Court." *Id.*

On July 12, 2022, the Court granted Plaintiffs' motion for expedited preliminary

injunction-related discovery.  ECF No. 34.  The Court authorized Plaintiffs to serve written

discovery on the Defendants concerning "the identity of federal officials who have been and are

communicating with social-media platforms about disinformation, misinformation,

malinformation, and/or any censorship or suppression of speech on social media, including the

nature and content of those communications," within five days of the Court's order.  *Id.* at 13.

Defendants then had thirty days to provide responses and objections, and the parties were

ordered to meet and confer and file a joint statement detailing the nature of any remaining

disputes within 10 days of Defendants' objections and responses.  *Id.* at 13-14.

Plaintiffs served their discovery requests on CISA Director Easterly and CISA on July

18, 2022, *see* ECF No. 179-1, 179-2, 179-3, and Defendants timely provided their objections and

responses on August 17, 2022.  ECF No. 179-4; 179-5.  Defendants' objections to Plaintiffs'

document requests noted that because the parties are currently involved in an expedited,

abbreviated discovery process where Defendants had only a limited amount of time to conduct a

document search and produce responsive documents, "Defendants will only produce non-

privileged, responsive documents that [they] expressly agree[] to produce herein, so long as

those documents are found in the files collected from a *reasonable* set of custodians and contain

one or more reasonable search term." ECF No. 179-5 at 5 (emphasis added). In response to Plaintiffs' specific request for "all Communications with any Social-Media Platform relating to Misinformation and/or Content Modulation," Defendants expressly noted the burden associated with the request and explained that, subject to their objections, Defendants would produce non-privileged e-mail communications between Defendants and employees of Facebook, Twitter, LinkedIn, Instagram, and YouTube concerning Misinformation "located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are believed to have communicated with employees of the Social-Media Platforms (the 'Custodial Social Media E-mails'); and (ii) contain one or more of Plaintiffs' Search Terms." *Id.* at 6-7.

In response to Plaintiffs' Interrogatory No. 1, which sought the identification of "every officer, official, employee, staff member, personnel, contractor, or agent of" recipient Defendant "or any other federal official or agency who has communicated or is communicating with any Social-Media Platform regarding Content Modulation and/or Misinformation," Defendants explained that they could not "conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule." ECF No. 179-4 at 13. Defendants further objected to this request on the grounds that the interrogatory was unreasonably cumulative and duplicative of Plaintiffs' requests for production of documents, and reiterated that in response to those document requests Defendants were producing non-privileged e-mail communications between Defendants and social media companies concerning misinformation located "within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain

one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation." *Id*. at 14-15.  Accordingly, Defendants explained that review of the produced documents would be a more "expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory." *Id*. at 15.

CISA then identified the following custodians as having relevant communications, as produced in response to document production requests 2 and 3:  Jen Easterly, Director CISA; Christopher Krebs, former Director, CISA; Matthew Masterson, former Senior Election Lead, CISA; Geoff Hale, Lead, Election Security and Resilience (ESR), National Risk Management Center (NRMC), CISA; Brian Scully, Chief, Mis-, Dis-, and Malinformation (MDM) Team, NRMC, CISA; and Laruen Protentis, Engagements Lead, MDM Team, NRMC, CISA.  *Id*. at 18.

In addition to identifying the custodians whose email files CISA searched for responsive documents, CISA also identified the following four current and former agency personnel, from whose files Plaintiffs now seek additional discovery, as appearing in the communications produced in response to Plaintiffs' Requests for Productions:  Chad Josiah, Resilience Lead, MDM Team, NRMC, CISA; Robert Schaul, Analysis and Response Lead, MDM Team, NRMC, CISA; Alex Zaheer, Analyst, MDM Team, NRMC, CISA; and John Stafford, former Analyst, Countering Foreign Influence Task Force (CFITF) (which was the predecessor to the MDM Team), NRMC, CISA.  *Id*. at 18.  Defendants did not identify Pierce Lowary, a former CISA intern in the summer and fall of 2020, as CISA concluded that his involvement in matters relevant to this case was not significant, at least for purposes of expedited preliminary injunction-related discovery, compared to the other individuals CISA identified.

Consistent with the Court's July 12, 2022, Order, the parties met and conferred about Defendants' objections and responses to Plaintiffs' discovery request.  At the time of that conferral process, Plaintiffs were aware of the following based on Defendants' objections and responses and their August 2022 productions:  (1) that CISA would not conduct custodial searches of all potential relevant custodians given the burdens associated with expedited discovery; (2) the identity of the custodians whose files CISA was willing to search; (3) other potentially relevant individuals—including four of the five individuals that are the subject of the instant motion; and (4) that CISA's August 2022 document productions revealed that Messrs. Zaheer, Stafford, Josiah, and Schaul each had some involvement in CISA's switchboarding efforts, including in many circumstances directly communicating with social media companies about potential misinformation.  *See* Ex. 1; Ex. 2.  Notably, Plaintiffs admit that they were aware, based on CISA's August productions, of the involvement of Messrs. Josiah, Schaul, Zaheer and Stafford in CISA's "switchboarding" efforts.  Pls.' Mem. in Supp. of Mot. to Compel Suppl. Disclosures from Def. CISA, at 5, ECF No. 178-1 ("Pls.' Br.") (stating that "emails from Josiah, Schaul, Zaheer, and Stafford were only included to the extent that they happened to be included in email chains that involved Brian Scully 'switchboarding' concerns to social-media platforms.").

Consistent with Plaintiffs' understanding of the methodology CISA used to produce documents, Plaintiffs' counsel noted during the August conferral that counsel for Defendants "identified that your search methodology was to identify *key* custodians within the relevant agencies and use our 'Search Terms' on their inboxes, and then engage in a responsiveness and privilege review.  Based on that representation, [Plaintiffs] agreed to take of [sic] the table our dispute with your objection to the definitions of Misinformation and Content Modulation, and

8

our concern about what search terms you used." Ex. 3 at 1 (emphasis added).  Accordingly, the

parties' joint statement included no objection by Plaintiffs to CISA's identification of appropriate

custodians despite their knowledge of the limits of CISA's search and of Messrs. Zaheer's,

Stafford's, Josiah's, and Schaul's involvement in switchboarding.  *See* ECF No. 72.

In fact, Plaintiffs' counsel acknowledged during Mr. Scully's deposition that Defendants'

August 2022 discovery responses plainly conveyed the scope of CISA's document search, and

just as plainly identified Messrs. Zaher, Stafford, Josiah, and Schaul as CISA personnel who had

participated in CISA's switchboarding effort:

> Q:  So these other people, Chad Josiah, Rob Schaul, Alex Zaheer, John Stafford, Pierce Lowary, who were involved in forwarding e-mails to social media platforms to flag them, were not disclosed in this part of the interrogatories, correct?
>
> A:  I think if you scroll down another paragraph, you would see most of those names.
>
> Q: Yeah, that's extremely interesting, isn't it?  Very next paragraph it says, oh, we've also identified some other people as appearing in the communications you produced, and it lists four of those five people, Chad Josiah, Robert Schaul, Alex Zaheer, John Stafford; right?
>
> A:  Yes, that's who is listed there.
>
> Q:  It appears—
>
> A:  I don't know that that's interesting.
>
> Q:  *It's interesting that CISA knew about the involvement of these people and relevant communications, but didn't search their inboxes in response to our discovery requests; isn't that what this indicates?*

ECF No. 179-6, Scully Depo. Tr. 191:24-192:23 (emphasis added).[2]

---

[2] Plaintiffs contend that counsel for Defendants "refused to so confer" about the instant motion "after reasonable notice."  Pls.' Br. at 1.  Plaintiffs' exhibit reflecting the parties' conferral contradicts this contention.  On January 13, Plaintiffs sent Defendants a lengthy email complaining about CISA's document production (the subject of the instant motion).  ECF No.

**ARGUMENT**

I.  **CISA'S IDENTIFICATION OF CUSTODIANS AND SEARCH FOR RESPONSIVE DOCUMENTS WERE ENTIRELY REASONABLE AND FULLY DISCLOSED, AND PLAINTIFFS' COMPLAINTS CONCERNING CISA'S RESPONSES ARE UNTIMELY**

Pursuant to the Court's July 12, 2022, Order, and at Plaintiffs' own urging, ECF No. 18 at 11, Plaintiffs were obligated to raise any issues with Defendants' discovery objections and responses in the parties' August 31, 2022 joint statement. ECF No. 34 at 13-14. Despite raising numerous other objections to Defendants' discovery responses in the parties' joint statement, Plaintiffs failed to raise any objections regarding the scope of CISA's searches for responsive documents or its efforts to identify CISA personnel who participated in switchboarding. *See* ECF No. 71. This is even though Plaintiffs, as reflected in their counsel's own e-mail communications, were fully aware at the time of the scope of CISA's searches and that individuals other than Mr. Scully whose files were not searched were involved in switchboarding efforts. *See* Exs. 2, 3 at 1. Plaintiffs' new objection to CISA's production efforts—five months after the deadline for raising such challenges—is unfounded and untimely.

---

179-7 at 9-10. Defendants promptly responded the next business day and addressed Plaintiffs' contentions point-by-point. *Id.* at 7-9. Plaintiffs responded that same day and raised two unrelated new issues (not subjects of the instant motion) and noted that they were available to confer the following day. *Id.* at 5-7. Defendants promptly responded the following day and noted that they were "unavailable for a meet and confer *today*" (Plaintiffs omit the italicized word from the quote in their brief) but stated that they would follow up on Plaintiffs' requests "as soon as we can, over the next day or so." *Id.* at 4 (emphasis added). Plaintiffs then requested that Defendants respond to their new, expanded requests by noon central time the following day. *Id.* Defendants promptly respond that they would do their best to respond to Plaintiffs' unilateral deadline but noted that Plaintiffs had raised two new matters for the first time and Defendants needed time to assess those new requests and confer with their clients. *Id.* at 3. Defendants then provided a detailed response ahead of Plaintiffs' deadline. *Id.* at 1-2. Rather than respond to Defendants' detailed response or suggest a date and time to confer over the phone or in person, Plaintiffs filed the instant motion.

CISA's determination of appropriate custodians in the context of expedited preliminary injunction-related discovery was entirely reasonable under the circumstances.  As Mr. Scully explained during his deposition, of the approximately 200 e-mails forwarded to social media companies from CISA in the context of switchboarding, "the vast majority of them are mine, because for a period of time I was the principal one relaying it."  ECF No. 179-6, Scully Depo. Tr. 180:11-23.  Given that Mr. Scully was the primary point of contact with social media companies regarding CISA's switchboarding efforts, and the need to prioritize whose files would be searched in the context of expedited discovery, it was eminently reasonable for CISA to focus its search and production efforts on Mr. Scully rather than former interns like Mr. Zaheer and Mr. Lowary, whose involvement in switchboarding was tertiary to that of Mr. Scully,[3] or Messrs. Josiah, Schaul, and Stafford, many of whose switchboarding emails were captured by the search of Mr. Scully's custodial files.  Plaintiffs have failed to identify any basis to compel CISA to conduct additional searches in connection with their preliminary injunction motion.

In apparent recognition of the untimeliness of their new challenge, Plaintiffs contend that they first learned that individuals other than Mr. Scully were involved in switchboarding at Mr. Scully's deposition.  Pls.' Br. at 6.[4]  This contention is contradicted by the record.

_____

[3] CISA subsequently hired Mr. Zaheer as a junior analyst who supports the work of others on engagement and analysis-related work.  ECF No. 179-6, Scully Depo. Tr. 43:14-22.

[4] Plaintiffs complain about Mr. Scully's initial reluctance to disclose Mr. Lowary's name during his deposition.  Pls.' Br. at 6.  Mr. Scully explained during his deposition that he was concerned about disclosing the names of the CISA interns because Stanford students like Mr. Lowary had experienced a substantial amount of harassment, including receiving threatening emails and social media messages, based on their participation in an academic research project concerning misinformation, and he was concerned about subjecting Mr. Lowary and the other CISA interns to similar harassment.  ECF No. 179-6, Scully Depo. Tr. 50:12-25.  Mr. Scully's concerns were not hypothetical, as other witnesses in this case have been subjected to harassment based on their association with this lawsuit.  ECF No. 110-1 at 15.  Mr. Scully ultimately disclosed Mr. Lowary's name immediately after the lunch break, and Plaintiffs' counsel had hours to ask Mr.

CISA clearly objected in its discovery responses to searching the files of every custodian who potentially may have responsive information given the compressed timeframes associated with expedited discovery.  ECF No. 179-4 at 13-15; 179-5 at 5-7.  CISA used its best judgment to identify the key custodians who were likely to have the most relevant information, balanced against the burdens associated with expedited discovery, and identified those custodians in its interrogatory responses.  *See* ECF No. 179-4 at 18.  CISA further identified additional individuals whose files were not searched, but who appeared in the documents CISA produced.  *Id*.  And as discussed above, those documents that CISA produced in August plainly reflect that Messrs. Zaheer, Stafford, Josiah, and Schaul had some level of involvement in CISA's switchboarding efforts, including direct communications with social media companies, even if they were not the "key" individuals.  *See* Ex. 1; Ex. 2.  And dispelling any doubt as to Plaintiffs' awareness of these documents, Plaintiffs' counsel used some of them to examine Mr. Scully during his deposition.  *See* Ex. 1 at MOLA_DEFSPROD_00013661 (Mr. Stafford flagging potential misinformation for social media company) MOLA_DEFSPROD_00008769 (Mr. Zaheer flagging for Mr. Scully potential misinformation); ECF No. 179-6, Scully Depo. Tr. 156:17-24 (statement by counsel that he was showing Mr. Scully a "collection of emails from October of 2020, produced by the government, involving CISA" that "relate to the switchboarding.").  Accordingly, Plaintiffs' claim that they only learned about the involvement of these individuals in CISA's switchboarding efforts for the first time during Mr. Scully's deposition is incorrect.

---

Scully questions about Mr. Lowary's work as an intern at CISA.  ECF No. 179-6, Scully Depo. Tr. 183:14-19.

Finally, Plaintiffs claim that CISA's interrogatory responses "implied" that Messrs. Josiah, Schaul, Zaheer, Stafford, and Lowary were not custodians "having relevant information." Pls.' Br. at 8-9. CISA's interrogatories in no way suggested that these individuals did not possess relevant information; rather, CISA's interrogatories clearly drew a distinction between individuals whose files it had searched and individuals whose files it did not search but who appeared in the documents of other custodians. ECF No. 179-4 at 18. In any event, any possible confusion that Plaintiffs may have had regarding Defendants' discovery responses would have been resolved by a review of CISA's August productions, which clearly reflected the direct involvement of individuals other than Mr. Scully in, among other matters, the sending of emails to social media companies identifying potential misinformation. Any outstanding concerns could and should have been raised, at the latest, in the parties' joint statement.

## II.     PLAINTIFFS HAVE ALREADY RECEIVED THE INFORMATION THEY CLAIM THEY NEED FOR THEIR PRELIMINARY INJUNCTION MOTION, WHICH IN ANY EVENT IS IRRELEVANT

As discussed above, Plaintiffs claimed in their initial brief in support of expedited discovery that they needed "to ascertain the identities and nature of communications of federal officials who are coordinating with social-media platforms on the suppression and censorship of online speech." ECF No. 18 at 1. Plaintiffs further explained that "[a] fully effective preliminary injunction will not only enjoin Defendants in general terms from trampling on free-speech rights on social media, but it will enjoin the specific actors most directly engaged in such unlawful activity, and their specific unlawful conduct." *Id.* at 3.

Putting to one side the appropriateness of an injunction running against individual agency employees rather than the agency on behalf of which they acted, Plaintiffs already have the precise information they claimed they needed. In terms of the "identities" of CISA employees

13

who communicated with social media companies concerning misinformation, Plaintiffs' motion makes clear that they are aware that Messrs. Josiah, Schaul, Zaheer, Stafford and Lowary had some involvement in switchboarding. *See generally* Pls.' Br. And in terms of the "nature of the communications," CISA produced dozens of switchboarding emails in August 2022—reflecting both how switchboarding worked and the types of communications CISA was having with social media companies concerning election-related misinformation. *See, e.g.,* Exs. 1; 2. Accordingly, Plaintiffs already have precisely the information they claimed they needed both to formulate the terms of a proposed injunction and to identify the actors against whom it should run. Any additional discovery on this issue is unnecessary and unwarranted, at least at this stage of the proceedings.

More importantly, information concerning switchboarding is not relevant in the first place to Plaintiffs' motion for a preliminary injunction. Plaintiffs contend that CISA's discontinued switchboarding activities are "central" to their motion for preliminary injunction. Pls.' Br. at 2. Because CISA's has not performed the switchboarding function since the 2020 election cycle, ECF no. 179-6, Scully Depo. Tr. 21:19-25; 63:15-18, Plaintiffs cannot possibly require a preliminary injunction against CISA over this now-defunct process. As the Fifth Circuit has held "[a] preliminary injunction is not appropriate . . . 'unless the party seeking it can demonstrate that First Amendment interests are either threatened or in fact being impaired at the time relief is sought.'" *Google, Inc. v. Hood*, 822 F.3d 212, 227-28 (5th Cir. 2016) (citation omitted). Plaintiffs fail to explain why documents regarding now-defunct switchboarding efforts are relevant to their claim for injunctive relief, let alone "central," since those efforts can no longer pose a current or future threat to Plaintiffs' asserted First Amendment interests. Plaintiffs' request for yet more discovery on this irrelevant topic is thus inherently burdensome

14

and disproportionate to the needs associated with litigating the preliminary injunction and should be denied on that basis as well.[5]

### III.   THE COURT'S ORDER EXTENDING DISCOVERY FOR THE PURPOSE OF OBTAINING INFORMATION FROM MS. PSAKI DOES NOT MAKE PLAINTIFFS' MOTION TIMELY

Plaintiffs claim that their motion to compel is timely because the Court's January 12, 2023, order extended the discovery period. Pls.' Br. at 9. Plaintiffs are mistaken.

On January 12, 2023, the Court ordered that the schedule for expedited preliminary injunction-related discovery was extended to January 27, 2023, but "only for [the] purpose[]" of Defendants' supplementing their previous responses to the interrogatories Plaintiffs had served on the White House Office of the Press Secretary with information obtained by consulting former White House Press Secretary Jennifer R. Psaki. ECF Nos. 163, 175. Nothing in the Court's orders suggests that the close of discovery may be extended for any other purpose, and Plaintiffs' contention otherwise is meritless.

Plaintiffs' alternative argument that even if discovery has closed Defendants have an obligation to supplement their document productions under Federal Rule of Civil Procedure 26(e) is similarly misplaced. Pls.' Br. at 9. Rule 26(e)(1)(A) provides that a party who has responded to an interrogatory or request for production must supplement its responses "if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Here, CISA did not

---

[5] Even if Plaintiffs could obtain an injunction against individual employees, Mr. Lowary (a former CISA intern) and Mr. Stafford, are no longer with CISA, further highlighting the lack of relevance of further discovery concerning their involvement in switchboarding in connection with Plaintiffs' preliminary injunction motion. ECF No. 179-6, Scully Depo. Tr. 167:16-23; Tr. 184:1-9.

"learn[]" that its responses were "incomplete." That Messrs. Zaheer, Stafford, Josiah and Schaul had some level of involvement in switchboarding, and that CISA was not going to search their files for this phase of preliminary injunction discovery, is not new information that first came to light during Mr. Scully's deposition. Rather, as discussed above, CISA clearly described the scope of its search and production efforts in its discovery responses, and both parties were aware in August about those limitations. Moreover, the fact that these four individuals were directly involved in switchboarding was also made known to Plaintiffs last August through CISA's discovery responses and document productions. Plaintiffs had the opportunity to object to the scope of CISA's discovery responses at that time and elected not to do so.[6] Accordingly, Plaintiffs' contention that Rule 26(e) obligates CISA to supplement its productions under the circumstances is incorrect.

## IV.   IF THE COURT ORDERS ADDITIONAL DISCOVERY IT SHOULD ALLOW AT LEAST TWENTY-ONE DAYS TO COMPLY

Finally, Plaintiffs' demand that CISA complete any additional discovery within seven days of the Court's order is unreasonable. *See* ECF No. 178-2. Plaintiffs seek to have CISA search almost the same number of custodians that it previously searched while requesting that any productions be made in one-fourth the time of CISA's August 2022 production.

Plaintiffs' proposed timetable to complete any additional productions is unreasonable. Any additional productions would require time to run the searches, load the results onto a document review platform, review the results for responsiveness, and potentially consult with

---

[6] Although Mr. Lowary's participation—as a (now former) CISA intern—first came up during Mr. Scully's deposition, for the reasons already discussed there is no greater justification for searching his email files now than there was to search the files of Messrs. Zaheer, Stafford, Josiah and Schaul last August, when Plaintiffs declined to contest the adequacy of CISA's search efforts.

other agencies that may have equities in the documents.  Accordingly, if the Court concludes that CISA must produce more documents, Defendants respectfully request that CISA be given twenty-one days from any Court order to complete its production.

*   *   *   *

As the Court recognized in its September 6, 2022, Order largely rejecting Plaintiffs' request for additional preliminary injunction-related discovery, "[t]his Court is aware of the burden it has put on all parties in this proceeding with the expedited discovery schedule.  To add additional expedited discovery during the current schedule would be too much."  ECF No. 72 at 4.  Plaintiffs nevertheless seek to disregard the burdens recognized by the Court and request yet more discovery about a defunct initiative that cannot possibly support a preliminary injunction. Plaintiffs' untimely and irrelevant request for additional discovery should be denied.

**CONCLUSION**

Plaintiffs' untimely challenge to the adequacy of CISA's preliminary injunction-related discovery lacks merit and their motion to compel should be denied.

17

Dated: January 23, 2023          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel, Federal Programs Branch

*/s/ Kyla M. Snow*
KYLA M. SNOW (OH Bar No. 96662)
INDRANEEL SUR (D.C. Bar No. 978017)
AMANDA K. CHUZI (D.C. Bar No. 1738545)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Tel: (202) 514-3259
kyla.snow@usdoj.gov

*Attorneys for Defendants*

18