# EXHIBIT 3

| | |
|---|---|
| **From:** | Sauer, John <John.Sauer@ago.mo.gov> |
| **Sent:** | Wednesday, August 24, 2022 6:00 PM |
| **To:** | Snow, Kyla (CIV); Cholera, Kuntal (CIV); Murrille@ag.Louisiana.Gov; Capps, Kenneth; Johnson, Jeff; 'Megan Wold'; Brian Barnes; Scott, Todd |
| **Cc:** | Sur, Indraneel (CIV); Kirschner, Adam (CIV); Jenin Younes; Jonathon Burns; John Vecchione |
| **Subject:** | [EXTERNAL] RE: 3:22-cv-01213-Missouri et al v. Biden |

Dear Counsel-

Thank you for meeting and conferring with us just now for over two hours to discuss disputed issues regarding discovery. We appreciate everyone's efforts to reach agreement, and we believe it was a productive call. This email is to summarize the follow-up and action items for both sides that we discussed on the call; it is not intended to recount the entirety of the lengthy conversation. I will attempt to go through the items we discussed in the order they were discussed.

(1) Regarding your request to modify our prior agreement on redactions of contact information to add redactions of the names of lower level employees, we discussed the issue at some length. You plan to ask your clients for a specific list of names to be redacted or another manner of identifying who would be redacted, and we will consider that proposal when you provide it to us. In the meantime, for documents that we plan to file with the Court or otherwise publicly disclose, we will redact contact information from them per our agreement, and consult with you about whether you wish for additional redactions.

(2) Clawback agreement. We will provide a redline to Kyla's proposed agreement.

(3) Timing of the parties' portions of the proposed joint statement. Kyla proposed that we provide a draft by tomorrow. We do not agree that, and instead proposed a simultaneous exchange of drafts at an agreed time. You plan to consult with your team and respond with a proposal.

(4) Discovery from Karine Jean-Pierre and other White House officials. Adam proposed responding only to Interrogatory No. 6 to Karine Jean-Pierre. We suggested that there should be a response that (1) identifies the federal officials of whom they are aware who have or are communicating with social-media platforms about misinformation and content modulation on social-media, and (2) describes the nature and content of those communications. This would encompass the information sought in Rogs 1 and 2. Adam plans to discuss with his client and get back to us with a possible proposal.

(5) Identifying federal officials and agencies engaged in relevant communications with social-media platforms, outside the responding agencies. Your interrogatory responses do not provide this information. We ask that you identify these in response to interrogatories. We noted that, as Kuntal said, you have identified key custodians using human knowledge, and those custodians know whether other federal officials and agencies are involved in such communications. (The documents already produced reflect involvement of Department of Treasury and Census Bureau officials, for example.) This is an important issue for us that we emphasized in requesting expedited PI-related discovery in the first place. Indraneel plans to discuss with his clients and let us know if they are willing to expand their Rog responses to include this information.

(6) Kuntal identified that your search methodology was to identify key custodians within the relevant agencies and use our "Search Terms" on their inboxes, and then engage in a responsiveness and privilege review. Based on this representation, I agreed to take of the table our dispute with your objection to the definitions of Misinformation and Content Modulation, and our concern about what search terms you used.

(7) We objected that certain interrogatory responses from DHS and CISA (4, 6, 7, 9, 13, and 14 from DHS; Jankowicz 9, and Easterly 4, 8, 10) are too vague to be useful. Indraneel indicated, but did not know for sure, that the document production may have provided more information about the meetings. We noted that we too are still in the process of reviewing the production. We agreed to follow up with a more detailed identification and explanation of our concerns about the specific responses for you to take to your clients.

1

(8) Alternative avenues of communication, such as text messages, private email accounts and private devices, and misinfo "reporting channels" provided by social-media platforms. Kyla indicate that you will consult with your clients before providing your position on these requests.

(9) Regarding your narrowed definition of "Social-Media Platform," I asked whether your search criteria would capture communications with Google about Google search results. You indicated that you would check with your review team about this, and I stated that, if so, we might be willing to take this issue off the table.

(10) Privilege log. You indicated that you do not plan to produce a privilege log before the joint statement is due on Monday. We asked you to provide as much detail as possible about your claims of privilege by Friday, and we asked you to identify the breadth, scope, and nature of privilege assertion for any documents that have been withheld on privilege grounds. Kuntal agreed to determine and let us know whether documents were withheld in this fashion.

(11) HHS's designation of three sub-offices (OSG, NIAID, and CDC) as sub-units likely in possession of responsive information. We agreed to consult with our team and let you know if we have further concerns about this point.

(12) Org charts. Kuntal agreed to follow up and see if your clients are willing and able to produce org charts in response to RFPs 4 and 5.

(13) Communications with Twitter regarding the planned meeting with DHS, Nick Pickles, and Yoel Roth. You think the search terms likely addressed this issue, but agreed to inquire further of your client about such communications.

(14) Dr. Fauci's communications with Mark Zuckerberg. Kuntal indicated that some communications between these two have been withheld as non-responsive. We indicated that they are responsive to RFP 14 to Dr. Fauci and they provide context for the email communications alleged in detail in the Complaint and First Amended Complaint. Kuntal agreed to follow up with your clients and let us know if you are willing to produce them.

(15) Emails without attachments/Metadata. Jeff Johnson will follow up in a separate email to you about these issues.

Thanks, John

---

**From:** Snow, Kyla (CIV) <Kyla.Snow@usdoj.gov>
**Sent:** Wednesday, August 24, 2022 11:36 AM
**To:** Sauer, John <John.Sauer@ago.mo.gov>; Cholera, Kuntal (CIV) <Kuntal.Cholera@usdoj.gov>; Murrille@ag.Louisiana.Gov; Capps, Kenneth <Kenneth.Capps@ago.mo.gov>; Johnson, Jeff <Jeff.Johnson@ago.mo.gov>; 'Megan Wold' <mwold@cooperkirk.com>; Brian Barnes <BBarnes@cooperkirk.com>; Scott, Todd <Todd.Scott@ago.mo.gov>
**Cc:** Sur, Indraneel (CIV) <Indraneel.Sur@usdoj.gov>; Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>; Jenin Younes <jenin.younes@ncla.legal>; Jonathon Burns <john@burns-law-firm.com>; John Vecchione <john.vecchione@ncla.legal>
**Subject:** RE: 3:22-cv-01213-Missouri et al v. Biden

John,

To follow up on your question about remaining productions, we are hoping to produce roughly 550 additional documents by the end of this week. These would complete our production of confidential documents in response to Plaintiffs' discovery requests.

As we previewed in an earlier email, the remaining documents required additional review for potential law enforcement sensitivities. A portion of these documents will contain a handful of privilege redactions to low-level FBI, NSA, or ODNI employee names under the law enforcement privilege or a National Security Act provision exempting from disclosure the names of certain personnel. The redactions will still allow Plaintiffs to see that the person identified is associated with a specific agency. We are endeavoring to complete review and any necessary redactions as quickly as possible. So you can see what the documents with those redactions applied will look like ahead of their production, I'm attaching one exemplar that would be part of the next production.

As you'll see, the redactions are minimal, but we wanted to flag this now in advance of our meet and confer since we will not be able to produce the documents until hopefully the end of this week.  We can discuss the production of a privilege log for these and other redactions and withholdings at the meet and confer today.

Best,
Kyla

**From:** Sauer, John <John.Sauer@ago.mo.gov>
**Sent:** Tuesday, August 23, 2022 1:21 PM
**To:** Snow, Kyla (CIV) <Kyla.Snow@usdoj.gov>; Cholera, Kuntal (CIV) <Kuntal.Cholera@usdoj.gov>; Murrille@ag.Louisiana.Gov; Capps, Kenneth <Kenneth.Capps@ago.mo.gov>; Johnson, Jeff <Jeff.Johnson@ago.mo.gov>; 'Megan Wold' <mwold@cooperkirk.com>; Brian Barnes <BBarnes@cooperkirk.com>; Scott, Todd <Todd.Scott@ago.mo.gov>
**Cc:** Sur, Indraneel (CIV) <Indraneel.Sur@usdoj.gov>; Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>; Jenin Younes <jenin.younes@ncla.legal>; Jonathon Burns <john@burns-law-firm.com>; John Vecchione <john.vecchione@ncla.legal>
**Subject:** [EXTERNAL] RE: 3:22-cv-01213-Missouri et al v. Biden

Kyla-

Sounds good, how about meeting and conferring at 3:00 pm Eastern/2:00 pm Central tomorrow?  As I stated yesterday, we agree to meet and confer about the clawback agreement and the issue of name redactions, along with the other 17 issues noted in my email of yesterday.  In the meantime, it would be helpful for us to know what is the anticipated volume of documents remaining to be produced, and the anticipated schedule of production, if you can provide that information.

Thanks, John

**From:** Snow, Kyla (CIV) <Kyla.Snow@usdoj.gov>
**Sent:** Tuesday, August 23, 2022 12:12 PM
**To:** Sauer, John <John.Sauer@ago.mo.gov>; Cholera, Kuntal (CIV) <Kuntal.Cholera@usdoj.gov>; Murrille@ag.Louisiana.Gov; Capps, Kenneth <Kenneth.Capps@ago.mo.gov>; Johnson, Jeff <Jeff.Johnson@ago.mo.gov>; 'Megan Wold' <mwold@cooperkirk.com>; Brian Barnes <BBarnes@cooperkirk.com>; Scott, Todd <Todd.Scott@ago.mo.gov>
**Cc:** Sur, Indraneel (CIV) <Indraneel.Sur@usdoj.gov>; Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>; Jenin Younes <jenin.younes@ncla.legal>; Jonathon Burns <john@burns-law-firm.com>; John Vecchione <john.vecchione@ncla.legal>
**Subject:** RE: 3:22-cv-01213-Missouri et al v. Biden

John,

We are available for an initial meet and confer any time tomorrow afternoon except for 2-2:30, and we will be available on other days to continue the conversation as necessary.

As noted at the end of your email, the issue of name redactions and a clawback agreement are outstanding.  In our view, those items are essential and should be prioritized in our discussions about all other issues raised below.

Best,
Kyla

**From:** Sauer, John <John.Sauer@ago.mo.gov>
**Sent:** Monday, August 22, 2022 5:59 PM
**To:** Cholera, Kuntal (CIV) <Kuntal.Cholera@usdoj.gov>; Murrille@ag.Louisiana.Gov; Capps, Kenneth <Kenneth.Capps@ago.mo.gov>; Johnson, Jeff <Jeff.Johnson@ago.mo.gov>; 'Megan Wold' <mwold@cooperkirk.com>; Brian Barnes <BBarnes@cooperkirk.com>; Scott, Todd <Todd.Scott@ago.mo.gov>
**Cc:** Snow, Kyla (CIV) <Kyla.Snow@usdoj.gov>; Sur, Indraneel (CIV) <Indraneel.Sur@usdoj.gov>; Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>; Jenin Younes <jenin.younes@ncla.legal>; Jonathon Burns <john@burns-law-firm.com>; John Vecchione <john.vecchione@ncla.legal>
**Subject:** [EXTERNAL] RE: 3:22-cv-01213-Missouri et al v. Biden

Dear Counsel-

We have identified a number of issues in your responses and production so far that warrant prompt discussion by the parties. We are raising these issues (listed below) in good faith, summarizing our understanding of your position and our objections to it, for the purposes of advancing our discussions. We understand that your production is still ongoing, so if we have misunderstood your position on any issue, please let us know. We request the opportunity to meet and confer about these issues as soon as possible, and we propose having a conference no later than Wednesday. Given that your production is ongoing through Thursday, we will probably need to have follow-up discussions on Friday and/or Monday as well.

(1) In response to both interrogatories and document requests, you categorically object to producing any information, documents, or communications from any officials in the White House and/or the Executive Office of the President. It appears from your discovery responses that you have not searched for any responsive emails or documents from any WH and/or EOP sources, and you have categorically objected without responding to all interrogatories directed to WH/EOP officials, such as Karine Jean-Pierre and Dr. Fauci. You object on grounds of privilege, but communications between White House officials and third-parties like the Social-Media Platforms are not privileged. You claim that we are required to seek that information from other sources first, but among other problems, that is not a practicable solution in expedited preliminary-injunction related discovery. We have strong reason to believe that there is significant involvement of WH/EOP officials in relevant communications, as many sources confirm their involvement – including Jen Psaki's open admissions, the Twitter Slack messages that Alex Berenson released, and the cc'ing of EOP officials on the emails you have produced, among others-- and thus your position denies us discovery on matters of the highest relevance and importance. We strongly disagree with your position on this point, which appears wholly unwarranted, and we request that you respond to interrogatories and produce responsive documents and communications immediately.

(2) Your responses to Interrogatory 1 (what you call Common Interrogatory 1) fail to provide information about the identities of federal officials and/or agencies *other than the responding agencies* that are communicating with social-media platforms about content modulation and misinformation. Given the parties' pre-production negotiation and agreement on this very issue, this position is surprising and unsupportable. The parties extensively negotiated a compromise in response to Indraneel's objection to the number of interrogatories. Over our repeated objection, Indraneel insisted on treating the first five interrogatories as "Common" interrogatories, and selecting a single "Common" interrogatory as Number 1. He proposed the first interrogatory to HHS as Common Rog No. 1. In my email of Thursday, August 11, I specifically objected to using the HHS version of Rog 1 as the "Common" Rog 1 for all Defendants, precisely because it did not ask for each Defendant to identify any and all federal officials and agencies who communicate with Social-Media Platforms about Content Modulation and Censorship *outside* the responding agency. In that Aug. 11 email, I specifically noted that, "in several of the Interrogatory 1s sent to certain defendants, we deliberately asked the recipient to identify, not just employees of their own agency, but to identify all employees or agents of *any* federal agency of which they are aware who communicate with social-media platforms about Content Modulation and/or Misinformation." (Emphasis in original.) For this reason, I insisted that, if the parties were to reach agreement on the number-of-interrogatories objection, that each Defendant must respond to a modified version of CDC

4

Rog 1, not HHS Rog 1, because the CDC version specifically asked about *other* federal agencies and officials who communicate with Social-Media Platforms about Content Modulation and Misinformation: ""Identify every officer, official, employee, staff member, personnel, contractor, or agent of [the responding Defendant and/or his or her federal agency] *or any other federal official or agency* who has communicated or is communicating with any Social-Media Platform regarding Content Modulation and/or Misinformation." By his response email of Thursday, August 11, 2022, at 12:20 pm Central, Indraneel explicitly agreed to this request: "Defendants will respond subject to objections to the 5 common, plus 20, interrogatories *you have identified in this morning's e-mail*" (i.e. my email of earlier that morning, insisting that the CDC Rog 1 be used for all Defendants). Then, to ensure there was no confusion on this very issue, I sent a follow-up email on the morning of Friday, August 12, at 7:15 am Central which stated: "We understand that you are agreeing to have each Defendant respond, along with the others discussed, to the modified version of Interrogatory 1 to the CDC, as set forth in my email of yesterday and immediately below, but please let me know if we are mistaken," and then I quoted the modified CDC Rog 1. No one on your side noted any disagreement on this point, then or later. Despite this clear and explicit agreement, your Interrogatory responses simply do not provide this information about what other federal agencies and officials are communicating with Social-Media Platforms about Content Modulation and Misinformation. This is particularly surprising and disappointing because we know such agencies exist, and we know that at least some Defendants know about them – for example, the CDC emails identify Census Bureau and Department of Commerce officials engaged in such communications, but your interrogatory responses do not mention them. Your position on this is inconsistent with our clear and explicit agreement and insupportable under the law in any event. Please immediately supplement your interrogatory responses with the requested information.

(3) Your objections indicate that you are only searching for communications about Misinformation, and not Content Modulation. See, e.g., Interrogatory Responses at 2, 21. This position is inconsistent with the plain terms of the Court's order, which authorizes discovery of "communicat[ions] with social-media platforms about disinformation, misinformation, malinformation, **and/or** any censorship or suppression of speech on social media, including the nature and content of those communications." Doc. 34, at 13. To be clear, a Communication from a federal official to a Social-Media Platform that relates to Content Modulation is responsive, even if the federal official does not deem the subject-matter to be Misinformation. For example, if a White House official emailed Meta and stated, "Please censor the following Facebook posts that are critical of the President," regardless of whether the official viewed the posts as misleading or untruthful, that is highly relevant information, even if though it would relate to Content Modulation but arguably not to Misinformation. And our First Amended Complaint explicitly alleges that such pressure is happening. To be clear, we request that you produce relevant documents that relate to Content Modulation **and/or** Misinformation, not just to Misinformation.

(4) The responses to interrogatories from DHS and CISA are so vague, generalized, and (in some cases) non-responsive as to be, in many cases, nearly meaningless. They fail to provide even basic information (such as the participants in recurring meetings), especially about oral communications with social-media platforms. This concern applies, for example, to DHS's responses to Interrogatories 4, 6, 7, 9, 13, and 14 (using our original Rog numbers), Jankowicz's response to Rog 9, and Easterly's responses to Rogs 4, 8, and 10. We request that you promptly resubmit responses to these interrogatories that actually provide meaningful information, in reasonable detail, about the matters under examination.

(5) You have objected to the definition of "Communication" and stated that you will only search for emails, not other forms of communication. See, e.g., Interrogatory Responses, at 3-4. We disagree with this restriction as artificial and baseless. The emails you have produced demonstrate that federal officials communicated in writing with social-media platforms via alternative written channels, beside email. For example, Meta trained CDC and Census employees on a "Facebook misinfo reporting channel," and Twitter allowed federal officials to submit censorship issues on a "Partner Support Portal." As federal officials were using such alternative channels to "flag problematic posts" or otherwise discuss content modulation and censorship, those are highly relevant communications. Further, if federal officials are or were using other written mediums such as text messaging,

5

instant messaging, private email, etc., to communicate with social-media platforms, those communications are discoverable as well.

(6) You have artificially limited the definition of "Social-Media Platform" to include only Facebook, Instagram, YouTube, LinkedIn, and Twitter.  But your own interrogatory responses confirm meetings involving other social-media platforms, such as Reddit, Verizon, Google Search, Wikimedia, etc.  See, e.g., Interrogatory Responses, at 32.  And our First Amended Complaint includes many allegations about censorship on other platforms than the five you identify, such as NextDoor, Google Search, and others.  To be clear, the federal agencies and officials are in the best position to know what social-media platforms they communicate with, and how to identify and search for communications with them.  It is not unduly burdensome for those officials to identify which social-media platforms they have been in communication with, when the federal officials involved in the communications are obviously aware, from their own personal knowledge, of such involvement.  We do not agree with the artificially narrowing of this definition.

(7) You have declined to provide any privilege log to date, and you object to producing a privilege log on ground of burdensomeness.  See, e.g., Interrogatory Responses, at 6 (Obj. 12).  It is not clear to us whether or when you plan to produce a privilege log.  Your document production, however, contains many examples of documents redacted for privilege without sufficient information to meaningfully assess the basis of withholding – such as, for example, Bates Number 8212 which is entirely redacted with the notation "Document Withheld for Privilege."  And there may be many documents which are not redacted, but simply not produced at all.  Respectfully, we request the prompt production of a privilege log.  The obligation to produce a privilege log is clearly set forth in the Rules and the case law, and we explicitly requested one in both our interrogatories and RFPs.  We are concerned that you may intend to withhold relevant materials on grounds that do not appear to reflect well-recognized privileges – such as your recent statement in your email of last Thursday, regarding yet-unproduced documents, that "[s]ome of those documents are under review for potential law enforcement and national security issues."  We request that you produce a privilege log of responsive-but-withheld materials without further delay.  This request is time-sensitive because we obviously need your privilege log to meaningfully identify and confer about specific withheld documents before next Monday's deadline to submit a joint statement of disputed issues with the Court**.**

(8) Search terms.  Your Interrogatory responses state that you used a set of "reasonable search terms" to identify responsive materials.  Your interrogatories specifically object to the use of our Search Terms (as defined by Plaintiffs), and you state that you used your own "one or more reasonable search terms" (which are not disclosed) instead.  See Interrogatory Responses, at 36-37.  But your RFP responses seem to indicate that you used the "Search Terms" that Plaintiffs provided, and not a different set constructed by you.  It is not clear to us what search terms you used to identify responsive materials, or whether you relied on additional sources of information (such as the human knowledge of key custodians) to collect responsive materials.  To be clear, our "Search Terms" were explicitly provided as a back-up to catch any materials that other good-faith methods of searching might have missed.  They were not intended to supply to sole or primary method of searching, or serve as a substitute for human knowledge of covered custodians.  That is why we asked every defendant to identify and produce all Communications with Social-Media Platform(s) that relate to Content Modulation and/or Misinformation, **and** all Communications with Social-Media Platform(s) that contain any of our Search Terms.  We request that you identify your methodology of searching for responsive materials, including but not limited to any search terms used.

(9) You have objected to identifying oral communications in response to Interrogatories (such as phone calls, teleconferences, video meetings by Zoom or similar videoconference, etc.), and have indicated that you are only searching for emails.  We disagree with this position.  Your clients are required to use reasonable efforts to identify oral communications with Social-Media Platforms and respond to interrogatories identifying such oral communications.

(10) HHS has indicated that it is producing responsive information within the knowledge of the Office of Surgeon General, the CDC, and NIAID.  But the First Amended Complaint has separately named HHS and Secretary Becerra, not just those three sub-components, as Defendants, and it contains many allegations of HHS's involvement in social-media censorship.  Further, it is eminently likely that responsive information is contained within other branches of HHS – for example, the First Amended Complaint quotes emails from NIH director Dr. Francis Collins that are highly relevant to the social-media censorship of the Great Barrington Declaration, etc.  We request that you expand your responses to include all responsive information on behalf of HHS, not just the three HHS sub-divisions or components you have identified.

(11) You have categorically objected to identifying or producing documents and communications sent via private email accounts and/or private devices.  Yet all Defendants have been asked to identify and produce their Communications with Social-Media Platforms about Content Modulation and/or Misinformation.  If federal officials are or were communicating with Social-Media Platforms about Content Modulation and/or Misinformation on their personal accounts and devices, those are relevant and responsive documents, and those officials are required to identify and produce such documents.  Each agency and official Defendant is specifically asked in Common Interrogatory 2 to identify them.  Likewise, if the agency Defendants' key custodians know that they have used private accounts and devices for such communications, they are required to identify and produce them.  For example, if Dr. Fauci emails with Mark Zuckerberg from a private email address about modulating content on Meta platforms, such communications have to be identified and produced, and the same is true of all other Defendants, including both individuals and agencies.

(12) You have categorically objected to RFPs 4 and 5, which seek org charts for governmental divisions and social-media platforms of organizations engaged in the relevant communications, and you have produced no documents.  Producing such org charts is common practice as they provide important contextual information that allows the parties to identify the persons engaged in or copied on email communications and otherwise mentioned in documents produced.  We request that you produce such org charts that are in your clients' possession and are responsive to our RFPs.

(13) RFP 9 to Nina Jankowicz asked for information about the planned meeting with Twitter executives Nick Pickles and Yoel Roth.  You respond merely by stating that the meeting did not occur. But the RFP specifically asked for documents and communications about what was "to be discussed" at that meeting, regardless of whether or not it occurred, and those are obviously relevant materials.  Please produce those materials without delay.

(14) RFP 11 to Dr. Fauci requested his communications with Mark Zuckerberg.  These are directly relevant to the allegation in the Complaint and First Amended Complaint that Dr. Fauci covertly coordinated with Mark Zuckerberg about Content Modulation and Misinformation from early 2020, if not earlier, based on quotations from emails between the two previously produced.  The course of communication between the two of them is relevant to elucidate the course of communications.  Please provide the documents requested in this RFP.  Likewise, for similar reasons, we request a complete production from Dr. Fauci to RFP 12.

In addition, we flag some additional issues for discussion at the same time: (1) the timing of your completion of the redacted production for public disclosure, (2) the additional redactions of names that Kuntal requested last week, (3) the timing of your completed production, (4) the fact that your interrogatory responses are marked "Confidential" for reasons not clear to us, and (5) the clawback agreement that Kyla circulated on Friday.

We will not hesitate to raise additional issues as they occur to us.  Please let us know your availability on Wednesday to discuss these issues.

Thanks, John

**From:** Cholera, Kuntal (CIV) <Kuntal.Cholera@usdoj.gov>
**Sent:** Thursday, August 18, 2022 3:43 PM
**To:** Sauer, John <John.Sauer@ago.mo.gov>; Murrille@ag.Louisiana.Gov; Capps, Kenneth <Kenneth.Capps@ago.mo.gov>; Johnson, Jeff <Jeff.Johnson@ago.mo.gov>; 'Megan Wold' <mwold@cooperkirk.com>; Brian Barnes <BBarnes@cooperkirk.com>; Scott, Todd <Todd.Scott@ago.mo.gov>
**Cc:** Snow, Kyla (CIV) <Kyla.Snow@usdoj.gov>; Sur, Indraneel (CIV) <Indraneel.Sur@usdoj.gov>; Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>
**Subject:** RE: 3:22-cv-01213-Missouri et al v. Biden

Hi John,

Thank you for your e-mail, and please do let us know of any technical issues with the documents.

Regarding your concerns about rolling productions, I want to reiterate the relevant context. As you mentioned, we are in the middle of expedited discovery with a highly compressed timeline. Plaintiffs served 8 sets of RFPs and 10 sets of Interrogatories to a slew of government agencies and officials. Over the next thirty days, we had to identify relevant custodians, pull relevant documents, load them into a review platform, and review those documents. Although Rule 34 only requires that responding parties produce documents in a reasonable time following service of their responses and objections, we managed to produce over 1,000 documents concurrently with our responses and objections which, as we mentioned, represents the majority of documents we intend to produce. We understand the compressed schedule the Court imposed and are endeavoring to produce the remaining batches of documents in the next few days (including at least one batch tonight or tomorrow). We did not reach out to you to discuss this issue earlier because we were devoting our time and attention towards getting as many documents as possible processed in the initial set.

After the next set that is slated to go out tonight or tomorrow, we estimate that, with family members, there are approximately 500 documents remaining to process and produce. Some of those documents are under review for potential law enforcement and national security issues. We will endeavor to complete that review as soon as possible.

Thanks,
Kuntal

**From:** Sauer, John <John.Sauer@ago.mo.gov>
**Sent:** Thursday, August 18, 2022 12:50 PM
**To:** Cholera, Kuntal (CIV) <Kuntal.Cholera@usdoj.gov>; Murrille@ag.Louisiana.Gov; Capps, Kenneth <Kenneth.Capps@ago.mo.gov>; Johnson, Jeff <Jeff.Johnson@ago.mo.gov>; 'Megan Wold' <mwold@cooperkirk.com>; Brian Barnes <BBarnes@cooperkirk.com>; Scott, Todd <Todd.Scott@ago.mo.gov>
**Cc:** Snow, Kyla (CIV) <Kyla.Snow@usdoj.gov>; Sur, Indraneel (CIV) <Indraneel.Sur@usdoj.gov>; Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>
**Subject:** [EXTERNAL] RE: 3:22-cv-01213-Missouri et al v. Biden

Kuntal-

We are in receipt of your production last night, and we are reviewing as quickly as possible to identify issues for further discussion, which we will identify for you as soon as possibly – likely on an ongoing basis. This email is to express our grave concern about your statement below and in the objections to the RFPs that you intend to make rolling productions between August 17 and August 25, which may not even be completed by August 25, as your RFP objections state: "Defendant will make rolling productions, consisting of the documents Defendant has agreed to produce herein, starting on August 17, 2022 and will **endeavor** to complete those productions on or before August 25, 2022." Respectfully, the expedited court-ordered schedule requires us to meet and confer, identify all disputed issues, and present a joint statement to the Court by no later than Monday, August 29, 2022. If your production is not

completed until Thursday Aug. 25, that would leave only two business days for the parties to review, identify issues, and meet and confer – rather than the 10 days explicitly contemplated by the Court's order. We are, moreover, deeply disappointed that this scheduling issue was never raised to us in our multiple prior conferences, and we found out only late last night that we would receive an incomplete production on August 17. We request that you notify us as soon as possible (1) what is the anticipated volume of documents that remain to be produced, (2) how quickly the yet-unavailable documents can be produced, and (3) what issues, if any, have caused the delay in production past deadlines in the court-ordered discovery schedule.

Second, please let us know as soon as possible when we may receive the redacted copies of the documents that the parties have agreed shall be produced. This is time-sensitive because those documents may need to be used in court filings. We request that, in preparing those, the Bates numbers used in the redacted versions track identically to the Bates numbers of the unredacted versions. Otherwise, the parties will have great difficulty matching and using the redacted versions for public filing.

Third, we have encountered a few technical issues regarding certain pages of the documents. Jeff Johnson will reach out to your team today or tomorrow to address these.

Thanks, John

---

**From:** Cholera, Kuntal (CIV) <Kuntal.Cholera@usdoj.gov>
**Sent:** Wednesday, August 17, 2022 8:17 PM
**To:** Sauer, John <John.Sauer@ago.mo.gov>; Murrille@ag.Louisiana.Gov; Capps, Kenneth <Kenneth.Capps@ago.mo.gov>; Talent, Michael <Michael.Talent@ago.mo.gov>
**Cc:** Snow, Kyla (CIV) <Kyla.Snow@usdoj.gov>; Sur, Indraneel (CIV) <Indraneel.Sur@usdoj.gov>; Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>
**Subject:** 3:22-cv-01213-Missouri et al v. Biden

Counsel,

Today, the contact you identified for us (Jeff Johnson) should be able to access our first production—containing over a thousand communications and documents, which we expect will represent a majority of the documents Defendants will produce—in response to Plaintiffs' Requests for the Production of Documents.

Further, attached are our Responses and Objections to Plaintiffs' Requests for the Production of Documents and Plaintiffs' Interrogatories. As noted in our Responses and Objections to Plaintiffs' Requests for the Production of Documents, Defendants intend to make rolling productions as additional documents become ready for production.

Let us know, of course, if there are any technical issues with tonight's production.

Thank you,
Kuntal, Indraneel, and Kyla


----------------------
Kuntal Cholera
Trial Attorney, Federal Programs Branch
U.S. Department of Justice
202.305.8645

This email message, including the attachments, is from the Missouri Attorney General's Office. It is for the sole use of the intended recipient(s) and may contain confidential and privileged information, including that covered by § 32.057, RSMo. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Thank you.