*CONFIDENTIAL*

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **The State of Missouri and the State of Louisiana,** | |
| *Plaintiffs*, | |
| v. | Civil Action No. 22-cv-1213 |
| **President Joseph R. Biden, Jr., in his official capacity as President of the United States of America, *et. al.*,** | |
| *Defendants*. | |

### DEFENDANTS' AMENDED COMBINED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF EXPEDITED PRELIMINARY-INJUNCTION RELATED INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the U.S. District Court for the Western District of Louisiana, Defendants, by and through counsel, provide the following combined objections and responses to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories ("Plaintiffs' First PI Interrogatories" or "Interrogatories") served on July 18, 2022 on the following Defendants: Dr. Anthony Fauci; Centers for Disease Control and Prevention ("CDC"); Surgeon General Vivek H. Murthy; U.S. Department of Health and Human Services ("HHS"); National Institute of Allergy and Infectious Diseases ("NIAID"); U.S. Department of Homeland Security ("DHS"); Cybersecurity and Infrastructure Security Agency ("CISA"); Jen Easterly, Director of CISA; Nina Jankowicz (former Executive Director of the DHS Disinformation Governance Board); and White House Press Secretary Karine Jean-Pierre (collectively, "Defendants"). Consistent with the agreement of the parties, Defendants have combined the objections and responses to address duplication of certain interrogatories among

*CONFIDENTIAL*

**EXHIBIT**
**12**

CONFIDENTIAL

Defendants but have addressed each interrogatory for each Defendant to which each interrogatory is directed. Defendants have amended these objections and responses in a manner consistent with the Court's September 6, 2022, Order (ECF No. 72).

Defendants' combined objections and responses are based on information known to Defendants at this time and are made without prejudice to additional objections should Defendants subsequently identify additional grounds for objection. The objections have been formulated in contemplation of Federal Rule of Civil Procedure 26(b)(1), which generally permits discovery of matters not privileged that may be relevant to the claims or defenses in a civil action. In presenting their objections, Defendants do not waive any further objection in pretrial motions practice or at trial to the admissibility of evidence on the grounds of relevance, materiality, privilege, competency, or any other appropriate ground.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Defendants object to the definitions of "Content Modulation," and the related term "Misinformation," including to the extent that Plaintiffs' definition of "Content Modulation" covers actions by Social Media Companies *beyond* those taken against content containing Misinformation and against users posting content containing Misinformation (such as actions taken as to any post on "efficacy of COVID-19 restrictions" or on "security of voting by mail"). For purposes of these Responses and Objections, Defendants generally define "Misinformation" in a manner consistent with Plaintiffs' definition of that term: "any form of speech . . . considered to be potentially or actually incorrect, mistaken, false, misleading, lacking proper context, disfavored, having the tendency to deceive or mislead . . . including but not limited to any content or speech considered by any federal official or employee or Social-Media Platform to be 'misinformation,' 'disinformation,' 'malinformation,' 'MDM,' 'misinfo,' 'disinfo,' or

CONFIDENTIAL

'malinfo.'" *See* Interrogatories, Definition O.

2.     Defendants object to the definitions of CDC, CISA, DHS, HHS, NIAID, and White House Communications Team to the extent those definitions include "any . . . agent," "contractors" and "any subordinate agency or entity" of those agencies on the ground that those definitions are overbroad and may include persons and entities that are not under the supervision or control of any Defendant. In particular, HHS and DHS also object to the extent any Interrogatory seeks a Department-wide response as unduly burdensome and disproportionate to the needs of the case. As the least burdensome sources of information consistent with Rules 26 and 33 that is potentially responsive to the Interrogatories, (i) DHS has identified its Headquarters (HQ), and (ii) HHS has identified the Office of the Surgeon General (OSG), NIAID, and CDC, and the four HHS employees identified in the Court's September 6, 2022 Order. Further, Defendant also objects to the definition of "White House Communications Team" for the additional reason that such a definition is not proportional to the needs of the case to the extent Plaintiffs seek information beyond the possession of the White House Office of the Press Secretary upon which Plaintiffs served Interrogatories.

3.     The individual Defendants Dr. Fauci, Dr. Murthy, Ms. Easterly, and Ms. Jean-Pierre, construe the Complaint and Amended Complaint as seeking relief against them each in their official capacity as head of agencies of various components of agencies or other offices of the Federal Government, including NIAID, HHS, CISA, and the Office of the White House Press Secretary, and, accordingly, each individual Defendant objects or responds to each Interrogatory exclusively through his or her corresponding agency Defendant. Individual Defendant Jankowicz has no successor in office, and the Disinformation Governance Board is paused. Moreover, DHS interprets any relief sought as against Ms. Jankowicz in her official capacity within DHS HQ,

CONFIDENTIAL

and, accordingly, she objects or responds to each Interrogatory exclusively through DHS. Defendants object to any Interrogatory seeking from an individual Defendant a response that can be provided by that individual Defendant's corresponding agency in a manner that is less burdensome to Defendants and proportional to the needs of the case.

4.      Defendants object to the definition of "communication" to the extent it is meant to cover anything beyond e-mail exchanges, as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery now ongoing

5.      Defendants object to the definition of "document" to the extent it includes "documents retained on personal devices and/or in personal e-mail accounts or other personal accounts." Documents found on personal devices or within electronic personal accounts would not be in the custody or control of any Defendant. Defendants further object on the grounds that this definition is an unwarranted invasion of the privacy of non-parties and seeks information protected by the Privacy Act, 5 U.S.C. § 552a, et seq.

6.      Defendants object to the definition of "identify" to the extent it calls for disclosure of information covered by any applicable privilege or protection over, among other elements, a person's "email address, and present or last known address and telephone number

7.      Defendants object to the use of the undefined term "Meeting" in a manner incompatible with, and calculating to expand the obligations imposed by, the Government in the Sunshine Act, 5 U.S.C. 552b.

8.      Defendants object to the definition of "Social-Media Platform" as overbroad, because it includes "*any* organization that provides a service for public users to disseminate . . . content . . . to other users or the public," along with any "contractors, or any other person . . . acting on behalf of the Social-Media Platform . . . as well [as] subcontractors or entities used to

CONFIDENTIAL

*CONFIDENTIAL*

conduct fact-checking or any other activities relating to Content Modulation." Such a definition is overbroad because the Complaint (and the Amended Complaint) contains no nonconclusory allegation that Defendants communicated with each and every organization that allows users to "disseminate . . . content" to other users, along with any persons or entities affiliated with those organizations. Defendants will construe "Social-Media Platform" to encompass Facebook, Instagram, Twitter, LinkedIn, and YouTube.

9.      Defendants object to the definition of "You" an "Your" in each Interrogatory as overbroad, as it includes "any officers, officials, employees, agents, staff members, contractors, and other(s)" acting at the direction, or on behalf, of any Defendant served with any Interrogatory. Such a definition also is not proportional to the needs of the case, especially given the expedited, abbreviated discovery process in which Defendants have only a limited amount of time to respond to Plaintiffs' Interrogatories. Defendants interpret any Interrogatory relying on this definition as applying solely to the named Defendants upon whom the Interrogatory was served insofar as a response to such Interrogatory by such Defendant is consistent with Rules 26 and 33. In particular, Plaintiffs' allegations against each individual Defendant concerns actions taken in that individual's official capacity, and, accordingly, the agency Defendant corresponding to and that employed each individual Defendant is the proper party for objecting and responding to Plaintiffs' Interrogatories, as explained in Paragraphs 2 and 3 above.

10.     Defendant Jean-Pierre objects to the definition of "You" and "Your" as overbroad as it includes "any officers, officials, employees, agents, staff members, contractors, or other(s) acting at the direction of Jennifer Rene Psaki, in her official capacity as Press Secretary, or at the direction of her successor." Such a definition is not proportional to the needs of the case to the extent it is interpreted to extend beyond the Office of the White House Press Secretary, especially

*CONFIDENTIAL*

CONFIDENTIAL

given the expedited, abbreviated discovery process where Defendant has only a limited amount of time to conduct a document search and produce responsive documents. Defendant has interpreted this request as applying solely to the Office of the White House Press Secretary.

11.    Defendants object to Instruction 1. Plaintiffs cite to no authority requiring a Defendant to "describe the efforts [it has] made to locate . . . document[s]" that are not in its custody and control "and identify who has control of the document and its location."

12.    Defendants object to Instruction 2 to the extent it exceeds the requirements of Fed. R. Civ. P. 26(b)(6). Defendants specifically decline to produce privileged information. Defendants further object to any requirement that they produce a privilege log for privileged material not otherwise properly within the scope of discovery or as to which no privilege log would be required under Federal Rule of Civil Procedure 26(b)(5).

13.    Defendants object to Instruction 3. Plaintiffs cite to no authority indicating that, if Defendants object to an Interrogatory on burden grounds, Defendants must "stat[e] the approximate number of documents to be produced, the approximate number of person-hours to be incurred in the identification, and the estimated cost of responding to the request." Further, it is unclear how Defendants could provide that type of information without conducting certain burdensome searches and reviews that Defendants sought to avoid through their objections.

14.    Defendants object to Instruction 5 to the extent it requires Defendants to respond based on production of electronic documents "with all metadata and delivered in their original format." Plaintiffs may identify the precise categories of metadata they want Defendants' productions to contain, and Defendants can determine whether they can provide those categories of metadata without an undue burden.

15.    Defendants object to Instruction 6 to the extent that it requires Defendants to

CONFIDENTIAL

**CONFIDENTIAL**

respond based on production of documents in a format other than the format in which they are "kept in the usual course of business." Fed R. Civ. P. 34(b)(2)(E). Defendants object to Instruction 6 to the extent that it requests the production of all e-mail "forwards" for e-mails produced to Plaintiffs. That Instruction may call for the production of documents that are not found in the e-mail files of the relevant custodians used by Defendants.

16. Defendant objects to Instruction 8, which applies these requests to the Office of the White House Press Secretary from January 1, 2020, to the present, as unduly broad. Ms. Psaki served as White House Press Secretary from January 20, 2021, until May 13, 2022, when Ms. Jean-Pierre became White House Press Secretary. Defendant interprets these requests as applying to when Ms. Psaki served as White House Press Secretary from January 20, 2021, through May 13, 2022, and when Ms. Jean-Pierre began serving as White House Press Secretary until the date the requests were served, i.e., from May 13, 2022, to July 18, 2022. Anything else would be disproportional to the needs of the case. Such disproportionality is further aggravated by the discovery burden being placed on White House officials. *See Cheney v. U.S. District Court*, 542 U.S. 367, 385 (2004).

## GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORIES

1. The general objections set forth below apply to each and every Interrogatory discussed below. In asserting Defendants' objections to any particular Interrogatory, Defendants may assert an objection that is the same as, or substantially similar to, one or more of these objections. That Defendants may refer, with particularity, to some, but not all, of the general objections described immediately below in their objections to Plaintiffs' individual Interrogatories, does not indicate that Defendants have waived any of these general objections as to any of Plaintiffs' Interrogatories.

**CONFIDENTIAL**

*CONFIDENTIAL*

2.      Defendants object to any discovery taking place in this case to the extent Plaintiffs assert cognizable claims seeking review of governmental agency action, including claims under Administrative Procedure Act, because resolution of any such claims should be based upon the "administrative record" in this case. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). That said, Defendants understand that the Court has allowed preliminary-injunction-related expedited discovery to proceed. Thus, while preserving their broad objection to any and all discovery, Defendants make objections stated below in light of the current procedural posture of the case.

3.      Defendants object to each Interrogatory insofar as it is directed to any Defendant that is head of a Defendant agency as overly broad, unduly burdensome, and disproportional in light of the extraordinarily expedited discovery schedule in this case, given that Plaintiffs have not first sought the information from the agency itself, or through alternative, less burdensome means. *See* Fed. R. Civ. P. 26(b)(2)(C).

4.      Defendants object to each Interrogatory as overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint. Defendant agencies include numerous components and employ thousands of individuals. Any construction of an Interrogatory that would require a Defendant agency to furnish information held by all such individuals, or require a Defendant agency to furnish information held by non-party agencies of the Federal Government, would be massively burdensome and disproportional to the needs of

*CONFIDENTIAL*

CONFIDENTIAL

this case. Each Defendant agency will identify appropriate individuals within the agency who will review and respond to each Interrogatory. *See, e.g.*, *In re Epipen*, MDL No. 2785, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) ("[T]he party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case.").

5.     Defendants object to the Interrogatories to the extent that they seek (a) attorney work product; (b) communications protected by the attorney-client privilege; (c) information protected by the deliberative process privilege or law enforcement privilege or other similar privilege; (d) material the disclosure of which would violate legitimate privacy interests and expectations of persons not party to this litigation; (e) information protected by any form of executive privilege; or (f) information covered by any other applicable privilege or protection.

6.     Defendants object to any Interrogatory seeking discovery from the White House as unduly burdensome, and disproportional to the needs of the case. *See generally Cheney*, 542 U.S. at 367. Plaintiffs' Interrogatories directed to White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See id.* at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Further, the Interrogatories seeking response from the White House are unduly burdensome and disproportional to the needs of the case when Plaintiffs have not first exhausted all available opportunities to seek related information from other sources. *See* Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019) (requiring plaintiff to exhaust all discovery on other defendants before considering whether there was "continuing need for discovery sought on the White House"); *cf. Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir.

CONFIDENTIAL

*CONFIDENTIAL*

2019) (vacating "district court's discovery orders because the district court did not fulfill its obligation 'to explore other avenues, short of forcing the Executive to invoke privilege'" (quoting *Cheney*, 542 U.S. at 390)). Notwithstanding this objection, Defendants have amended their responses in a manner consistent with the Court's September 6, 2022, Order.

7.      Moreover, to the extent any Interrogatory a response requires review of information involving White House personnel, it is inappropriate because it may have the effect of seeking information protected by the presidential communications privilege, a "presumptive privilege" "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution" that attaches to presidential communications. *United States v. Nixon*, 418 U.S. 683, 708 (1974); *see In re Sealed Case*, 121 F.3d 729, 743-44 (D.C. Cir. 1997). Although the presidential communications privilege can be overcome by showing a "specific need" in a criminal case, *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1112 (D.C. Cir. 2004), the presumption against disclosure is even higher in a civil case like this one, *Am Historical Ass'n v. Nat'l Archives & Records Admin.*, 402 F. Supp. 2d 171, 181 (D.D.C. 2005). Such discovery violates the separation of powers and creates an undue burden and distraction from those individuals' critical executive responsibilities. *See Cheney*, 542 U.S. at 389.

8.      Defendants object to each Interrogatory to the extent it seeks information or documents that are not in the custody or control of any Defendant.

9.      Defendants object to each Interrogatory to the extent it seeks responses based on all communications and documents from each Defendant relating to the substantive topic identified in the Interrogatory. The parties are currently involved in an expedited, abbreviated discovery process in which Defendants have only a limited amount of time to respond.

10.      Defendants specifically reserve the right to make further objections as necessary

*CONFIDENTIAL*

*CONFIDENTIAL*

to the extent additional issues arise regarding the meaning of and/or information sought by Plaintiffs' Interrogatories.

## PRELIMINARY STATEMENT REGARDING
## EXCESSIVELY NUMEROUS INTERROGATORIES

1.      Contrary to Fed. R. Civ. P. 33(a) and to LR33.1 of the Local Civil Rules, Plaintiffs erroneously and improperly served on July 18, 2022 First PI Interrogatories totaling 110 enumerated interrogatories as to 10 recipient Defendants. Even excluding duplicative interrogatories served on separate Defendants (at least in substance, if not form), there would still have been 34 distinct interrogatories.

2.      Either number exceeds the 25 interrogatories permitted by the Federal Rules of Civil Procedure. *Global Tubing, LLC v. Tenaris Coiled Tubes, LLC*, No. 17-cv-3299, 2020 WL 12443175 at *2 (S.D. Tex. Nov. 25, 2020) (quoting 8B Charles Alan Wright et al., *Federal Practice & Procedure* § 2168.1 (3d ed. 2020)); *accord Kleiman v. Wright*, No. 18-cv-80176, 2020 WL 1666787 at *1 (S.D. Fla. Apr. 3, 2020); *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 664 (D. Colo. 2005); *see also Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006); *see, e.g.*, *Am. Council of Blind of Metro. Chi. v. Chi.*, No. 19-cv-6322, 2021 WL 5140475 at *1-2 (N.D. Ill. Nov. 4, 2021); *Fair Housing Ctr. of Centr. Ind. v. Welton*, No. 18-cv-01098, 2019 WL 2422594 at *5 (S.D. Ind. June 10, 2019). In a similar vein, LR33.1 of the Local Civil Rules, concerning "Number of Interrogatories," provides as follows (emphasis added): "No party shall serve on any other party *more than 25 interrogatories in the aggregate* without leave of court." Adherence to the 25-interrogatory limitation is especially appropriate at this stage of the instant action, where Defendants are already addressing extensive requests for production of documents ahead of the Rule 26 conference for the limited purpose of providing Plaintiffs with additional information concerning the already-filed application for a preliminary injunction. *Cf.*

*CONFIDENTIAL*

*CONFIDENTIAL*

*Gray v. Price*, No. 19-cv-10383, 2020 WL 12721645 at *5 (E.D. Mich. Feb. 12, 2020).

3.     After alerting Plaintiffs to this issue in an August 1, 2022, letter, and following additional e-mail correspondence with Plaintiffs, the parties agreed on August 11, 2022 to resolve the excessive numerosity problem as follows: Plaintiffs requested that (***a***) each Defendant recipient is to answer Interrogatories 1 through 5 of the First PI Interrogatories directed to CDC, with the reference to the CDC (in Interrogatory 1) to "be adjusted to refer to the recipient of the interrogatory," and (***b***) certain Defendants are to answer additional interrogatories, totaling 20, specified by Plaintiffs, and Plaintiffs did not object to Defendants' proposal that all remaining interrogatories be deemed withdrawn.

4.     Defendants have set forth more fully below their objections and responses to the 5 "Common" and 20 "additional" Interrogatories specified by Plaintiff on August 11, 2022, and preserve all other objections with respect to all other Interrogatories served on July 18, 2022 (the "Withdrawn Interrogatories"), to the extent they are not deemed withdrawn. In particular, Defendants object to those Interrogatories as exceeding the numerical limit in FRCP 33(a) and LR33.1 of the Local Civil Rules.

### SIGNATURES FOR RESPONSES

1.     Insofar as an Interrogatory is not objected to through the undersigned counsel, Defendants respond to them below, as amended and in accordance with the Court's September 6, 2022 Order, with the signatures of the following (attached):

    a.  For OSG: Max Lesko, Chief of Staff, OSG

    b.  For NIAID: Jill R. Harper, Ph.D., Deputy Director for Science Management and Executive Officer, NIAID

    c.  For CDC: Carol Crawford, Health Communications Specialist and Director,

*CONFIDENTIAL*

*CONFIDENTIAL*

Division of Digital Media, CDC

    d.   For DHS: Samantha Vinograd, Acting Assistant Secretary of Homeland Security for Counterterrorism, Threat Prevention, and Law Enforcement Policy

    e.   For CISA: Geoffrey Hale, Lead of Election Security & Resilience, CISA

    f.   For the four HHS employees identified in the Court's September 6, 2022 Order: Carol Maloney, Executive Officer/Deputy Agency Chief FOIA Officer, Office of the Assistant Secretary of Public Affairs

    g.   For the White House Office of the Press Secretary: Robert E. Dornbush III, Chief of Staff and Special Assistant to the Press Secretary

    h.   For Dr. Fauci, as Director of NIAID and Chief Medical Advisor to the President: Jill R. Harper, Ph.D., Deputy Director for Science Management and Executive Officer, NIAID

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

**Common Interrogatory No. 1:**

    **"Identify every officer, official, employee, staff member, personnel, contractor, or agent of" recipient Defendant "or any other federal official or agency who has communicated or is communicating with any Social-Media Platform regarding Content Modulation and/or Misinformation"**

    **OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for identifying "personnel" or "contractor[s]" of any Defendant or any employee or subordinate of any Defendant who have communicated with any and all "Social-Media Platform[s]," even if those platforms are not at issue in the Complaint (or in

*CONFIDENTIAL*

*CONFIDENTIAL*

the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15,

*CONFIDENTIAL*

2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Additionally, Defendants object to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the "Social-Media Platforms" concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of

CONFIDENTIAL

this Interrogatory.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges. Defendants also object to the Interrogatory as overbroad and disproportional to the needs of the case to the extent it requests that responding agencies identify every individual who may have been included on any e-mail exchange, whether as sender or recipient or simply copied on the e-mail, between any Defendant and a social media company.

**RESPONSE:** Subject to and without waiving the above objections, Defendants provide the following responses, as amended in accordance with the Court's September 6, 2022 Order, by Defendants, HHS, NIAID, CDC, DHS, CISA, White House Office of the Press Secretary, and Dr. Fauci in his role as Chief Medical Advisor to the President.

**HHS:**

**Four HHS employees identified in the Court's September 6, 2022 Order:** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, HHS refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected are the following current and former HHS personnel, as required by the Court's September 6, 2022 Order:

- Joshua Peck, Deputy Assistant Secretary for Public Engagement, Office of the Assistant Secretary for Public Affairs (ASPA)

- Tericka Lambert, former Director of Digital Engagement, COVID-19 Public Education Campaign, ASPA

CONFIDENTIAL

- Janell Muhammad, former Deputy Director, COVID-19 Public Education Campaign, ASPA[1]

- Christy Choi, Deputy Director, Office of Communications, Health Resources and Services Administration (HRSA)

**OSG**: Subject to and without waiving the above objections, OSG refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former OSG personnel:

- Dr. Vivek Murthy, U.S. Surgeon General

- Max Lesko, Chief of Staff

- Eric Waldo, Chief Engagement Officer for the U.S. Surgeon General

- Daniel Tartakovsky, Associate Director of Science and Policy

- Adam Beckman, Senior Advisor

- Ann Kim, Chief Innovation and Design Officer

- Kyla Fullenwider, Senior Advisor

**NIAID**: Subject to and without waiving the above objections, NIAID refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current NIAID personnel:

- Anthony S. Fauci, M.D., Director, NIAID

- Courtney Billet, Director, Office of Communications and Government Relations, NIAID

- Jennifer Routh, Scientific Communications Editor, News and Science Writing Branch, Office of Communications and Government Relations, NIAID

---

[1] As of November 2021, Ms. Muhammad has served a different role in a different component of HHS. Nevertheless, her emails through July 18, 2022, were collected and reviewed.

*CONFIDENTIAL*

- Kathy Stover, Chief, News and Science Writing Branch, Office of Communications and Government Relations, NIAID

**CDC**: Subject to and without waiving the above objections, CDC refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former CDC personnel:

- Carol Crawford, Health Communications Specialist/Chief, Digital Media Branch
- Jay Dempsey, Health Communications Specialist
- Kate Galatas, Associate Deputy Director
- Ansley Hynes, Public Health Analyst
- Cynthia Jorgenson, Associate Director for Health Communications Science
- Tanya Hamburger, Health Communications Specialist
- Jessica Kolis, Health Communications Specialist
- Kathleen Layton, Health Communications Specialist
- Kristen Nordlund, Public Affairs Specialist
- Dagny Olivares, Supervisory Health Communications Specialist
- Jessica Schindelar, Health Communications Specialist
- Martha Sharan, Health Communications Specialist
- Lynn Sokler, Health Communications Specialist
- Dia Taylor, Deputy Chief Operating Officer
- Christopher Voegeli, Behavioral Scientist
- Elisabeth Wilhelm, Health Communications Specialist

**DHS**: Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, DHS refers to the documents being produced in response to Requests For Production 2 and 3, and states further that

18

*CONFIDENTIAL*

*CONFIDENTIAL*

the custodians whose e-mails were collected include the following current and former DHS personnel:

- Nina Jankowicz, former Executive Director of the DHS Disinformation Governance Board

- Robert Silvers, Under Secretary of Homeland Security for Strategy, Policy, and Plans

- Samantha Vinograd, Acting Assistant Secretary of Homeland Security for Counterterrorism and Threat Prevention

- John Cohen, former Assistant Secretary of Homeland Security for Counterterrorism and Threat Prevention

- Tamara Hutchinson, Director, Private Sector Engagement, Office of Intelligence and Analysis

- Hala Furst, Associate Director for Strategic Engagement, DHS Center for Prevention Programs and Partnerships

- Thomas McDermott, Acting Assistant Secretary of Homeland Security for Cyber, Infrastructure, Risk and Resilience

- Meghann Peterlin, former Acting Assistant Secretary of Homeland Security for Counterterrorism and Threat Prevention

**CISA**: CISA has identified the following custodians as having relevant communications, as produced in response to Requests For Production 2 and 3:

- Jen Easterly, Director, CISA

- Christopher Krebs, former Director, CISA

- Matthew Masterson, former Senior Election Lead, CISA

*CONFIDENTIAL*

*CONFIDENTIAL*

- Geoff Hale, Lead, Election Security and Resilience (ESR), National Risk Management Center (NRMC), CISA

- Brian Scully, Chief, Mis-, Dis-, and Malinformation (MDM) Team, NRMC, CISA

- Lauren Protentis, Engagements Lead, MDM Team, NRMC, CISA

In addition to the custodians identified above, CISA has identified the following current and former agency personnel as appearing in the communications produced in response to Plaintiffs' Requests For Production:

- Chad Josiah, Resilience Lead, MDM Team, NRMC, CISA

- Robert Schaul, Analysis and Response Lead, MDM Team, NRMC, CISA

- Alex Zaheer, Analyst, MDM Team, NRMC, CISA

- John Stafford, former Analyst, Countering Foreign Influence Task Force (CFITF) (which was the predecessor to the MDM team), NRMC, CISA

**White House Office of the Press Secretary:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary refers to the documents being produced in response to Requests For Production 2 and 3, and states further that the custodians whose e-mails were collected include the following current and former White House Office of Press Secretary personnel:

- Jennifer Psaki, in her official capacity as White House Press Secretary from January 20, 2021 to May 13, 2022.

- Karine Jean-Pierre, White House Office of the Press Secretary

- Kevin Munoz, White House Office of the Press Secretary

*CONFIDENTIAL*

**White House Chief Medical Advisor**:

- ▪ Dr. Fauci does not have a White House email address, and no one at the White House reports to him. Thus, there were no emails to search. Therefore, for responsive documents related to Dr. Fauci, Defendants direct Plaintiffs to any documents already produced in response to Plaintiffs' requests as served on Dr. Fauci in his capacity as Director of NIAID. Those documents were located after a reasonable search of Dr. Fauci's NIAID email account and were produced without regard to whether Dr. Fauci was acting in his capacity as Director of NIAID or Chief Medical Advisor to the President.

**Common Interrogatory No. 2:**

Identify all Communications with any Social-Media Platform relating to Content Modulation and/or Misinformation.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for information from any Defendant or any employee or subordinate of any Defendant, to any and all "Social-Media Platform[s]," even if those platforms are not at issue in the Complaint (or in the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also understand this Interrogatory to seek only a response based on

communications between Defendants and third parties outside the government. To the extent that this Interrogatory seeks internal information referring to such communications, Defendants object to the Interrogatory as not proportional to the needs of the case, as it would require an extensive search of internal records that would not be possible to complete in the expedited period provided for current discovery and would be unnecessary in light of Defendants' agreement to produce the external communications themselves. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15,

*CONFIDENTIAL*

2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the Social-Media Platforms concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information

*CONFIDENTIAL*

*CONFIDENTIAL*

sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

**RESPONSE:** Subject to and without waiving the above objections, Defendants provide the following responses, as amended in accordance with the Court's September 6, 2022 Order, by Defendants, HHS, NIAID, CDC, DHS, CISA, White House Office of the Press Secretary, and Dr. Fauci in his role as Chief Medical Advisor to the President:

Defendants refer Plaintiffs to the documents being produced in response to Plaintiffs' First Requests For Production to Defendants.

Further, in accordance with the Court's September 6, 2022 Order, subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, including consultation with Dr. Fauci and review of Dr. Fauci and NIAID staff e-mail records, NIAID responds on behalf of Dr. Fauci in his role as Director of NIAID as follows: NIAID has not identified any communications, written or oral, between Dr. Fauci and Social-Media Platforms relating to Content Modulation and/or Misinformation. In general, Dr. Fauci has participated in media appearances and communications with or on Social-Media Platforms to publicize health information and provide COVID-19 and vaccine education, which are not responsive to this request. For an example, see NIAID's supplemental response to Additional Interrogatory 5, describing live interviews with Dr. Fauci and Mark Zuckerberg (CEO of Facebook) regarding COVID-19 and vaccines.

Defendants further note that Dr. Fauci does not have any responsive information in his role as Chief Medical Advisor beyond the information provided for Dr. Fauci in his role as Director of NIAID.

*CONFIDENTIAL*

*CONFIDENTIAL*

**Common Interrogatory No. 3:**

Identify all Social-Media Platforms, including their officers, agents, or employees, with which You have communicated or are communicating with relating to Content Modulation and/or Misinformation.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for a response based on communications from any Defendant or any employee or subordinate of any Defendant, to any and all Social-Media Platforms, even if those platforms are not at issue in the Complaint (or in the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

*CONFIDENTIAL*

*CONFIDENTIAL*

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the "Social-Media Platforms" concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants'

*CONFIDENTIAL*

CONFIDENTIAL

internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

    **RESPONSE:** Subject to and without waiving the above objections, Defendants provide the following responses, as amended in accordance with the Court's September 6, 2022 Order, by Defendants, HHS, NIAID, CDC, DHS, CISA, White House Office of the Press Secretary, and Dr. Fauci in his role as Chief Medical Advisor to the President:

    Defendants refer Plaintiffs to the documents being produced in response to Plaintiffs' First Requests For Production to Defendants.

    Further, in accordance with the Court's September 6, 2022 Order, subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, including consultation with Dr. Fauci and review of Dr. Fauci and NIAID staff e-mail records, NIAID responds on behalf of Dr. Fauci in his role as Director of NIAID as follows: NIAID has not identified any communications, written or oral, between Dr. Fauci and Social-Media Platforms relating to Content Modulation and/or Misinformation. In general, Dr. Fauci has participated in media appearances and communications with or on Social-Media Platforms to publicize health information and provide COVID-19 and vaccine education, which are not responsive to this request. For an example, see NIAID's supplemental response to Additional Interrogatory 5, describing live interviews with Dr. Fauci and Mark Zuckerberg (CEO of Facebook) regarding COVID-19 and vaccines.

CONFIDENTIAL

CONFIDENTIAL

Defendants further note that Dr. Fauci does not have any responsive information in his role as Chief Medical Advisor beyond the information provided for Dr. Fauci in his role as Director of NIAID.

**Common Interrogatory No. 4:**

**Identify all meetings with any Social-Media Platform relating to Content Modulation and/or Misinformation.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object that the Interrogatory is vague and ambiguous, including through the term "relating to . . . Misinformation." Defendants further object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for a response based on "meetings" by any Defendant or any employee or subordinate of any Defendant, with any and all Social-Media Platforms, even if those platforms are not at issue in the Complaint (or in the Amended Complaint), and including each platform's "officers, agents, employees, contractors, or any other person employed by or acting on behalf of [such] Social-Media Platform." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome,

CONFIDENTIAL

and disproportional to the needs of the case, insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2, 3, and 4, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the Social-Media

*CONFIDENTIAL*

Platforms concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

**RESPONSE:** Subject to and without waiving the above objections, Defendants provide the following responses, as amended and in accordance with the Court's September 6, 2022 Order, by Defendants, HHS, NIAID, CDC, DHS, CISA, White House Office of the Press Secretary, and Dr. Fauci in his role as Chief Medical Advisor to the President:

**HHS**. Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, HHS has identified OSG, NIAID, and CDC as available sources of information that is potentially responsive to Plaintiffs' discovery requests. HHS directs Plaintiffs to those agencies' responses. Defendants have also amended their responses for the four HHS officials identified in the Court's September 6, 2022 Order.

**Four HHS employees identified in the Court's September 6, 2022 Order:** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, HHS responds as follows based on the knowledge of the four HHS employees identified in the Court's September 6, 2022 Order:

HHS has specifically identified three meetings where misinformation was discussed:

*CONFIDENTIAL*

*CONFIDENTIAL*

- On March 1, 2021, from 2:00 to 2:30 pm ET, there was a virtual meeting attended by Joshua Peck and Twitter personnel. Besides Mr. Peck, the invitees included: Robert Flaherty, Clarke Humphrey, Benjamin Wakana, Courtney Rowe, Todd O'Boyle, and Lauren Culbertson.

- On March 1, 2021, from 3:00 to 3:30 pm ET, there was a virtual meeting attended by Joshua Peck and Facebook personnel. Besides Mr. Peck, the invitees included: Robert Flaherty, Clarke Humphrey, Courtney Rowe, Payton Iheme, Brian Rice, Carrie Adams, Genelle Adrien, and Julia Eisman. It is also possible that Andrew Slavitt attended.

- As indicated by MOLA_DEFSPROD_00007398, on November 22, 2021, from 4:00 to 4:30 pm ET, there was a virtual meeting attended by Tericka Lambert, other ASPA personnel, personnel from Fors Marsh Group (a contractor for ASPA), personnel from OSG, and Google/YouTube personnel. This meeting briefly touched on misinformation among other topics.

Additionally, HHS has identified various meetings with some social media platforms to discuss HHS's COVID-19 public-education efforts, in which Ms. Lambert, Mr. Peck, and Ms. Muhammad were involved. Misinformation was not the focal point of the meetings, but it is possible that misinformation was mentioned. For instance, the meetings may have mentioned misinformation to the extent it related to strategies to promote HHS COVID-19 public-education content. HHS has not identified any meetings with social media platforms in which Ms. Choi was involved.

**OSG**. Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, OSG responds

*CONFIDENTIAL*

that the following meetings took place with the Social-Media Platforms relating to Misinformation:

- On July 12, 2021, from 3:00 pm to 3:30 pm ET, Eric Waldo from OSG met remotely with Lauren Culberton and Todd Boyle from Twitter. Kyla Fullenwider from U.S. Digital Response was invited and may have also attended. The meeting provided notice of the upcoming OSG Advisory and a high-level view of what issues OSG would be prioritizing in the Advisory.

- On July 14, 2021, from 3:00 pm to 3:30 pm ET, Eric Waldo from OSG met remotely with Kevin Kane from YouTube, Jan Antonaros from Google, and Ariel Altman from YouTube. The meeting provided notice of the upcoming OSG Advisory and a high-level view of what issues OSG would be prioritizing in the Advisory.

- On July 16, 2021, from 3:00 pm to 3:30 pm ET, Eric Waldo from OSG and Kyla Fullenwider from U.S. Digital Response met remotely with Payton Iheme and Justine Isola from Facebook. Kate Thornton and Brian Rice from Facebook were invited and may have also attended. The meeting discussed the newly issued OSG Advisory.

- On July 23, 2021, from 1:30 pm to 2:00 pm ET, Dr. Vivek Murthy and Eric Waldo from OSG, and D.J. Patil (who OSG understands to be a then part-time consultant supporting the Office of Science Technology and Policy) met remotely with Nick Clegg and (very likely) Brian Rice from Facebook. The meeting discussed a recent e-mail from Mr. Clegg to Dr. Murthy concerning recent public comments by the Administration about Facebook.

- On July 30, 2021, from 2:00 pm to 2:30 pm ET, Eric Waldo from OSG met with Kevin Kane from YouTube, Lauren Kelly from Google, and Jan Antonaros from Google. The

topics discussed included YouTube/Google following up on the announcement of the OSG Advisory to share more of the work it was doing around health mis- and disinformation.

- As indicated by MOLA_DEFSPROD_00007398, on November 22, 2021, from 4:00 to 4:30 pm ET, there was a virtual meeting attended by Tericka Lambert, other ASPA personnel, personnel from Fors Marsh Group (a contractor for ASPA), personnel from OSG, and Google/YouTube personnel. This meeting briefly touched on misinformation among other topics.

**NIAID.** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID responds that no meetings took place with the Social-Media Platforms relating to Misinformation. NIAID has identified two possible meetings to discuss the potential participation by the NIAID director in U.S. Government efforts to publicize health information and provide COVID-19 and vaccine education via social media, which are not responsive to the Interrogatory, but are identified in the documents being produced in response to Plaintiffs' First Requests For Production to Defendants:

- Facebook approached NIAID in March 2020 to discuss public service announcements and ads, Facebook's CV19 hub, and an interview between Dr. Fauci and Mark Zuckerberg; NIAID scheduled the interview between Dr. Fauci and Mr. Zuckerberg (which aired on Facebook Live)

- NIAID was invited to, but did not attend, a meeting scheduled for March 4, 2021, to discuss possible Facebook Live interviews with celebrities/influencers related to COVID-19 vaccines

*CONFIDENTIAL*

Further, in accordance with the Court's September 6, 2022 Order, subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, including consultation with Dr. Fauci and review of Dr. Fauci and NIAID staff e-mail records, NIAID responds on behalf of Dr. Fauci in his role as Director of NIAID as follows: NIAID has not identified any communications, written or oral, with the Social-Media Platforms and Dr. Fauci relating to Content Modulation and/or Misinformation. In general, Dr. Fauci has participated in media appearances and communications with or on Social-Media Platforms to publicize health information and provide COVID-19 and vaccine education, which are not responsive to this request. For an example, see NIAID's supplemental response to Additional Interrogatory 5, describing live interviews with Dr. Fauci and Mark Zuckerberg (CEO of Facebook) regarding COVID-19 and vaccines.

**CDC.** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CDC responds that the following meetings took place with the Social-Media Platforms relating to Misinformation:

- On May 14, 2021, and May 28, 2021, there were virtual "Be on the Lookout" meetings concerning certain items of developing and prevalent COVID-19 misinformation on social media. The invitees included: Todd O'Boyle from Twitter; Stanley Onyimba, Jan Antonaros, and Kevin Kane from Google; Payton Iheme, Liz Lagone, Lexi Sturdy, and Carrie Adams from Facebook; Sam Huxley from Reingold; Christopher Thomas Lewitzke, Caroline Faught, and Jennifer Shopkorn from the United States Census Bureau ("Census"); and Lynn Sokler, Carol Crawford, and Kate Galatas from CDC.

*CONFIDENTIAL*

*CONFIDENTIAL*

- On February 4, 2021 and February 25, 2021 there were virtual or telephonic meetings during which it is likely that misinformation was discussed among other topics. The invitees included: Payton Iheme, Chelsey Lepage, Genelle Adrien, Airton Tatoug Kamdem, Julia Eisman, Liz Lagone, Kate Thornton, and Carrie Adams from Facebook; and Kathleen Layton, Jay H. Dempsey, and Carol Crawford from CDC.

- On March 18, 2021, there was a virtual or telephonic meeting during which it is likely that misinformation was discussed among other topics. The invitees included: Payton Iheme, Chelsey Lepage, Genelle Adrien, Airton Tatoug Kamdem, Julia Eisman, Liz Lagone, Kate Thornton, and Carrie Adams from Facebook; Georgeta Dragiou and Stacey Palosky from the Office of the Assistant Secretary of Public Affairs within HHS; and Kathleen Layton, Jay H. Dempsey, and Carol Crawford from CDC.

- On March 25, 2021, there was a virtual or telephonic meeting to discuss misinformation. The invitees included Payton Iheme, Priya Gangolly, Chelsey Lepage, Genelle Adrien, Justine Isola, Lindsay Young, Sunita Saligram, Airton Tatoug Kamdem, Nisha Deolalikar, Julia Eisman, Athas Nikolakos, Liz Lagone, Stephanie Bousheri, Kate Thornton, and Carrie Adams from Facebook; and Kathleen Layton, Jay H. Dempsey, and Carol Crawford from CDC.

- On May 13, 2021, there was a virtual or telephonic meeting during which it is likely that misinformation was discussed among other topics. The invitees included: Payton Iheme, Chelsey Lepage, Genelle Adrien, Sadie Pulliam, Airton Tatoug Kamdem, Julia Eisman, Liz Lagone, Kate Thornton, and Carrie Adams from Facebook; and Kathleen Layton, Jay H. Dempsey, and Carol Crawford from CDC.

- On May 19, 2021, there was a virtual meeting to provided training on Facebook's

*CONFIDENTIAL*

CONFIDENTIAL

channel for reporting misinformation. The invitees included: Kathleen Layton, Carol Crawford, Lynn Sokler, Kate Galatas, Brooke Aspinwall, and Jay Dempsey from CDC; Christopher Lewitzke, Sam Huxley, and Kathleen Stanley from Reingold; Carrie Adams from Facebook; and Jennifer Shopkorn, Michelle Christine O'Malley, and Caroline Faught from Census.

▪ On May 20, 2021, there was a virtual or telephonic meeting during which it is likely that misinformation was discussed among other topics. The invitees included: Payton Iheme, Chelsey Lepage, Genelle Adrien, Cariza Arnedo, Airton Tatoug Kamdem, Julia Eisman, Liz Lagone, Kate Thornton, and Carrie Adams from Facebook; Kathleen Layton, Jay H. Dempsey, Cynthia Jorgenson, and Carol Crawford from CDC; and Sam Huxley from Reingold.

▪ On August 31, 2021, there was a virtual meeting to discuss misinformation, including misinformation related to the Vaccine Adverse Event Reporting System (VAERS). The invitees included: Elaine Miller, Pedro Moro, Kristen Nordlund, Martha Sharan, John Su, Catherine Jamal, Stephanie Gordon, Jessica Schindelar, Lynn Sokler, Alexis Hauk, Tanya Hamburger, and Carol Crawford from CDC; and Carrie Adams from Facebook.

▪ On March 24, 2021, there was a virtual meeting to discuss misinformation with Google/YouTube. The invitees included: Stanley Onyimba, Jan Antonaros, Scott Deutchman, Kevin Kane, and Clement Wolf from Google; Zachary Henry Schwartz and Jennifer Shopkorn from Census; Christopher Lewitzke and Sam Huxley from Reingold; and Carol Crawford, Lynn Sokler, Kate Galatas, Jessica Kolis, and Kathleen LaPorte from CDC.

▪ On March 29, 2022, there was a virtual meeting with Google during which it is likely

CONFIDENTIAL

that misinformation was discussed among other topics. The invitees included: Stanley Onyimba and Jan Antonaros from Google; and Fred Smith and Carol Crawford from CDC.

- On March 31, 2021, there was a virtual meeting with Twitter to discuss COVID-19 misinformation. The invitees included: Zachary Schwartz and Jennifer Shopkorn, from Census; Christopher Lewitzke and Sam Huxley from Reingold; Lynn Sokler, Kate Galatas, Rosemary Bretthauer-Mueller, Jessica Kolis, Kathleen LaPorte, and Carol Crawford from CDC; and Todd O'Boyle and Reggie McCrimmon from Twitter.

- On November 18, 2021, there was a meeting with Twitter to discuss VAERS as it related to misinformation. The invitees included: Todd O'Boyle, Brian Clark, Rodrigo Riaza Perez, and Joseph Guay from Twitter; and Carol Crawford, John Su, Alexis Hauk, Alanna Moorer, Nicole Coffin, Martha Sharan, Jessica Schindelar, and Jade Fulce from CDC.


**DHS** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, DHS responds that meetings taking place with the Social-Media Platforms relating to Misinformation include, but are not limited to:

- A recurring meeting usually entitled USG – Industry meeting, which has generally had a monthly cadence, and is between government agencies and private industry. Government participants have included CISA's Election Security and Resilience team, DHS's Office of Intelligence and Analysis, the FBI's foreign influence task force, the Justice Department's national security division, and the Office of the Director of

National Intelligence. Industry participants have included Google, Facebook, Twitter, Reddit, Microsoft, Verizon Media, Pinterest, LinkedIn and the Wikimedia Foundation. The topics discussed include, but are not limited to: information sharing around elections risk, briefs from industry, threat updates, and highlights and upcoming watch outs.

- CISA Cybersecurity Advisory Committee (CSAC) Meetings on December 10, 2021; March 31, 2022; and June 22, 2022. The meeting agendas and summaries, including participants, are available on CISA's website, https://www.cisa.gov/cisa-cybersecurity-advisory-committee-meeting-resources.

- Additional meetings identified in documents, include, but are not limited to:

| Date | Title |
|---------|---------------------------------------------------------------------|
| 7/20/20 | ASD-HKS Tech Policy Paper Series: Levers in the Online Ad Ecosystem |
| 1/18/22 | Google + Digital Forum |
| 3/16/22 | DHS/Microsoft Disinformation Follow Up |
| 2/1/22 | Meta/DHS/DOJ Engagement re: Human Trafficking |

**CISA**: Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CISA responds that meetings taking place with the Social-Media Platforms relating to Misinformation include, but are not limited to:

- A recurring meeting usually entitled USG – Industry meeting, which has generally had a monthly cadence, and is between government agencies and private industry. Government participants have included CISA's Election Security and Resilience subdivision, DHS's Office of Intelligence and Analysis, the FBI's foreign influence task force, the Justice Department's national security division, and the Office of the Director of National Intelligence. Industry participants generally include Google, Facebook, Twitter, Reddit,

*CONFIDENTIAL*

Microsoft but, have also included Verizon Media, Pinterest, LinkedIn, and the Wikimedia Foundation as well. The topics discussed include, but are not limited to: information sharing around elections risk, briefs from industry, threat updates, and highlights and upcoming watch outs.

- A recurring meeting to prepare for and set the agenda for the USG – Industry meeting, and participants have generally included CISA and Facebook.

- CISA Cybersecurity Advisory Committee (CSAC) Meetings on December 10, 2021; March 31, 2022; and June 22, 2022. The meeting agendas and summaries, including participants, are available on CISA's website, https://www.cisa.gov/cisa-cybersecurity-advisory-committee-meeting-resources.

- CISA CSAC, Protecting Critical Infrastructure from Misinformation and Disinformation Subcommittee meetings. The Subcommittee was established for the purpose of evaluating and providing recommendations on potentially effective critical infrastructure related counter-MDM efforts that fit within CISA's unique capabilities and mission. Details about the Subcommittee, including membership, are available on CISA's website, https://www.cisa.gov/sites/default/files/publications/CSAC_Subcommittee_Fact_Sheet_05192022_508c.pdf.

- Meetings convened by the Election Infrastructure Subsector Government Coordinating Council (EIS-GCC) and Election Infrastructure Subsector Coordinating Council (EI-SCC) Joint MDM Working Group. The Joint MDM Working Group was launched after the 2020 election by the EIS-GCC and EI-SCC and provides a forum through which the subsector can identify challenges in countering MDM and produce resources for addressing such challenges. The Joint MDM Working Group has convened meetings on, or about May 5,

*CONFIDENTIAL*

2021; June 7, 2021; September 14, 2021; November 19, 2021, June 30, 2022, and August 4, 2022.

**White House Office of the Press Secretary:** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response: The White House Office of the Press Secretary ("the Office") is unaware of any meetings involving the Office and a social media company concerning content modulation or misinformation.

**White House Chief Medical Advisor:** Further, subject to and in accordance with the Court's September 6, 2022 Order, for Dr. Fauci in his role as Director of NIAID, Defendants provide the following additional response, subject to and without waiving any of the foregoing objections: Defendants aver that Dr. Fauci does not have any responsive information in his role as Chief Medical Advisor beyond the information provided for Dr. Fauci in his role as Director of NIAID.

<u>**Common Interrogatory No. 5:**</u>

**Identify all Communications with any Social-Media Platform that contain any of the Search Term(s).**

<u>**OBJECTIONS:**</u> Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as unduly burdensome, overbroad, and not proportional to the needs of this case. This Interrogatory calls for a response based on any and all specified documents from any Defendant or any employee or subordinate of any Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Furthermore, this Interrogatory covers documents that are not

*CONFIDENTIAL*

relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory, however, seeks information that contains any of Plaintiffs' Search Terms, regardless of whether that document pertains to Misinformation. Plaintiffs' Search Terms include many broad terms that could be found in e-mails that have nothing to do with misinformation—such as "mask," "election," "antitrust," "globalization," and "Federalist." Defendants also understand this Interrogatory to seeks a response based on only communications between Defendants and third parties outside the government. To the extent that this Interrogatory seeks internal information referring to such communications, Defendants object to the Interrogatory as not proportional to the needs of the case, as it would require an extensive search of internal records that would not be possible to complete in the expedited period provided for current discovery and would be unnecessary in light of Defendants' agreement to produce the external communications themselves. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportional to the needs of the case,

*CONFIDENTIAL*

CONFIDENTIAL

insofar as it purports to require a response from each agency concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Further, Defendants object to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

CONFIDENTIAL

*CONFIDENTIAL*

Defendants further object to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Requests for Production 2 and 3, in response to which Defendants are producing non-privileged e-mail communications between Defendants and employees of the "Social-Media Platforms" concerning Misinformation located within a review population consisting of e-mail files that (i) are collected from custodians who, having been identified through Defendants' internal inquiry, are known to have communicated with employees of the Social-Media Platforms, and (ii) contain one or more reasonable search terms calculated to identify which of the communications identified in (i) relate to Misinformation. Those Requests for Production provide a more expeditious and significantly less burdensome method for Plaintiffs to obtain the information sought, considering the expedited nature of the discovery here and the broad scope of this Interrogatory.

**RESPONSE:**

Subject to and without waiving the above objections, Defendants provide the following responses, as amended in accordance with the Court's September 6, 2022 Order, by Defendants, HHS, NIAID, CDC, DHS, CISA, White House Office of the Press Secretary, and Dr. Fauci in his role as Chief Medical Advisor to the President: Defendants refer Plaintiffs to the documents being produced in response to Plaintiffs' First Requests For Production to Defendants.

**Additional Interrogatory No. 1 (HHS No. 6):**

**Identify all "members of our senior staff" and/or "members of our COVID-19 team" who are "in regular touch with … social media platforms," as Jennifer Psaki stated at a White House press briefing on or around July 15, 2021, including all Communications relating to such coordination.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals

*CONFIDENTIAL*

CONFIDENTIAL

at issue or the specific communications referred to. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving the above objections, as amended in accordance with the Court's Order of September 6, 2022, Defendants provide the following responses for Defendant HHS, responding through OSG, NIAID, CDC, and for the four HHS employees identified in the Court's September 6, 2022 Order, each of which refers to its response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 2 (HHS No. 7):**

CONFIDENTIAL

**Identify all Communications with any Social-Media Platform relating to the "12 people who are producing 65 percent of anti-vaccine misinformation on social media platform," as stated by Jennifer Psaki at the July 15, 2021 press briefing.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referred to. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of the abbreviated, expedited discovery, HHS has identified OSG and CDC as available sources of information that is potentially responsive to this

Interrogatory. In accordance with the Court's September 6, 2022, Order, HHS responds as follows on behalf of the four HHS identified by the Court: HHS refers to its response to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**OSG**. Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, OSG refers to its response to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**CDC**. Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CDC refers to its response to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 3 (HHS No. 8):**

**Identify all "government experts" who are federal officers, officials, agents, employees, or contractors, who have "partnered with" Facebook or any other Social-Media Platform to address Misinformation and/or Content Modulation, including all Communications between such "government expert(s)" and any Social-Media Platform.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it relies on a characterization of a statement attributed to a third-party Facebook, as reported in a July 15, 2021 *Reuters.com* article quoted at Compl. ¶ 163, and the statement does not sufficiently specify the individuals at issue or the specific communications referred to. Defendants lack information sufficient to establish the meaning of that third party's statement, including terms such as "partnered with." Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the

CONFIDENTIAL

current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving the above objections, HHS has identified OSG, NIAID, and CDC as available sources of information that is potentially responsive to this

CONFIDENTIAL

Interrogatory. In accordance with the Court's September 6, 2022, Order, HHS responds as follows on behalf of the four HHS identified by the Court: HHS refers to its response to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**OSG**. Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, OSG refers to its response to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**NIAID**. Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID refers to its response to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**CDC**. Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CDC refers to its response to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 4 (CDC No. 7):**

**Identify all "government experts" who are federal officers, officials, agents, employees, or contractors, who have "partnered with" Facebook or any other Social-Media Platform to address Misinformation and/or Content Modulation, including all Communications relating to such partnerships.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it relies on a characterization of a statement attributed to a third-party, Facebook, as reported in a July 15, 2021 *Reuters.com* article quoted at Compl. ¶ 163, and the statement does not sufficiently specify the individuals at issue or the specific

*CONFIDENTIAL*

communications referred to. Additionally, Defendants lack information sufficient to establish the meaning of that third party's statement. Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendant also objects to this Interrogatory as overbroad because it seeks information that is not relevant to Plaintiffs' claims and that does not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to seek information concerning communications with Social-Media Platforms regardless whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning

*CONFIDENTIAL*

governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, CDC refers to its response to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 5 (Dr. Fauci No. 8):**

**Identify all Communications with Mark Zuckerberg from January 1, 2020 to the present, including but not limited to those referenced in Paragraphs 142-145 of the Complaint.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad because it seeks information that is not relevant to Plaintiffs' claims and that does not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory calls for a response based on all Communications with Mark Zuckerberg, regardless of whether they concern Misinformation.

CONFIDENTIAL

Defendants also understand this Interrogatory to seek only communications between Defendants and third parties outside the government. To the extent that this Interrogatory seeks a response based on internal information referring to such communications, the Interrogatory would be even more disproportional to the needs of the case, as it would require an extensive search of internal records that would not be possible to complete in the expedited period provided for current discovery and would be unnecessary in light of Defendants' agreement to produce the external communications themselves. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendants objects to this Interrogatory to the extent it seeks information from Dr. Fauci based on his role as Chief Medical Advisor to the President, on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given

CONFIDENTIAL

that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent it a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such documents, the Interrogatory imposes a burden on Defendants to locate documents and review them that is disproportional to the minimal benefit (if any) that Plaintiffs might derive from the possibility of an Interrogatory response based on responsive non-privileged documents. *See Cheney*, 542 U.S. at 389. Defendants, however, aver that Dr. Fauci does not have a White House e-mail address and have provided responses, subject to any other objections, in his capacity as Director of NIAID.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:** Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID responds on behalf of Dr. Fauci, and refers to NIAID's responses to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

Further, in accordance with the Court's September 6, 2022 Order, subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, including consultation with Dr. Fauci and

CONFIDENTIAL

review of Dr. Fauci and NIAID staff e-mail records, NIAID responds on behalf of Dr. Fauci in his role as Director of NIAID as follows: NIAID has identified the following communications:

- On February 27, 2020, Dr. Fauci received an email from Mark Zuckerberg, with no subject line, a copy of which was produced at MOLA_DEFSPROD_00004560.

- On February 27, 2020, Dr. Fauci emailed Mark Zuckerberg, with the subject line "RE:" a copy of which was produced at MOLA_DEFSPROD_00004564.

- On March 15, 2020, Dr. Fauci received an email from Mark Zuckerberg, with the subject line "Thanks and ideas", a copy of which was produced at MOLA_DEFSPROD_00015091.

- On March 16, 2020, Dr. Fauci attempted to call Mark Zuckerberg but received his voicemail.

- On March 16, 2020, Dr. Fauci emailed Mark Zuckerberg, with the subject line "RE: Thanks and ideas", a copy of which was produced at MOLA_DEFSPROD_00015095.

- On March 16, 2020, Dr. Fauci received an email from Mark Zuckerberg, with the subject line "RE: Thanks and ideas", a copy of which was produced at MOLA_DEFSPROD_00015089.

- On March 19, 2020, Dr. Fauci participated in a Facebook Live event with Mark Zuckerberg that was broadcast on Facebook beginning at approximately 7:00 pm Eastern Time to discuss COVID-19. A recording of this event is available at https://www.facebook.com/zuck/videos/10111683294466031.

- On April 8, 2020, Dr. Fauci received an email from Mark Zuckerberg, without a subject line, a copy of which was produced at MOLA_DEFSPROD_00004559.

CONFIDENTIAL

- On April 9, 2020, Dr. Fauci emailed Mark Zuckerberg, with the subject line "RE:", a copy of which was produced at MOLA_DEFSPROD_00004563.

- As indicated by MOLA_DEFSPROD_00006375, it appears that Dr. Fauci and Mark Zuckerberg may have spoken via telephone on July 14, 2020, about the upcoming Facebook Live event. However, Dr. Fauci has no specific recollection of that call.

- On July 16, 2020, Dr. Fauci participated in a Facebook Live event with Mark Zuckerberg that was broadcast on Facebook beginning at approximately 5:00pm Eastern Time to discuss COVID-19. The event took place using Zoom. A recording of this event is available at https://www.facebook.com/zuck/videos/10112108870243761/. Immediately prior to the Facebook Live event, Dr. Fauci and Mark Zuckerberg may have briefly met in a virtual green room.

- On November 29, 2020, at approximately 6:30pm Eastern Time, Dr. Fauci and Mark Zuckerberg spoke via telephone about the upcoming Facebook Live event.

- On November 30, 2020, Dr. Fauci participated in a Facebook Live event with Mark Zuckerberg that was broadcast on Facebook beginning at approximately 3:00pm Eastern Time to discuss COVID-19 and progress towards a COVID-19 vaccine. The event took place using Zoom. A recording of this event is available at https://www.facebook.com/zuck/videos/10112595016437891. Immediately prior to the Facebook Live event, Dr. Fauci and Mark Zuckerberg may have briefly met in a virtual green room.

**Additional Interrogatory No. 6 (Dr. Fauci No. 9):**

      **Identify all Communications with any Social-Media Platform that relate to the Great Barrington Declaration, the authors of the Great Barrington Declaration, the original signers of the Great Barrington Declaration, Dr. Jay Bhattacharya, Dr. Martin Kulldorff, Dr. Aaron Kheriaty, Dr. Sunetra Gupta, Dr. Scott Atlas, Alex Berenson, Dr. Peter Daszak,**

CONFIDENTIAL

**Dr. Shi Zhengli, the Wuhan Institute of Virology, EcoHealth Alliance, and/or any member of the so-called "Disinformation Dozen."**

    **OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it does not define what the "Great Barrington Declaration" is or who the "Disinformation Dozen" are. Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to this Interrogatory as overbroad because it requests information that does not fall within the scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory seeks information concerning, *inter alia*, the Great Barrington Declaration, its authors, its original signers, and any member of the "Disinformation Dozen," regardless whether the Communications sought concern Misinformation. Defendants also understand this Interrogatory to seek only a response based on communications between Defendants and third parties outside the Government. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security

CONFIDENTIAL

CONFIDENTIAL

privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendants object to this Interrogatory to the extent it seeks information from Dr. Fauci based on his role as Chief Medical Advisor to the President, on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent it a response requires review of information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such documents, the Interrogatory imposes a burden on Defendants to locate documents and review them that is disproportional to the minimal benefit (if any) that Plaintiffs might derive from the possibility of an Interrogatory response based on responsive non-privileged documents. *See Cheney*, 542 U.S. at 389.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

CONFIDENTIAL

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:** Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID responds on behalf of Dr. Fauci, and refers to NIAID's responses to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

Further, in accordance with the Court's September 6, 2022 Order, subject to and without waiving any of the foregoing objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, including consultation with Dr. Fauci and review of Dr. Fauci and NIAID staff e-mail records, NIAID responds on behalf of Dr. Fauci in his role as Director of NIAID as follows: NIAID has not identified any communications, written or oral, between Dr. Fauci and Social-Media Platforms relating to the Great Barrington Declaration, the authors of the Great Barrington Declaration, the original signers of the Great Barrington Declaration, Dr. Jay Bhattacharya, Dr. Martin Kulldorff, Dr. Aaron Kheriaty, Dr. Sunetra Gupta, Dr. Scott Atlas, Alex Berenson, Dr. Peter Daszak, Dr. Shi Zhengli, the Wuhan Institute of Virology, EcoHealth Alliance, and/or any member of the so-called "Disinformation Dozen." In general, Dr. Fauci has participated in media appearances and communications with or on Social-Media Platforms to publicize health information and provide COVID-19 and vaccine education. Dr. Fauci's media appearances on Social-Media Platforms are not responsive to this request. It is possible that the topics or individuals above were mentioned in public media appearances on Social-Media Platforms in which Dr. Fauci participated but NIAID, including in consultation with Dr. Fauci, have not identified any such examples involving Dr. Fauci's communications with Social-Media Platforms.

CONFIDENTIAL

**Additional Interrogatory No. 7 (Dr. Fauci No. 10):**

      **Identify all Communications between any member of the White House Communications Team and any Social-Media Platform that refer or relate to Misinformation and/or Content Modulation.**

      **OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Defendants further object to this Interrogatory to the extent it seeks information from Dr. Fauci based on his role as Chief Medical Advisor to the President, on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportional to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. See, e.g., Order, *Centro Presente*, No. 1:18-cv-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendants object to this Interrogatory to the extent it is seeks information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Defendants, however, aver that Dr. Fauci does not have a White House e-mail address and have provided responses, subject to any other objections, in his capacity as Director of NIAID.

CONFIDENTIAL

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:** Subject to and without waiving the above objections, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, NIAID responds on behalf of Dr. Fauci, and refers to NIAID's responses to Common Interrogatories 1 through 5 and the accompanying documents. *See generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 8 (DHS No. 6):**

Define what is an "Analytic Exchange" with Twitter or any other Social-Media Platform, and identify any existing "Analytic Exchanges," including all participant(s) in such Analytic Exchange(s).

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case because it calls for information that is not relevant to Plaintiffs' claims and that do not fall within the scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory asks Defendants to define "Analytic Exchange(s)," and identify any such "Analytic Exchange(s)," regardless whether those communications pertain to Misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency

communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

**RESPONSE:** Subject to and without waiving the above objections, Defendant DHS responds as follows: DHS has not defined the term 'Analytic Exchange' as a matter of departmental policy. For purposes of this response, DHS defines the term as an arrangement between DHS and external entities under which the participants exchange information and analysis regarding threats or vulnerabilities relating to homeland security on a periodic basis.

The DHS Office of Intelligence and Analysis participates in a number of Analytic Exchanges, including one where Misinformation is a topic of interest. Specifically, the Office of Intelligence and Analysis, on behalf of the Office of the Director of National Intelligence, sponsors the Public-Private Analytic Exchange Program ("AEP"). The AEP facilitates collaborative partnerships between members of the private sector and teams of experienced U.S. government analysts to form a number of subcommittees. This annual program provides U.S. government analysts and private sector partners with a better understanding of select national security and homeland security issues.

There are approximately 100 participants in the AEP. Each year, teams of analysts drawn from the AEP participants work virtually over six months to develop unclassified intelligence products made available to the public. Among the topics to be addressed by the AEP this year are "Countering Foreign Malign Social Network Manipulation in the Homeland," "Addressing Risks From Non-State Actors' Use of Commercially Available Technologies," and "Phase II: Increasing

*CONFIDENTIAL*

Threats of Deepfake Identities." All three of these topics are expected to address Misinformation in some form. Finished products for all of the AEP 2022 topics will be presented at the AEP Concluding Summit scheduled for August 30–31 and will be made available on the DHS website: https://www.dhs.gov/aep-deliverables.

**Additional Interrogatory No. 9 (DHS No. 7):**

Identify all participants and topics of discussion in the "series of monthly meetings between the government and tech companies" prior to the 2020 election, as discussed in Paragraphs 182-184 of the Complaint.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it relies on a characterization of statements made by third-party companies, rather than any Defendant, as reported in an August 12, 2020 *NBC News.com* article cited at Compl. ¶ 180, and the statements do not provide sufficient details of the meetings to which the Interrogatory refers. Defendants also object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for information about meetings that occurred before the current President took office. Defendants also object to this Interrogatory as overbroad and disproportional to the needs of the case because it calls for information that is not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. Defendants also object because the undefined term "tech companies" as used in this Interrogatory is vague and ambiguous. This Interrogatory appears to call for information relating to certain meetings with technology companies that occurred prior to the 2020 election, regardless whether those meetings were with Social-Media Platforms and pertained to Misinformation. Defendants also object to the

*CONFIDENTIAL*

Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

**RESPONSE:** Subject to and without waiving the above objections, Defendant DHS responds as follows: The "series of monthly meetings between the government and tech companies" relates to a recurring meeting with federal government officials and the private industry, and the participants and topics of discussion have evolved over time. Government participants have included various representatives from CISA, DHS's Office of Intelligence and Analysis, the FBI's Foreign Influence Task Force, the Justice Department's National Security Division, and the Office of the Director of National Intelligence. Industry participants have included representatives from Google, Facebook, Twitter, Reddit, Microsoft, Verizon Media, Pinterest, LinkedIn and the Wikimedia Foundation. The topics discussed include, but are not limited to: information sharing around elections risk, briefs from industry, threat updates, and highlights and upcoming watch outs. DHS refers to its responses to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d), for information about individual meeting invitations and agendas.

**Additional Interrogatory No. 10 (DHS No. 8):**

Identify all "private firms" that DHS has "partnered" with, or planned, intended, or discussed "partnering" with, to "monitor" online content, as discussed in Paragraph 202 of

CONFIDENTIAL

the Complaint, including the nature of the "partnership" and the nature of any "outsourcing [of] information gathering to outside firms."

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory because it seeks information that is not relevant to Plaintiffs' claims and does not fall within the scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory would require identification of outside "private firms" rather than identification of federal officials; and it would require describing the nature of any "planned, intended, or discussed 'partnerships'" rather than the nature and content of communications with social-media platforms. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory as "vague" because it does not define what constitutes a "private firm," or what is meant by "partner," "monitor," or "outsourcing" information gathering. Defendants also object to this Interrogatory as overbroad because it calls for identification of every "private firm" that DHS may have "planned, intended, or discussed" partnering with.

**RESPONSE:** Subject to and without waiving the above objections, Defendant DHS

CONFIDENTIAL

responds as follows: As DHS responded in the news article Plaintiffs cited to in support of the allegations in the Complaint to which this Interrogatory refers, DHS "'is not partnering with private firms to surveil suspected domestic terrorists online.'" https://www.cnn.com/2021/05/03/politics/dhs-partner-private-firms-surveil-suspected-domestic-terrorists/index.html. DHS does not partner with "private firms" to "to evade legal, constitutional, and ethical problems with DHS's direct surveillance of online speech.".

### Additional Interrogatory No. 11 (DHS No. 9):

Identify all "the tech companies" with which DHS is "working together" to "prevent harm from occurring," as Secretary Mayorkas stated on August 2, 2021, as discussed in Paragraph 207-208 of the Complaint, including the nature of the work and all Communication(s) relating to such work.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants also object because the undefined term "tech companies" as used in this Interrogatory is vague and ambiguous. Even assuming that the term "tech companies" is the same as the term "Social-Media Platform[s]" as defined by Plaintiffs, Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to this Interrogatory as overbroad because it seeks information that is not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to seek

64

*CONFIDENTIAL*

information relating to efforts to work with private "tech" companies to "prevent harm from occurring," regardless of whether those efforts pertained to Misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving the above objections, DHS refers to its response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d), and further responds as follows: Consistent with the Department's mission to protect the homeland, DHS responds to Misinformation that poses a threat to the homeland. It identifies Misinformation that poses a threat to the homeland through publicly available sources, research conducted by academic and other institutions, and information shared by other federal agencies and partners. DHS then shares factual information related to its mission and about which it has expertise to potentially impacted people and organizations.

*CONFIDENTIAL*

*CONFIDENTIAL*

**Additional Interrogatory No. 12 (DHS No. 13):**

Identify every federal agency, group, sub-group, department, component, division, sub-division, officer, official, employee, agent, or other person or entity within the federal government, both within and without DHS, that communicates or has communicated with any Social-Media Platform regarding Misinformation and/or Content Modulation, including but not limited to any person or entity whose activity is or was to be subject to oversight by the Disinformation Governance Board, including the nature of their coordination with the Social-Media Platform(s).

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as overbroad and unduly burdensome to the extent it seeks identification of every "person or entity within the federal government," including those "without DHS," that "communicates or has communicated with any Social-Media Platform." This Interrogatory appears to call on Defendants to exceed the information reasonably available to them and thus goes beyond the scope of Rules 26 and 33. Even if such an Interrogatory were proper as to the conduct of the named Defendants, it would still be overbroad and disproportional to the needs of the case to the extent it seeks information about any agency that is not a Defendant in this action. Defendants further object to this Interrogatory as overbroad and cumulative to the extent it seeks information requested in earlier interrogatories, in particular Interrogatory 1, that also seek identification of individuals who have communicated with or are communicating with a social-media platform regarding Misinformation. Defendants additionally object to this Interrogatory as vague because it does not define what constitutes "coordination." Defendants also object to this Interrogatory as overbroad and unduly burdensome to the extent it seeks a description of "the nature of . . . coordination" between any and all "person[s] or entit[ies] within the federal government" and a "Social-Media Platform." Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable

*CONFIDENTIAL*

privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, DHS responds as follows: DHS components lead on operational efforts to counter Misinformation in their relevant mission spaces. Within DHS HQ, personnel from within DHS's Office of Intelligence & Analysis, Office of Strategy, Policy, and Plans, Office of Public Affairs, and Disinformation Governance Board have communicated with Social-Media Platforms regarding Misinformation.

**Additional Interrogatory No. 13 (DHS No. 14):**

**Identify every federal agency, group, sub-group, department, component, division, sub-division, officer, official, employee, agent, or other person or entity within DHS that is involved in "counter-disinformation efforts" and, as part of those efforts, communicates or has communicated with any Social-Media Platform, including the nature of such "counter-disinformation efforts."**

*CONFIDENTIAL*

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants also object because the undefined term "counter-disinformation efforts" is vague, and ambiguous. Defendants further object to this Interrogatory because it seeks information that is not relevant to Plaintiffs' claims and does not fall within the scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory, however, also asks Defendants to describe "the nature of . . . 'counter-disinformation efforts,'" independent of any communications with social media platforms and thus goes beyond the scope of discovery authorized by the Court. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" ("communicates or has communicated") is meant to cover anything beyond e-

*CONFIDENTIAL*

mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving the above objections, DHS responds as follows: DHS components lead on operational efforts to counter Misinformation in their relevant mission spaces. Within DHS HQ, personnel from within DHS's Office of Intelligence & Analysis, Office of Strategy, Policy, and Plans, and Disinformation Governance Board have communicated with Social-Media Platforms regarding Misinformation. The nature of DHS's work is that it identifies Misinformation that threatens the homeland through publicly available sources, research conducted by academic and other institutions, and information shared by other federal agencies and partners. DHS then shares factual information related to its mission to potentially impacted people and organizations.

**Additional Interrogatory No. 14 (Jankowicz No. 9):**

**Identify the nature, purpose, participants, topics to be discussed, and topics actually discussed at the meeting between DHS personnel and Twitter executives Nick Pickles and Yoel Roth scheduled on or around April 28, 2022.**

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also objects to this Interrogatory as overbroad because it information that is not relevant to Plaintiffs' claims and that do not fall within

scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for information relating to a specific meeting with two identified employees of Social-Media Platforms, or "any similar meeting with [any other] personnel associated with any Social-Media Platform," regardless whether those communications pertain to Misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

**RESPONSE:** Subject to and without waiving the above objections, Defendant DHS responds on behalf of Ms. Jankowicz, and responds as follows: The April 28, 2022 meeting between DHS personnel and Twitter executives Nick Pickles and Yoel Roth did not occur.

## Additional Interrogatory No. 15 (Ms. Easterly No. 8):

Identify every working group, "analytic exchange," task force, joint government-private enterprise, or similar formal or informal arrangement that involves federal official(s) communicating with any Social-Media Platform(s) about Content Modulation and/or Misinformation, including all participants in such groups.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as vague because it does not define key terms, including "working group" and "arrangement." Defendants further object to this Interrogatory as unduly

CONFIDENTIAL

burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified communications ("arrangement . . . communicating") from any Defendant or any employee or subordinate of any Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Location of information about every "federal official" communicating with "any Social-Media Platform[]" would require a search that is not feasible under the current, abbreviated expedited discovery schedule. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44. Moreover, this Interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, insofar as it purports to require a response concerning components of the agency or concerning governmental entities outside the agency ("federal official(s)") whose actions are not challenged in the Complaint or Amended Complaint and whose information is not reasonably available to the agency or agency component whose alleged conduct is challenged in the Complaint or Amended Complaint.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communicating" is meant to cover anything beyond e-mail exchanges.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative

CONFIDENTIAL

of Common Interrogatories 1 through 5. Defendants otherwise refer Plaintiffs to the documents being produced with these responses for any additional information.

**RESPONSE:** Subject to and without waiving the above objections, Defendant CISA responds on behalf of Ms. Easterly, and refers to the response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d), and further responds as follows:

Working groups, "analytic exchanges," task forces, joint government-private enterprises, or similar formal or informal arrangements that involve CISA officials communicating with Social-Media Platforms about Misinformation, include, but are not limited to:

- CISA's Mis-, Dis-, and Malinformation (MDM) team, formerly known as the CFITF. The CFITF was established in May 2018 in CISA's predecessor agency. The CFITF was charged with helping the American people understand the risks from MDM and how citizens can play a role in reducing the impact of MDM on their organizations and communities. In 2021, the CFITF officially transitioned to CISA's MDM team, and the mission evolved to reflect the changing information environment. The MDM team continues to work in close coordination with interagency and private sector partners, social media companies, academia, and international partners on a variety of projects to build resilience against malicious information activities.

- A recurring engagement between USG – Industry, as described in response to Common Interrogatory No. 4.

- CISA CSAC, including the Protecting Critical Infrastructure from Misinformation and Disinformation Subcommittee, as described in response to [Interrogatory No. 4]. Additional information about the CSAC is available on CISA's website,

https://www.cisa.gov/cisa-cybersecurity-advisory-committee.

- The EIS-GCC and EI-SCC Joint MDM Working Group, as described in response to Common Interrogatory No. 4.

## Additional Interrogatory No. 16 (Ms. Easterly No. 10):

Identify every instance in which CISA's "MDM team" has "serve[d] as a switchboard for routing disinformation concerns to appropriate social media platforms," as stated in Your April 12, 2022 bulletin, including all Communication(s) related to such instance.

**OBJECTIONS:** Defendants incorporate by reference the above objections. Defendants further object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls Defendant to identify "every instance" in which CISA's "MDM team" "rout[ed] disinformation concerns." Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Additionally, Defendants object to this Interrogatory as overbroad and disproportional to the needs of the case, particularly in light of the expedited nature of the discovery, to the extent "communication" is meant to cover anything beyond e-mail exchanges.

73

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5.

**RESPONSE:** Subject to and without waiving the above objections, Defendant CISA responds on behalf of Ms. Easterly, and refers to the response to Common Interrogatories 1 through 5 and the accompanying documents, *see generally* Fed. R. Civ. P. 33(d).

**Additional Interrogatory No. 17 (Ms. Jean-Pierre No. 6):**

**Identify all "members of our senior staff" and/or "members of our COVID-19 team" who are "in regular touch with … social media platforms," as [Jennifer Psaki] stated at a White House press briefing on or around July 15, 2021, including the nature of the communication and/or coordination.**

**OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Request calls for a response based on *any and all* specified "communications" from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Defendant also objects to this Interrogatory as overbroad because it calls for a response based on documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a

response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendant also objects to this Interrogatory to the extent it seeks internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to such communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney,* 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this request to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

CONFIDENTIAL

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Plaintiffs' Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response:

At a July 15, 2021, press briefing, Ms. Psaki was asked the following question and provided the following response:

> Q: Can you talk a little bit more about this request for tech companies to be more aggressive in policing misinformation? Has the administration been in touch with any of these companies and are there any actions that the federal government can take to ensure their cooperation, because we've seen, from the start, there's not a lot of action on some of these platforms.
>
> MS. PSAKI: Well, first, we are in regular touch with these social media platforms, and those engagements typically happen through members of our senior staff, but also members of our COVID-19 team, given, as Dr. Murthy conveyed, this is a big issue of misinformation, specifically on the pandemic.
>
> In terms of actions, Alex, that we have taken — or we're working to take, I should say — from the federal government: We've increased disinformation research and tracking within the Surgeon General's office. We're flagging problematic posts for Facebook that spread disinformation. We're working with doctors and medical professionals to connect — to connect medical experts with popular — with popular — who are popular with their audiences with — with accurate information and boost trusted content. So we're helping get trusted content out there.
>
> We also created the COVID-19 — the COVID Community Corps to get factual information into the hands of local messengers, and we're also investing, as you all have seen in the President's, the Vice President's, and Dr. Fauci's time in meeting with influencers who also have large reaches to a lot of these target audiences who can spread and share accurate information.
>
> You saw an example of that yesterday. I believe that video will be out Fri- — tomorrow. I think that was your question, Steve, yesterday; I did a full follow-up there.

CONFIDENTIAL

There are also proposed changes that we have made to social media platforms, including Facebook, and those specifically are four key steps.

One, that they measure and publicly share the impact of misinformation on their platform. Facebook should provide, publicly and transparently, data on the reach of COVID-19 — COVID vaccine misinformation. Not just engagement, but the reach of the misinformation and the audience that it's reaching.

That will help us ensure we're getting accurate information to people. This should be provided not just to researchers, but to the public so that the public knows and understands what is accurate and inaccurate.

Second, that we have recommended — proposed that they create a robust enforcement strategy that bridges their properties and provides transparency about the rules. So, about — I think this was a question asked before — there's about 12 people who are producing 65 percent of anti-vaccine misinformation on social media platforms. All of them remain active on Facebook, despite some even being banned on other platforms, including Facebook — ones that Facebook owns.

Third, it's important to take faster action against harmful posts. As you all know, information travels quite quickly on social media platforms; sometimes it's not accurate. And Facebook needs to move more quickly to remove harmful, violative posts — posts that will be within their policies for removal often remain up for days. That's too long. The information spreads too quickly.

Finally, we have proposed they promote quality information sources in their feed algorithm. Facebook has repeatedly shown that they have the levers to promote quality information. We've seen them effectively do this in their algorithm over low-quality information and they've chosen not to use it in this case. And that's certainly an area that would have an impact.

So, these are certainly the proposals. We engage with them regularly and they certainly understand what our asks are.

Press Briefing by Press Secretary Jen Psaki and Surgeon General Dr. Vivek H. Murthy, July 15, 2021, available at https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/15/press-briefing-by-press-secretary-jen-psaki-and-surgeon-general-dr-vivek-h-murthy-july-15-2021/.

It is the understanding of the White House Office of the Press Secretary ("the Office") that, in making this statement, Ms. Psaki was referencing the following individuals as "members

CONFIDENTIAL

of our senior staff" or "COVID-19 team" within the White House: Robert Flaherty and Andrew Slavitt.

    With respect to the nature of the communications with social media platforms referenced in the July 15 press conference, the Office refers to the full statement quoted above. Ms. Psaki further conveyed her understanding of the nature of such communications in additional statements, including in press conferences on July 16, 2021, and July 19, 2021. Portions of those press conference are quoted below.

> Q And just — you went through kind of the topline details of this yesterday, but can you elaborate a little bit on the Facebook —
>
> MS. PSAKI: Sure.
>
> Q — the administration to Facebook flagging of disinformation. And there's also some reporting that we've had that Facebook maybe hasn't been as proactive as the White House would like it to be in response to some of the flagging. So, the process of how the flagging works, and then whether Facebook has been amenable to those requests.
>
> MS. PSAKI: Sure. Well, I would say first, it shouldn't come as any surprise that we're in regular touch with social media platforms — just like we're in regular touch with all of you and your media outlets — about areas where we have concern, information that might be useful, information that may or may not be interesting to your viewers.
>
> You all make decisions, just like the social media platforms make decisions, even though they're a private-sector company and different, but just as an example.
>
> So we are ma- — regularly making sure social media platforms are aware of the latest narratives dangerous to public health that we and many other Americans seeing — are seeing across all of social and traditional media. And we work to engage with them to better understand the enforcement of social media platform policies.
>
> So let me give you an example, just to illustrate it a little bit. The false narrative that remains active out there about COVID-19 vaccines causing infertility — something we've seen out there, flowing on the internet quite a bit, in other places as well — which has been disproven time and time again. This is troubling, but a persistent narrative that we and many have seen, and we want to know that the social media platforms are taking steps to address it. That is inaccurate, false information.

CONFIDENTIAL

If you are a parent, you would look at that information and then that would naturally raise concerns, but it's inaccurate. And that is an example of the kind of information that we are flagging or raising.

Press Briefing by Press Secretary Jen Psaki, July 16, 2021, available at

https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/16/press-briefing-by-press-

secretary-jen-psaki-july-16-2021/.

Q Thank you. Will the White House publicly release information on posts that it considers misinformation on vaccines that it's asked Facebook to block?

MS. PSAKI: First of all, we've not asked Facebook to block any individual posts. The way this works is that there are trending — there are trends that are out there on social media platforms. You're aware of them. We're aware of them. Anyone in the public can be aware of them.

There's also data that we look at that many media platforms, like many of you, also look at data in terms of trends and you report on it, which is not — to be expected, given the number of people who get their information from social media.

It's up to social media platforms to determine what their application is of their own rules and regulations. And so we just certainly raise where we have concerns about information that's inaccurate that is traveling out there in whatever platform it's traveling on.

Press Briefing by Press Secretary Jen Psaki, July 19, 2021, available at

https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/19/press-briefing-by-press-

secretary-jen-psaki-july-19-2021/.

### Additional Interrogatory No. 18 (Ms. Jean-Pierre No. 7):

Identify all Communications with any Social-Media Platform relating to "12 people who are producing 65 percent of the anti-vaccine misinformation on social-media platforms," as [Jennifer Psaki] stated at a White House press briefing on or around July 15, 2021.

**OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant

further objects to this Interrogatory on the ground that it is vague because it relies on a

characterization of a statement made by an individual no longer in government, and the statement

CONFIDENTIAL

does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

CONFIDENTIAL

*CONFIDENTIAL*

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response:

*CONFIDENTIAL*

*CONFIDENTIAL*

The White House Office of the Press Secretary ("the Office") is unaware of any such communications between employees of the Office and any social media platform that discuss this topic.

## Additional Interrogatory No. 19 (Ms. Jean-Pierre No. 8):

**On or around July 15, 2021, You stated that "we engage with them [i.e., Social-Media Platforms] regularly and they certainly understand what our asks are." Identify what Social-Media Platform(s) are included in any such engagement(s), and identify "what our asks are," including Communication(s) relating to such engagement(s) and ask(s).**

**OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a response based on communications with Social-Media Platforms

*CONFIDENTIAL*

CONFIDENTIAL

regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit

CONFIDENTIAL

(if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response:

It is the understanding of the White House Office of the Press Secretary (the "Office") that, in referring to individuals who "engaged with them [i.e., social-media platforms]," Ms. Psaki was not referring to employees of the Office. It is the understanding of the Office that the social media platforms referenced in this statement include, but are not necessarily limited to, Facebook and YouTube. With respect to "what our asks are," the Office refers to Ms. Psaki's statements, set forth above in response to Interrogatory 17, in which she conveyed her understanding of the nature of the "engagement(s)" or "ask(s)." The Office is unaware of any communications between employees of the Office and any social media platform that discuss this topic.

**Additional Interrogatory No. 20 (Ms. Jean-Pierre No. 10):**

Identify all person(s) who "engage[s] regularly with all social media platforms about steps that can be taken" to address Misinformation on social media, which engagement "has continued, and … will continue," as You stated at the April 25, 2022 White House press briefing, including all Communications with any Social-Media Platform involved in such engagement.

**OBJECTIONS:** Defendant incorporates by reference the above objections. Defendant further objects to this Interrogatory on the ground that it is vague because it relies on a

characterization of a statement made by an individual no longer in government, and the statement does not specify the individuals at issue or the specific communications referenced. Defendant further objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case. This Interrogatory calls for a response based on any and all specified documents from Defendant or any employee or subordinate of Defendant. Defendants cannot conduct an exhaustive search to uncover all possible responsive information under the current, abbreviated expedited discovery schedule. Such expedited discovery is especially burdensome given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Defendant also objects to this Interrogatory as overbroad because it calls for documents that are not relevant to Plaintiffs' claims and that do not fall within scope of discovery authorized by the Court. The Court authorized the service of discovery requests concerning "the identity of federal officials who have been and are communicating with social-media platforms about [misinformation and] any censorship or suppression of speech on social media, including the nature and content of those communications." ECF No. 34 at 13. This Interrogatory appears to call for a response based on communications with Social-Media Platforms regardless of whether they pertain to content moderation with respect to misinformation. Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to agency communications. Defendant also objects to this Request to the extent it seeks internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to such communications. Defendants also object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, law enforcement privilege, a statutory national security

CONFIDENTIAL

privilege, presidential communications privilege, or any other applicable privilege. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside the administrative record. *Lorion*, 470 U.S. at 743-44.

Further, Defendant objects to this Interrogatory on the ground that any discovery on the White House at this stage of the litigation is unduly burdensome and disproportionate to the needs of the case. Plaintiffs have not exhausted all other avenues of discovery before seeking discovery on the White House. *See, e.g.*, Order, *Centro Presente*, No. 1:18-CV-10340 (D. Mass. May 15, 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019); *Cheney*, 542 U.S. at 390. Additionally, discovery propounded on White House officials would create an undue burden, distract them from their critical executive responsibilities, and violate the separation of powers. *See Cheney*, 542 U.S. at 385. That burden is especially undue at this stage of the litigation given that Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and other deficiencies is forthcoming. Additionally, Defendant objects to this Interrogatory to the extent it is directed to information protected by the presidential communications privilege or other executive privileges. *See Nixon*, 418 U.S. at 708. Because Plaintiffs are not entitled to such information, the request imposes a burden on Defendant disproportionate to the minimal benefit (if any) that Plaintiffs might derive from the possibility of responsive, non-privileged information. *See Cheney*, 542 U.S. at 389.

Further, Defendant objects to this Interrogatory as unreasonably cumulative and duplicative of Common Interrogatories 1 through 5, in response to which certain Defendants are producing documents as described herein.

**RESPONSE:** Subject to and without waiving any of the foregoing objections, as amended in accordance with the Court's September 6, 2022, Order, and based on a reasonable inquiry under

CONFIDENTIAL

CONFIDENTIAL

the circumstances of abbreviated, expedited discovery, the White House Office of the Press Secretary provides the following response:

At an April 25, 2022, press briefing, Ms. Psaki was asked the following questions and provided the following responses:

Q Jen, the Surgeon General has said that misinformation about COVID amounts to a public health crisis.

MS. PSAKI: Yeah.

Q I'm wondering: Regardless of ownership, would the White House be interested in working with Twitter like it has in the past to continue to combat this kind of misinformation? Or are we in a different part of the pandemic where that kind of partnership is no longer necessary?

MS. PSAKI: Well, I think we engage regularly with all social media platforms about steps that can be taken that has continued, and I'm sure it will continue. But there are also reforms that we think Congress could take and we would support taking, including reforming Section 230, enacting antitrust reforms, requiring more transparency. And the President is encouraged by the bipartisan support for — or engagement in those efforts.

Press Briefing by Press Secretary Jen Psaki, April 25, 2022, available at https://www.whitehouse.gov/briefing-room/press-briefings/2022/04/25/press-briefing-by-press-secretary-jen-psaki-april-25-2022/.

The White House Office of the Press Secretary ("the Office") understands the "engage[ments]" in this statement to refer to "engage[ments]" about COVID-19 misinformation. Accordingly, the Office incorporates by reference its response to Interrogatory No. 17 above. The Office is unaware of any communications between employees of the Office and any social media platform that discuss this topic.

CONFIDENTIAL

CONFIDENTIAL

Dated: September 27, 2022          Respectfully submitted,

                                   BRIAN M. BOYNTON
                                   Principal Deputy Assistant Attorney General

                                   JAMES J. GILLIGAN
                                   Special Litigation Counsel, Federal Programs Branch

                                   */s/ Kyla Snow*
                                   ADAM D. KIRSCHNER (IL Bar No. 6286601)
                                   Senior Trial Counsel
                                   KYLA SNOW (OH Bar No. 96662)
                                   INDRANEEL SUR (D.C. Bar No. 978017)
                                   KUNTAL CHOLERA (D.C. Bar No. 1031523)
                                   Trial Attorneys
                                   U.S. Department of Justice
                                   Civil Division, Federal Programs Branch
                                   ███████████████████

                                   *Attorneys for Defendants*

CONFIDENTIAL

## Verification

I, Samantha Vinograd, hereby declare that I am the Acting Assistant Secretary of Homeland Security for Counterterrorism, Threat Prevention, and Law Enforcement Policy at the Department of Homeland Security. Based on reasonable inquiry and information provided to me in my official capacity, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the information regarding the Department of Homeland Security contained in the Defendants' responses to Plaintiff's Common Interrogatories 1–5 and Additional Interrogatories 8–14 is true and correct to the best of my knowledge.

SAMANTHA E VINOGRAD
Digitally signed by SAMANTHA E VINOGRAD
Date: 2022.08.17 18:17:25 -04'00'

_____

Samantha Vinograd

Acting Assistant Secretary of Homeland Security for Counterterrorism, Threat Prevention, and Law Enforcement Policy

Department of Homeland Security

**VERIFICATION**

I, Geoffrey Hale, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the interrogatory response of the Cybersecurity and Infrastructure Security Agency to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 15 and 16, contained in the Responses of the Cybersecurity and Infrastructure Security Agency, is true and correct, to the best of my knowledge.

Dated: August _6_, 2022

Geoffrey Hale

Lead of Election Security & Resilience

Cybersecurity and Infrastructure Security Agency

## **VERIFICATION**

I, Carol Crawford, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the interrogatory response of the Centers for Disease Control and Prevention to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 1-4 contained in the Responses of the Centers for Disease Control and Prevention, is true and correct, to the best of my knowledge.

Dated: August 17, 2022

Carol Crawford -S
Digitally signed by Carol Crawford -S
Date: 2022.08.17 17:20:13 -04'00'

Carol Crawford

Health Communications Specialist

Director, Division of Digital Media, OADC

Centers for Disease Control and Prevention

**VERIFICATION**

I, Max Lesko, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the amended interrogatory response of the Office of the Surgeon General to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 1-3, contained in the Responses of the Office of the Surgeon General, is true and correct, to the best of my knowledge.

Dated: September 27, 2022

Max Lesko

Chief of Staff

Office of the Surgeon General

# VERIFICATION

I, Jill R. Harper, Ph.D., pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the amended interrogatory response of the National Institute of Allergy and Infectious Diseases, including of Dr. Fauci in his roles as Director of NIAID and as Chief Medical Advisor to the President, to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 1, 3, and 5-7, contained in the Responses of the National Institute of Allergy and Infectious Diseases, is true and correct, to the best of my knowledge.

Dated: September 27, 2022

Jill R. Harper -S

Digitally signed by Jill R. Harper -S
Date: 2022.09.27 12:46:40 -04'00'

Jill R. Harper, Ph.D.

Deputy Director for Science Management, and Executive Officer

NIAID/NIH/DHHS

**VERIFICATION**

I, Carol Maloney, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the interrogatory response of the four current and former employees of the United States Department of Health and Human Services (HHS) identified in the Court's September 6, 2022 Order to Plaintiffs' First Set of Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common Interrogatories Numbers 1-5 and Additional Interrogatories Number 1-3, is true and correct, to the best of my knowledge.

Carol Maloney  9/21/2022

Carol Maloney
Executive Director/Deputy Agency Chief FOIA Officer
Office of the Assistant Secretary of Public Affairs

## **VERIFICATION**

I, Robert E. Dornbush III, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury

that the interrogatory response of the Office of the Press Secretary to Plaintiffs' First Set of

Expedited Preliminary-Injunction Related Interrogatories dated July 18, 2022, Common

Interrogatories Numbers 1-5 and Additional Interrogatories Numbers 17-20, contained in the

Responses of the Office of the Press Secretary, is true and correct, to the best of my knowledge.

Dated: September 27, 2022

Robert E. Dornbush III
Chief of Staff and Special Assistant to the Press Secretary
Office of the Press Secretary