**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

<table>
<tr><td>

**The State of Missouri,**
   *et al.,*

  *Plaintiffs*,

    v.

**President Joseph R. Biden, Jr., in his**
**official capacity as President of the United**
**States of America,**
   *et al.,*

  *Defendants*.

</td>
<td>

Civil Action No. 22-cv-1213

</td></tr>
</table>

### MOTION TO STRIKE PLAINTIFFS' PROPOSED FINDINGS OF FACT OR IN THE ALTERNATIVE, FOR OTHER APPROPRIATE RELIEF

Plaintiffs filed a roughly 350-page supplemental fact memorandum—styled as "proposed findings of fact"—that is permitted by neither the applicable rules nor the Court's Orders. *See* ECF No. 214-1. Worse, Plaintiffs provided Defendants with no notice that they planned to file this memorandum on top of their 68-page principal supplemental brief. The Court should strike Plaintiffs' unauthorized "Proposed Findings of Fact" in full. At a minimum, given the impossibility of responding to more than 400 pages of supplemental briefing in 30 days, the Court should impose some alternative remedial measure that addresses the significant burden that Plaintiffs' tactics have imposed on Defendants. In light of Defendants' impending deadline, Defendants respectfully request that the Court resolve this motion by March 15, 2023 or as soon thereafter as practicable.

### BACKGROUND

Plaintiffs filed their preliminary injunction motion ("PI Motion") nearly nine months ago, on June 14, 2022. *See* ECF No. 10. The Court deferred ruling on the PI Motion until after a period

of expedited discovery, after which Plaintiffs would be permitted to file a supplemental brief in support of the PI Motion. ECF No. 34. During the ensuing eight months of expedited discovery, the Court has repeatedly extended the expedited discovery period, and thus extended the PI Motion briefing schedule. *See*, *e.g.*, ECF No. 34 (Plaintiffs "will be allowed to supplement their previous memorandum regarding the need for a preliminary injunction" within "twenty days after all authorized depositions are taken"); ECF No. 99 (extending the expedited deposition deadline from November 21, 2022 to December 9, 2022); ECF No. 133 (extending the expedited deposition deadline to December  30, 2022); ECF No. 148 (giving Plaintiffs until February 13, 2023 to file a supplemental brief in support of their request for preliminary injunction"). Under the current schedule, Plaintiffs had until March 6, 2023 to "file their Supplemental Brief in support of their" PI Motion, ECF No. 202, and Defendants now have thirty days, or until April 5, 2023, to file a response to that Supplemental Brief, *see* ECF No. 148.

Notably, Plaintiffs did not file separate, proposed findings of fact with their PI Motion, nor did they ever raise the prospect of filing them during the months-long expedited discovery process where the Court repeatedly set deadlines for further proceedings in this matter, including for supplemental briefs over the PI Motion. On March 6, 2023, Plaintiffs only asked for, and received, Defendants' consent to file a supplemental PI motion brief of up to 70 pages, without any mention of separate proposed findings of fact, and subsequently Plaintiffs only requested from the Court "leave to file a supplemental brief of 68 pages," ECF No.  212, which the Court granted, *see* ECF No.  213.

On March 6, 2023, Plaintiffs filed their supplemental PI brief (the "Supplemental Brief"). That same day, Plaintiffs filed separate, Proposed Findings of Fact that span over 350 pages and 1,442 separate paragraphs (hereinafter, the "Fact Memo"), *see* ECF No. 212-3, which Plaintiffs

purported to "incorporate by reference" into their supplemental PI response, ECF No. 212-2

(hereinafter, "Pls.' Supp. Br.") at 12. Unlike typical proposed findings of fact, the Fact Memo does

not concisely lay out, with record citations, the concrete factual conclusions that Plaintiffs believe

are justified and would establish a First Amendment claim. Rather, the Fact Memo summarizes,

and adds rhetorical gloss to, each part of each piece of evidence on which Plaintiffs rely.[1] And

much like a legal brief, the Fact Memo lays out Plaintiffs' general factual narrative,[2] tries to

persuade the Court that Plaintiffs' evidence justifies their extravagant inferences,[3] and asserts legal

conclusions.[4]

---

[1] *See*, *e.g.*, Fact Memo ¶¶ 26, 30, 143, 302 (quoting multiple statements where officials generally called for great "accountability" from social media companies, and then arguing that this language "entails an implied threat of adverse consequences if the platforms do not censor more health misinformation") *id.* ¶¶ 204, 207 (referencing a Task Force that was asked to "submit periodic recommendations to the President on policies, regulatory actions, and legislation on technology sector accountability to address systemic harms to people affected by online harassment and abuse," and concluding that this means the Task Force thus "threatens social-media platforms with adverse legal consequences if they do not censor aggressively enough").

[2] *See*, *e.g.*, Fact Memo ¶ 1 (generally asserting that "[f]ederal officials . . . have made . . . statements since at least 2018 demanding that social-media platforms increase their censorship of speech and speakers disfavored by these officials, and threatening adverse consequences."); *id.* ¶ 19 (generally asserting that "now-President Biden has . . . tripled down on . . . threats of adverse official action from his colleagues and allies in senior federal-government positions"); *id.* ¶ 31 (generally asserting that "[m]any White House officials are involved in communicating with social-media platforms about misinformation, disinformation, and censorship"); *id.* ¶ 598 (generally asserting that Dr. Fauci "engaged in a series of campaigns to . . . procure the censorship of viewpoints he disfavored on social media").

[3] *See*, *e.g.*, Fact Memo ¶ 123-24 (noting that former White House Press Secretary Jen Psaki had stated that the "President's view is that the major platforms have a responsibility . . . to stop amplifying . . . misinformation" and that, separately, the President "also supports . . . a robust anti-trust program," and asserting that these statements were somehow linked and thus constituted a "threat of legal consequences . . . if [social media companies] did not censor misinformation more aggressively"); *id.* ¶¶ 202-03 (noting that White House Climate Advisor Gina McCarthy expressed concern about climate information and also stated that "[w]e do see Congress . . . trying to tackle the misinformation," and asserting that McCarthy thus "tied . . . demands for censorship of climate-change-related speech to threats of adverse legislation" (even though McCarthy was not a legislator)).

[4] *See*, *e.g.*, Fact Memo ¶ 916 ("viewing [social media] content, liking or disliking it, reposting it, commenting on it, and/or reposting it with commentary" are "First Amendment-protected

Under the current schedule, Defendants now have 30 days to respond to Plaintiffs' original 58-page preliminary injunction brief, their 68-page Supplemental Brief, and their roughly 350-page Fact Memo.

## ARGUMENT

The Court should strike the Fact Memo in full. Alternatively, at a minimum, the Court should impose some measure that minimizes the unjustified burden that the Fact Memo imposes on Defendants.

**A.** Courts possess "inherent power" to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962), and this includes the "power to strike . . . documents for just cause," *Hebert v. Prime Ins. Co.*, No. 2:18-CV-00899, 2020 WL 2025521, at *2 (W.D. La. Apr. 27, 2020). "Based on [this] inherent power[], a court may strike material . . . reflecting procedural impropriety or lack of compliance with court rules or orders." *Rashid v. Delta State Univ.*, 306 F.R.D. 530, 534 (N.D. Miss. 2015) (quoting *Jones v. Metro. Life Ins. Co.*, No. C–08–03971–JW DMR, 2010 WL 4055928, at *6 (N.D. Cal. Oct. 15, 2010)).

The Court should strike the Fact Memo. First, the Federal and Local Rules do not authorize parties to file proposed findings of fact with emergency motions as a matter of course, nor did the Court invite or authorize Plaintiffs to file proposed findings of fact here. The Federal Rules make no mention of proposed findings of fact in connection with emergency motions. *See* FED. R. CIV. P. 65. The Local Rules, moreover, suggest that proposed findings of fact cannot be filed in support of a motion without leave of court. Local Rule 7.4 states that, with certain exceptions not relevant

---

activities."); *id.* ¶ 1256 ("The speech that the VP decries is all quintessential First Amendment–protected speech."); *id.* ¶ 1441 ("The States" have "quasi-sovereign interests in protecting the freedom of speech of a substantial segment of their population").

here, "all motions shall be accompanied by a memorandum . . . contain[ing] . . . a concise statement of reasons in support," and that "[i]f the motion requires the consideration of facts not appearing of record, the movant shall also file . . . all documentary evidence" it "intends to submit in support of the motion." Local Rule 7.4 then concludes by stating that a memorandum in support of a motion "may not" otherwise "be supplemented except with leave of court first obtained." By contrast, Local Rule 56.1, which governs motions for summary judgment, explicitly requires that every motion for summary judgment shall be accompanied by a "separate, short and concise statement of the material facts" as to which the movant asserts that there is no genuine issue. Thus, under the Local Rules, Plaintiffs were allowed to file a memorandum supporting their PI motion—which the Local Rules cap at 25 pages, *see* L.R. 7.8—and although Plaintiffs can file, as exhibits, the documentary evidence they want to rely on, they are not allowed to file any other supplemental materials, like the Fact Memo, without the Court's approval.

But the Plaintiffs did not seek, and the Court did not grant, leave to file the Fact Memo. The Court stated only that Plaintiffs could file a "Supplemental Brief in support of their Motion for Preliminary Injunction," ECF No. 202, and Plaintiffs only sought leave to extend the page limit of that Supplemental Brief to 68 pages, *see* ECF No. 212. Plaintiffs simply unilaterally decided to file a 350-page supplemental fact memorandum. Other courts have stricken proposed findings of fact filed by parties that failed to first seek leave of court. *See Eli Lilly & Co. v. Teva Pharms. USA, Inc.*, 609 F. Supp. 2d 782, 784–85 (S.D. Ind. 2009) (granting a motion to strike "a 69-page document with proposed findings of fact and conclusions of law in support of" a "preliminary injunction" motion because it went against the "clear understanding between the parties" and "[l]eave was not expressly sought or given to [Plaintiff] allowing it to file this lengthy set of findings of fact and conclusions of law in conjunction with this stage of the briefing"); *BASF Corp.*

*v. Syngenta Crop Prot., Inc.*, No. 06-cv-229, 2006 WL 1117790, at *1 (M.D.N.C. Apr. 27, 2006)

(granting "Plaintiff's Motion to Strike" multiple preliminary injunction-related documents filed by

Defendants, including "proposed Findings of Fact," because Defendants "did not seek

authorization from the Court" for these filings); *Buckeye Int'l, Inc. v. Schmidt Custom Floors, Inc.*,

No. 18-CV-111-JDP, 2018 WL 1960115, at *4 (W.D. Wis. Apr. 26, 2018) (granting "motion to

strike" defendant's "proposed findings of fact" submitted in connection with a preliminary

injunction motion because they were not authorized under the court rules). The Court should

likewise reject Plaintiffs' attempt to sidestep the Local Rules and the Court's authority here.

Second, the Court should also strike the Fact Memo because it imposes an improper, and

significant, burden on Defendants. The Fact Memo functionally serves as a 350-page supplement

to Plaintiffs' principal Supplemental Brief. The Fact Memo does not set forth, in concise terms,

the concrete factual conclusions that Plaintiffs believe the Court must reach to satisfy the elements

of their First Amendment claim. *See supra* at p.3. Instead, it makes legal arguments and walks

through each piece of evidence that Plaintiffs rely on to persuade the Court to adopt Plaintiffs'

factual conclusions—the type of argumentation that is properly reserved for briefs and hearings,

not separate proposed findings of fact. *See, e.g., Ruppert v. Alliant Energy Cash Balance Pension

Plan*, 716 F. Supp. 2d 801, 808 (W.D. Wis. 2010) (noting that the parties "missed the point of . . .

proposed findings of fact," which "should be purely factual," because they used those proposed

findings as "an opportunity to make legal arguments and characterize the evidence," which "should

be saved for the briefs"); *Dodge v. Cnty. of Orange*, 282 F. Supp. 2d 41, 46 n.6 (S.D.N.Y. 2003)

(criticizing a party's "Proposed Findings of Fact and Conclusions of Law" for being needlessly

"lengthy" and "argumentative"). Relying on the Fact Memo, Plaintiffs have saved substantial

space in their Supplemental Brief. The factual background section of the Supplemental Brief itself

has only three sentences, one of which simply "incorporate[s] by reference the facts set forth in [the Fact Memo]." Pls.' Supp. Br., at 12. Moreover, instead of including in their Supplemental Brief detailed citations to, and quotes from, the evidentiary materials they rely on, Plaintiffs instead cite discrete paragraphs in the Fact Memo, which in turn contain the evidentiary citations and quotations. *See*, *e.g.*, Pls.' Supp. Br. at 13 (citing paragraphs 301-303, 329, 387, 403 in the Fact Memo, which, in total, contain nearly *forty* lines of citations and quotations). Thus, through the Fact Memo, Plaintiffs have effectively filed a Supplemental Brief that is over 400 pages long.

Further, the burden on Defendants is especially acute here because, under the current schedule, Defendants have only 30 days to respond to Plaintiffs' enlarged Supplemental Brief.[5] *See supra* at p.4. Defendants cannot reasonably be expected to produce a comprehensive response that explains how each of the 1,442 paragraphs in the Fact Memo either contains an irrelevant fact, mischaracterizes the evidence, omits critical context, or asserts an unwarranted legal conclusion. This burden is especially unfair to Defendants because Plaintiffs had the ability to begin working on this Fact Memo since at least August 2022, when Defendants began their expedited document productions. *See* ECF No. 71, at 1. By contrast, Defendants were unaware that Plaintiffs planned to file this document, and could not have known the full universe of evidence Plaintiffs intended to rely on until the Fact Memo was filed, especially since many of the paragraphs therein refer to public sources rather than the discovery produced by Defendants. *See*, *e.g.*, Fact Memo at 54-55, 164, 166, 170, 181, 243.

---

[5] When Plaintiffs sought Defendants' consent to their requested one-week extension to the prior February 27, 2023, deadline to submit their Supplemental Brief, Plaintiffs' counsel represented that Plaintiffs would not object to a commensurate extension to Defendants' deadline to respond to the PI Motion and Supplemental Brief. Even a one-week extension would not provide nearly enough time to respond to Plaintiffs' 400 pages of briefing.

Although the Fact Memo imposes significant and unjustifiable burdens on Defendants, striking it would not prejudice Plaintiffs. Plaintiffs could file, on the docket, the documentary exhibits they want to rely on, and they could be permitted to file a new Supplemental Brief (within the page limit set by the Court) that includes citations to those exhibits. Striking the Fact Memo would only prevent Plaintiffs from adding a needlessly elaborate summary of each exhibit through what is, in effect, an oversized supplemental brief that Defendants did not consent to and that the Court did not authorize. The Court should thus strike the Fact Memo in full.

**B.** If the Court does not strike the Fact Memo, then at a minimum, it should impose some measure to minimize the burden on Defendants. First, the Court could extend Defendants' deadline to respond to Plaintiffs' Supplemental Brief and Fact Memo by sixty-five days, making the response due on June 9, 2023. This would provide Defendants with additional time to produce a comprehensive response to the Fact Memo's 1,442 paragraphs. This extension would be reasonable given that Plaintiffs have had roughly eight months to assemble their Fact Memo, and it would cause only a fraction of the delay that Plaintiffs have caused by repeatedly prolonging the supposedly expedited discovery process. *See supra* at pp.1-2. Second, alternatively, the Court could set a strict page limit for proposed findings of fact (*e.g.*, 40 pages), require Plaintiffs to promptly file a new version of the Fact Memo that comes within that page limit, and provide Defendants 30 days thereafter to file their papers in opposition to Plaintiffs' PI Motion. This approach would be consistent with the current posture of these proceedings. Plaintiffs ask the Court to promptly issue emergency relief, and the parties are thus proceeding on an expedited schedule. *See supra* at pp.1-4. Requiring the parties to efficiently set forth their best evidence in concise, proposed findings of fact would allow each party to adequately address the other's evidence under

8

the strictures of the current schedule, and it would allow the Court to more promptly sift through the relevant evidence at issue.

Accordingly, Defendants request that the Court strike the Fact Memo, ECF No. 214-1, in full, but at a minimum request that the Court adopt one of the aforementioned measures to lessen the burden Plaintiffs' unauthorized Fact Memo imposes on Defendants. Defendants met and conferred with Plaintiffs, who stated that they oppose this motion. In light of Defendants' current, impending April 5, 2023 deadline, Defendants respectfully request that the Court resolve this motion by March 15, 2023 or as soon thereafter as practicable.

Dated:  March 9, 2023                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         JOSHUA GARDNER
                                         Special Counsel, Federal Programs Branch

                                         */s/ Kyla M. Snow*
                                         KYLA M. SNOW (OH Bar No. 96662)
                                         INDRANEEL SUR
                                         AMANDA CHUZI
                                         Trial Attorneys
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L. Street, NW
                                         Washington D.C. 20005
                                         Kyla.Snow@usdoj.gov
                                         202-514-3259

                                         *Attorneys for Defendants*