# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| STATE OF LOUISIANA, STATE OF MISSOURI, *et al.*, | |
| Plaintiffs, | |
| v. | No. 3:22-cv-01213-TAD-KDM |
| JOSEPH R. BIDEN, JR.,<br>in his official capacity as President of the United States, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
STRIKE PLAINTIFFS' PROPOSED FINDINGS OF FACT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

ARGUMENT ................................................................................................................... 4

    I.   No Provision of the Rules Prevents the Filing of Proposed Findings of Fact, and Filing Such Proposed Findings Is Common Practice in Preliminary-Injunction Cases. ........................ 5

    II.  The Court Should Not Order Plaintiffs To Truncate Their Proposed Findings, and It Should Grant Only a Reasonable Extension That Does Not Delay Oral Argument. ..................... 10

CONCLUSION............................................................................................................... 18

CERTIFICATE OF SERVICE ..................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ass'n of Cmty. Orgs. for Reform Now v. Cox*,
   No. 1:06-CV-1891-JTC, 2006 WL 6866680 (N.D. Ga. Sep. 28, 2006) ............................... 7, 11

*BASF Corp. v. Syngenta Crop Protection, Inc.*,
   No. 1:06CV00229, 2006 WL 1117790 (M.D.N.C. Apr. 27, 2006) ......................................... 10

*Buckeye International, Inc. v. Schmidt Custom Floors, Inc.*,
   No. 18-CV-111-JDP, 2018 WL 1960115 (W.D. Wis. Apr. 26, 2018) .................................... 10

*Cain v. Bass*,
   No. 2:22-CV-00360-CFK, 2022 WL 17418626 (E.D. Pa. Dec. 5, 2022)............................... 6, 7

*Cherry v. Frank*,
   No. 03-C-129-C, 2003 WL 23205817 (W.D. Wis. Dec. 4, 2003)........................................ 7, 13

*Collar Jobs, LLC v. Stocum*,
   No. 1:22-CV-1892, 2022 WL 17340456 (N.D. Ohio Nov. 30, 2022)................................... 6, 7

*Computer Assocs. Int'l, Inc. v. Bryan*,
   784 F. Supp. 982 (E.D.N.Y. 1992) ................................................................................... 5, 7

*Contour Energy Mgmt. LLC v. Gridforce Energy Mgmt. LLC*,
   No. CV 20-3241, 2021 WL 9352582 (E.D. Pa. Aug. 3, 2021)............................................. 4, 7

*Dodge v. County of Orange*,
   282 F. Supp. 2d 41 (S.D.N.Y. 2003)...................................................................................... 15

*Eli Lilly and Co. v. Teva Pharmaceuticals USA*,
   609 F.Supp.2d 782 (S.D. Ind. 2009) ...................................................................................... 9

*Heimkes v. Fairhope Motorcoach Resort Condo. Owners Ass'n*,
   No. 1:22-cv-448-TFM-M, 2023 WL 2392731 (S.D. Ala. Mar. 6, 2023) ............................. 6, 7

*Hudson v. Chesapeake Operating, LLC*,
   No. 19-0862, 2020 WL 12833956 (W.D. La. May 19, 2020) ............................................. 6, 8

*Oklahoma Chapter of Am. Acad. of Pediatrics v. Fogarty*,
   No. 01-C-187 EAJ, 2004 WL 5542511 (N.D. Okla. Oct. 26, 2004) ........................................ 5

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
   716 F. Supp. 2d 801 (W.D. Wis. 2010) ................................................................................. 15

*Toshiba Int'l Corp. v. D'Agostino*,
   No. CV H-19-4274, 2020 WL 13413329 (S.D. Tex. May 21, 2020) .................................... 5, 7

*Ultra Premium Servs., LLC v. Kompaniya*,
    No. H-21-305, 2021 WL 4441549 n.16 (S.D. Tex. Aug. 20, 2021) ........................................... 6

**Rules**

Fed. R. Civ. P. 56(c)(1)(A) .................................................................................................... 8

Fed. R. Civ. P. 65 ............................................................................................................. 6, 7, 8

## INTRODUCTION

Plaintiffs' Proposed Findings of Fact, Doc. 214-1, are devastating to Defendants' case. They set forth systemic evidence of First Amendment violations committed by federal officials throughout the Executive Branch—including (to quote Rob Flaherty) "at the highest (and I mean highest) levels of the W[hite] H[ouse]."  Doc. 214-1, ¶ 108.  The Proposed Findings marshal the evidence against Defendants in an orderly, transparent, and detailed manner, with each paragraph supported by specific citation of the record.  *See id.*  The Proposed Findings refute, with specific citations and quotations of the record, virtually every argument that Defendants have heretofore made in attempt to defend their indefensible conduct.  *See id.*  And the Proposed Findings set forth other highly damaging facts as well—such as evidence of yet more discovery violations by Defendants, *id.* ¶¶ 286, 341, 350; and evidence of federal officials' pervasive entwinement with government/private censorship enterprises like the Election Integrity Partnership and Virality Project, ¶¶ 1135-1365.

It is no wonder that Defendants are eager to have this devastating, blow-by-blow account of their massive federal "Censorship Enterprise" stricken from the record.  Doc. 219.  But they fail to raise a single convincing argument in their attempt to do so.  Submitting proposed findings of fact in support of a motion for preliminary injunction is routine practice.  The purpose of such proposed findings is to assist the Court by directing the Court's attention to the portions of the record the parties deem most relevant, thus obviating the need for the Court to sift through voluminous evidence in the first instance.  Thus, it is not just common practice, but best practice, to submit such proposed findings—especially in cases such as this one that involve significant volumes of evidence on disputed factual issues.  District courts often direct the parties to submit such proposed findings, and it is also common for parties to submit them without the court's

directive, as Plaintiffs have done here.  Moreover, if the Court finds such proposed findings unhelpful for any reason, the ordinary remedy is for the Court to simply disregard them.  There is no basis to strike Plaintiffs' Proposed Findings of Fact.

Defendants also complain that Plaintiffs' Proposed Findings are voluminous, and they seek an extraordinary extension of time to respond to them.  But if the Proposed Findings are extensive, that is because the evidence of Defendants' wrongdoing is extensive.  The effort was Government-wide, not an isolated incident, and so the facts are substantial.  The Court should reject Defendants' request to require Plaintiffs to truncate their Proposed Findings, and thus reduce the evidence relied upon.  And it should reject their extravagant request for a 65-day extension as yet another dilatory tactic.  Defendants' Motion to Strike should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This case has generated a significant volume of preliminary-injunction-related discovery and evidence.  Plaintiffs received 20,573 pages of discovery from Defendants, including significant supplemental productions very late in the discovery process, such as from Rob Flaherty (on January 5, 2023) and CISA (on February 8, 2023), as well as documentary discovery from platforms.  Plaintiffs were authorized to take six depositions between November 10, 2023 and January 12, 2023, which generated 1,930 total pages of transcribed testimony.  *See* Docs. 204-210. The depositions include 204 total exhibits encompassing 3,035 total pages of deposition exhibits. *See id.*  This evidence builds upon a significant volume of evidence Plaintiffs already filed in the case, which includes at least 1,024 pages of documents produced in discovery and previously filed with the Court, *see* Docs. 71-2 to 71-9 (494 pages); Docs. 84-1 to 84-2 (105 pages); Docs. 86-5 to 86-10 (205 pages); Docs. 137-1, 137-2, 137-4, 137-6 (93 pages); Doc. 174-1 (70 pages); Doc. 184-1 to 184-2 (57 pages); and 1,421 pages of declarations and exhibits from Plaintiffs supporting their

requests for preliminary injunction, *see* Docs. 10-1 to 10-15 (1,072 pages); Docs. 214-2 to 214-36 (349 pages).

There is a reason that so much relevant evidence exists here: Defendants are engaged in widespread, egregious violations of the First Amendment across numerous federal agencies— including the White House, the Office of Surgeon General, the CDC, the Census Bureau, NIAID and the NIH, the FBI, and CISA, among others—as well as massive government/private joint censorship enterprises like the Election Integrity Partnership and Virality Project. *See* Doc. 214. There is a lot of evidence of wrongdoing because there is a lot of wrongdoing.

Confronting this large volume of evidence, including almost 2,000 pages of oral testimony via depositions, Plaintiffs adopted a two-phase approach to presenting the evidence to the parties and the Court in the most easily digestible manner. *First*, Plaintiffs prepared a set of Proposed Findings of Fact to assist the Court in reviewing and processing the discovery. Doc. 214-1. In preparing their Proposed Findings of Fact, Plaintiffs sought to be as clear, transparent, and specific as possible. *See id.* Aside from a very small number of summary or introductory paragraphs that provide the reader a "roadmap" by introducing larger sections, every proposed finding cites the specific evidence supporting the factual claim, typically with a direct quotation of the evidence and a specific citation of the record. *Id.* These Proposed Findings strive to make Plaintiffs' reasoning *transparent* to the Court. Where the proposed finding is based on a reasonable inference from evidence in the record, Plaintiffs explain what inference they have drawn with a statement of why that inference follows from the evidence presented. *See id.* Through this process, Plaintiffs' Proposed Findings of Fact boil down tens of thousands of pages of discovery, testimony, and evidentiary materials in the record to 1,442 specific paragraphs in 360 pages of findings, arranged topically and chronologically within each topic. These set forth the evidentiary basis for Plaintiffs'

request for a preliminary injunction in clear, specific, and transparent detail, carefully supported by citations of the evidentiary record at every point.

Contrary to Defendants' unsupported speculation, Plaintiffs did not begin drafting their Proposed Findings of Fact until after the close of the discovery period on January 27, 2023.  Their Proposed Findings are principally the work of a single attorney, and they were completed through diligent effort, with one seven-day extension to the 30-day period for supplemental briefing.

*Second*, in their Supplemental Brief in Support of Preliminary Injunction, Plaintiffs rely on their Proposed Findings to provide a summary and overview of the evidence against each federal agency.  *See* Doc. 214, at 8-10 (summary of facts relating to the White House); *id.* at 10-13 (Office of Surgeon General); *id.* at 14-17 (coercive threats made by federal officials to induce greater censorship); *id.* at 19-27 (Dr. Fauci, NIAID, and NIH); *id.* at 27-29 (deceptive conduct by the FBI and CISA); *id.* at 31-33 (the CDC and the Census Bureau); *id.* at 34-36 (the FBI's collusive conduct); *id.* at 36-39 (CISA's collusive conduct); *id.* at 39-40 (the GEC's collusive conduct); *id.* at 40-41 (other agencies' collusive conduct); *id.* at 42-51 (the Election Integrity Partnership, the Virality Project, and their pervasive entwinement with federal officials).  These summaries encompass about 40 pages of Plaintiffs' supplemental brief.  *See id.*  These summaries cite the specific paragraphs and paragraph ranges within Plaintiffs' Proposed Findings of Fact, which in turn cite specific portions of the record for every factual assertion made.  *See id.*

## ARGUMENT

Proposed findings of fact are designed to assist the Court by directing the Court's attention to the specific portions of the record that the parties believe are most relevant to resolve the case. *See, e.g., Contour Energy Mgmt. LLC v. Gridforce Energy Mgmt. LLC*, No. CV 20-3241, 2021 WL 9352582, at *2 (E.D. Pa. Aug. 3, 2021) (noting that "proposed findings of fact" are "to assist

the Court in ruling on [the plaintiff's] preliminary injunction motion"); *Toshiba Int'l Corp. v. D'Agostino*, No. CV H-19-4274, 2020 WL 13413329, at *3 (S.D. Tex. May 21, 2020) ("[T]he parties shall file proposed findings of fact and conclusions of law to assist the Court in resolving the pending motion for preliminary injunction."); *Computer Assocs. Int'l, Inc. v. Bryan*, 784 F. Supp. 982, 985 (E.D.N.Y. 1992) (citation omitted) ("Upon the conclusion of the [preliminary-injunction] hearing, in order to assist the Court in its determination, the parties submitted proposed findings of fact and conclusions of law.").  Needless to say, "[w]hile proposed findings of fact … submitted by parties assist the Court, ultimately the Court decides whether the proposals are supported by the evidence …."  *Oklahoma Chapter of Am. Acad. of Pediatrics v. Fogarty*, No. 01-C-187 EAJ, 2004 WL 5542511, at *1 (N.D. Okla. Oct. 26, 2004).

Here, Defendants argue that Plaintiffs' Proposed Findings of Fact must be stricken because they are supposedly unauthorized by the Rules and require special court permission before they may be filed.  This argument finds no support in the text of the Rules and contradicts common practice in preliminary-injunction cases involving large volumes evidence and disputed facts. Defendants also argue that Plaintiffs' Proposed Findings are too lengthy, and so the Court should either order Plaintiffs to truncate them radically, or grant Defendants an extraordinary extension of time to respond.  The Court should reject these proposals.

## I.    No Provision of the Rules Prevents the Filing of Proposed Findings of Fact, and Filing Such Proposed Findings Is Common Practice in Preliminary-Injunction Cases.

Defendants argue that "the Federal and Local Rules do not authorize parties to file proposed findings of fact with emergency motions as a matter of course."  Doc. 219, at 4.  This is incorrect.  It is common practice—indeed, best practice—for parties to file proposed findings of fact for preliminary-injunction motions in cases involving disputed facts and large volumes of evidence.  Such proposed findings assist the Court by directing the Court to the precise portions

of the record that the parties contend are most relevant and probative, instead of forcing the Court to sift through the entire record on its own.  *See supra.*  No provision of the Federal Rules of Civil Procedure or this Court's Local Rules prohibits the filing of such Proposed Findings.

Defendants argue that the Federal Rules of Civil Procedure supposedly "do not authorize parties to file proposed findings of fact with emergency motions as a matter of course."  Doc. 219, at 4.  This argument is meritless.  Defendants cite no provision of the Federal Rules that prohibits such Proposed Findings, and none exists.  Instead, Defendants content only that Rule 65, which governs injunctions and restraining orders, "make[s] no mention of proposed findings of fact."  *Id.* But the failure of Rule 65 to mention proposed findings of fact does not mean that the Rule prohibits them.  Rule 65 also "make[s] no mention," *id.*, of response briefs, reply briefs, preliminary-injunction-related discovery, submission of declarations, filing of deposition transcripts and excerpts, filing of documentary exhibits, and many other routine aspects of submitting an evidentiary case to the Court in support of a preliminary-injunction motion.  *See* Fed. R. Civ. P. 65.  Yet no one contends that the Rule *forbids* these common forms of factual submission; so also, the Rule does not forbid proposed findings of fact.

Quite the contrary—it is common practice for parties to submit proposed findings of fact in support of a contested motion for preliminary injunction, especially where the motion involves a significant volume of documentary evidence and testimony.  *See, e.g., Hudson v. Chesapeake Operating, LLC*, No. 19-0862, 2020 WL 12833956, at *1 (W.D. La. May 19, 2020); *Heimkes v. Fairhope Motorcoach Resort Condo. Owners Ass'n*, No. 1:22-cv-448-TFM-M, 2023 WL 2392731, at *2 (S.D. Ala. Mar. 6, 2023); *Cain v. Bass*, No. 2:22-CV-00360-CFK, 2022 WL 17418626, at *1 (E.D. Pa. Dec. 5, 2022); *Collar Jobs, LLC v. Stocum*, No. 1:22-CV-1892, 2022 WL 17340456, at *2 (N.D. Ohio Nov. 30, 2022); *Ultra Premium Servs., LLC v. Kompaniya*, No.

H-21-305, 2021 WL 4441549, at *3 n.16 (S.D. Tex. Aug. 20, 2021); *Ass'n of Cmty. Orgs. for Reform Now v. Cox*, No. 1:06-CV-1891-JTC, 2006 WL 6866680, at *8 (N.D. Ga. Sep. 28, 2006); *Cherry v. Frank*, No. 03-C-129-C, 2003 WL 23205817, at *2 (W.D. Wis. Dec. 4, 2003); *see also, e.g., Contour Energy*, 2021 WL 9352582 at *2; *Toshiba Int'l*, 2020 WL 13413329 at *3; *Computer Assocs.*, 784 F. Supp. at 985.

These include many cases where there is no indication that the court instructed the parties to file proposed findings, or that the parties sought specific leave of court in advance of filing them. *See, e.g., Heimkes*, 2023 WL 2392731, at *2 (parties submitted proposed findings of fact after a contested evidentiary hearing on a motion for preliminary injunction, but the court only called for briefing); *Cain*, 2022 WL 17418626, at *1 (noting that the parties submitted proposed findings after an evidentiary hearing on preliminary injunction with five live witnesses); *Collar Jobs*, 2022 WL 17340456, at *2 (noting that the parties submitted proposed findings of fact after a two-day evidentiary hearing on preliminary injunction, without indicating the court directed them to do so). Nothing in the Federal Rules of Civil Procedure casts any doubt on the common practice of submitting proposed findings of fact in preliminary-injunction cases involving disputed facts, especially where there is significant documentary and testimonial evidence.

Nor do this Court's Local Rules forestall this common practice. Again, Defendants do not argue that the Local Rules explicitly prohibit proposed findings of fact; rather, they claim that the Local Rules "suggest" that proposed findings require leave of court before filing. Doc. 129, at 4. Local Rule 7.4 provides that parties should file a motion and memorandum in support, and that "[i]f the motion requires the consideration of facts not appearing of record, the movant shall also file with the clerk and serve upon opposing counsel a copy of all documentary evidence he or she intends to submit in support of the motion." W.D. La. Local Civil Rule 7.4. Like Rule 65, nothing

in Local Rule 7.4 forbids filing proposed findings of fact.  On the contrary, by explicitly directing the parties to file copies of all documentary evidence that they intend to submit in support of motions (which Plaintiffs have done here, *see* Docs. 204 to 210, 214-2 to 214-36), the Local Rule is consistent with the common practice of presenting the Court with proposed findings containing specific citations of that evidence.  *See, e.g., Hudson*, 2020 WL 12833956, at *1 (noting that "[t]he parties' proposed findings of fact and conclusions of law as to the Motion for Declaratory Judgment and Preliminary Injunction shall be filed" by a particular date, without any indication that this requires an exemption from the Local Rules).  Defendants attempt to draw an oblique negative inference from the fact that Local Rule 56.1 explicitly authorizes filing statements of material facts in support of summary-judgment motions.  Doc. 219, at 5; W.D. La. Local R. 56.1. But the same fact is true of the Federal Rules of Civil Procedure, whose summary-judgment rule (Rule 56) explicitly provides for filing of "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  None of these forms of evidence is mentioned in Rule 65, and yet no one concludes that this means Rule 65 *forbids* filing "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in support of a motion for preliminary injunction.  Thus, Defendants fail to identify any provision of the Federal Rules of Civil Procedure or this Court's Local Rules that would prevent the filing of Proposed Findings of Fact.[1]

---

[1] Moreover, if the Court were to conclude that leave is required to file proposed findings of fact under either Rule 65 or Local Rule 7.4, the Court should construe this memorandum as a request for such leave and grant that request.  Plaintiffs' proposed findings promote transparency, provide a detailed and clear basis for each of Plaintiffs' factual contentions in a highly complex case, and

Defendants argue that "[o]ther courts have stricken proposed findings of fact filed by parties that failed to first seek leave of court," citing three out-of-circuit cases.  Doc. 219, at 5-6.  But the cases they cite undermine their own argument, and none stands for the proposition that parties must seek leave of court before filing proposed findings of fact.  The first case Defendants cite, *Eli Lilly and Co. v. Teva Pharmaceuticals USA*, 609 F.Supp.2d 782 (S.D. Ind. 2009), contradicts their argument.  In that case, after a consolidated bench trial that included consideration of preliminary injunction, the parties stipulated to filing supplemental briefs on a single narrow issue of irreparable harm.  *Id.* at 784.  Eli Lilly filed proposed findings of fact that went beyond the issue that the parties agreed to brief, and the Court struck those proposed findings as violating this agreement of the parties: "The clear understanding between the parties as related to the Court was that the initial post-trial briefings on the injunction would focus solely on the issues of the preliminary injunction and primarily on the issue of irreparable harm…."  *Id.*  But the Court *denied* the motion to strike as to all other purposes, thus permitting Eli Lilly to file proposed findings of fact without prior leave of court on issues that did not violate a specific preexisting agreement of the parties: "However, the document shall be stricken only for that purpose.  The Court will allow the document to remain of record as part of Lilly's final proposed findings of fact and conclusions of law on the issues presented at trial, and will consider that submission in conjunction with its final decision(s) on the merits of the case."  *Id.* at 785.  Thus, *Eli Lilly* holds that, unless the parties stipulate that they will *not* do so, parties may file proposed findings of fact without prior leave of the court.  Here, the parties never agreed that they would not file proposed findings of fact, and Defendants do not contend otherwise.

---

assist the Court by obviating the need for the Court to cull through the voluminous record in the first instance without guidance from the parties.

Defendants' other cases fail to support them as well.  In *BASF Corp. v. Syngenta Crop Protection, Inc.*, No. 1:06CV00229, 2006 WL 1117790, at *1 (M.D.N.C. Apr. 27, 2006), the court struck several preliminary-injunction-related filings—not just proposed findings of fact, but "a Response Brief, proposed Findings of Fact, and extensive exhibits and affidavits," *id.*—because they were *untimely*, not because proposed findings were unauthorized.  *See id.* (describing in detail how these filings were untimely even though the party had ample warning of the deadline, noting that the filing party had not sought "an extension or authorization from the court" to file out of time, and holding that "the proposed filing on April 19, 2006 was untimely, was without authorization from the Court, and was prejudicial to Plaintiff given the timing of the filing on the eve of the hearing").  Thus, the "leave of court" required but not sought in *BASF Corp.* was *leave to file out of time*, not special permission to file proposed findings of fact.  Here, Defendants do not contend that Plaintiffs' filing is untimely.

Defendants also misrepresent *Buckeye International, Inc. v. Schmidt Custom Floors, Inc.*, No. 18-CV-111-JDP, 2018 WL 1960115, at *1 (W.D. Wis. Apr. 26, 2018).  *Buckeye* rested on a court-specific rule that does not apply here, and in any event, that rule permitted *plaintiffs* to file proposed findings of fact in connection with preliminary-injunction proceedings; it just did not allow *defendants* to do so.  *See id.*  *Buckeye* stated: "This court's procedures for obtaining injunctive relief authorize an opposing party to file a response to the movant's proposed findings of fact; they do not authorize the opposing party to file its own proposed findings of fact, as [defendant] did here."  *Id.* at *1.  Thus, if anything, *Buckeye* supports Plaintiffs' filing here.

## II.    The Court Should Not Order Plaintiffs To Truncate Their Proposed Findings, and It Should Grant Only a Reasonable Extension That Does Not Delay Oral Argument.

Lacking support for their claim that Proposed Findings of Fact may not be filed at all, Defendants pivot to arguing that *these* Proposed Findings should be rejected because they are too

10

burdensome.  To this end, they argue in the alternative that the Court should order Plaintiffs to truncate their Proposed Findings by shrinking them to one-ninth of their length (360 pages to 40 pages); or that the Court should grant Defendants an extraordinary extension of time (65 days) to respond.  The Court should reject these requests.  As noted above, Plaintiffs' Proposed Findings are extensive only because the evidence of Defendants' wrongdoing is extensive.  Defendants—represented by the largest, most heavily resourced law firm in the world, the U.S. Department of Justice—should not be allowed to shield themselves their own wrongdoing by complaining that they engaged in *so much* wrongdoing that it is too "burdensome" for their attorneys to address the evidence against them.

Defendants' arguments to the contrary are meritless.  First, Defendants argue that "[t]he Fact Memo does not set forth, in concise terms, the concrete factual conclusions that Plaintiffs believe the Court must reach to satisfy the elements of their First Amendment claims."  Doc. 219, at 6 (citing Doc. 219, at 3).  This claim is demonstrably false.  That is *exactly* what Plaintiffs' Proposed Findings of Fact do—they "set forth," in clear, specific, and "concise terms," precisely "the concrete factual conclusions" that Plaintiffs urge the Court to adopt, with specific citations of evidence in the record for virtually every such finding.  *See* Doc. 214-1.

Defendants' retail-level attacks on Plaintiffs' Proposed Findings fare no better.  Defendants object that the Proposed Findings "make[] legal arguments."  Doc. 219, at 6; *see also id.* at 3-4 n.4.  Even if they did assert legal conclusions, this would be no reason to strike them.  *See, e.g., Ass'n of Cmty. Orgs. for Reform Now v. Cox*, No. 1:06-CV-1891-JTC, 2006 WL 686680, at *8 (N.D. Ga. Sep. 28, 2006) ("To the extent that Plaintiffs seek to strike the portions of Defendants' Proposed Findings of Fact that contain argument or legal conclusions, the motion is DENIED.  The Court is capable of distinguishing the pertinent facts from legal argument and conclusions.").  But

Defendants cite only three examples of putative legal conclusions in the 1,442-paragraph findings, *id.* at 3-4 n.4, and even those are merely alluded to and briefed by Plaintiffs elsewhere, including in their Supplemental Brief.  *Compare, e.g.,* Doc. 214-1, ¶ 916 (in a finding about the FBI seeking the removal of social-media engagements by American citizens such as "liking," reposting, and commenting, noting simply that these "are First Amendment-protected activities"), *with* Doc. 214, at 35-36 & n.2 (Plaintiffs' Supplemental Brief citing multiple circuit-court cases to support the claim that "liking," reposting, and commenting are First-Amendment-protected activities).

Defendants also contend that the Proposed Findings "summarize[]" and "add[] rhetorical gloss" to "each piece of evidence on which Plaintiffs rely."  Doc. 219, at 3 & n.1.  To be sure, the Proposed Findings "summarize" the evidence—that is central to their whole purpose.  And what Defendants pooh-pooh as "rhetorical gloss" actually consists of reasonable inferences drawn from specific pieces of evidence, which Plaintiffs urge the Court to adopt—again, part of the central purpose of Proposed Findings of Fact.  For example, Defendants dismiss as "rhetorical gloss" Plaintiffs' proposed finding that Surgeon General Murthy's pointed references to holding social-media platforms "accountable" for misinformation on their platforms, in both his public statements and official documents like his Health Advisory, carry an implied threat of adverse consequences if the platforms do not increase censorship.  *See id.* (citing Doc. 214-1, ¶¶ 26, 30, 143, 302).  This is not "rhetorical gloss" but a reasonable inference from the facts—one to which the Surgeon General's Chief Engagement Officer, Eric Waldo, effectively admitted in his deposition.  *See* Doc. 214-1, ¶ 302 (citing Waldo Dep. 171:4-8, in which Waldo agreed that the word "accountability includes accepting the consequences for when you do something wrong or … or inappropriate").  Likewise, Plaintiffs cite the President's "Task Force" that will make "recommendations to the President on *policies, regulatory actions, and legislation* on technology sector *accountability* to

address … online harassment and abuse," including "gendered disinformation" and "disinformation campaigns targeting … government and civic leaders."   Doc. 214-1, ¶¶ 204 (emphases added) (cited in Doc. 219, at 3 n.1).   Plaintiffs propose that the Court infer that this memorandum carries a threat of "regulatory actions" and "legislation" against tech platforms if they do not increase censorship of such "gendered disinformation" and similar content; this is not a "rhetorical gloss" but the most natural interpretation of the document.   *See id.*

Defendants also complain that "the Fact Memo lays out Plaintiffs' general factual narrative."   Doc. 219, at 3 & n.2.   But providing the facts in a clear, organized, and chronological fashion is one of the main purposes of Proposed Findings of Fact.   To organize the facts into an organized "narrative" makes Plaintiffs' case clear and assists the Court.   In support of this argument, Defendants cite a handful of paragraphs – four out of 1,442 in the Findings – all of which merely provide summary statements at the beginning of much longer sections as helpful guideposts to the reader.   Doc. 219, at 3 n.2 (citing Doc. 214-1, ¶¶ 1, 19, 31, 598).   Paragraph 1, for example, briefly summarizes the next 29 paragraphs describing public threats of adverse consequences against platforms to pressure them to increase censorship, *see* Doc. 214-1, ¶¶ 1-30; and Paragraph 598 summarizes the following 158 paragraphs that contain detailed findings about Dr. Fauci's orchestrated plot to suppress the lab-leak theory—all of which are supported by specific citations of evidence in the record, *see* Doc. 214-1, ¶¶ 599-756.

Finally, Defendants argue that Plaintiffs' Proposed Findings of Fact are improper because they "tr[y] to persuade the Court that Plaintiffs' evidence justifies their extravagant inferences."   Doc. 219, at 3 n.3.   Even if they did so, that would provide no basis to strike them.   Disagreement with the factual inferences that Plaintiffs suggest the Court draw from the evidence is no basis for moving to strike.   *See, e.g., Cherry v. Frank*, No. 03-C-129-C, 2003 WL 23205817, at *2 (W.D.

Wis. Dec. 4, 2003) ("Plaintiff's 'motion to strike' is really nothing more than a factual dispute. If a party disagrees with a proposed finding of fact, the proper course of action is to file a response to that proposed factual finding, in which the party states that the fact is disputed and then cites the evidence supporting his version of the fact.  A court may not 'strike' a piece of evidence simply because a party has contrary evidence.").

In any event, what Defendants dismiss as "extravagant inferences" are actually clear, specific, and compelling inferences from the record evidence—and again, making such inferences, and being transparent with the Court about making them, is one of the central purposes of proposed findings of fact.  For example, Defendants contend that it is an "extravagant inference[]" to conclude that there was an implied threat in Jennifer Psaki's back-to-back statements on May 5, 2021, that "there's more that needs to be done to ensure that this type of misinformation, disinformation, damaging, sometimes life-threatening information is not going out to the American public," and that the President supports "a robust anti-trust program" for social-media platforms. Doc. 214-1, ¶ 123.  This is not "extravagant" but a natural and compelling inference—especially when it is situated in the temporal context, coming (as it did) amidst a long, behind-the-scenes pressure campaign by Rob Flaherty, Andy Slavitt, and others to coerce the platforms to increase censorship of COVID-related speech.  *See id.* ¶¶ 31-122.   Likewise, Defendants label "extravagant" the inference that White House Climate Advisor Gina McCarthy communicated an implied threat when she first stated that "the tech companies have to stop allowing specific individuals over and over again to spread disinformation … we need the tech companies to really jump in" to stop climate-related "disinformation," and then immediately praised Congress for "taking action on these issues, we do see them trying to tackle the misinformation that's out there, trying to hold companies *accountable*."  *Id.* ¶¶ 202-203 (emphasis added).  Especially in light of

the many previous similar threats, concluding that these threats carried an implied threat of White House support for adverse legislation against platforms if they do not censor more climate-related speech, is an ordinary and natural inference. *See id.*

Defendants cite two cases to argue that the Proposed Findings should be stricken as overly argumentative, *see* Doc. 219, at 6, but neither supports their position. First, in *Ruppert*, addressing a summary-judgment statement of facts, the court stated that the proposed finding should be "purely factual" and not be used "to make legal arguments and characterize the evidence." *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 716 F. Supp. 2d 801, 808 (W.D. Wis. 2010). As noted above, Plaintiffs' Proposed Findings of Fact here comply with this directive. Moreover, *Ruppert* did not strike the proposed findings on that basis; instead, the court stated that "[t]hese arguments and characterizations have been disregarded," *id.*, and it relied on the proposed findings in formulating its own findings: "From the parties' proposed findings of facts and the record, I find the following facts to be material and undisputed." *Id.* at 809. Likewise, in *Dodge v. County of Orange*, 282 F. Supp. 2d 41, 46 n.6 (S.D.N.Y. 2003), the court noted that one party's proposed findings were "argumentative," but the court did not strike those proposed findings; instead, the court determined that some of the proposed findings addressed "irrelevant subjects," and the court did not consider them on issues it deemed irrelevant. *Id.* Here, Plaintiffs' Proposed Findings address highly relevant subjects that are central to their claims. *See* Doc. 219.

In the alternative, Defendants ask for a lengthy extension (65 days) to respond to the Proposed Findings. Here, Defendants contend that they "cannot reasonably be expected to produce a comprehensive response that explains how each of the 1,442 paragraphs in the Fact Memo either contains an irrelevant fact, mischaracterizes the evidence, omits critical context, or asserts an unwarranted legal conclusion. This burden is especially unfair to Defendants because Plaintiffs

had the ability to begin working on this Fact Memo since at least August 2022, when Defendants began their expedited document productions." Doc. 219, at 7.  These statements are incorrect, and the court should not accept them.  As noted above, Plaintiffs did not commence drafting their Proposed Findings of Fact until after the close of discovery, and the Findings were prepared with only a one-week extension.  In their Proposed Findings, Plaintiffs focus on documentary evidence that has already been emphasized in prior pleadings, and on the deposition testimony from six depositions and the exhibits to those depositions that Defendants have had access to since they were taken.  Despite their professions of inability to respond in a timely fashion, Defendants' counsel at the U.S. Department of Justice have the skill and resources to respond to Plaintiffs Proposed Findings within a reasonable time.  Indeed, Plaintiffs' counsel have notified Defendants that they will agree to a reasonable extension, *i.e.*, one that does not interfere with or delay the scheduling or oral argument.  The Court should view Defendants' request for an extraordinary 65-day extension as another dilatory tactic and reject it.

Defendants claim that their 65-day delay would "cause only a fraction of the delay that *Plaintiffs* have caused by repeatedly prolonging the supposedly expedited discovery process." Doc. 219, at 8 (emphasis added); *see also id.* at 2 (citing Docs. 99, 133, and 148).  This is demonstrably false.  Every delay that Defendants cite was due to *their own* dilatory litigation tactics.  *See* Doc. 99 (extending the deadline to complete deposition by 18 days at Defendants' request); Doc. 133 (extending the deadline for depositions because Defendants filed an application for an extraordinary writ and the Court would evaluate the need for Jennifer Psaki's deposition under the order they obtained); Doc. 148 (extending the deadline for preliminary-injunction briefing because Defendants obtained a non-dispositive order from the Fifth Circuit leading to alternative forms of discovery).  In fact, Defendants have delayed the progress of discovery again

16

and again, seeking extension after extension.  *See, e.g.,* Doc. 54 (seeking an extension to answer the Amended Complaint); Doc. 73 (seeking a stay of briefing on the Amended Complaint); Doc. 87 (seeking an extension of the deadline to file a joint status report proposing a briefing schedule for their motion to dismiss); Doc. 142, at 4–13 (seeking to stay discovery pending the briefing and resolution of their motion to dismiss).  Plaintiffs, by contrast, have acted diligently to keep the case within the Court-ordered schedule, as modified from time to time due to Defendants' persistent requests for delay and dilatory tactics.  Defendants' latest request for an extraordinary 65-day delay is yet another dilatory gambit intended to put off the inevitable reckoning for their misconduct that is set forth in detail in Plaintiffs' Proposed Findings of Fact.

Finally, Defendants propose that "the Court could set a strict page limit for proposed findings of fact (e.g., 40 pages), require Plaintiffs to promptly file a new version of the Fact Memo that comes within that page limit, and provide Defendants 30 days thereafter to file their papers in opposition to Plaintiffs' PI Motion."  Doc. 219, at 8.  But, as noted above, that is essentially what Plaintiffs have already done by providing a clear, succinct, and heavily documented summary of the facts related to each federal agency in their Supplemental Brief in Support of Preliminary Injunction—a summary that occupies about 40 pages of Plaintiffs' Supplemental Brief.  *See* Doc. 214, at 8-17, 19-29, 31-51.  To require Plaintiffs to rely *solely* on a 40-page summary, while excising the detailed record citations on which that summary relies, would serve only two improper purposes.  It would artificially reduce the universe of evidence on which Plaintiffs could rely by forcing them to truncate their factual case by omitting citations of evidence, and it would render Plaintiffs' Proposed Findings *less* helpful to the Court by requiring Plaintiffs to submit highly compressed sentences followed by long string cites of record citations.  This latter result would effectively force the Court to sift through the universe of evidence in the record on its own, with

17

little guidance from Plaintiffs on what they think is relevant and probative—the exact opposite of the purpose of proposed findings of fact.

## CONCLUSION

On its own website, DOJ boasts that "[t][he Department of Justice is the world's largest law office, employing more than 10,000 attorneys nationwide."  U.S. Dep't of Justice, Office of Recruiting and Management, *at* https://www.justice.gov/oarm.  This case involves egregious, systematic violations of the First Amendment at the highest levels of the federal government, including the White House.  It raises issues of enormous public importance that have repeatedly drawn nationwide media attention.  DOJ has the resources to defend this case within the reasonable schedule already adopted by the Court.  The Court should deny Defendants' Motion To Strike, and it should reject Defendants' requests for an extraordinary 65-day extension as yet another dilatory tactic intended to delay the inevitable reckoning for the federal government's indefensible misconduct.  As they have notified Defendants, Plaintiffs have no objection to a reasonable extension of time to respond to Plaintiffs' supplemental briefing that does not delay the scheduling of oral argument from the date(s) that the Court is already considering.  In all other ways, Defendants' motion, Doc. 219, should be denied.

18

Dated: March 13, 2023

Respectfully submitted,

**ANDREW BAILEY**
**Attorney General of Missouri**

**JEFFREY M. LANDRY**
**Attorney General of Louisiana**

*/s/ Charles F. Capps*
Joshua M. Divine, Mo. Bar No. 69875*
  *Solicitor General*
Charles F. Capps, Mo. Bar No. 72734*
  *Deputy Solicitor General*
Todd A. Scott, Mo. Bar No. 56614*
  *Senior Counsel*
Kenneth C. Capps, Mo. Bar No. 70908*
  *Assistant Attorney General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
charles.capps@ago.mo.gov
*Counsel for State of Missouri*

*/s/ D. John Sauer*
Elizabeth B. Murrill (La #20685)
  *Solicitor General*
Tracy Short (La #23940)
  *Assistant Attorney General*
D. John Sauer (Mo #58721)*
  *Special Assistant Attorney General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana
Tel: (225) 326-6766
murrille@ag.louisiana.gov
*Counsel for State of Louisiana*

*/s/ Jenin Younes*
Jenin Younes *
John J. Vecchione *
New Civil Liberties Alliance
1225 19th Street N.W., Suite 450
Washington, DC 20036
Direct: (202) 918-6905
E-mail: jenin.younes@ncla.legal
*Counsel for Plaintiffs Dr. Jayanta*
*Bhattacharya,*
*Dr. Martin Kulldorff, Dr. Aaron Kheriaty,*
*and Jill Hines*

*/s/ John C. Burns*
John C. Burns
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: 314-329-5040
E-mail: john@burns-law-firm.com
*Counsel for Plaintiff Jim Hoft*

*  admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 13, 2023, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ D. John Sauer*