**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

| | |
|---|---|
| STATE OF MISSOURI, STATE OF LOUISIANA, *et al.*<br><br>    *Plaintiffs*,<br><br>  v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>    *Defendants*. | Case No. 3:22-cv-01213-TAD |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT <u>FOR THE LIMITED PURPOSE OF ADDING CLASS ALLEGATIONS</u>**

## TABLES OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

PROPOSED CLASS DEFINITIONS ........................................................................... 5

ARGUMENT ................................................................................................................. 6

   I.   The Proposed Classes Satisfy Rule 23(a). .......................................................... 6

     A.  The Proposed Classes Satisfy Numerosity. ................................................ 6

     B.  The Proposed Classes Satisfy Commonality................................................ 8

     C.  The Proposed Classes Satisfy Typicality. ................................................. 10

     D.  The Proposed Classes Satisfy Adequacy. ................................................. 11

       1.  Class Counsel Are Zealous and Competent. .......................................... 11

       2.  Class Representatives Will Actively Protect Class Members' Interests. ................. 13

       3.  No Class Representative Has a Conflict of Interest. ................................ 16

   II.  The Proposed Classes Satisfy Rule 23(b)(2). ................................................... 16

     A.  The Proposed Classes Satisfy Rule 23(b)(2)'s Act Requirement. ............... 16

     B.  The Proposed Classes Satisfy Rule 23(b)(2)'s Injunction Requirement....... 18

   III.  To the Extent Ascertainability Is Required, the Proposed Classes Satisfy It. .................... 19

   IV.  The Court Should Grant Plaintiffs Leave to File a Third Amended Complaint for the Limited Purpose of Adding Class Allegations. .................................................... 21

CERTIFICATE OF SERVICE .................................................................................... 26

## TABLES OF AUTHORITIES

**Cases**                                               **Page(s)**

*AmChem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................ 1

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853 (1982) ................................................................................................ 4

*Cole v. City of Memphis*,
839 F.3d 530 (6th Cir. 2016) ......................................................................... 19, 20

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) .................................................................... 1, 22

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................................................................... 21, 22

*Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-6,
685 (ALC), 2021 WL 3667979 (S.D.N.Y. Aug. 17, 2021) ................................ 23

*Flecha v. Medicredit, Inc.*, 946 F.3d 762 (5th Cir. 2020) .......................................... 9

*Floyd v. City of New York*,
283 F.R.D. 153 (S.D.N.Y. 2012) .................................................................... 20, 21

*Foman v. Davis*,
371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ......................................... 22

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .............................................................................................. 10

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) .......................................................................... 19, 21

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) (per curiam) ............................................... 17, 18

*Jack v. Am. Linen Supply Co.*,
498 F.2d 122 (5th Cir. 1974) ............................................................................... 20

*John v. Nat'l Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) ............................................................................... 19

*Lowrey v. Texas A&M Univ. Sys.*,
117 F.3d 242 (5th Cir. 1997) ............................................................................... 22

*M.D. ex rel. Stukenberg v. Perry*,
675 F.3d 832 (5th Cir. 2012) .......................................................................... 16, 17

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ................................................................................ 20

*Martin v. City of Struthers*,
319 U.S. 141 (1943) ................................................................................................ 6

*Mullen v. Treasure Chest Casino, LLC*,
　　186 F.3d 620 (5th Cir. 1999) .................................................................................. 6

*Nissou-Rabban v. Cap. One Bank (USA), N.A.*,
　　285 F. Supp. 3d 1136 (S.D. Cal. 2018) ................................................................ 23

*Nolen v. Nat'l R.R. Passenger Corp.*, No. 85 C,
　　6778, 1987 WL 12915 (N.D. Ill. June 23, 1987) .................................................. 23

*Packingham v. North Carolina*,
　　137 S. Ct. 1730 (2017) ........................................................................................... 4

*Payne v. Tri-State CareFlight, LLC*,
　　332 F.R.D. 611 (D.N.M. 2019) ............................................................................ 10

*Pederson v. La. State Univ.*,
　　213 F.3d 858 (5th Cir. 2000) ............................................................................... 20

*Phillips v. Joint Legislative Comm. on Perf. & Expenditure Review of State of Miss.*,
　　637 F.3d 1014 (5th Cir. 1981) ............................................................................. 20

*Potts v. Flax*,
　　313 F.2d 284 (5th Cir. 1963) ................................................................................. 1

*Prantil v. Arkema Inc.*,
　　986 F.3d 570 (5th Cir. 2021) .................................................................... 16, 17, 18

*Procunier v. Martinez*,
　　416 U.S. 396 (1974) ............................................................................................. 17

*Shelton v. Bledsoe*,
　　775 F.3d 554 (3d Cir. 2015) ........................................................................... 19, 20

*Shook v. El Paso Cnty.*,
　　386 F.3d 963 (10th Cir. 2004) ........................................................................ 19, 20

*Slade v. Progressive Sec. Ins.*,
　　856 F.3d 408 (5th Cir. 2017) ............................................................................... 11

*Spencer v. Simpson*,
　　No. 1:18-CV-643, 2020 WL 6597285 (W.D. Mich. Aug. 17, 2020) ................... 23

*Stirman v. Exxon Corp.*,
　　280 F.3d 554 (5th Cir. 2002) ............................................................................... 10

*Thorpe v. District of Columbia*,
　　303 F.R.D. 120 (D.D.C. 2014) ............................................................................ 21

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council*,
　　425 U.S. 748 (1976) ......................................................................................... 4, 17

*Vita Nuova, Inc. v. Azar*,
　　No. 4:19-cv-00532-O, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020)................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011) ................................................................................ 8, 9, 10, 18

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972) ................................................................... 19, 20

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ............................................................................. 6

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981) ........................................................................... 6

Rules

Fed. R. Civ. P. 15(a)(2) ..................................................................................... 22

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 6

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 10

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 11

Fed. R. Civ. P. 23(b) ........................................................................................... 6

Fed. R. Civ. P. 23(b)(2) .............................................................................. passim

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 19

Other Authorities

1 NEWBERG ON CLASS ACTIONS § 3.05 (3d ed. 1992) ......................................... 6

Fed. R. Civ. P. 23 1966 amend. advisory comm. note.................................. 17, 18, 19

## INTRODUCTION

Federal Rule of Civil Procedure 23(b)(2) "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *AmChem Prods. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(2)). "In fact, Rule 23(b)(2) was promulgated essentially as a tool for facilitating civil rights class actions." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 284 (W.D. Tex. 2007) (cleaned up). This tool is especially appropriate when the named members are affected by violations of other members' rights, making individualized relief less effective. *See, e.g.*, *Potts v. Flax*, 313 F.2d 284, 289 (5th Cir. 1963) (affirming a class-wide injunction against racial segregation in public schools, noting the futility of "admit[ting] only the specific successful plaintiff" into an otherwise segregated school).

This is such a case. Indeed, in light of what preliminary-injunction-related discovery has revealed about the magnitude of Defendants' censorship activities, this case cries out for class-wide treatment under Rule 23(b)(2). Defendants are unlawfully pressuring, cajoling, tricking, and threatening social-media companies into mass, viewpoint-based censorship affecting speakers and audience members across social-media platforms. Defendants are accomplishing their ends directly, by flagging particular content to social-media companies for censorship, as well as indirectly, by inducing social-media companies to adopt or enforce stricter policies that involve new and greater censorship. Defendants are taking these actions on viewpoint-discriminatory grounds generally applicable to censored speakers and their audiences. And every time the federal government does this against a speaker, it injures the rights of audience members as well as speakers. For that reason, limiting an injunction to the speech of named individual Plaintiffs alone

would undermine the effectiveness of relief even for named individual Plaintiffs themselves, who are being deprived of not only their right to speak but also their right to view constitutionally protected speech made by absentee class members. Speakers and audience members share a common interest in this litigation.

Accordingly, in connection with this motion, Plaintiffs are seeking leave to file a Third Amended Complaint for the limited purpose of adding class allegations for a Rule 23(b)(2) class action.[1] Individual Plaintiffs Bhattacharya, Hines, Hoft, Kheriaty, and Kulldorff seek to represent two classes seeking injunctive relief under Rule 23(b)(2) barring Defendants from inducing social-media companies to censor particular contents or to adopt or enforce speech-restrictive content-moderation policies.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural history of this case are set forth in Plaintiffs' recent filings, including their Supplemental Brief in Support of Preliminary Injunction and Proposed Findings of Fact, Docs. 214, 214-1, which are incorporated by reference.  As relevant here, Plaintiffs state: On July 12, 2022, this Court authorized expedited preliminary-injunction-related discovery.  Doc. 34. Defendants' Motion to Dismiss was filed on November 22, 2022, Doc. 128, and granted in part and denied in part by the Court earlier today, Doc. 224; merits discovery has not yet commenced.

Expedited discovery proceeded between July 12, 2022, and January 27, 2023.  Doc. 175. During that period, Plaintiffs received a series of documentary disclosures from Defendants that progressively unveiled the extraordinary breadth of Defendants' social-media censorship

---

[1] The proposed Third Amended Complaint also adds Dr. Hugh Auchincloss, who recently became acting Director of NIAID, as a Defendant. To comply with the Court's recent order on Defendants' Motion to Dismiss, the proposed Third Amended Complaint also drops Plaintiffs' request for injunctive relief against President Biden. *See* Doc. 224, at 72–76.

activities.  Many of these disclosures occurred at the end, and even past the end, of the expedited discovery period.  For example, Defendants received supplemental documentary disclosures from Rob Flaherty and the White House on January 5, 2023; and from CISA (of about 2,000 pages of documents that had been wrongfully withheld for many months) on February 8, 2023.  *See* Doc. 187.  In addition, Plaintiffs were authorized to take six depositions between November 10, 2022, and January 12, 2023.  *See* Docs. 204-210.  And Plaintiffs received disclosures from third parties as well, including a supplemental disclosure from Twitter on February 22, 2023, of *84* federal officials who communicate with Twitter about misinformation and censorship.  *See* Doc. 214-8.

Expedited discovery has revealed two things.  *First*, the scope and extent of Defendants' social-media censorship activities are far broader, and far more egregious, than Plaintiffs could reasonably have expected at the commencement of discovery.  These censorship activities extend across the federal government, and they affect, directly or indirectly, virtually all social-media users in the United States.  A few examples from recent disclosures make this exceptionally clear.  For example, the Government's January 5, 2023, production revealed that senior White House officials demanded (and received) the censorship of prominent Fox News hosts Tucker Carlson and Tomi Lahren—among many others—affecting Tucker Carlson's millions of followers at one stroke.  *See* Doc. 214-1, ¶¶ 81-82, 93-100.  The deposition of Brian Scully on January 12, 2023 provided evidence of CISA's pervasive entwinement—including overlapping staff—with the Election Integrity Partnership, *see, e.g., id.* ¶¶ 991-1075, a government/private joint censorship consortium that secretly monitors hundreds of millions of American social-media posts and flags tens of millions for censorship.  *See id.*¶¶ 1201-1202 (noting that the EIP boasts that it monitored 859 million Tweets on Twitter alone in 2020 and processed tickets encompassing almost 22 million Tweets).  The deposition of Elvis Chan on November 19, 2022, revealed for the first time

that the FBI routinely flags hundreds of social-media accounts and URLs to platforms for censorship, resulting in the censorship of hundreds of thousands or millions of social-media engagements by American citizens. *Id*. ¶¶ 916-924, 931-938. And there are many other such examples. At every turn, expedited discovery has revealed an ever-expanding picture of the staggering breadth and reach of the federal government's "Censorship Enterprise."

*Second*, given the extraordinary breadth and reach of these federal social-media censorship activities, and the interconnected nature of online discourse, expedited discovery has made clear that class-wide relief is necessary and appropriate to render any preliminary injunction in this case fully effective. The Supreme Court has emphasized that every act of censorship injures both the *speaker* and the *audience* of the censored speech, at a single stroke. *See, e.g., Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982); *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976). "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017). Here, there are systematic injuries to speakers and audiences nationwide and class-wide. Moreover, speaking and listening on social media are interconnected and interactive, as the Supreme Court recognizes, *see id.*, and the supplemental declarations filed by the individual Plaintiffs in support of this motion attest. The censorship of one speaker deprives others of the chance to listen to that speaker, and also of the chance to engage with and speak in response to the censored speaker. Here, a preliminary injunction that protected only the right of the individual Plaintiffs and of Missourians and Louisianans to speak and listen freely on social media would be inherently incomplete. An injunction that left room for Defendants to continue pressuring and inducing social-media platforms to censor *other* speakers would result in ongoing violations of the

4

rights and interests of the individual Plaintiffs, the States, and the States' citizens to participate in free, uncensored discourse on social media.

## PROPOSED CLASS DEFINITIONS

Based on the foregoing, Plaintiffs ask the Court to certify two classes:

1. The class of social-media users who have engaged or will engage in, or who follow, subscribe to, are friends with, or are otherwise connected to the accounts of users who have engaged or will engage in, speech on any social-media company's platform(s) that has been or will be removed; labelled; used as a basis for suspending, deplatforming, issuing strike(s) against, demonetizing, or taking other adverse action against the speaker; downranked; deboosted; concealed; or otherwise suppressed by the platform after Defendants and/or those acting in concert with them flag or flagged the speech to the platform(s) for suppression.

2. The class of social-media users who have engaged in or will engage in, or who follow, subscribe to, are friends with, or are otherwise connected to the accounts of users who have engaged in or will engage in, speech on any social-media company's platform(s) that has been or will be removed; labelled; used as a basis for suspending, deplatforming, issuing strike(s) against, demonetizing, or taking other adverse action against the speaker; downranked; deboosted; concealed; or otherwise suppressed by the company pursuant to any change to the company's policies or enforcement practices that Defendants and/or those acting in concert with them have induced or will induce the company to make.

Plaintiffs propose individual Plaintiffs Bhattacharya, Hines, Hoft, Kheriaty, and Kulldorff as class representatives for each of the classes. As counsel for each of the classes, Plaintiffs propose two

of individual Plaintiffs' existing counsel, John Vecchione of the New Civil Liberties Alliance and

Jonathan Burns of the Burns Law Firm, LLC.

For the reasons explained below, the proposed classes, class representatives, and class

counsel satisfy the requirements for certification under the Federal Rules of Civil Procedure.

## ARGUMENT

To warrant class certification, a class must satisfy Rule 23(a) and one of Rule 23(b)'s

subdivisions. *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017). Plaintiffs' proposed classes

satisfy Rule 23(a) and Rule 23(b)(2).

## I.     The Proposed Classes Satisfy Rule 23(a).

The proposed classes satisfy Rule 23(a)'s four requirements of numerosity, commonality,

typicality, and adequacy.

### A.     The Proposed Classes Satisfy Numerosity.

First, a proposed class must be "so numerous that joinder of all members is impracticable."

Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has suggested that joinder of more than forty members

is presumptively impracticable, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th

Cir. 1999) (citing 1 NEWBERG ON CLASS ACTIONS § 3.05 (3d ed. 1992)), and that a lower threshold

may be appropriate depending on "the geographical dispersion of the class" and "the ease with

which class members may be identified," *id.* (quoting *Zeidman v. J. Ray McDermott & Co.*, 651

F.2d 1030, 1038 (5th Cir. 1981)).

Both Proposed Classes easily satisfy this requirement. As stated above, when the federal

government induces a suppression of speech, that act violates not only the speaker's right to speak,

but also the audience members' "right to receive it." *Martin v. City of Struthers*, 319 U.S. 141, 143

(1943). To take just one example, when the federal government induced social-media companies

to suppress Plaintiff Kulldorff's speech, that suppression affected the 250,800 people who follow him on Twitter and the 13,400 people who follow him on LinkedIn. Doc. 10-4, ¶7. If that is not numerous, nothing is.

Other examples abound. For instance, in response to Defendant Flaherty's demand, Facebook suppressed a trending video posted by Tucker Carlson, one of the most popular talk-show hosts in America. Doc. 174-1, at 22, 36–38. Facebook assured Flaherty that the video "received 50% demotion for seven days while in the queue to be fact checked, and will continue to be demoted even though it was not ultimately fact checked." *Id.* at 36. Mr. Carlson has millions of followers on Facebook. Doc. 214-11. And his content was reshared by many of his followers, so the number of persons harmed is even greater. *See* Doc. 174-1, at 36–38 (indicating that the content was "among the top 100 most-viewed vaccine posts" and had been shared 40,000 times in roughly twelve hours, despite "receiv[ing] 50% demotion"). This incident alone easily satisfies numerosity for Class 1. Plaintiffs also have irrefutable evidence that social-media companies took action on dozens of posts flagged by CISA during the 2020 election cycle. *See* Ex. 1 (CISA flagging emails), at 1–83.

Numerosity is satisfied for Class 2 for much the same reason: When the federal government induced social media companies to change their policies in favor of speech suppression, those new policies affected millions of users. Alex Stamos, founder of the Election Integrity Partnership which acted in concert with the federal government, explained that the key to making platforms censor content is first to "get good policies, and then say 'this is how [given content] is violating [those policies].'" Doc. 214-1, ¶¶ 1148–49; *cf.* Ex. 1, at 84–90 (examples of joint action between CISA and EIP). Stamos boasted that "we're not going to take credit for all of the changes [companies] made [to their policies], but . . . we had to update [their policy documents], like, eight

or nine times." Doc. 214-1, ¶¶ 1148. In other words, Defendants' goal is not just to take down specific content. Their goal also includes changing the rules on these platforms to facilitate future censorship.

Plaintiffs have uncovered evidence of many examples where social media companies have strengthened their censorship policies in response to Defendants' "call for [them] to do more." Doc. 86-5, at 15. In October 2021, Facebook changed its "misinfo policies for COVID-19 vaccines to include claims about child vaccines." Doc. 86-5, at 4. Facebook "ma[de] this change based on the conversation [it] had [the previous] week with the CDC." *Id.* Facebook informed Defendants Flaherty, Rowe, and Waldo that "[t]here are several claims that [it] w[ould] be able to remove as soon as the CDC debunks them." *Id.* Facebook promised a rich harvest of censorship for Flaherty and his team: "We expect the approval of COVID vaccines for kids ages 5-11 will be another significant peak in new misinformation claims. Our [new] policy allows us to take action against this content . . . ." *Id.* Additionally, Plaintiffs have obtained an email in which a Facebook executive assured Defendant Murthy, "We hear your call for us to do more." Doc. 86-5, at 15. Facebook assured Murthy that it was working "to adjust policies on what we are removing with respect to misinformation" and had "expanded the group of false claims that we remove." *Id.* "You have identified 4 specific recommendations for improvement and we want to make sure to keep you informed of our work on each." *Id.* Other examples abound. *E.g.*, Doc. 174-1, at 17 (demanding "some assurance, based in data," that Facebook was not delaying the deployment of stricter censorship algorithms targeting speech related to COVID-19 vaccines).

## B.     The Proposed Classes Satisfy Commonality.

Second, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This means that the claims of each class member must "depend upon a common

contention . . . that is capable of classwide resolution" and whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For Rule 23(b)(2) classes like the one Plaintiffs propose here, commonality is a low hurdle—"even a single common question will do." *Id.* at 359 (cleaned up).

Both proposed classes easily satisfy commonality. The claims of all members of Class 1 turn on the legal question whether the government is responsible for a social-media company's censorship of content that the government flags to the company for suppression. The claims of all members of Class 2 turn on the legal question whether the government is responsible for a social-media company's censorship of content pursuant to a policy that the government induced the company to adopt or enforce.

Notably, by restricting the proposed classes to persons whose speech has been censored at the instigation of the government, Plaintiffs avoid the defects that have caused other classes to fail commonality. For example, in *Wal-Mart*, the plaintiffs sued "about millions of employment decisions at once," basing their theory of liability on a statute that prohibits making employment decisions for certain reasons. *Id.* Because the class members had no "common answer to the crucial question *why was I disfavored*," the class failed commonality. *Id.* Similarly, in *Flecha v. Medicredit, Inc.*, the plaintiff sought to certify a class of every person who received a debt-collection letter from the defendant. 946 F.3d 762, 765 (5th Cir. 2020). The problem was that the statute provided for liability only if the agency did not intend to take the threatened action. As in *Wal-Mart*, the plaintiff provided no "evidence of a uniform intention by [the defendant] regarding suit." *Id.* at 767. Because there was no "'common answer to the crucial question' *why was I threatened*," the class failed commonality. *Id.* (quoting *Wal-Mart*, 564 U.S. at 352).

Here, in contrast, every member of Class 1 has suffered or will suffer censorship, either as a speaker or as an audience member, after Defendants flagged the content to social-media companies for suppression. Likewise, every member of Class 2 has suffered or will suffer censorship pursuant to policies or enforcement practices that Defendants induced social-media companies to adopt. Thus, unlike the defendants in *Wal-Mart* and *Flecha*, Defendants are involved in all class members' injuries in a way that, if Plaintiffs' legal theories are sound, renders Defendants liable for those injuries. As a result, the court's decision on Plaintiffs' legal theories "will resolve an issue that is central to the validity of each one of the [Class members'] claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

### C.      The Proposed Classes Satisfy Typicality.

Third, the claims of the class representatives must be "typical" of the claims in the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is "not demanding"; it simply asks "whether the class representative[s]'[] claims have the same essential characteristics of those of the putative class." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). A typical claim does not share a "complete identity" with others in the class. *Id.* Instead, it merely must "arise from a similar source of conduct and share the same legal theory," even if there are "factual differences." *Id.*; *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). Additionally, a class representative should not be "subject to a unique defense that is likely to become to become a major focus of the litigation." *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 661 (D.N.M. 2019).

Both proposed classes satisfy these requirements. The claims of individual Plaintiffs and Class 1 members all arise from the same course of conduct by Defendants, namely, their practice of flagging particular content to social-media companies for suppression, and they are all based on

the same legal theory, namely, the theory that such conduct violates the First Amendment. Likewise, the claims of individual Plaintiffs and Class 2 members all arise from the same course of conduct by Defendants, namely, their practice of inducing social-media companies to adopt stricter content-moderation policies, and are all based on the same legal theory, namely, the theory that such conduct violates the First Amendment. Individual Plaintiffs are not subject to any unique affirmative defenses, let alone any that are likely to become a major focus of the case.

### D. The Proposed Classes Satisfy Adequacy.

Fourth, the class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy encompasses three separate but related inquiries": "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins.*, 856 F.3d 408, 412 (5th Cir. 2017) (cleaned up).

### 1. Class Counsel Are Zealous and Competent.

John Vecchione of the New Civil Liberties Alliance ("NCLA") has been a member of the New York State Bar for over 30 years and is admitted to the U.S. Court of Appeals for the Fifth Circuit and the Supreme Court of the United States. Ex. 2 (Vecchione declaration), ¶ 8. He has extensive trial and appellate experience, including at least a dozen complex civil trials, and has been counsel in well over 100 decisions reported in the official federal reporters. *Id.* ¶¶ 9-14. He has appeared in many cases representing plaintiffs against the federal government in complex litigation and has recently prevailed on a motion for class certification and was appointed class counsel by U.S. District Judge Susie Morgan of the U.S. District Court for the Eastern District of Louisiana in a case against three federal agencies and their chief officers. *Id.* ¶¶ 13-14. Mr.

Vecchione coordinates closely in this case with counsel for the State of Louisiana and the State of Missouri, who also have extensive experience in handling complex litigation against the federal government. *Id.* ¶ 15. He has intimate familiarity with the facts of this case and the harms suffered by his clients, and is prepared to be class counsel.

Indeed, NCLA is a nonpartisan, nonprofit civil-rights organization and public-interest law firm that aims to defend civil liberties. *Id.* ¶¶ 3, 5. Its Board of Advisors is chaired by retired Judge of the U.S. Court of Appeals for the D.C. Circuit Hon. Janice Rogers Brown and includes, among others, Former Commissioner of the U.S. Commission on Civil Rights Jennifer Braceras. *Id.* ¶ 6. NCLA has represented individuals against the government in courts across the nation. *Id.* ¶ 7. NCLA was formed for and has as its mission taking on cases like this. *See id.* ¶¶ 3, 5.

John Burns has been a member of the Missouri Bar since 2013. Ex. 3 (Burns declaration), ¶ 4. He is admitted in the Eastern and Western Districts of Missouri, Northern and Southern Districts of Illinois, and the Southern District of Texas, and has been admitted *pro hac vice* in the Western District of Virginia, Western District of Pennsylvania, Western District of Arkansas, District of Arizona, and the Southern District of New York. *Id.* Mr. Burns founded the Burns Law Firm and worked for several private litigation firms focusing on civil disputes, including civil rights. *Id.* ¶ 6. He has tried civil suits and managed all aspects of civil suit litigation in the areas of First Amendment speech, First Amendment religious discrimination, and Fourteenth and Fourth Amendment issues, complex insurance contract disputes, personal injury disputes, criminal defense, and many other areas. *Id.* Since 2020, Mr. Burns' firm has primarily focused on First Amendment issues, including a freedom-of-the-press case pending before the Ninth Circuit Court of Appeals. *Id.* ¶¶ 7, 10. Mr. Burns has litigated many cases at the state and federal appellate levels, including extensive extraordinary writ practice. *Id.* ¶ 8. He became one of the few attorneys

in the nation litigating vaccine mandate cases when individuals began losing their careers due to mandates. *Id.* ¶ 9. Mr. Burns is intimately familiar with the facts and legal issues in this case and has spoken at length with the plaintiffs about the censorship they have experienced on social media. *Id.* ¶ 11. He has investigated the government's involvement in this censorship, poured over the fruits of discovery, assisted with depositions and legal briefs, and performed legal research. *Id.* Mr. Burns is fully capable of serving as class counsel.

### 2. Class Representatives Will Actively Protect Class Members' Interests.

The proposed class representatives are willing and able to take active roles in and control the litigation and protect the interests of all class members. Each proposed representative is a prominent figure in his or her field and enjoys a substantial following. Plaintiff Dr. Bhattacharya is former Professor of Medicine and current Professor of Health Policy at Stanford University School of Medicine and a research associate at the National Bureau of Economic Research. Doc. 84, ¶ 21; Doc. 45-3, ¶ 2. He holds an M.D. and Ph.D. from Stanford University. *Id.* He has published 161 scholarly articles in peer-reviewed journals in the fields of medicine, economics, health policy, epidemiology, statistics, law, and public health, among others. *Id.* His research has been cited in the peer-reviewed scientific literature more than 13,000 times. *Id.* He was one of the co-authors of the Great Barrington Declaration, a statement criticizing government-mandated COVID restrictions, which was co-signed by over 930,000 people, including over 62,000 scientists and healthcare professionals. Doc. 84, ¶ 21; Doc. 45-3, ¶¶ 6-12.

Plaintiff Dr. Kulldorff is an epidemiologist, a biostatistician and a former Professor of Medicine at Harvard University and Brigham and Women's Hospital, from 2015 to November 2021. Doc. 84, ¶ 22; Doc. 45-4, ¶ 2. Before that, he was Professor of Population Medicine at Harvard University from 2011 to 2015. *Id.* He holds a Ph.D. from Cornell University. *Id.* He

13

has published over 200 scholarly articles in peer-reviewed journals in the fields of public health, epidemiology, biostatistics and medicine, among others. *Id.* His research has been cited in the peer-reviewed scientific literature more than 25,000 times. *Id.* He was one of the co-authors of the Great Barrington Declaration, a statement criticizing government-mandated COVID restrictions, which was co-signed by over 930,000 people, including over 62,000 scientists and healthcare professionals. Doc. 84, ¶ 22; Doc. 45-4, ¶¶ 9-11.

Plaintiff Dr. Kheriaty earned his M.D. from Georgetown University, and completed residency training in psychiatry at the University of California Irvine. Doc. 84, ¶ 23; Doc. 45-7, ¶ 2. For many years, he was a Professor of Psychiatry at UCI School of Medicine and the Director of the Medical Ethics Program at UCI Health, where he chaired the ethics committee. *Id.* He also chaired the ethics committee at the California Department of State Hospitals for several years. *Id.* He is now a Fellow at the Ethics & Public Policy Center in Washington, DC, where he directs the program on Bioethics and American Democracy. *Id.* He has authored numerous books and articles for professional and lay audiences on bioethics, social science, psychiatry, religion, and culture. Doc. 84, ¶ 23; Doc. 45-7, ¶ 3. His work has been published in the Wall Street Journal, the Washington Post, Arc Digital, The New Atlantis, Public Discourse, City Journal, and First Things. *Id.* He has conducted print, radio, and television interviews on bioethics topics with The New York Times, the Los Angeles Times, CNN, Fox News, and NPR. *Id.* He maintains social-media accounts, including the Twitter account @akheriaty, which has over 158,000 followers. *Id.*

Plaintiff Jim Hoft is the founder, owner, and operator of the popular news website The Gateway Pundit. Doc. 84, ¶ 24; Doc. 45-5, ¶ 2. The Gateway Pundit is one of the most popular conservative news sites in the country, with over 3 million web visits per day. Ex. 7 (Hoft declaration), ¶ 3. Mr. Hoft maintains and operates The Gateway Pundit's social-media accounts,

including a Facebook account with over 650,000 followers, an Instagram account with over 205,000 followers, and (until its permanent suspension) a Twitter account with over 400,000 followers.  Doc. 84, ¶ 24; Doc. 45-5, ¶ 3.

Plaintiff Jill Hines is the Co-Director of Health Freedom Louisiana, a consumer and human rights advocacy organization.  Doc. 84, ¶ 25; Doc. 45-12, ¶ 2.  She also launched, in 2020, a grassroots effort called Reopen Louisiana.  Doc. 84, ¶ 25.  Ms. Hines' organization engages in public advocacy on behalf of Louisiana citizens on issues of health freedom and fundamental human rights, and she has testified before the Louisiana legislature approximately 20 times.  Doc. 45-12, ¶ 3.  She maintains social-media accounts for both Health Freedom Louisiana and Reopen Louisiana with approximately 13,000 followers.  Doc. 84, ¶ 25; Doc. 45-12, ¶ 2.

In addition to being prominent figures with substantial followings, each proposed representative is a frequent reader and listener of content that others post on social-media platforms, including others who have suffered government-induced censorship.  Ex. 4 (Bhattacharya declaration), ¶¶ 3-5; Ex. 5 (Kulldorff declaration), ¶¶ 3-5; Ex. 6 (Kheriaty declaration), ¶¶ 3-6; Ex. 7 (Hoft declaration), ¶¶ 4-7; Ex. 8 (Hines declaration), ¶¶ 3-6.  Further, each proposed representative has been forced to engage in self-censorship on social media out of fear of even more severe penalties.  Ex. 4, ¶ 6; Ex. 5, ¶ 6; Ex. 6, ¶ 7; Ex. 7, ¶ 8; Ex. 8, ¶ 7.  Proposed representatives are ideally situated to represent class members, including those suffering censorship as well as those affected by censorship of others.

Moreover, each proposed representative has demonstrated an intention to see this action through to completion, whether it be by communicating regularly with counsel, maintaining sufficient knowledge of the facts and legal theories underpinning this action, comprehending the nature of harms suffered and the significance of relief sought in this case, and/or closely monitoring

15

the case since each representative's involvement began. *See* Ex. 4, ¶ 7; Ex. 5, ¶ 7; Ex. 6, ¶ 10; Ex. 7, ¶ 9; Ex. 8, ¶ 9.  Individual plaintiffs are intimately familiar with the harms alleged, common to both classes, having described their own experiences of government-induced censorship in detail. *See* Docs. 45-3, -4, -5, -7, -12.  The proposed class representatives are well suited to take active roles in this action and to protect the interests of all class members.

### 3.     No Class Representative Has a Conflict of Interest.

Finally, there is no risk of any conflicts of interest between the proposed representatives and the classes they seek to represent.  All class representatives will zealously advance the interests of the classes.  Substantial similarity exists between the proposed representatives and the members of both classes regarding the claims asserted and the relief sought.  The proposed representatives' interests align with those of both classes, and they seek relief benefiting all members.

## II.     The Proposed Classes Satisfy Rule 23(b)(2).

The proposed classes also satisfy the requirements of Rule 23(b)(2). To maintain a class under Rule 23(b)(2), the plaintiff must show that the defendant (1) "has acted or refused to act on grounds that apply generally to the class, so that" (2) "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### A.     The Proposed Classes Satisfy Rule 23(b)(2)'s Act Requirement.

Rule 23(b)(2)'s act requirement is satisfied by "common behavior by the defendant toward the class" so that class members are "harmed in essentially the same way." *Prantil v. Arkema Inc.*, 986 F.3d 570, 580 (5th Cir. 2021). This does not mean that the defendant's behavior must have "uniformly affect[ed]—and injur[ed]—each [class member]." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 847 (5th Cir. 2012). On the contrary, "behavior with respect to the class as a whole" satisfies Rule 23(b)(2)'s act requirement "even if it has taken effect or is threatened only as to one

16

or a few members of the class." *Id.* at 847–48 (quoting Fed. R. Civ. P. 23 1966 amend. advisory comm. note). What matters is that the defendant's behavior wrongs all class members "in essentially the same way," *Prantil*, 986 F.3d at 580, not that the injury from that wrong has already "taken effect" for all class members, *Stukenberg*, 675 F.3d at 847. *See, e.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1315 (D.C. Cir. 2019) (per curiam) (observing that "(b)(2) classes challenging voter-qualification laws often include anyone disenfranchised by the challenged laws," "regardless of whether class members ultimately intend (or are even registered) to vote").

Both proposed classes satisfy Rule 23(b)(2)'s act requirement for the simple reason that each of the federal government's censorship acts necessarily harms both speakers and their audiences. "[W]here a speaker exists, . . . the protection afforded is to the communication, to its source and recipient both." *Va. State Bd. of Pharm.*, 425 U.S. at 756. "[C]ensorship equally infringe[s] the rights of" speakers and those "to whom [their speech i]s addressed." *Id.* at 757. Thus, Defendants' practice of flagging particular posts for censorship has wronged all members of Class 1, speakers and audience members alike, "in essentially the same way." *Prantil*, 986 F.3d at 580. Likewise, Defendants' practice of pressuring social-media companies to adopt or enforce stricter censorship policies has wronged all members of Class 2, speakers and audience members alike, "in essentially the same way." *Id.*

It makes no difference that some class members might have been offline and thus might not have seen the censored content even had it not been censored. Those members were still unconstitutionally deprived of the opportunity to view that speech. Each member need not have felt the same "effect"; what matters is that every class member is, in fact, among those whom the defendant has wronged. *See Stukenberg*, 675 F.3d at 847. And every audience member of the speakers who have been censored at Defendants' urging, or pursuant to a policy adopted or

enforced at Defendants' instigation, has been wronged by Defendants' conduct. The Supreme Court did not demand evidence that those "to whom [outgoing prison mail] was addressed" would have read the correspondence before concluding that "censorship of [that] mail" violated the addressees' First Amendment rights. *Va. State Bd. of Pharm.*, 425 U.S. at 757 (citing *Procunier v. Martinez*, 416 U.S. 396, 408–09 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401 (1989)). So too, government censorship of speech addressed to an audience of social-media users violates those users' First Amendment rights regardless of whether those users are offline or online. *See Azar*, 925 F.3d at 1315 ("[T]he class . . . can encompass anyone whose right . . . is allegedly infringed by the government's policy, regardless of whether she ultimately intends to exercise her right. . . . Even if some class members are uninterested in the claims because they are not among the 'members of the class' against whom the challenged policy 'has taken effect' in a way that matters to them, the class definition need not exclude them." (citation omitted) (quoting Fed. R. Civ. P. 23 1966 amend. advisory comm. note)).

**B.      The Proposed Classes Satisfy Rule 23(b)(2)'s Injunction Requirement.**

Rule 23(b)(2)'s injunction requirement is satisfied if "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. To provide effective relief, the injunction or declaratory judgment "must be specific" and "must predominate over monetary damage claims." *Prantil*, 986 F.3d at 580.

Both classes straightforwardly satisfy these requirements. An injunction prohibiting Defendants from encouraging, pressuring, deceiving, or inducing social-media companies to censor particular instances of speech protected by the First Amendment "would provide relief to each member" of Class 1. *Wal-Mart*, 564 U.S. at 360. Likewise, an injunction prohibiting Defendants from encouraging, pressuring, deceiving, or inducing social-media companies to make

18

specific, speech-restrictive changes to their content moderation policies or enforcement practices "would provide relief to each member" of Class 2. *Id.* Both injunctions are "specific," and both "predominate over monetary damage claims" because Plaintiffs are not seeking money damages. *Prantil*, 986 F.3d at 580.

### III.   To the Extent Ascertainability Is Required, the Proposed Classes Satisfy It.

Ascertainability is "an implied prerequisite of Federal Rule of Civil Procedure 23." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). It encompasses two distinct requirements: ascertainability of *meaning* and ascertainability of *membership*. The first requirement applies to all classes and is met if the class is defined in terms that are objective and precise. *See, e.g.*, *id.* at 445 n.3. The second requirement applies to Rule 23(b)(3) classes and is met if the class is defined in terms that enable "easy identification of class members . . . without extensive and individualized fact-finding." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

Because they seek to certify a Rule 23(b)(2) class and request exclusively equitable relief, Plaintiffs need only satisfy the first requirement: ascertainability of meaning. As far as Plaintiffs are aware, every court to analyze the issue has concluded that ascertainability of membership is not required for Rule 23(b)(2) classes seeking exclusively equitable relief. *E.g., Cole v. City of Memphis*, 839 F.3d 530, 541–42 (6th Cir. 2016); *Shelton v. Bledsoe*, 775 F.3d 554, 560–63 (3d Cir. 2015); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972–73 (10th Cir. 2004); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972), *abrogated on other grounds*, *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978); *accord* Fed. R. Civ. P. 23 1966 amend. advisory comm. note (describing Rule 23(b)(2) classes as particularly appropriate for classes "whose members are incapable of specific enumeration"). This makes sense: in Rule 23(b)(3) classes, the function of "ready

19

identification of class members," *Shelton*, 775 F.3d at 561–62, is to facilitate mandatory notice and orderly distribution of damages awards, *Floyd v. City of New York*, 283 F.R.D. 153, 171 (S.D.N.Y. 2012) ("The [ascertainability-of-membership] requirement is a judicial creation meant to ensure that class definitions are workable when members of the class will be entitled to damages or require notice for another reason."); *see also Cole*, 839 F.3d at 541–42; *Shelton*, 775 F.3d at 561–62; *Shook*, 386 F.3d at 972; *Yaffe*, 454 F.2d at 1366. Neither rationale applies to Rule 23(b)(2) classes seeking exclusively equitable relief. *See Cole*, 839 F.3d at 541–42; *Shelton*, 775 F.3d at 561–62; *Shook*, 386 F.3d at 972; *Yaffe*, 454 F.2d at 1366; *Floyd*, 283 F.R.D. at 171. For this reason, courts have held that a proposed class is "sufficiently ascertainable for the purpose of Rule 23(b)(2)" provided that the *meaning* of the class definition is "clear"; ready identification of membership is unnecessary. *Floyd*, 283 F.R.D. at 172.

Although the Fifth Circuit has not squarely addressed the question, its practice is consistent with the holdings of those that have. In *DeBremaeker v. Short*, the Fifth Circuit affirmed the refusal to certify a Rule 23(b)(2) class consisting of "residents of [Texas] active in the peace movement" for lack of ascertainability, but it rested its holding on "the patent uncertainty of *the meaning* of 'peace movement.'" 433 F.2d 733, 734 (5th Cir. 1970) (emphasis added). The court did not address whether Rule 23(b)(2) classes require ascertainability of membership. Moreover, in subsequent decisions, the Fifth Circuit has affirmed, or reversed the denial of, certification of Rule 23(b)(2) classes whose membership is obviously *not* readily ascertainable—such as "the class of present *and potential future* black employees" of a company. *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (emphasis added); *see also Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000); *Phillips v. Joint Legislative Comm. on Perf. & Expenditure Review of State of Miss.*, 637 F.3d 1014, 1021–22 (5th Cir. 1981); *accord, e.g., Marisol A. v. Giuliani*, 126 F.3d

20

372, 375–78 (2d Cir. 1997). The Fifth Circuit has even held that "the fact that [a Rule 23(b)(2) class includes unknown, unnamed future members . . . weighs *in favor of* certification" because it makes joinder impracticable. *Pederson*, 213 F.3d at 868 n.11 (emphasis added).

Thus, under Fifth Circuit caselaw, Plaintiffs need not show that their proposed Rule 23(b)(2) injunctive classes would enable "easy identification of class members . . . without extensive and individualized fact-finding." *Hayes*, 725 F.3d at 355. All Plaintiffs must show is that the classes are defined in terms that are clear and precise. *See Floyd*, 283 F.R.D. at 172.

Both proposed classes satisfy this requirement. The term "social-media company" has a precise and settled meaning. It is no vaguer than "health-care provider," which the Northern District of Texas has held is "easily" precise enough for ascertainability. *Vita Nuova, Inc. v. Azar*, No. 4:19-cv-00532-O, 2020 WL 8271942, at *2 (N.D. Tex. Dec. 2, 2020); *cf. Thorpe v. District of Columbia*, 303 F.R.D. 120, 140 (D.D.C. 2014) (denying that the term "transition assistance" rendered the class definition's meaning unascertainable). Although Plaintiffs have not purported to enumerate every term that social-media platforms use to describe the connections by which users track each other's speech, Plaintiffs have provided a nonexhaustive list of terms including "are friends with" and "follow," which lend substance to the catchall category "are otherwise connected to the accounts of" by means of the familiar linguistic canon *ejusdem generis*. *See Ejusdem Generis*, Black's Law Dictionary (11th ed. 2019). The same is true of Plaintiffs' nonexhaustive list of ways in which social-media companies suppress speech.

**IV.    The Court Should Grant Plaintiffs Leave to File a Third Amended Complaint for the Limited Purpose of Adding Class Allegations.**

For the reasons stated above, expedited preliminary-injunction-related discovery has made clear that this case warrants certification of a Rule 23(b)(2) class.  Rule 23(b)(2) was tailor-made

for cases like this, where government officials have violated civil rights of large numbers of people through widespread, systemic conduct. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. at 284.

Under Rule 15(a)(2), "a party may amend its pleading … with … the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) is to be applied "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap.*, 316 F.3d at 1051; *accord Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997) ("[T]he touchstone of the inquiry under rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint.").

Applying these principles, the Court should grant Plaintiffs leave to file a Third Amended Complaint for the limited purpose of adding class allegations.[2] This amendment will advance "justice," Fed. R. Civ. P. 15(a)(2), because class-wide treatment is necessary to grant fully effective injunctive relief in this case. If class-wide relief is not granted, Defendants may be free to continue violating both the individual Plaintiffs' and State Plaintiffs' rights and interests systematically by

---

[2] As noted above, the proposed Third Amended Complaint also adds Dr. Hugh Auchincloss as a Defendant and drops Plaintiffs' request for injunctive relief against President Biden.

procuring the censorship of *other* speakers across the country that the Plaintiffs have First Amendment rights and powerful interests to hear and interact with.

Moreover, amending the Complaint to add class allegations at this early stage of litigation will not prejudice Defendants.  Notably, Plaintiffs seek leave to amend solely for the limited purpose of adding class allegations (along with adding Dr. Hugh Auchincloss, who recently became the head of NIAID, as a Defendant and dropping Plaintiffs' request for injunctive relief against President Biden), so the amendment will not require a new Motion to Dismiss with a fresh round of briefing in support and opposition. Instead, Defendants can raise any further objections they might have to the class allegations in response to this Motion. Furthermore, this is an early stage of litigation, as merits discovery has not commenced yet, and Plaintiffs do not seek any additional discovery other than the already-completed expedited discovery to support of their motion. *Cf. Nolen v. Nat'l R.R. Passenger Corp.*, No. 85 C 6778, 1987 WL 12915, at *1 (N.D. Ill. June 23, 1987) (prejudice from certifying a class that would "require expensive and time-consuming new discovery").

Courts have frequently granted leave to amend to add class allegations, and granted class certification, at far more advanced stages of litigation.  *See, e.g.*, *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2021 WL 3667979, at *2, 7 (S.D.N.Y. Aug. 17, 2021) (granting a motion for "leave to file a third amended complaint to add class allegations" that was filed more than three and a half years after the initial complaint); *Nissou-Rabban v. Cap. One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1143–45 (S.D. Cal. 2018) (granting leave to amend to add class allegations more than one year after the filing of the original complaint and eight months after the deadline in the court's scheduling order for adding new parties had passed, noting that the class allegations were based on intervening discovery); *Spencer v. Simpson*, No. 1:18-CV-643,

2020 WL 6597285, at *1–2 (W.D. Mich. Aug. 17, 2020), *report & recommendation adopted sub nom. Spencer v. Mich. Dep't of Corr.*, No. 1:18-CV-643, 2020 WL 5757382 (W.D. Mich. Sept. 28, 2020) (indicating that "the Court granted Plaintiff leave to file a second amended complaint . . . adding class allegations," as well as new claims and defendants, more than a year and a half after the original complaint was filed). Plaintiffs' request in this case comes much earlier than in comparable cases where amendment and class certification was granted, and it comes with no prejudice to Defendants.

For these reasons, the Court should grant Plaintiffs leave to amend their Complaint for the limited purpose of adding class allegations, and it should certify the case for classwide treatment under Rule 23(b)(2).

## CONCLUSION

The Court should grant Plaintiffs leave to file a Third Amended Complaint for the limited purpose of adding class allegations; grant Plaintiffs' motion for class certification; appoint the individual Plaintiffs Bhattacharya, Hines, Hoft, Kheriaty, and Kulldorff as class representatives and their counsel Vecchione and Burns as class counsel; and certify the two Plaintiff Classes defined in the "Proposed Class Definitions" section above.

Dated: March 20, 2023

ANDREW BAILEY
Attorney General of Missouri

/s/ Charles F. Capps
Joshua M. Divine, Mo. Bar No. 69875*
  Solicitor General
Charles F. Capps, Mo. Bar No. 72734*
  Deputy Solicitor General
Todd A. Scott, Mo. Bar No. 56614*
  Senior Counsel
Kenneth C. Capps, Mo. Bar No. 70908*
  Assistant Attorney General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
charles.capps@ago.mo.gov
Counsel for State of Missouri


/s/ Jenin Younes
Jenin Younes*
John J. Vecchione*
New Civil Liberties Alliance
1225 19th Street N.W., Suite 450
Washington, DC 20036
Direct: (202) 918-6905
E-mail: jenin.younes@ncla.legal
Counsel for Plaintiffs Dr. Jayanta
Bhattacharya,
Dr. Martin Kulldorff, Dr. Aaron Kheriaty,
and Jill Hines


Respectfully submitted,

JEFFREY M. LANDRY
Attorney General of Louisiana

/s/ D. John Sauer
Elizabeth B. Murrill (La #20685)
  Solicitor General
Tracy Short (La #23940)
  Assistant Attorney General
D. John Sauer, Mo. Bar No. 58721*
  Special Assistant Attorney General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana
Tel: (225) 326-6766
murrille@ag.louisiana.gov
Counsel for State of Louisiana


/s/ John C. Burns
John C. Burns
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: 314-329-5040
E-mail: john@burns-law-firm.com
Counsel for Plaintiff Jim Hoft


* admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 20, 2023, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Charles F. Capps*