IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STATE OF LOUISIANA, STATE OF MISSOURI, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Case No. 3:22-cv-01213-TAD |

**SUPPLEMENTAL DECLARATION OF DR. AARON KHERIATY**

1. My name is Dr. Aaron Kheriaty. I am over the age of 18 years and competent to testify to the matters expressed herein.

2. I have previously submitted a Declaration in this case, which is filed with the Court as Doc. 10-7 and Doc. 45-7. That prior Declaration is incorporated by reference herein.

3. In addition to my own experience with censorship on social media, I am also a frequent reader and listener of content that others post on social-media platforms, including others who have suffered federally-induced social-media censorship.

4. I have a strong interest in being able to read and follow the speech and writings that others post on social media. For example, Twitter is an important platform where I connect and stay up-to-date on the work of other scientists, physicians, public health professionals, journalists, and policy experts. This is a forum for sharing studies and other relevant sources of information, engaging in scientific and policy debates, disseminating my

own work and commentary through reposting retweeting, or commenting on the contributions of others. This ongoing open conversation and debate on Twitter and other social media platforms is characteristic of good science and public policy work. Having access to the uncensored views, speech, and opinions of others – both those with whom I agree and others with whom I disagree – is central to my work because it allows my own views to be challenged, augmented, corrected or revised based upon the best available information, analysis, and arguments.

5. I frequently read and listen to the speech and writings on social media of other speakers, writers, and policy analysts whom federal officials have specifically targeted for censorship on social media, such as: Dr. Jay Bhattacharya, Dr. Martin Kulldorff, Alex Berenson, Tucker Carlson, Robert F. Kennedy, Jr., Rizza Islam, Dr. Robert Malone, the New York Post, Michael Yeadon, James O'Keefe, James Woods, Dr. Pierre Kory, Dr. Harvey Risch, Dr. Paul Marik, the Epoch Times, the Great Barrington Declaration, Del Bigtree, Children's Health Defense, Naomi Wolf, Mark Changizi, Michael Senger, Daniel Kotzin, A.J. Kitchen, and Dr. Andrew Bostrom.

6. I also frequently read and listen to the speech and writings on social media of other speakers and writers who speak and write on matters relating to COVID-19 and elections with viewpoints disfavored by federal officials, and have experienced censorship, such as Justin Hart, Dr. Lynn Fynn, Dr. Aseem Malholtra, Dr. Drew Pinsky, Dr. Ryan Cole, Dr. Mary Makary, Dr. Gabe Vorobiof, Dr. Tracy Hoeg, Paul Thacker, The Unity Project, The Brownstone Institute, Bret Weinstein, and Jeffrey Tucker, among others.

7. As I explained in my prior Declaration, I am often forced to engage in self-censorship on social media to avoid severe consequences like de-platforming, suspension,

and receiving strikes. I am aware of others whom I follow on social media engaging in self-censorship out of fear of more severe penalties as well. We discuss this problem frequently when not on social media. For example, many of the above authors resorted routinely to speaking in "code words" or utilizing vague, allusive phrases when referring to topics like covid vaccine-related injuries or side-effects, for fear that these posts would be flagged for censorship. This included highly qualified physicians and scientists speaking from their clinical experience or commenting on published data. Federally induced censorship thus prevents me from having access to those speakers' and writers' frank and uncensored speech, thoughts, opinions, and ideas.

8. Among the adverse effects of this pervasive censorship of covid topics and other topics on social media, the government was able to project the false impression of a scientific consensus on favored covid policies – from lockdowns and school closures to vaccine mandates and vaccine passports, among others – where in fact no such consensus existed. Instead, one side of the debate on these policies was suppressed by aggressive government-sponsored censorship. When challenging some of these policies on social media, I and other doctors, scientists, and policy analysts were then falsely characterized as holding a minority opinion that few others shared. This was said in attempts to discredit our opinions, even when those opinions managed to make it through the censorship "filters".

9. Widespread social media censorship thus created a self-reinforcing feedback loop – an echo chamber that failed to accurately represent the opinions and judgments of highly credible and qualified voices on issues of enormous public consequence.

10. This case is of great interest to me. I have been closely monitoring it since my involvement with it began, I am familiar with the facts and legal theories in the case, and I communicate regularly with my counsel about the case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed On:  March 9, 2023  　　　　　　　　*/s/ Aaron Kheriaty*
　　　　　　　　　　　　　　　　　　　　　Dr. Aaron Kheriaty