# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **STATE OF MISSOURI ET AL.** | **CIVIL ACTION NO. 3:22-cv-01213-TAD** |
| **VERSUS** | **JUDGE:  TERRY A. DOUGHTY** |
| **JOSEPH R. BIDEN ET AL.** | **MAG. JUDGE: KAYLA D. MCCLUSKY** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PROPOSED BRIEF *AMICUS CURIAE* OF CHILDREN'S HEALTH DEFENSE
## IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………………… i

TABLE OF AUTHORITIES …………………………………………………………… ii

INTERESTS OF *AMICUS CURIAE* ………………………………………………… 1

OVERVIEW …………………………………………………………………………….. 1

I.  THE COURT MAY WISH TO CONSIDER A NARROWER INJUNCTION THAN THE INJUNCTION REQUESTED BY PLAINTIFFS……………………………………………... 3

II. THE STATE ACTION DOCTRINE IS SATISFIED HERE, BUT STATE ACTION DOCTRINE DOES NOT PROVIDE THE EXCLUSIVE TEST OF CONSTITUTIONALITY APPLICABLE TO THIS CASE……………………………………………………………. 6

      A. Under controlling Supreme Court authority, the government's censorship campaign is unconstitutional in its entirety, including communications that do not coerce or meet any other state action test …………………………………………………………….. 7

      B. The state action tests such as coercion and joint action are also inapplicable here because the government's censorship campaign is overtly viewpoint-discriminatory…. 10

      C. To the extent that state action tests are relevant here, Supreme Court authority dictates that the statutory immunity granted by Section 230 weighs heavily in favor of a finding that the state action line has been crossed………………………………………………. 12

CONCLUSION……………………………………………………………………. 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. C.L. Union of Ohio Found., Inc. v. Ashbrook,*
   375 F.3d 484 (6th Cir. 2004) ................................................................. 5

*Associated Press v. United States,*
   326 U.S. 1 (1945) ................................................................................... 2

*Biden v. Knight First Amend. Inst. at Columbia Univ.,*
   141 S. Ct. 1220 (2021) .......................................................................... 8

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
   531 U.S. 288 (2001) .............................................................................. 6

*CBS, Inc. v. FCC,*
   453 U.S. 367 (1981) .............................................................................. 2

*Columbia Broad. Sys., Inc. v. Democratic Nat. Comm.,*
   412 U.S. 94 (1973) ................................................................................ 4

*Davis v. East Baton Rouge Parish School Bd.,*
   78 F.3d 920 (5th Cir. 1996) ................................................................... 1

*Garcetti v. Ceballos,*
   547 U.S. 410 (2006) .............................................................................. 4

*Iancu v. Brunetti,*
   139 S. Ct. 2294 (2019) ........................................................................ 11

*Kass v. City of New York,*
   864 F.3d 200 (2d Cir. 2017) .................................................................. 1

*Legal Servs. Corp. v. Velazquez,*
   531 U.S. 533 (2001) ............................................................................ 11

*NAACP v. Hunt,*
   891 F.2d 1555 (11th Cir. 1990) ............................................................. 4

*Norwood v. Harrison,*
   413 U.S. 455 (1973) ..................................................................... 7, 9, 10

*O'Handley v. Weber,*
   __ F.4th ____, No. 22-15071, 2023 U.S. App. LEXIS 57291145 (9th. Cir. Mar. 10, 2023) ..... 9

*Pleasant Grove City, Utah v. Summum,*
   555 U.S. 460 (2009) .............................................................................. 4

*Prantil v. Arkema, Inc.*,
  986 F.3d 570 (5th Cir. 2021) ......................................................................... 6

*Pruitt v. Pernell*,
  360 F. Supp. 2d 738 (E.D.N.C. 2005) ........................................................... 10

*Richard v. City of Harahan*,
  6 F. Supp. 2d 565 (E.D. La. 1998) ............................................................... 10

*Santa Fe Indep. Sch. Dist. v. Doe*,
  530 U.S. 290 (2000) ..................................................................................... 4

*Skinner v. Ry. Lab. Executives' Ass'n*,
  489 U.S. 602 (1989) ..................................................................................... 12

*Specht v. Jensen*,
  832 F.2d 1516 (10th Cir. 1987) .................................................................... 10

*Texas Div., Sons of Confederate Veterans, Inc. v. Vandergriff*,
  759 F.3d 388 (5th Cir. 2014) ........................................................................ 5

*United States v. Davis*,
  482 F.2d 893 (9th Cir. 1973) ........................................................................ 8

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748
  (1976) ......................................................................................................... 1

*Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) ..................................................................................... 1

*Vista-Graphics, Inc. v. Virginia Dep't of Transportation*,
  682 F. App'x 231 (4th Cir. 2017) ................................................................. 5

*Watts v. Northside Indep. Sch. Dist.*,
  37 F.4th 1094 (5th Cir. 2022) ....................................................................... 7

## Statutes and Bills

47 U.S.C. § 230(c)(2)(A) .................................................................................. 12, 13

## Other Authorities

Jake Gibson & Adam Sabes, *FBI responds to Twitter Files disclosures, says it didn't request
  'any action' on specific tweets*, FOX News (Dec. 21, 2022) .................................... 14

Kelly Hooper, *Mayorkas cites misinformation about Homeland Security's disinformation board*, Politico (Aug. 5, 2022) ........................................................................................... 14

Pls. Mot. Prelim. Inj., *Missouri v. Biden*, No. 3:22-cv-01213, 2023 U.S. Dist. LEXIS 46918 (W.D. La.), ECF No. 10 ................................................................................................ 3

Pls. Proposed Findings of Fact, *Missouri v. Biden*, No. 3:22-cv-01213, 2023 U.S. Dist. LEXIS 46918 (W.D. La), ECF No. 214-1 ................................................................. 6, 12, 13

The White House, *Press Briefing by Press Secretary Jen Psaki*, April 25, 2022 ....................... 12

U.S. House of Representatives, Committee on the Judiciary, *The Weaponization of the Federal Trade Commission: An Agency's Overreach To Harass Elon Musk's Twitter*, Mar. 7, 2023 . 14

Zolan Kanno-Youngs & Cecilia Kang, *They're Killing People: Biden Denounces Social Media for Virus Disinformation*, N.Y. Times (July 16, 2021) ............................................. 12

**BRIEF *AMICUS CURIAE* OF CHILDREN'S HEALTH DEFENSE**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## INTERESTS OF *AMICUS CURIAE*

CHILDREN'S HEALTH DEFENSE ("CHD") is a nonprofit organization dedicated to protecting Americans' civil liberties and informing the public of, and fighting against, various threats to children's health. CHD has over seventy thousand members nationwide, including numerous members who reside in Louisiana and in this District. For their own health, for the health of their children, and in their capacity as citizens, CHD's members have a constitutional right to receive information and ideas from willing speakers, undistorted by government censorship, in the "modern public square." *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) ("Social media . . . websites . . . [are] the modern public square."). That right has been systematically violated by the Federal Government's massive, multi-agency, highly successful campaign to induce social media companies to censor constitutionally protected speech.[1]

## OVERVIEW

The First Amendment protects not only the right to speak, but the "***right to receive information and ideas***." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 757 (1976) (emphasis added) (citation omitted); *Davis v. East Baton Rouge Parish School Bd.*, 78 F.3d 920, 926 (5th Cir. 1996) ("[T]he First Amendment protects the . . . right to receive protected speech."); *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017) (citations omitted) (First Amendment "extends not only to the right to speak, but also to the right to listen and receive information").

---

[1] CHD is also a plaintiff in a closely related case currently pending before this Court and has a strong interest in the outcome here for that reason as well.

Thus this case involves more than the rights of individuals censored online.  The true victims of the government's censorship campaign are the American people, especially the tens of millions of Americans who, like most of CHD's members, access news through social media platforms and whose right to "receive information and ideas" has been systematically violated. Indeed, in a case like this one, "it is the right of the viewers and listeners . . . which is paramount," since it "is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *CBS, Inc. v. FCC*, 453 U.S. 367, 395 (1981) (emphasis added) (citation omitted); *see also Associated Press v. United States*, 326 U.S. 1, 20 (1945) ("the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public").

The details of the Federal Government's censorship campaign are powerfully laid out in plaintiffs' filings, and need no repetition here.  Instead, in hope of aiding this Court's deliberations and strengthening the case for preliminary relief, CHD respectfully submits this amicus brief: (1) to propose a ***narrower injunction*** than that asked for by the plaintiffs; and (2) to ***clarify the applicable legal tests***.  To summarize:

**Narrower injunction**.  Plaintiffs have asked the Court to enjoin Defendants from taking "any steps" to urge or otherwise induce social-media companies to censor any "content." (*See* Point I *infra*.) This request is understandable given the astonishing breadth of the Federal Government's censorship campaign, but Defendants will undoubtedly object that so broad an order would: (a) ***violate their own First Amendment rights to express their views***; and (b) prevent them from taking action against ***genuinely criminal online content***.  To avoid these defense arguments, CHD will offer the Court a narrower injunctive alternative: enjoining Defendants from engaging, ***pursuant to their official duties***, in ***private communications with***

*social media companies* with the purpose of inducing those companies censor *constitutionally protected* speech. This narrower injunction would completely answer both objections. (*See id*.)

**Applicable Legal Tests**. Defendants are certain to argue that they never engaged in the kind of coercion or collusion that can turn private companies into state actors. This claim is false as a matter of fact, but as CHD Plaintiffs will show below, it is also legally irrelevant because *state action doctrine does not govern this case*. On the contrary, under clear and controlling Supreme Court authority, Defendants violate the Constitution every time they privately communicate with social-media companies with the purpose of inducing, encouraging, or promoting censorship of protected speech, *even when those communications do not coerce or collude or satisfy any other state action test*. (*See* Point II *infra*.)

## I.  THE COURT MAY WISH TO CONSIDER A NARROWER INJUNCTION THAN THE INJUNCTION REQUESTED BY PLAINTIFFS

Missouri, Louisiana and the other plaintiffs in this case have asked the Court to preliminarily enjoin Defendants from "taking any steps to demand, urge, pressure, or otherwise induce any social-media company . . . to censor . . . content." Pls. Mot. Prelim. Inj., *Missouri v. Biden*, No. 3:22-cv-01213 (W.D. La.), ECF No. 10, at 2. That request is understandable, but Defendants will without doubt argue that such an order would: (a) violate *their own First Amendment rights* to express their views and opinions; and (b) prevent the Government from alerting social media companies to the existence of *genuinely criminal online content* and asking those companies to remove such content.

Whatever the ultimate merits of such arguments, the Court can at this stage of the proceedings issue a narrower injunction that would avoid them entirely. Specifically, the Court may wish to consider enjoining Defendants from *engaging, __pursuant to their official duties,__ in*

*__private communications__ with any social media company with the purpose of inducing, encouraging, or promoting the censorship of __constitutionally protected__ speech.*

This narrower preliminary injunction will, first of all, obviate any claim that the Court is entrenching on Defendants' free speech rights.  When governmental agents, pursuant to their official duties, conduct private communications with social media companies, they are ***not*** engaging in protected First Amendment speech.  "[W]hen public employees ***make statements pursuant to their official duties***, the employees are ***not speaking as citizens for First Amendment purposes***."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (emphasis added). Rather, they are engaging in ***government speech***, and although government actors and their counsel often forget this fact, it is well established that "***government speech itself is not protected***" by the First Amendment.  *NAACP v. Hunt*, 891 F.2d 1555, 1565 (11th Cir. 1990) (emphasis added) (citation omitted) ("The First Amendment protects citizens' speech only from government regulation; government speech itself is not protected by the First Amendment.").  As the Supreme Court has stated, there is a "crucial difference between ***government speech***" and "***private speech . . ., which the Free Speech and Free Exercise Clauses protect***." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 302 (2000) (emphasis added); *see also, e.g.*, *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) ("[T]he Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."); *Columbia Broad. Sys., Inc. v. Democratic Nat. Comm.*, 412 U.S. 94, 139 & n.7 (1973) (Stewart, J., concurring) ("The First Amendment protects the press from governmental interference; ***it confers no analogous protection on the Government***.") (emphasis added).

So long as this Court's preliminary injunction is limited to government speech, there can be no claim that it violates Defendants' First Amendment rights.  "[I]f we conclude that the

speech in this case is government speech, the analysis ends because there has been no First Amendment violation—in fact, ***the First Amendment would not even apply***." *Texas Div., Sons of Confederate Veterans, Inc. v. Vandergriff*, 759 F.3d 388, 393 (5th Cir. 2014) (emphasis added) (citation omitted), *rev'd on other grounds*, 576 U.S. 200 (2015). *See also, e.g.*, *Am. C.L. Union of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 490 n.4 (6th Cir. 2004) (rejecting judge's First Amendment claims because posters placed by judge on courtroom wall were not "***private*** religious expression protected by the Free Speech Clause," but rather unprotected "***government speech***") (emphasis added); *Vista-Graphics, Inc. v. Virginia Dep't of Transportation*, 682 F. App'x 231, 237 (4th Cir. 2017) ("[G]overnment speech [is] not subject to protection under the Free Speech Clause").

Accordingly, an injunction limited to non-public, pursuant-to-official-duty communications between government agents and social media companies will not impinge in any way on Defendants' free speech rights.  It would not, for example, restrict the ability of the President to publicly state his opinion that the American people should not be permitted to say or see certain information or viewpoints online or that social media companies should deny Americans access to those information and viewpoints.  Instead, such an injunction will apply only to government speech, which is unprotected by the First Amendment.

Moreover, an injunction directed solely at censorship of ***constitutionally protected*** speech will defang any claim Defendants may make that the government has a right and duty to ask social media companies to remove genuinely criminal (or otherwise illegal) content.  The Court can avoid that argument completely by limiting its preliminary injunction solely to government efforts to censor constitutionally protected speech.

Finally, an injunction directed solely at **private communications** with social media companies is more **specific** than enjoining Defendants from "**taking any steps**" to induce content removal on social media.  Particularly if this case proceeds as a class action, Fifth Circuit case law will put a premium on the specificity of proposed injunctive relief, *see e.g.*, *Prantil v. Arkema, Inc.*, 986 F.3d 570, 580-81 (5th Cir. 2021) (reversing class certification where proposed injunction insufficiently "specific"), and Defendants might well contend, for example, that the broad injunction proposed by plaintiffs would interfere with their statutory and constitutional authority to seek or enact new rules restricting illegal online content.  The narrower injunction proposed here would have no such effect and will, if accepted, insulate the Court's order from challenge under the Fifth Circuit's requirement of injunctive specificity.

## II.  STATE ACTION DOCTRINE IS SATISFIED HERE,<br>BUT STATE ACTION DOCTRINE DOES NOT PROVIDE THE EXCLUSIVE<br>TEST OF CONSTITUTIONALITY APPLICABLE TO THIS CASE

The facts before the Court prove in copious detail that Defendants have repeatedly applied coercive pressure on, and colluded with, social media companies so as to turn those companies' censorship decisions into unconstitutional state action.[2]  Plaintiffs have convincingly made these arguments already, and CHD will not repeat them.

Against these arguments, however, Defendants are certain to contend that their communications with social media companies have *not* crossed any state action lines—i.e., that

---

[2] As this Court is well aware, private party conduct can become state action when (among other tests) it is "coerced" by the government or the product of collusive "joint activity" with the government.  *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 297 (2001); *Missouri v. Biden*, 2023 U.S. Dist. LEXIS 46918, at *80-81.  And as the evidence before the Court in *Missouri* proves, Defendants have repeatedly crossed these lines.  *See, e.g.*, Pls. Proposed Findings of Fact, *Missouri v. Biden*, ECF No. 214-1, at ¶¶ 1-30 (coercive threats), ¶¶ 34-122 (close joint censorship activity between White House and social-media companies). On this ground alone, there is a substantial likelihood that that Plaintiffs will succeed on their claim that Defendants' censorship campaign has been unconstitutional.

many (or perhaps most, or perhaps even all) of their communications with social media companies were mere "requests," which did not amount to coercion or joint action or meet the criteria of any other state action test.  Indeed, Defendants are likely to attempt to make that argument the central issue in this entire case.

Therefore, to assist the Court in its deliberations, Plaintiffs here clarify the applicable law and show that under controlling Supreme Court authority, the Government's censorship campaign is unconstitutional *regardless* of whether the Government's communications to social media companies amount to coercion or joint action or meet any other state action test.

> ### A.  Under controlling Supreme Court authority, the government's censorship campaign is unconstitutional in its entirety, including communications that do not coerce or meet any other state action test.

A half century ago, in *Norwood v. Harrison*, 413 U.S. 455, 465 (1973), the Supreme Court reaffirmed what the Justices called an "axiomatic" principle of constitutional law.  The Court set forth this principle categorically, without qualification or dissent.  The "axiomatic" principle was this: government "*may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish*."  *Norwood*, 413 U.S. at 465 (emphasis added) (citation omitted); *see Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1097 (5th Cir. 2022) ("[I]t is also axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish.") (quoting *Norwood*).

The *Norwood* principle is axiomatic because, without it, government actors could evade nearly every prohibition in the Bill of Rights through the simple expedient of asking and encouraging private parties to do what the Constitution bars the government from doing directly. Police could ask a bystander to search the trunk of a car they cannot constitutionally search

themselves.  The FBI could offer rewards to private hackers who break into a suspect's computer and send the government all the suspect's emails.  "Constitutional limitations on governmental action would be severely undercut if the government were allowed to actively encourage conduct by 'private' persons or entities that is prohibited to the government itself."  *United States v. Davis*, 482 F.2d 893, 904 (9th Cir. 1973). The *Norwood* principle fully applies to the First Amendment.  As Justice Thomas recently put it, the government acts unconstitutionally when it "induces [a private entity] to take action the government itself would not be permitted to do, such as censor expression of a lawful viewpoint."  *Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220, 1226 (2021) (Thomas, J., concurring).

Critically, the *Norwood* principle is **not tethered to state action doctrine**; it can be violated by government conduct that **would not turn a private party's conduct into state action**. In *Norwood* itself, for example, the Court enjoined Mississippi's policy of providing free textbooks to whites-only private schools.  *See Norwood*, 413 U.S. at 466.   **No claim was made or could have been made that merely by providing such textbooks, Mississippi had turned the private schools into state actors.**  No claim was made or could have been made that Mississippi was **coercing** private schools to discriminate or that, under state action doctrine, its textbook-provision program turned the private schools into "**joint actors**" with the government. Nevertheless, the Court ruled Mississippi's policy unconstitutional—and did so without any reference to state action doctrine—because it is "axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish."  *Id*. at 465.

Thus the *Norwood* test is not limited by the well-known state action tests.  *Norwood* uses language markedly different from the language of state action doctrine ("induce, encourage, or

promote" as opposed to "coerce," "conspire," "nexus," and so on), because *Norwood* is addressed to different circumstances and to a different category of cases.

Where plaintiffs allege that a private party's conduct amounted to state action, a court must decide if it is dealing with "one of the exceptional cases" in which the state action doctrine is satisfied—i.e., in which the government involved itself so closely in private conduct that the latter can be attributed to the government. *See, e.g.*, *O'Handley v. Weber*, 62 F.4th 1145, 1155-56 (9th. Cir. Mar. 10, 2023)  ("Determining whether this is one of the exceptional cases in which a private entity will be treated as a state actor for constitutional purposes requires us to grapple with the state action doctrine."). Such a determination typically turns on whether the government's conduct crossed the line into coercion, conspiracy, or one of the other familiar state action categories.  *See id.*

By contrast, *Norwood* addresses cases where, as here, suit is brought ***against governmental actors*** to enjoin those actors from attempting to ***assist, encourage or facilitate*** private parties ***to accomplish something the Constitution forbids***.  *Norwood* is especially applicable to cases where, again as here, government agents knowingly and deliberately seek to evade clearly established constitutional rights by asking private parties to do a job that the Constitution prohibits the government from doing directly. In such cases, the state action tests like coercion and conspiracy do not set the limits of what the government is barred from doing or of what the Court may enjoin.  Rather, under the express language of *Norwood*, plaintiffs need only show that the government is engaging in a deliberate effort to "***encourage***" private parties "to accomplish what it is constitutionally forbidden to accomplish."

This rule is well established and routinely applied in cases—for example, search and seizure cases—of deliberate government efforts to circumvent constitutional rights by having

private parties do the job. "'When a government official affirmatively *facilitates or encourages* an unreasonable search performed by a private person, a constitutional violation occurs.'" *Richard v. City of Harahan*, 6 F. Supp. 2d 565, 573 (E.D. La. 1998) (emphasis added) (quoting *Specht v. Jensen*, 832 F.2d 1516, 1523 (10th Cir. 1987), *judgment but not opinion vacated on other grounds*, 853 F.2d 805 (10th Cir. 1988)); *Pruitt v. Pernell*, 360 F. Supp. 2d 738, 746 (E.D.N.C. 2005) ("[I]t is also well settled that state actors must not affirmatively *facilitate or encourage* an unreasonable search by a private person.") (emphasis added) (citations omitted).

Under *Norwood*, the entirety of the Federal Government's censorship campaign is unconstitutional, because that campaign was and is one gigantic effort to "induce, encourage, and promote" social media companies to do what the government itself cannot constitutionally do—censor protected speech. *Norwood* makes irrelevant any argument that some (or many, or even all) of Defendants' censorship-requesting communications were not coercive and/or do not prove joint action. Every such communication nonetheless "encourage[d]," "promote[d]," and sought to "induce" social media censorship and is therefore unconstitutional.

Thus even when merely "requesting" social media companies to block protected speech, the Federal Government's censorship campaign violates the *Norwood* test. It was and is a systematic, deliberate effort to "induce, encourage, and promote" censorship of protected speech by private parties. Accordingly, the Court can and should enjoin that censorship campaign, regardless of whether Defendants are coercing, colluding, or satisfying any other state action test.

> **B. The state action tests such as coercion and joint action are also inapplicable here because the government's censorship campaign is overtly viewpoint-discriminatory.**

There is another reason why the existence of coercion, joint activity, or any other state-action trigger is irrelevant here: because the government's censorship campaign is overtly

viewpoint-discriminatory.  Clearly the White House could not launch a government-wide, multi-agency campaign asking—simply asking, not coercing or colluding with—social media companies to censor all speech supporting Republican political candidates.  Such a blatantly viewpoint-discriminatory campaign would be per se unconstitutional, regardless of its non-coerciveness and indeed regardless of whether it succeeded or failed.  But the current Administration is doing just that: conducting a government-wide, multi-agency campaign that asks social media companies to suppress speech based on its viewpoint.

As the Supreme Court has held, it is:

> a core postulate of free speech law [that] government may not discriminate against speech based on the ideas or opinions it conveys.  *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995) (explaining that viewpoint discrimination is an "egregious form of content discrimination" and is "presumptively unconstitutional").

*Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019).  Because viewpoint discrimination is the most egregious violation of the First Amendment, it is barred not only when government coerces or conspires with private actors, but also when government merely *offers benefits* to them.  *See, e.g.*, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 549 (2001) (striking down denial of benefits to private parties where such denial was "aimed at the suppression of ideas").

Here, the Government's massive, multi-agency censorship campaign plainly offers significant benefits to social-media companies—for example, avoiding adverse regulatory action, remaining in the Administration's good graces, and receiving millions of dollars in payments in connection with reporting certain users and certain content to the FBI.[3]  Accordingly, because the Government's censorship campaign is blatantly viewpoint-discriminatory, and offers benefits

---

[3] *See, e.g.*, https://twitter.com/ShellenbergerMD/status/1604908670063906817 (internal Twitter email admitting that Twitter received $3,415,323 from the FBI from October 2019 through February 2021 for handling FBI disclosure requests).

to social-media companies that comply, it is unconstitutional and enjoinable in its entirety, regardless of whether it amounted to coercion or otherwise meets the criteria of the traditional state action tests.

> ### C.   To the extent that state action tests are relevant here, Supreme Court authority dictates that the statutory immunity granted by Section 230 weighs heavily in favor of a finding that the state action line has been crossed.

To the extent state action tests are deemed relevant in this case, the famous Section 230, which immunizes social-media companies from liability if they censor "objectionable" speech even if that speech is "constitutionally protected," 47 U.S.C. § 230(c)(2)(A), weighs heavily in favor of a finding of state action here.

In *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602 (1989), the Supreme Court held that a federal regulation granting immunity to railroads if they performed certain specified employee drug and alcohol tests, turned those tests into state action where that immunity was coupled with other indicia of government "encouragement," including the government's communicating its "strong preference" for the tests to be performed and its interest in "shar[ing] the fruits" of those tests. *Id.* at 615-16. Even though the tests were "permissive," not mandatory, and hence remained a voluntary choice by the railroad companies, the combination of immunity plus encouragement turned those tests into state action. *Id*.

The instant case is analogous to *Skinner* but even stronger. Here too, but much more so than in *Skinner*, the Government has communicated to social media companies the government's "strong preference" for those companies to censor speech disfavored by the government.[4]

---

[4] To take just one of countless examples, on July 16, 2021, President Biden accused social-media companies of "killing people" by failing to censor certain COVID-related speech. Pls. Proposed Findings of Fact, *supra*, ¶ 27; Zolan Kanno-Youngs & Cecilia Kang, *They're Killing People: Biden Denounces Social Media for Virus Disinformation*, N.Y. Times (July 16, 2021), https://www.nytimes.com/2021/07/16/us/politics/biden-facebook-social-media-covid.html.

Indeed, the Government has excoriated social-media companies that do not censor more aggressively and has repeatedly threatened to hold them and their chief executive officers "accountable" if they do not.[5]  And just as the Federal Government in *Skinner* told the railroads exactly what tests it wanted them to perform, so here the Federal Government tells social-media companies exactly what speech, viewpoints and speakers it wants them to censor.[6]  Moreover, as in *Skinner*, the Government seeks to "share[s] the fruits" of social media content-moderation operations by asking (and paying for) social-media companies to report to the FBI information gathered about users who post disfavored content.[7]  Finally, like the immunizing regulation in *Skinner*, Section 230 protects social-media companies from state law liability if they comply with the government's requests.  47 U.S.C. § 230(c)(2)(A).

Thus under *Skinner*, the combination of these factors militates decisively in favor of a finding that the Government's censorship campaign has crossed the state action line.

## <u>CONCLUSION</u>

For the reasons stated above, CHD respectfully asks this Court to enjoin Defendants (and anyone acting in concert with them) from engaging, in their official capacities, in any private communications with social-media companies with the purpose of inducing, encouraging, or promoting the censorship of constitutionally protected speech.

---

[5] *See, e.g.*, The White House, *Press Briefing by Press Secretary Jen Psaki*, April 25, 2022, https://www.whitehouse.gov/briefing-room/press-briefings/2022/04/25/press-briefing-by-press-secretary-jen-psaki-april-25-2022/; Proposed Findings of Fact, *supra*, ¶¶ 6, 8, 9, 14, 16, 18 (threatening to hold "accountable").

[6] *See, e.g.*, Proposed Findings of Fact, *supra*, ¶¶ 94 (White House demanding censorship of Tucker Carlson), 119 (White House commanding Facebook: "Do not distribute or amplify vaccine hesitancy, and Facebook should end group recommendations for groups with a history of COVID-19 or vaccine misinformation.").

[7] *See supra* note 3.

Respectfully submitted,

Dated: April 25, 2023

/s/ G. Shelly Maturin, II

_____
G. SHELLY MATURIN, II
(La. Bar # 26994)
Maturin Law
322 Heymann Blvd., Suite 1
Lafayette, LA 70503
Telephone: (337) 362-3514
E-mail: shelly@maturinlaw.com

Attorney for
ROBERT F. KENNEDY, JR.
CHILDREN'S HEALTH DEFENSE
CONNIE SOMPAGNARO
Plaintiffs in *Kennedy v. Biden*,
No. 3:23-cv-00381

JED RUBENFELD
(NY Bar # 2214104)
(pro hac vice forthcoming)
1031 Forest Rd.
New Haven CT 06515
Tel.:203-432-7631
E-mail: jed.rubenfeld@yale.edu

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been filed with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all attorneys of record.   Respectfully submitted on this the __ day of April, 2023.


/s/ G. Shelly Maturin, II
_____
G. SHELLY MATURIN, II

15