# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

STATE OF MISSOURI ET AL        CIVIL ACTION NO. 3:22-cv-1213

VERSUS        JUDGE TERRY A. DOUGHTY

JOSEPH R BIDEN JR ET AL        MAG. JUDGE KAYLA D. MCCLUSKY

## <u>MEMORANDUM RULING ON MOTION TO STAY</u>

Before the Court is a Motion to Stay Preliminary Injunction Pending Appeal and Alternatively, for Administrate Stay [Doc. No. 297] ("Motion to Stay") filed by Defendants.[1] An Opposition [Doc. No. 299] was filed by Plaintiffs.[2]

For the reasons set forth herein, Defendants' Motion to Stay is **DENIED**.

## I. BACKGROUND

On July 4, 2023, this Court issued a Preliminary Injunction against the Defendants,[3] which prohibited the Defendants from contacting social-media companies and taking specific actions for the purpose of urging, encouraging, pressuring, or inducing in any manner, the removal, deletion,

---

[1] Defendants consist of  President Joseph R Biden ("President Biden"), Jr, Karine Jean-Pierre ("Jean-Pierre"), Vivek H Murthy ("Murthy"), Xavier Becerra ("Becerra"), Dept of Health & Human Services ("HHS"), Dr. Hugh Auchincloss ("Auchincloss"),  National Institute of Allergy & Infectious Diseases ("NIAID"), Centers for Disease Control & Prevention ("CDC"),  Alejandro Mayorkas ("Mayorkas"), Dept of Homeland Security ("DHS"),  Jen Easterly ("Easterly"), Cybersecurity & Infrastructure Security Agency ("CISA"), Carol Crawford ("Crawford"), United States Census Bureau ("Census Bureau"), U. S. Dept of Commerce ("Commerce"), Robert Silvers ("Silvers"), Samantha Vinograd ("Vinograd"), Ali Zaidi ("Zaidi"), Rob Flaherty ("Flaherty"), Dori Salcido ("Salcido"), Stuart F. Delery ("Delery"),  Aisha Shah ("Shah"),  Sarah Beran ("Beran"),  Mina Hsiang ("Hsiang"), U. S. Dept of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), Laura Dehmlow ("Dehmlow"), Elvis M. Chan ("Chan"), Jay Dempsey ("Dempsey"),  Kate Galatas ("Galatas"), Katharine Dealy ("Dealy"), Yolanda Byrd ("Byrd"), Christy Choi ("Choi"), Ashley Morse ("Morse"), Joshua Peck ("Peck"), Kym Wyman ("Wyman"), Lauren Protentis ("Protentis"), Geoffrey Hale ("Hale"), Allison Snell ("Snell"), Brian Scully ("Scully"), Jennifer Shopkorn ("Shopkorn"), U. S. Food & Drug Administration ("FDA"), Erica Jefferson ("Jefferson"), Michael Murray ("Murray"), Brad Kimberly ("Kimberly"), U. S. Dept of State ("State"), Leah Bray ("Bray"), Alexis Frisbie ("Frisbie"), Daniel Kimmage ("Kimmage"), U. S. Dept of Treasury ("Treasury"), Wally Adeyemo ("Adeyemo"), U. S. Election Assistance Commission ("EAC"),  Steven Frid ("Frid"), and Kristen Muthig ("Muthig").

[2] Plaintiffs consist of the State of Missouri, the State of Louisiana, Dr. Aaron Kheriaty ("Kheriaty"), Dr. Martin Kulldorff ("Kulldorff"), Jim Hoft ("Hoft"), Dr. Jayanta Bhattacharya ("Bhattacharya"), and Jill Hines ("Hines").

[3] [Doc. No. 294]

suppression, or reduction of content containing protected free speech posted on social-media platforms.[4] The Judgment defined "protected free speech" as "speech that is protected by the Free Speech Clause of the First Amendment to the United States Constitution in accordance with the jurisprudence of the United States Supreme Court, Courts of Appeal and District Courts."[5]

Defendants filed a Notice of Appeal[6] on July 5, 2023. On July 6, 2023, Defendants filed the instant Motion to Stay.[7] In the Motion to Stay, Defendants seek to have the Court Stay the Preliminary Injunction pending appeal, or alternatively to administratively stay the preliminary injunction for seven days.

The Defendants allege that they face irreparable harm with each day the injunction remains in effect, because the injunction's broad scope and ambiguous terms may be read to prevent the Defendants from engaging in a vast range of lawful and responsible conduct, including speaking on matters of public concern, and working with social-media companies on initiatives to prevent grave harm to the American people and the Country's various democratic processes.

## II.    LAW AND ANALYSIS

In determining whether to grant a stay pending appeal, a court is to consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent  a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009). In evaluating these factors, courts have refused to apply them in a rigid or mechanical fashion. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983).

---

[4] [Id.]
[5] [Id. at 4, n. 3]
[6] [Doc. No. 296]
[7] [Doc. No. 297]

### A.      Success on the Merits

For all the reasons set forth in the Memorandum Ruling,[8] this Court finds the Plaintiffs have shown a likelihood of success on the merits and, therefore, that Defendants have failed to show a likelihood of success on the merits. As discussed in detail in the Memorandum Ruling, all of the Defendants likely "significantly encouraged" and/or "jointly participated" with the social-media companies to engage in viewpoint-based suppression of protected free speech. Additionally, the White House Defendants[9] and the Surgeon General Defendants[10] were found to have likely engaged in coercion of social-media companies.

The following are a few examples of actions taken by Defendants that demonstrate they are unlikely to succeed on the merits.

### 1.      White House Defendants

(a)      On January 23, 2021, White House Digital Director for COVID-19 Response Team Clarke Humphrey emailed Twitter and requested the removal of an anti-COVID-19 vaccine tweet by Robert F. Kennedy, Jr.[11]

(b)      On April 14, 2021, White House Deputy Assistant to the President and Director of Digital Strategy Rob Flaherty ("Flaherty") demanded censorship by Facebook of a video of Fox News hosts Tucker Carlson and Tomi Lahren where Tucker Carlson was saying COVID-19 vaccines don't work and Tomi Lahren was saying she won't take a COVID-19 vaccine.[12] Flaherty demanded immediate answers from Facebook on April 16, 2021, in relation to the video, and on

---

[8] [Doc. No. 294]
[9] White House Defendants consist of President Joseph R. Biden ("President Biden"), White House Press Secretary Karine Jean-Pierre ("Jean-Pierre"), Ashley Morse ("Morse"), Deputy Assistant to the President and Director of Digital Strategy Rob Flaherty ("Flaherty"), Dori Salcido ("Salcido"), Aisha Shah ("Shah"), Sarah Beran ("Beran"), Stuart F. Delery ("Delery"), Mina Hsiang ("Hsiang"), and Dr. Hugh Auchincloss (Dr. Auchincloss")
[10] Surgeon General Defendants consists of Dr. Vivek H. Murthy ("Murthy") and Katharine Dealy ("Dealy").
[11] [Doc. No. 293 at 9]
[12] [Doc. No. 293 at 16]

April 21, 2021, despite not violating Facebook's policies, Facebook gave the video a 50% reduction for seven days and stated it would continue to demote the video.[13]

### 2.   Surgeon General Defendants

(a)   Senior Advisor to the Surgeon General Eric Waldo ("Waldo") testified that Surgeon General Dr. Vivek H. Murthy ("Murthy") used his office to advocate for social-media platforms to take stronger actions against "health misinformation," which involved putting pressure on social-media platforms to reduce the dissemination of health misinformation. That message was given to social-media platforms both publicly and privately.[14]

(b)   In addition to public statements, Murthy had meetings with social-media companies, called health misinformation "poison," and called for social-media companies to do more to control the reach of health disinformation. When Murthy was calling posts "health disinformation," he was referring to anti-vaccine posts.[15]

### 3.   CDC Defendants[16]

(a)   The CDC Defendants consistently had regular contact with social-media platforms via email, phone, and in-person meetings. The CDC Defendants received CrowdTangle reports from Facebook as to the "top engaged COVID and vaccine related content.[17]

(b)   The CDC Defendants provided PowerPoint slide decks to Facebook, which provided examples of misinformation topics and made recommendations to Facebook as to whether claims were true or false. Some of the items designated as false by the CDC Defendants

---

[13] [Doc. No. 297 at 17-18]
[14] [Doc. No. 293 at 28]
[15] [Doc. No. 293 at 31-33]
[16] The CDC Defendants consist of the Centers for Disease Control & Prevention, Carol Crawford ("Crawford"), Jay Dempsey ("Dempsey"), Kate Galatas ("Galatas"), United States Census Bureau ("Census Bureau"), Jennifer Shopkorn ("Shopkorn"), the Department of Health and Human Services ("HHS"), Xavier Becerra ("Becerra"), Yolanda Byrd ("Byrd"), Christy Choi ("Choi"), Ashley Morse ("Morse"), and Joshua Peck ("Peck").
[17] [Doc. No. 293 at 39]

included medically debatable topics such as whether COVID-19 had a 99.96% survival rate, whether COVID-19 vaccines weaken the immune system, and the safety of COVID-19 vaccines.[18]

### 4.    NIAID Defendants[19]

(a)    Dr. Francis Collins sent an email to Dr. Anthony Fauci on October 8, 2020, which stated that the Great Barrington Declaration[20] needed to have a "quick and devastating take-down."[21]

(b)    Dr. Fauci sent back information to "debunk" The Great Barrington Declaration and both Dr. Collins and Dr. Fauci followed up with a series of public media statements attacking the Great Barrington Declaration. Thereafter the Great Barrington Declaration was censored by social-media platforms.[22]

### 5.    FBI Defendants[23]

(a)    The FBI Defendants, along with numerous social-media platforms, CISA, and the Department of Homeland Security, met consistently at Industry Meetings. The Industry Meetings were used by the FBI Defendants and others to discuss election disinformation.[24]

(b)    Prior to the 2020 Presidential election, the FBI repeatedly warned social-media companies to be alert for "hack and dump" or "hack and leak" operations. The Hunter Biden laptop story was published by the Washington Post on October 14, 2020. After being asked by Facebook whether the Hunter Biden laptop story was Russian disinformation, the FBI's Laura Dehmlow

---

[18] [Doc. No. 293 at 41-44]
[19] The NIAD Defendants consist of the National Institute of Allergy and Infectious Disease and Dr. Hugh Auchincloss ("Dr. Auchincloss").
[20] [Doc. No. 293 at 55]
[21] The Great Barrington Declaration is a one-page treatise opposing the reliance of lockdowns, criticized social distancing, and expressed concerns about physical and mental health impacts of lockdowns.
[22] [Doc. No. 293 at 54]
[23] FBI Defendants include Elvis Chan ("Chan"), the Federal Bureau of Investigation ("FBI"), Lauren Dehmlow ("Dehmlow"), and the U.S. Department of Justice ("DOJ").
[24] [Doc. No. 293 at 54]

refused to comment, leading Facebook to suppress the story. The FBI had had the laptop since December of 2019, and knew that the story was not Russian disinformation.[25]

### 6. CISA Defendants[26]

(a)     The CISA Defendants regularly met with social-media platforms at several types of meetings. At those meetings, disinformation was discussed as well as reports about social-media companies' changes to censorship policies.[27] CISA had five sets of recurring meetings with social-media platforms that involved discussions of misinformation, disinformation, and/or censorship of protected free speech on social media.[28]

(b)     The CISA Defendants collaborated with the Election Integrity Partnership, working with them in a "switchboarding" operation which reported alleged election misinformation to social-media companies. The alleged election misinformation included claims that "mail-in voting is insecure" and "theories about election fraud are hard to discount."[29]

(c)     CISA Director Jen Easterly views the word "infrastructure" expressively to include our "cognitive infrastructure," which deals with the way people acquire knowledge and understanding.[30]

### 7. State Department Defendants[31]

(a)     The State Department Defendants worked closely and collaborated with the Election Integrity Partnership and the Virality Project, who forwarded alleged election

---

[25] [Doc. No. 293 at 61-63]
[26] CISA Defendants consist of the Cybersecurity and Infrastructure Security Agency ("CISA"), Jen Easterly ("Easterly"), Kim Wyman ("Wyman"), Lauren Protentis ("Protentis"), Geoffrey Hale ("Hale"), Allison Snell ("Snell"), Brian Scully ("Scully"), the Department of Homeland Security ("DHS"), Alejandro Mayorkas ("Mayorkas"), Robert Silvers ("Silvers"), and Samantha Vinograd ("Vinograd").
[27] [Doc. No. 293 at 68-69]
[28] [Doc. No. 293 at 75]
[29] [Doc. No. 293 at 70-74]
[30] [Doc. No. 293 at 77]
[31] The State Department Defendants consist of the United States Department of State, Leah Bray ("Bray"), Daniel Kimmage ("Kimmage'), and Alex Frisbie ("Frisbie").

misinformation and COVID-19 misinformation to social-media companies.[32] The alleged misinformation related to content by American citizens. The alleged disinformation primarily involved social media posts which delegitimized election results,[33] and posts which involved anti-vaccine content by such personalities as Alex Berenson, Candace Owens, Tucker Carlson, and John F. Kennedy, Jr.[34]

(b)     The Election Integrity Partnership was designed "to get around unclear legal authorities, including very real First Amendment questions" that would arise if government agencies were to monitor and flag information for censorship on social media.[35]

**B.     Standing**

Defendants further argue that they will prevail as to establishing that Plaintiffs lack Article III standing. For the reasons set forth previously in the Memorandum Ruling[36] this Court found all of the Plaintiffs are likely to establish all elements of Article III standing. Defendants argue the States of Missouri and Louisiana do not have *parens patriae* standing to bring a claim against the Federal Government. This Court disagrees. In *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007), the United States Supreme Court concluded that *Massachusetts* had standing to sue the E.P.A. to protect its *quasi-sovereign* interests. The court clarified that because *Massachusetts* sought to assert its rights under federal law, rather than challenge the federal law's application for its citizens, the *State of Massachusetts* had standing. Like *Massachusetts*, the States of Missouri and Louisiana are asserting their rights under the First Amendment to the United States Constitution, and also asserting rights under each Plaintiff States' own constitution. The Plaintiff States are likely to

---

[32] [Doc. No. 293 at 79-81]
[33] [Doc. No. 293 at 81]
[34] [Doc. No. 293 at 86]
[35] [Doc. No. 293 at 73].
[36] [Doc. No. 293 at 119-139] (see also [Doc. No. 214] (Memorandum Ruling Denying Defendants' Motion to Dismiss))

prevail on their standing argument because they have adequately alleged (and provided evidence supporting) injuries to their *quasi-sovereign* interest as well as direct censorship injuries on social-media.

There are also individual Plaintiffs in this case. Only one Plaintiff with standing is required to be able to maintain this suit. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Defendants argue that the individual Plaintiffs' standing have not shown "irreparable harm." The individual Plaintiffs' standing analysis is set forth in the Memorandum Ruling.[37] The "irreparable harm" element was also specifically discussed in the Memorandum Ruling.[38] Violation of a First Amendment Constitutional right, even for a short period of time, is always irreparable injury. *Elrod v. Burns*., 427 U.S. 347 (1976). Accordingly, for the reasons set forth previously, the Plaintiffs have shown there is a substantial risk that future harm is likely to occur and that they are likely to satisfy the requirements of Article III standing.

C.     **Public Interest and Harm**

Defendants further maintain they will be irreparably injured absent a stay, and that the balance of the equities weighs heavily in the Defendants' favor of granting a stay. Again, this Court disagrees. As discussed in the Memorandum Ruling,[39] the First Amendment free speech rights of Plaintiffs by far outweighs the Defendants' interests.

Defendants argue that the injunction may be read to prevent the Defendants from engaging in a vast range of lawful conduct—including speaking on matters of public concern and working with social-media companies on initiatives to prevent grave harm to the American people and our democratic processes. However, the Preliminary Injunction only prohibits what the Defendants

---

[37] [Id. at 126-135]
[38] [Id. at 139-140]
[39] [Id. at 144-45]

have no right to do—urging, encouraging, pressuring, or inducing in any manner the removal, deletion, suppression, or reduction of content containing protected free speech on social-media platforms. The Defendants provide no argument that they are legally allowed to take such action. The Defendants are asking the Court to grant them relief to a Preliminary Injunction that only bars illegal conduct. In other words, the only effect of staying the Preliminary Injunction would be to free Defendants to urge, encourage, pressure, or induce the removal, deletion, suppression, or reduction of content containing protected free speech on social-media platforms.

The Preliminary Injunction also has several exceptions which list things that are **NOT** prohibited. The Preliminary Injunction allows Defendants to exercise permissible public government speech promoting government policies or views on matters of public concern, to inform social-media companies of postings involving criminal activity, criminal conspiracies, national security threats, extortion, other threats, criminal efforts to suppress voting, providing illegal campaign contributions, cyber-attacks against election infrastructure, foreign attempts to influence elections, threats against the public safety or security of the United States, postings intending to mislead voters about voting requirements, procedures, preventing or mitigating malicious cyber activity, and to inform social-media companies about speech not protected by the First Amendment.

 Defendants cite no specific action that would be prohibited by this Preliminary Injunction that would provide grave harm to the American people or over democratic processes. In fact, in opposition to the Motion for Preliminary Injunction, Defendants submitted five Declarations[40] that addressed Defendants' concerns. Every one of these concerns was addressed in the Preliminary

---

[40] Leah Bray [Doc. No. 226-6  at 198-296] (foreign propaganda); Larissa Knapp [Doc. No. 266-6 at 448-47] (crimes, threats, national security threats); Brandon Wales [Doc. No. 266-6 at 553-572] (malicious cyber activity); Max Lesko [Doc. No. 266-4 at 130-178] (commission of public health issues); and Carol Crawford [Doc. No. 266-5 at 67-77] (public health information)

Injunction  exceptions. An enjoined party must identify a specific concern that the injunction will prohibit. *Regal Knitwear Co. v. N.L.R.B.*, 65 S. Ct. 478, 482 (1945). Defendants have failed to do so. Therefore, the Defendants would not be irreparably harmed, and the balance of equities and harm weighs in favor of Plaintiffs, not Defendants.

### D.      Specificity of Preliminary Injunction

Additionally, Defendants argue that the Preliminary Injunction is sweeping in scope and vague in its terms.[41] A Preliminary Injunction must describe in reasonable detail the act or acts restrained or required. FED. R. CIV. P. 65.  An ordinary person reading the Court's order must be able to ascertain from the document itself exactly what conduct is proscribed or prohibited. *Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022). Defendants argue that both the prohibited conduct and the conduct that is not prohibited is vague.

Defendants first argue the definition of "protected free speech" is vague because it refers to jurisprudence of the United States Supreme Court, The United States Courts of Appeal, and United States District Courts. Defendants question whether an agency official would be required to research the laws of every federal court to determine what is "protected free speech."

In order to clarify the definition of "protected free speech" in the Preliminary Injunction, this Court will modify the definition of "protected free speech" in n. 3 to read as follows:

> "Protected free speech" means speech which is protected by the Free Speech Clause of the First Amendment to the United States Constitution in accordance with the jurisprudence of the United States Supreme Court.

Although general "obey the law" injunctions are normally too vague to form the basis of an injunction, language in an injunction to prohibit future violations of a statute will be upheld when it relates to the type of acts the Defendants are alleged to have committed. *NLRB. V. Express*

---

[41] [Doc. No. 297-1 at 3]

*Pub. Co.*, 61 S. Ct. 693, 699 (1941); *Interstate Commerce Commission v. Keeshin Motor Exp. Co.*, 134 F.2d 228, 231, (7th Cir. 1943) cert. den. 64 S. Ct. 38 ( 1943).

The Preliminary Injunction at issue prohibits the Defendants from taking the described actions with social-media companies as to "protected free speech," which is defined by jurisprudence of the United States Supreme Court. The actions prohibited are the type of actions the Defendants are alleged to have committed. Therefore, the reference to United States Supreme Court jurisprudence is not vague. Defendant officials can be and should be trained to recognize what speech is protected and what speech is not prior to working with social-media companies to suppress or delete postings. Additionally, the exceptions to the Free Speech Clause of the First Amendment are "well-defined and narrowly limited classes of speech." *United States v. Stevens*, 559 U.S. 460, 468-69 (2010).

Defendants further argue that the exemption in the Preliminary Injunction, which allows the Government to exercise permissible government speech promoting government policies or views on matters of public concern, is vague in light of references in the Memorandum Ruling to government speech by the White House Defendants and the Surgeon General Defendants.[42] It is clear that the Preliminary Injunction does not prohibit government speech. The portion of the Memorandum Ruling addressing Defendants' government speech argument[43] clearly notes that the government speech was not a First Amendment violation. Rather, it was the use of government agencies and employees to coerce and/or significantly encourage social-media platforms to suppress free speech on their platforms. Therefore, the government speech exception in the Preliminary Injunction is not ambiguous or vague.

---

[42] [Doc. No. 294 at 6]
[43] [Doc. No. 293 at 118-119].

Defendants further allege that the injunction is not clear what entities or individuals are covered because the Preliminary Injunction names entire agencies which are composed of many sub-components. Defendants noted that the Preliminary Injunction did not enjoin the Food and Drug Administration ("FDA") but enjoined the Department of Health and Human Services, of whom the FDA is a part.

The Motion for Preliminary Injunction is clearly denied as to the FDA, along with the other entities specifically noted. FED. R. CIV. P. Rule 65 not only prohibits the party Defendants, but also those identified with them in interest, in priority with them, represented by them, or subject to their control. *Regal Knitwear Co. v. N.L.R.B.*, 65 S. Ct. 478, 481 (1945). An injunctive order also binds the party's officers, agents, servants, employees, attorneys, and those persons in active concert with them who receive actual notice of the order. *U.S. v. Hall*, 472 F.2d 261, 267, (5th Cir. 1972). FED R. CIV. P. Rule 65(d) specifically allows an agency's officers, agents, servants, employees, and attorneys to be bound. Therefore, the Preliminary Injunction is not vague or ambiguous as to the entities or individuals who are covered. If Defendants' interpretation was accepted, an agency could simply instruct a sub-agency to perform the prohibited acts and avoid the consequences of an injunction.

## III.  CONCLUSION

Plaintiffs are likely to prove that all of the enjoined Defendants coerced, significantly encouraged, and/or jointly participated social-media companies to suppress social-media posts by American citizens that expressed opinions that were anti-COVID-19 vaccines, anti-COVID-19 lockdowns, posts that delegitimized or questioned the results of the 2020 election, and other content not subject to any exception to the First Amendment. These items are protected free speech

and were seemingly censored because of the viewpoints they expressed. Viewpoint discrimination is subject to strict scrutiny.

Although this Preliminary Injunction involves numerous agencies, it is not as broad as it appears. It only prohibits something the Defendants have no legal right to do—contacting social-media companies for the purpose of urging, encouraging, pressuring, or inducing in any manner, the removal, deletion, suppression, or reduction of content containing protected free speech posted on social-media platforms. It also contains numerous exceptions.

Therefore, for the reasons set forth herein,

The Defendants' Motion to Stay [Doc. No. 297] is **DENIED**.

**MONROE, LOUISIANA**, this 10th day of July 2023.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**