# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **ROBERT F. KENNEDY, JR. ET AL.,** | **CASE NO. 23-cv-0381 (CONSOLIDATED)** |
| | **CIVIL ACTION NO. 22-cv-01213 (LEAD)** |
| **v.** | |
| | **JUDGE: TERRY A. DOUGHTY** |
| **JOSEPH R. BIDEN, ET AL.,** | **MAG. JUDGE: KAYLA D. McCLUSKY** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF

## THIRD-PARTY PLATFORM DISCOVERY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# TABLE OF CONTENTS

**Page #**

TABLE OF AUTHORITIES ................................................................................................3

OVERVIEW ....................................................................................................................7

PROCEDURAL AND DISCOVERY HISTORY ...............................................................9

    A.    *Missouri v. Biden* ...............................................................................9

    B.    *Kennedy v. Biden* ............................................................................10

    C.    Platform Discovery Has Largely Not Yet Taken Place ..........................11

ARGUMENT .................................................................................................................14

    A.    Legal Standards Applicable to this Motion ......................................14

        1. Breadth and Burden .....................................................................15

        2. Purpose of Requested Discovery ....................................................16

        3. Discovery Will Remain Critical No Matter How the Court Rules in *Murthy* .. 22

CONCLUSION ...............................................................................................................25

CERTIFICATE OF COMPLIANCE ...............................................................................27

CERTIFICATE OF SERVICE ........................................................................................28

# TABLE OF AUTHORITIES

**Federal Cases**

*Combat Zone Corp. v. John/Jane Does 1-2*,
    Civ. No. 2:12-CV-00509, 2012 U.S. Dist. LEXIS 180841 (E.D. Tex. Dec. 21, 2012)...........14

*Kennedy v. Biden*,
    No. 3:23-CV-00381, 2024 U.S. Dist. LEXIS 26751 (W.D. La. Feb. 14, 2024)
    ..................................................................................................................10, 11, 19, 21, 24

*Missouri v. Biden*,
    83 F.4th 350 (5th Cir. 2023) ................................................................8, 11, 19, 21

*Missouri v. Biden*,
    No. 3:22-CV-01213, 2022 U.S. Dist. LEXIS 131135 (W.D. La. July 12, 2022)..........9, 11, 14

*Missouri v. Biden*,
    No. 3:22-CV-01213, 2022 U.S. Dist. LEXIS 235143 (W.D. La. Oct. 21, 2022).....................9

*Missouri v. Biden*,
    No. 3:22-CV-01213, 2023 U.S. Dist. LEXIS 114585 (W.D. La. July 4, 2023).................9, 21

*Missouri v. Biden*,
    No. 3:22-CV-01213, 2023 U.S. Dist. LEXIS 127620 (W.D. La. July 24, 2023).............10, 25

*Murthy v. Missouri*,
    144 S. Ct. 32 (2023)...........................................................................................8

*Murthy v. Missouri*,
    144 S. Ct. 7 (2023)..........................................................................................8, 9

*Netflix, Inc v. Babin*,
    88 F.4th 1080 (5th Cir. 2023) ..............................................................................17

*Pod-Ners, LLC v. N. Feed & Bean*,
    204 F.R.D. 675 (D. Colo. 2002) ............................................................................8

*Satanic Temple, Inc. v. Tex. Health & Hum. Serv. Comm'n*,
    79 F.4th 512 (5th Cir. 2023) ............................................................................9, 24

*Soileau v. GPS Marine, LLC*,
    No. 20-484, 2020 U.S. Dist. LEXIS 87581 (E.D. La. May 18, 2020)....................................14

*Strike 3 Holdings, LLC v. Doe*,
    No. 4:21-CV-243-SDJ, 2021 U.S. Dist. LEXIS 232195 (E.D. Tex. Dec. 3, 2021)................14

*United States v. Curtis*,
635 F.3d 704 (5th Cir. 2011) ............................................................................20

**United States Constitution**

First Amendment ..................................................................................7, 9, 10, 23, 24

**Federal Rules of Civil Procedure**

Rule 19 ..................................................................................................................22
Rule 20 ..................................................................................................................22
Rule 26(d) ..........................................................................................................7, 14
Rule 26(d)(1) ........................................................................................................14
Rule 26(f) ..............................................................................................................14
Rule 42 ..................................................................................................................10
Rule 45 ....................................................................................................................7

**Practice Guides**

8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
PROCEDURE § 2046.1 (3d ed. 2011) ..................................................................14

**Online Sources**

A partnership against global health threats, GLOBAL HEALTH SECURITY AGENDA,
https://ghsagenda.org/ ........................................................................................16

*AXIOS on HBO: Mark Zuckerberg on Misinformation* [Video], HBO,
https://www.youtube.com/watch?v=E5yyInwI7tw (last visited Nov. 12, 2020)....................21

David Uberti, "EU-U.S. Data Privacy Talks Enter Second Year With No Timeline
for Resolution," *The Wall Street Journal*, July 21, 2021, available at
https://www.wsj.com/articles/eu-u-s-data-privacy-talks-enter-second-year-
with-no-timeline-for-resolution-11626859800 ..................................................17

Executive Order 13747 of November 4, 2016, Advancing the Global Health
Security Agenda To Achieve a world Safe and Secure From Infectious
Disease Threats, Presidential Documents, FEDERAL REGISTER, Vol. 81, No.
217, https://www.govinfo.gov/content/pkg/FR-2016-11-09/pdf/2016-
27171.pdf ............................................................................................................16

*FACT SHEET: President Biden Signs Executive Order to Implement the
European Union-U.S. Data Privacy Framework*, THE WHITE HOUSE (Oct. 7,
2022), https://www.whitehouse.gov/briefing-room/statements-
releases/2022/10/07/fact-sheet-president-biden-signs-executive-order-to-
implement-the-european-union-u-s-data-privacy-framework/; ........................17

*FACT SHEET: United States and European Commission Announce Trans-Atlantic Data Privacy Framework*, THE WHITE HOUSE (Mar. 25, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/25/fact-sheet-united-states-and-european-commission-announce-trans-atlantic-data-privacy-framework/ .................................................................17

Gabriela Pariseau and Michael Morris, "Google Revs Up Election Interference Gambit Before GOP Primary Debate, Buries Republicans" *Media Research Center Free Speech America,* Aug. 24, 2023, available at: https://www.newsbusters.org/blogs/free-speech/gabriela-pariseau/2023/08/24/google-revs-election-interference-gambit-gop-primary .......................23

House of Representatives Judiciary Committee, *Chairman Jim Jordan Subpoenas Big Tech Executives*, Feb. 15, 2023, https://judiciary.house.gov/media/press-releases/chairman-jim-jordan-subpoenas-big-tech-executives .................................................15

*Infectious Disease Initiative*, CHAN ZUCKERBERG BIOHUB, https://www.czbiohub.org/projects/ infectious-disease/ (last visited Aug. 15, 2020) ............................................................................................................21

Letter dated Feb. 15, 2023 from Rep. Jordan to CEO Mark Zuckerberg transmitting subpoena, available at: https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2023-02-15-jdj-to-zuckerberg-meta.pdf?_gl=1*1rd0niq*_ga*NzAwMjA5MTE1LjE3MTM5MDAxMzI.*_ga_1818 ZEQW81*MTcxMzkwMDEzMi4xLjAuMTcxMzkwMDEzMi4wLjAuMA .......................12

Netchoice amicus brief in *Murthy*, 23-411 filed Dec. 21, 2023, available at: https://www.supremecourt.gov/DocketPDF/23/23-411/293958/20231221095300230_231219a%20AC%20Brief%20for%20efiling.pdf ...........22

Rep. Jim Jordan (@Jim_Jordan), TWITTER (Aug. 3, 2023, 11:00 AM), https://tinyurl.com/4kjvehbb ("The Facebook Files Part 3") .................................................13

Rep. Jim Jordan (@Jim_Jordan), TWITTER (Aug. 7, 2023, 10:11 AM), https://tinyurl.com/yebawzjr ("The Facebook Files Part 4") .................................................13

Rep. Jim Jordan (@Jim_Jordan), TWITTER (Dec. 1, 2023, 11:26 AM), https://twitter.com/Jim_Jordan/status/1730669728002142706 ("The Youtube Files Part 2) .................................................................................................................13

Rep. Jim Jordan (@Jim_Jordan), TWITTER (July 28, 2023, 12:03 PM), https://tinyurl.com/3z5npf92 ("The Facebook Files Part 2") .................................................13

Rep. Jim Jordan (@Jim_Jordan), TWITTER (Nov. 30, 2023, 5:44 AM), https://twitter.com/Jim_Jordan/status/1730221179632226337 ("The Youtube Files Part 1) .................................................................................................................13

Rep. Jim Jordan (@Jim_Jordan, TWITTER (July 27, 2023, 12:03 PM),
       https://tinyurl.com/5nz8sn3b ("The Facebook Files Part 1") .................................................13

Robert F. Kennedy, Jr. Testimony Before House Select Subcommittee on the
       Weaponization of the Federal Government, July 20, 2023,
       https://www.congress.gov/118/meeting/house/116258/witnesses/HHRG-118-
       FD00-Wstate-KennedyR- 20230720.pdf ................................................................................23

Sam Shechner, et al.,"U.S. Rewrites Digital Privacy Rules for Europeans to Keep
       Data Flowing," *The Wall Street Journal*, Oct. 7, 2022, available at
       https://www.wsj.com/articles/u-s-rewrites-digital-privacy-rules-for-europeans-
       to-keep-data-flowing-11665151210 (last accessed April 18, 2024).......................................18

*The Chan Zuckerberg Biohub: Seeking to Cure All Diseases*, BIOLEGEND BLOG,
       https://www.biolegend.com/ja-jp/blog/the-chan-zuckerberg-biohub-seeking-
       to-cure-all-diseases (last visited Aug. 15, 2020)....................................................................21

# OVERVIEW

This is the *Kennedy* Plaintiffs'[1] (the "Plaintiffs") first discovery request, and it is both narrow and pivotal. Plaintiffs do not here ask for further discovery from these Federal Government Defendants. Rather, Plaintiffs seek discovery under Fed. R. Civ. P. 26(d) and 45 solely from the two preeminent social media companies – Alphabet, Inc., which owns Google and YouTube; and Meta Platforms, Inc. which owns Facebook and Instagram (collectively, the "Platforms") – with whom the Government communicated in its effort to suppress speech, and Plaintiffs seek only documents – not depositions – related to those communications.[2] Such discovery has ***not*** yet taken place in this case and is not available from any other source. Nor will it be overly burdensome for the Platforms to respond to this discovery request, because the request primarily seeks documents already collected by the Platforms in response to a congressional subpoena.

Most important, as explained below, the documents sought are critical to this case and will remain critical no matter how the Supreme Court rules in the recently-argued *Murthy v. Missouri,* No. 23-411 (captioned *Missouri v. Biden* in the District Court and Fifth Circuit). For example, the requested discovery is critical to show that there was an actual "meeting of the minds" between the Defendants and the Platforms to knowingly violate Plaintiffs' (and their putative class members') First Amendment rights such that a finding of conspiracy-based state

---

[1] The "*Kennedy* Plaintiffs" are Robert F. Kennedy, Jr., an independent candidate for President, Children's Health Defense ("CHD"), a national non-profit organization, and Connie Sampognaro, a Louisiana citizen, suing on behalf of themselves and others similarly situated.

[2] The proposed subpoena attachment, attached hereto as Exhibit A, seeks the Platforms' internal emails, texts, and meeting notes, as well as their external emails, texts, and meeting notes with the Defendants related to content moderation – tracking the terms of the already-complied-with congressional subpoenas. On information and belief, the Federal Defendants did not memorialize what was said, or by whom, at their meetings with the Platforms, only the dates on which they occurred, and at times the agenda or presentations made. (Declaration of G. Shelly Maturin, dated Apr. 24, 2024 ("Maturin Dec."), at ¶ 3.)

action liability is compelled in this case. *Cf. Missouri v. Biden*, 83 F.4th 350, 392 n.20 (5th Cir. 2023) (withholding judgment on that issue on a less-than-fully-developed record). Plaintiffs, of course, bear the burden of proof on that issue and have no alternative means other than this discovery to meet it.[3]

Moreover, the requested discovery is also critical to prove what this Court has already found likely – that Defendants coerced and substantially encouraged the Platforms to censor speech – and such proof will remain central to this case regardless of whether the Supreme Court in *Murthy* affirms, does not reach, or reverses this Court's (and the Fifth Circuit's) findings on these points.

While *Kennedy v. Biden* and *Missouri v. Biden* were consolidated in this Court for discovery and trial, the *Kennedy* Plaintiffs were not permitted to intervene in the *Murthy* appeal. *See Murthy v. Missouri*, 144 S. Ct. 32 (2023) (Alito, J., dissenting). Thus, *Kennedy v. Biden* remains firmly within this Court's jurisdiction for discovery purposes and all other purposes. Rather than delaying for several more months or perhaps much longer waiting for *Murthy* to come to its appellate conclusion, Plaintiffs seek minimally-intrusive discovery from the Platforms that will allow this case to move forward expeditiously when the stay in *Murthy* terminates "upon the sending down of the judgment" of the Supreme Court. *Murthy v. Missouri*, 144 S. Ct. 7 (2023). This Court's authorization to proceed with narrowly-tailored discovery at this time will thus avoid months of potential delay in the future, and will also allow *Murthy* itself to move forward more expeditiously should it return to this Court.

---

[3] On information and belief, no formal litigation hold or retention policy requires the Platforms to preserve the records sought. (Maturin Dec. at ¶ 4.) For this reason alone, this motion should be granted. *See, e.g.*, *Pod-Ners, LLC v. N. Feed & Bean*, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing discovery where its object might not be available for later inspection).

On April 12, 2024, Defendants filed a notice of appeal of this Court's February 14, 2024 preliminary injunction order. (23-cv-00381, Doc No. 39.) Nonetheless, this Court retains jurisdiction to move forward with the case on other fronts while that appeal is pending. *See, e.g.*, *Satanic Temple, Inc. v. Tex. Health & Hum. Serv. Comm'n*, 79 F.4th 512, 514 (5th Cir. 2023).

## PROCEDURAL AND DISCOVERY HISTORY

### A. *Missouri v. Biden*

On May 5, 2022, the *Missouri* Plaintiffs filed their complaint, alleging that Defendants "colluded with and/or coerced social media companies to suppress disfavored speakers, viewpoints, and content on social media platforms" in violation of the First Amendment. *See Missouri v. Biden*, No. 3:22-CV-01213, 2022 U.S. Dist. LEXIS 131135, at *2 (W.D. La. July 12, 2022). In June 2022, the *Missouri* Plaintiffs moved for a preliminary injunction and for expedited preliminary injunction-related discovery. (Doc. Nos. 10, 17-18.) On July 12, 2022, the Court issued an order largely granting the discovery request, and on October 21, 2022 authorized depositions in connection therewith. *See Missouri v. Biden*, No. 3:22-CV-01213, 2022 U.S. Dist. LEXIS 235143, at *41 (W.D. La. Oct. 21, 2022). On July 4, 2023, this Court granted a preliminary injunction. *See Missouri v. Biden*, No. 3:22-CV-01213, 2023 U.S. Dist. LEXIS 114585 (W.D. La. July 4, 2023).

On October 20, 2023, the U.S. Supreme Court stayed the July 4, 2023 preliminary injunction in *Missouri*, as modified by the Fifth Circuit, and thereafter granted certiorari. *See Murthy v. Missouri*, 144 S. Ct. 7 (2023). On March 18, 2024, the Court heard oral argument and the matter is *sub judice*.

### B. *Kennedy v. Biden*

On March 24, 2023, the *Kennedy* Plaintiffs filed the instant putative class action against the same Defendants for declaratory and injunctive relief for violation of their First Amendment rights. (23-cv-00381, Doc. No. 1.) On April 1, 2023, the *Kennedy* Plaintiffs moved to consolidate their case with *Missouri v. Biden* for discovery and trial under Rule 42. (22-cv-01213, Doc No. 236.) On April 12, 2023, the *Kennedy* Plaintiffs filed their own motion for preliminary injunction (23-cv-00381, Doc No. 6),[4] which was fully briefed on July 4, 2023 (Doc. Nos. 17, 20), and supplemented on December 21, 2023 (Doc Nos. 29, 30).

On July 24, 2023, this Court ordered consolidation of *Missouri v. Biden* and *Kennedy v. Biden* "for all purposes," including joint discovery, depositions, and trial. *See Missouri v. Biden*, No. 3:22-CV-01213, 2023 U.S. Dist. LEXIS 127620, at *8 (W.D. La. July 24, 2023).

The Court stated:

> Should the granting of the preliminary injunction survive the appeal, this Court anticipates the Plaintiffs will ask the Court to authorize additional discovery. If additional discovery were allowed, consolidation would allow the discovery to be conducted together.

*Id*. at *6. On February 14, 2024, the Court granted the *Kennedy* Plaintiffs' injunctive relief, but stayed that injunction until the Supreme Court decides *Murthy*. *See Kennedy v. Biden*, No. 3:23-CV-00381, 2024 U.S. Dist. LEXIS 26751 (W.D. La. Feb. 14, 2024)

In its memorandum ruling, the Court found that the *Kennedy* Plaintiffs had standing and had demonstrated a likelihood of success on their claims both that Defendants had coerced the Platforms into censoring protected speech and had "jointly participated with social-media platforms to suppress protected free speech" by 'insinuating' themselves into the social-media

---

[4] At that time, the *Kennedy* Plaintiffs asked that their motion be heard with the *Missouri* Plaintiffs' motion, and accordingly deferred their pursuit of other discovery. (23-cv-00381, Doc. No. 6 at 1-2.)

companies' private affairs and blurring the line between public and private action." *Id.* at *23, 25. However, on the present record, the Court did not find an unconstitutional conspiracy between the Platforms and the Defendants.  *Id.* at *25; *cf. Missouri v. Biden*, 83 F.4th at 392 n.20 (affirming findings of likely coercion and significant encouragement while passing "no judgment on any joint actor or conspiracy-based state action theory"). The Court observed in closing that "[t]he Supreme Court decision in *Missouri v Biden* will answer many of the issues raised in this case. Therefore, the stay issued in this case will be automatically lifted on the eleventh (11th) day after the ruling in *Missouri v. Biden* is handed down by the Supreme Court." *Id.* at *31. Defendants have appealed that order. (23-cv-00381, Doc. 39.)

## C.  **Platform Discovery Has Largely Not Yet Taken Place**

In its July 12, 2022 Order, this Court authorized the *Missouri* Plaintiffs to conduct limited third-party discovery of "up to five major social media platforms" to establish "the identity of federal officials communicating with these social media platforms, including the nature and content of those communications."  *Missouri. v. Biden*, No. 3:22-CV-01213, 2022 U.S. Dist. LEXIS 131135, at *16-17 (W.D. La. July 12, 2022). On July 19, 2022, the *Missouri* Plaintiffs filed a Notice of Compliance with that Order with respect to serving third-party subpoenas. (22-cv-01213, Doc. No. 37.) However, on information and belief, the *Missouri* Plaintiffs thereafter reached an agreement with three of those Platforms in which little or no document production, and no depositions would occur, but instead the Platforms would provide the *Missouri* Plaintiffs with the names of federal officials with whom they had communicated. (Maturin Dec. at ¶ 5.)

On October 4, 2023, the *Kennedy* Plaintiffs made a written request to the *Missouri* Plaintiffs for a copy of all third-party platform discovery which they had obtained pursuant to the Court's July 12, 2022 order. All parties agree that requiring the *Kennedy* Plaintiffs to duplicate

previously-completed discovery would be wasteful, delay-producing, and inconsistent with the Court's July 23, 2023 consolidation order.[5] On October 24, 2023, the Missouri Attorney General's Office ("Missouri AG") provided the *Kennedy* Plaintiffs with a very limited set of documents, nearly entirely from LinkedIn. On November 3, 2023, the Missouri AG represented that those were all "the documents [they] received from social-media platforms pursuant to third-party subpoenas in the *Missouri* case," and that Facebook's disclosure of the identity of federal officials was not made in the form of a document but "through multiple emails between counsel embedded in extensive attorney discussions." (Maturin Dec. at ¶ 6.)

Separately, on or about December 14, 2022, the U.S. House of Representatives Committee on the Judiciary subpoenaed internal documents from Alphabet, the parent entity of Google and YouTube, and on or about February 15, 2023 from Meta Platforms, the parent entity of Facebook and Instagram. (Maturin Dec. Exh. B [congressional letter-subpoena]; *see also* Feb. 15, 2023 Letter from Rep. Jordan to CEO Mark Zuckerberg transmitting subpoena, available at: https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2023-02-15-jdj-to-zuckerberg-meta.pdf?_gl=1*1rd0niq*_ga*NzAwMjA5MTE1LjE3MTM5MDAxMzI.*_ga_1818ZEQW81*MTcxMzkwMDEzMi4xLjAuMTcxMzkwMDEzMi4wLjAuMA.) In late July and August, 2023, shortly after this Court's preliminary injunction issued in *Missouri*, Representative Jim Jordan published some of the records obtained thereby on Twitter, and additional records were included as an appendix to the amicus brief which the House Judiciary Committee's majority members

---

[5] In November 2023, following Plaintiffs' agreement to be bound by the existing protective orders in *Missouri* (Doc Nos. 117, 143), the U.S. Department of Justice ("DOJ") produced to Plaintiffs purportedly the same document discovery DOJ had previously produced in *Missouri*. (Maturin Dec. at ¶ 7.)

filed in the *Missouri* appeal.[6] Representative Jordan also made public on Twitter excerpts of other records obtained by congressional subpoena of Alphabet, Inc., the parent entity of Google and YouTube.[7] On information and belief, neither production of third-party platform records in response to congressional subpoena is part of this Court's record in the *Missouri* or *Kennedy* cases. (Maturin Dec. at ¶ 8.)

Thus, nothing sought herein is duplicative of any records thus far obtained by the Parties from the Platforms in the *Missouri* action. The *Kennedy* Plaintiffs' requests track the search-terms of the congressional subpoenas, and thus pose no substantial burden on the Platforms, which have already produced responsive documents in connection with those congressional subpoenas.[8]

---

[6] *See Missouri v. Biden*, Case No. 23-30445 (5th Cir., filed Aug. 7, 2023), Amicus Brief of House Judiciary Committee Majority, Doc. No. 161, and Appendix thereto which contains internal and external Facebook emails, meeting notes, and transcribed interviews; *see also id.* at 15 n.2 (citing Rep. Jim Jordan (@Jim_Jordan), TWITTER (July 27, 2023, 12:03 PM), https://tinyurl.com/5nz8sn3b ("THE FACEBOOK FILES PART 1"); Rep. Jim Jordan (@Jim_Jordan), TWITTER (July 28, 2023, 12:03 PM), https://tinyurl.com/3z5npf92 ("THE FACEBOOK FILES PART 2"); Rep. Jim Jordan (@Jim_Jordan), TWITTER (Aug. 3, 2023, 11:00 AM), https://tinyurl.com/4kjvehbb ("THE FACEBOOK FILES PART 3"); Rep. Jim Jordan (@Jim_Jordan), TWITTER (Aug. 7, 2023, 10:11 AM), https://tinyurl.com/yebawzjr ("THE FACEBOOK FILES PART 4").) These documents were released in redacted form such that most of the Meta participants in the meetings and email-threads are not identifiable. (Maturin Dec. at ¶ 9.)

[7] *See* Rep. Jim Jordan (@Jim_Jordan), TWITTER (Nov. 30, 2023, 5:44 AM), https://twitter.com/Jim_Jordan/status/1730221179632226337 ("THE YOUTUBE FILES PART 1. BIDEN WHITE HOUSE PRESSURED YOUTUBE TO CENSOR AMERICANS"); Rep. Jim Jordan (@Jim_Jordan), TWITTER (Dec. 1, 2023, 11:26 AM), https://twitter.com/Jim_Jordan/status/1730669728002142706 ("THE YOUTUBE FILES PART 2. To appease the Biden White House, Big Tech gave into the federal government's relentless pressure campaign to censor Americans' speech, including true information. YouTube capitulated first; Facebook caved next.").

[8] A copy of the *Kennedy* Plaintiffs' proposed subpoena to the Platforms is attached as Maturin Dec. Exh. A. It tracks the language of the House Judiciary Committee subpoenas with an extended date-range (January 2019 to the date of service), and in its definitions, will specify, as does the congressional subpoena, that that "communications" includes responsive email and text messages, as well as meeting notes and other forms of writing.

## ARGUMENT

### A.  Legal Standards Applicable to this Motion

Rule 26(d)(1) precludes "discovery from any source before the parties have conferred as required by Rule 26(f), *except* [. . .] when authorized by these rules, by stipulation, or *by court order*." Fed. R. Civ. P. 26(d)(1) (emphasis supplied). Here, no Rule 26(f) conference has taken place, and none is currently contemplated by the parties (because of the pendency of the appeal in *Murthy v. Missouri*). Accordingly, the *Kennedy* Plaintiffs seek leave from this Court to conduct pre-conference discovery.

As this Court stated in granting discovery to the *Missouri* Plaintiffs, courts in the Fifth Circuit apply a "good cause" standard when ruling on pre-conference discovery requests. *Missouri v. Biden*, No. 3:22-CV-01213, 2022 U.S. Dist. LEXIS 131135, at *12-13 (W.D. La. July 12, 2022).[9]  The "good cause" analysis encompasses "such factors as the breadth of discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request was made." *Id.* "In a 'good cause' analysis," the Court "examine[s] the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Soileau v. GPS Marine, LLC*, No. 20-484, 2020 U.S. Dist. LEXIS 87581, at *5 (E.D. La. May 18, 2020). Each of these factors weighs in favor of discovery here.

---

[9]  The "good cause" test comports with the majority of district court cases in and outside the Fifth Circuit. *See, e.g.*, *Combat Zone Corp. v. John/Jane Does 1-2*, Civ. No. 2:12-CV-00509, 2012 U.S. Dist. LEXIS 180841 (E.D. Tex. Dec. 21, 2012) (collecting cases); *Strike 3 Holdings, LLC v. Doe*, No. 4:21-CV-243-SDJ (lead case), 2021 U.S. Dist. LEXIS 232195 (E.D. Tex. Dec. 3, 2021); *see also* 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

1. <u>Breadth and Burden</u>

The requested discovery is relatively narrow – no depositions are sought – and will impose no substantial burden on the Platforms, because the Platforms have already done most of the work of document collection in response to congressional subpoenas.  On February 15, 2023, the House of Representatives Judiciary Committee sent subpoenas to Alphabet and Meta (as well as Amazon, Apple,  and Microsoft) requiring production of "documents and communications relating to the federal government's reported collusion with Big Tech to suppress free speech."[10] On information and belief, most of the documents the Platforms produced in response to the 2023 congressional subpoenas have not been made public. (Maturin Dec. at ¶ 8.) The *Kennedy* Plaintiffs' discovery request here tracks the language of those subpoenas with updated date-ranges. As a result, the discovery requested here primarily asks the Platforms to produce documents they have already collected and otherwise prepared for production and to update those productions for an additional brief time period.[11]

Significantly, however, Plaintiffs seek ***up-to-date*** discovery – *i.e.*, Plaintiffs ask for the Platforms' communications with the Government, internal emails/texts and meeting notes up to the present day, which will be essential to show that Defendants' conduct is ongoing and creates a continuing threat of further censorship going forward. As this Court is aware, the *Missouri* Plaintiffs' subpoenas to the Defendants issued on or before July 19, 2022 (22-cv-01213, Doc. No. 37), and thus the Government's response to those subpoenas is nearly two years old.

---

[10] House of Representatives Judiciary Committee, *Chairman Jim Jordan Subpoenas Big Tech Executives*, Feb. 15, 2023, https://judiciary.house.gov/media/press-releases/chairman-jim-jordan-subpoenas-big-tech-executives; Maturin Dec. Ex. B (congressional letter-subpoena).

[11] Plaintiffs' [Proposed] Order grants the Platforms 30 days from the date of service to respond or object to the subpoenas; and 15-days thereafter to meet and confer, and present to this Court by joint statement any unresolved objections as to scope or redaction. The existing protective orders (22-cv-01213, Doc Nos. 117, 143) safeguard against any public release of the Platforms employees' identifying information.

Additionally, Plaintiffs seek an earlier start-date of January 1, 2019, for the discovery based on evidence that both Facebook and YouTube, in self-described "partnership" with the Centers for Disease Control and Prevention's ("CDC") "Vaccinate with Confidence" campaign, and the State Department's implementation of President Obama's Executive Order 13747 (the "Global Health Security Agenda"),[12] undertook a set of adverse actions against CHD's pages and accounts, *e.g.*, demonetization, warning labels, fact-checks, shadow-banning and content demotions beginning in May 2019. (Declaration of Mary S. Holland, dated April 24, 2024 ("Holland Dec.") at ¶¶ 3-6.) This evidence is relevant to show that, *ab initio*, the Platforms' censorship was a product of federal coercion, joint action or conspiracy, not of Meta's independent motives or process.

2. Purpose of Requested Discovery

The purpose of this discovery request is simple: to obtain documents that are critical to this case and will remain critical no matter how the Supreme Court rules in *Murthy*. At present, the Plaintiffs in these actions –  both the *Kennedy* Plaintiffs and the *Missouri* Plaintiffs – are playing with one hand tied behind their backs: Plaintiffs have one side of the crucial communications between the Defendants and the Platforms, but not the other and do not have the Platforms' internal communications. Filling this gap in the record is critical to Plaintiffs' case.

A central issue—perhaps **the** central issue—in this action is whether the Government's communications to the Platforms crossed the constitutional line turning Platform censorship into state action by, for example (1) coercing the Platforms, (2) engaging in joint activity with them,

---

[12] Executive Order 13747 of November 4, 2016, Advancing the Global Health Security Agenda To Achieve a world Safe and Secure From Infectious Disease Threats, Presidential Documents, FEDERAL REGISTER, Vol. 81, No. 217, https://www.govinfo.gov/content/pkg/FR-2016-11-09/pdf/2016-27171.pdf; A partnership against global health threats, GLOBAL HEALTH SECURITY AGENDA, https://ghsagenda.org/.

or (3) conspiring with them. While this Court has already found a likelihood of success on coercion and joint participation, "likely success" is an "obviously lower" standard than "actual success" on the merits. *Netflix, Inc v. Babin,* 88 F.4th 1080, 1096 (5th Cir. 2023). By far the best evidence to prove coercion, joint action, or conspiracy at trial will lie in the Platforms' internal documents showing both what they said *to* the Government <u>and</u> what they said *internally* in reaction to the Government's demands, showing for example their "willful participation" *with* Defendants to censor content in furtherance of their own commercial self-interests. *See e.g.*, Maturin Dec. Exh. C (Nick Clegg[13] July 22, 2021 internal email) ("our current course [] is a recipe for protracted and increasing acrimony.... *Given the bigger fish we have to fry with the Administration — data flows etc — that doesn't seem a great place for us*.") (emphasis supplied).[14] And, "Sheryl [Sandberg, Facebook COO] is keen that we continue to explore some

---

[13] On information and belief, Nick Clegg, a former deputy Prime Minister of the U.K., was then employed as Facebook's Head of Global Governance. (Maturin Dec. at ¶ 10.)

[14] On July 21, 2021, *the day before* Mr. Clegg sounded his "bigger fish to fry" alarm within Meta, *The Wall Street Journal* had reported that "companies' collection, processing and storage of data is raising a growing number of geopolitical questions for governments in the U.S. and elsewhere." Specifically, a recent ruling from the European Court of Justice "created legal uncertainty for companies that share data across borders to provide cloud infrastructure, advertising and other services that drive *billions of dollars* in trade." David Uberti, "EU-U.S. Data Privacy Talks Enter Second Year With No Timeline for Resolution," *The Wall Street Journal*, July 21, 2021, available at https://www.wsj.com/articles/eu-u-s-data-privacy-talks-enter-second-year-with-no-timeline-for-resolution-11626859800 (emphasis supplied) (last accessed April 5, 2024). On March 25, 2022, President Biden announced a new Trans-Atlantic Data Privacy Framework with the European Commission to "enable the continued flow of data that underpins more than *$1 trillion* in cross-border commerce every year." *FACT SHEET: United States and European Commission Announce Trans-Atlantic Data Privacy Framework*, THE WHITE HOUSE (Mar. 25, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/25/fact-sheet-united-states-and-european-commission-announce-trans-atlantic-data-privacy-framework/ (emphasis supplied). On October 7, 2022, President Biden signed an Executive Order to provide "greater legal certainty for companies using Standard Contractual Clauses and Binding Corporate Rules to transfer EU personal data to the United States." *FACT SHEET: President Biden Signs Executive Order to Implement the European Union-U.S. Data Privacy Framework*, THE WHITE HOUSE (Oct. 7, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/10/07/fact-sheet-president-biden-signs-executive-order-to-

moves that we can make to show that we are trying to be responsive to the WH." (Maturin Dec. Exh. C) (Nick Clegg).

The need for such discovery is made even more imperative by the *Murthy* appeal. For example, Defendants have argued strenuously in that appeal that the current record does not demonstrate coercion, and in so arguing they are aided by the fact that while the record contains copious emails written by Defendants to the Platforms, no document production ever took place showing what was said (either by Defendants or by the Platforms' representatives) at their secret meetings with one another[15], or what Platform employees and officers said to one another about those communications, specifically about the level of pressure, threat, or coercion they felt as a result of the Government's demands, or about the Platforms' willful participation in furtherance of their own self-interests ("the bigger fish we have to fry with the Administration"). (Maturin Dec. Exh. C) (Nick Clegg). Snippets of such documents have, however, been publicly released, and they offer strong evidence that filling this gap in the record will furnish irrefutable proof that the Platforms acted in response to governmental coercion. For example, in documents released by Rep. Jim Jordan, one Facebook officer wrote another in a telling email, "Can someone quickly remind me why we were removing not demoting/labeling – claims that COVID is man-made before May?", and received the following response: "Because we were under pressure

---

implement-the-european-union-u-s-data-privacy-framework/; *see also* Sam Shechner, et al.,"U.S. Rewrites Digital Privacy Rules for Europeans to Keep Data Flowing," *The Wall Street Journal*, Oct. 7, 2022, available at https://www.wsj.com/articles/u-s-rewrites-digital-privacy-rules-for-europeans-to-keep-data-flowing-11665151210 (last accessed April 18, 2024). These enormous "data flow"-related revenues were, presumably, the "bigger fish we have to fry" which led Mr. Clegg and Ms. Sanburg at Meta to explore ways to cooperate even more fully with the Government to censor Americans' protected speech.

[15]  Facebook took copious notes of its secret phone calls with the White House and Office of Surgeon General during the Spring of 2021 – while Defendants, it turns out, conspicuously chose not to take any.

from the administration and others to do more and it was part of the 'more' package … We shouldn't have done it." (Maturin Dec. Exh. D [July 14, 2021 Nick Clegg email].)

The same is true of joint action: irrefutable proof may be found—and perhaps can only be found—by supplementing the record with internal Platform documents.

Moreover, as stated above, neither this Court nor the Fifth Circuit has so far found sufficient evidence of a state-action *conspiracy* in this case. *Kennedy*, 2024 U.S. Dist. LEXIS 26751, at *25; *cf. Missouri v. Biden*, 83 F.4th at 392 n.20 (affirming findings of likely coercion and significant encouragement while passing "no judgment on any joint actor or conspiracy-based state action theory"). The limited release to date of the Platforms' internal documents strongly suggests that these documents *in toto* also contain evidence of conspiracy, in at least three respects.[16]

<u>First</u>, currently-released Meta internal records suggest that both parties to the censorship enterprise took steps to conceal their roles from the public, and further, to keep the Federal Defendants from receiving or authoring incriminatory records. For example, in one telling internal email, Bryan Rice, Facebook's product design head wrote to Nick Clegg, its public affairs supervisor, "We aren't responding to Rob's [Flaherty] questions over email." (Maturin Dec. Exh. E [April 17, 2021 Meta internal email].). There is good cause to obtain Facebook's internal call notes of all conversations it had, as well as emails and text messages, with the White

---

[16] Meta's records, subpoenaed by Congress and submitted in excerpts to the Fifth Circuit as part of the *Missouri* proceedings on appeal, include Meta's "call notes" with the White House from March 26, April 5 and 14, and June 15, 2021, and with the Surgeon General's Office on July 16, 2021, as well as internal emails of various dates between March and July 2021. *See* Members of House of Representatives' Amicus Brief in *Missouri,* Case No. 23-30445, Doc. No. 161 at 43-44, Index of Appendix, filed Aug. 7, 2023 (currently unavailable for download on PACER). According to Chairman Jim Jordan, these records were obtained only under threat of holding Meta's CEO Mark Zuckerberg in contempt of Congress. (Maturin Dec. at ¶ 8.) The *Kennedy* Plaintiffs have access only to those documents which Rep. Jordan has publicly released.

House or other Executive Branch officials concerning content-moderation from 2019 through 2024, to show further evidence of mutual concealment, which is in turn evidence of conspiracy. "'[A]cts of concealment done in furtherance of the main . . . objectives of the conspiracy' are circumstantial evidence of the conspiracy's existence." *United States v. Curtis*, 635 F.3d 704, 717 (5th Cir. 2011).

Second, Meta's internal records suggest that officers within the company understood that they were censoring constitutionally-protected speech, and intended to accomplish that illegal objective in exchange for other benefits to the company. For example, one Facebook officer wrote another, "What the WH appears to want us to remove ranges from humor to totally non-violating chatter about vaccines." (Maturin Dec. Exh. F [Meta internal email, July 21, 2021 at 2:13PM].) Further, as discussed *supra*, "…our current course — in effect explaining ourselves more fully, but not shifting on where we draw the lines or on the data we provide …is a recipe for protracted and increasing acrimony... **Given the bigger fish we have to fry with the Administration — data flows etc. — that doesn't seem a great place for us."** (Maturin Dec. Exh. C [Nick Clegg email, July 22, 2021 at 12:20AM].) "… This seems like a political battle that's not fully grounded in facts, and it's frustrating." (Maturin Dec. Exh. G [Meta internal email, July 16, 2021at 8:14PM].) "…There are so many untested assumptions in what the administration is saying recently…not to mention how their definition of 'misinfo' is completely unclear… it also just seems like when the vaccination campaign isn't going as hoped, it's convenient for them to blame us." (Maturin Dec. Exh. G [Meta internal email, July 16, 2021 at 7:32PM].)

Third, evidence exists that other senior corporate officers, including CEO's Mark Zuckerberg (Meta),[17] Sundar Pichai (Google), Susan Wojcicki and Neal Mohan (YouTube) personally participated in, directed, approved or set in motion the Platforms' decisions to "work with" federal actors, modify their algorithms, and censor government-targeted "misinformation," with knowledge of its protected nature. Such evidence tends to show a conspiracy with federal actors at the highest levels of corporate responsibility. It also tends to vitiate any defense of independent motive.

These internal emails – and, presumably there are many more like them to be found at Meta, and Google/YouTube – tend to show that the Platforms conspired with the White House and other Federal Defendants, out of commercial self-interest, with knowledge and intent to censor protected speech, and as a result, that they censored content far in excess of what their internal policies or algorithms otherwise would have led them to do. These records also support the finding this Court has already made that the Platforms' modifications of their terms of service and algorithms were one of the means by which the Federal Defendants accomplished their censorship goals, and did not reflect "independent" motives or processes. *See, e.g.*, *Missouri*, 83 F.4th at 397; *Kennedy*, 2024 U.S. Dist. LEXIS 26751, at \*14; *Missouri*, 2023 U.S.

---

[17]  Mark Zuckerberg, the most prominent among them, is Chairman, CEO and majority shareholder of Meta. While this Court has noted his statement that the threat of antitrust enforcement is an "existential threat," and his communications with Dr. Fauci in March, 2020, asking for "coordination" on COVID-19 messaging, *Missouri*, 2023 U.S. Dist. LEXIS 114585, at \*\* 12, 69-70, this Court has not been informed of Zuckerberg's personal billion-dollar stake in vaccine development through his Chan-Zuckerberg Initiative, or of the high priority he gave to Facebook's partnership with the CDC, even before COVID-19, "to remove clear misinformation about health-related issues that could cause an imminent risk of harm." *See, e.g.*, *Infectious Disease Initiative*, CHAN ZUCKERBERG BIOHUB, https://www.czbiohub.org/projects/ infectious-disease/ (last visited Aug. 15, 2020); *The Chan Zuckerberg Biohub: Seeking to Cure All Diseases*, BIOLEGEND BLOG, https://www.biolegend.com/ja-jp/blog/the-chan-zuckerberg-biohub-seeking-to-cure-all-diseases (last visited Aug. 15, 2020); *AXIOS on HBO: Mark Zuckerberg on Misinformation* [Video], HBO, https://www.youtube.com/watch?v=E5yyInwI7tw (last visited Nov. 12, 2020).

Dist. LEXIS 114585, at *15 (alluding to the Platforms' alterations of algorithms and policies in response to Government coercion or substantial encouragement). These terms of services and algorithms continue in effect to this day and serve as a fig leaf for ongoing state-action censorship. The *Kennedy* Plaintiffs are entitled to obtain the Platforms' internal records to prove that a conspiracy was effectuated at the highest levels of government and corporate leadership.

Proof of the existence of such a conspiracy would be of fundamental importance to this case. First, a showing of conspiracy would automatically trigger a state action finding even in the absence of proof of coercion or other forms of entwinement. Second, co-conspirators are *jointly liable* for the offenses any one of them commits.[18] Hence if such a conspiracy is proven, Plaintiffs may be entitled to injunctive relief directed at the Platforms as well as Defendants. Indeed, complete relief in this case may be available *only* through joinder of the Platforms under Rule 19 or 20, and proof of conspiracy would entitle Plaintiffs to seek such joinder. For this reason, good cause suffices for Plaintiffs to undertake this discovery at this time to inform and support potential motion practice afterwards should the conspiracy allegations be shown.

### 3. Discovery Will Remain Critical No Matter How the Court Rules in *Murthy*

The requested discovery will remain critical to this case no matter whether the Supreme Court affirms, dismisses, or remands in *Murthy*. If the Court affirms, both consolidated cases will become immediately triable, and initiating Platform discovery now will eliminate months of potential delay later. If instead the *Murthy* Court were to dismiss that case on standing grounds,

---

[18] The *Kennedy* Plaintiffs in no way concede that the Platforms would be insulated from liability if they were found only to have been coerced or substantially encouraged to censor protected speech. Rather, that is the position which the Platforms have staked out for themselves, essentially conceding that they can be held liable in cases of "willful" participation. *See, e.g.*, Netchoice amicus brief in *Murthy*, 23-411, at 11-12, filed Dec. 21, 2023, available at: https://www.supremecourt.gov/DocketPDF/23/23-411/293958/20231221095300230_231219 a%20AC%20Brief%20for%20efiling.pdf.

*Kennedy v. Biden* will remain alive, and the requested discovery will remain critical, not only on the merits, but on the issue of standing itself.

The *Kennedy* Plaintiffs' standing is stronger than, and rests on a different footing from, that of the *Missouri* Plaintiffs. In addition to being individually censored, the *Kennedy* Plaintiffs allege the violation of the First Amendment right to listen, and to receive information, held by social media users all over the country. Unlike a claim of individual censorship, the Government's violation of social media users' right to receive information does not depend on proof that any **particular** speaker is likely to be censored in future. It does, however, depend on a showing of **continuing** efforts by Defendants to induce social media censorship of protected speech. Thus if the Supreme Court finds no standing in *Murthy*, the requested discovery – by disclosing up-to-date and ongoing communications between Defendants and the Platforms – will be highly relevant to standing in *Kennedy v. Biden*, because it will be germane to Plaintiffs' showing of a continuing threat of First Amendment injury.

Moreover, CHD continues to suffer concrete and serious First Amendment injury in the form of permanent cancellation of its social media pages and accounts on Alphabet, Inc. and Meta Platforms, Inc. products since August 2021. (Holland Dec. at ¶¶ 7-12.) Mr. Kennedy also suffers ongoing online speech injury in the form of censorship, shadowbanning, or content demotion of his campaign posts and website. (Robert F. Kennedy, Jr. Testimony Before House Select Subcommittee on the Weaponization of the Federal Government, July 20, 2023, https://www.congress.gov/118/meeting/house/116258/witnesses/HHRG-118-FD00-Wstate-KennedyR- 20230720.pdf) (discussing Meta's removal of his accounts in February and July, 2021, and YouTube's removal of his speech, campaign announcement, and interview in March, May and June, 2023); *see also, e.g.,* Gabriela Pariseau and Michael Morris, "Google Revs Up

Election Interference Gambit Before GOP Primary Debate, Buries Republicans" *Media Research Center Free Speech America,* Aug. 24, 2023, available at: https://www.newsbusters.org/blogs/ free-speech/gabriela-pariseau/2023/08/24/google-revs-election-interference-gambit-gop-primary (reporting that searches on Google on Aug. 22, 2024, for the phrase "presidential campaign websites" did not return Mr. Kennedy or his campaign website among the search results, even though he was actively campaigning at that time). There can be no more serious First Amendment issue than censorship of one campaign by the incumbent as the Nation approaches the November 5, 2024 election.

Finally, if the Supreme Court reverses and remands *Murthy* on the ground that a likelihood of success on coercion claim has not been shown, then the requested discovery will be even more obviously pivotal, because it could provide the proof of coercion that the Court deems lacking. In addition, the requested discovery also could provide proof of joint action and/or proof of conspiracy, either of which would suffice to show state action – and acquiring that discovery now will spare all parties months of potential delay if discovery is postponed until after the Supreme Court resolves *Murthy*.

Similarly, the Defendants' filing of a notice of appeal to the Fifth Circuit of the *Kennedy* preliminary injunction*, 2024* U.S. Dist. LEXIS 26751, in no way divests this Court of jurisdiction to move forward with this case on other fronts as, for example, by granting this discovery request, while that appeal is pending. *See, e.g.*, *Satanic Temple, Inc. v. Tex. Health & Hum. Serv. Comm'n*, 79 F.4th at 514. The Defendants will shortly move to hold their appeal in abeyance pending the Supreme Court's disposition of *Murthy*, and they have confirmed through counsel that their abeyance motion is limited to the appeal, not to further proceedings in this Court. (Maturin Dec. at ¶ 11.)

In sum, the requested discovery is narrow in scope and fills a crucial gap in the existing record.  It will impose no burden whatsoever on any party to this case because it is directed solely at third parties, and it is will impose no substantial burden on the Platforms because it tracks the congressional subpoenas to which the Platforms have already responded. Moreover, the requested discovery will remain critical here no matter how the Supreme Court rules in *Murthy*, and granting discovery now will avoid potentially lengthy delays later. The *Kennedy* Plaintiffs are bound by this Court's protective orders, 22-cv-01213, Doc Nos. 117, 143, and cognizant of their reciprocal obligation to share discovery with the *Missouri* Plaintiffs. *See Missouri*, 2023 U.S. Dist. LEXIS 127620, at *5-6 (consolidation order). Thus the request is reasonable in light of all the circumstances and the record as a whole.

## **CONCLUSION**

For all these reasons, the *Kennedy* Plaintiffs respectfully request an Order finding good cause for leave to serve document subpoenas on the record custodians of Alphabet, Inc. and Meta Platforms, Inc. for internal meeting notes, memoranda, and emails/texts, and external communications with federal officials concerning censorship of protected content from January 1, 2019 through the date of service of such subpoenas.

Dated: April 25, 2024

Respectfully submitted,

/s/ G. Shelly Maturin, II

_____

G. SHELLY MATURIN, II
(La. Bar#26994)
Welborn & Hargett
1540 W. Pinhook Road
Lafayette, LA 70503
Telephone: 337-234-5533
E-mail: shelly@wandhlawfirm.com

Attorney for ROBERT F. KENNEDY, JR.
CHILDREN'S HEALTH DEFENSE
CONNIE SOMPAGNARO
Plaintiffs in *Kennedy v. Biden*,
No. 3:23-cv-00381

JED RUBENFELD
(NY Bar # 2214104)
(*pro hac vice* forthcoming)
1031 Forest Road
New Haven CT 06515
Telephone: 203-432-7631
E-mail: jed.rubenfeld@yale.edu

ROGER IAN TEICH
(CA Bar #147076)
(*pro hac vice* forthcoming)
337 Liberty Street
San Francisco, CA 94114
Telephone: 415-948-0045
Email: rteich@juno.com

## **CERTIFICATE OF COMPLIANCE**

This is to certify that prior to filing this motion, counsel attempted to obtain consent for the filing and granting of such motion from all parties having an interest to oppose, but none of the other parties in these consolidated cases would so consent.  The *Missouri* Plaintiffs take no position on the request.

Dated:  April 25, 2024

/s/ G. Shelly Maturin, II

_____

G. SHELLY MATURIN, II

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the above and foregoing has been served on all known counsel of record via facsimile transmission, e-mail and/or by placing same in the U.S. Mail, properly addressed and postage pre-paid on this 24th day of April, 2024.


/s/ G. Shelly Maturin, II

_____
G. SHELLY MATURIN, II