IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT F. KENNEDY, JR., *et al.*, <br><br>    *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America, *et al.*, <br><br>    *Defendants*. | Civil Action No. 3:23-cv-381 <br><br> Judge Terry A. Doughty <br><br> Mag. Judge Kayla D. McClusky |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR EXPEDITED THIRD PARTY PLATFORM DISCOVERY**

When the District Court in this action granted the *Kennedy* Plaintiffs' motion for a preliminary injunction, the Court recognized that the Supreme Court's decision in the consolidated action, *Missouri v. Biden*, No. 3:22-cv-01213 (W.D. La.) ("*Missouri*"), "will answer many of the issues raised in this case," and, accordingly, the Court stayed that preliminary injunction "for ten (10) days after the Supreme Court sends down a ruling in" *Missouri*. Dkt. 38 at 23. The *Kennedy* Plaintiffs nevertheless have now moved for expedited discovery concerning social media platform content moderation decisions whose validity they dispute, based on speculation that no matter how the Supreme Court rules they need the platform documents (including internal communications) sought. Yet the *Kennedy* Plaintiffs offer scarce support for the assertion that they need those documents now, outside the ordinary course of litigation.

The Court should deny the *Kennedy* Plaintiffs' request for expedited discovery at this juncture because the Supreme Court's disposition of *Murthy v. Missouri*, No. 23-411 (U.S.), which involves substantially the same issues as this case, "will answer many of the issues raised" in this action. The Supreme Court's decision therefore is likely to shape whether further discovery in this

1

action is even necessary and, if so, the scope of that discovery. The *Kennedy* Plaintiffs should not jumpstart the discovery process before the parties and this Court can set the scope of appropriate discovery through the ordinary schedule set by Fed. R. Civ. P. 26, particularly because the *Kennedy* Plaintiffs fail to make any showing of irreparable harm or pressing need for the discovery sought. Nor could they. Waiting a few additional weeks for the Supreme Court's decision in *Missouri* will not meaningfully affect Plaintiffs' ability to pursue document discovery from nonparties after that decision, if such discovery is even necessary.

Accordingly, the *Kennedy* Plaintiffs have not come close to meeting their burden for obtaining such discovery outside of the ordinary Rule 26 schedule, and their motion should be denied.

## BACKGROUND

In *Missouri*, two States and several individuals brought First Amendment and other claims relating to content moderation on social-media platforms against numerous federal defendants. This Court entered a preliminary injunction on July 4, 2023, *Missouri v. Biden*, 680 F. Supp. 3d 630 (W.D. La. 2023). The Fifth Circuit affirmed in part, reversed in part, vacated in part, and modified the injunction. 83 F.4th 350 (5th Cir. 2023). The Supreme Court granted certiorari and stayed the modified injunction. *Murthy v. Missouri*, 144 S. Ct. 7 (2023). The Supreme Court heard oral argument on March 18, 2024. A decision is expected by June.

While *Missouri* was pending in this Court, the *Kennedy* Plaintiffs commenced this action, asserting substantially the same claims against the same defendants as in *Missouri*. Dkt. 1. On the *Kennedy* Plaintiffs' motion, the Court consolidated the two actions, Dkt. 27, noting that they raised the "same" legal issues, *id.* at 4. Moreover, the District Court emphasized that "consolidation would reduce cost and time" because "[a]ny discovery allowed could be completed together." *Id.* at 5.

Plaintiffs here also moved for a preliminary injunction, relying on "the same evidence previously introduced in *Missouri*." Dkt. 38, at 2. The Court on February 14, 2024 entered a preliminary injunction in this action that is identical to the *Missouri* injunction (as modified by the

Fifth Circuit). Dkt. 38. Recognizing that the Supreme Court's decision in *Missouri* "will answer many of the issues raised in this case," the Court stayed that preliminary injunction "for ten (10) days after the Supreme Court sends down a ruling in Missouri." *Id.* at 23. Defendants timely appealed from the preliminary injunction in this action. The Fifth Circuit granted Defendants' motion, which the *Kennedy* Plaintiffs did not oppose, "to hold" the appeal "in abeyance pending the Supreme Court's disposition of *Murthy v. Missouri*, No. 23-411 (U.S.)." Order, No. 24-30252 (5th Cir. Apr. 24, 2024); *see* Dkt. 348.

In the instant expedited discovery motion, the *Kennedy* Plaintiffs, under Rules 26(d)(1) and 45, seek authorization for document subpoenas directed to "the two preeminent social media companies," namely, "Alphabet, Inc., which owns Google and YouTube; and Meta Platforms, Inc. which owns Facebook and Instagram," concerning disputed content moderation decisions. Dkt. 349-1 ("Mem.") 7. Most prominently, according to the *Kennedy* Plaintiffs, certain internal correspondence those platforms disclosed in response to an inquiry from a congressional committee—including correspondence in an appendix to an amicus brief that the committee's majority filed with the Fifth Circuit in the *Missouri* appeal last August—supplies a basis for the *Kennedy* Plaintiffs to seek on an expedited basis similar additional documents from those platforms. Mem. 13 & n.6, 19 n.16 (quoting at length from Brief of Representative Jim Jordan et al., as Amici Curiae Supporting Plaintiffs-Appellees and Affirmance in *Missouri v. Biden*, No. 23-30445 (5th Cir., filed Aug. 7, 2023), Doc. No. 161, 2023 WL 5275607). That Fifth Circuit amicus brief anticipated a substantially similar amicus brief, dated Feb. 9, 2024, in the Supreme Court in *Missouri*. Brief for Representative Jim Jordan and 44 Other Members of Congress as Amici Curiae in Support of Respondents, in No. 23-411 (U.S.), 2024 WL 695116.

## LEGAL STANDARD

The *Kennedy* Plaintiffs bear a heavy burden to demonstrate a need for discovery at this juncture before the Rule 26(f) conference: "[E]xpedited discovery is not the norm . . . and courts only allow it in limited circumstances." *Wilson v. Samson Contour Energy E & P, LLC*, No. 14-

3

cv-0109, 2014 WL 2949457, at *3 (W.D. La. June 30, 2014). "[T]he majority of courts" in this Circuit have stated that a party seeking expedited discovery must show "good cause" to "deviate from the normal course of discovery." *Id.* at *3-4. And to satisfy the "good cause" standard, the party seeking expedited discovery must "show that [it] is subject to irreparable harm or that" there is some "other pressing need for the discovery she seeks," such as "a risk that evidence would be lost or destroyed" if discovery were not expedited. *Id.*; *see also Soileau v. GPS Marine, LLC*, No. 20-cv-484, 2020 WL 9078308, at *3 (E.D. La. May 19, 2020) ("irrespective of the standard applied, [e]xpedited discovery" is "allowed . . .when there is some showing of irreparable harm that can be addressed by limited, expedited discovery"); *Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*, 296 F.R.D. 1, 2 (D.D.C. 2013) ("courts tend to find good cause" for discovery before the Rule 26(f) conference "only in narrow circumstances"). Furthermore, "[t]he party seeking expedited discovery has the burden of establishing" that "the scope of the requests" is "narrowly tailored to the necessary information they seek." *GHX Indus. LLC v. Servco Hose & Supply LLC*, No. 6:19-CV-01552, 2020 WL 1492920, at *2 (W.D. La. Feb. 5, 2020). Rule 45, moreover, separately mandates consideration of the interest of non-parties. *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (opinion for the Court by Kavanaugh, J.) (Rule 45 "requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties").

## ARGUMENT

Given the overlapping legal issues, the Supreme Court's disposition in *Missouri* will almost certainly shape the scope of permitted discovery, if any is even necessary, and the *Kennedy* Plaintiffs should not be allowed to jumpstart discovery in this action without that imminent guidance. That is particularly true because the *Kennedy* Plaintiffs have shown no need for discovery at this time—let alone a "pressing need" or a threat of "irreparable harm" in the absence of discovery, both of which are required for expedited discovery at this stage of the litigation.

When this Court stayed the preliminary injunction issued in favor of the *Kennedy* Plaintiffs in February, this Court already recognized that important clarification will come from the Supreme Court's disposition, which is expected by June. It would be inconsistent with that determination

4

to suddenly allow the *Kennedy* Plaintiffs to obtain expedited discovery at this time, which also would undermine the judicial economy interest this Court described, when consolidating this action with *Missouri*, in "keep[ing] the consolidation from complicating the matter on appeal." Dkt. 27 at 4-5.

After this Court and the parties have the benefit of the Supreme Court's mandate in *Missouri*, they will then be much better situated to address the legitimate scope of discovery in this action under Rule 26(b), if any, by aligning discovery with what is "relevant to" any claims and defenses that may remain and is "proportional to the needs of the case." In that regard, it is beyond dispute that a Supreme Court decision will inform key aspects of the claims and defenses in this action, including, therefore, the proper scope of any discovery under Rules 26 and 45. The injunction stayed in *Missouri* is identical to the injunction sought and obtained by the *Kennedy* Plaintiffs, and the types of harm alleged by the *Kennedy* Plaintiffs are the same as those alleged by the *Missouri* Plaintiffs.

Against that backdrop, the *Kennedy* Plaintiffs' arguments for expedited discovery suffer from at least three substantial flaws, and fail to show the "irreparable harm," *Soileau*, 2020 WL 9078308, at *3, and "pressing need," *Wilson*, 2014 WL 2949457, at *3, required for expedited discovery.

*First*, the *Kennedy* Plaintiffs contend that the internal platform documents they most prominently would seek would "remain critical" to their case no matter how the Supreme Court might decide *Missouri*, purportedly because the *Kennedy* Plaintiffs' Article III standing allegations are different from those of the *Missouri* Plaintiffs. Mem. 16, 22; *see* Mem. 22-24 (speculating how the requested discovery should be analyzed "if the Court" reaches various outcomes in *Missouri*). Yet when seeking intervention before the Supreme Court in *Missouri*, the *Kennedy* Plaintiffs correctly acknowledged that the Supreme Court's decision in *Missouri* would, "for all intents and purposes, adjudicate their claims." *See Kennedy* Plaintiffs' Mot. to Intervene at 9, *Murthy*, No. 23-411 (U.S. Oct. 26, 2023).

And when this Court consolidated the two actions, the Court itself determined that they

5

raise the same legal challenges on substantially identical facts against the same defendants as in *Missouri*. *See* Dkt. 27 at 4. Plaintiffs offer no reason for disturbing that conclusion.

But even if the *Kennedy* Plaintiffs' theories or proof of standing were "stronger" (Mem. 23), the Supreme Court's resolution of *Missouri* would likely still provide guidance important for this Court's analysis of the claims and defenses in this action and the need for requested discovery relevant to those claims and defenses within the proportionality limitation of Rule 26(b).

*Second*, the *Kennedy* Plaintiffs contend that they need the internal documents they propose to seek, among other things, from the platforms because the expedited discovery the *Kennedy* Plaintiffs already received from Defendants did not include those documents internal to the platforms. *See* Mem. 16. But that assertion does not meet the requirements of "irreparable harm," *Soileau*, 2020 WL 9078308, at *3, or "pressing need," *Wilson*, 2014 WL 2949457, at *3, given that the *Kennedy* Plaintiffs *already* have contents of documents internal to the platforms: They predicate their bid for expedited discovery on platform internal materials that albeit outside the record in this Court were described in amicus briefs of certain members of the House of Representatives before the Fifth Circuit, 2023 WL 5275607, and the Supreme Court, 2024 WL 695116, in *Missouri*. *See* p. 3, *supra*.

Plaintiffs' reliance on the amicus briefs is self-defeating because it shows they very well may already possess sufficient internal platform documents. Even if Plaintiffs may desire to increase the volume of such materials, their desire is no basis for expedited discovery at this juncture. Indeed, the significance of any platform views (whether in internal correspondence or otherwise) is, at a minimum, a potential question on which the Supreme Court may render important guidance when it decides *Missouri*. The proper course thus would be to wait for that Supreme Court decision, not to wade into premature discovery. Moreover, the platforms' production of internal correspondence in response to the congressional committee inquiries, as set forth in the amicus brief Plaintiffs quote, implies that those materials will continue to remain available, supplying no grounds for the *Kennedy* Plaintiffs' conjecture that the correspondence "*might not* be available" at the appropriate time. Mem. 8 n.3 (emphasis added). Hence Plaintiffs

have shown no "risk that evidence would be lost or destroyed." *Wilson*, 2014 WL 2949457, at *3.

*Third*, Plaintiffs contend that the expedited discovery that they seek would not impose a "substantial burden" because the *Kennedy* Plaintiffs' document subpoena mirrors a congressional committee's subpoena. Mem. 13, 15, 25. But among other defects, Plaintiffs' proposed subpoena would require nonparties to produce documents concerning entire *years* not covered by the congressional committee inquiries. Mem. 13 n.8, 16. While the committee inquiries, as described in a letter to platforms on December 14, 2022 (Dkt. 349-3), spanned January 1, 2020 "to the present" (*i.e.*, 2020, 2021, and 2022), Plaintiffs' proposed requests (Dkt. 349-2) would stretch backward an additional year (2019), and forward by more than a year (2023 into 2024). In downplaying that major expansion of the timeframe as a mere "extended date-range" (Mem. 13 n.8), Plaintiffs disregard the obligation under Rule 45 to account for the interest of non-parties. *See Watts*, 482 F.3d at 509. All of that burden on nonparties could be eliminated or substantially reduced depending on how the Supreme Court decides *Missouri*.

## CONCLUSION

For the reasons stated herein, this Court should deny the Plaintiffs' motion for expedited discovery at this juncture and await the Supreme Court resolution of *Missouri*.

Dated: May 3, 2024                             Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar No. 978017)
KUNTAL CHOLERA (D.C. Bar No. 1031523)
ALEXANDER W. RESAR (N.Y. Bar No. 5636337)
CATHERINE M. YANG (N.Y. Bar No. 5319736)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Tel: (202) 616-8488
indraneel.sur@usdoj.gov

*Attorneys for Defendants*