IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF MISSOURI, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>PRESIDENT JOSEPH R. BIDEN, JR., IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES OF AMERICA, *et. al.*,<br><br>    *Defendants*. | Civil Action No. 3:22-cv-1213 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

    I.   INTRODUCTION ............................................................................................................ 4

    II.  FACTS ............................................................................................................................. 4

        A.  *Allegations Pertaining to Dr. Fauci* ................................................................... 4

        B.  *Dr. Morens's Emails* ........................................................................................... 7

    III. ARGUMENT ................................................................................................................... 9

CONCLUSION ............................................................................................................................. 15

CERTIFICATE OF SERVICE ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Ayyash v. Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. Jul. 12, 2005) .................................................................................. 10

*BKGTH Prods., LLC v. Does 1-20*,
   2013 WL 5507297 (E.D. La. Sept. 30, 2013) ............................................................................ 10

*Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*,
   2008 WL 1999234 (S.D. Tex. May 8, 2008) ............................................................................. 12

*Combat Zone Corp. v. John/Jane Does 1-2*,
   2012 WL 6684711 (E.D. Tex. Dec. 21, 2012) ..................................................................... 10, 11

*Dougherty v. U.S. Dep't of Homeland Security*,
   2022 WL 20717365 (S.D. Tex. Jan. 19, 2022) ............................................................................ 9

*ELargo Holdings, LLC v. Doe-68.105.146.38*,
   318 F.R.D. 58 (M.D. La. Dec. 1 2016) .............................................................................. 10, 13

*Ensor v. Does 1-15*,
   2019 WL 4648486 (W.D. Tex. Sept. 23, 2019) ...................................................................... 9, 10

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
   307 F.3d 501 (6th Cir. 2002) ...................................................................................................... 14

*Hampson v. State Farm Mut. Auto Ins. Co.*,
   2015 WL 12733388 (N.D.N.Y. Oct. 22, 2015) .......................................................................... 12

*Lorraine v. Markel Am. Ins. Co.*,
   241 F.R.D. 534 (D. Md. 2007) .................................................................................................... 12

*Merrill Lynch, Pierce, Fennder & Smith v. O'Connor*,
   194 F.R.D. 618 (N.D. Ill. 2000) .................................................................................................. 10

*Missouri v. Biden*,
   2023 WL 5841935 (W.D. La. Jul. 4, 2023) ................................................................................ 10

*Missouri v. Biden*,
   662 F.Supp.3d 626 (W.D. La. 2023) ........................................................................................... 10

*Missouri v. Biden*,
   83 F.4th 350 (5th Cir. 2023) .................................................................................................. 5, 11

*Murthy v. Missouri*,
   No. 23-411 (U.S.) ..................................................................................................................  5, 11

*Stockade Cos., LLC v. Kelly Rest. Grp., LLC*,
   2017 WL 2635285 (W.D. Tex. June 19, 2017) ............................................................................ 9

*United States v. Figueroa*,
   2023 WL 8373566 (S.D.N.Y. Dec. 4, 2023) .............................................................................. 11

*United States v. Williams*,
   205 F.3d 23 (2d Cir. 2000) ......................................................................................................... 11

*Well Go USA. Inc. v. Unknown Participants in Filesharing Swarm*,
   2012 WL 4387420 (S.D. Tex. Sept. 25, 2012) .......................................................................... 10

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................................. 9

**Other Authorities**

Ryan Tracy,
   *Facebook Bowed to White House Pressure, Removed Covid Posts*,
   THE WALL STREET JOURNAL (Jul. 28, 2023) ............................................................................. 8

Sharri Markson,
   *Covid cover-up: how the science was silenced*,
   THE AUSTRALIAN (Jul. 28, 2023) ................................................................................................ 5

*The Censorship-Industrial Complex*, Interim Staff Report of the H. Comm. on the Judiciary and
   the Select Subcomm. on the Weaponization of the Fed. Gov't
   118th Cong. (May 1, 2024) ............................................................................................................ 5

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiffs submit this Memorandum of Law in support of their motion for leave to serve third-party subpoenas prior to a Rule 26(f) conference.[1]

### I. INTRODUCTION

Last month, Congressional testimony revealed that Dr. Fauci, his colleague at the National Institute of Allergy and Infectious Diseases (NIAID) Dr. David Morens, and others routinely evaded requirements to use official channels for correspondence related to Dr. Fauci's actions as an employee of the United States Government in order to avoid public disclosure of controversial communications. Drs. Fauci and Morens resorted to use of personal email accounts to avoid creating records of their actions. When official government channels were used, records were deleted, sometimes based on instructions given by an NIH agent responsible for retaining government records. In light of the evidence that Dr. Fauci and his colleagues sought to evade record creation and destroyed records to avoid detection, Plaintiffs seek immediate access to the records of Drs. Fauci and Morens, as well as other specific individuals known to have communicated with Dr. Fauci outside of official channels about topics relevant to this case.

### II. FACTS

#### A. Allegations Pertaining to Dr. Fauci

Dr. Fauci was sued in this case in his official capacity as the Director of the National Institute of Allergy and Infectious Diseases (NIAID) and Chief Medical Advisor to the President. *See Missouri v. Biden*, No. 3:22-cv-1213, Dkt. 84 (W.D. La. Oct. 6, 2022) (Second Amended Complaint). As alleged in the Complaint and supporting declarations of Plaintiffs and others, and

---

[1] Plaintiffs sought Defendants' consent for these subpoenas during a conference call on June 14, 2024, but Defendants declined to provide such consent.

corroborated by various investigations and reports, Dr. Fauci coordinated an effort to discredit the lab-leak hypothesis of Covid-19's origins not because he believed that theory to be false, but because he had funded risky "gain-of-function" research at the Wuhan Institute of Virology through intermediaries at the EcoHealth Alliance, then headed by Dr. Peter Daszak. *See id.* ¶¶ 139-40.[2]  Part of this campaign involved pressuring social media companies to censor discussion of the lab-leak theory on the ground that it was "disinformation." Dkt. 84 ¶¶ 140-41, 204-16.

After Plaintiffs filed the Complaint in this case, and following the Court's grant of Plaintiffs' motion for a preliminary injunction in July of 2023, which was partially affirmed by the Fifth Circuit and is now under consideration in the Supreme Court,[3] an investigation by the House Judiciary Committee's Weaponization of the Federal Government Select Subcommittee turned up internal emails from Meta indicating that the company had censored posts about the lab leak theory at the Government's behest.  Nick Clegg, former United Kingdom Deputy Prime Minister and now an executive at Meta, asked a colleague via email why the company had censored the theory that Covid-19 originated in a lab.  The colleague responded, "Because we were under pressure from the [Biden] administration and others to do more …. We shouldn't have done it."[4]  While this email does not provide definitive evidence of Dr. Fauci's involvement in the Administration's censorship campaign, the combination of these facts supports an inference that Dr. Fauci orchestrated or participated in the Government's efforts to silence discussion of the lab-leak theory online.

---

[2] *See, e.g.*, Sharri Markson, *Covid cover-up: how the science was silenced*, THE AUSTRALIAN (Jul. 28, 2023).
[3] *See Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023); *Murthy v. Missouri*, No. 23-411.
[4] *The Censorship-Industrial Complex*, Interim Staff Report of the H. Comm. on the Judiciary and the Select Subcomm. on the Weaponization of the Fed. Gov't 118th Cong. 2 (May 1, 2024), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/Biden-WH-Censorship-Report-final.pdf

The suspension from Twitter of journalist and prominent lockdown critic Alex Berenson is another reason to surmise that Dr. Fauci was behind at least some of the social media censorship of dissenting views on Covid-19-related subjects. Twitter permanently suspended Berenson's account just days after Dr. Fauci publicly criticized him for advising young people to avoid getting Covid vaccines, although he had recently received assurances from Twitter that his account was safe. Dkt. 84 at ¶¶ 238, 347. Discovery in Berenson's lawsuit against Twitter—specifically internal company emails—revealed that officials within the Biden Administration had explicitly demanded that Berenson's account be removed from the website. *Id.* ¶¶ 345-48.[5]

Perhaps most importantly, there is reason to believe that Dr. Fauci was instrumental in effectuating censorship of two of the individual plaintiffs in this case, Drs. Bhattacharya and Kulldorff. After the two co-authored the widely publicized Great Barrington Declaration condemning lockdowns in October of 2020, Dr. Fauci and former NIH Director Dr. Francis Collins exchanged emails in October of 2020 strategizing a published "take-down" of the Declaration. *Id.* ¶ 480; Bhattacharya Decl., Dkt. No. 45-3, ¶¶ 6-11, 13-14. Although no "takedown" was ever published, shortly after the email exchange, Drs. Bhattacharya and Kulldorff, as well as the Declaration itself, were censored extensively online. Bhattacharya Decl., Dkt. No. 45-3, ¶¶ 15-31. In a particularly memorable incident, YouTube removed a videotaped discussion Drs. Bhattacharya and Kulldorff had with Florida Governor Ron DeSantis about the harms of masking children on the ground that it "contradict[ed] the consensus of local and global health authorities regarding the efficacy of masks to prevent the spread of Covid-19." Bhattacharya Decl., Dkt. No. 45-3, ¶¶ 17-18. These facts, taken together and with those recounted in the preceding paragraphs,

---

[5] Berenson has since filed a lawsuit against the Biden Administration alleging that the Government violated his First Amendment rights. *See Berenson v. Biden*, 1:23-cv-03048, Dkt. 1 (S.D.N.Y. Apr. 12, 2023).

support the inference that Dr. Fauci coordinated or at least participated in social media censorship of these two Plaintiffs.

On November 23, 2022, pursuant to this Court's discovery order, Plaintiffs deposed Dr. Fauci at the NIH headquarters. In response to the question, "Would you have CC'd one of your personal e-mail addresses on this?" Dr. Fauci responded, "No, I very rarely do that." When counsel asked, "Have you ever done that? Have you ever CC'd your personal e-mail on a work-related matter?" Dr. Fauci answered, "You know, I don't recall. I doubt that. I doubt that." Fauci Dep. 55:8-16.

Later on, counsel asked Dr. Fauci, "[w]ere you involved in the response to the various FOIA requests for your e-mails from NIAID and NIH"? to which he replied, "I'm – I don't understand what you mean was I involved in them. I don't – a FOIA request does not come to me, and I look through my e-mails and give the e-mails that they ask for. We have a system at the NIH where FOIA requests come in and a different component of the institutes tap into the e-mails and provide the e-mails that are requested. I don't decide which e-mails go and don't go." Fauci Dep. 122:6-16.

**B. Dr. Morens's Emails**

On May 22, 2024, Dr. Fauci's Senior Advisor, Dr. David Morens, testified before the House Oversight Committee's Select Subcommittee on the Coronavirus Pandemic. The Subcommittee simultaneously released documents Dr. Morens produced indicating that Dr. Fauci likely gave misleading testimony during the deposition and engaged in unlawful practices in order to avoid having to make productions pursuant to FOIA. For example, on April 21, 2021, Dr. Morens stated in an email to Dr. Peter Daszak, President of the EcoHealth Alliance, which is a recipient of government funds and implicated in the creation of coronavirus by virtue of its gain-

7

of-function research, "i forgot to say there is no worry about FOIAs. I can either send stuff to Tony [Fauci] on his private gmail, or hand it to him at work or at his house. He is too smart to let colleagues send him stuff that could cause trouble."[6] Several weeks later, Dr. Morens wrote, in an email to Dr. Daszak, along with Dr. Gerald Keusch, a professor of medicine at Boston University, and Dr. Richard Roberts, of New England Biolabs: "I suggested Arthur try to interview Tony directly and connected him to our 'secret' back channel. He emailed Tony a few hours ago."[7]

Additional emails constitute strong corroborating evidence that Drs. Fauci and Morens were attempting to avoid having to reveal communications about gain-of-function research and the lab leak hypothesis, which the White House had pressured tech companies to censor.[8] For instance, on April 26, 2020, Dr. Morens had written to Dr. Daszak: "This is sent from my gmail account. Please send all replies here To gmail[.] I have let Tony know but have not spoken to him directly. There are things I can't say except Tony is aware and I have learned that there are ongoing efforts within NIH to steer through this with minimal damage to you, Peter, and colleagues, and to nih and niaid."[9] "To steer through this with minimal damage" suggests there was some crisis associated with publication of emails to be averted. Dr. Morens sent a plethora of other emails instructing recipients to be careful to use gmail or other non-official channels of communication.[10]

Furthermore, Dr. Morens's emails suggest that Dr. Fauci gave misleading testimony in his November 23, 2022 deposition. According to Dr. Morens, Dr. Fauci purposefully used gmail (or

---

[6] *See* Email from Dr. David Morens to Dr. Peter Daszak, et. al. (April 21, 2021), *attached as* Ex. 1.
[7] *See* Email from Dr. Morens to Dr. Gerald Keusch, et. al. (May 13, 2021), *attached as* Ex. 2.
[8] Ryan Tracy, *Facebook Bowed to White House Pressure, Removed Covid Posts*, THE WALL STREET JOURNAL (Jul. 28, 2023).
[9] *See* Email from Dr. Morens to Dr. Daszak (April 26, 2020), *attached as* Ex. 3.
[10] *See, e.g.*, Email from Dr. Morens to Dr. Keusch, et. al. (November 19, 2021), *attached as* Ex. 4 ("BOTH my gmail and phone calls are now safe. Text is NOT, as it can be FOIA'd, as can my govt email"); *see* Email from Dr. Morens to Dr. Keusch (May 12, 2020), *attached as* Ex. 5 ("Please try to send only to my gmail"); *see* Email from Dr. Morens to Dr. Keusch (November 18, 2021), *attached as* Ex. 6 ("Basically, my gmail is now safe from FOIA … Thus, it should be safe to communicate safely with you, Peter, and others, as long as we use my private gmail").

hand service) because he was "too smart to let colleagues send him stuff that could cause trouble."[11]  Likewise, "Tony" used a "'secret' back channel," in Dr. Morens's words.[12]  At the very least, Dr. Fauci's deposition testimony was designed to mislead as to the nature of his use of private email for government purposes.

Dr. Morens sent numerous emails indicating that he and others were intentionally deleting emails, which is also a violation of the law.  For example, on February 24, 2021, he wrote to an unidentified recipient, "You are right, i need to be more careful.  However, as i mentioned once before, i learned from our foia lady here how to make emails disappear after i am foia'd but before the search starts, so i think we are all safe.  Plus i deleted most of those earlier emails after sending them to gmail."[13]

### III. ARGUMENT

Federal Rule of Civil Procedure 26(d) provides for discovery before the Rule 26(f) conference by, *inter alia*, court order.  In the Fifth Circuit, a "good cause" standard is typically used to determine whether to permit such expedited discovery.  *See Dougherty v. U.S. Dep't of Homeland Security*, 2022 WL 20717365 at *1 (S.D. Tex. Jan. 19, 2022); *Ensor v. Does 1-15*, 2019 WL 4648486 at *1 (W.D. Tex. Sept. 23, 2019).  The party seeking such discovery bears the burden of showing good cause, and the subject matter of the request should be "'narrowly tailored in scope.'"  *Ensor*, 2019 WL 4648486 at *1 (quoting *Stockade Cos., LLC v. Kelly Rest. Grp., LLC*, 2017 WL 2635285 at *2 (W.D. Tex. June 19, 2017)).  "'[G]ood cause typically exists where "the

---

[11] *See* Ex. 1.
[12] *See* Ex. 2.
[13] *See* Email from Dr. Morens (February 24, 2021), *attached as* Ex. 7.  *See also* Email from Dr. Morens to Dr. Daszak (Oct. 5, 2021), *attached as* Ex. 8 ("However, Ron Johnson is all over it and now after me.  Tony will be pissed, rightly so.  I deleted that email but now I learn that every email I ever got/sent since 1998 is captured and will be turned over, whether or not I instantly deleted it.  Gmail, phone, text … i need to scrupulously rely on those exclusively."); Email from Dr. Morens to Dr. Daszak (June 16, 2020), *attached as* Ex. 9 ("We are all smart enough to know to never have smoking guns, and if we did we wouldn't put them in emails and if we found them we'd delete them.").

9

need for expedited discovery outweighs the prejudice to the responding party.""" *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 61 (M.D. La. Dec. 1 2016) (quoting *BKGTH Prods., LLC v. Does 1-20*, 2013 WL 5507297 at *5 (E.D. La. Sept. 30, 2013)).

Courts weigh several factors in the good cause analysis, including: (1) a concrete showing of a *prima facie* claim of actionable harm by the plaintiff;[14] (2) the absence of alternative means to obtain the subpoenaed information; (3) a central need for the subpoenaed information to advance the claim; (4) the specificity of the discovery request; and (5) the user's expectation of privacy. *See Well Go USA. Inc. v. Unknown Participants in Filesharing Swarm*, 2012 WL 4387420 at *1 (S.D. Tex. Sept. 25, 2012). *See also Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. Jul. 12, 2005) ("in deciding on a matter merely of regulating the timing of discovery, 'it makes sense to examine the discovery request … on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances.'") (quoting *Merrill Lynch, Pierce, Fennder & Smith v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) (alterations in original)).

Here, "good cause" exists for the Court to permit discovery prior to the Rule 26(f) conference. First, Plaintiffs have made a *prima facie* showing of actionable harm, as evidenced by the allegations in the Complaint (which are substantiated by Plaintiffs' sworn declarations, news articles, congressional reports, and various investigations) and this Court's denial of the motion to dismiss and grant of a preliminary injunction, upheld in part by the Fifth Circuit. *Missouri v. Biden*, 662 F.Supp.3d 626 (W.D. La. 2023) (denying motion to dismiss); *Missouri v. Biden*, 2023 WL 5841935 (W.D. La. Jul. 4, 2023) (granting motion for preliminary injunction),

---

[14] The case law indicates that the party seeking discovery must make a *prima facie* showing of injury with respect to the core claims in the case. *See Well Go USA. Inc.*, 2012 WL 4387420 at *1. *Accord Ensor*, 2019 WL 4648486 at *2; *Combat Zone Corp. v. John/Jane Does 1-2*, 2012 WL 6684711 at *2 (E.D. Tex. Dec. 21, 2012).

*aff'd in part* 83 F.4th 350 (5th Cir. 2023), *cert. granted sub nom. Murthy v. Missouri*, No. 23-411 (U.S. Oct. 20, 2023). *See Combat Zone Corp.*, 2012 WL 6684711 at *2 (finding this factor of the "good cause" test satisfied because plaintiffs had made a *prima facie* showing of copyright infringement, the crux of their claim against defendants).

Plaintiffs have also satisfied the second and third factors of the good cause inquiry. There are no alternative means through which to obtain the sought-after information (prong two) which is crucial to advancing Plaintiffs' claims that they were censored at the behest of Dr. Fauci and other government actors (prong three). The revelations from Dr. Morens's emails demonstrate that Drs. Morens, Fauci, Collins, Keusch, Roberts, and Daszak are or should be in possession or control of emails that Defendants did not produce in response to discovery demands in this case (as well as numerous FOIA requests made by a variety of individuals and organizations) and that are pertinent to this litigation and bear directly on Plaintiffs' claims. Because the subcommittee's investigation focused on the origins of Covid and the role government actors played in preventing the public from learning about evidence supporting the lab-leak hypothesis, the emails produced pertained to that subject matter. Since Drs. Fauci and Morens were using gmail and email deletion as tools to avoid liability for unsavory and possibly unlawful conduct in that context, it is entirely reasonable to presume that they used the same methods to avoid detection for unlawful efforts to censor Plaintiffs in order to subvert discovery efforts. Dr. Morens had no reason whatsoever to lie to the recipients of these emails about his own and Dr. Fauci's document retention practices. *See United States v. Figueroa*, 2023 WL 8373566 at *4 (S.D.N.Y. Dec. 4, 2023) (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000)) (determining that emails had "'indicia of trustworthiness' given that assistants conveying such information to their employer typically have no reason to lie and every incentive to be accurate"); *Hampson v. State Farm Mut. Auto Ins. Co.*,

11

2015 WL 12733388 at *8 (N.D.N.Y. Oct. 22, 2015) (citing *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 569 (D. Md. 2007) ("Emails can qualify as present sense impressions or excited utterances"); *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, 2008 WL 1999234 (S.D. Tex. May 8, 2008) (holding that an email summarizing a conversation that had just occurred was admissible as a present-sense impression).

Fourth, Plaintiffs' discovery requests are appropriately specific and narrowly tailored, given the circumstances. Since Dr. Morens stated that Dr. Fauci used gmail to avoid having to turn over emails in response to FOIA requests, Plaintiffs should be permitted to subpoena Drs. Fauci's and Morens's private gmails from October 2019 to the present containing one or more of the following search terms: "gain-of-function"; "Wuhan Institute of Virology"; "Daszak"; "Keusch"; "Roberts"; "Fauci"; "Morens"; "EcoHealth"; "Great Barrington Declaration"; "Kulldorff"; "Bhattacharya"; "lab-leak"; "social media"; "Twitter"; "Facebook"; "YouTube"; "DeSantis"; "vaccine"; "vaccines"; "lockdowns"; and "mask mandates."

Because Drs. Morens, and possibly others, destroyed records and evidence by deleting emails, Plaintiffs seek to subpoena the servers that may have retained copies of deleted or inappropriately directed emails. Dr. Keusch used a Boston University address; Dr. Roberts used a New England Biolabs address; and Dr. Daszak used an EcoHealth Alliance address. Plaintiffs, therefore, seek to issue subpoenas on Boston University for Dr. Keusch's emails, New England Biolabs for Dr. Roberts's emails, and EcoHealth Alliance for Dr. Daszak's emails, as well as directly upon Drs. Keusch, Roberts, and Daszak for any relevant emails they possess. Such subpoenas would be limited to correspondence between these individuals and Dr. Morens and/or Dr. Fauci from October of 2019 and the present and containing one or more of the search terms in the paragraph above (not including the names of the respective subpoena recipients).

Plaintiffs also request leave to subpoena Gmail itself for Dr. Morens's and Dr. Fauci's emails written between October 2019 and the present and containing the same search terms in the paragraph above, because, per Dr. Morens's own admissions, he was in the practice of deleting emails to avoid a trail. Dr. Morens's emails suggested that Dr. Fauci engaged in similar practices. While Plaintiffs are in possession of Dr. Morens's gmail address, they do not presently have Dr. Fauci's, but would use his name and other identifiers in a subpoena to Gmail in order to locate his emails.

With respect to the fifth factor, the users' expectations of privacy, the authors and recipients of the emails at issue knew that as a matter of law their communications should be government records, not subject to privacy considerations—indeed, Dr. Morens made very clear that he knew his actions were not lawful. Any expectation of privacy they had based on their efforts to thwart the government's statutory record keeping obligations are not worthy of protection. Those whose emails are sought herein have surrendered any privacy expectation by engaging in unlawful practices in order to keep their emails hidden from the public and to remain unaccountable for their actions. And because these individuals may very well continue deleting emails, there are grounds for granting expedited discovery. In short, for all the reasons discussed above, Plaintiffs' need for expedited discovery outweighs any prejudice to the responding parties. *See ELargo Holdings*, 318 F.R.D. at 61.[15]

Importantly, Plaintiffs were entitled to this material as part of the expedited preliminary-injunction-related discovery this Court ordered nearly two years ago. *See Missouri v. Biden*, No. 3:22-cv-1213, Dkt. 34 (W.D. La. July 12, 2022) (granting Plaintiffs' motion for expedited,

---

[15] The Supreme Court's decision on the government's appeal from the preliminary injunction grant is expected this month, after which this case will proceed in the district court (regardless of the Court's holding on the preliminary injunction) so granting this motion will only expedite discovery by a few months.

13

preliminary-injunction-related discovery). This Court agreed with Plaintiffs that they had a right to obtain communications between Dr. Fauci and any social media platforms that related to misinformation, disinformation, and/or the censorship of content on social media. *See Missouri v. Biden*, 3:22-cv-1213, Dkt. 72 (W.D. La. Sept. 6, 2022) (memorandum ruling and order on discovery disputes). To the extent that any of these individuals, including Dr. Fauci, were circumventing FOIA and discovery requirements by using private email addresses to communicate on these matters, they acted in bad faith by not producing such emails. *See generally First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 524 (6th Cir. 2002) (holding that First Bank's failure to comply with discovery orders by withholding documents constituted bad faith). That makes Plaintiffs' claims to entitlement of these materials at this juncture all the more compelling.

## CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs' motion for limited, expedited pretrial discovery.

Dated: June 21, 2024                                                            Respectfully submitted,


*/s/ Jenin Younes*
JENIN YOUNES **
*Litigation Counsel*
JOHN J. VECCHIONE *
*Senior Litigation Counsel*
ZHONETTE BROWN*
*Senior Litigation Counsel*
New Civil Liberties Alliance
1225 19th Street N.W., Suite 450
Washington, DC 20036
Main: (202) 869-5210
Direct: (202) 918-6905
E-mail: jenin.younes@ncla.legal
*Counsel for Plaintiffs Dr. Jayanta Bhattacharya,*
*Dr. Martin Kulldorff, Dr. Aaron Kheriaty, and Jill Hines*
*admitted pro hac vice
** pro hac vice application pending


| | |
|---|---|
| ELIZABETH B. MURRILL | ANDREW BAILEY |
| *Louisiana Attorney General* | *Missouri Attorney General* |
| TRACY SHORT | JOSH M. DIVINE |
| *Ass't Attorney General* | *Solicitor General* |
| D. JOHN SAUER | TODD A. SCOTT |
| *Sp. Ass't Attorney General* | *Senior Counsel* |
| 1885 N. Third St. | 207 W. High St. |
| Baton Rouge, LA 70802 | P.O. Box 899 |
| (225) 326-6766 | Jefferson City, MO 65102 |
| MurrillE@ag.louisiana.gov | (573) 751-8870 |
| *Counsel for Louisiana* | Joshua.Divine@ago.mo.gov |
| | *Counsel for Missouri* |

*/s/ John C. Burns*
John C. Burns *
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: 314-329-5040
F: 314-282-8136
E-mail: john@burns-law-firm.com
*Counsel for Plaintiff Jim Hoft*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 21, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

<em>/s/ John Vecchione</em>