# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

STATE OF LOUISIANA, *et al.*,

   *Plaintiffs*,

   v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America, *et al.*,

   *Defendants*.

No. 22-cv-1213

*Consolidated with No. 23-cv-381*

Judge Terry A. Doughty

Mag. Judge Kayla D. McClusky

## DEFENDANTS' MOTION FOR AN INDICATIVE RULING DISSOLVING THE PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

    A.    The *Missouri* Action ................................................................................... 2

    B.    The *Kennedy* Follow-On Action ................................................................ 5

LEGAL STANDARDS .......................................................................................................... 6

ARGUMENT .......................................................................................................................... 7

I.    The Court Should Issue An Indicative Ruling That It Would Dissolve The Preliminary Injunction. ............................................................................................... 7

II.    In The Alternative, The Court Should Stay The Preliminary Injunction Pending Appeal. ........................................................................................................................ 11

CONCLUSION ..................................................................................................................... 14

**TABLE OF AUTHORITIES**

**CASES**

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
　878 F.2d 806 (5th Cir. 1989) ................................................................................................. 11

*Blum v. Yaretsky*,
　457 U.S. 991 (1982) ............................................................................................................... 11

*California v. Trump*,
　407 F. Supp. 3d 869 (N.D. Cal. 2019),
　*aff'd sub nom. Sierra Club v. Trump*, 977 F.3d 853 (9th Cir. 2020),
　*cert. granted, judgment vacated sub nom. Biden v. Sierra Club*, 142 S. Ct. 56 (2021) ...... 12, 13

*Ctr. for Biological Diversity v. U.S. EPA*,
　937 F.3d 533 (5th Cir. 2019) ................................................................................................... 8

*Defoggi v. N'Diaye*,
　Case No. 21-cv-12269-NLH, 2023 WL 3775307 (D.N.J. June 2, 2023) ............................... 12

*Eisenberg v. Citibank NA*,
　Case No. 2:13-cv-01814-CAS, 2016 WL 6998559 (C.D. Cal. Nov. 29, 2016) ....................... 11

*FemHealth USA, Inc. v. Williams*,
　83 F.4th 551 (6th Cir. 2023) ..................................................................................................... 7

*Gill v. Whitford*,
　585 U.S. 48 (2018) .................................................................................................................. 10

*Henry v. Abernathy*,
　Case No. 2:21-cv-797-RAH, 2024 WL 203957 (M.D. Ala. Jan. 18, 2024) ............................ 12

*Karnoski v. Trump*,
　926 F.3d 1180 (9th Cir. 2019) .................................................................................................. 7

*Kleindienst v. Mandel*,
　408 U.S. 753 (1972) .................................................................................................................. 5

*Labrador v. Poe ex rel. Poe*,
　144 S. Ct. 921 (2024) .............................................................................................................. 12

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) .................................................................................................................. 5

*Merrill v. Milligan*,
　142 S. Ct. 879 (2022) .............................................................................................................. 12

*Missouri v. Biden*,
   680 F. Supp. 3d 630 (W.D. La. 2023), *aff'd in part, rev'd in part, vacated in part, and modifying injunction*, 83 F. 4th 350 (5th Cir. 2023) ................................................................. 2

*Murthy v. Missouri*,
   144 S. Ct. 7 (2023) ........................................................................................................ 2, 12

*Murthy v. Missouri*,
   603 U.S. __, 2024 WL 3165801 (U.S. June 26, 2024) ................................................ *passim*

*Nat'l Rifle Ass'n of Am. v. Vullo*,
   602 U.S. 175 (2024) ...................................................................................................... 7, 11

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................................................................... 7, 14

*Stone v. Trump*,
   400 F. Supp. 3d 317 (D. Md. 2019) .................................................................................. 10

**RULES**

Fed. R. App. P. 12.1 ............................................................................................................. 2, 7

Fed. R. Civ. P. 62 ..................................................................................................................... 12

Fed. R. Civ. P. 62.1 ................................................................................................................ 1, 6

**INTRODUCTION**

Defendants respectfully move under Federal Rule of Civil Procedure 62.1(a) for an indicative ruling that this Court would dissolve its currently stayed preliminary injunction (Dkt. 38) in *Kennedy v. Biden*, 3:23-cv-00381, if it had jurisdiction to issue such a ruling (which would otherwise be foreclosed by the pending appeal from the preliminary injunction). This Court should issue such an indicative ruling because the Supreme Court's conclusion that the plaintiffs in *Murthy v. Missouri*, 603 U.S. __, 2024 WL 3165801 (U.S. June 26, 2024), failed to establish Article III standing applies equally to the *Kennedy* Plaintiffs. *Missouri* is dispositive for two independent reasons. First, *Missouri* reemphasized the importance of imminent future injury to provide standing for injunctive relief—and concluded that the *Missouri* plaintiffs lacked such standing in part because the activities of which they complained stopped years ago. The same is true for the *Kennedy* plaintiffs, and the same result—lack of standing—applies. Second, the Court rejected as "startlingly broad" the "listener" theory of standing, *Missouri*, 2024 WL 3165801, at *16-17. And Plaintiffs here exclusively relied on that theory in their motion for a preliminary injunction, *see* Pls.' Mem. In Supp. of Mot. for Prelim. Inj. at 16-17, Dkt. 6-1; Pls.' Reply Mem. in Supp. of Mot. for Prelim. Inj. at 4-5, Dkt. 20.

Indeed, the *Kennedy* Plaintiffs obtained a preliminary injunction "against the same Defendants and on the same grounds as in *Missouri*." Dkt. 38 at 22-23. This Court thus recognized when staying the *Kennedy* injunction that the Supreme Court's decision in *Missouri* would "answer many of the issues raised in this case." *Id.* at 23. Accordingly, the Court should issue an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1 that it would dissolve the injunction if it had jurisdiction.

At a minimum, the injunction here is substantially overbroad in light of the Supreme Court's *Missouri* decision—it covers defendants who had nothing to do with the COVID-19-related posts that are the subject of the *Kennedy* Plaintiffs' complaint, and it applies universally, to all posts, by anyone, on any platform, on any subject. So even if this Court believes that some of the *Kennedy* Plaintiffs might still have standing notwithstanding *Missouri*, dissolution of the

1

injunction is prudent so that this Court can reevaluate the situation with the benefit of additional briefing. If the Court enters such a ruling, the government would ask the Fifth Circuit to remand under Federal Rule of Appellate Procedure 12.1 to allow this Court to dissolve the injunction.

In the alternative, if the Court declines to grant such an indicative ruling, it should stay the *Kennedy* preliminary injunction pending the appeal currently before the Fifth Circuit. The Supreme Court's decision in *Missouri* makes clear that Defendants have a significant likelihood of prevailing on that appeal, and the remaining equitable factors heavily favor Defendants. Indeed, the Supreme Court already determined in granting a stay in *Missouri* that the relevant factors weighed against enjoining Defendants during the appellate process. Given the complete evidentiary overlap in this consolidated case, and that the universal injunction here exactly mirrors the injunction in *Missouri*, the same holds true here.

## BACKGROUND

### A. The *Missouri* Action

In *Missouri*, two States and several individuals brought First Amendment and other claims against numerous federal defendants relating to content moderation on social-media platforms. This Court entered a preliminary injunction on July 4, 2023, after granting Plaintiffs extensive discovery. *Missouri v. Biden*, 680 F. Supp. 3d 630 (W.D. La. 2023). The Fifth Circuit affirmed in part, reversed in part, vacated in part, and modified the injunction. 83 F.4th 350 (5th Cir. 2023). The Supreme Court granted certiorari and stayed the modified injunction pending its review. *Murthy v. Missouri*, 144 S. Ct. 7 (2023). On June 26, 2024, the Supreme Court held in *Missouri* that "neither the individual nor the state plaintiffs have established Article III standing to seek an injunction against any defendant." 2024 WL 3165801, at *17. Accordingly, the Supreme Court "reverse[d] the judgment of the Fifth Circuit and remand[ed] the case for further proceedings consistent with [its] opinion." *Id*.

The Supreme Court emphasized two "particular challenges" to establishing standing that the *Missouri* plaintiffs were unable to overcome. *Id.* at *8. First, the Supreme Court concluded

2

that the plaintiffs had not established "specific causation" "with respect to any discrete instance of [past] content moderation," as required to establish traceability for past injury. *Id.* And the Supreme Court emphasized that this showing of causation must be made by each plaintiff for each defendant through evidence "that a particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." *Id.* at *9.

Second, the Supreme Court emphasized that "because the plaintiffs [only] request forward-looking relief, they must face 'a real and immediate threat of repeated injury,'" *id.* at *8 (citation omitted). The Court also emphasized that past injuries (even if traceable to Defendants' conduct at issue) could support standing to seek forward-looking injunctive relief "only insofar as" those injuries could be "relevant" to establishing a likelihood "of imminent future injury." *Id.* Accordingly, "the plaintiffs must show a substantial risk that, in the near future, at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant." *Id.* And they must do so with "factual evidence" because "the parties have taken [extensive] discovery." *Id.*

Applying these principles, the Supreme Court assessed the claimed "direct censorship injuries" on a plaintiff-by-plaintiff, defendant-by-defendant, and platform-by-platform basis. *Id.* The Supreme Court concluded no plaintiff had established past injuries traceable to the government conduct sought to be enjoined. Specifically, the Supreme Court held that plaintiff States Louisiana and Missouri failed to establish standing because the States identified only one post by a Louisiana state representative that Facebook "de-boosted," without adducing any "evidence to support the States' allegation that Facebook restricted the state representative pursuant to the CDC-influenced policy." *Id.* at *10. Likewise, the Supreme Court held that Drs. Jayanta Bhattacharya, Martin Kulldorff, and Aaron Kheriaty failed to show that any restrictions on their content "were traceable to the White House officials," particularly because each of these plaintiffs "faced his first social-media restriction in 2020, before the White House and the CDC entered discussions with the relevant platforms." *Id.* As to Jim Hoft, the Supreme Court held that

3

Hoft failed to establish standing to sue the FBI and CISA. Hoft lacked standing to sue the FBI because he provided "no evidence that Twitter adopted a policy against posting private, intimate content in response to the FBI's warnings about hack-and-leak operations," and, in any event, it was Hoft's brother who posted the allegedly restricted tweet. *Id.* at \*11. And Hoft lacked standing to sue CISA because the Supreme Court determined that CISA's involvement was limited to creating a "document tracking posts that various entities had flagged for the platforms as misinformation," which showed that a private entity, *not* CISA, alerted Twitter to Hoft's posts. *Id.* Moreover, that document did not even "reveal whether Twitter removed or otherwise suppressed" Hoft's post. *Id.* As to Jill Hines, who at most "eked out a showing of traceability for her past injuries," the Supreme Court emphasized that "Facebook was targeting her pages before almost all of its communications with the White House and the CDC, which weakens the inference that her subsequent restrictions are likely traceable." *Id.* at \*13.

Putting aside the failure to show traceability for past injuries, the Supreme Court held that no plaintiff could make the showing of imminent future injury traceable to the defendants necessary to establish standing—and for a plaintiff seeking injunctive relief, imminent future injury, not past injury, is necessary. The Supreme Court first disposed of plaintiffs other than Hines, explaining that their "failure to establish traceability for past harms … substantially undermines [those plaintiffs'] standing theory" for future relief. *Id.* at \*14 (citation omitted). Nor was Hines' "superior showing on past harm" "enough" to obtain prospective relief because "[b]y August 2022, when Hines joined the case, the officials' communications about COVID–19 misinformation had slowed to a trickle." *Id.* Accordingly, and as to all plaintiffs, "without proof of an ongoing pressure campaign," the Supreme Court found it "entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants." *Id.* at \*13.

Finally, the Supreme Court rejected plaintiffs' "right to listen" theory of standing. *Id.* at \*16-17 (citation omitted). The Court explained that such a "startingly broad" theory "would grant all social-media users the right to sue over *someone else's* censorship," and that the Court "has

4

'never accepted such a boundless theory of standing.'" *Id.* at *16 (citation omitted). Although the Supreme Court recognized "a 'First Amendment right to 'receive information and ideas,'" it explained that a cognizable injury to that right occurs "only where the listener has a concrete, specific connection to the speaker." *Id.* (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972), where "a group of professors" that "had a First Amendment interest in challenging the visa denial of a person they had invited to speak at a conference"). The Supreme Court held that plaintiffs failed to satisfy this requirement by asserting that access to "unfettered speech on social media is critical to their work as scientists, pundits, and activists." *Id.* at *17. Without identifying "any specific instance of content moderation [by Defendants of third parties to whom plaintiffs listen] that caused them identifiable harm," the *Missouri* plaintiffs "failed to establish an injury that is sufficiently 'concrete and particularized.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). And the Supreme Court rejected the State plaintiffs' assertion of standing on the same basis: "The States have not identified any specific speakers or topics that they have been unable to hear or follow." *Id.*

### B. The *Kennedy* Follow-On Action

In March 2023, while *Missouri* was pending in this Court, the *Kennedy* Plaintiffs commenced this action, asserting substantially the same claims against the same defendants. Compl., Dkt. 1. On the *Kennedy* Plaintiffs' motion, the Court consolidated the two actions, Mem. Order, Dkt. 27, noting that they raised the "same" legal issues, *id.* at 4. Moreover, the Court emphasized that "consolidation would reduce cost and time" because "[a]ny discovery allowed could be completed together." *Id.* at 5.

Plaintiffs here also moved for a preliminary injunction, relying on "the same evidence previously introduced in *Missouri*." Dkt. 38 at 2. The Court on February 14, 2024, entered a preliminary injunction in this action "against the same Defendants and on the same grounds as in *Missouri*." *Id.* at 22. The Court held that Plaintiffs Kennedy and Children's Health Defense (CHD) "can demonstrate standing" based exclusively on the Court's determinations in *Missouri*

5

that the White House, the Surgeon General's Office, and the CDC had coerced or significantly encouraged social-media companies to remove content in 2021. *Id.* at 9-10. This Court recognized that Plaintiff "Sampognaro submitted no direct evidence of content suppression" and found standing based only on the "right to listen" theory. *Id.* at 11. This Court did not assess whether any *Kennedy* Plaintiff faced a substantial risk of content moderation in the near future.

When assessing traceability and redressability, this Court rested entirely on its prior findings that "the social-media platforms' [past] censorship decisions were likely [made], at least in part, due to the coercion and/or significant encouragement of the" Defendants. *Id.* at 12. This Court did not assess whether any future content moderation that any *Kennedy* Plaintiff may face on any particular platform would be traceable to any conduct of any particular Defendant that the *Kennedy* Plaintiffs seek to enjoin. Nor did the Court address the fact that "[b]y August 2022," well before the *Kennedy* case was filed, "the officials' communications about COVID–19 misinformation had slowed to a trickle." *Missouri*, 2024 WL 3165801, at *14.

This Court stayed the *Kennedy* preliminary injunction "for ten (10) days after the Supreme Court sends down a ruling in *Missouri*," acknowledging that the Supreme Court's decision "will answer many of the issues raised in this case." Dkt. 38 at 23. Defendants timely appealed. *See* Dkt. 39. The Fifth Circuit granted Defendants' unopposed motion "to hold" the appeal "in abeyance pending the Supreme Court's disposition of *Murthy v. Missouri*, No. 23-411 (U.S.)." *See* Order, No. 24-30252 (5th Cir. Apr. 24, 2024); *see also Missouri*, Dkt. 348.

## LEGAL STANDARDS

Although the pending appeal of this Court's preliminary injunction in *Kennedy* deprives it of jurisdiction to dissolve the preliminary injunction, the Court can issue an indicative ruling that it would do so if it had jurisdiction. If a party makes a motion for relief that a district court "lacks authority to grant because of an appeal that has been docketed and is pending," the court may "state … that it would grant the motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(a). This Court therefore may issue an indicative ruling on Defendants' motion to dissolve

6

the preliminary injunction, which would enable the Fifth Circuit to remand for further proceedings consistent with that indicative ruling. *See* Fed. R. App. P. 12.1(b) ("If the district court states that it would grant the motion [for an indicative ruling] …, the court of appeals may remand for further proceedings."). In evaluating a motion to dissolve a preliminary injunction, a court must determine whether the movant has "established 'a significant change in facts or law'" that "'warrants … dissolution of the injunction.'" *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (citation omitted). *See also FemHealth USA, Inc. v. Williams*, 83 F.4th 551, 556 (6th Cir. 2023) ("[D]istrict courts retain the power to modify or dissolve preliminary injunctions to account for significant intervening changes in the law or facts.").

In determining whether to grant a stay pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted).

**ARGUMENT**

**I.      The Court Should Issue An Indicative Ruling That It Would Dissolve The Preliminary Injunction.**

The Supreme Court's decision in *Missouri* requires the dissolution of the *Kennedy* injunction because the reasoning of that decision makes clear that the *Kennedy* Plaintiffs have failed to carry their burden to establish standing. In addition, the Supreme Court's standing analysis in *Missouri* and its clarification of the relevant First Amendment principles in *National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024), make clear that the government is likely to succeed on the merits.

*First*, the Supreme Court's decision in *Missouri* demonstrates that the *Kennedy* Plaintiffs lack standing to obtain a preliminary injunction. The *Kennedy* Plaintiffs stated that they "do not rest their claims on censorship of their own speech. Rather, Plaintiffs have brought this case as (and on behalf of) social media *users*, whose right to an uncensored public square is being

7

systematically violated." Dkt. 20 at 2.[1]  And this is the sole basis for standing that this Court found for Plaintiff Sampognaro, who "submitted no direct evidence of content suppression."  Dkt. 38 at 11.  But the Supreme Court rejected this "startlingly broad" theory, "as it would grant all social-media users the right to sue over *someone else's* censorship—at least so long as they claim an interest in that person's speech."  *Missouri*, 2024 WL 3165801, at *16.  And the Court held that such a theory fails to establish an Article III injury absent "any specific instance of content moderation" of a third-party to whom Plaintiff had a "concrete, specific connection," "that caused [plaintiff] identifiable harm," *id.* at *16-17.  Plaintiffs fail to supply any such example.

Nor can the *Kennedy* Plaintiffs rely on a direct censorship theory of standing following *Missouri* because they have failed to show any future injury that is traceable to the government conduct they seek to enjoin—much less any future injury that is traceable to *each* of the governmental Defendants covered by the preliminary injunction.  *Id.* at *7-8; *see id.* at *9 ("'[P]laintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'") (citation omitted).  In *Missouri*, the Supreme Court explained that "[t]he primary weakness in" the plaintiffs' reliance on "past restrictions" of their content by social-media platforms is that this Court made no "specific causation findings with respect to any discrete instance of content moderation"—in other words, no findings that any act of content moderation was attributable to actions by Defendants (much less a particular Defendant) as opposed to the third-party platforms' exercise of their independent discretion.  *Id.* at *8.  The *Kennedy* Plaintiffs motion for a preliminary injunction, which "submit[s] no new evidence," Dkt. 6-1 at 1, did not rectify that deficiency.

This Court's finding (Dkt. 38 at 9-10) regarding moderation of the "Disinformation Dozen" does not establish past injury traceable to the conduct of Defendants under the standards the

---

[1]  Having sought the preliminary injunction under a now-repudiated theory of standing, the *Kennedy* Plaintiffs waived any argument that they have standing based on injuries suffered in their capacity as speakers on social-media platforms.  *See Ctr. for Biological Diversity v. U.S. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) ("Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived.")

8

Supreme Court applied in *Missouri*. Although it is true that Kennedy was one member of the "Disinformation Dozen" identified by White House officials as "supposedly responsible for a majority of COVID-19 misinformation" in 2021, *Missouri*, 2024 WL 3165801, at *12, Kennedy adduced no evidence establishing that any social-media company's action against his accounts can be attributed to the actions of a Defendant. In fact, the record evidence is to the contrary: Facebook explained that it removed pages and accounts linked to the "[D]isinformation [D]ozen" "for violating [Facebook's] policies," and noted that it was not imposing a complete ban because "the remaining accounts associated with these individuals [were] not posting content that [broke Facebook's] rules." *Missouri*, Dkt. 10-1, Ex. 37 at 1. That suggests the relevant actions reflected the platform's own decisions, not any governmental action. *See Missouri*, 2024 WL 3165801, at *9 ("For instance, Facebook announced an expansion of its COVID-19 misinformation policies in early February 2021, before White House officials began communicating with the platform. And the platforms continued to exercise their independent judgment even after communications with the defendants began."); *see also id.* at *13 n.8.[2]

But even if the *Kennedy* Plaintiffs could establish past injury traceable to the government, they fail to demonstrate the real and immediate threat of future injury required to establish standing to seek an injunction. The Supreme Court in *Missouri* emphasized that, "without proof of an ongoing pressure campaign, it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants." *Id.* at *13. And "[o]n this record"—which is the same record in *Kennedy*—the Supreme Court emphasized that the alleged "frequent, intense communications that took place in 2021 [between the Government defendants and the platforms] had considerably subsided by 2022." *Id.* at *15. Accordingly, this Court's reliance on White House and Surgeon General's Office communications in 2021 regarding the then-acute

---

[2] In the complaint, the Kennedy Plaintiffs allege in conclusory fashion that Facebook "censored" Kennedy (without identifying what expression was moderated) as part of the Disinformation Dozen, Compl. ¶ 305, but they present no allegation (let alone evidence as required at the preliminary injunction stage) linking such decision to a governmental action (let alone action by a particular Defendant).

9

COVID-19 pandemic, *see* Dkt. 38 at 9-10, cannot support the *Kennedy* injunction given the Supreme Court's instruction to account for the "considerabl[e]" change in circumstances by the time the suit was filed, *Missouri*, 2024 WL 3165801, at *15. Under the Supreme Court's decision, evidence of governmental communications with the platforms in 2021 cannot demonstrate a sufficient likelihood of future injury. *Id.* at *16 (because "the Federal Government has wound down its own pandemic response measures," an injunction directed at the government "is unlikely to affect the platforms' content-moderation decisions" in the future). Dissolution of the injunction is the appropriate result. *See Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019) (dissolving injunction because "it is not in the public interest to continue enjoining directives that no longer exist").

But even if this Court believes that some of the *Kennedy* Plaintiffs might have standing notwithstanding *Missouri*, it should issue an indicative ruling that it would dissolve the preliminary injunction because that injunction is substantially overbroad in its current form. The preliminary injunction covers defendants who had nothing to do with the COVID-19-related posts that are the subject of the *Kennedy* Plaintiffs' complaint, and it applies universally, to all posts, by anyone, on any platform, on any subject. But Article III requires that "[a] plaintiff's remedy … be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), so any injunctive relief afforded must redress only the *Kennedy* Plaintiffs' future injury traceable to Defendants' ongoing conduct, *see Missouri*, 2024 WL 3165801, at *9 ("The plaintiffs faced speech restrictions on different platforms, about different topics, at different times. Different groups of defendants communicated with different platforms, about different topics, at different times. And even where the plaintiff, platform, time, content, and defendant line up, the links must be evaluated in light of the platform's independent incentives to moderate content."). Accordingly, dissolution of the injunction is prudent so that this Court can reevaluate the situation with the benefit of additional briefing.

*Second*, even if any Plaintiff had standing, the Supreme Court's decisions in *Missouri* and *National Rifle Association* clarify the law in a way that renders Plaintiffs unlikely to succeed on

10

the merits, which also warrants dissolution of the injunction. *See Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) ("A preliminary injunction is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors," including showing "a substantial likelihood of success on the merits."). Many of the deficiencies that the Supreme Court identified with the factual showings on traceability also infect the merits of the state-action inquiry into whether the platforms' actions reflected a coercive threat (or comparably compelling inducement) by the government rather than the exercise of their own independent judgment. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). As the Supreme Court recently emphasized in a decision issued after the *Kennedy* preliminary injunction, it is perfectly "permissible" for the government to "attempt[] to persuade" a private party not to disseminate speech, *National Rifle Association*, 602 U.S. at 188, so even a showing that platforms would not have taken content-moderation actions against plaintiffs' speech but for the government's actions would not suffice to show that those actions violated the First Amendment. Rather, the relevant question is whether the government's "conduct … , viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Id.* at 191.

The *Kennedy* Plaintiffs are unlikely to be able to demonstrate on the merits that the government coerced the platforms to act given the difficulties identified by the Supreme Court in even establishing that the government's actions influenced the platforms. *See Missouri*, 2024 WL 3165801, at *13 n.8 ("acknowledging the real possibility that Facebook acted independently in suppressing [the plaintiff's] content"). Accordingly, the injunction should be dissolved. *See Eisenberg v. Citibank NA*, Case No. 2:13-cv-01814-CAS, 2016 WL 6998559, at *4 (C.D. Cal. Nov. 29, 2016) (dissolving preliminary injunction premised on no-longer-tenable claims).

## II. In The Alternative, The Court Should Stay The Preliminary Injunction Pending Appeal.

If this Court declines to issue an indicative ruling that it will dissolve the *Kennedy* preliminary injunction, it should stay that injunction pending appeal. This Court may issue such

11

a stay under Federal Rule of Civil Procedure 62(d), which provides that, "[w]hile an appeal is pending from an interlocutory order … that grants … an injunction," such as the preliminary injunction order in this case, "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  See also, e.g., *Henry v. Abernathy*, Case No. 2:21-cv-797-RAH, 2024 WL 203957, at *1 (M.D. Ala. Jan. 18, 2024) ("Federal Rule of Civil Procedure 62(d) provides an exception to" rule that "[t]he filing of a notice of appeal … divests the district court of control over those aspects of the case involved in the appeal," "permitting a district court, in its discretion, to 'suspend, modify, restore, or grant an injunction' during the pendency of the appeal.") (citations omitted); *Defoggi v. N'Diaye*, Case No. 21-cv-12269-NLH, 2023 WL 3775307, at *2 (D.N.J. June 2, 2023) (similar).  That assessment is governed by the *Nken* factors, *supra* 7, which favor a stay.

For the same reasons that the Supreme Court's decision in *Missouri* undermines the legal bases on which this Court granted the *Kennedy* preliminary injunction, *supra* 7-11, Defendants are likely to succeed in their appeal of that injunction.  And the equitable factors similarly support a stay pending appeal.  Indeed, in granting a stay in *Missouri*, 144 S. Ct. 7, the Supreme Court necessarily determined that the equitable factors favored the government on an appeal from an injunction "against the same Defendants and on the same grounds," Dkt. 38 at 22-23.  That stay indicates the Supreme Court's view that the government would suffer irreparable injury absent a stay and that the balance of equities favors the government.  *See, e.g.*, *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 922 (2024) (Gorsuch, J., concurring) (noting the factors considered by the Supreme Court when considering whether to grant a stay); *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring) (same).  In analogous circumstances, the Fifth Circuit has issued a stay pending appeal of an injunction against an agency rule in light of "the stay granted by the Supreme Court" in a case brought by different parties challenging the same rule.  Order at 1, *Polymer 80, Inc. v. Garland*, No. 23-10527 (5th Cir. Nov. 30, 2023).  So have other district courts. *See, e.g.*, *California v. Trump*, 407 F. Supp. 3d 869, 907 (N.D. Cal. 2019) ("[T]he Supreme Court's stay of this Court's prior injunction order appears to reflect the conclusion of a majority of that

12

Court" that the enjoined conduct "should be permitted to proceed pending resolution of the merits."), *aff'd sub nom. Sierra Club v. Trump*, 977 F.3d 853 (9th Cir. 2020), *cert. granted, judgment vacated sub nom. Biden v. Sierra Club*, 142 S. Ct. 56 (2021).

Even independent of the Supreme Court's prior determination to grant a stay and Defendants' significant likelihood of success on an appeal, the equities favor a stay. *First*, there is no basis to conclude that the *Kennedy* Plaintiffs face ongoing or imminent irreparable injury if a stay were granted. As the Supreme Court explained in *Missouri*, many of the meetings between Defendants and the platforms that this Court relied on to find coordination—and thus imminent injury—have long since stopped. *See Missouri*, 2024 WL 3165801, at *15 ("The CDC stopped meeting with the platforms in March 2022."); *id.* at *16 ("[T]he White House disbanded its COVID-19 Response Team, which was responsible for many of the challenged communications in this case."). But even if some meetings continued, the mere fact that some government officials continue to meet with platforms is irrelevant to the question of imminent irreparable injury: the court "must confirm that *each* Government defendant continues to engage in the challenged conduct, which is 'coercion' and 'significant encouragement,' not mere 'communication,'" *id.* at *14.

Although the *Kennedy* Plaintiffs allege a sprawling network of content moderation, Plaintiffs CHD and Sampognaro assert harm only to their interests in *reading* COVID-19-related content, *see* Compl. ¶¶ 35-45. Now that the Supreme Court has decisively rejected the "right to listen" theory, however, the only cognizable harm that Plaintiffs can rely on concerns the alleged moderation of Plaintiff Robert F. Kennedy, Jr.'s speech pertaining to COVID-19. Accordingly, the *Kennedy* Plaintiffs cannot possibly show harm from the activities of the CISA Defendants or the FBI Defendants, *see Missouri*, 2024 WL 3165801, at *9 ("[F]or every defendant, there must be at least one plaintiff with standing to seek an injunction. This requires … that a particular defendant pressured a particular platform to censor a particular topic before that platform suppressed a particular plaintiff's speech on that topic."), neither of which are alleged to moderate COVID-19-related topics and both of which are subject to the injunction in its current form.

Likewise, "the Federal Government has wound down its own pandemic response measures," making it unlikely that the *Kennedy* Plaintiffs will suffer any harm from platforms' content-moderation decisions traceable to the conduct on that topic of the remaining Defendants' subject to the injunction. *Id.* at *16.

*Second*, unless stayed, the preliminary injunction will irreparably harm the government and undermine the public interest. *See Nken*, 556 U.S. at 435 (harms to government and public "merge"). Because the universal preliminary injunction here is identical to the injunction in *Missouri*, it also will inflict exactly the same harms that the Supreme Court found sufficient to issue a stay in that case. *Cf.* Application for a Stay of the Injunction at 36-38, *Murthy v. Missouri*, No. 23-411 (U.S. Sep. 14, 2023). The harms to the government—which are both certain and great—outweigh plaintiffs' asserted interests for the pendency of the appeal.

## CONCLUSION

This Court should enter an indicative ruling that it would dissolve its preliminary injunction of February 14, 2024, if the Fifth Circuit were to remand for the purpose of allowing it to do so. In the alternative, this Court should stay that preliminary injunction pending appeal.

| | |
|---|---|
| Dated: July 8, 2024 | Respectfully submitted, |
| | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
| | JOSHUA E. GARDNER<br>Special Counsel, Federal Programs Branch |
| | JOSEPH E. BORSON<br>Assistant Director, Federal Programs Branch |
| | */s/ Alexander W. Resar*<br>INDRANEEL SUR (D.C. Bar No. 978017)<br>ALEXANDER W. RESAR (N.Y. Bar No. 5636337)<br>CATHERINE M. YANG (N.Y. Bar No. 5319736)<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington D.C. 20005<br>Tel: (202) 616-8188<br>alexander.w.resar@usdoj.gov |
| | *Attorneys for Defendants* |

15