# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STATE OF MISSOURI ex rel. ERIC S. SCHMITT, Attorney General, and<br><br>STATE OF LOUISIANA ex rel. JEFFREY M. LANDRY, Attorney General,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*;<br><br>*Defendants*. | Case No. 3:22-cv-01213 |

### DECLARATION OF DR. AARON KHERIATY

I, Dr. Aaron Kheriaty, declare as follows:

1. I am an adult of sound mind and make this statement voluntarily, based upon my knowledge, education, and experience.

2. I am a physician specializing in psychiatry and author of three books and over one hundred articles. I serve as a Fellow and Director of the Program in Bioethics and American Democracy at the Ethics and Public Policy Center. I also currently serve in teaching and advisory roles at the Brownstone Institute, the Zephyr Institute, the Paul Ramsey Institute, and the Simone Weil Center for Political Philosophy.

3. I graduated from the University of Notre Dame in philosophy and pre-medical sciences, earned my MD degree from Georgetown University, and completed residency training in psychiatry at the University of California Irvine. For many years I was Professor of Psychiatry at UCI School of Medicine and Director of the Medical Ethics Program at UCI Health, where I

1

chaired the hospital ethics committee. I also chaired the ethics committee at the California Department of State Hospitals for several years. I was fired from the University of California after challenging the University's covid vaccine mandate in federal court. As described below, I was subjected to censorship on social media for advocating positions in this lawsuit and publicly online that are now regarded as scientifically sound and mainstream.

4.  I have authored books and articles for professional and lay audiences on bioethics, public health, civil liberties, political theory, social science, psychiatry, philosophy, religion, and culture. My work has been published in the Wall Street Journal, the Washington Post, Newsweek, The Federalist, Compact, The New Atlantis, Public Discourse, City Journal, and First Things. I have conducted print, radio, and television interviews on bioethics topics with The New York Times, the Los Angeles Times, NBC, CBS, CNN, Fox, NPR, EWTN, and Epoch TV. For my work on the issue of free speech and government censorship, journalist Matt Taibbi has described me as "the most ambitious theorist of the censorship-industrial age."

5.  On matters of public policy and healthcare I have addressed the California Medical Association and have testified before the California Senate Health Committee and the United States Senate. I consulted on covid-related ethical issues during the pandemic for the University of California Office of the President, the County of Orange Healthcare Agency, and the California Department of Public Health.

6.  As described in my original declaration in this case, dated 3 June 2020, I experienced many instances of censorship on social media (particularly Twitter [now X], LinkedIn, and YouTube) related to my critiques of the government's covid policies, as I attempted to share scientifically validated information from peer reviewed studies, and advocated for more ethically sound covid policies. Given the information we have obtained in this case on discovery, I have strong reasons

2

to believe that this censorship was done—at least in some instances—at the behest of federal agencies, which pressured social media companies to censor content critical of the government's pandemic policies, even at times altering their content moderation policies and terms of service in response to government pressure, coercion, and significant encouragement.

7. Since filing that original declaration, I have continued to experience censorship on social media platforms on content consistent with precisely the kind of content the government was flagging for removal. While X now censors less frequently under the management of Elon Musk, Facebook, LinkedIn, and YouTube have continued stringent censorship practices that significantly limit my ability to reach audiences on those platforms. As a consequence, I no longer share many of the articles I publish on LinkedIn, for fear that too many instances of flagging or censorship could result in my account being suspended, as has happened to other credible doctors and scientists, like my co-plaintiff Martin Kulldorff, who dared to challenge the government's preferred covid policies on that platform. LinkedIn is an important professional networking tool for me, and a means of communicating with other colleagues in the field, and I do not want to risk the loss of my account. As a consequence, and based on prior experience with this platform, I now engaged in a kind of careful "self-censorship" lest I be punished with the loss of access to that platform.

8. For the same reason, I no longer share content on Facebook that might be flagged for censorship, or the type of content that has been flagged by government agencies in the past. In this regard, I consider it significant that in a recent letter to Congress, Mark Zuckerberg, CEO of Facebook, admitted that his company censored under pressure from the government, and he expressed regret for these actions.

9. In my original declaration, I described an instance of censorship on YouTube when my podcast interview on the topic of vaccine mandates with Emmy Award winning journalist Alyson Morrow (previously of CBS News) was censored, and Morrow's account was temporarily suspended as a consequence of posting that interview. I have done subsequent interviews with Morrow—including on the topic of censorship itself and on the proceedings of this court case—which she does not even bother to post on YouTube, lest she risk permanent suspension.[1] This self-censorship to avoid permanent loss of access to a platform limits audience reach and impact.

10. A particularly egregious and absurd instance of censorship on YouTube that has occurred since my original declaration was filed, which happens to be directly related to this case, and which impacted my ability to share information with my 300,000+ followers on X and my 23,000+ Substack subscribers, occurred in July of 2023. The New Civil Liberties Alliance hosted a "lunch and law" series with three of our lawyers on this case (John Vecchione, Zhonette Brown, and John Sauer) discussing the topic, "What *Missouri v. Biden* Means for Free Speech." YouTube quickly removed the video of this talk, censoring an important discussion on the topic of… government censorship![2] As a consequence, the video platform that has, by far, the largest reach and influence (YouTube) could not be used to share information about this very case, which this court has acknowledged is among the most significant and potentially consequential free speech cases in recent history.

11. Not only is censorship on covid and other government policies continuing on social media in ways that are entirely consistent with the government's directives, as documented in

---

[1] Cf. for example, "Online Censorship: Old News? With Aaron Kheriaty," *Alison Morrow*, 17 July 2021, available on Rumble but not YouTube: https://rumble.com/v57bqp1-online-censorship-old-news-dr.-aaron-kheriaty.html

[2] Cf. Aaron Kheriaty, "Clown World, YouTube Edition," *Human Flourishing*, 28 July 2023. Available at https://aaronkheriaty.substack.com/p/clown-world-youtube-edition

4

communications we obtained on discovery in this case, but censorship of content I want to share—*produced by my own lawyers in this case discussing this case*—also continues to occur on the largest and most influential social media platforms. This suggests that the government is trying to sway public opinion not just on covid, election integrity, and the other issues described in our original Complaint, but that the government is pressuring social media companies to censor in order to sway public opinion *on this case itself*. It's Orwellian, in the extreme, and a disservice to all Americans who care about this First Amendment issue and are with keen interest trying to follow the proceedings of this case.

12. I swear and affirm under penalty of perjury that the foregoing is true and correct.

Dated: 18 October 2024        Signed: */s/ Aaron Kheriaty*

5