IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STATE OF MISSOURI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America, *et al.*, <br><br> *Defendants*. | No. 22-cv-1213 <br><br> *Consolidated with No. 23-cv-381* <br><br> Judge Terry A. Doughty <br> Mag. Judge Kayla D. McClusky |

**[[PROPOSED]] DEFENDANTS' SURREPLY IN FURTHER RESPONSE TO THE COURT'S ORDER OF AUGUST 27, 2024**

The Supreme Court held that Plaintiffs had not met their burden to establish Article III standing to seek a preliminary injunction against Defendants by showing a "real and immediate threat of repeated injury." *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024). Plaintiffs responded to this Court's order of August 27, 2024 concerning remand with an opening brief that relied on new declarations from two of the Plaintiffs (Jill Hines and Jay Bhattacharya). Dkt. 391. Defendants accordingly addressed the deficiencies in those two declarations in their answering brief. Dkt. 394 at 15-24. In Plaintiffs' reply filed October 29, 2024—without previous notice to Defendants and without leave of this Court—Plaintiffs have relied on new declarations, one each from the three individual Plaintiffs who did *not* submit declarations for Plaintiffs' opening brief. Dkt. 399-1 (4th Hoft Decl.) & Reply 11; Dkt. 399-2 (3d Kulldorff Decl.) & Reply 13-14; Dkt. 399-3 (3d Kheriaty Decl.) & Reply 14-15. As Defendants explain in their motion for leave to file the instant surreply, the three new declarations should be stricken as procedurally improper, but in any event, even if this Court were to consider them, they are inadequate to cure the deficiencies in Plaintiffs' Article III standing under the analysis the Supreme Court prescribed in *Missouri*.

The new declarations do not show that any social media platform's content moderation decisions are traceable to past conduct by any particular Defendant. And the new declarations fail to show ongoing or continuing conduct by any particular Defendant that would meet the fundamental requirements of traceability and redressability for prospective relief. Hence, the new declarations cannot avert dismissal of this action for lack of subject-matter jurisdiction, let alone justify any further discovery.

Article III mandates a "concrete link between [plaintiffs'] injuries and the defendants' conduct" both in the past and on an ongoing basis. *Missouri*, 144 S. Ct. at 1997; *see id.* at 1989-92 (addressing causation for past injury); *id.* at 1993-96 (addressing causation and redressability for future injury). The focus must be on "particular" conduct: For example, as to a *past* injury, the plaintiff must show that a "particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." *Id.* at 1988. The new declarations do not cure the deficiencies in Plaintiffs' previous submissions, proffering no evidence that any content moderation decisions by social media platforms (which are not before this Court) are traceable to Defendants, or that any ongoing or future platform restriction against a Plaintiff is caused by, and capable of redress via an injunction against, Defendants. And Plaintiffs again do not heed the instruction that "even where the plaintiff, platform, time, content, and defendant line up, the links must be evaluated in light of the platform's independent incentives to moderate content." *Id.* at 1988.

**1.** *Kheriaty*. Kheriaty reiterates past "instances of censorship on social media . . . related to" his "critiques" of COVID-19 "policies," and then speculates (without any supporting evidence) that the platforms "at least in some instances" acted "at the behest of federal agencies"—without specifying particular alleged acts by particular Defendants. 3d Kheriaty Decl. ¶ 6. Those speculative and "conclusory assertions" cannot satisfy Plaintiffs' burden, *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 545 (5th Cir. 2019), including because he improperly treats Defendants "as a monolith," *Missouri*, 144 S. Ct. at 1993, and because he proffers no facts showing a particular content moderation decision was caused by the conduct of any particular Defendant.

2

Nor does his new declaration describe any ongoing or continuing conduct by any particular Defendant that would support traceability or redressability necessary for injunctive relief against the Government. Kheriaty acknowledges that "X now censors less frequently," 3d Kheriaty Decl. ¶ 7, and that Meta CEO Mark Zuckerberg "expressed regret" for past incidents of content moderation during the COVID-19 pandemic, *id.* ¶ 8, *see* Dkt. 394 at 28. Yet he states he still performs "a kind of careful 'self-censorship'" on LinkedIn and Facebook, 3d Kheriaty Decl. ¶¶ 7-8, and describes such "self-censorship" by a nonparty speaker with whom he recorded an interview, *id.* ¶ 9. But the Supreme Court rejected exactly such "self-censorship" as a basis for standing. *Missouri*, 144 S. Ct. at 1995.[1] And because Kheriaty does not assert any other ongoing or imminent injury traceable to Defendants or redressable by an injunction against them, his declaration does not show standing even if his assertions were accepted as true. *See id.* at 1993 ("[W]ithout proof of an ongoing pressure campaign, it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants.").

**2.** *Kulldorff.* Kulldorff's description of a March 2021 Twitter incident concerning his post on COVID-19 vaccines cannot confer standing because he supplies no basis for attributing that incident to past conduct by any Defendant; instead, he asserts his post was moderated "at the direct request" of "Virality Project at Stanford University." 3d Kulldorff Decl. ¶ 6. But his conclusory assertion that that research entity is "government initiated and funded" flouts the record, which, as Defendants have explained, cannot support a finding that the Virality Project's recommendations are attributable to any Defendant. Dkt. 394 at 16 n.3 (citing Defs.' PI Opp. 49-51 (Dkt. 266)).

---

[1] Also deficient is the description of an "instance of censorship of YouTube" in July 2023 as to a video about this action "with three of" Plaintiffs' "lawyers on this case." 3d Kheriaty Decl. ¶ 10. Kheriaty does not assert that the video contained *his* speech, as distinct from the speech of his lawyers, and there is no basis for him to assert the rights of his lawyers. *Cf. Missouri*, 144 S. Ct. at 1990 ("It is unclear why" plaintiff "Jim Hoft would have standing to sue for his brother's injury" stemming from content moderation of past post by Hoft's brother); *Abdullah v. Paxton*, 65 F.4th 204, 210 (5th Cir. 2023). In any event, Kheriaty does not even allege, let alone establish through evidence, that the incident is traceable to any Defendant or redressable by an order against any Defendant.

Moreover, beyond reiterating deficient assertions of "self-censorship," *see* 3d Kulldorff Decl. ¶ 8, Kulldorff offers no ground for concluding that the particular content moderation incidents he describes since he joined as a Plaintiff in August 2022 are traceable to the ongoing conduct of any Defendant or redressable by an order against any Defendant. *See id.* ¶ 3 (Oct. 2024 LinkedIn restriction of post on COVID-19 vaccines); *id.* ¶ 4 (Apr. 2024 TikTok restriction of interview on "public health"). He does not attempt to address, let alone prove, that in those incidents, the platforms did anything other than "exercise their independent judgment" under their terms of service and policies. *See Missouri*, 144 S. Ct. at 1987-88.

**3.** *Hoft*. Hoft describes past content moderation incidents, including asserted "censorship and attacks" on his "online publication, The Gateway Pundit," that "began in the weeks and months *before*" publication of certain reports *in 2017*. *See* 4th Hoft Decl. ¶¶ 4, 9-11 (emphasis added). Those events took place years before the vast majority of the conduct challenged here, and hence cannot provide the "causal link" necessary for standing. *See Missouri*, 144 S. Ct. at 1989.

And timing aside, Hoft makes no attempt to "line up" platform, content, and defendant as to past injury. *See Missouri*, 144 S. Ct. at 1988. He asserts that he "deserve[s] to have *the opportunity to find out* whether CISA, the FBI, or any other agencies ultimately were responsible for" the alleged "censorship" of his publication, 4th Hoft Decl. ¶ 21 (emphasis added), which his readers have reported to him occurred on various platforms, *see id.* ¶ 31. He also asserts that the Department of Defense—which is not a Defendant—was responsible for some of the content moderation incidents he describes. *Id.* ¶ 34. But where, as here, a Plaintiff openly asserts lack of evidence of standing, he has not carried his burden to show standing, so the correct disposition is dismissal for lack of subject-matter jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), not launching of a "jurisdictional fishing expedition," *Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010).

Hoft's attempt (4th Hoft Decl. ¶¶ 14, 16) to establish causation of past harm by relying on assertions about the Election Integrity Partnership also fails. The Supreme Court characterized that organization as a "private entity," *Missouri*, 144 S. Ct. at 1990, consistent with record evidence

4

Plaintiffs fail to rebut, *see, e.g.*, Defs.' PI Opp. Ex. 122 at 6 (Dkt. 265-5). In any event, there is no basis for speculating that the now-defunct EIP might induce platforms to moderate the content of Hoft or any other Plaintiff at the Government's behest in the future, given that EIP "finished its work after the 2022 election and will not be working on the 2024 or future elections." *See* EIP, Home, https://perma.cc/66L6-KFVY.

Also tellingly absent from Hoft's new declaration are attested facts supporting causation or redressability necessary for prospective relief as to any Defendant—namely, not just concerning past injury but ongoing or continuing conduct by the Government causing "a real and immediate threat of repeated injury," *Missouri*, 144 S. Ct. at 1986 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974))—including as to the FBI or CISA in connection with election misinformation. *Missouri*, 144 S. Ct. at 1994; *see* Dkt. 394 at 21-24 (parallel argument as to Hines and Bhattacharya). [2]

*    *    *    *    *

Even if this Court declines to strike the new declarations Plaintiffs filed with their reply, for the reasons above, the Court should reject the new declarations as insufficient to show Article III standing, and hence insufficient to avert dismissal of the action for lack of subject-matter jurisdiction. Nor can the new declarations justify any further discovery.

---

[2] Additionally, advertising sales policy choices by online retailer Amazon (or any other company) have never been alleged in this action to cause Hoft's purported harms from "election and COVID-19-related restrictions on various platforms." *See Missouri*, 144 S. Ct. at 1989. So Hoft's scattershot new assertions about such advertising sales policy choices (past or present) cannot show standing in this action. *See* 4th Hoft Decl. ¶ 12 (Amazon advertisement sales); *see also id.* ¶¶ 17, 30(c) (Google advertisement sales); *id.* ¶ 29 (allegation as to unspecified "major ad agencies"). Nor can standing be predicated on his new assertions about a mobile telephone company's "links in text messages," *see id.* ¶¶ 18-19, 24, given that Plaintiffs' asserted harms do not concern mobile telephone policies regarding text messages.

Dated: November 1, 2024	Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

JOSEPH E. BORSON
Assistant Director, Federal Programs Branch

<u>/s/ Indraneel Sur</u>
INDRANEEL SUR (D.C. Bar No. 978017)
Senior Counsel
ALEXANDER W. RESAR (N.Y. Bar No. 5636337)
CATHERINE M. YANG (N.Y. Bar No. 5319736)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Washington D.C. 20005
Tel: (202) 616-8488
indraneel.sur@usdoj.gov

*Attorneys for Defendants*