IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STATE OF MISSOURI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America, *et al.*, <br><br> *Defendants*. | No. 22-cv-1213 <br><br> *Consolidated with No. 23-cv-381* <br><br> Judge Terry A. Doughty <br> Mag. Judge Kayla D. McClusky |

**NOTICE OF FIFTH CIRCUIT DECISION IN CONSOLIDATED CASE
IN FURTHER RESPONSE TO THE COURT'S ORDER OF AUGUST 27, 2024**

The U.S. Court of Appeals for the Fifth Circuit on November 4, 2024 issued an opinion applying *Murthy v. Missouri*, 144 S. Ct. 1972 (2024), and concluding that the Plaintiffs in the consolidated action, *Kennedy v. Biden*, "lack standing to seek a preliminary injunction against Defendants," and on that basis vacating the preliminary injunction in *Kennedy* and remanding to this Court. *Missouri v. Biden*, No. 24-30252, 2024 WL 4664015 at *1 (5th Cir. Nov. 4, 2024) (*per curiam*) (unpublished) (attached as Exhibit A). The Court of Appeals instructed this Court on remand to "dismiss" the *Kennedy* "suit for lack of standing" unless this Court determines the *Kennedy* Plaintiffs have established standing to seek any of the other relief they seek. *See id.* at *1 & n.1.

Defendants respectfully submit that the Fifth Circuit's decision in *Kennedy* supports dismissal in *Missouri* for two distinct reasons. First, the Fifth Circuit's analysis confirms the *Missouri* Plaintiffs lack Article III standing even if their supplemental declarations were fully credited because the supplemental declarations in *Missouri* suffer from the same deficiencies that the Fifth Circuit identified in *Kennedy*. Second, the Fifth Circuit's disposition in *Kennedy*—directing dismissal without prejudice unless the *Kennedy* Plaintiffs can establish standing for

another form or relief—confirms that dismissal of the *Missouri* action is appropriate because the *Missouri* Plaintiffs, like the *Kennedy* Plaintiffs, lack standing to obtain all forms of relief sought.

In particular, the Fifth Circuit rejected the *Kennedy* Plaintiffs' argument that their declarations filed post-*Missouri*—from (1) CHD chief executive Mary Holland and; (2) Kennedy campaign chief of staff Brigid Rasmussen—show "that Defendants specifically targeted Mr. Kennedy and CHD for censorship, that particular Defendants were indeed 'behind' their censorship, and that their censorship is not merely in the past, but is present and continuing today." 2024 WL 4664015 at *2.

As to the Holland Declaration: The Fifth Circuit tracked the Supreme Court's rejection of Plaintiff Hines's showing of Article III standing in *Missouri*. The Fifth Circuit quoted the Supreme Court's conclusion that "the frequent, intense communications" about COVID-19 "that took place in 2021" between platforms and Defendants, including the White House staff and the Centers for Disease Control and Prevention, "had considerably subsided by 2022," when the *Missouri* Plaintiffs commenced the lead action. 2024 WL 4664015 at *3 (quoting *Missouri*, 144 S. Ct. at 1994). Against that background, the Court of Appeals reasoned, even if CHD and Kennedy "continue to be censored" by social media platforms not before the Court under policies affected by purported past Government conduct, "without evidence of continued pressure from the [D]efendants, it appears that the platforms remain free to enforce, or not to enforce, those policies." *Id.* (quoting *Missouri*, 144 S. Ct. at 1995). The Fifth Circuit therefore concluded that despite the *Kennedy* Plaintiffs' efforts to show otherwise through the Holland Declaration, the Kennedy Plaintiffs "have the same redressability problem" as did the Plaintiffs in *Missouri*. *Id.*

As to the Rasmussen Declaration: The Fifth Circuit emphasized that the Kennedy campaign chief of staff "does not trace any of the platforms' content-moderation actions against Kennedy back to the [G]overnment." 2024 WL 4664015 at *4. And the Fifth Circuit concluded that the *Kennedy* Plaintiffs' assertion that some Defendants "have restarted discussions with social media platforms about removing election-related disinformation" was insufficient. *Id.* Rather, "[t]hese allegations fare no better than the election-based allegations in *Missouri*," where Plaintiff

2

Hoft—"the lone plaintiff in *Missouri* who alleged censorship of election-related content"—lacked standing for a preliminary injunction against FBI or CISA in connection with such "election-related content," because Hoft had failed to establish traceability "to the Government defendants." *See id.* (quoting *Missouri*, 144 S. Ct. at 1993). Given that the Rasmussen declaration showed no Government conduct "responsible for suppression of Kennedy's campaign content," Kennedy relied only on the same "speculative chain of possibilities" that foreclosed Hoft's standing in *Missouri*, and "if the FBI "states that it will continue to communicate with platforms regarding election misinformation," that "does not" make Kennedy's "chain . . . any less speculative." *Id.* (applying *Missouri*, 144 S. Ct. at 1993). The Fifth Circuit added that, "[i]f anything," Kennedy's causation and redressability arguments required even more conjecture than Hoft's because Kennedy "now . . . has suspended his presidential campaign." *Id.*

The Fifth Circuit's analysis and disposition of the *Kennedy* preliminary injunction confirms that Plaintiffs err in relying on this Court's post-*Missouri* decision in *Kennedy*. Dkt. 391 at 20-21; Dkt. 399 at 11. Plaintiffs' new declarations in *Missouri* are not meaningfully different from the declarations the Fifth Circuit ruled insufficient in *Kennedy* because the declarations in both actions fail to establish that any particular content-moderation decisions were attributable to the *past* acts of any particular Defendant and, in any event, do not show that any of the content moderation incidents Plaintiffs describe are caused by *ongoing or continuing* conduct of any Defendant, or redressable by an injunction against any Defendant. *See* Dkt. 394 at 15-24 (deficiencies as to Hines and Bhattacharya); Dkt. 402 (deficiencies as to Kheriaty, Kulldorff, and Hoft). Plaintiffs therefore have not shown that any of them has met their burden to establish Article III standing by showing a "real and immediate threat of repeated injury" traceable to or redressable by a court order against Defendants. *See Missouri*, 144 S. Ct. at 1986. Just as the Fifth Circuit reasoned in *Kennedy*, even if Plaintiffs had managed through their latest declarations to show injury from past Government communications with platforms as to COVID-19 misinformation, they lack causation and redressability for Article III standing to seek injunctive relief against Defendants, and the action should be dismissed for lack of subject-matter jurisdiction.

3

Furthermore, the Fifth Circuit's instructions on remand in *Kennedy* clarify the proper course of further proceedings in the *Missouri* action. The Fifth Circuit did not indicate that the *Kennedy* Plaintiffs' failure to establish Article III standing to seek a preliminary injunction in any way implies that the *Kennedy* Plaintiffs can seek discovery—jurisdictional or otherwise—or that the *Kennedy* action can otherwise continue. To the contrary: The Fifth Circuit instructed that this Court must dismiss the *Kennedy* action for lack of subject-matter jurisdiction if the *Kennedy* Plaintiffs cannot show standing for any other form of relief. 2024 WL 4664015 at *1 & n.1. That instruction is informative here. Because the *Missouri* Plaintiffs have not established standing consistent with the Supreme Court's analysis in *Missouri*, applying the Fifth Circuit's instruction in *Kennedy* here supports dismissal for lack of subject-matter jurisdiction rather than launching into discovery as Plaintiffs have argued. Other than an injunction, the only remedy Plaintiffs have sought in this action is a declaratory judgment. 3d Am. Compl., Prayer for Relief ¶¶ B-D (Dkt. 268). Just as the failure to establish causation and redressability from pertinent ongoing or continuing Government conduct forecloses Plaintiffs' Article III standing, that same failure defeats Plaintiffs' effort to show a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007); *California v. Texas*, 593 U.S. 659, 672 (2021) ("just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement"); *see also Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019).

Dated: November 6, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

JOSEPH E. BORSON
Assistant Director, Federal Programs Branch

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar No. 978017)
Senior Counsel
ALEXANDER W. RESAR (N.Y. Bar No. 5636337)
CATHERINE M. YANG (N.Y. Bar No. 5319736)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Washington D.C. 20005
Tel: (202) 616-8488
indraneel.sur@usdoj.gov

*Attorneys for Defendants*