# EXHIBIT A

Case 3:22-cv-01213-TAD-KDM    Document 403-1    Filed 11/06/24    Page 2 of 5 PageID #: 29685

STATE OF MISSOURI Plaintiff, v. JOSEPH R. BIDEN, JR...., Not Reported in Fed....

2024 WL 4664015
Only the Westlaw citation is currently available.
United States Court of Appeals, Fifth Circuit.

STATE OF MISSOURI Plaintiff,
v.
JOSEPH R. BIDEN, JR. Defendant,
ROBERT F. KENNEDY, JR.; CHILDRENS HEALTH DEFENSE; CONNIE SAMPOGNARO, Plaintiffs—Appellees,
v.
JOSEPH R. BIDEN, JR.; KARINE JEAN-PIERRE; VIVEK H. MURTHY; XAVIER BECERRA; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Et al., Defendants—Appellants.

No. 24-30252
|
Filed: 11/04/2024

Appeal from the United States District Court for the Western District of Louisiana USDC Nos. 3:22-CV-1213, 3:23-CV-381

Before HIGGINBOTHAM, STEWART, and HAYNES, Circuit Judges.

**Opinion**

PER CURIAM:[*]

 **\*1**  In *Murthy v. Missouri*, 144 S. Ct. 1972 (2024), the Supreme Court held that a group of states and social media users lacked standing to seek a preliminary injunction against government defendants for allegedly pressuring social media platforms to suppress the users' content. The present case, which the district court consolidated with *Missouri*, concerns a preliminary injunction granted on the same record. After the Supreme Court's *Missouri* decision, a panel of this court remanded this case to the district court to reconsider standing in light of *Missouri*. Plaintiffs supplemented the record with three declarations, and the district court held that they had satisfied Article III's standing requirements, unlike the plaintiffs in *Missouri*. Because we conclude that Plaintiffs in this case lack standing to seek a preliminary injunction against Defendants, we VACATE the preliminary injunction and REMAND to the district court.[1]

**I. Background**

Missouri, Louisiana, and five social media users sued several federal government defendants for their alleged involvement in content-moderation activity by social media platforms. *See generally Missouri v. Biden*, 680 F. Supp. 3d 630 (W.D. La. 2023). The district court permitted extensive discovery, held a preliminary injunction hearing, and granted the plaintiffs' request for a preliminary injunction. *Id.* at 721, 729. The preliminary injunction enjoined the named defendants and unnamed officials from taking action "for the purpose of urging, encouraging, pressuring, or inducing in any manner the removal, deletion, suppression, or reduction of content containing protected free speech posted on social-media platforms." *Missouri v. Biden*, No. 3:22-CV-1213, 2023 WL 5841935, at \*2 (W.D. La. July 4, 2023). A panel of this court affirmed the district court's injunction as to some defendants and reversed as to others. *Missouri v. Biden*, 83 F.4th 350, 359 (5th Cir. 2023) (per curiam).

The Supreme Court disagreed, holding that no plaintiff had established standing because they had failed to "demonstrate a substantial risk that, in the near future, they will suffer an injury that is traceable to a Government defendant and redressable by the injunction they seek." *Missouri*, 144 S. Ct. at 1981.

While the *Missouri* plaintiffs' preliminary-injunction motion was pending in the district court, Plaintiffs in this case—Robert F. Kennedy, Jr., Children's Health Defense ("CHD"), and Connie Sampognaro—brought a follow-on complaint against a similar group of federal government Defendants.[2] They also moved for a preliminary injunction, but "s[ought] no new discovery and submit[ted] no new evidence," opting instead to rely exclusively on the factual record developed in *Missouri*. After the district court granted a preliminary injunction in *Missouri*, it granted Plaintiffs' motion to consolidate the two cases.

 **\*2**  The district court later granted Plaintiffs a preliminary injunction "on the same grounds as in *Missouri*," but stayed the injunction pending the Supreme Court's resolution of that case. Defendants in this case timely appealed, but we held proceedings in abeyance pending the Supreme Court's decision. A panel of this court then ordered a limited remand "so that the district court [could] reconsider the plaintiffs' standing in the first instance in the light of" the Supreme Court's *Missouri* decision.[3]

On remand to the district court, Plaintiffs supplemented the record with three declarations. The first was from Mary Holland, the chief executive of CHD. The second was from Brigid Rasmussen, the chief of staff for Kennedy's presidential campaign. The third was from Plaintiff Connie Sampognaro, a healthcare professional who relied on social-media platforms for information about the treatment of COVID–19. The district court concluded that the Supreme Court's *Missouri* decision foreclosed Sampognaro's listener-standing theory, but that Kennedy and CHD established standing. Plaintiffs have not cross-appealed the decision regarding Sampognaro and acknowledge that we need not address it. We therefore focus on the other two declarations in our analysis below.

Defendants moved for a stay of the preliminary injunction pending appeal. We granted a temporary administrative stay and carried with the case the motion for stay pending appeal. [4]

### II. Discussion

We review a district court's standing determinations de novo. *Tex All. for Retired Americans v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022). At the preliminary injunction stage, "the plaintiff must make a clear showing that she is likely to establish each element of standing." *Missouri*, 144 S. Ct. at 1986 (internal quotation marks and citation omitted). Because "the parties have taken discovery, the plaintiff cannot rest on mere allegations, but must instead point to factual evidence." *Id.* (internal quotation marks and citation omitted).

In *Missouri*, the Court explained that, to establish standing, "the plaintiffs must show a substantial risk that, in the near future, at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant." *Id.* It also stated that "standing is not dispensed in gross." *Id.* at 1988 (quotation omitted). Rather, "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Id.* (internal quotation marks and citation omitted). "This requires a certain threshold showing: namely, that a particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." *Id.* The Court ultimately concluded that the plaintiffs had not met that burden. *Id.* at 1981.

Plaintiffs in this case rely on the same factual record as the plaintiffs in *Missouri*, plus the declarations mentioned above. So, to the extent Plaintiffs attempt to establish standing on the same basis as the plaintiffs in *Missouri*, the Court has already rejected those arguments. *Id.* at 1986. But Plaintiffs insist that, in light of the new declarations, this case is "utterly different" from *Missouri* because "the facts show that Defendants specifically targeted Mr. Kennedy and CHD for censorship, that particular Defendants were indeed 'behind' their censorship, and that their censorship is not merely in the past, but is present and continuing today." We turn now to the Holland and Rasmussen declarations to evaluate those assertions.

### A. The Mary Holland Declaration

**\*3** Holland states that Meta (Facebook's parent company) and YouTube removed CHD from their platforms in August and September 2021, respectively, and have not since restored CHD to their platforms. She also states that Facebook deplatformed Kennedy in July 2021 and that Instagram did the same sometime prior. She does not allege that Kennedy remains deplatformed. Holland describes certain events in 2021 that cause her to believe that Meta and YouTube acted at the behest of the White House, the Surgeon General, and the CDC to target COVID-related content by members of the so-called "disinformation dozen," which includes Kennedy and CHD. She does not, however, discuss any post-2021 government actions.

Holland's declaration is similar to the evidence put forth regarding Jill Hines's standing in *Missouri.* There, the Court stated that "[o]f all the plaintiffs, Hines ma[de] the best showing of a connection between her social-media restrictions and communications between the relevant platform (Facebook) and specific defendants (CDC and the White House)." *Id.* at 1990. But the Court noted that, even assuming "Hines ha[d] eked out a showing of traceability for her past injuries, the past is relevant only insofar as it predicts the future." *Id.* at 1992. "To obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Id.* at 1993. "But without proof of an ongoing pressure campaign, it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants." *Id.*

The Court in *Missouri* explained that "the vast majority of [the White House's] public and private engagement with the platforms occurred in 2021, when the pandemic

Case 3:22-cv-01213-TAD-KDM    Document 403-1    Filed 11/06/24   Page 4 of 5 PageID #: 29687

STATE OF MISSOURI Plaintiff, v. JOSEPH R. BIDEN, JR.,..., Not Reported in Fed....

was still in full swing" and that "the frequent, intense communications that took place in 2021 had considerably subsided by 2022." *Id.* at 1994. The Court also noted that, "in April 2023, President Biden signed a joint resolution that ended the national COVID–19 emergency" and "[t]he next month, the White House disbanded its COVID–19 Response Team, which was responsible for many of the challenged communications in this case." *Id.* at 1995. Regarding the CDC, the Court concluded that "the risk of future harm traceable to the CDC is minimal" because "[t]he CDC stopped meeting with the platforms in March 2022." *Id.* at 1994. Although "the platforms sporadically asked the CDC to verify or debunk several claims about vaccines," "the agency has not received any such message since the summer of 2022." *Id.* at 1994–95.

Plaintiffs argue that because the CDC and Kennedy continue to be censored, their situation is distinguishable from *Missouri. Missouri* demonstrates the flaw in that argument. There, "the plaintiffs and the dissent suggest[ed] that the platforms continue to suppress their speech according to policies initially adopted under Government pressure." *Id.* at 1995. The Court responded as follows:

> [T]he plaintiffs have a redressability problem.... The requested judicial relief ... is an injunction stopping certain Government agencies and employees from coercing or encouraging the platforms to suppress speech. A court *could* prevent these Government defendants from interfering with the platforms' independent application of their policies. But without evidence of continued pressure from the defendants, it appears that the platforms remain free to enforce, or not to enforce, those policies—*even those tainted by initial governmental coercion.*

*Id.* (second emphasis added). Plaintiffs here have the same redressability problem.

We therefore conclude that the Holland declaration does not establish standing.

### B. The Rasmussen Declaration

**\*4** Rasmussen describes a series of content-moderation actions taken by social-media platforms against the Kennedy campaign and its supporters. But she does not trace any of the platforms' content-moderation actions against Kennedy back to the government.

Plaintiffs argue that "there is evidence that this intolerable electoral interference has been caused by Defendants' resuming their communications with social media platforms." They point to sources outside of the record indicating that the FBI and the Cybersecurity and Infrastructure Security Agency ("CISA") have restarted discussions with social media platforms about removing election-related disinformation.

These allegations fare no better than the election-based allegations in *Missouri*. There, the Court acknowledged that "[t]he FBI's challenged conduct was ongoing at the time of the complaint, as the agency worked with the platforms during the 2022 midterm election season." *Id.* at 1993. Nonetheless, the Court stated that Jim Hoft, the lone plaintiff in *Missouri* who alleged censorship of election-related content, had "not pointed to any past restrictions" of *his* election-related content "likely traceable to the Government defendants." *Id.* The Court explained that "[t]his failure to establish traceability for past harms—which can serve as evidence of expected future harm—'substantially undermines [the plaintiffs]' standing theory.' " *Id.* (second alteration in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013)). That is because Hoft had to "rely on a 'speculative chain of possibilities' to establish a likelihood of future harm traceable to the FBI." *Id.* (quoting *Clapper*, 568 U.S. at 414). The Court described that speculative chain as follows: (1) "Hoft's future posts (presumably about the 2024 Presidential Election) must contain content that falls within a misinformation trend that the FBI has identified or will identify in the future"; (2) "[t]he FBI must pressure the platforms to remove content within that category"; (3) "[t]he platform must then suppress Hoft's post, and it must do so at least partly in response to the FBI, rather than in keeping with its own content-moderation policy." *Missouri*, 144 S. Ct. at 1993. The Court concluded that, "[e]specially in light of his poor showing of traceability in the past, Hoft has failed to demonstrate likely future injury at the hands of the FBI or CISA—so the injunction against those entities cannot survive." *Id.*

Case 3:22-cv-01213-TAD-KDM   Document 403-1   Filed 11/06/24   Page 5 of 5 PageID #: 29688

STATE OF MISSOURI Plaintiff, v. JOSEPH R. BIDEN, JR.,..., Not Reported in Fed....

Here, the only new election-related evidence is the Rasmussen declaration. But the declaration does not cure the traceability problem from *Missouri* because it does not allege *any* government action that is responsible for suppression of Kennedy's campaign content. Kennedy must therefore rely on the same "speculative chain of possibilities" as Hoft in *Missouri. Id.* (quoting *Clapper*, 568 U.S. at 414). That chain does not become any less speculative if the FBI states that it will continue to communicate with platforms regarding election misinformation. If anything, Kennedy's chain of possibilities might be even *more* speculative now that he has suspended his presidential campaign, a fact of which we may take judicial notice. See FED. R. EVID. 201(b).

We therefore conclude that Kennedy lacks standing to seek a preliminary injunction for his claims concerning election-related content.

### III. Conclusion

**\*5** Because Plaintiffs lack standing to seek a preliminary injunction against Defendants, we VACATE the preliminary injunction and REMAND to the district court.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 4664015

---

### Footnotes

\*   This opinion is not designated for publication. See 5TH CIR. R. 47.5.

1   On remand, the district court must consider whether Plaintiffs have standing to seek other forms of relief, if any, and if not, dismiss the suit for lack of standing consistent with this opinion.

2   Defendants include President Biden, White House Press Secretary Karine Jean-Pierre, Surgeon General Vivek H. Murthy, the Centers for Disease Control and Prevention, the Census Bureau, the Department of Health and Human Services, the Department of Commerce, the National Institute of Allergy and Infectious Diseases, the Federal Bureau of Investigation, the Department of Justice, the Cybersecurity and Infrastructure Security Agency, the Department of Homeland Security, the State Department, the Food and Drug Administration, the Department of the Treasury, the Election Assistance Commission, the various heads of those agencies, and numerous other officials.

3   Defendants argue that Plaintiffs waived their current theory of standing. Because we conclude that Plaintiffs lack standing under their current theory, we need not address that argument.

4   We DENY AS MOOT Defendants' motion for a stay pending appeal.

---