# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **STATE OF MISSOURI, ET AL.** | **CASE NO. 3:22-CV-01213** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JOSEPH R. BIDEN JR., ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

This case stems from Defendants' violation of Plaintiffs' First Amendment speech rights.[1] We held previously that Plaintiffs' claims were likely meritorious and issued a preliminary injunction in their favor. *Missouri v. Biden*, 680 F. Supp. 3d 630 (W.D. La.). The Fifth Circuit mostly agreed. *Missouri v. Biden,* 80 F.4th 641 (5th Cir. 2023), *opinion withdrawn and superseded on reh'g*, 83 F.4th 350 (5th Cir. 2023). But the Supreme Court did not. *Murthy v. Missouri*, 144 S. Ct. 1972 (2024). Rather than reach the merits, the Supreme Court held that Plaintiffs here failed to show standing sufficient for a preliminary injunction. *See id*. Accordingly, our judgment was vacated, and the case was remanded back to our jurisdiction "for further proceedings consistent with the Supreme Court's opinion." *Missouri v. Biden,* 114 F.4th 406 (5th Cir. 2024). Charged with this mandate, we now "consistent[ly]" "proceed[]"—burdened by what has been. *See id.* So, we asked the parties "whether further jurisdictional discovery limited to the issue of standing could aid this court's evaluation of its continuing jurisdiction over this case, or alternatively, whether dismissal is appropriate."[2] Unsurprisingly, Plaintiffs responded in favor of discovery or amendment,[3] whereas Defendants responded in favor of dismissal.[4] Now we rule.

---

[1] *See* R. Doc. 268.
[2] R. Doc. 389.
[3] R. Doc. 391; R. Doc. 399.
[4] R. Doc. 394; 402.

I.      **DISMISSAL GENERALLY**

We currently find ourselves in jurisdictional purgatory—caught between differing standards. One must make a greater showing of standing to obtain a preliminary injunction, as opposed to the minimal showing necessary to merely maintain suit. *See e.g., Obama v. Klayman*, 800 F.3d 559, 564 (D.C. Cir. 2015) ("Having barely fulfilled the requirements for standing at this threshold stage, Plaintiffs fall short of meeting the higher burden of proof required for a preliminary injunction."); *accord Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff[s] [are] entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction.").

The Supreme Court was plainly applying this heightened standard when it reversed. *See Murthy,* 144 S. Ct. at 1985 ("*At this stage*, neither the individual nor the state plaintiffs have established standing *to seek an injunction* against any defendant.") (emphasis added); *see also id.* at 1990 ("[M]ost of the lines she draws are tenuous, particularly given her burden of proof at the preliminary injunction stage—recall that she must show that her restrictions are *likely* traceable to the White House and the CDC.") (emphasis kept). This means that the Supreme Court's holding— that Plaintiffs' showing of standing was insufficient to maintain a preliminary injunction—is not necessarily fatal to Plaintiffs' suit generally. *See Klayman*, 800 F.3d at 568–69; *cf. H & W Indus., Inc. v. Formosa Plastics Corp., USA*, 860 F.2d 172, 177 (5th Cir. 1988) (cleaned up) ("[I]t is a risky approach to assume that the often incomplete evidence adduced at a preliminary injunction hearing is sufficient to determine whether a claimant is entitled to judgment as a matter of law."). And while the Supreme Court's ruling inarguably undermines our certainty of subject-matter

jurisdiction, it nowhere forces our conclusion that we lack such jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."). So, what is a district court to do when jurisdiction is neither certainly existent nor certainly non-existent?

## II. JURISDICTIONAL DISCOVERY

Where a higher court has vacated a preliminary injunction due to lackluster standing, "On remand it is for the district court to determine whether limited discovery to explore jurisdictional facts is appropriate." *Klayman*, 800 F.3d at 564, 568 ("It remains possible that on remand plaintiffs will be able to collect evidence that would establish standing . . . Given the possibility that plaintiffs' efforts along these lines may be fruitful, I join Judge Brown in remanding to the district court for it to decide whether limited discovery to explore jurisdictional facts is appropriate"); *see also Mid City Tower, LLC v. Certain Underwriter's at Lloyd's London*, No. CV 21-440-SDD-EWD, 2023 WL 7064162 at *3 (M.D. La. Oct. 26, 2023) (cleaned up) ("District courts may permit jurisdictional discovery to determine whether the court has subject matter jurisdiction."); *and Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013).

With that said, "The party opposing dismissal and requesting discovery bears the burden of demonstrating the necessity of [jurisdictional] discovery." *Mid City Tower,* 2023 WL 7064162 at *3 (citing *Davila*, 713 F.3d at 264). Parties are "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id.* And such jurisdictional discovery is improper "… when the proponent of such discovery only supports the request by conjecture, speculation, or suggestion." *See id.* (citation omitted). Because we find that Plaintiffs have demonstrated the necessity of jurisdictional discovery, and because their proposed discovery does not appear to be a jurisdictional fishing

expedition—Plaintiffs shall have the opportunity to conduct such discovery. *See Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) (citation omitted) ("Jurisdictional discovery is not a license for the parties to engage in a 'fishing expedition[.]'").

In support of jurisdictional discovery and in opposition to dismissal, Plaintiffs offered a variety of evidence—serving to show that jurisdictional discovery would not be impermissibly speculative, nor impermissibly unlikely to produce curative jurisdictional facts. *See Mid City Tower,* 2023 WL 7064162 at *3. Plaintiffs first cite evidence of which we can take judicial notice—certain fruits of a congressional investigation.[5] Namely, internal Meta documents and a letter from Meta's CEO, Mark Zuckerberg.[6] One particular example of internal Meta communications is especially supportive of standing: two Meta employees internal discussion that Meta censored the lab leak theory of Covid's origins "because [they] were under pressure from the [Biden] administration" to do so.[7] Again, while still too amorphous to be wholly dispositive in favor of traceability post-*Murthy*, this evidence constitutes sufficient smoke to justify allowing Plaintiffs an opportunity to go find the fire. Similarly, we agree with Plaintiffs that the letter from Mark Zuckerberg to the House Judiciary Committee, while not sufficient to *per se* establish Plaintiffs' standing, "make[s] clear that the government was responsible for significant amounts of censorship" and certainly does not inspire dismissal of this case.[8]

Plaintiffs' second category of evidence consists of supplemental declarations of Plaintiffs.[9] It should be said that sworn affidavits are far more than most plaintiffs have at the pleadings stage, and while uniquely situated procedurally, we must remember that plaintiffs have (by their own

---

[5] R. Doc. 391 at 14–17.
[6] *See id.*
[7] *Id.* at 16 (quoting @Jim_Jordan, X (July 28, 2024, 12:03 PM), *available at* https://x.com/Jim_Jordan/status/1684957664265031681).
[8] *Id.* (citing @JudiciaryGOP, X (Aug. 26, 2024, 6:44 PM), *available at* https://x.com/JudiciaryGOP/status/1828201780544504064).
[9] R. Doc. 391-10; R. Doc. 391-11; R. Doc. 399-1; R. Doc. 399-2; R. Doc. 399-3.

making) just now left the emergency relief phase of their suit. Here, we needn't pick these declarations apart microscopically, as they simply serve to show—albeit some better than others—that further discovery is likely to produce jurisdictional facts in Plaintiffs' favor.[10] Again, we agree with Defendants that the declarations do not conclusively dispose of the jurisdictional question in favor of Plaintiffs, but they do not evince a lack of subject-matter jurisdiction either. In a case where the government is "uniquely in control of the facts, information, documents, and evidence regarding the extent and nature of their mass [censorship efforts]" serious jurisdictional discovery is likely the only vehicle by which Plaintiffs could attempt to prove standing. *See Klayman*, 800 F.3d at 568. And if all of that weren't enough, the emails Plaintiffs attached—showing the pains that certain persons and entities went through to hide their tracks—make clear that if "a particular defendant pressured a particular platform to censor a particular topic before that platform suppressed a particular plaintiff's speech on that topic" evidence of such coordination would not be easy to find.[11] *See Murthy,* 144 S. Ct. at 1988. Again, every judge that has examined the merits of this case has found a First Amendment violation. *See Ante* at 1. This reality, taken alongside the unique hurdles Plaintiffs face in acquiring facts supportive of particularized standing, clearly warrants further discovery. Defendants express concern, and we share it, that this exercise should not morph into merits discovery.[12] We, therefore, "circumscribe the scope of discovery … to only the factual questions necessary to determine [our] jurisdiction," *Schuchardt,* 839 F.3d at 354. Nevertheless, we understand that an inquiry into causation (to establish standing under the Supreme Court's strictures) may necessarily intrude into the merits. The Court trusts that Plaintiffs can toe this line carefully and that Defendants will alert us if not.

---

[10] *See generally id.*
[11] R. Docs. 391-1, -2, -3, -4, -5, -6, -7, -8, -9.
[12] R. Doc. 394 at 39–41.

5

### III.     FUTURE MOTIONS TO AMEND OR DISMISS

We deny amendment currently for a few reasons. First, it has not been properly moved for. *See* L.R. 7.5. Second, the addition of certain members of the "Disinformation Dozen" risks starting this case all over—and imprudently "getting out ahead" of the Fifth Circuit's mandate in *Kennedy v. Biden*—by playing Red Rover with coextensive Plaintiffs.[13] But third and most importantly, upon a potential Rule 12 motion by Defendants, an opportunity for amendment would be our likely remedy to cure defects in Plaintiffs' case. *See Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383 (5th Cir. 2024). Once jurisdictional discovery—another favored alternative to dismissal—concludes, Defendants may file a 12(b) motion, or Plaintiffs may file a motion to amend, so that we may revisit the sufficiency of Plaintiffs' case. But for now, we seek not to get into a chicken-and-egg situation procedurally.

We end with the unignorable reality that regime change is imminent. *See* David Frum, *Trump Won. Now What?*, THE ATLANTIC (NOV. 6, 2024), https://www.theatlantic.com/politics/archive/2024/11/trump-wins-second-term-presidency/680546/. Especially relevant and equally wild, one of the *Kennedy* Plaintiffs may soon replace or control Defendants. *See* Will McDuffie, *RFK Jr. says Trump has 'promised' him 'control of the public health agencies'*, ABC NEWS (OCT. 31, 2024), https://abcnews.go.com/Politics/rfk-jr-trump-promised-control-public-health-agencies/story?id=115303649. However, to take dispositive action in this case based on regime change alone would be quintessentially speculative . . . speculation which is trebly prohibited by our standing requirements, our injunction requirements, and our discovery requirements. *Lujan v.*

---

[13] The panel has issued its opinion, but the period for rehearing or certiorari has not yet lapsed. *Kennedy v. Biden*, No. 24-30252, 2024 WL 4664015 (5th Cir. Nov. 4, 2024). Additionally, the panel's opinion does not contravene this result—rather—it places the *Kennedy* Plaintiffs in the exact spot that the *Missouri* Plaintiffs find themselves in currently. *See id.*

*Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (standing); *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579 (5th Cir. 2013) (injunctive relief); *NL Industries, Inc. v. OneBeacon Am. Ins. Co.,* 435 F. Supp. 2d 558, 566 (N.D. Tex. 2006) (jurisdictional discovery). So we will not.

### IV.    DISCOVERY SCHEDULE

No specific discovery schedule will be set at this time, but all jurisdictional discovery must be approved by the Court. Plaintiffs shall file proposed discovery to be taken and a proposed schedule within fourteen (14) days of the docketing of this order. Defendants shall have fourteen (14) days to respond and Plaintiffs seven (7) days to reply.

### V.    CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Plaintiffs be permitted to prosecute limited jurisdictional discovery in order to cure weaknesses in their standing outlined by *Murthy*.

**IT IS FURTHER ORDERED** that Plaintiffs' request to amend their complaint is **DENIED** at this time.

**MONROE, LOUISIANA** this 8th day of November 2024.

_____
Terry A. Doughty
United States District Judge