**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| STATE OF MISSOURI, *et al.*, | |
| *Plaintiffs*, | No. 22-cv-1213 |
| v. | *Consolidated with No. 23-cv-381* |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America, *et al.*, | Judge Terry A. Doughty |
| | Mag. Judge Kayla D. McClusky |
| *Defendants*. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**PROPOSED JURISDICTIONAL DISCOVERY PLAN**

TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 4

I.     Plaintiffs' Proposed Plan Erroneously Focuses On Past Conduct, Not Ongoing Or Continuing Defendant Conduct, And Hence Ignores The Governing Standard For Article III Standing Set Forth In *Missouri*, Which Must Govern All Further Proceedings Here. .................................................................................................... 4

     A.     The Proposed Document Requests Do Not Seek Information That Could Establish Article III Standing Under *Murthy*. ................................................ 7

     B.     Plaintiffs' Proposed Interrogatories Do Not Seek Information That Could Establish Article III Standing Under *Missouri*. ............................................ 8

     C.     Plaintiffs' Proposed Depositions Likewise Are Not Reasonably Likely To Prove Their Article III Standing ........................................................ 11

II.    Plaintiffs Improperly Seek Depositions From High-Ranking Officials, Including Former White House Officials, Without Showing "Exceptional Circumstances" Warrant Such Burdensome Depositions, And Disrespecting The Separation Of Powers. ................................................................................................................ 13

III.   Substantial Portions of Plaintiffs' Proposed Discovery, Even As Cursorily Outlined In Their Plan, Are Unreasonably Cumulative Or Duplicative Of The Extensive Discovery Defendants Provided At The PI Stage ................................... 18

     A.     Plaintiffs' Proposed Plan Improperly Ignores The Extensive Discovery Defendants Provided At The PI Stage ........................................................ 18

     B.     Plaintiffs' Proposed Interrogatories Are Unreasonably Cumulative or Duplicative ..................................................................................... 20

     C.     Plaintiffs' Proposed Requests for Documents Are Unreasonably Cumulative or Duplicative .................................................................. 22

     D.     Plaintiffs' Proposed Depositions Are Unreasonably Cumulative or Duplicative ..................................................................................... 23

IV.   Plaintiffs Have Exceeded The Numerical Limit On Interrogatories And Lack Any Grounds For Ignoring That Limit ........................................................................ 26

V.    Discovery From Nonparties, Including Former Officials, Requires Rule 45 Subpoenas, And Nonparties Cannot Be Subjected To Interrogatories In Any Event ........................................................................................................... 27

VI.   In Any Event, Plaintiffs' Proposed Deadlines For Jurisdictional Discovery Are Unworkable Considering The Burdens Imposed By Their Proposed Requests ................ 29

CONCLUSION ....................................................................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Am. Council of the Blind of Metro. Chi. v. Chi.*,
  19-cv-6322, 2021 WL 5140475 (N.D. Ill. Nov. 4, 2021) ...................................................... 26

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
  103 F.4th 383 (5th Cir. 2024) ............................................................................................. 12

*Autery v. Smithkline Beecham Corp.*,
  No. 05-cv-0982, 2007 WL 2702197 (W.D. La. Sept. 12, 2007) ............................................ 28

*Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*,
  729 F. Supp. 2d 789 (N.D. Tex. 2010) .................................................................................. 7, 8

*Cheney v. U.S. District Court for D.C.*,
  542 U.S. 367 (2004) .......................................................................................... 2, 17, 29

*Davila v. United States*,
  713 F.3d 248 (5th Cir. 2013) ................................................................................................. 6

*Duncan v. Nunez*,
  No. 1:17-cv-1623, 2019 WL 13319136 (W.D. La. Oct. 16, 2019)........................................ 18

*Ellis v. La. ex rel. Governor's Off. of Homeland Sec. & Emergency Preparedness*,
  No. 13-cv-27, 2013 WL 6272294 (M.D. La. Dec. 4, 2013) .................................................. 27

*Evans v. Thomas*,
  No. 6:19-cv-1485, 2021 WL 149191 (W.D. La. Jan. 13, 2021)............................................ 18

*Fair Hous. Ctr. of Cent. Ind. v. Welton*,
  No. 1:18-cv-01098, 2019 WL 2422594 (S.D. Ind. June 10, 2019) ........................................ 26

*Fradella v. Coca-Cola Co.*,
  No. 17-cv-9622, 2018 WL 3455707 (E.D. La. July 18, 2018) .............................................. 27

*Freeman v. United States*,
  556 F.3d 326 (5th Cir. 2009) ................................................................................................. 6

*Glob. Tubing, LLC v. Tenaris Coiled Tubes, LLC*,
  No. 4:17-cv-3299, 2020 WL 12443175 (S.D. Tex. Nov. 25, 2020)...................................... 26

*In re FDIC*,
  58 F.3d 1055 (5th Cir. 1995) .................................................................................... 14, 15, 16

*In re Paxton*,
  60 F.4th 252 (5th Cir. 2023) ............................................................................................... 15

*In re U.S. Dep't of Educ.*,
  25 F.4th 692 (9th Cir. 2022) ............................................................................................... 28

*In re United States (Jackson)*,
  624 F.3d 1368 (11th Cir. 2010) ........................................................................................... 17

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019) ............................................................................................. 29

*Kleiman v. Wright*,
  No. 18-cv-80176, 2020 WL 1666787 (S.D. Fla. Apr. 3, 2020)............................................. 26

*Lebron v. Ensco Offshore Co.*,
  No. 6:12-cv-1901, 2013 WL 12184555 (W.D. La. May 28, 2013), *aff'd*,
  2013 WL 3967165 (W.D. La. July 31, 2013) ............................................................. 18

*Missouri v. Biden*,
  83 F.4th 350 (5th Cir. 2023), *rev'd and remanded*,
  *Murthy v. Missouri*, 603 U.S. 43 (2024) ................................................................... 10

*Missouri v. Biden*,
  No. 24-30252, 2024 WL 4664015 (5th Cir. Nov. 4, 2024) ....................................... 6

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ............................................................................................ *passim*

*Obinyan v. Prime Therapeutics LLC*,
  No. 3:18-cv-0933, 2021 WL 135983 (N.D. Tex., Jan. 14, 2021) ............................ 28

*Schuchardt v. President of the U.S.*,
  839 F.3d 336 (3d Cir. 2016) ..................................................................................... 6

*Uebelacker v. Paula Allen Holdings, Inc.*,
  No. 06-cv-316, 2006 WL 6021169 (W.D. Wis. Jan. 3, 2006) ................................. 27

*Vidal v. Duke*,
  No. 16-cv-4756, 2017 WL 8773110 (E.D.N.Y. Oct. 17, 2017) .............................. 17

*Vinton v. Adam Aircraft Indus., Inc.*,
  232 F.R.D. 650 (D. Colo. 2005) .............................................................................. 26

*Watts v. SEC*,
  482 F.3d 501 (D.C. Cir. 2007) ................................................................................. 27

*Weiss v. Allstate Ins. Co.*,
  512 F. Supp. 2d 463 (E.D. La. 2007) ...................................................................... 27

*Wikimedia Found'n v. NSA*,
  427 F. Supp. 3d 582 (D. Md. 2019), *aff'd*, 14 F.4th 276 (4th Cir. 2021) ................ 30

*Wyant v. Nationstart Mortg., LLC*,
  2015 WL 474323 (W.D. La. Feb. 4, 2015) .............................................................. 18

*Zito v. Leasecomm Corp.*,
  233 F.R.D. 395 (S.D.N.Y. 2006) ............................................................................. 26

**STATUTES**

22 U.S.C. § 2706 ........................................................................................................ 11

National Defense Authorization Act for Fiscal Year 2017,
  Pub. L. No. 114-328, 130 Stat. 2000 (2016) (codified at 22 U.S.C. § 2656 note) ................. 11

Prepare for and Respond to Existing Viruses, Emerging New Threats, and Pandemics Act,
  Pub. L. No. 117-328, 136 Stat. 4459 (2022) ........................................................... 14

Department of State, Foreign Operations and Related Programs Appropriations Act, 2024,
  Pub. L. No. 118-47, 38 Stat. 460 (2024) ................................................................. 11

Continuing Appropriations Act, 2025,
  Pub. L. No. 118-83, 138 Stat. 1524 (2024) ............................................................. 11

**FEDERAL RULES**

Fed. R. Civ. P. 25 ............................................................................................. 27

Fed. R. Civ. P. 26 ................................................................................. 2, 18, 25

Fed. R. Civ. P. 33 ............................................................................................. 26

Fed. R. Civ. P. 45 ....................................................................................... 27, 28

**LOCAL RULES**

LR 33.1 ............................................................................................................. 26

**OTHER AUTHORITIES**

8A C. Wright & A. Miller, *Federal Practice and Procedure* § 2171 (2d ed. 1994) ................... 28

8B Charles Alan Wright et al., *Federal Practice & Procedure* § 2168.1 (3d ed. 2020) ............. 26

Paige Winfield Cunningham, *Andy Slavitt describes life on the White House coronavirus task force*, WashingtonPost.com (June 11, 2021), 2021 WLNR 18901752 .................................... 15

# INTRODUCTION

*Murthy v. Missouri*, 603 U.S. 43, 56-76 (2024), held that despite "extensive discovery," no plaintiff in this action showed Article III standing to seek a preliminary injunction (PI), because they had failed to "demonstrate a substantial risk that, in the near future, they will suffer an injury that is traceable to a Government defendant and redressable by the injunction they seek," *id.* at 49-50, 54. On remand, this Court stated that "further discovery is likely to produce jurisdictional facts in Plaintiffs' favor," and ordered "limited jurisdictional discovery in order to cure weaknesses in" Plaintiffs' "standing outlined by" the Supreme Court in *Missouri*, while also stating the Court would "circumscribe the scope of discovery … to only the factual questions necessary to determine . . . jurisdiction." Dkt. 404 at 5, 7. Hence, this Court directed that Plaintiffs "shall file proposed discovery to be taken and a proposed schedule." *Id.* at 7. Plaintiffs elected not to comply with the order to "file proposed discovery"—omitting actual proposed document requests under Rule 34 and actual proposed interrogatories under Rule 33—and instead filed a Proposed Jurisdictional Discovery Plan (Dkt. 408) sketching the topics of such document requests and interrogatories, and listing a host of proposed depositions, proposing that such requested discovery would be completed by the end of March 2025.

Because Plaintiffs have not followed this Court's order, Defendants cannot yet respond in full to Plaintiffs' proposed document requests and interrogatories, which the Court should not authorize based on the failure to file them alone. Defendants reserve all objections to particular requests and interrogatories (except for those set forth herein) if those particular requests and interrogatories are actually approved and served. But even as outlined, the Proposed Plan is defective, and the Court should not approve it. At a minimum, this Court should deny Plaintiffs leave to proceed with their proposed discovery and order them to file proposed document requests, interrogatories, and permissible deposition notices respecting the "limited" and "circumscribed" jurisdictional discovery this Court previously directed Plaintiffs to propose. In particular, Plaintiffs' Proposed Plan displays numerous defects (described herein and summarized in the chart attached as the Appendix):

*First*, Plaintiffs have not formulated valid discovery into the "factual questions necessary" for jurisdiction under *Missouri*. At every turn in their Proposed Plan, Plaintiffs seek to probe Government conduct in 2020 and 2021, well before the Individual Plaintiffs entered this action in August 2022. Plaintiffs' plan is not reasonably likely to show whether any Defendant is engaged in any "ongoing" or "continuing" "pressure campaign" with respect to platform content moderation of any particular Plaintiff's posts. Without proof of such "ongoing" or "continuing" conduct by Defendants, Plaintiffs cannot cure the deficiencies that the Supreme Court identified in *Missouri*, which was Plaintiffs' failure to show "real and immediate threat of repeated injury," 603 U.S. at 58. In assessing the future injury requirement, the Supreme Court emphasized that, "without proof of an *ongoing* pressure campaign" by Defendants against social media platforms, "it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants." *Id.* at 69 (emphasis added). By focusing on past events in 2020 and 2021, Plaintiffs continue to focus their inquiry on Government conduct that had already occurred before this action began.

*Second*, disregarding the 10-deposition limit in Rule 30 without providing a basis for this Court to grant leave to exceed that limit, Plaintiffs propose to take depositions of, among other witnesses, current and former high-ranking Government officials without attempting to show that those officials have unique information concerning Plaintiffs' Article III standing unavailable through less intrusive means of discovery. Those depositions cannot go forward under the Fifth Circuit's orders in 2022 and 2023 on the Government's mandamus petition where Plaintiffs have identified absolutely no factual information that can only be obtained through those burdensome depositions rather than from alternative sources. Moreover, the depositions of current and former White House officials would disrespect the separation of powers, because such depositions may only be pursued as a last resort, not a starting point, under *Cheney v. U.S. District Court for D.C.*, 542 U.S. 367 (2004).

*Third*, much of the proposed discovery duplicates what Plaintiffs obtained from Defendants at the PI stage, contrary to the Court's order that the jurisdictional discovery be "limited," and Rule

26's directive against "unreasonably cumulative or duplicative" discovery, Fed. R. Civ. P. 26(b). In what the Supreme Court characterized as "extensive" discovery in service of the PI motion, Plaintiffs obtained more than 17,000 pages of documents; nearly 100 pages of interrogatory responses; and depositions of six witnesses, all describing communications between Defendants and the major social media platforms. But in outlining many of their new proposed requests, Plaintiffs largely ignore the information that Defendants already have provided. Plaintiffs' inability to prove their Article III causation or redressability based on that extensive discovery supplies no justification for allowing cumulative or duplicative discovery.

*Fourth*, Plaintiffs' proposed interrogatories exceed the 25-interrogatory limit Plaintiffs already reached at the PI stage, and Plaintiffs provide no justification supporting expansion of that limit in this action.

*Fifth*, Plaintiffs' proposed discovery from nonparties fails to address the requirements for deposition and documents subpoenas under Rule 45. Under that rule, courts must be sensitive to the burdens imposed on nonparties. The nonparties in question here include social media platforms and research organizations. Importantly, they also include former government officials. Separately, Plaintiffs may not serve interrogatories on nonparties under the plain text of Rule 33.

*Sixth*, in any event, the three-and-a-half month jurisdictional discovery period Plaintiffs propose is impermissibly short for the multifaceted discovery in their Proposed Plan, and if the Court maintains Plaintiffs' proposed discovery cutoff date of March 31, 2025, the Court should substantially narrow the discovery permitted so it reasonably can be completed within that period. Defendants also reserve the right to seek jurisdictional discovery from Plaintiffs. If this action were to continue, Defendants would need discovery about the facts underpinning Plaintiffs' contention that they have Article III standing because, they assert, they have "a substantial risk that, in the near future, they will suffer an injury that is traceable to a Government defendant and redressable by the injunction they seek." *Missouri*, 603 U.S. at 49-50.

**ARGUMENT**

Although this Court's order on jurisdictional discovery directed Plaintiffs to file the "discovery to be taken" alongside the schedule proposal, Dkt. 404 at 7, Plaintiffs have *not* filed their actual proposed document requests or interrogatories—instead merely outlining abstract topics at a high level of generality.  Hence, at this stage, Defendants are not able to raise specific objections to any actual proposed document requests under Rule 34 or interrogatories under Rule 33, and Defendants reserve the right to make specific objections to any discovery request if the Court authorizes such requests.  Nevertheless, it is evident from the Plaintiffs' Proposed Plan that the outlined document requests and interrogatories, alongside the depositions proposed for Defendants' witnesses, are fundamentally flawed.  *See generally* App. A (summary chart).

The Court should not approve the Proposed Plan.  Instead, the Court should, at a minimum, direct the Plaintiffs to file particular proposed document requests, interrogatories, and deposition notices of permissible witnesses that comply with the Court's order requiring jurisdictional discovery to be "limited" and "circumscribed" to facts addressing the Supreme Court's framework for Article III standing in *Missouri*.

**I.    Plaintiffs' Proposed Plan Erroneously Focuses On Past Conduct, Not Ongoing Or Continuing Defendant Conduct, And Hence Ignores The Governing Standard For Article III Standing Set Forth In *Missouri*, Which Must Govern All Further Proceedings Here.**

Plaintiffs' proposal, which on its face seeks discovery concerning platform moderation of content posted in the past by Individual Plaintiffs, suffers from a fundamental flaw:  Their proposed jurisdictional discovery is almost entirely directed at *past* Government conduct, and hence is not reasonably likely to establish that Plaintiffs face "a real and immediate threat of repeated injury," as required in *Missouri*.  603 U.S. at 58.  When reversing the preliminary injunction, the Supreme Court explained that, to establish standing, Plaintiffs "must show a substantial risk that, in the near future, at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant."  *Id.*  And the Supreme Court held that Plaintiffs had not done so because even Jill Hines, the Plaintiff with "the best showing of a connection" between past injury and the Defendants' conduct, had not established "proof of an ongoing pressure

4

campaign" after the entry of the individual Plaintiffs into this action in August 2022. *Id.* at 69-72. Without such proof, and given the "independent" incentives of platforms to moderate content, the Court held, "it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants," and no Plaintiff, therefore, had shown traceability or redressability as to Defendants. *Id.* at 69; *see also id.* at 73 ("plaintiffs have not shown that they are likely to face a risk of future censorship traceable to the *defendants*.").

This fundamental flaw in Plaintiffs' proposal is compounded by the fact that much of the discovery that Plaintiffs seek concerns speech related to the COVID-19 pandemic. *See* Prp. Plan ¶¶ 1, 5, 9-10, 13-17, 20, 22.a-k. The Supreme Court in *Missouri* held that Plaintiffs could not establish standing through alleged past moderation of COVID-19-related speech because Government communications with the social-media platforms on that topic had "subsided" by the time Plaintiffs brought suit, "[p]erhaps unsurprisingly, given the changed state of the pandemic." 603 U.S. at 71. As to the White House and Surgeon General's Office, the Supreme Court emphasized that, "the vast majority of their public and private engagement with the platforms occurred in 2021, when the pandemic was still in full swing." *Id.* By the time Plaintiffs brought this action in 2022, the "frequent, intense communications that took place in 2021 had considerably subsided," and Plaintiffs therefore could not establish standing because, if the social-media platforms were to moderate COVID-19-related speech going forward, that moderation would not be attributable to any ongoing Government conduct that this Court could enjoin. *Missouri* also teaches that Plaintiffs cannot establish standing simply by listing past platform content moderation *policies* they characterize as "initially adopted under Government pressure." *Id.* Even evidence that the platforms' past content moderation applied policies adopted under purported Government "pressure" would *not* confer standing, the Court explained, because "an injunction stopping *certain Government agencies and employees* from coercing or encouraging the platforms to suppress speech" would not preclude *platforms* from choosing to continue to moderate based on already-enacted policies. *Id.* (emphasis added). Hence, the Supreme Court directed lower courts to "[k]eep

in mind . . . that the past is relevant only insofar as it is a launching pad for a showing of imminent future injury." *Id.* at 59.[1]

The Supreme Court's *Missouri* framework must guide whatever further proceedings take place in this action, including any jurisdictional discovery.  Indeed, this Court ordered that "Plaintiffs be permitted to prosecute *limited* jurisdictional discovery in order to cure weaknesses in their standing outlined by *Murthy*."  Dkt. 404 at 7 (emphasis added).  That aligns with the precept that any jurisdictional discovery authorized must be "likely to produce the facts needed to withstand a Rule 12(b)(1) motion."  *Freeman v. United States*, 556 F.3d 326, 341-42 (5th Cir. 2009); *see Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) (same); *see also Schuchardt v. President of the U.S.*, 839 F.3d 336, 354 (3d Cir. 2016) ("[T]he District Court should take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction.").  Hence, to satisfy this Court's requirement that any jurisdictional discovery be "limited" and "circumscribe[d]," Dkt. 404 at 5, 7, such discovery must be confined to only what is reasonably likely to show that when Individual Plaintiffs entered the action in August 2022, they faced real and immediate threat of repeated injury attributable to the ongoing or continuing conduct of Government Defendants.  The absence of such evidence is what the Supreme Court held to preclude standing to seek a PI.

But at every turn in their Proposed Plan, Plaintiffs instead seek to probe Government conduct in 2020 and 2021.  Plaintiffs' plan hence is not reasonably likely to show whether any Government Defendant engaged in any "ongoing" or "continuing" "pressure campaign," and therefore will not cure the dispositive jurisdictional deficiencies that the Supreme Court identified in *Missouri*.

---

[1] The Fifth Circuit recently reiterated those principles when reversing this Court's decision granting a preliminary injunction in the consolidated *Kennedy* action.  *See Missouri v. Biden*, No. 24-30252, 2024 WL 4664015 (5th Cir. Nov. 4, 2024) (per curiam) (unpublished).  The Fifth Circuit held that the *Kennedy* plaintiffs failed to provide "evidence of continued pressure from the defendants," meaning "that the platforms remain free to enforce, or not to enforce, those policies—even those tainted by initial governmental coercion."  *Id.* at *3 (quoting *Missouri*, 603 U.S. at 73).

### A. The Proposed Document Requests Do Not Seek Information That Could Establish Article III Standing Under *Murthy*.

Again, Plaintiffs fail to provide the Court with the actual requests for production of documents they propose to serve under Rule 34, instead simply identifying general topics for further requests. Accordingly, neither Defendants nor the Court can assess whether Plaintiffs' proposed document requests are described with "reasonable particularity" under Rule 34(b)(1)(A). But even as outlined, their proposed document discovery from Defendants exclusively seeks materials related to past instances of content moderation.

*First*, Plaintiffs propose to serve document production subpoenas to the former director of the National Institute of Allergy and Infectious Disease (NIAID), Dr. Anthony Fauci; Dr. David Morens, who previously was NIAID senior advisor; and private individuals and entities with whom they purportedly communicated at the onset of the COVID-19 pandemic in 2020. Prp. Plan ¶¶ 13-15. But the controlling analysis remains that of the Supreme Court, which recognized that communications regarding COVID-19 misinformation between the Government and platforms had slowed significantly by 2022, invalidating Plaintiffs' effort to show Article III standing from such 2020 communications. *See Missouri*, 603 U.S. at 71. And because Dr. Fauci's decades of Government service ended on December 31, 2022, his testimony could not cure the causation and redressability problems in Plaintiffs' claim for prospective relief identified in *Missouri*. Instead, the outlined requests would launch an impermissible "fishing expedition," *Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010), into whether Dr. Fauci and others "thwart[ed] FOIA"—an issue far removed from Plaintiffs' claims in this action.

*Second*, Plaintiffs propose to issue additional requests for production (RFPs) to CDC "for documents relevant to censorship of Plaintiffs Kulldorff and Bhattacharya." Prp. Plan ¶ 16. But, again, Kulldorff and Bhattacharya assert "social-media censorship" of their speech about COVID-19, including "the platforms' suppression of the Great Barrington Declaration, their coauthored report calling for an end to lockdown." *Missouri*, 603 U.S. at 63. Yet the "frequent, intense communications that took place in 2021 had considerably subsided by 2022," the Supreme Court remarked, "[p]erhaps unsurprisingly, given the changed state of the pandemic." *Id.* at 71. And the

Supreme Court expressly addressed "the risk of future harm traceable to the CDC," concluding it was "minimal" because "[t]he CDC stopped meeting with the platforms in March 2022." *Id.* at 72. Plaintiffs therefore have no basis for asserting that yet more detail from CDC about the events of 2020 and 2021 (about which CDC already provided discovery at the PI stage, pp. 20-22, *infra*) would shore up their Article III standing. Plaintiffs also now introduce a new theory with their contention that "Dr. Kulldorff was fired from a CDC working group, and publicly criticized by its former Director Rochelle Walensky, whom he has reason to believe was involved in efforts to silence him the public square." Prp. Plan ¶ 16. But those events are not alleged in the operative complaint, and factual allegations not contained in the operative complaint cannot be the basis for "limited" and "circumscribed" jurisdictional discovery concerning that complaint. In any event, those allegations do not establish a forward-looking injury that is traceable to the Government.

**Third**, Plaintiffs seek document discovery from what they call "FOIA press offices" within the Department of Health and Human Services components "for documents demonstrating efforts to suppress the speech of the individual Plaintiffs." Prp. Plan ¶ 17. But Plaintiffs have offered no reason to believe that Freedom Of Information Act offices have ever communicated with platforms except insofar as those platforms directed FOIA requests to HHS (which would, at most, support suits under FOIA—not this action), let alone that any FOIA personnel exerted "pressure" on platforms. Given the complete absence of facts connecting any FOIA staff to the operative complaint, the proposed additional RFPs to HHS should be rejected. Courts do not "allow a plaintiff to conduct a jurisdictional fishing expedition," *Bell Helicopter*, 729 F. Supp. 2d at 798.

## B. Plaintiffs' Proposed Interrogatories Do Not Seek Information That Could Establish Article III Standing Under *Missouri*.

Plaintiffs identify 10 categories of proposed interrogatories (including many improperly directed at nonparties, pp. 28-29, *infra*). Of those directed at Defendants, none is reasonably likely to elicit evidence of ongoing or continuing Government pressure on platforms:

**First**, Plaintiffs seek to serve additional interrogatories on NIAID, as well as the National Institutes of Health (NIH) and Ashish Jha, a former White House official, regarding attempts to

"take down" and "lambast[]" the Great Barrington Declaration, released in October 2020. Prp. Plan ¶¶ 1, 5.[2]  But that declaration centered on the response to the COVID-19 pandemic, and Government communications with platforms "about COVID-19 misinformation had slowed to a trickle" by 2022—such that past content moderation incidents could not confer Article III standing even assuming those incidents were traceable to Defendants' past conduct. *Missouri*, 603 U.S. at 71.   That is, whatever internal agency discussions were held about the Declaration in 2020, they have no connection to "ongoing" "pressure" on social media platforms about COVID-19 misinformation in 2022.   Thus, whether a former White House COVID Advisor previously "lambasted the Great Barrington Declaration and its authors" in Spring 2020, Prp. Plan ¶ 5, will not establish the likelihood of any imminent or future Government "pressure" on platforms in 2022.  Indeed, the Supreme Court considered it informative, in rejecting Plaintiffs' contention that post-2022 COVID-19-related moderation by platforms showed they have Article III standing, that such platform moderation went on even though, by "April 2023, President Biden signed a joint resolution that ended the national COVID-19 emergency," and, "[t]he next month . . . disbanded [the White House] COVID-19 Response Team." *Missouri*, 603 U.S. at 74.

**Second**, Plaintiffs propose additional interrogatories on the Department of Homeland Security (DHS) regarding its alleged involvement in the creation of the Election Integrity Partnership (EIP), the Cybersecurity and Infrastructure Security Agency (CISA) and its alleged "past censorship" of Hoft and the Gateway Pundit, and the FBI.  Prp. Plan ¶¶ 2-4.  But this simply revises Hoft's assertion that he "deserve[s] to have the *opportunity to find out whether* CISA, the FBI, or any other agencies ultimately were responsible for" the alleged "censorship" of his

---

[2]  Plaintiffs rely on a misquotation of the phrase "take down."  *See* Defs.' Resp. PFOF ¶ 788 (Dkt. 266-8), *cited at* PI Hr'g Tr. 172:21-173:14.  In the quoted e-mail at Exhibit 42 from the Fauci deposition, NIH Director Dr. Francis Collins stated that "[t]here needs to be a quick and devastating published take down of" the Great Barrington Declaration's "premises," and asked whether one was "underway."  *See* Dkt. 207-6 (Fauci Ex. 42 at 1).  Fauci's unrebutted testimony explained:  "I don't know specifically what [Dr. Collins] meant.  But knowing Francis [Collins], he is a scholar.  He's likely talking about writing a scholarly article to contest some of the premise . . . . [I]f someone writes an article that he disagrees with, that he would write a counterargument to challenge the premise."  Fauci Dep. 258:18-25, Dkt. 206-1.

publication, 4th Hoft Decl. ¶ 21 (emphasis added) (Dkt. 399-1), which his readers have reported

to him occurred on various platforms, *see id.* ¶ 31. That falls far short of supplying a basis, during

a "limited" jurisdictional discovery period, for concluding that requested interrogatories against

those agencies would be reasonably likely to show Hoft's standing. And Hoft's allegations concern

content moderation incidents that occurred "*before* the 2020 Election." *See* Dkt. 399-1 at ¶ 22

(emphasis added). And Hoft's allegations about the FBI also entirely concern "*past*" alleged

involvement in platform decisions concerning the "Hunter Biden Laptop Story" published in

October 2020, a story "about which Mr. Hoft wrote" (*without* asserting that platforms subjected

*Hoft's* coverage of that story to improper moderation). Prp. Plan ¶ 4 (emphasis added). For its

part, EIP was a private partnership formed in 2020, *see* Scully Dep. Ex. 1 at vi (Dkt. 209-2), and

is now defunct, *see* EIP, Home, https://perma.cc/66L6-KFVY (EIP is a nongovernmental research

entity that "finished its work after the 2022 election and will not be working on the 2024 or future

elections").

    ***Third***, Plaintiffs propose interrogatories on Adele Ruppe, a State Department employee

formerly with the Department's Global Engagement Center (GEC), and William Beebe, a GEC

contractor, regarding GEC's relationship with EIP and VP. Prp. Plan ¶ 6. As the State

Department's Leah Bray explained in an unrefuted declaration (PI Opp. Ex. 142 (Dkt. 266-6)),

although the GEC submitted "tickets" to the EIP on approximately 21 occasions describing posts

that GEC found originated from, were amplified by, or likely to be amplified by foreign malign

influence actors, it was up to the EIP to determine whether to forward those tickets to platforms,

which in turn would make independent decisions based on their terms of service. The Bray

Declaration further notes that the GEC is not presently doing any work with the EIP. Bray

Decl. ¶¶ 18-19. Given that record, the Fifth Circuit saw "no indication that State Department

officials flagged specific content for censorship," or "suggested policy changes to the platforms,"

so "those officials were not involved to any meaningful extent with the platforms' moderation

decisions or standards" (83 F.4th 350, 391-92 (5th Cir. 2023), *rev'd and remanded*, *Murthy v.*

*Missouri*, 603 U.S. 43 (2024)), and Plaintiffs offer nothing—not even impermissible speculation—to undermine that conclusion.[3]

**Fourth**, Plaintiffs also propose interrogatories for a former NIH Advisor, Carrie Wolinetz, who purportedly was "involved in NIH efforts to suppress internal agency dissen[s]ion" about so-called "gain of function research" years ago. Prp. Plan ¶ 10. But the NIH is not a social media platform. Hence, that purported "internal agency" disagreement is inconsequential for Plaintiffs' Article III standing predicated on platform content moderation incidents. And although Plaintiffs sought at Dr. Fauci's deposition to link the debate about the origins of the COVID-19 pandemic to so-called "gain of function" research, whether such a link exists is a question about past historical events in 2020, and there is no factual basis for connecting any such link to Plaintiffs' Article III standing in this action. *See* Defs.' Resp. PFOF ¶¶ 603, 606, 614, 627, 629, 641, 648, 650, 651, 653, 654 (Dkt. 266-8).

### C. Plaintiffs' Proposed Depositions Likewise Are Not Reasonably Likely To Prove Their Article III Standing

Plaintiffs have not shown that any of their proposed depositions is reasonably likely to establish their Article III standing under *Missouri* because all of those depositions would at most provide additional detail on purely past events that cannot show ongoing harm traceable to Defendants or redressable by an order against them. Four examples illustrate the point:

---

[3] Moreover, the statute authorizing the GEC contains a sunset provision by which, absent further action from Congress, the GEC will terminate on December 23, 2024. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 1287(i), 130 Stat. 2000, 2548 (2016) (codified at 22 U.S.C. § 2656 note) ("Termination—The Center shall terminate on the date that is 8 years after the date of the enactment of this Act [Dec. 23, 2016]."). Congress has not extended the termination of the GEC thus far, and it is Defendants' understanding that reauthorization is unlikely to occur. The State Department on Dec. 6, 2024 notified Congress of the plan for the forthcoming termination and for realigning staff and funding in the event that the termination is not extended. *See* Department of State, Foreign Operations and Related Programs Appropriations Act, 2024, Pub. L. No. 118-47, Div. F, §§ 7015(a), 7015(b), 7063, 38 Stat. 460, 766, 843-44 (2024), as carried forward by the Continuing Appropriations Act, 2025 (Pub. L. No. 118-83, Div. A, 138 Stat. 1524 (2024)), and § 34 of the State Department Basic Authorization Act of 1956 (22 U.S.C. § 2706).

1.    The former Executive Director of the inoperative Disinformation Governance Board, Nina Jankowicz, resigned from the position of Executive Director of the Disinformation Governance Board on May 18, 2022, effective that date, "due to" the earlier "pause" by DHS of all work of that board.  *See* Ex. (attached) (FOIA-released resignation letter).  A deposition of Jankowicz would thus at most only provide details about past events insufficient to show Plaintiffs' Article III standing under *Missouri*.  Indeed, Plaintiffs themselves describe the Board as having been "dismantled"—underscoring that any deposition of Jankowicz could only concern past events.  Prp. Plan ¶ 22(p); *see Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 395-96 (5th Cir. 2024) ("post-complaint dissolution" of Disinformation Governance Board mooted plaintiff's claims).

2.    Plaintiffs propose depositions from former White House Director of Digital Strategy Robert Flaherty, former White House COVID-19 Advisor Andrew Slavitt, and former White House Communications Director Kate Bedingfield, all concerning the Biden Administration's contacts with platforms about COVID-19 misinformation in early to mid-2021.  In addition to the numerous insuperable obstacles to such depositions described below, such depositions at most would provide additional detail about conditions and events in 2021, without bolstering Plaintiffs' Article III causation and redressability to seek prospective relief, given that such detail would not provide facts that could alter the Supreme Court's conclusion that "[e]njoining the Government defendants . . . is unlikely to affect the platforms' content-moderation decisions,'" because "the platforms have enforced their policies against COVID-19 misinformation even as the Federal Government has wound down its own pandemic response measures."  *See Missouri*, 603 U.S. at 74.

3.    Even further back in the past, going to October 2020, are the events Plaintiffs have asserted as grounds for a deposition of Laura Dehmlow, whom Plaintiffs sued in her official capacity as Section Chief at the FBI's Foreign Influence Task Force (a role she no longer holds). As Elvis Chan, the Assistant Special Agent in Charge of the Cyber Branch for the FBI in San Francisco, explained in his deposition, at certain meetings with platforms, the FBI conveyed

information from FITF to platforms about foreign malign influence operations.  *See* Chan Dep. 39:4-16 (Dkt. 204-1); *see also* Knapp Decl. ¶¶ 10-20 (PI Opp. Ex. 157) (Dkt. 266-6).  No Plaintiff describes making a social media post about the "Hunter Biden Laptop Story" that a platform moderated adversely at the FBI's prompting.  But in any event, platform content moderation decisions about that story in October 2020 would not cure the deficiencies in any Plaintiff's showing of causation and redressability as to prospective relief in this action.

4.      Similarly misfocused on past events are Plaintiffs' attempts to obtain deposition testimony regarding FOIA practices at NIAID during the onset of the COVID-19 pandemic in 2020.  NIAID's FOIA practices at that time have no relevance to whether, two years later when Plaintiffs filed suit, NIAID (or any other Government Defendant) was engaged in a "pressure" campaign against Plaintiffs' speech on social-media platforms.  And even that showing would be insufficient to confer standing for the prospective relief sought in light of the Supreme Court's instruction in *Missouri* that, to establish standing for the prospective relief Plaintiffs seek, the plaintiffs must show a substantial risk of imminent or future injury.  603 U.S. at 58.

## II.  Plaintiffs Improperly Seek Depositions From High-Ranking Officials, Including Former White House Officials, Without Showing "Exceptional Circumstances" Warrant Such Burdensome Depositions, And Disrespecting The Separation Of Powers

In addition to the other deficiencies described herein, Plaintiffs' requests for depositions are also improper on the further ground that they would depose seven current or former high-ranking government officials without showing those witnesses have unique knowledge of Plaintiffs' Article III standing unavailable from other sources:

1.  Former CDC Director **Rochelle Walensky**
2.  Former CDC Director **Robert Redfield**
3.  Former White House Assistant to the President and Director of Digital Strategy **Robert Flaherty**
4.  Former White House COVID-19 Advisor **Andrew Slavitt**
5.  CISA Director **Jen Easterly**
6.  DHS Under Secretary of Homeland Security for the Office of Strategy, Policy, and Plans **Robert Silvers**

7.  Former White House Communications Director **Kate Bedingfield**

Moreover, Plaintiffs propose depositions of *White House* officials whose depositions additionally lack sufficient justification under the constitutional separation of powers:

1.  Former White House Director of Digital Strategy **Robert Flaherty**
2.  Former White House COVID-19 Advisor **Andrew Slavitt**
3.  Former White House Communications Director **Kate Bedingfield**
4.  Current White House component detailee **Lauren Protentis**

***First***, depositions of any of the high-ranking current or former officials would defy the Fifth Circuit orders underscoring that, as to high-ranking government officials, "less intrusive" means of discovery must be explored first, such as alternative witnesses.  *Murthy I*, Order at 3 (No. 22-30697 (5th Cir. Nov. 21, 2022)) (applying *In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995)). Those traditional limitations on such high-ranking government official depositions are "equally applicable to former officials," such as the White House Press Secretary, "lest they be ensnared in unnecessary discovery upon leaving office," the Court of Appeals explained, adding that "'unexceptional, public statements" by such officials "cannot supply the basis for compelled testimony without rendering the 'exceptional circumstances test' a hollow doctrine." *See Murthy II*, Order at 3, 5 (No. 22-30697 (5th Cir. Jan. 5, 2023)).

The Fifth Circuit in *Murthy I*, Order at 2-3, reasoned that the "exceptional circumstances" test applied to the Surgeon General Murthy and the CISA Director Easterly given that they "are Presidentially-nominated, Senate-confirmed officials who manage substantial budgets and staffs," and that it also applied to Flaherty, who was "a Deputy Assistant to the President, two levels removed from the chief executive, and "the chief manager of the President's digital communications."  Yet Plaintiffs now seek to take depositions of additional officials whose rank is comparable to the officials at issue in *Murthy I*, and such depositions fail to meet the "exceptional circumstances" test the Fifth Circuit adhered to in that decision.

For example, the DHS Under Secretary of Homeland Security for the Office of Strategy, Policy, and Plans holds a Presidentially-nominated, Senate-confirmed office, and reports to the Secretary of Homeland Security, with a budget of $103,735,000 and a staff of 300.  The CDC

Director will be a Presidentially-nominated *and Senate-confirmed* office as of January 20, 2025 (Prepare for and Respond to Existing Viruses, Emerging New Threats, and Pandemics Act, Pub. L. No. 117-328, § 2101, 136 Stat. 4459, 5706 (2022)), and the Director oversees a budget of more than $17 billion with a staff of 13,857.  For his part, as the White House COVID-19 advisor, Slavitt provided direct advice to the President and to high-ranking members of the President's staff during the pandemic. [4]

Plaintiffs have not met their obligation to show that exceptional circumstances justify those depositions, considering "(1) the deponent's high-ranking status; (2) the substantive reasons for the deposition; and (3) the potential burden the deposition would impose on the deponent." *Murthy II*, Order at 3-4 (citing *In re FDIC*, 58 F.3d at 1060).  A "key aspect of the analysis is whether the sought after information can be obtained from other witnesses."  *See In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023).  "A district court commits a clear abuse of discretion when it compels apex testimony absent extraordinary circumstances."  *See id.*

In response to this Court's orders implementing the Fifth Circuit's instructions in mandamus proceedings at the PI stage, Plaintiffs deposed CISA's Brian Scully, meeting the asserted need for Easterly's deposition, and they deposed the Surgeon General's chief of staff, Eric Waldo, meeting the asserted need for the Surgeon General's deposition.  And Defendants produced more than 500 documents totaling nearly 2,000 pages as to Flaherty, while also providing detailed interrogatory responses verified by Flaherty.  *See* Mem. Order at 9, Dkt. 148.  Then, after the Fifth Circuit stayed Plaintiffs' scheduled deposition of Psaki pending this Court's examination of less intrusive alternatives, the Court accepted, as the proper alternative, interrogatory answers supplemented after consultation with Psaki.  *See* Mem. Order at 1, Dkt. 175 (citing Dkt. 160).

Plaintiffs provide no basis for this Court to reconsider those determinations.  They have not shown that the information about their Article III standing they propose to seek through the depositions of Flaherty and Easterly cannot be obtained from other sources, so those depositions

---

[4]    *See, e.g.*, Paige Winfield Cunningham, *Andy Slavitt describes life on the White House coronavirus task force*, WashingtonPost.com (June 11, 2021), 2021 WLNR 18901752.

remain foreclosed.  Furthermore, the proposed deposition of Kyla Fullenwider (Prp. Plan ¶ 22(k)) should not be permitted because the Waldo deposition already adequately met the asserted need for the Surgeon General's deposition.

In addition, under the rationale of the Fifth Circuit's orders in *Murthy I* and *Murthy II*, Plaintiffs cannot take the depositions of Silvers (who, like Easterly, holds a Senate-confirmed position at DHS); Slavitt and Bedingfield (like Flaherty, they are former White House officials and presidential advisors), or either of the former CDC Directors (Walensky or Redfield).  As to the CDC Directors, for example, Plaintiffs already obtained a full deposition of Carol Crawford, Director of CDC's Division of Digital Media, and yet they do not identify *any* information concerning their Article III standing that they could not have obtained in that deposition but that they could obtain from Walensky or Redfield—let alone that any such new information could *not* be obtained through "less intrusive, alternative means." *Murthy II*, Order at 4.

Similarly, Bedingfield's deposition cannot proceed absent proof that less intrusive alternatives are unavailable.  Any basis for deposing her would, at best, resemble the arguments Plaintiffs made for deposing Psaki, which were based on public statements to the press on behalf of the White House.  That is, Bedingfield appeared on the television news program Morning Joe on July 20, 2021.  Asked what the Biden Administration *plans to do about COVID-19 misinformation* on social media, she explained that the "most important" thing was for people to obtain information from trusted sources like their doctors, but with respect to social media platforms, "we all have a responsibility here," including platforms and "news outlets."  *See* PI Opp. Ex. 46 at 4 (Dkt. 266-4).  Again, such "'unexceptional, public statements" by such officials "cannot supply the basis for compelled testimony without rendering the 'exceptional circumstances test' a hollow doctrine."  *Murthy II*, Order at 3, 5.  Rather, "exceptional circumstances" must exist before compelling the testimony of any of those officials.  *See In re FDIC*, 58 F.3d at 1060, *quoted in Murthy I*, Order at 3.

Plaintiffs have failed to show such "exceptional circumstances" by presenting evidence that any of those current or former high-ranking government officials has "information"

concerning Plaintiffs' Article III standing unavailable "through less intrusive, alternative means, such as further written discovery or depositions of lower-ranking officials." *See Murthy I*, Order at 4. Plaintiffs therefore have no basis for any of the proposed high-ranking current or former government officials' depositions.

*Second*, the "separation of powers" concerns inherent in all high-level depositions, *In re United States (Jackson)*, 624 F.3d 1368, 1372 (11th Cir. 2010), are heightened in the context of White House deponents. In *Cheney*, the Supreme Court explained that discovery directed to the Office of the Vice President raised "special considerations" regarding "the Executive Branch's interests in maintaining the autonomy of its office," the "energetic performance" of the Commander-in-Chief's "constitutional responsibilities," and "[t]he high respect that is owed to the office of the Chief Executive," and found "no support for the proposition that the Executive Branch 'shall bear the burden' of invoking executive privilege" on a "particularized" basis in the course of discovery. 542 U.S. at 382, 385, 388. In light of the separation-of-powers concerns addressed by *Cheney*, courts recognize the need to "narrow overly broad and intrusive discovery requests directed at the highest levels of the Executive Branch, lest 'vexatious litigation … distract [the Executive Branch] from the energetic performance of its constitutional duties.'" *Vidal v. Duke*, No. 16-cv-4756, 2017 WL 8773110 at *4 (E.D.N.Y. Oct. 17, 2017) (quoting *Cheney*, 542 U.S. at 382).

Hence, in addition to the Fifth Circuit's prior orders on the Government's mandamus petitions in this case, the constitutional separation of powers requires heightened caution before the Court orders depositions of current or former White House officials, including personnel detailed to White House components. Because Plaintiffs do not even attempt to make that showing, the depositions of Flaherty, Slavitt, Bedingfield, and Lauren Protentis should be disallowed.

17

III.    **Substantial Portions of Plaintiffs' Proposed Discovery, Even As Cursorily Outlined In Their Plan, Are Unreasonably Cumulative Or Duplicative Of The Extensive Discovery Defendants Provided At The PI Stage**

Even Plaintiffs' abstract requests make clear that substantial portions of the discovery proposed flout this Court's requirement that any jurisdiction discovery must be "limited" and "circumscribe[d]." Dkt. 404 at 5, 7.  Significant portions of the proposed discovery duplicate what Plaintiffs previously obtained from Defendants at the PI stage, in contravention of both the Court's order that further jurisdictional discovery be "limited," *id.*, and Rule 26's directive against "unreasonably cumulative or duplicative" discovery, *see* Fed. R. Civ. P. 26(b)(2)(C)(i).  Courts routinely set "strict[] limit[s]" on unreasonably cumulative or duplicative discovery requests. *Duncan v. Nunez*, No. 1:17-cv-1623, 2019 WL 13319136 at *2 (W.D. La. Oct. 16, 2019); *see also, e.g.*, *Evans v. Thomas*, No. 6:19-cv-1485, 2021 WL 149191 at *2 (W.D. La. Jan. 13, 2021) (disallowing duplicative interrogatories); *Wyant v. Nationstart Mortg., LLC*, 2015 WL 474323 at *4 (W.D. La. Feb. 4, 2015) (disallowing duplicative document requests); *Lebron v. Ensco Offshore Co.*, No. 6:12-cv-1901, 2013 WL 12184555 at *2 (W.D. La. May 28, 2013) (disallowing cumulative depositions), *aff'd*, 2013 WL 3967165 (W.D. La. July 31, 2013).  The Court should do the same here.

A.    **Plaintiffs' Proposed Plan Improperly Ignores The Extensive Discovery Defendants Provided At The PI Stage**

Plaintiffs' proposed jurisdictional discovery plan fails to account for the "extensive discovery" Defendants already provided to Plaintiffs at the PI stage.  *See Murthy*, 603 U.S. at 54 (noting this Court's now-vacated PI issued "[a]fter granting extensive discovery").

When this Court granted Plaintiffs' motion for expedited PI-related discovery, it authorized Plaintiffs to serve written discovery on the Defendants concerning "the identity of federal officials who have been and are communicating with social-media platforms about disinformation, misinformation . . . and/or any censorship or suppression of speech on social media, *including the nature and content of* those communications." Dkt. 34 at 13 (emphasis added).  Defendants rapidly "produced more than 15,000 pages of discovery . . . , including communications between federal officials and social-media platforms about misinformation and disinformation," *In re Murthy I*,

Order at 2, No. 22-30697 (5th Cir. Nov. 21, 2022), which were the product of Defendants' searches of the files of 58 custodians from across the CDC, NIAID, HHS, CISA, DHS, and Office of the Surgeon General, using more than 60 search terms—including the topics on which Plaintiffs spoke and the names of all individual Plaintiffs.  Defendants provided, moreover, interrogatory responses totaling nearly 100 pages.

Additionally, Plaintiffs took full-day depositions of four witnesses (employees of the State Department, CDC, FBI, and Dr. Anthony Fauci, then of NIAID), and, following two Fifth Circuit orders on mandamus petitions requiring adherence to precedent on depositions of high-ranking government officials, Plaintiffs took full-day depositions of two more witnesses (employees of the Office of the Surgeon General and CISA).  *Id.*; *see In re Murthy II*, Order at 7, No. 22-30697 (5th Cir. Jan. 5, 2023).  And, to recap:  In lieu of a deposition of Robert Flaherty, then White House Director of Digital Strategy, Defendants additionally produced approximately 2,000 *more* pages of documents, while also providing detailed interrogatory responses verified by Flaherty.  *See* Mem. Order at 9, Dkt. 148.  Defendants also supplemented their interrogatory responses after consultation with former White House Press Secretary Psaki as a substitute for her deposition.

The wide scope of the discovery Defendants already provided is illustrated by, as just some of many examples, the following previous requests to which Defendants responded.  Plaintiffs' Second RFP asked Defendants to "Produce all Communications with any Social-Media Platform relating to Misinformation and/or Content Modulation."  Plaintiffs' Third RFP asked Defendants to "Produce all Communications with any Social-Media Platform that contain any of the Search Terms."  *E.g.*, Pl.'s July 18, 2022 RFPs at 6-7 (Dkt. 179-5).  Likewise, Plaintiffs propounded an interrogatory for the identification of "all Communications with any Social-Media Platform relating to Content Modulation and/or Misinformation."  Common Interrogatory No. 2 (Dkt. 86-3 at 21-24).  They propounded another interrogatory for the identification of "all Communications with any Social-Media Platform that contain any of the Search Term(s)."  Common Interrogatory No. 5 (Dkt. 86-3 at 40-43).

19

Those previous search terms were all those that Plaintiffs requested—covering all the individual Plaintiff names ("Bhattacharya," "Kulldorff," "Hoft," "Hines," "Kheriaty"), and the particular topics on which Plaintiffs spoke on platforms (*e.g.*, "COVID," "election," "Barrington," "gbdeclaration," "lab leak," "Hunter Biden laptop").[5]  And in responding to those document requests and interrogatories, Defendants ran searches for, and produced to Plaintiffs, e-mail communications with platforms containing the e-mail domains @meta.com, @fb.com, @facebook.com, @twitter.com, @instagram.com, @linkedin.com, @youtube.com, @microsoft.com, or @google.com—in other words, all the social media platforms at issue in Plaintiffs' new requests.

## B.  Plaintiffs' Proposed Interrogatories Are Unreasonably Cumulative or Duplicative

Against that background, several of Plaintiffs' new interrogatories are expressly cumulative or duplicative of interrogatories already propounded and therefore not "limited."  Even at the improperly high level of generality of Plaintiffs' proposed topics—a generality precluding Defendants and the Court from assessing the actual interrogatories—it is apparent Plaintiffs seek unreasonably cumulative or duplicative information.  For example:

**Proposed Interrogatory 1** seeks information from NIAID and NIH regarding "who at those agencies might have pertinent information" about "attempts to 'take down' Plaintiffs Drs. Bhattacharya and Kulldorff and their Great Barrington Declaration."  Prp. Plan ¶ 1.  NIAID and Fauci *already* responded to Plaintiffs' earlier interrogatory to "Identify all Communications with any Social-Media Platform that relate to the Great Barrington Declaration, the authors of the Great

---

[5] Plaintiffs defined "Search Terms" in Paragraph U of their July 18, 2022 RFPs as: "misinformation, "misinfo," "disinformation," "disinfo," "malinformation," "malinfo," "MDM," "mask," "masks," "masking," "COVID," "SARS-CoV-2," "lockdown," "election," "conspiracy," "conspiracies," "flag," "flagging," "Berenson," "Barrington," "gbdeclaration," "Bhattacharya," "Kulldorff," "Hoft," "Hines," "HealthFreedom," "Kheriaty," "Changizi," "Kotzin," "Senger," "McCollum," "A.J. Kay," "Baumgartner," "Jeff Allen," "Gateway Pundit," "gatewaypundit," "NewsTalkSTL," "Epoch Times," "lab-leak," "lab leak," "Section 230," "antitrust," "anti-trust," "DGB," "Disinformation Governance Board," "Analytic Exchange," "Disinformation Dozen," "Kennedy," "Daszak," "Wuhan," "algorithm," "Hunter Biden's laptop," "Hunter Biden laptop," "DeSantis," "Atlas," "Trump," "super-spreader," "Babylon Bee," "Federalist," "Daily Wire," and "New York Post."

Barrington Declaration, the original signers of the Great Barrington Declaration, Dr. Jay Bhattacharya, Dr. Martin Kulldorff . . . ."  Dkt. 86-3 at 54-57.  Those Defendants, and HHS more generally, also previously responded to other interrogatories concerning "pertinent information," including five broad interrogatories common to all Defendants that requested information such as the identity of every individual "who has communicated or is communicating with any Social-Media Platform regarding Content Modulation and/or Misinformation."  Dkt. 86-3 at 13-21.[6]

Thus, Plaintiffs' new interrogatory regarding individuals who "might have pertinent information" about Plaintiffs Bhattacharya and Kulldorff improperly retreads ground already thoroughly covered.

**Proposed Interrogatories 2 and 3** request information from DHS and CISA regarding any "involvement in suppressing Plaintiff Jim Hoft's website, the Gateway Pundit," "involvement in past censorship of Mr. Hoft and the Gateway Pundit, particularly with respect to election-related speech," and "involvement in creating the Election Integrity Partnership (EIP)."  Prp. Plan ¶¶ 2-3.  These similar requests, however, are duplicative in multiple ways.

First, Plaintiffs previously propounded the five Common Interrogatories in Note 5 above on DHS and CISA as well—requesting identification of all communications with social-media platforms regarding content moderation or containing any of the search terms, and identification of employees and agents involved.  And DHS and CISA responded to those interrogatories already.  Dkt. 86-3.  Those broad interrogatories clearly covered Plaintiffs' new requests about Hoft.

---

[6] *See* Common Interrogatory No. 1 (Dkt. 86-3 at 13-21) ("Identify every officer, official, employee, staff member, personnel, contractor, or agent . . . who has communicated or is communicating with any Social-Media Platform regarding Content Modulation and/or Misinformation"); Common Interrogatory No. 2 (Dkt. 86-3 at 21-24) ("Identify all Communications with any Social-Media Platform relating to Content Modulation and/or Misinformation"); Common Interrogatory No. 3 (Dkt. 86-3 at 25-28) ("Identify all Social-Media Platforms, including their officers, agents, or employees, with which You have communicated or are communicating with relating to Content Modulation and/or Misinformation"); Common Interrogatory No. 4 (Dkt. 86-3 at 28-40) ("Identify all meetings with any Social-Media Platform relating to Content Modulation and/or Misinformation"); Common Interrogatory No. 5 (Dkt. 86-3 at 40-43) ("Identify all Communications with any Social-Media Platform that contain any of the Search Term(s)").

Second, the specific search terms underlying Plaintiffs' previous interrogatories to DHS and CISA, and which Defendants used when producing documents in response to Plaintiffs' previous document requests, expressly included "Hoft," "Gateway Pundit," "gatewaypundit," and "election"—underscoring the clear overlap between previous discovery and what Plaintiffs propose to seek now.  Pp. 19-20, *supra*.

Third, Plaintiffs also previously propounded additional, substantially overlapping interrogatories on DHS and CISA.  One was about "all 'private firms' that DHS has 'partnered' with, or planned, intended, or discussed 'partnering' with, to 'monitor' online content . . . including the nature of the 'partnership' and the nature of any 'outsourcing [of] information gathering to outside firms.'"  Additional Interrogatory No. 10 (DHS No. 8), Dkt. 86-3 at 62-64.  Another was about "every working group, 'analytic exchange,' task force, joint government-private enterprise, or similar formal or informal arrangement that involves federal official(s) communicating with any Social-Media Platform(s) about Content Modulation and/or Misinformation."   Additional Interrogatory No. 15 (Easterly No. 8), Dkt. 86-3 at 70-73.  Thus, Plaintiffs have already obtained discovery regarding any such partnerships with outside groups, making their new requests duplicative and definitionally not "limited."  Dkt. 404 at 7.

## C. Plaintiffs' Proposed Requests for Documents Are Unreasonably Cumulative or Duplicative

As with the interrogatories, because Plaintiffs merely outline the RFPs at a high level of generality, Defendants and the Court are left without a basis for assessing the actual requests.  But even setting that aside, the document requests as outlined are deficient because, again, they are unreasonably cumulative or duplicative of documents already requested and obtained.   For example:

**Proposed Request ¶ 16**, as outlined, seeks from the CDC "documents relevant to censorship of Plaintiffs Kulldorff and Bhattacharya."  Prp. Plan ¶ 16.  But as explained above, the search terms applied at the PI phase directed toward the CDC (and other Defendants) expressly contained terms for "Kulldorff" and "Bhattacharya," as well as associated terms such as

"Barrington" and "gbdeclaration."    Plaintiffs' proposed RFP 16 is therefore unreasonably cumulative or duplicative.

Proposed Request ¶ 17, as outlined, seeks from "the FOIA press offices in each HHS agency . . . documents demonstrating efforts to suppress the speech of the individual Plaintiffs or topics on which they have posted online."  Prp. Plan ¶ 17.  As an initial matter, Plaintiffs do not define what is a "FOIA press office," and to undersigned counsel's knowledge, in the relevant agencies, FOIA and public affairs or press interactions are handled by different offices.  In any event, Plaintiffs offer no factual basis for requiring discovery in this action from agency personnel who respond to FOIA requests, given that this action has nothing to do with FOIA, but instead concerns agency communications with social media platforms, which would not fall within the responsibilities of FOIA officers.  But even setting that misconception by Plaintiffs aside, HHS already previously produced documents using search terms that explicitly included all "the individual Plaintiffs" ("Bhattacharya," "Kulldorff," "Hoft," "Hines," "Kheriaty") and "topics on which they have posted online."  *See* Pl.'s July 18, 2022 RFPs to HHS and Secretary Becerra at 6; Pl.'s July 18, 2022 RFPs to NIAID and Director Fauci at 6.  Accordingly, Plaintiffs' proposed RFP 17 is unreasonably cumulative or duplicative.

### D. Plaintiffs' Proposed Depositions Are Unreasonably Cumulative or Duplicative

Furthermore, several of Plaintiffs' new proposed depositions duplicate full-day depositions already obtained.  Notably, Plaintiffs' request for nearly *30 additional* depositions wholly disregards the 10-deposition limit in Rule 30 without providing a basis for this Court to grant leave to exceed that limit.  But even setting aside that numerosity problem, the proposed depositions as to Defendants are unreasonably cumulative or duplicative:

CDC:  Plaintiffs request depositions of three *more* witnesses associated with the CDC, despite having already taken the full-day deposition of the Director who oversees the office leading the CDC's social media presence, Carol Crawford.  *Compare* Prp. Plan ¶ 22(a)-(c), *with* Dkt. 205-1 (Crawford Dep.).

**NIAID**:  Plaintiffs request the deposition of Former NIAID Principal Deputy Director Auchincloss (who served as that agency's Acting Director from 2022 to 2023) despite having already taken the full-day deposition of the former NIAID Director, Dr. Fauci, spanning expansive topics. *Compare* Prp. Plan ¶ 22(e), *with* Dkt. 206-1 (Fauci Dep.).

**Office of the Surgeon General**:  Plaintiffs request the deposition of a former Senior Advisor to the Surgeon General, Kyla Fullenwider.  Plaintiffs contend that  Ms. Fullenwider is a "viable alternative" to the deposition of Surgeon General Vivek Murthy.  Yet, as noted above, p. 16, *supra*, Plaintiffs completely ignore the Fifth Circuit's order on the Government's mandamus petition, which disallowed the Surgeon General's deposition until the Court considered less intrusive alternatives.  *Murthy I*, Order at 3.  And this Court approved such an alternative, namely, a deposition of another Senior Advisor to the Surgeon General, Eric Waldo, whose responsibilities covered public engagement on COVID-19 and misinformation.  *Compare* Prp. Plan ¶ 22(k), *with* Dkt. 210-1 (Waldo Dep.).

**CISA and DHS**:  Plaintiffs propose depositions of three *more* witnesses associated with CISA—the Director, the former Senior Cybersecurity Advisor, and the former Digital Director— and two more witnesses associated with DHS—a DHS Undersecretary and the former Director of a Board Plaintiffs admit has already been "dismantled."  Prp. Plan ¶ 22(l)-(p).  Yet Plaintiffs have already taken the full-day deposition of the Chief of the CISA team that addressed misinformation, Brian Scully.  Dkt. 209-1 (Scully Dep.).  And Plaintiffs have not asserted, let alone proven, that any Individual Plaintiff's content moderation episodes concerned DHS activities other than those of CISA—so there is no factual basis for their demand from jurisdictional discovery from DHS beyond what Plaintiffs already received. *See Missouri*, 603 U.S. at 70 (taking Hoft to be "the only plaintiff who has expressed interest in speaking about elections (and thus the only plaintiff with potential standing to sue the FBI and CISA")).  Further undermining any effort by Hoft to predicate prospective relief consistent with Article III as to CISA is that CISA "did not engage in" switchboarding "for the 2022 election cycle" or later.  *See* PI Opp. 77 & Ex. 97 (Dkt. 266-5, Hale Decl. ¶¶ 70, 78).

24

**FBI**: Plaintiffs request the deposition of Dehmlow despite having already taken the full-day deposition of Elvis Chan regarding the same topics already covered—seeking not to learn facts pertinent to any particular Plaintiff's Article III standing, but instead to "give Plaintiffs the opportunity to learn more about government efforts to suppress the Hunter Biden Laptop theory." *Compare* Prp. Plan ¶ 22(r), *with* Dkt. 204-1 (Chan Dep.). Plaintiffs attempt to justify this request based on their description of Chan as Dehmlow's "subordinate." But Chan and Dehmlow worked for different divisions and Dehmlow did not supervise Chan. Dehmlow was assigned to the Counterintelligence Division and was Unit Chief of the FITF *China* Unit in 2020, when the *New York Post* published the "Hunter Biden Laptop Story." Chan was a supervisor of the Russian Cyber Squad in the San Francisco Division at the time. Furthermore, Plaintiffs present no evidence that Dehmlow has relevant information about her proposed deposition topic ("government efforts to suppress the Hunter Biden Laptop theory"), beyond what they already have in their possession, particularly given that Plaintiffs seek to connect the "Laptop Theory" to FBI warnings about a *Russian* (not *Chinese*) hack and leak operation.

Insofar as Plaintiffs were unable to establish Article III standing through any of those already taken depositions, that is not a basis for concluding that more depositions are warranted. Instead, that absence reflects the fundamental deficiencies in Plaintiffs' Article III standing, which requires dismissal for lack of subject-matter jurisdiction, not further discovery.

*　　*　　*　　*　　*

Federal Rule 26(b)(2)(C)(i) provides that the court "*must limit* the frequency or extent of discovery" when it is "unreasonably cumulative or duplicative" (emphasis added). *See also* Dkt. 404 at 5, 7 (allowing only "limited" and "circumscribed" additional jurisdictional discovery). This Court should not allow Plaintiffs to propound the following discovery requests on Defendants on the grounds that, even as outlined, they are unreasonably cumulative or duplicative, not proportional to the needs of this action, and not "limited":

1. Proposed Interrogatories Nos. 1-3;
2. Proposed Requests for Documents Nos. 16 and 17; and

25

3.  Proposed Depositions Nos. 22(a)-(c), 22(e), 22(k), 22(l)-(p).

**IV.  Plaintiffs Have Exceeded The Numerical Limit On Interrogatories And Lack Any Grounds For Ignoring That Limit**

The Court should further reject Plaintiffs' proposal to direct an additional seven broad categories of interrogatories to Defendants because, in addition to all the deficiencies discussed above, the request well surpasses the 25 interrogatories allowed to Plaintiffs under Rule 33 without leave of Court.  Fed. R. Civ. P. 33(a)(1); *see also* LR 33.1 ("No party shall serve on any other party more than 25 interrogatories in the aggregate *without leave of court*.") (emphasis added).[7] Plaintiffs previously served 110 interrogatories as to 10 recipient Defendants.  Even excluding duplicative interrogatories served on separate Defendants (at least in substance, if not form), there would still have been 34 distinct interrogatories.[8]

Thus, Plaintiffs previously obtained responses to the maximum number of interrogatories allowed by default under the rules, and Plaintiffs have not identified any reason why they should now be granted leave to exceed the aggregate limit.  This Court should not grant them such leave

---

[7] "[W]here," as here, "multiple parties on the same side are represented by the same counsel and 'act in unison,' it is compelling 'to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25-interrogary limitation.'" *Glob. Tubing, LLC v. Tenaris Coiled Tubes, LLC*, No. 4:17-cv-3299, 2020 WL 12443175 at *2 (S.D. Tex. Nov. 25, 2020) (quoting 8B Charles Alan Wright et al., *Federal Practice & Procedure* § 2168.1 (3d ed. 2020)); *accord Kleiman v. Wright*, No. 18-cv-80176, 2020 WL 1666787 at *1 (S.D. Fla. Apr. 3, 2020); *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 664 (D. Colo. 2005).  In this action, with one set of attorneys representing all Plaintiffs and with one set of attorneys representing all Defendants, the "more sensible approach" is to limit the interrogatories to 25 per side.  *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006); *see, e.g., Am. Council of the Blind of Metro. Chi. v. Chi.*, No. 19-cv-6322, 2021 WL 5140475 at *1-2 (N.D. Ill. Nov. 4, 2021); *Fair Hous. Ctr. of Cent. Ind. v. Welton*, No. 1:18-cv-01098, 2019 WL 2422594 at *5 (S.D. Ind. June 10, 2019).

[8] The parties previously agreed on August 11, 2022 to resolve the excessive numerosity problem as follows:  Plaintiffs requested that (a) each Defendant recipient was to answer Interrogatories 1 through 5 of the First PI Interrogatories directed to CDC, with the reference to the CDC (in Interrogatory 1) to "be adjusted to refer to the recipient of the interrogatory" (i.e., the Common Interrogatories) and (b) certain Defendants were to answer additional interrogatories, totaling 20, specified by Plaintiffs, and Plaintiffs did not object to Defendants' proposal that all remaining interrogatories be deemed withdrawn. Dkt. 86-3 at 11-12.  Plaintiffs docketed the version of Defendants' responses and objections to the PI Interrogatories dated September 27, 2022 at Dkt. 86-3.  (Although Defendants finally served fourth amended interrogatory responses dated February 8, 2023—which reflected supplementation after consultation with Psaki as a less intrusive alternative to her deposition, which the Fifth Circuit stayed—that version has not been publicly filed.)

where their failure to do so forfeits any argument on the point, and deprives Defendants of the opportunity to frame a response.

## V.    Discovery From Nonparties, Including Former Officials, Requires Rule 45 Subpoenas, And Nonparties Cannot Be Subjected To Interrogatories In Any Event

Plaintiffs' proposed plan also fails to address the procedural requirements mandated for discovery against nonparties, including individuals who have left Government service. That failure is glaring because Rule 45 separately mandates consideration of the interest of nonparties: Rule 45 "requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (opinion for the Court by Kavanaugh, J.). The nonparties from whom Plaintiffs propose to seek discovery include social media platforms,[9] various research institutions, and, notably, former officials who have left Government service. Depositions of nonparties would require application of Rule 45. *See, e.g., Uebelacker v. Paula Allen Holdings, Inc.*, No. 06-cv-316, 2006 WL 6021169 at *2 (W.D. Wis. Jan. 3, 2006) ("Because [individuals] no longer work for defendants, they are entitled to receive process under Rule 45."); *see also* Fed. R. Civ. P. 25(d) (providing for automatic substitution of public officers sued in their official capacity). Hence, Rule 45 protections[10] would govern Plaintiffs'

---

[9] Although Rule 45 analysis must await proceedings with the participation of the nonparties not now before this Court to which Plaintiffs propose to direct subpoenas, it is apparent the platforms could formulate substantial Rule 45 contentions against the discovery outlined, including because it is unreasonably cumulative or duplicative of discovery Plaintiffs have already obtained from Defendants. For example, Plaintiffs' **Request ¶ 12** seeks to issue subpoenas to "Meta (Instagram and Facebook), X (formerly known as Twitter), YouTube, Google, and Linkedin" regarding, among other things, "any demands to censor specific topics or Plaintiffs in this case." Prp. Plan ¶ 12. But Defendants *already* produced documents in response to Plaintiffs' earlier requests for "all Communications with any Social-Media Platform relating to Misinformation and/or Content Modulation" or that "contain[ed] any of the Search Terms," pp. 19-21, *supra*—terms which included the "specific topics or Plaintiffs in this case" that Plaintiffs now again request. Indeed, Defendants' previous discovery efforts searched for e-mail domains containing @meta.com, @fb.com, @facebook.com, @twitter.com, @instagram.com, @linkedin.com, @youtube.com, @microsoft.com, and @google.com—in other words, all of the platforms to which Plaintiffs propose to direct Rule 45 subpoenas.

[10] Among other things, before non-parties may be compelled to sit for depositions, they must be served with a subpoena. *See* Fed. R. Civ. P. 45(b) (requiring service of the subpoena); *see also Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 466 (E.D. La. 2007); *Ellis v. La. ex rel. Governor's Off. of Homeland Sec. & Emergency Preparedness*, No. 13-cv-27, 2013 WL 6272294 at *2 (M.D. La. Dec. 4, 2013). And nonparties may not be required to travel more than 100 miles to appear

proposed depositions of the following (including those deponents subject to the high-ranking official and separation of powers limitations identified above):

1. Former CDC Director **Rochelle Walensky**
2. Former CDC Director **Robert Redfield**
3. Former White House Director of Digital Strategy **Robert Flaherty**
4. Former White House COVID-19 Advisor **Andrew Slavitt**
5. Former White House Communications Director **Kate Bedingfield**
6. Former CISA Senior Cybersecurity Advisor **Matthew Masterson**
7. Former Executive Director of inoperative Disinformation Governance Board **Nina Jankowicz**
8. Former NIAID Principal Deputy Director **Hugh Auchincloss**
9. Former NIAID FOIA Officer **Margaret A. Moore**

Moreover, Rule 45 affords a non-party former Federal official and the Government the right to move to quash a subpoena directed to that former official in connection with Government work. Fed. R. Civ. P. 45(d)(3); *see also, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022) (granting former Secretary of Education and U.S. Department of Education, and current Secretary mandamus petition to quash former secretary's deposition). Authorizing Rule 45 depositions may foreseeably generate collateral litigation, including in courts outside this District, over motions to quash and the other Rule 45 protections, rendering impractical Plaintiffs' proposal to "conclude depositions by the end of March 2025" (Prp. Plan ¶ 23), and adding to the overall burden of jurisdictional discovery.

Moreover, even apart from Rule 45's limitations on non-party burdens, interrogatories are not available from nonparties under Rule 33 because that rule, by its plain text, limits interrogatories to parties in the action.[11] Hence, Plaintiffs cannot direct interrogatories to any

_____

for a deposition absent specific circumstances. *See Fradella v. Coca-Cola Co.*, No. 17-cv-9622, 2018 WL 3455707 at *2-3 (E.D. La. July 18, 2018).

[11] *See Autery v. Smithkline Beecham Corp.*, No. 05-cv-0982, 2007 WL 2702197 at *1 (W.D. La. Sept. 12, 2007) ("[i]nterrogatories may not be directed to non-parties") (citing, *inter alia*, 8A C. Wright & A. Miller, *Federal Practice and Procedure* § 2171, p. 275 (2d ed. 1994)); *accord Obinyan v. Prime Therapeutics LLC*, No. 3:18-cv-0933, 2021 WL 135983 at *1 (N.D. Tex., Jan. 14, 2021).

nonparty (Prp. Plan ¶¶ 2-4)—including former White House COVID-19 Response Coordinator Ashish K. Jha—as well numerous nongovernmental research organizations and researchers.

Importantly, any interrogatory Plaintiffs direct to Jha concerning his work in that White House role would also conflict with the constitutional separation of powers.  *Cheney*, 542 U.S. at 367.  Any such interrogatories would implicate the responsibilities of the White House and would be unduly burdensome and disproportional to the needs of the case when Plaintiffs have not first exhausted all available opportunities to seek related information from other sources.  *See* Order, *Centro Presente v. Trump*, No. 1:18-cv-10340 (Dkt. 89) (D. Mass. May 15, 2019) (ordering plaintiff to exhaust all discovery on other defendants before court would consider whether there was "continuing need for discovery sought from the White House"); *cf. Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019) (vacating "district court's discovery orders because the district court did not fulfill its obligation 'to explore other avenues, short of forcing the Executive to invoke privilege'" (quoting *Cheney*, 542 U.S. at 390)).

## VI.    In Any Event, Plaintiffs' Proposed Deadlines For Jurisdictional Discovery Are Unworkable Considering The Burdens Imposed By Their Proposed Requests

In any event, the Court should reject Plaintiffs' proposed timetable, under which they would "conclude depositions by the end of March 2025" (Prp. Plan ¶ 23).  That unrealistic timetable does not provide sufficient time for the parties to take the discovery outlined in the Plan, let alone for nonparties to receive the procedural protections Rule 45 requires.  If the Court were to adopt Plaintiffs' requested deadline for the close of jurisdictional discovery, the Court would need to pare the authorized discovery by substantially narrowing Plaintiffs' requested discovery, in line with the objections set forth above.

Additionally, any jurisdictional discovery in this action should be aligned with the proceedings in the consolidated *Kennedy* action, which Plaintiffs have not addressed.  Whether the *Kennedy* action can proceed in this Court depends on the Fifth Circuit's ultimate disposition of the currently pending *en banc* petition and then the disposition of the remand in the *Kennedy* PI appeal (5th Cir. No. 24-30252).

Furthermore, any timetable this Court adopts should be without prejudice to Defendants' right to seek discovery from Plaintiffs concerning their Article III standing contentions. Although this Court's Order directed Plaintiffs to propose a discovery schedule, the development of a complete factual record on the "critically important" Article III standing question warrants providing Defendants sufficient time to take limited discovery from Plaintiffs. *Missouri*, 603 U.S. at 61. If this action were to proceed further, Defendants would need additional facts about Plaintiffs' contention that they have "a substantial risk that, in the near future, they will suffer an injury that is traceable to a Government defendant and redressable by the injunction they seek." *Missouri*, 603 U.S. at 49-50. Such facts would be obtainable through limited document productions from, interrogatory responses by, and depositions of each Plaintiff. The jurisdictional nature of the discovery period now in question does not preclude Defendants from obtaining such discovery. *Cf. Wikimedia Found'n v. NSA*, 427 F. Supp. 3d 582, 592 (D. Md. 2019) (noting that during jurisdictional discovery period following remand from court of appeals, "[b]oth sides took depositions and served requests for written discovery and production of documents"), *dismissal aff'd*, 14 F.4th 276 (4th Cir. 2021).

At a minimum, if the Court sets the extraordinarily short deadline Plaintiffs have proposed, the Court should clarify explicitly that if the parties show they have made good use of that jurisdictional discovery period and still need additional time, the Court will extend that period.

## CONCLUSION

Even as outlined by Plaintiffs, their Proposed Plan is not "limited" or "circumscribed" to inquiry reasonably likely to show their Article III standing under the Supreme Court's precedent in *Missouri*. Hence the Court should enter an order disallowing the jurisdictional discovery plan or substantially limiting it for the reasons stated herein.

Dated: December 13, 2024          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

JOSEPH E. BORSON
Assistant Director, Federal Programs Branch

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar No. 978017)
Senior Counsel
ALEXANDER W. RESAR (N.Y. Bar No. 5636337)
CATHERINE M. YANG (N.Y. Bar No. 5319736)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Washington D.C. 20005
Tel: (202) 616-8488
Indraneel.sur@usdoj.gov

*Attorneys for Defendants*